| | |
|---|---|
| KEKER & VAN NEST LLP<br>STUART L. GASNER - #164675<br>sgasner@kvn.com<br>STEVEN P. RAGLAND - #221076<br>sragland@kvn.com<br>SIMONA A. AGNOLUCCI - #246943<br>sagnolucci@kvn.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:    415 391 5400<br>Facsimile:    415 397 7188<br><br>Attorneys for Defendants WALTER LIAN-HEEN LIEW and USA PERFORMANCE TECHNOLOGY, INC. | LAW OFFICES OF DORON WEINBERG<br>DORON WEINBERG - #46131<br>doronweinberg@aol.com<br>523 Octavia Street<br>San Francisco, CA 94102<br>Telephone:    415 431 3472<br>Facsimile:    415 552 2703<br><br>Attorneys for Defendant<br>CHRISTINA HONG QIAO LIEW<br><br>MCKENNEY & FROELICH<br>JEROME J. FROELICH, JR. - *pro hac vice*<br>jerryfroelich@comcast.net<br>Two Midtown Plaza, Suite 1250<br>1349 West Peachtree Street, N.W.<br>Atlanta, Georgia 30309-2920<br>Telephone:    404 881 1111<br>Facsimile:    404 881 8040<br><br>Attorneys for Defendant<br>ROBERT MAEGERLE |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>WALTER LIAN-HEEN LIEW,<br>CHRISTINA HONG QIAO LIEW, USA<br>PERFORMANCE TECHNOLOGY, INC.,<br>and ROBERT MAEGERLE,<br><br>                    Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**<br><br>Date:        June 20, 2012<br>Time:        11:00 a.m.<br>Judge:       Hon. Nathanael Cousins<br>Place:       Courtroom A – 15th Floor |

667015.03

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION...................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

INTRODUCTION .......................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................3

ARGUMENT ..............................................................................................................5

I.   THE DEFENDANTS' PROPOSED ORDER PROTECTS PURPORTED
     TRADE SECRETS, COMPLIES WITH THE LAW, AND COMPLIES
     WITH OTHER ORDERS ENTERED IN THIS DISTRICT...................................5

     A.   The Defendants' Proposed Protective Order Adequately Protects
          Purported Trade Secrets And Complies With The Law. ...........................5

     B.   The Defendants' Proposed Order Comports With Protective Orders
          Entered By Other Courts In This District. ..................................................6

II.  THE GOVERNMENT'S PROPOSED ORDER VIOLATES
     DEFENDANT'S RIGHTS................................................................................7

     A.   Giving DuPont the keys to discovery is unnecessary, improper and
          violates Defendants' rights to access discovery..........................................7

     B.   The Requirement That Defendants Disclose The Names Of All
          Potential Witnesses Violates The Fifth Amendment And The
          Attorney-Client Privilege...........................................................................9

     C.   The Provisions Regarding Expert Witnesses Violate Rule 16, The
          Defendants' Right To Retain The Experts Of Their Choice, And
          The Defendants' Right To Confront The Witnesses Against Them..........10

     D.   The Government's Proposed Restrictions On The Defense's Use Of
          Confidential Documents Violate The Defendants' Due Process And
          Sixth Amendment Rights. ........................................................................11

CONCLUSION...........................................................................................................13

i

667015.03

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*California v. Trombetta*
    467 U.S. 479 (1984).............................................................................................. 8, 12

*Davis v. Alaska*
    415 U.S. 308 (1974)................................................................................................. 11

*United States v. Hsu*
    982 F. Supp. 1022 (E.D. Pa. 1997) ........................................................................ 10

*United States v. Stein*
    435 F. Supp. 2d 330 (S.D.N.Y. 2006)..................................................................... 12

**State Cases**

*Jones v. Superior Court*
    58 Cal. 2d 56 (1962) ............................................................................................... 10

*Ruiz v Superior Court*
    275 Cal. App 2d 633 (1969) ................................................................................... 10

