GLYNN & FINLEY, LLP
CLEMENT L. GLYNN, Bar No. 57117
MORGAN K. LOPEZ, Bar No. 215513
JONATHAN A. ELDREDGE, Bar No. 238559
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975

MORRIS JAMES LLP
P. Clarkson Collins, Jr., *Pro Hac Vice Pending*
Jason C. Jowers, *Pro Hac Vice Pending*
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: pcollins@morrisjames.com
jjowers@morrisjames.com

Attorneys for E. I. du Pont de Nemours and Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WALTER LIAN-HEEN LIEW, CHRISTINA HONG QIAO LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**E. I. DUPONT DE NEMOURS AND COMPANY'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER**<br><br>Date: June 20, 2012<br>Time: 11:00 a.m.<br>Place: Courtroom A – 15th Floor<br>Before: Hon. Nathanael Cousins |

## I. INTRODUCTION

Protecting victims against further misappropriation and dissemination of their trade secrets during prosecution of Economic Espionage Act violations was specifically identified by Congress as an important principle; thus, the Act mandates that the Court enter a protective order preserving the trade secrets' confidentiality. E. I. du Pont de Nemours and Company

("DuPont"), the victim of defendants' misappropriation scheme, has proposed a reasonable protective order designed to ensure the protection intended by Congress is provided, while not impairing defendants' rights to a fair trial. The Court should adopt that protective order rather than the one proposed by defendants.

Indeed, defendants' proposed protective order wrongly assumes that only documents "belonging to or obtained from" DuPont require the highest level of protection. This assumption is false because, as DuPont has discovered, defendants have characterized DuPont's documents as their own. Moreover, defendants have copied DuPont's confidential information from DuPont documents and pasted it into documents not marked with DuPont's indicia of ownership. Accordingly, documents "directly derivative" of documents containing DuPont's trade secrets must also receive enhanced protection.

To ensure that such derivative documents are properly identified, DuPont must be allowed to participate in the discovery process and review *certain* – not all – materials in the government's possession before they are produced to defendants. It is beyond dispute that DuPont is in the best position to identify whether a document contains its confidential information.

To further safeguard DuPont's trade secrets, the Court should permit the government to produce DuPont's confidential information on an attorneys-eyes-only basis. There is precedent for such discovery limitations where, as here, there exists a legitimate concern that defendants might misuse the very material at issue.

The Court should also require that defendants provide notice to the government and DuPont prior to disclosing any confidential DuPont information to a third party or expert witness. The universe of individuals with expertise in $TiO_2$ is a small one (which is why the conspiracy to misappropriate was so valuable) and the proposed notice provisions would help ensure that a competitor of DuPont is not needlessly provided access to DuPont's trade secrets.

Defendants object that each of these proposals violates their rights, but these objections are largely unsupported by testimonial evidence or legal authority. In fact, the protective orders submitted by defendants that have been adopted in other trade secret cases all contain at least one

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER

of the provisions requested by DuPont. This is yet another indication that the provisions proposed by DuPont are reasonable and workable. The Court should adopt DuPont's proposed protective order.

## II. FACTUAL BACKGROUND

### A. DuPont is the Worldwide Leader in $TiO_2$ technology.

Since 1948 when DuPont developed the original chloride-route $TiO_2$ process, DuPont has been a pioneer in the area of manufacturing $TiO_2$ pigments. DuPont is currently the largest provider and the lowest cost producer of $TiO_2$ pigments. Annually, DuPont sells approximately 1 million tons of the total 5 million tons of $TiO_2$ pigment sold in the world. Furthermore, DuPont has repeatedly been honored for the safety and health standards of its $TiO_2$ operations. DuPont maintains its advantages in the area of $TiO_2$ pigment production, in part, through its industry-leading process, the secrecy of which it carefully maintains. Case No. 3:11-cv-01665-JSW, Dkt. #1, ¶ 20.

DuPont's chloride-route process has a variety of advantages over the sulfate-route process used by more conventional manufacturers. For example, the chloride-route process is a continuous process, while the sulfate-route process is a batch process. Additionally, it is a cleaner process that produces substantially less waste than the sulfate-route process. Finally, the chloride-route process produces $TiO_2$ pigment in the rutile crystalline form, which is the preferred form. The sulfate-route process inherently produces the anatase crystalline form, which requires additional processing to convert to a rutile crystalline form. *Id.* ¶ 24.