**Federal Statutes**

18 U.S.C. § 1835................................................................................................................ 6, 10

**Federal Rules**

Federal Rule of Criminal Procedure 16(b)(1)(C).................................................................. 11

Federal Rule of Evidence 75................................................................................................. 11

**Constitutional Provisions**

Fifth Amendment .......................................................................................................... 2, 9, 10

Sixth Amendment .......................................................................................................... *passim*

667015.03

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Defendants Walter Lian-Heen Liew, Christina Hong Qiao Liew, USA Performance Technology, Inc., and Robert Maegerle (collectively "Defendants") will and do move the Court for entry of a Protective Order on June 20, 2012, at 11:00 a.m. or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102, in Courtroom A, before the Honorable Nathanael Cousins.

Defendants seek entry of the Protective Order filed herewith as a [Proposed] Protective Order.

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities, the authorities cited therein; the accompanying declarations and exhibits; argument of counsel; and any other matter that may be submitted at or prior to the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendants ask the Court to adopt their proposed protective order, which is modeled after other orders entered in similar cases in this District and which adequately protects DuPont's alleged trade secrets while respecting the Defendants' Constitutional rights. In an effort to avoid litigation over this issue, Defendants proposed a compromise order to the Government that contains many provisions they do not like, but that they can tolerate if necessary. Unfortunately, the Government insists on provisions that unduly hamper the defense and violate fundamental rights.

The Defendants' proposed order incorporates reasonable measures to ensure the protection of confidential materials. For example, it provides that materials designated as confidential can be used only in connection with this case and not for economic benefit, and that any court filing containing or describing confidential materials will be submitted under seal. Proposed Stipulated Protective Order ("Proposed Order") ¶¶ 5, 9. It allows highly confidential materials to be shown only to witnesses who authored and/or had prior access to them, and only if counsel deems it necessary for the witness to review those materials for preparation of the

1

1   defense. *Id.* ¶ 6(d). It provides that highly confidential materials can be shown to a retained

2   expert only if the expert agrees to be bound by the terms of the protective order and agrees not to

3   copy the materials. *Id.* ¶ 7. And, it prevents confidential materials from leaving the United States

4   without court approval. *Id.* ¶ 8(b).

5       The Government, in contrast, proposes an overreaching protective order that gives DuPont

6   the keys to discovery and tramples Defendants' statutory and Constitutional rights. The

7   Government's proposed order is problematic for several reasons. *First*, it makes DuPont the

8   gatekeeper of discovery and allows it to review all documents before they are produced to the

9   Defendants. This is improper. Not only does it give DuPont—which has filed a civil case against

10   certain Defendants—far more discovery than would ever be permitted through the Rules of Civil

11   Procedure, it also gives DuPont unfettered access to the Defendants' independently engineered

12   work product. Moreover, there is no need for DuPont to assess the confidentiality of documents

13   in this case because the government can do so. Finally, allowing the approximately 13 Terabytes

14   of discovery at issue here to be funneled through DuPont at whatever pace DuPont chooses

15   interferes with the Defendants' Due Process right to access the evidence against them. This Court

16   should follow the lead of other courts in this District that have refused to give third-party

17   "victims" of trade secret theft such broad, presumptive access to discovery.

18       *Second*, the Government's order requires that Defendants disclose in advance the name of

19   *any* potential witnesses who will view confidential materials. This provision requires Defendants

20   to reveal the defense strategy to the Government in violation of the Fifth Amendment and the

21   attorney-client privilege. There is no excuse for such unlawful restrictions.

22       *Third*, the Government's order requires Defendants to disclose the identity of their expert

23   witnesses—including non-testifying consultants—before those witnesses can be shown the key

24   "confidential" documents in this case. This provision runs afoul of Rule 16, which requires

25   disclosure of expert testimony only under limited circumstances that are not present here.