Although a number of companies are capable of producing $TiO_2$ and some companies have developed a chloride process, DuPont's competitors have been unable to create a comparable chloride-route process that is as efficient, cost-effective, and safe as DuPont's or that operates at the capacity or quality of DuPont's process. It is DuPont's superior process that provides it a competitive advantage and allows it to sell more $TiO_2$ pigment than any company in the world. *Id.* ¶ 58.

In this action, the government has identified five DuPont trade secrets defendants have misappropriated, including "[t]he complete DuPont chloride-route process to manufacture $TiO_2$."

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER

Dkt. # 64, ¶ 14. The enumerated trade secrets represent only a fraction of the trade secrets DuPont possesses relating to its $TiO_2$ manufacturing process.[1]

### B. DuPont Has a Substantial Interest in the Protective Order in this Action

Recognizing that the safeguards provided by the protective order in this action are critical to ensuring that DuPont's trade secrets are not further compromised, on May 16, 2012, counsel for DuPont participated in the hearing to discuss matters related to the protective order. Rejecting defendants' position that DuPont had no right to participate in such discussions without moving to intervene, the Court observed that, as the victim, DuPont has rights, including commenting on the proposed order governing discovery in this action. DuPont's counsel submitted a draft protective order to the government. *See* Declaration of Clement L. Glynn ¶ 2, Exhibit A (DuPont's proposed protective order). Subsequently, the government provided DuPont's counsel with a copy of the protective order proposed by Walter Liew's counsel.

There are four principal areas of dispute between DuPont and the defense. First, DuPont believes that it should be permitted to help determine whether material produced by the government contains, or is derived of, DuPont's trade secrets so that this material may receive enhanced protection. Second, DuPont objects to documents containing its trade secrets being produced to defendants personally. Third, DuPont objects to non-expert third parties receiving copies of its trade secrets. Fourth, DuPont believes that defendants should be obligated to disclose when they intend to retain an expert witness employed by, or affiliated with, a competitor of DuPont's.

///
///
///
///
///

---

[1] Defendants' claim that four of the DuPont trade secrets at issue "consist of a document" (Mot. at 7:20-21) is obtuse. Merely because four of the trade secrets are reflected in the same document does not indicate that these trade secrets consist of said document. *See* Declaration of Doctor Austin Reid, Jr. ¶ 3.

More specifically, the following chart highlights the parties' disputes:

| Provision | DuPont | Defendants |
|---|---|---|
| Definition of "Confidential-1 Materials" | "Confidential-1 Material" defined to include confidential documents derivative of DuPont confidential documents | "Confidential-1 Materials" limited to materials belonging to or obtained from third parties, including DuPont |
| DuPont's Role in Discovery Process | Where government is producing party, prior to production DuPont may review any DuPont documents or documents potentially derivative of DuPont documents to determine appropriate confidentiality designation | No role |
| Limitations on Disclosure: defendant and counsel | Confidential Material may be disclosed to only defense counsel and their staff | Confidential Material may be disclosed to defendants, who may retain copies |
| Limitations on Disclosure: third parties | At least 7 days before any Confidential-1 Material may be disclosed to a third party, receiving party must notify government and DuPont, either of whom may object within 7-day period. Confidential-1 Material may not be disclosed to a competitor of DuPont | Confidential Materials may be disclosed to a third party who authored or had prior access to that information, and Confidential-1 Material may only be disclosed if defense counsel or the government deem it necessary. Third party may not retain Confidential-1 Materials |
| Limitations on Disclosure: expert witnesses | At least 10 days before disclosing Confidential-1 Material to expert, defense must disclose expert's name and a copy of expert's resume to government and DuPont, either of whom may object within 10-day period | Upon retention of expert, defendants shall require experts to execute attached Acknowledgment, which they then shall submit to the Court *ex parte* and *in camera*. |
| Disclosure to the Court | All Confidential Material to be filed under seal; transcripts of proceedings at which Confidential Material is discussed shall be sealed and public access to those portions of the hearings restricted[2] | All Confidential Material to be filed under seal |

---

[2] Defendants' moving papers do not address the proposed sealing of hearing transcripts and restricting public access to hearings at which trade secrets are discussed; consequently DuPont assumes that they do not object to the inclusion of this provision in the final protective order.