26   Moreover, the Government's order contemplates disclosure of consultants and experts not just to

27   the Government, but also to DuPont—a civil litigation adversary—who presumptively holds a

28   trump card to veto any defense expert it does not like. This requirement hobbles the defense's

1   ability (and right) to retain and consult with expert witnesses that are key to defending this case in

2   violation of the Confrontation Clause.

3       *Fourth*, the Government's proposed order places a number of limitations on defense

4   counsel's use of the approximately 13 Terabytes of electronic discovery currently in the

5   Government's possession, including preventing counsel from uploading the documents to any

6   computer connected to the Internet or a computer network, and requiring defense counsel to be

7   present for any review of confidential documents.  Because DuPont has taken the position that

8   any document that refers to the TiO2 process should be designated confidential in this case, these

9   restrictions would presumably apply to most or at least a significant subset of the massive number

10  of documents subject to discovery.  These restrictions would make it prohibitively expensive,

11  time-consuming and potentially impossible to mount a defense, thereby threatening Defendants'

12  Due Process and Sixth Amendment rights.

13      All of these proposed restrictions are particularly problematic given that nearly all the

14  discovery at issue is from Defendants' own computer drives, papers, and records.

15      The Court should not, and need not, adopt any of the Government's problematic

16  restrictions.  Rather, it should follow the lead of other courts in this District and adopt

17  Defendants' protective order, which more than adequately prevents public disclosure of DuPont's

18  alleged trade secrets and which complies with the Rules of Criminal Procedure, the Constitution,

19  and common sense.

20                      **FACTUAL AND PROCEDURAL BACKGROUND**

21      On April 6, 2011, E.I. DuPont de Nemours and Company ("DuPont") filed a civil

22  Complaint in United States District Court in San Francisco, alleging that Walter Liew, USA

23  Performance Technology, Inc. ("USAPTI"), Performance Group (USA) and a USAPTI employee

24  named John Liu misappropriated trade secrets from DuPont.  Docket in Civil Case #3-11-01665

25  ("Civil Docket") 1.[1]  According to the Complaint, the civil defendants "wrongfully obtained and

26  possess confidential, proprietary, trade secret materials providing detailed specifications for

27  DuPont's chloride-route titanium dioxide ('TiO2') pigment manufacturing process."  Civil

28  _____

[1] Defendants Robert Maegerle and Christina Liew are not parties to the civil case.

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER
Case No. CR 11-0573-JSW (NC)

667015.03

Docket 1 at ¶1.

Walter Liew and USAPTI answered the Complaint, asserting counterclaims against DuPont for declaratory relief, misappropriation of USAPTI's trade secrets, copyright infringement and tortious interference with prospective economic advantage. Civil Docket 20. The Answer explains that DuPont has been attempting to enter the Chinese market since 2005 but has been unable to complete a TiO2 plant in China. Civil Docket 20 at 15-16. As a result, DuPont wishes to slow down the efforts of its potential competitors in China and to obtain the trade secrets of those competitors. *Id*. at 16. The Answer further states that USAPTI develops its own trade secrets and also comes into the possession of many of its customers' trade secrets. *Id*. at 16. Because many of USAPTI's customers compete directly with DuPont, the trade secrets in USAPTI's possession are of particular value to DuPont. *Id*. at 16-17.

Approximately two months thereafter, on July 19, 2011, agents of the Federal Bureau of Investigation executed search warrants at the residence of Walter Liew and Christina Liew, at the USAPTI office, at a Bank of America safety deposit box, and at the residences of Robert Maegerle. The Defendants are informed that the FBI seized, among other things, approximately fifty-five pieces of electronic media containing roughly 13 Terabytes of electronically stored information. A significant portion of that information includes documents from USAPTI's servers reflecting years of USAPTI's independent development of its own TiO2 engineering process.

On August 23, 2011, Walter and Christina Liew were charged with witness tampering, conspiracy to tamper with witnesses and evidence, and false statements. Dkt. 16. In February of this year, a superseding indictment charged Walter Liew, Christina Liew, Robert Maegerle and USAPTI with economic espionage, various crimes relating to theft of trade secrets, and conspiracy to tamper with witnesses and evidence. Dkt. 64.