On May 21, 2012, DuPont's counsel met and conferred telephonically with counsel for Walter Liew and USAPTI in an attempt to reach a compromise on certain of their disputes. As discussed more fully below, DuPont's counsel proposed various compromises regarding competing provisions in the protective order. Defendant's counsel, however, declined to move on any area of disagreement.

### III. ARGUMENT

#### A. The Provisions Proposed by DuPont are Necessary to Protect its Rights as Victim

Congress recognized the importance of protecting the confidentiality of the victim's trade secrets during the investigation and prosecution of criminal trade secret actions. For example, the Economic Espionage Act contains a special provision to protect against the disclosure of trade secret information during the criminal justice process:

> The court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws. An interlocutory appeal by the United States shall lie from a decision or order of a district court authorizing or directing the disclosure of any trade secret.

18 U.S.C. § 1835; *see also* H. Rep. No. 788, 104th Cong., 2d Sess. 13 (1996) ("The intent of this section is to preserve the confidential nature of the information and, hence, its value. Without such a provision, owners may be reluctant to cooperate in prosecuting for fear of further exposing their trade secrets to public view, thus further devaluing or even destroying their worth."); *U.S. v. Hsu*, 155 F.3d 189, 197 (3d Cir. 1998) (observing "the confidentiality provision aims to strike a balance between the protection of proprietary information and the unique considerations inherent in criminal prosecutions.")

Rather than protecting the trade secrets at issue and balancing the rights of DuPont and defendants, defendants' proposed protective order not only provides minimal protection for DuPont's valuable $TiO_2$ trade secrets, but also places the proverbial fox in charge of the henhouse by allowing defendants, their employees, and DuPont's competitors access to the very confidential information defendants have misappropriated. In fact, not one of the protective

orders adopted in other trade secret cases, which were submitted by <u>defendants</u> in connection with their moving papers, employ the dangerously lax approach to trade-secret protection that defendants request here.

### 1. DuPont should be allowed to play a limited role in the discovery process to ensure its trade secrets are adequately protected

To protect the confidentiality of its trade secrets, DuPont requests that it be permitted to assist the government in determining whether documents it intends to produce are either DuPont documents or directly derivative of DuPont documents. Such input is necessary not only because DuPont is the foremost expert regarding its own trade secrets, but also because DuPont has witnessed first-hand defendants' willingness to characterize DuPont's documents as their own, thus making it difficult at best for someone other than DuPont to identify documents containing DuPont work product and proprietary information. The government cannot be expected to recognize all information now in its possession that originated with DuPont.

Among the documents seized by the government are DuPont technical drawings bearing DuPont's logo or other indicia of DuPont's ownership. Reid, Jr. Decl. ¶ 4. These documents would be designated "Confidential-1 Material" pursuant to the protective orders submitted by both DuPont and defendant and thus entitled to enhanced protection. In addition to documents that are clearly authored by DuPont, the government also possesses documents – for example, emails – that communicate highly proprietary information culled from DuPont source documents. *See id.* ¶ 5. Only a reviewer with a sophisticated understanding of DuPont's $TiO_2$ technology would be able to identify that these documents too contain DuPont trade secrets, and thus require the highest level of protection available. Without DuPont's insight, documents containing trade secrets could be erroneously designated Confidential-2 Material, which pursuant to defendants' proposal would allow third parties and experts to retain copies of such documents. More troubling still, if DuPont were prohibited from participating in the review, documents containing its trade secrets may not be designated Confidential at all, thus compounding the damages defendants have already caused. Such an outcome would subvert the important protections intended to apply in Economic Espionage prosecution.