On July 22, 2011, Judge Whyte issued an Order staying DuPont's civil case. Civil Docket 39. To date, the Defendants have received minimal discovery in the criminal case. The Government has provided only a handful of FBI reports, various bank account documents, a few witness interview statements, and a hard drive and memory sticks seized from a safety deposit

4

667015.03

box.

The Defendants and the United States met and conferred and could not agree on a protective order governing discovery in this action.  Although Defendants prefer a protective order that places no restrictions on the use of confidential materials (other than requiring such materials to be filed under seal), Defendants propose the order filed herewith, which Defendants believe reflects a reasonable compromise between the parties' positions and incorporates as many of the Government's provisions as possible.

## ARGUMENT

I.  **THE DEFENDANTS' PROPOSED ORDER PROTECTS PURPORTED TRADE SECRETS, COMPLIES WITH THE LAW, AND COMPLIES WITH OTHER ORDERS ENTERED IN THIS DISTRICT.**

A.  **The Defendants' Proposed Protective Order Adequately Protects Purported Trade Secrets And Complies With The Law.**

The protective order that Defendants propose as a compromise adequately addresses any reasonable concern the Government and DuPont could have regarding the protection of purported trade secrets.

*First*, it safeguards DuPont's alleged trade secrets from public disclosure.  It requires a party receiving confidential information to use that information exclusively in connection with this case, and not for economic benefit or other purpose.  Proposed Order ¶ 5.  Any filing containing, referring to or quoting from confidential materials is to be filed under seal and/or submitted to the Court for *in camera* inspection.  *Id.*

*Second*, the protective order adequately prevents third parties who view the confidential documents from misusing and/or disseminating trade secrets.  As a threshold measure, it significantly limits who can see the confidential materials.  Confidential materials may only be shown to witnesses who authored and/or had prior access to them, and Confidential-1 Materials may only be shown to witnesses if counsel deems it necessary for the witness to review those materials for preparation of the defense.  *Id.* ¶ 6(d).  Potential witnesses may not retain Confidential-1 Materials and must review them in the presence of counsel.  *Id.*  Finally, counsel must instruct all potential witnesses that they may only use confidential documents in connection

with this case and not for economic benefit or any other purpose. *Id*. Similar limitations apply to experts' use of confidential materials. Experts must sign an Acknowledgment to be bound by the terms of the protective order, which will be submitted to the Court *ex parte* and *in camera*, and experts may not make copies of any confidential materials. *Id*. ¶ 8.

*Third*, the protective order provides for the security of the confidential documents. It requires the receiving party to maintain confidential materials "in a manner reasonably intended to preserve and maintain the confidentiality of the materials." *Id*. ¶ 8(a). It forbids the materials from leaving the United States without court approval and from being copied except as necessary. *Id*. ¶ 8(a) & (b).

These measures sufficiently safeguard any purported trade secrets while also complying with the Economic Espionage Act, which allows courts to enter protective measures only when such measures are "consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws." 18 U.S.C. § 1835. Unlike the protective order proposed by the Government, Defendants' proposed compromise complies with Federal Rule of Criminal Procedure 16 and with the Constitution.

**B.    The Defendants' Proposed Order Comports With Protective Orders Entered By Other Courts In This District.**

The Defendants' proposed protective order comports with a number of orders entered by other Courts in this District:

- *United States v. Lee and Ge*, No. 5:06-cr-00424 JW (RS) (Ragland Dec., Ex. A): The parties' Stipulated Protective Order requires that retained experts sign an Acknowledgment to be submitted to the Court *ex parte* and *in camera*; provides that defendants "shall not be required to provide said Acknowledgment, or the identity of the expert who signed it, to the Unites States, unless so ordered by the Court"; and provides that confidential materials be kept in defense counsel's office and "in a manner reasonably intended to preserve and maintain the confidentiality of the information."