1  Defendants object to DuPont's participation in the discovery process on three grounds.
2  First, they contend that DuPont would obtain access to USAPTI's confidential information.
3  Second, they argue that DuPont's involvement is unnecessary because the government is better
4  equipped to identify DuPont's trade secrets. Third, they claim that were DuPont allowed to
5  participate, the review process would take too long.
6  Without support, defendants claim that the discovery materials "consist primarily of
7  documents seized from USAPTI's own servers that represent years of independent development
8  by USAPTI's engineers." Dkt. # 148 ("Mot.") at 7:21-24. This is false. USAPTI is a non-player
9  in the $TiO_2$ arena, holds no patents, and Walter Liew had bounced from scheme to scheme before
10 embarking on the one leading to his present incarceration. Reid, Jr. Decl. ¶ 7. To put it bluntly,
11 even suggesting that USAPTI is a "competitor" of DuPont (Mot. at 7:25-26) reveals a profound
12 lack of knowledge regarding the $TiO_2$ industry.[3] Also unsupported is defendants' claim that if
13 DuPont were a party to the discovery process here it would receive "far more discovery than
14 would ever be permitted through the Rules of Civil Procedure." *Id.* at 2:10-11. In reality,
15 DuPont has neither the need nor the desire to obtain any USAPTI "technology."[4] Its sole interest
16 is in protecting its valuable trade secrets from further misappropriation and dissemination.
17 Like defendants' claim that DuPont is interested in USAPTI's "technology," the assertion
18 that "a neutral expert is much better situated than DuPont to categorize the discovery [as
19 confidential]" (Mot. at 8:8-9) is not persuasive. DuPont enjoys a competitive advantage in the
20 $TiO_2$ industry *precisely because* no one else is privy to its trade secrets. Indeed, it is for this very
21 reason that Walter Liew's misappropriation conspiracy depended on soliciting former DuPont
22 employees. *See* Dkt. #64, ¶ 19. Also wrong is defendants' assertion that "DuPont already has
23 decided that it intends to designate all USAPTI materials referring to $TiO_2$ as at least

---

[3] To the extent that defendants seek to rely on the pretextual counterclaims filed in the civil litigation (Mot. at 4:2-11), that pleading has already been the subject of one motion to strike, and DuPont will disprove the remaining, spurious contentions at the appropriate time.

[4] Defendants' suggestion that DuPont needs USAPTI to complete a $TiO_2$ plant in China (Mot. at 7:24-8:1) is ridiculous. DuPont has yet to build a plant in China not because it lacks the requisite technology, but rather because the PRC was more interested in stealing DuPont's technology than allowing it to compete with Chinese-owned plants. *See, e.g.,* Dkt. # 64, ¶¶ 1, 2, 18.

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER

Confidential-2 Materials." Mot. at 8:12-13. DuPont has no interest in how the government chooses to designate documents seized from USAPTI that are unrelated to DuPont's trade secrets. It seeks only to prevent further harm to its legitimate competitive advantage.

Lastly, defendants' argument that allowing DuPont to review certain discovery before it is produced would cause undue delay (Mot. at 8:23-9:2) is unfounded speculation. As an initial matter, DuPont has no interest in reviewing documents unrelated to its $TiO_2$ technology; presumably documents relating to $TiO_2$ manufacturing comprise only a subset of the documents the government possesses. Defendants' assertion that DuPont wants to review *all* discovery does not accurately present the issue to the Court. Indeed, DuPont's counsel made this position clear to defendants' counsel during their meet-and-confer telephone call. Glynn Decl. ¶ 4. More significantly, Walter Liew's review of the information while incarcerated will necessarily be limited by the resources at his disposal.[5] There is no reason DuPont could not conduct its review on a rolling basis without significantly impacting Mr. Liew's ability to review the produced material.

Each of defendants' claimed concerns regarding DuPont's participation in the discovery process is supported solely by the *ipse dixit* of their counsel; substantiating evidence is wholly absent.[6] In truth, DuPont's review of documents potentially containing its trade secrets is both necessary and appropriate and will not delay the discovery process to any significant degree. In any event, the Court would retain the ability to modify the protective order should future events warrant.

DuPont's review of the potential trade secrets is necessary because otherwise documents could be unwittingly miscategorized as Confidential-2 Materials, or not designated as

---

[5] In fact, if the Court adopts the government's requested provision requiring that Confidential-1 Material may only be reviewed in the presence of counsel, all defendants will be required to review these documents in bite-size chunks. Mot. at 11:19-23.

[6] Defendants' assertion that courts in this district have barred victims from participating in the discovery process (Mot. at 9:3-4) is misleading. In *U.S. v. Shan Yan Ming*, CR 02-20127, the victim, 3DGeo Development, Inc., was barred from obtaining copies of documents produced *by defendants*. See Ragland Decl., Ex. D, p.1. In *U.S. v. Zhang*, the Court left open the possibility of disclosure to third parties, if it deemed such disclosure appropriate. Ragland Decl., Ex. F at 2:12-13. In any event, none of the submitted material relates to a request by the victim to help the government appropriately designate documents potentially containing its trade secrets.