- *United States v. Nosal and Christian*, No. 3:098-cr-00237 MHP (Ragland Dec., Ex. C): The parties' Stipulated Protective Order requires that retained experts sign an Acknowledgment to be submitted to the Court *ex parte* and *in camera*; provides that "the identity of the expert(s) shall not be disclosed except to the extent that such disclosure is required by the Federal Rules of Criminal Procedure"; provides that confidential materials be kept in a manner reasonably intended to preserve and maintain confidentiality; and provides that confidential materials shall be used solely for case-related purposes, and not for economic benefit of defendants or third parties.

- *United States v. Shan Yan Ming*, No. 5:05-cr-00812 JF (RS) (Ragland Dec., Ex. E): The parties' Stipulated Protective Order provides that confidential information may be used only for case-related purposes and not for economic benefit; requires that expert witnesses sign an Acknowledgment to be bound by the protective order; and does not require the disclosure of the identity of experts signing the Acknowledgment.

This Court should adopt Defendants' proposed compromise and enter Defendants' proposed protective order that, like the orders discussed above, includes reasonable and adequate restrictions without threatening Defendants' Constitutional rights.

## II.   THE GOVERNMENT'S PROPOSED ORDER VIOLATES DEFENDANT'S RIGHTS.

### A.   Giving DuPont the keys to discovery is unnecessary, improper and violates Defendants' rights to access discovery.

The Government's proposed order provides that "[w]ithin its discretion, the government may provide to DuPont for review any information the government intends to produce, or has produced, however denominated." Ragland Dec., Ex. B ¶ 2(d). When meeting and conferring with counsel for Defendants, counsel for DuPont has taken the position that DuPont should have a "gatekeeper role" and should review *all* discovery before it is produced to Defendants. Ragland Dec. ¶ 4. It has also sought to prevent at least some Defendants from seeing material at all—a clear Confrontation Clause violation. Allowing DuPont to view and control the discovery in this case is improper, unnecessary, and violates Defendants' rights to access the evidence against them.

First, there is no reason that DuPont should be entitled to view all discovery before it is shown to the Defendants (or ever). The Government has identified only five alleged DuPont trade secrets at issue in this case, four of which consist of a single document. Dkt. 64. In contrast, the 13 Terabytes of materials in the United States' possession consist primarily of documents seized from USAPTI's own servers that represent years of independent development by USAPTI's engineers. As noted in the Answer filed in the related civil case, DuPont, which is attempting to complete a TiO2 plant in China, has a vested interest in obtaining the trade secrets of its competitors (and civil litigation adversaries). Civil Docket 20 at 15-16. The documents in USAPTI's possession, which include not only USAPTI's own engineering and design work, but also the trade secrets of USAPTI's customers (and DuPont's competitors), are of particular value

7

667015.03

to DuPont. *Id.* at 16. DuPont is not automatically entitled to them in its civil case. It would be improper to allow DuPont to circumvent the civil discovery process and the Rules of Civil Procedure and benefit from unfettered access to those documents.[2]

Second, there is no need for DuPont to be the gatekeeper of discovery. DuPont apparently believes that it is in the best position to determine which materials should be designated as confidential and subject to the protective order. But if there is any doubt about whether a document should be designated as confidential, the Government can—and should—use its own knowledge and resources to make that assessment. For example, a neutral expert is much better situated than DuPont to categorize the discovery. DuPont has taken the position that there should be a presumption that *all* USAPTI documents relating to the TiO2 manufacturing process are inclusive of, derived from, or a duplicate of DuPont's proprietary and confidential information. Ragland Dec. ¶ 5. In other words, DuPont already has decided that it intends to designate all USAPTI materials referring to TiO2 as at least Confidential-2 Materials.[3] That is an absurd position in their civil case—much less in this criminal proceeding. In light of its position, DuPont cannot claim that it will bring to bear particular expertise that a neutral, professional expert cannot. Nor can DuPont, which has filed a civil action against certain defendants, claim to be neutral. It has no duty to be impartial.