Confidential at all. Thus, as an alternative to the dual-category Confidentiality approach, DuPont would be willing to compromise by agreeing to a protective order pursuant to which all documents are designated Confidential initially, provided that the custody and notice provisions discussed below are adopted. It should be noted that the proposed protective orders submitted by both defendants and DuPont provide for a de-designating procedure the parties could use if public access to certain documents were appropriate.

### 2. Defendants' access to DuPont's confidential information must be restricted.

DuPont's proposed protective order restricts access to Confidential-1 Material to defendants' counsel and their staff. Defendants complain that such restriction violates their rights under the Confrontation Clause (Mot. at 7:15-16), but there is precedent for discovery in criminal actions being provided on an attorneys'-eyes-only basis. *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.2d 93, 127 (2d Cir. 2008) (affirming that it was not abuse of discretion for District Court to allow government to limit production of classified information to defendant's attorneys: "Our understanding that production of materials to a party's attorney alone falls within the common meaning of 'discovery' further strengthens our conviction that the discovery restrictions imposed by the District Court were perfectly appropriate and valid in light of the standard by which our Court determines when the government's privilege 'must give way ... to a criminal defendant's right to present a meaningful defense'"); *U.S. v. Vaughn*, 2008 WL 4615030, at *3 (E.D. Cal. Oct. 17, 2008) (in action alleging sex trafficking offenses involving minors, disclosures involving witness information were ordered on attorneys-eyes-only basis). Such a restriction is appropriate where, as here, defendants cannot be trusted with the discovery materials. *See id*; *see also United States v. Hsu*, 185 F.R.D. 192, 193 (E.D. Pa. 1999) (denying defendants' request for production of unredacted documents that contained victim's trade secrets).

Notwithstanding the appropriateness of an attorneys'-eyes-only provision, were the Court inclined to permit defendants to review DuPont's confidential information, there is no reason that defendants such as these, who are charged with misappropriating trade secrets, should be

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER

permitted to retain custody of the very trade secrets that they have allegedly stolen and sold. They face a dire situation, and desperate people do desperate things. Discovery should not be permitted to enable further mischief.

Curiously, despite defendants fighting aggressively against any restrictions on defendants' access to DuPont's trade secrets, two of the three protective orders submitted by defense counsel themselves – and claimed to be representative of the treatment of confidentiality concerns by other courts in this District (Mot. at 6:17-7:6) – precluded defendants in those cases from retaining custody of confidential documents. *See* Declaration of Steven P. Ragland (Dkt. # 151), Ex. A, ¶ 3 (providing that confidential material is to be retained by counsel, kept in counsels' office, and, if defendants are incarcerated, may be brought to the jailhouse but not left with defendants); Ex. E, ¶ 3 (Federal Public Defender may bring Confidential Material to jail but "shall not leave any Confidential Material with the defendant."). In fact, during the meet-and-confer process, defense counsel represented to DuPont's counsel that he was involved in negotiating the *Lee* protective order (Ex. A) on behalf of the victim in that case. Glynn Decl. ¶ 6. Counsel there succeeded in obtaining the same protection DuPont seeks here. The reasonableness of such a solution is not dependent on whom one represents.

DuPont's concerns regarding the defendants continued misappropriation and dissemination of its trade secrets are warranted in light of the facts giving rise to this action. Such concerns require that the Court prohibit, or at minimum restrict, defendants' access to DuPont's confidential information. Moreover, were the Court inclined to allow defendants to review Confidential-1 Material, DuPont respectfully requests that the Court explicitly prohibit defendants from taking notes from the documents or copying the material in any way.

### 3. The notice provisions proposed by DuPont are essential to the protection of its trade secrets

The $TiO_2$ universe is extremely small and most knowledgeable individuals are associated with either DuPont or one of its competitors. Reid, Jr. Decl. ¶ 6; *see also* Mot. at 11:12-13. Consequently, DuPont's concerns that third parties and retained experts who gain access to its trade secrets will use their new-found knowledge after this litigation cannot be overstated. It

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER

would be naïve to think that an expert in this case who is later employed by a competitor of DuPont could compartmentalize and sequester knowledge gleaned from DuPont's confidential documents.[7]