Third, requiring all discovery in this case to be funneled through DuPont compromises Defendants' Constitutionally protected right to access the evidence against them. *See California v. Trombetta*, 467 U.S. 479, 485 (1984) (due process right to present a complete defense includes defendant's right of access to evidence). This case involves approximately 13 Terabytes of electronic discovery, most of which consists of highly technical documents that likely require thousands of hours of time to review. It will take months, if not a year or more, for DuPont to complete its "gatekeeping" function, during which time the Defendants (including Mr. Liew, who

---

[2] Defendants understand that DuPont already may have been shown certain documents in this case. Defendants are entitled to know what documents DuPont has been shown.

[3] Both parties propose defining "Confidential-2 Materials" to include documents that "contain, are alleged to contain or may contain" trade secrets or confidential and proprietary business information. The Government's proposed order adds "and/or other sensitive information" to the definition of Confidential-2 Materials. Ragland Dec., Ex. B at 2.

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER
Case No. CR 11-0573-JSW (NC)

667015.03

1    remains in custody) will be unable to prepare their defense.  The Government cannot put such

2    restrictions on the Defendants' right to discovery.

3            At least two courts in this District have adopted Defendants' position and refused to give a

4    third-party "victim" of alleged trade secret theft access to discovery in a criminal case.  In *United*

5    *States v. Shan Yan Ming*, the Government alleged that it be entitled to show information produced

6    by the defense to the "victim" company, noting that the company "is the creator and owner of the

7    stolen trade secrets and thus in the best position to identify whether certain documents or

8    programming code belong to it."  Letter to the Honorable Richard Seeborg from Assistant U.S.

9    Attorney Adam Braun, CR-02-20127, Ragland Dec., Ex. D at 1.  The final protective order

10   adopted by Judge Seeborg did not allow the allegedly injured company to view the discovery at

11   all, and contains a number of provisions similar to the ones proposed by Defendants here.

12   Ragland Dec., Ex. E.  Similarly, in *United States v. Zhang*, another economic espionage case out

13   of this District, the government sought to modify the parties' protective order by striking a

14   provision that prevented the government from disclosing confidential documents to third parties,

15   including Marvell, the alleged "victim" of the trade secret theft.  Order re Parties' Proposed

16   Amended Interim Protective Order, No. CR05-00812 RMW (HRL), at 2 (Ragland Dec., Ex. F);

17   Defendants' Motion at 6-7 (Ragland Dec., Ex. G).  Magistrate Judge Lloyd declined to implement

18   the government's proposal, ruling instead that the parties "will be prohibited from disclosing

19   documents to an affected third party unless the court orders otherwise."  Ragland Dec., Ex. F at 2.

20   The Court should follow these cases and should not allow DuPont to view USAPTI's confidential

21   documents.

22        **B.    The Requirement That Defendants Disclose The Names Of All Potential**
             **Witnesses Violates The Fifth Amendment And The Attorney-Client Privilege.**
23
         The Government's proposed order provides that
24
         [a]t least seven business days before disclosing Confidential-1 Material to any
25       party other than the defendant and attorneys and attorney's staff whose signatures
         appear below, the Receiving Party shall notify the Producing Party in writing of
26       the identity of the person or persons to whom they intend make disclosure. Within
         the seven business day period, the Producing Party may object in writing to the
27       disclosure for good cause shown. If the parties are unable to resolve any such
         objection, the Receiving Party may seek relief from the Court by way of motion.
28       No Confidential-1 Materials may be disclosed until any and all objections to the
         disclosure are resolved.  Ragland Dec., Ex. B at ¶ 7.
                                                    9

667015.03

This restriction requires Defendants to disclose in advance the names of any potential witnesses who will view Confidential-1 Materials, which likely will consist of the documents central to the Government's allegations of trade secret theft. If the Court adopted the Government's proposed order, it would be allowing the Government—and DuPont, acting through the Government—to learn critical elements of the defense strategy, including the names of any individual with whom the defense discusses key documents.

The requirement that the defense reveal in advance the names of all potential witnesses—including non-testifying witnesses—runs afoul of Federal Rule of Criminal Procedure 16, which enumerates required pretrial disclosure and which does not require disclosure of the defense's potential witnesses. Most importantly, such a requirement spoon-feeds the defense strategy to the Government and violates both the attorney-client privilege and the Defendants' Fifth Amendment right against self-incrimination. *See Jones v. Superior Court,* 58 Cal. 2d 56 (1962) (attorney-client privilege and Fifth Amendment barred prosecutorial discovery of names and opinions of physicians employed by the defense where the reports and opinions were not intended to be introduced at trial by the defense); *Ruiz v Superior Court*, 275 Cal. App 2d 633, 634-36 (1969) (reversing discovery order that compelled disclosure of statements by potential witnesses, including those not intended to be called by the defendant).

The Economic Espionage Act also does not allow for such restrictions. *See* 18 U.S.C. § 1835 (requiring protective orders to be "consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws"); *United States v. Hsu*, 982 F. Supp. 1022 (E.D. Pa. 1997), *reversed on other grounds by* 155 F.3d 189 (3d Cir. 1998) (declining under section 1835 to adopt the government's proposed protective order, and adopting the defendant's proposed order, where the government's order would inhibit the defendants' constitutional rights).

C.    **The Provisions Regarding Expert Witnesses Violate Rule 16, The Defendants' Right To Retain The Experts Of Their Choice, And The Defendants' Right To Confront The Witnesses Against Them.**

The Government's proposed protective order requires that Defendants disclose the resume of any potential expert who will review Confidential-1 Materials ten business days before such

10

1  review is to take place.  Ragland Dec., Ex. B at ¶ 9(a).  This restriction conflicts with Federal

2  Rule of Criminal Procedure 16(b)(1)(C), which provides that a criminal defendant must reveal a

3  written summary of any expert *testimony* he intends to use only under two circumstances, neither

4  of which is present here.[4]  The Government cannot compel the Defendants to disclose the identity

5  of any non-testifying consultants, or to prematurely reveal the identity of their testifying experts,

6  in violation of the Federal Rules.

7       Additionally, the Government's proposed protective order allows the Government—or

8  DuPont, acting through the Government—to object to any defense experts who will review the

9  key Confidential-1 Materials at issue here.  Ragland Dec., Ex. B at ¶ 9(b).  And it provides that

10  any potential expert who works as a consultant, employee, officer, owner, director or agent to a

11  competitor of DuPont is *per se* objectionable.  *Id.*  These limitations severely restrict the defense

12  of this case.  Many (if not all) of the leading experts on titanium dioxide in the United States work

13  for either DuPont or one of its competitors.  If Defendants are prevented from consulting with

14  those individuals, they will be unable to meaningfully confront the charges and witnesses against

15  them in violation of the Constitution.  *See Davis v. Alaska*, 415 U.S. 308, 318 (1974) (limitation

16  on defendant's ability to cross-examine witnesses against him violated confrontation clause).

17/18     **D.     The Government's Proposed Restrictions On The Defense's Use Of Confidential Documents Violate The Defendants' Due Process And Sixth Amendment Rights.**

19       The Government proposes a number of limitations on the handling of confidential

20  materials that make it prohibitively time-consuming, expensive and potentially impossible to put

21  on a defense.  The Government's order provides that potential witnesses viewing Confidential-2

22  Materials—which DuPont believes include any USAPTI documents referring to the TiO2

23  process—may not retain those materials, but must review them only in the presence of counsel.

---

24  [4] Rule 16(b)(1)(c) provides:

25  The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703,
26  or 705 of the Federal Rules of Evidence as evidence at trial, if—

27  (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or

28  (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

1  Ragland Dec., Ex. B at ¶ 6(d).  Given the magnitude of discovery in this case, this requirement

2  could consume hundreds, if not thousands, of hours of attorney time.

3         The Government's order also provides that Confidential-1 Materials may never be

4  downloaded onto a computer that is connected to the Internet or to any computer network.

5  Ragland Dec., Ex. B at ¶ 8(b).  DuPont has proposed a sweeping definition of Confidential-1

6  Materials that includes any materials that are directly derivative of documents containing

7  proprietary business information.  If DuPont serves as the "gatekeeper" of discovery, it could

8  choose to designate the vast majority of the 13 Terabytes at issue here as Confidential-1

9  Materials.  But the only reasonable way for defense counsel to electronically house the

10 approximately 13 Terabytes of discovery in this case—the equivalent of approximately 120

11 shipping containers full of printed documents—is on servers connected to the Internet or a

12 network.  Declaration of Joshua D. Maremont in Support of Defendants' Joint Motion for

13 Protective Order ("Maremont Dec.") ¶¶ 4, 5.[5]  Even if defense counsel could find a way to review

14 the Government's massive discovery without the Internet or a network, they would be prevented

15 from working remotely or emailing documents to each other.  Particularly in a case involving

16 discovery of this magnitude, with Defendants and counsel located in different offices, and even

17 states, the Government's proposed limitations would hobble the defense and threaten Defendants'

18 Due Process right to access the evidence against them.  *See Trombetta*, 467 U.S. at 485 (due

19 process right to present a complete defense includes defendant's right of access to evidence).

20 Moreover, the financial burdens imposed by the Government's proposed order implicate the

21 Defendants' Sixth Amendment right to counsel.  *See United States v. Stein*, 435 F. Supp. 2d 330,

22 367 (S.D.N.Y. 2006) (Thompson memorandum violated criminal defendants' Sixth Amendment

23

24 [5] Defendants could access this data without a network only by purchasing a massive drive array
   and plugging it into a standalone workstation accessible to only one person sitting in front of it.
25 Such an undertaking would cost tens of thousands of dollars.  Maremont Dec. ¶ 6.  Moreover, it
   would make document review extremely inefficient, because Defendants would be unable to
26 aggregate their searches and would need to use EnCase, which is not a review tool that defense
   counsel are trained to use.  Maremont Dec. ¶ 7.  Alternatively, defense counsel could custom-
27 build a review workstation with other culling and review software, but the expense of building
   such a workstation, purchasing licenses for the software, and managing a large volume of data on
28 a stand-alone machine would amount to thousands, if not tens of thousands, of dollars. Maremont
   Dec. ¶ 8.

667015.03

right to counsel by coercing corporate defendants to decline payment of individual employees' attorneys' fees).

## CONCLUSION

The problematic restrictions proposed in the Government's protective order are not necessary or proper.  The compromise order proposed by Defendants adequately safeguards any purported trade secrets in this case from disclosure and misuse while complying with the Constitution and the Federal Rules.  Accordingly, this Court should adopt Defendants' proposed protective order.

Dated:  May 25, 2012                                   KEKER & VAN NEST LLP

                                             By:    */s/ Stuart L. Gasner*
                                                    STUART L. GASNER

                                                    Attorneys for Defendants WALTER LIAN-
                                                    HEEN LIEW and USA PERFORMANCE
                                                    TECHNOLOGY, INC.

Dated:  May 25, 2012                                   LAW OFFICES OF DORON WEINBERG

                                             By:    */s/ Doron Weinberg*
                                                    DORON WEINBERG

                                                    Attorneys for Defendant
                                                    CHRISTINA HONG QIAO LIEW

Dated:  May 25, 2012                                   MCKENNEY & FROELICH

                                             By:    */s/ Jerome J. Froelich, Jr.*
                                                    JEROME J. FROELICH, JR.

                                                    Attorneys for Defendant
                                                    ROBERT MAEGERLE