To address these concerns, DuPont's proposed protective order requires that defendants provide notice to the government and DuPont of the identity of any person to whom they propose disclosing Confidential-1 Materials: seven days before disclosure to a third-party witness; and ten days before disclosure to a potential expert witness. Glynn Decl., Ex. A, ¶¶ 6, 8. In both cases, DuPont or the government would be permitted to object to the proposed disclosure during the applicable time frame. *Id.* ¶¶ 6(a), 8(a). Moreover, disclosure to a non-expert third-party competitor of DuPont is expressly prohibited. *Id.* ¶ 6(b). Such mechanisms for regulating third-party and expert access to confidential documents are not uncommon; indeed, they too appear in the protective orders submitted by defense counsel as models. *See* Ragland Decl., Ex. A (confidential discovery shall be furnished "**to no one other than**" defendants, defense counsel, and defense counsel staff to whom disclosure is necessary (emphasis in original)); Ex. C, ¶ 4 (notice of intent to disclose to third party required, and government may object to proposed disclosure based on, *inter alia*, concerns raised by victim ); Ex. E, ¶ 4 (notice of intent to disclose to third party required), ¶ 10 (parties may object to disclosure to certain experts, including experts employed by victim's competitor).

Defendants complain that the proposed notice restrictions violate their rights under the Fifth Amendment, and run afoul of Federal Rules of Criminal Procedure and the attorney-client privilege. Mot. at 10:7-17. The authority relied on by defendant, however, fails to substantiate these complaints. *Jones v. Superior Court*, 58 Cal.2d 56, 60-61 (1962), stands for the

---

[7] Furthermore, under defendants' proposal, third-parties who "authored and/or had prior access" to DuPont's confidential material would be permitted review DuPont's Confidential-1 Material if defense counsel deems it necessary. Mot. at 5:23-26; Ragland Decl. Ex. B ¶6(d)). This provision is unacceptable, considering that such individuals would include USAPTI employees who were privy to misappropriated DuPont information and USAPTI clients to which the material was sold; in other words, defendants' co-conspirators. At minimum, defendants' proposed protective order must be modified to preclude such individuals from viewing DuPont's Confidential-1 Material **at all**.

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER

unremarkable proposition that the prosecution is not entitled to reports made by a defendant's expert physicians, as these are protected by the attorney-client privilege. The *names of the witnesses*, however, were afforded no such protection. *Id.* at 61. *Ruiz v. Superior Court*, 275 Cal.App.2d 633, 634-36 (1969), also cited by defendants, *affirms* that the prosecution is entitled to the names of defense witnesses, but not "all statements of any witnesses interviewed by defense counsel, whether or not the defense intends to introduce such statements." *Id.* at 635.

Equally unpersuasive is defendants' argument that Federal Rule of Criminal Procedure 16 mandates that they be permitted to show DuPont's confidential documents to an expert witness without disclosing whether the expert is a competitor of DuPont. The plain language of Federal Rule of Criminal Procedure 16(b)(1)(C) relates only to the disclosure of expert *testimony* (Mot. at 11:3-4) and defendants cite no authority expanding the scope of this Rule to govern disclosures of an expert's name and *curriculum vitae*. The potential testimony of defendants' experts is of no consequence to DuPont. But ensuring that competitors are not free to access its commercially-valuable trade secrets is. Requiring defendants to disclose the affiliation of their expert witnesses is necessary to ensure the protection of DuPont's rights.

The protection requested by DuPont is not unique or unwarranted. A protective order modeled after those used in other Economic Espionage cases would require notice prior to defendants disclosing the information to third parties or retained experts. Again, if such a procedure proves unwieldy, the Court has the ability to modify the order for good cause shown.

**IV. CONCLUSION**

DuPont respects the rights of the defendants, even though they have disregarded DuPont's intellectual property rights. The provisions DuPont has proposed are reasonable and have been implemented in other cases. We respectfully request that the Court enter a form of protective order that includes such protections.

| | | |
|---|---|---|
| 1 | Dated: June 6, 2012 | GLYNN & FINLEY, LLP |
| 2 | | CLEMENT L. GLYNN |
| | | MORGAN K. LOPEZ |
| 3 | | JONATHAN A. ELDREDGE |
| | | One Walnut Creek Center |
| 4 | | 100 Pringle Avenue, Suite 500 |
| | | Walnut Creek, CA 94596 |
| 5 | | |
| | | MORRIS JAMES LLP |
| 6 | | P. Clarkson Collins, Jr. |
| | | Jason C. Jowers |
| 7 | | 500 Delaware Avenue, Suite 1500 |
| | | Wilmington, Delaware 19801 |

By: _/s/_

Attorneys for E. I. du Pont de Nemours and Company

- 14 -

DUPONT'S OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER