PAGES 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NATHANAEL M. COUSINS, MAGISTRATE JUDGE

UNITED STATES OF AMERICA,       )
                                )
            PLAINTIFF,          )
                                )
 VS.                            )  NO. CR 11-573 JSW (NC)
                                )
WALTER LIEW, CHRISTINA LIEW,    )
ROBERT J. MAEGERLE AND USA      )
PERFORMANCE TECHNOLOGY, INC.,   )
                                )  SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.         )  WEDNESDAY
                                )  JUNE 20, 2012
_____)  11:00 O'CLOCK A.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          **OFFICE OF THE UNITED STATES ATTORNEY**
                           450 GOLDEN GATE AVE.
                           SAN FRANCISCO, CALIFORNIA  94102
                     **BY:  PETER AXELROD,**
                           **ASSISTANT UNITED STATES ATTORNEY**

**FOR DEFENDANTS**          **KEKER & VAN NEST LLP**
**WALTER LIEW AND USA**      633 BATTERY STREET
**PERFORMANCE**             **SAN FRANCISCO, CALIFORNIA 94111**
**TECHONOLGY:**       **BY:  STUART L. GASNER, ESQUIRE**
                           **STEVEN P. RAGLAND, ESQUIRE**
                           **SIMONA A. AGNOLUCCI, ATTORNEY AT LAW**


FURTHER APPEARANCES ON NEXT PAGE.
*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
          *OFFICIAL REPORTER - US DISTRICT COURT*

1    **FURTHER APPEARANCES:**

2    **FOR DEFENDANT ROBERT J. MAEGERLE:**

3    **MCKENNEY & FROELICH**

4    TWO MIDTOWN PLAZA, SUITE 1250

5    1349 WEST PEACHTREE STREET, N.W.

6    ATLANTA, GEORGIA 30390-2920

7    404-881-8040

8    **BY:   JEROME J. FROELICH, JR., ESQUIRE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**P R O C E E D I N G S**</u>

**JUNE 20, 2012**                              **11:00 O'CLOCK A.M.**


       **THE CLERK:**  CALLING -- EXCUSE ME. CALLING CRIMINAL
11-573, UNITED STATES VERSUS WALTER LIEW, ET AL.

       **THE COURT:**  GOOD MORNING, ALL.  APPEARANCES, PLEASE.

       **MR. AXELROD:**  GOOD MORNING, YOUR HONOR.  PETE AXELROD
FOR THE UNITED STATES.

       **MR. AXELROD:**  GOOD MORNING.

       **MS. AGNOLUCCI:**  GOOD MORNING, YOUR HONOR.  SIMONA
AGNOLUCCI, STEVEN RAGLAND AND STUART GASNER FOR DEFENDANTS
WALTER LIEW AND USAPTI.

       **MR. FROELICH:**  GOOD MORNING, YOUR HONOR.  JERRY
FROELICH FOR MR. MAEGERLE.

       **THE COURT:**  MR. FROELICH.

       **MR. GLYNN:**  GOOD MORNING, YOUR HONOR.  CLEMENT GLYNN
AND MORGAN LOPEZ FOR DUPONT, THIRD PARTY.

       **THE COURT:**  GOOD MORNING.

       GOOD MORNING, MR. LIEW.

       **DEFENDANT LIEW:**  GOOD MORNING, YOUR HONOR.

       **THE COURT:**  IS THAT EVERYONE?  WE HAVE GOT ALL THE
PARTIES REPRESENTED HERE?

       **MR. AXELROD:**  I BELIEVE THAT CHRISTINA LIEW AND HER
COUNSEL, DORON WEINBERG ARE NOT HERE, AND THEY WAIVED THEIR
APPEARANCE THE LAST TIME WE WERE BEFORE THE COURT.

1       **THE COURT:**  THAT'S CORRECT.  AND I DID RECEIVE

2  MATERIALS FROM EVERYONE BOTH AS TO THE PROTECTIVE ORDER, WHICH

3  IS THE FIRST MATTER OF BUSINESS TODAY, AND ALSO THE STATUS

4  REPORTS FROM THE GOVERNMENT AND THE DEFENSE.

5       THE FIRST MATTER OF BUSINESS IS THE DUELING PROPOSED

6  PROTECTIVE ORDERS.  WE'LL THEN TURN BRIEFLY TO THE STATUS OF

7  DISCOVERY OVER ALL, ALTHOUGH MY INTENTION IS REALLY TO DEFER

8  THAT UNTIL ANOTHER DAY ONCE WE'VE WORKED OUT A PROTECTIVE ORDER,

9  AND, OF COURSE, A NUMBER OF THINGS THAT ARE GOING TO OCCUR SOON

10  AFTER THAT.

11       AND ONCE THOSE THINGS HAVE OCCURRED, I WANT TO COME

12  BACK HERE AND SEE WHAT HAS OCCURRED AND GET A FURTHER GAME PLAN

13  ON GOING FORWARD.

14       BASED ON OUR LAST DISCUSSIONS, GETTING THE PROTECTIVE

15  ORDER RESOLVED IS A SIGNIFICANT EVENT FOR FURTHER DISCOVERY TO

16  TAKE PLACE.  AND THAT'S WHAT WE'RE GOING TO DO TODAY.

17       I'M GOING TO GIVE YOU MY TENTATIVE THOUGHTS SUBJECT

18  TO EVERYONE'S INPUT, HAVING REVIEWED THE MATERIALS.

19       WE HAVE HERE A BALANCING OF THE RIGHTS AND

20  OBLIGATIONS THAT HAS TO BE PERFORMED.  AND THEY ARE IMPORTANT

21  RIGHTS AND OBLIGATIONS.  AND WE'VE GOT TO FIGURE OUT HOW TO MESH

22  THEM TOGETHER.

23       FROM DUPONT'S PERSPECTIVE, THEY ARE THE ALLEGED CRIME

24  VICTIM IN THIS CASE.  AND UNDER THE CRIME VICTIM'S ACT THEY HAVE

25  A RIGHT TO THE CONFER WITH THE GOVERNMENT AND A RIGHT TO NOTICE

1    OF PROCEEDINGS.  AND THEY HAVE CERTAIN STATUTORY RIGHTS IN THE

2    CASE, AS WELL AS CERTAIN INTERESTS IN THE CIVIL LITIGATION THAT

3    ARE IMPLICATED FROM THE PROCEEDINGS.

4            AND THOSE ARE IMPORTANT RIGHTS AND INTERESTS, AND

5    THEY HAVE BEEN PERMITTED TO FILE A PROPOSED PROTECTIVE ORDER AND

6    THE COURT HAS CONSIDERED THAT AND TAKES IT INTO CONSIDERATION.

7            FOR THE GOVERNMENT'S PRIMARILY OBLIGATIONS, THEY ARE

8    THE PARTY PROCEEDING AS, OF COURSE, THE PROSECUTING PARTY WITH

9    ALL THE BURDEN IN THE CASE.  AND THEY HAVE OBLIGATIONS BOTH

10   CONSTITUTIONAL AND BY RULE TO TURN OVER MATERIALS TO THE DEFENSE

11   IN A TIMELY WAY.

12           IT'S A CASE IN WHICH MR. LIEW IS IN CUSTODY AND ALL

13   THE DEFENDANTS HAVE A RIGHT TO A SPEEDY TRIAL BUT PARTICULARLY

14   AS TO MR. LIEW, WHO IS IN CUSTODY, HE HAS A RIGHT TO A TRIAL

15   WITHIN 70 DAYS.

16           THAT TIME PERIOD CAN BE EXTENDED AND HAS BEEN

17   EXTENDED IN THIS CASE SO THAT HIS ATTORNEYS CAN INVESTIGATE THE

18   CASE AND THE CHARGES AGAINST HIM.  BUT ONE OF THE THINGS THEY

19   NEED TO DO IS TO REVIEW THE DISCOVERY IN THE CASE TO HAVE AN

20   OPPORTUNITY TO MOUNT A DEFENSE.  AND UNTIL THEY HAVE THOSE

21   MATERIALS THEY ARE LIMITED IN THEIR ABILITY TO DEFEND THE CASE.

22   AND SO THEY HAVE AN IMPORTANT -- ALL THE DEFENDANTS HAVE AN

23   IMPORTANT CONSTITUTIONAL RIGHT TO DEFEND THEMSELVES.

24           AND, THEREFORE, THE GOVERNMENT HAS THE BURDEN TO TURN

25   THINGS OVER.

1          FINALLY, FROM THE DEFENSE SIDE, THERE'S -- I

2    MENTIONED A NUMBER OF THEIR RIGHTS.  BUT THEY ARE ALSO INVOLVED

3    IN CIVIL LITIGATION AGAINST DUPONT.  AND THERE ARE CERTAIN RULES

4    OF DISCOVERY THAT GOVERN THOSE CIVIL PROCEEDINGS, AND THERE IS

5    SOME CONFLICT BETWEEN THE RULES OF CRIMINAL PROCEDURE AND CIVIL

6    PROCEDURE.

7          THE COURT HAS IN MIND BALANCING THOSE RIGHTS.  AND

8    THERE ARE TRADE SECRETS AND OTHER INTERESTS THAT THE DEFENSE HAS

9    IN NOT TURNING OVER TO DUPONT AND NOT TURNING OVER TO THE

10   GOVERNMENT THAT ARE AT STAKE HERE.

11         AND UNDER THE CRIMINAL RULES OF PROCEDURE THERE'S

12   ALSO RECIPROCAL OBLIGATIONS.  THE DEFENSE HAS TO TURN OVER

13   MATERIALS TO THE GOVERNMENT AND POTENTIALLY THAT DUPONT COULD

14   HAVE ACCESS TO.  AND SO THE PROTECTIVE ORDER HAS TO BEAR IN MIND

15   HOW ANY -- IT'S A RECIPROCAL RULES, HOW MATERIALS TURNED OVER BY

16   THE DEFENSE MIGHT BE HANDLED BY THE GOVERNMENT, AND IN WHAT WAY.

17         SO THOSE ALL ARE ALL THE COMPETING INTERESTS. IN

18   WEIGHING ALL OF THEM MY INCLINATION OVERALL IS TO FOLLOW THE

19   PROPOSAL OF THE GOVERNMENT HERE.  AND THE REASONS WHY ARE I FIND

20   THAT IT MOST FOLLOWS WHAT COURTS IN THIS DISTRICT HAVE DONE

21   PREVIOUSLY.

22         AND THAT'S THE MING AND ZHANG ORDERS FROM OTHER

23   DISTRICT COURT -- FROM DISTRICT COURT JUDGES HERE WHO PREVIOUSLY

24   CONFRONTED THESE DUELING INTERESTS AND HAVE COME FORWARD WITH

25   PROTECTIVE ORDERS THAT ADDRESS THEM, NOT IN IDENTICAL WAYS.  AND

1     I MAY NOT FOLLOW THOSE ORDERS EXACTLY. BUT, GENERALLY SPEAKING,

2     THAT'S MY INCLINATION IS TO FOLLOW WHAT HAS BEEN DONE BEFORE.

3             AND I FEEL THE GOVERNMENT'S PROPOSAL IS CLOSEST TO

4     THOSE PRIOR EFFORTS, AND THAT'S WHAT I INTEND TO FOLLOW.

5             AS TO DUPONT'S PROPOSAL, I FIND THAT IT'S REALLY

6     OVERLY CUMBERSOME TOWARDS THE TIMELY PRODUCTION OF MATERIAL FROM

7     THE GOVERNMENT TO THE DEFENSE AND WOULD SLOW THINGS DOWN. AND

8     ALTHOUGH THEY HAVE AN INTEREST WITH CONFERRING WITH THE

9     GOVERNMENT, I DON'T FIND THAT THERE'S A STATUTORY BASIS TO DO

10     ALL THE THINGS THAT THEY PROPOSE TO DO.

11             I FIND THAT IF I WERE TO ADOPT IT IN WHOLE IT WOULD

12     UNFAIRLY LIMIT THE DEFENSE IN ITS PREPARATION OF THE CASE, AND

13     THAT'S THE REASON THAT I'M NOT GOING TO ADOPT ITS PROPOSAL.

14             THERE ARE SOME COMPONENTS OF THE DEFENSE PROPOSAL

15     THAT I'M INCLINED TO ADOPT AND SORT OF MELD INTO THE

16     GOVERNMENT'S PROPOSAL, AND I'LL DISCUSS THOSE.

17             BUT, OVERALL, I FIND THAT THE GOVERNMENT'S PROPOSAL

18     IS MOST CLOSELY FOLLOWS WHAT'S PREVIOUSLY BEEN PERMITTED IN THIS

19     DISTRICT, AND I'M PROPOSED TO FOLLOW.

20             I'LL GIVE EVERY PARTY AN OPPORTUNITY TO SPEAK TO

21     THESE PROPOSALS. I'M GOING TO HIGHLIGHT THE ONES I THINK ARE

22     THE CLOSEST ISSUES AND ARE THE ONES THAT HAVE BEEN ADDRESSED A

23     LITTLE BIT DIFFERENTLY BETWEEN THE MING AND ZHANG ORDERS.

24             AND I MIGHT BE, AT MOST, AMENABLE TO HEARING ABOUT IT

25     AND HAVING MY MIND CHANGED. BUT, AGAIN, I'LL GIVE EVERYBODY A

1   CHANCE TO TELL ME.  AND I THINK FOCUSING ON WHAT'S WRONG WITH

2   THE GOVERNMENT'S PROPOSAL WOULD BE THE MOST HELPFUL FOR THE

3   OTHER PARTIES HERE.

4           AND THE GOVERNMENT CAN REBUT THOSE IDEAS.

5           SO THE ISSUES THAT I THINK ARE THE CLOSEST ONES ARE

6   THE IDEA OF WHETHER THE GOVERNMENT SHOULD PROVIDE ACCESS TO

7   DUPONT OF DOCUMENTS SUBJECT TO PRODUCTION, AND SORT OF WHAT

8   NOTICE SHOULD BE GIVEN WHEN THAT OCCURS.

9           AND LOOKING AT PARAGRAPH FOUR IN THE MING AND ZHANG

10  ORDERS, THERE'S REQUIRED NOTICE TO OPPOSING PARTY IF ANY

11  DOCUMENT IS DISCLOSED TO ANY NON-PARTY.  AND THAT WOULD INCLUDE

12  A NONPARTY VICTIM.

13          SO MY INCLINATION IS TO FOLLOW THAT PROPOSAL AND TO

14  REQUIRE NOTICE TO OTHER PARTIES IF ANYTHING IS DISCLOSED TO A

15  NON-PARTY.  AND I WOULD INCLUDE DUPONT AS A NON-PARTY.

16          THERE'S AN ISSUE ABOUT THE DISCLOSURE OF THE

17  CATEGORY-1 MATERIALS TO NONEXPERT WITNESSES AND WHAT SHOULD

18  OCCUR THERE. AND MY INCLINATION IS, AGAIN, TO FOLLOW THE MING

19  AND ZHANG ORDERS, PARAGRAPH FOUR, AND TO REQUIRE NOTICE TO

20  OPPOSING PARTY IF DOCUMENTS ARE DISCLOSED.

21          AND I'M THINKING TO TAKE OUT THE PROVISION THAT THE

22  GOVERNMENT HAS A RIGHT TO SHOW ANY DOCUMENTS TO DUPONT AT ANY

23  TIME.  I THINK THAT'S A LITTLE BIT TOO MUCH DISCRETION.  I'M

24  THINKING OF HAVING SOMETHING WHERE THERE'S A NOTICE AND PERHAPS

25  A RETURN TO COURT BEFORE THAT OCCURS.  AND WE'LL SORT OF SEE HOW

1    THIS GOES. AND THAT'S SOMETHING THAT WE NEED TO WORK OUT.  BUT

2    THAT'S, AS DRAFTED BY THE GOVERNMENT, I THINK A LITTLE BIT TOO

3    LOOSE.  BUT SOMETHING A LITTLE BIT LESS IS APPROPRIATE.

4              AS TO THE DISCLOSE OF CATEGORY-1 MATERIALS TO EXPERT

5    WITNESSES I'M INCLINED TO ADOPT THE PROVISIONS IN ZHANG,

6    PARAGRAPH SIX, WITHOUT MODIFICATIONS.

7              THERE'S A QUESTION ABOUT MAINTAINING DOCUMENTS, THE

8    CATEGORY-1 DOCUMENTS.  THE GOVERNMENT SAYS THERE'S A SMALL

9    NUMBER, A FEW BOXES OF MATERIALS.

10             THE DEFENSE SAYS, WELL, THEY NEED TO HAVE THESE ON

11   COMPUTER. MY INCLINATION IS TO ADOPT THE GOVERNMENT'S POSITION

12   ON THOSE GIVEN THE STATED NUMBER OF MATERIALS.  IF THERE WERE

13   MORE, IF WE WERE TALKING ABOUT A TRUCKLOAD OF MATERIALS I THINK

14   THAT WOULD LIMIT THE DEFENSE.

15             BUT GIVEN HOW MANY MATERIALS THE GOVERNMENT SAYS IT

16   HAS IT FALLS IN CATEGORY-1.  I THINK HAVING A VERY STRICT

17   RESTRICTION ON THOSE DOCUMENTS THAT THEY NOT BE ACCESSIBLE BY

18   INTERNET OR OTHER ELECTRONIC MEANS IS A REASONABLE RESTRICTION

19   UNDER THE CIRCUMSTANCES.

20             SO MY TENTATIVE VIEW IS TO ADOPT THE GOVERNMENT'S

21   VIEW ON THOSE, GIVEN THE HIGHLY SENSITIVE NATURE OF THOSE

22   DOCUMENTS.  AND IF LATER IN THE CASE IT TURNS OUT THERE IS MANY

23   MORE DOCUMENTS IN THAT CATEGORY THAN IS PRESENTLY STATED, WELL,

24   THEN, MAYBE WE HAVE TO REVISIT THAT.  BUT THAT'S MY PRESENT

25   VIEW, THAT IS TO GIVE A TIGHT RESTRICTION ON THOSE.

1      SO THOSE ARE MY VIEWS ON SORT OF THE CLOSEST ISSUES.

2  I KNOW THERE'S MANY OTHER CATEGORIES THAT THE PARTIES ARE

3  INTERESTED IN.  BUT I'LL LEAVE IT TO YOU TO PRIORITIZE THE

4  THINGS THAT ARE MOST IMPORTANT TO YOU.

5      MR. AXELROD, YOU MAY HAVE THE LEAST OBJECTION TO MY

6  PROPOSAL, BUT I'LL START WITH YOU AS THE GOVERNMENT, AS THE

7  PLAINTIFF IN THE CASE, TO GIVE YOUR VIEWS ON THE PROTECTIVE

8  ORDER.

9      **MR. AXELROD:**  VERY WELL.   THANK YOU, YOUR HONOR.

10      JUST LET ME TRY TO TRACK THE ISSUES THAT THE COURT

11  HAS RAISED AND RESPOND.

12      THE FIRST ISSUE BEING THE GOVERNMENT'S ACCESS, THE

13  ABILITY TO, IN ITS DISCRETION, REVIEW MATERIALS WITH DUPONT.

14      **THE COURT:**  ALL RIGHT.  THIS IS PARAGRAPH THREE OF

15  YOUR PROPOSED ORDER.

16      **MR. AXELROD:**  OKAY. SO THE CONCERN -- AND THE COURT

17  INDICATED, AS LEAST AS I UNDERSTOOD IT, THAT IT WAS INCLINED TO

18  IMPOSE SOME NOTICE REQUIREMENT.  NOT THAT IT WAS GOING TO

19  PRECLUDE US FROM CONTINUING TO CONSULT WITH THE VICTIM AS WE

20  DEEMED APPROPRIATE, BUT THAT IT WOULD REQUIRE SOME NOTICE.

21      AND I'M JUST TRYING TO THINK THROUGH.  AND YOU ALSO

22  MENTIONED THAT THERE MIGHT BE TIMING ISSUES.  AND I THINK WHAT

23  WOULD BE HELPFUL WOULD BE TO SORT OF GIVE THE COURT SOME SENSE

24  OF THE NATURE OF THE CONSULTATION SO THAT I CAN SORT OF

25  UNDERSTAND AND HELP THE COURT FIGURE OUT HOW IT WANTS TO HANDLE

1    THIS ISSUE.

2              BUT, OBVIOUSLY, THERE'S NO DISPUTE THAT THERE'S AN

3    ENORMOUS VOLUME OF MATERIALS IN THIS CASE. THERE'S OBVIOUSLY A

4    DISPUTE AMONG THE PARTIES AS TO WHOSE TRADE SECRETS WE'RE

5    TALKING ABOUT, YOU KNOW.  BUT, OBVIOUSLY, THE INDICTMENT SPEAKS

6    FOR ITSELF.  THE SEARCH WARRANTS SPEAK FOR THEMSELVES.

7              WALTER LIEW IN HIS OWN WRITING HAS SAID THAT -- YOU

8    KNOW, AND THESE ARE DOCUMENTS THAT WE PRESENTED TO THE COURT IN

9    CONTEXT OF THE BAIL PROCEEDINGS -- THAT HIS COMPANY HAS MASTERED

10   THE COMPLETE DUPONT, YOU KNOW, TITANIUM DIOXIDE TECHNOLOGY.

11             SO THE REALITY IS THE CONCERNS ABOUT DUPONT TRADE

12   SECRETS BEING IN THE POSSESSION OF WALTER LIEW, THAT IS A REAL

13   AND PRESENT, EVER PRESENT CONCERN.

14             AND SO WE BELIEVE IT'S ENTIRELY APPROPRIATE TO HAVE

15   THE ABILITY TO SHOW MATERIALS TO DUPONT, NOT BECAUSE THEY ARE

16   GOING TO BE THE ONES WHO MAKE THE DECISION. THAT'S OUR CALL. BUT

17   BECAUSE THEY ARE THE ONES WHO HAVE THE EXPERTISE ABOUT WHAT IS,

18   IN FACT -- WHAT ARE THEIR TRADE SECRETS.

19             AND I BRING THIS TO THE COURT'S ATTENTION BECAUSE IT

20   IS THIS PROCESS IS A FLUID ONE.  THERE'S AN INDICTMENT. THERE IS

21   DISCOVERY.  THERE'S CHARGES. BUT WE'RE ALWAYS CONTINUING TO LOOK

22   AT THE EVIDENCE, AND WE LEARN NEW THINGS, AND WE GO BACK AND

23   WANT TO EXPLORE.

24             THE CONCERN THAT THE GOVERNMENT HAS, THAT I HAVE, IS

25   THAT -- AND I DON'T KNOW WHAT THE COURT IS EXACTLY THINKING.

1    BUT THEN, WE'RE IN A POSITION WHERE EVERY TIME WE'RE GOING TO

2    SIT DOWN WITH DUPONT AND SHOW THEM CERTAIN INFORMATION, WE'RE

3    GOING TO THEN BE SORT OF INTERRUPTING OUR INVESTIGATION TO SAY:

4              "OKAY, WELL HERE'S -- YOU KNOW, HERE'S SOME THINGS

5              WE'RE GOING TO SHOW DUPONT."

6              AND THEN, YOU KNOW, ARE WE GOING TO BE HERE ON A

7    REGULAR BASIS SAYING:

8              "WELL, YOU CAN'T SHOW THEM THIS"?

9              AND, YOU KNOW, THAT MAY BE HOW IT GOES. I JUST -- MY

10   CONCERN IS -- AND I DON'T ENVY THE COURT.  THERE ARE A LOT OF

11   INTERESTS TO BALANCE.

12             THE CONCERN THAT I'M RAISING IS THAT WE END UP IN A

13   POSITION WHERE THE GOVERNMENT'S ABILITY TO THOROUGHLY

14   INVESTIGATE ITS CASE -- THERE'S NO QUESTION, YOU KNOW, WE'VE

15   LAWFULLY OBTAINED ALL THE INFORMATION WE'VE OBTAINED THROUGH THE

16   PROCESS THAT SUDDENLY THAT'S GOING TO BE HAMPERED BY THIS

17   SUDDENLY BECOMING AKIN TO A CIVIL CASE, BECAUSE IT'S NOT A CIVIL

18   CASE. IT'S JUST NOT.

19             IT'S A CRIMINAL CASE.  THERE HAVE BEEN FINDINGS OF

20   PROBABLE CAUSE. IT WOULD BE -- THE FACT THAT THERE'S A CIVIL

21   CASE THAT EXISTS, OKAY. BUT IT DOESN'T -- IT DOESN'T IMPACT

22   CERTAINLY OUR RESPONSIBILITIES AND OUR INVESTIGATIVE INTERESTS.

23             AND MY CONCERN IS THAT A REQUIREMENT THAT WE PROVIDE

24   ADVANCE NOTICE MAY SORT OF PUSH US IN A DIRECTION THAT IS GOING

25   TO BE CHALLENGING. BUT THAT'S THAT ISSUE.

1         I'M HAPPY TO MOVE ON TO THE NEXT ONE, WHICH IS -- AND

2   I WOULD SAY ON THIS POINT TO THE EXTENT ANY OF THE DEFENDANTS

3   WANT TO CLAIM THAT THEY HAVE THEIR OWN TRADE SECRET INTEREST IN

4   SOME PARTICULAR ITEM, WE INVITE THEM TO SHARE THAT WITH US.

5         I MEAN, IT'S ONE THING TO SAY IT.  IT'S ANOTHER THING

6   TO ACTUALLY, YOU KNOW, PROVE IT UP AND ARTICULATE IT:

7            "WELL, THIS SPECIFIC ITEM, AND HERE'S WHY."

8         WE'RE OPEN TO THAT DISCUSSION. BUT, YOU KNOW, THE

9   RECORD BEFORE US IS -- WE'VE HAD THE THEFT OF TRADE SECRETS.

10   AND, YOU KNOW, PERIOD.  AND WE NEED TO KEEP DOING OUR JOB.  AND

11   I'M CONCERNED ABOUT LIMITING OUR ABILITY TO CONSULT WITH DUPONT,

12   YOU KNOW, WITHOUT ENDING UP IN TOO MUCH SORT OF COLLATERAL

13   LITIGATION.

14         THE EXPERT NOTICE PROVISION, I UNDERSTAND. I THINK

15   THAT, YOU KNOW, THAT WAS ONE OF THE PROPOSALS THAT WE SAID WAS A

16   REASONABLE ALTERNATIVE.  SO I THINK I GET THAT.

17         AND THEN, THE OTHER ITEM YOU MENTIONED WAS SORT OF

18   NOT PUTTING THE CONFIDENTIAL ONE MATERIALS ON THE COMPUTER.  AND

19   WE STAND BY EVERYTHING THAT WE'VE SAID IN OUR PAPERS.

20         AND I THINK THAT -- AND I WANT TO MAKE ONE POINT

21   CLEAR, BECAUSE THIS MAY NOT HAVE BEEN CLEAR.

22         SO THE ITEMS THAT ARE IN THE CONFIDENTIAL ONE

23   CATEGORY, IT'S A LIMITED UNIVERSE OF MATERIALS. WE DID INDICATE

24   IN OUR PROPOSED ORDER THAT WE RESERVED THE RIGHT AS WE GO

25   THROUGH, IF WE DETERMINE, HEY, SOMETHING IS CONFIDENTIAL TWO,

1   BUT NOW WE ACTUALLY THINK THIS IS DERIVATIVE OF A DUPONT TRADE

2   SECRET, TO THEN SAY, YOU KNOW WHAT?  THIS ITEM IS NOW GOT TO

3   MOVE TO CATEGORY-1.

4             THAT IS PART OF THE DESIGN OF THE ORDER.  AND FROM

5   OUR PERSPECTIVE IT'S:  WE NEED TO GET DISCOVERY DO THE DEFENSE.

6   WE WANT TO MAKE THAT DISCLOSURE AS QUICKLY AS WE CAN, BUT WE

7   HAVE TO MANAGE THIS PROCESS.  AND WE KIND OF CAME TO OUR OWN --

8   WE TRIED TO STRIKE THE BALANCE AS BEST WE COULD.

9             BUT I WANT TO THE MAKE SURE THAT EVERYONE UNDERSTOOD

10  THAT THAT WAS SOMETHING WE CONTEMPLATED IN THE ORDER.  AND MAYBE

11  THE COURT ALREADY UNDERSTANDS THAT, BUT I WANTED TO MAKE SURE

12  THAT THAT WAS CLEAR.

13            **THE COURT:**  AND THE GRAY AREA IN THAT IS SORT OF THE

14  VOLUME OF MATERIALS THAT LATER GET MOVED FROM CATEGORY-2 TO

15  CATEGORY-1.  AND CONCERN THE DEFENSE RAISED WAS THIS IS GOING TO

16  BE A HUGE AMOUNT OF MATERIAL.

17            AND MY VIEW IS:  LET'S WAIT AND SEE.

18            **MR. AXELROD:**  UNDERSTOOD.

19            **THE COURT:**  ANYTHING ELSE FOR THE COURT TO CONSIDER?

20            **MR. AXELROD:**  NO, I DON'T BELIEVE SO, YOUR HONOR.

21            **THE COURT:**  ALL RIGHT.  LET ME THEN TURN TO THE

22  DEFENSE NEXT -- AND WE'LL GET TO DUPONT AT THE END -- IN

23  WHICHEVER ORDER THE DEFENSE WOULD LIKE TO TAKE UP THE ISSUES.

24            **MS. AGNOLUCCI:**  AS YOUR HONOR NOTED, THIS EXERCISE

25  INVOLVES BALANCING A NUMBER OF COMPETING INTERESTS.  AND I JUST

1   WANT TO THE RESPOND TO THE CONCERNS RAISED BY THE GOVERNMENT

2   ABOUT THE NATURE OF THESE DOCUMENTS.

3           **THE COURT:**  SURE.

4           **MS. AGNOLUCCI:**  IT'S CRITICAL IN FASHIONING A

5   SOLUTION HERE THAT WE KEEP IN MIND THE VERY UNIQUE NATURE OF THE

6   DISCOVERY IN THIS CASE.

7           WE'RE DEALING HERE WITH 13 TO 14 TERABYTES OF

8   DOCUMENTS OR OVER 120 SHIPPING CONTAINERS WORTH OF DOCUMENTS.

9           THESE PRIMARILY WERE SEIZED FROM THE DEFENDANTS. AND

10  IT'S MASSIVE QUANTITIES OF INFORMATION.

11          I HAVE WITH ME HERE A STACK OF MORE THAN 600 PAGES OF

12  DOCUMENTS THAT IS A PRINTOUT OF AN INDEX OF THE FOLDERS FROM ONE

13  SINGLE HARD DRIVE THAT WAS PRODUCED BY THE GOVERNMENT TO THE

14  DEFENDANTS (INDICATING).

15          AND THIS CONTAINS, YOU KNOW, DEFENDANT'S OWN WORK

16  PRODUCT.  AND IT'S ONLY ONE OF 55 PIECES OF ELECTRONIC MATERIAL

17  THAT THE GOVERNMENT HAS SEIZED.

18          AND IT'S REALLY IMPORTANT TO KEEP THAT IN MIND IN

19  FASHIONING A SOLUTION HERE.

20          IN TERMS OF THE ISSUE OF WHETHER DUPONT SHOULD BE THE

21  GATEKEEPER OF DISCOVERY OR SHOULD HAVE OPEN ACCESS TO DOCUMENTS

22  WHICH IS VERY IMPORTANT TO US, I WANT TO REMIND YOUR HONOR THAT

23  I BELIEVE IN ZHANG AND IN MING, YOU KNOW, THE VICTIM WAS NOT

24  ALLOWED PRESUMPTIVE ACCESS TO DOCUMENTS.

25          AND NOT A SINGLE ONE OF THE PROTECTIVE ORDERS THAT

1    WERE CITED BY THE PARTIES GIVES THAT TYPE OF ACCESS.

2            YOU KNOW, THE GOVERNMENT RAISED THE ISSUE OF

3    REQUIRING THE EXPERTISE OF DUPONT IN ORDER TO WADE THROUGH AND

4    MAKE SENSE OF THESE DOCUMENTS. BUT WE DON'T BELIEVE THAT'S

5    NECESSARY.

6            THIS IS SOMETHING THAT ARISES ALL OF THE TIME IN

7    CIVIL IP CASES, AND THE PARTIES RETAIN INDEPENDENT, OUTSIDE

8    EXPERTS TO ASSIST THEM IN EVALUATING THE DOCUMENTS.

9            AND THAT'S ALL --

10           **THE COURT:**  LET ME STOP YOU THERE. WHAT

11   INDEPENDENT -- YOU DON'T NEED TO IDENTIFY THEM BY NAME.  BUT CAN

12   YOU GIVE ME AN EXAMPLE OF WHO AN INDEPENDENT OUTSIDE EXPERT

13   WOULD BE THAT COULD TELL THE GOVERNMENT WHICH OF THE DUPONT

14   DOCUMENTS ARE ACTUALLY DUPONT'S TRADE SECRETS?

15           **MR. AXELROD:**  WELL, I THINK AN INDEPENDENT EXPERT WHO

16   UNDERSTANDS THE TITANIUM DIOXIDE PROCESS WOULD BE ABLE TO LOOK

17   AT A DOCUMENT OF DUPONT'S.  AND WE DON'T OBJECT TO THE

18   GOVERNMENT SHOWING DUPONT ITS OWN DOCUMENTS, BY THE WAY.

19           AND COULD ASSESS WHETHER SOME OTHER DOCUMENT

20   CONTAINED INFORMATION THAT WAS DERIVATIVE OF IT.  OR AN EXPERT

21   COULD TELL YOU WHETHER CERTAIN INFORMATION WAS IN THE PUBLIC

22   DOMAIN AND WAS OR WAS NOT, IN FACT, A TRADE SECRET, AND WHETHER

23   OTHER COMPANIES HAVE BEEN, YOU KNOW, DEVELOPING THE SAME

24   TECHNOLOGY FOR MANY YEARS.

25           **THE COURT:**  SO SOMEONE ELSE IN THE SAME INDUSTRY,

1    YOU'RE SUGGESTING, WOULD HAVE SUFFICIENT EXPERTISE TO KNOW WHAT

2    DUPONT'S TRADE SECRETS ARE AND WHICH ARE NOT?

3              **MS. AGNOLUCCI:**  YES, YOUR HONOR. YES.

4              **THE COURT:**  ALL RIGHT.  GO AHEAD.

5              **MS. AGNOLUCCI:**  AND ALL WE ASK HERE IS THAT THE

6    GOVERNMENT INDEPENDENTLY EXERCISE ITS JUDGMENT WITHOUT BEING

7    ABLE TO, YOU KNOW, PRESUMPTIVELY GIVE DUPONT ACCESS TO THE

8    DOCUMENTS.

9              YOU KNOW, IF YOUR HONOR IS INCLINED TO RULE AS YOU

10   STATED AT THE OUTSET OF THE HEARING, THEN WE WOULD RESPECTFULLY

11   REQUEST THE RIGHT TO HAVE SOME KIND OF IN COURT PROCEDURE, AS IN

12   ZHANG, FOR OBJECTING TO THE SHOWING OF THE DEFENDANTS' DOCUMENTS

13   TO DUPONT.

14             AND THAT'S EXACTLY WHAT HAPPENED IN THE ZHANG CASE.

15             ON EXPERTS, YOUR HONOR, WE'RE FINE WITH THE

16   PROVISIONS IN ZHANG.  WE THINK THOSE ARE CORRECT BECAUSE THEY,

17   YOU KNOW, DON'T GIVE DUPONT UNCHECKED VETO POWER.  AND, RATHER,

18   THEY PUT THE DECISION IN THE HANDS OF THE COURT.

19             AND, YOU KNOW, WE UNDERSTAND THAT UNDER ZHANG THE

20   IDENTITIES OF THE EXPERTS ARE NOT REVEALED.  AND THAT IF THE

21   COURT FEELS THAT IT NEEDS ADDITIONAL BRIEFING FROM THE PARTIES

22   IT CAN ASK FOR THAT.

23             BUT THAT IN ALL CASES IT WOULD GIVE US THE

24   OPPORTUNITY TO WITHDRAW THE NAME OF ANY EXPERT BEFORE REVEALING

25   IT.

1          ON THE ISSUE OF THIRD-PARTY WITNESSES, YOUR HONOR,

2     THIS IS A SITUATION THAT'S A LITTLE BIT DIFFERENT THAN MING AND

3     ZHANG, BECAUSE WE'VE PROPOSED SHOWING THE CONFIDENTIAL ONE

4     DOCUMENTS ONLY TO WITNESSES WHO AUTHORED THEM OR WHO HAD PRIOR

5     ACCESS TO THEM.

6          WE BELIEVE THAT THIS UNIQUE PROVISION BUILDS IN

7     SAFEGUARDS AND WOULD NOT FURTHER DISSEMINATE ANY OF DUPONT'S

8     PURPORTED TRADE SECRETS.

9          ON THE ISSUE OF DEFENDANTS VIEWING THE DISCOVERY, WE

10    ARE FINE WITH THE DEFENDANTS NOT BEING ABLE TO RETAIN THE

11    DOCUMENTS, BUT BEING ALLOWED TO VIEW THE DOCUMENTS.

12         AND I BELIEVE DUPONT OFFERS THIS AS A COMPROMISE AT

13    PAGES 10 TO 11 OF ITS BRIEF. AND THAT'S FINE, OF COURSE,

14    ASSUMING THAT THE GOVERNMENT'S REPRESENTATION THAT THE

15    CONFIDENTIAL ONE DOCUMENTS ARE ONLY A FEW BANKERS BOXES BEARS

16    ITSELF OUT.

17         I BELIEVE THAT COVERS ALL OF THE ISSUES. THERE'S ONE

18    LAST ISSUE:  THE ISSUE OF MAINTAINING THE DOCUMENTS ON A

19    COMPUTER CONNECTED TO THE INTERNET.

20         AGAIN, WE'RE FINE WITH YOUR HONOR'S PROPOSAL. WE'RE

21    WILLING TO COMPROMISE AND KEEP THE CONFIDENTIAL ONE DOCUMENTS IN

22    HARD COPY, BUT WE JUST ASK THAT THIS ISSUE BE REVISITED IF IT

23    TURNS OUT THAT WE'RE DEALING WITH MORE THAN JUST A FEW BANKERS

24    BOXES.

25         AND ALSO, WE WOULD LIKE TO RESERVE THE RIGHT TO

1    E-MAIL THE DOCUMENTS WHERE NECESSARY FOR THE DEFENSE.  FOR

2    EXAMPLE, IF ONE OF US IS OUT OF TOWN AND NEEDS TO BE ABLE TO

3    LOOK AT SOMETHING REMOTELY, IT WOULD BE PROBLEMATIC IF WE

4    COULDN'T SEND EACH OTHER AN E-MAIL.

5           AND, YOU KNOW, LAW FIRM SERVERS BUILD IN A NUMBER OF

6    PROTECTIONS.  AND, YOU KNOW, WE THINK THAT THOSE WOULD BE

7    ADEQUATE IN THIS CASE.

8           **THE COURT:**  ON THAT ISSUE, I DON'T SHARE YOUR

9    CONFIDENCE IN THE SECURITY OF E-MAIL AS TO THE CATEGORY-1

10   DOCUMENTS, BUT I UNDERSTAND YOUR POSITION.

11          **MS. AGNOLUCCI:**  AND, YOUR HONOR --

12          **THE COURT:**  MR. FROELICH, YOU HAVE ANYTHING TO ADD TO

13   THAT?

14          **MR. FROELICH:**  I DID, YOUR HONOR, BUT --

15          **MR. GASNER:**  EXCUSE ME.

16          **THE COURT:**  OKAY.

17          **MR. GASNER:**  STUART GASNER, ALSO FOR MR. LIEW.

18          I WANTED TO ADDRESS YOUR HONOR'S QUESTION ABOUT HOW

19   IT TYPICALLY WORKS WITH EXPERTS AND FIGURING OUT WHAT THE OTHER

20   SIDE HAS.

21          WHEN I'M NOT DOING THIS KIND OF CASE A LOT OF MY

22   PRACTICE IS INTELLECTUAL PROPERTY LITIGATION.  I REPRESENT BIG

23   COMPANIES IN PATENT WARS WITH INCREDIBLY COMPLICATED TECHNOLOGY.

24          INTEL IS ONE SUCH CLIENT.  SO SUCH AS AN EXAMPLE, IF

25   INTEL FEELS IT'S THE VICTIM OF AMD AND SOME TRADE SECRET OR

1  PATENT INFRINGEMENT WHAT THEY WOULD LOVE TO DO IS PORE THROUGH

2  ALL OF AMD'S MATERIALS AND IDENTIFY:  THERE'S THE INFRINGEMENT.

3            BUT IN CIVIL LITIGATION, WE DON'T DO THAT. WHAT WE DO

4  IS HIRE INDEPENDENT EXPERTS WHO GET HIGHLY EDUCATED ON WHAT THE

5  TECHNOLOGY IS ABOUT.

6            AND THEY GO THROUGH THE OTHER SIDE'S DOCUMENTS. SO NO

7  DOUBT EVERY VICTIM, WHETHER IN A CIVIL CASE OR A CRIMINAL CASE,

8  WOULD LOVE -- AND IT WOULD BE EASIER FOR THE LAWYERS TO JUST

9  SAY:

10            "HAVE AT IT, GUYS.  LOOK THROUGH ALL OF AMD'S,

11            YOU KNOW, SPICE MODELS AND TELL US, YOU KNOW, WHERE

12            THE, YOU KNOW, BULLS-EYE IS."

13            BUT WE DON'T DO IT THAT WAY IN CIVIL LITIGATION.

14  I'VE BEEN DOING THIS FOR 20 YEARS. AND WE MANAGE QUITE WELL WITH

15  THE PROCEDURE WHERE WE HIRE EXPERTS.  THEY GET HIGHLY EDUCATED.

16            AS SIMONA SAID, THEY CAN BE EDUCATED BY DUPONT.

17  THERE'S NOTHING WRONG WITH THAT.  AND THEN, THEY LOOK AT THE

18  HIGHLY CONFIDENTIAL STUFF AND REACH THEIR OPINIONS AND EDUCATE

19  COUNSEL.

20            SO, REALLY, WE DO HAVE A PROBLEM.  AND WE APPRECIATE

21  THE NOTICE PROVISION AND THE ABILITY TO COME BACK TO THE COURT,

22  BUT IT REALLY SHOULDN'T BE A PROCESS IN WHICH WE ASSUME THAT

23  DUPONT OUGHT TO BE ABLE TO PAW THROUGH 13 TERABYTES OF STUFF

24  THAT MR. LIEW AND HIS COMPANY PREPARED OVER TEN YEARS WITH

25  SCORES OF ENGINEERS SO THAT THEY CAN FIND A NEEDLE IN A FOOTBALL

1    FIELD SIZE HAYSTACK.

2           YOU KNOW, IT'S EASIEST FOR THE GOVERNMENT.  IT'S NOT

3    THE WAY IT'S DONE IN CIVIL LITIGATION, AND NOT THE WAY IT SHOULD

4    BE DONE HERE.

5           NOW, WE'RE WILLING TO SAY:

6              "WELL, LET'S SEE HOW MUCH THEY WANT TO GIVE TO

7              DUPONT.  AND THE FIRST TIME THEY DO IT, WE WILL BE

8              BEFORE THE COURT, AND WE WILL HAVE A DISCUSSION ABOUT

9              IT."

10          BUT I JUST WANTED TO KIND OF FRAME THE ISSUE, BECAUSE

11    I THINK WE'RE HEADED IN A DIRECTION THAT'S JUST SO FAR FROM THE

12    WAY THESE KINDS OF ISSUES ARE TYPICALLY LITIGATED, THAT IF

13    ANYTHING THERE OUGHT TO BE GREATER PROTECTIONS IN CRIMINAL CASE

14    THAN IN A CIVIL CASE.

15          SO I WANTED TO JUST KIND OF FRAME THE ISSUE FOR

16    FURTHER CONSIDERATION.

17          **THE COURT:**  THANK YOU.

18          ALL RIGHT, MR. FROELICH.

19          **MR. FROELICH:**  YES, YOUR HONOR.  THANK YOU.

20          YOUR HONOR, I AM IN A LITTLE DIFFERENT POSITION WITH

21    MR. MAEGERLE.  HE'S NOT IN THE CIVIL CASE.  AND WE'RE A LITTLE

22    BIT LIMITED UNIVERSE AS REGARDS TO WHAT IS GOING ON.

23          MY CLIENT'S NOT STANDING UP AND SAYING HE HAS A TRADE

24    SECRET OR ANYTHING.

25          SO THE DECISION ON THOSE, HOW THE GOVERNMENT HANDLES

1    THAT, I DO HAVE ONE REQUEST.

2            AND HOWEVER YOUR HONOR DECIDES THAT THE GOVERNMENT BE

3    REQUIRED -- AND I THINK THIS IS GOING TO BE VERY IMPORTANT,

4    PARTICULARLY COME TRIAL TIME AND EVERYTHING ELSE.  THAT THE

5    GOVERNMENT KEEPS A RECORD OF THE DATES AND TIMES AND DOCUMENTS

6    THAT IT ACTUALLY SHOWS OR HAS DUPONT REVIEW, BECAUSE I THINK

7    THAT'S GOING TO BE AN ISSUE THAT COMES DOWN IN THIS CASE.

8            AND I THINK IT WILL BE IMPORTANT.

9            AS FAR AS MY CLIENT, MY CLIENT, YOUR HONOR, IS AN

10   ENGINEER WHO WORKED FOR DUPONT FOR 20 SOME ODD YEARS AND RETIRED

11   IN 1991.

12           THE DOCUMENTS IN THE CASE, EVEN THE CONFIDENTIAL ONE

13   DOCUMENTS, MY CLIENT LIVES IN DELAWARE AND IS BOUND

14   FOR DELAWARE, HAS TO STAY IN DELAWARE FOR REASONS.  AND I'M IN

15   ATLANTA, GEORGIA.

16           WHAT I WOULD LIKE, THOUGH, IS TO BE ABLE TO -- AND I

17   WOULD TAKE AN EXTRA PRECAUTION TO HAVE AFFADAVITS FROM HIM AND

18   ACTUALLY MAYBE PUT MY ACTUAL TIME STAMP AND MY INITIALS TO BE

19   ABLE TO HAVE HIM POSSESS THE DOCUMENTS, THE CONFIDENTIAL ONE,

20   FOR AT LEAST A CERTAIN PERIOD OF TIME SO THAT HE CAN READ THEM.

21           AND HE'S AN ENGINEER, AND HE'S GOING TO HAVE A LOT

22   MORE INPUT, OBVIOUSLY, ON THOSE DOCUMENTS THAN I AM OR EVEN AN

23   EXPERT PROBABLY, HAVING HAD WORKED FOR DUPONT AND HAVING

24   ACTUALLY BEEN IN THAT AREA ON THEM.

25           SO THAT'S THE OTHER THING THAT I HAD THAT I WANTED TO

1    RAISE WITH THE COURT.

2              **THE COURT:**  LET ME ASK MR. AXELROD WHAT HIS THOUGHTS

3    ARE ON THE ACCESS OF MR. FROELICH'S CLIENT TO THE CATEGORY-1

4    DOCUMENTS.

5              **MR. AXELROD:**  ABSOLUTELY NOT.  AND LET ME EXPLAIN

6    WHY.

7              ONE OF THE CRITICAL DOCUMENTS IN THIS CASE IS THE

8    BASIC DATA DOCUMENT, WHICH IS BASICALLY A BLUEPRINT FOR HOW TO

9    BUILD A STATE OF THE ART TITANIUM DIOXIDE FACILITY FROM THE

10   GROUND UP.

11             IT IS MY BELIEF THAT DOCUMENT -- IT'S A 400-PAGE

12   HIGHLY CONFIDENTIAL DOCUMENT. IT'S MY BELIEF THAT --

13             **THE COURT:**  AND WHAT'S THE DATE OR WHAT'S THE RANGE

14   OF THAT DOCUMENT?

15             **MR. AXELROD:**  IT WAS -- THAT DOCUMENT WAS A 1985

16   DOCUMENT. IT WAS ADDRESSED TO HIS CLIENT. AND IT IS -- AND THERE

17   ARE INSTANCES THAT ARE ALLEGED SPECIFICALLY IN THE INDICTMENT

18   WHERE THE DATA FROM THAT DOCUMENT IS TRANSMITTED BY HIS CLIENT

19   TO WALTER LIEW.

20             TO THEN GIVE HIM UNFETTERED ACCESS TO THOSE DOCUMENTS

21   GIVEN WHAT THE EVIDENCE HAS ALREADY SHOWN AND WILL SHOW AT TRIAL

22   IS CRAZY. AND ESPECIALLY SO WITH SOMEBODY WHO IS HIGHLY

23   EXPERIENCED, WHO ACTUALLY CAN APPRECIATE THE VALUE OF THE

24   INFORMATION AND WOULD HAVE THE, YOU KNOW, SORT OF NETWORK OF

25   PEOPLE WHERE HE COULD DO MORE DAMAGE.

1          I MEAN, HE'S ALREADY DONE THE DAMAGE ONCE.  THAT'S

2    WHY HE'S BEEN CHARGED IN THIS CASE.  TO THEN GIVE HIM ACCESS,

3    ABSOLUTELY NOT.

4          WE WOULD STRENUOUSLY OBJECT TO THAT.

5          **MR. FROELICH:**  WELL, YOUR HONOR, THERE ARE WAYS.  AS

6    I SAID, WE CAN INITIAL AND THINGS LIKE THAT.  MY CLIENT'S IN HIS

7    '70'S.

8          WE'RE GOING TO HAVE A REAL FIGHT IN THIS, YOUR HONOR.

9          WE'RE TALKING ABOUT 1985, DOCUMENTS THAT EXISTED IN

10   1985.

11         AND THAT YOU'RE TALKING ALMOST 30 YEARS.  30 YEARS

12   AGO, YOU'RE TALKING.

13         AND THOSE DOCUMENTS, I HAVE PRETTY MUCH CONFIDENCE

14   THAT WE ARE GOING TO SHOW THOSE NO MORE ARE TRADE SECRETS. AND

15   THE DOCUMENTS THAT ARE IN QUESTION WEREN'T SEIZED FROM MY CLIENT

16   OR ANYTHING.

17         THEY SEARCHED MY CLIENT'S HOUSE. THAT DOCUMENT WAS

18   NOT FOUND AT MY CLIENT'S HOUSE.

19         AND SO MY CLIENT'S AN ENGINEER.  AND THEY ARE GOING

20   TO -- AND I NEED TO HAVE HIM HAVE THE ABILITY TO STUDY. I

21   UNDERSTAND NOW HE CAN LOOK AT THEM, BUT HE HAS TO LOOK AT THEM

22   AT MY OFFICE IS THE WAY I UNDERSTAND IT.

23         **THE COURT:**  RIGHT.

24         **MR. FROELICH:**  THAT I BELIEVE, YOUR HONOR, WHEN

25   YOU'RE TALKING ABOUT, YOU KNOW, 30 YEARS AGO, THAT'S GOING TO BE

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1  A BIG FIGHT IN THIS CASE.  AND I'M GOING TO SHOW THAT THOSE

2  THINGS ARE ON THE INTERNET.

3            AND, IN FACT, YOUR HONOR, LET ME JUST GIVE YOU AN

4  EXAMPLE, AND YOUR HONOR CAN LOOK AT IT.

5            THERE WAS THE CIVIL COMPLAINT.  MY CLIENT WAS NOT A

6  PART OF THE CIVIL COMPLAINT. THERE WERE A LOT OF ALLEGATIONS

7  MADE BY DUPONT THAT ALL THESE CONFIDENTIAL MATERIALS WERE IN THE

8  CIVIL COMPLAINT.

9            I WAS NOT INVOLVED IN IT.  BUT THERE'S LIKE PARAGRAPH

10 43 THEY TALK ABOUT ALUMINUM. THEY USED ALUMINUM, SOME KIND OF

11 CONDUCTORS.  AND THAT THIS WAS A BIG SECRET OF THEIRS.

12            WELL, IN THE ANSWER, THE LIEWS PRODUCED THE -- ON THE

13 INTERNET THE DIAGRAM THAT'S FROM A GERMAN CORPORATION THAT'S ON

14 THE INTERNET.

15            IN PARAGRAPH 44 THEY PRODUCED THE SAME THING. I NEED

16 TO HAVE MY CLIENT TO BE ABLE TO LOOK FOR THINGS LIKE THAT AND DO

17 THOSE TYPE OF THINGS.

18            AND I THINK THIS IS AN UNUSUAL SITUATION, BUT I THINK

19 WHEN YOU'RE TALKING ABOUT DOCUMENTS THAT OLD AND WITH THE

20 ABILITY TO, YOU KNOW, HAVE HIM SIGN AN AFFIDAVIT.  AND MAYBE

21 THERE'S A PERIOD OF TIME, ONLY 48 OR 50 HOURS.  I CAN FEDEX

22 THEM.  OR I CAN FLY THEM UP AND GIVE THEM TO HIM AND LET HIM

23 STUDY THEM.  BUT I CAN'T SIT HIM IN MY OFFICE FOR A WEEK AT A

24 TIME LOOKING AT THEM.

25            **THE COURT:**  ALL RIGHT.  ANYTHING ELSE FROM THE

1   DEFENSE?

2          ALL RIGHT.  LET ME HAVE DUPONT, THEN, COME UP AND

3   TELL ME WHERE I'M WRONG.

4          **MR. GLYNN:**  WELL, I WON'T START BY SAYING THAT, YOUR

5   HONOR.  THANK YOU FOR GIVING U THE OPPORTUNITY TO ADDRESS THIS

6   IMPORTANT BALANCING.

7          I'M CLEMENT GLYNN FOR DUPONT.

8          IN DOING THE BALANCING IT'S IMPORTANT THAT THE COURT

9   HAVE AN UNDERSTANDING OF THE REAL FACTS AS OPPOSED TO POINTS OF

10  ADVOCACY, WHICH, IF TRUE, WOULD CHANGE THE POINT AT WHICH THE

11  BALANCE IS STRUCK.

12         AND CLEARLY YOU CANNOT TODAY TRY TO RESOLVE THE

13  MERITS OF THE CASE. BUT IT IS INTERESTING THAT THE ARGUMENT YOU

14  JUST HEARD SAYS:

15              "AN EXPERT IS NOT ENOUGH. I HAVE TO HAVE MY

16              CLIENT, BECAUSE HE USED TO WORK FOR DUPONT. AND THERE

17              IT REQUIRES HIS EXPERTISE. WE NEED HIM TO BE ABLE TO

18              LOOK AT IT."

19         BUT THE COUNTERVAILING VIEW IS:  BUT DUPONT, THE

20  AUTHOR OF THIS TECHNOLOGY AND THESE SECRETS MUST BE BLOCKED AS

21  MUCH AS POSSIBLE.

22         SO THE STANDARDS HERE ARE DOUBLE. AND I THINK IT'S

23  IMPORTANT THAT WE SEPARATE FACT FROM FICTION. I'D LIKE TO JUST

24  TAKE A MOMENT TO DESCRIBE THE TECHNOLOGY, NOT ANY IN ANY KIND OF

25  TECHNICAL WAY, BUT TO GIVE YOU AN IDEA WHAT HAS REALLY HAPPENED

1    HERE.

2              NOBODY IN THIS ROOM WILL DISPUTE THAT DUPONT IS THE

3    WORLD'S PRODUCER OF THIS PIGMENT.  IT'S A WHITE PIGMENT.  IT'S

4    IN THE TOOTHPASTE YOU USED THIS MORNING.  IT'S IN THE PAPER THAT

5    YOU READ --

6              **THE COURT:**  ACTUALLY, STOP.  I KNOW ALL ABOUT THE

7    PIGMENT.

8              **MR. GLYNN:**  ALL RIGHT.

9              **THE COURT:**  GO AHEAD.

10             **MR. GLYNN:**  AND I WILL STOP.  DUPONT IS THE WORLD

11   LEADER BECAUSE IT HAS A UNIQUE PRODUCTION PROCESS. AND IT IS

12   THAT PROCESS WHICH HAS BEEN STOLEN.

13             AND IT IS NOT A COINCIDENCE THAT THE PEOPLE WHO WERE

14   THE PARTICIPANTS IN THE ENTERPRISE WERE INDIVIDUALS WHO GAINED

15   THAT INFORMATION FROM DUPONT.

16             ONE OF THEM HAS PLEADED GUILTY. ONE OF THEM HAS

17   COMMITTED SUICIDE. THAT IS NOT BECAUSE IT'S ALL ON THE INTERNET.

18   THAT IS BECAUSE PEOPLE UNDERSTAND THE GRAVITY OF WHAT IS BEFORE

19   THE COURT.

20             NOW, WITH RESPECT TO THE CUMBERSOME -- AND I

21   ABSOLUTELY RESPECT AND UNDERSTAND THE COURT'S CONCERNS. AND IF

22   ALL OF THE HYPERBOLE THAT WAS PRESENTED WERE TRUE, THEN I WOULD

23   HAVE COME OUT EXACTLY THE WAY THE COURT DID.

24             BUT DUPONT DOESN'T ASSERT, FOR EXAMPLE, A RIGHT TO

25   VETO EXPERTS. THAT'S NOTHING.  THE COURT MAKES THE DECISION.

1    DUPONT, DESPITE IT BEING ACCUSED OF BEING A LARGE AND

2 ARROGANT COMPANY BY MR. GASNER, WHO THEN ADMITTED TO YOU THAT HE

3 REPRESENTS LARGE, PRESUMABLY NOT ARROGANT, COMPANIES.  DUPONT

4 HAS NO INTEREST IN DOING ANYTHING EXCEPT BEING ABLE TO HAVE A

5 PLACE AT THE TABLE TO ADVOCATE A POSITION.

6    DUPONT WOULD NEVER BE ABLE TO VETO AN EXPERT. THE

7 COURT WOULD DECIDE WHETHER CONCERNS EXPRESSED, IF ANY, WERE

8 VALID CONCERNS.

9    IF THE COURT DISAGREED, THEN DUPONT WOULD HAVE HAD

10 ITS RIGHTS PROTECTED, AND THE CASE PROCEEDS.

11    LIKEWISE, THE IDEA THAT DUPONT AS THE OWNER OF WHAT

12 I'M CONFIDENT WILL BE SHOWN TO BE TRADE SECRETS, AND VERY

13 CAREFULLY PROTECTED TRADE SECRETS, DUPONT IS THE WORLD'S LEADING

14 EXPERT ON ITS TECHNOLOGY.

15    TO SAY THAT THERE'S A SIMPLE SOLUTION TO JUST HAVE AN

16 EXPERT, AND THEN WALL THE CRIME VICTIM OFF FROM BEING ABLE TO

17 PROTECT ITS INTERESTS AND HELP THE GOVERNMENT PROTECT THE

18 INTERESTS OF THE UNITED STATES WITH RESPECT TO THAT TECHNOLOGY

19 IS FRANKLY UNREALISTIC.

20    MOST OF THE EXPERTS ON THIS TECHNOLOGY ARE EITHER

21 PRESENT OR FORMER DUPONT PERSONNEL. THAT'S JUST THE REALITY.

22    AND I COULD FORESEE THAT THERE WOULD BE MANY OF THE

23 RELATIVELY SMALL GROUP OF NOMINEES WHO MIGHT BE NOMINATED WHO

24 WOULD BE PERFECTLY ACCEPTABLE TO DUPONT.

25    SO, AGAIN, IN BALANCING, WE HAVE TO DEAL WITH THE

1    REALITIES, NOT THE RHETORIC THAT POSITS KIND OF AN EXTREME

2    INTERPRETATION OF SOMETHING THAT ISN'T PROPOSED AS EXTREME.

3            THE OTHER MAJOR FALSE PREMISE HERE THAT THE COURT

4    REALLY NEEDS TO FOCUS ON AS YOU DO YOUR FINAL BALANCING IS THE

5    NOTION THAT THERE ARE TRADE SECRETS OF USAPTI THAT ARE ON A

6    COEQUAL FOOTING THAT DESERVE SOME SORT OF PROTECTION FROM WHICH

7    FALSE PREMISE WE DO ALL SORTS OF THINGS TO CONTORT THE CASE.

8            DUPONT HAS BEEN IN THIS BUSINESS FOR OVER 50 YEARS.

9    IT HAS INVESTED HUNDREDS OF MILLIONS OF DOLLARS.

10           AS YOU WILL LEARN, USAPTI, IT HAS NEVER BEEN A PLAYER

11   IN THIS FIELD. THEY WERE INVISIBLE, AND THEY WERE INVISIBLE FOR

12   A REASON. BECAUSE THE DEVELOPMENT OF THEIR SO CALLED WORK

13   PRODUCT, THEIR SO CALLED TRADE SECRETS WAS THE ASSEMBLAGE OF

14   FORMER DUPONT SCIENTISTS WHO HAD ACCESS TO DOCUMENTS THEY WERE

15   NOT SUPPOSED TO HAVE ANY LONGER, AS WAS ADMITTED IN THE PLEA BY

16   MR. TZE CHAO. AND THAT WAS THE WORK PRODUCT. THE WORK PRODUCT

17   WAS TO ASSEMBLE AN ENTERPRISE OF PEOPLE WILLING TO VIOLATE OSA

18   TOOK (PHONETIC) AND TO VIOLATE THE LAWS OF THE UNITED STATES.

19   AND TO THEN RELOGO THOSE DOCUMENTS AND CALL THEM "USAPTI'S

20   TECHNOLOGY."

21           I NOTED IN THE BRIEFS -- AND I WILL CONCLUDE WITH

22   THIS, YOUR HONOR -- IN MR. GASNER SPEAKS OF CIVIL LITIGATION

23   WHICH MERCIFULLY IS WHERE I SPEND THE MAJORITY OF MY TIME.

24           MY FORAY INTO THE CRIMINAL COURTS WAS LONG AGO AND

25   FAR AWAY.

1          THE ASSERTION -- ORDINARILY IN A CIVIL CASE IF A

2   LITIGANT WANTED A COURT TO ACCEPT THE PROPOSITION THAT IT HAS

3   VALUABLE TRADE SECRETS, THE COMPROMISE OF WHICH COULD BE AT

4   STAKE IN THE BALANCING IN THIS PROTECTIVE ORDER, A SHOWING WOULD

5   BE MADE.

6          THE COURT WOULD BE PRESENTED WITH EVIDENCE FROM WHICH

7   IT COULD REASONABLY CONCLUDE AT LEAST A PRIMA FACIE ASSERTION OF

8   TRADE SECRET BY, IN THIS CASE, USAPTI.

9          I READ THE PAPERS.  THERE WAS NOTHING.  THERE IS

10  SIMPLY THE ITALICIZED AND REPEATED ASSERTION THAT FOR TEN YEARS

11  USAPTI WORKED DILIGENTLY TO CONSTRUCT ITS OWN TRADE SECRETS.

12         WELL, THEY WORKED DILIGENTLY.  AND LIKE TERMITES THEY

13  WORKED QUIETLY.  BUT THEY WORKED WITH DUPONT'S TECHNOLOGY, NOT

14  THEIR OWN.

15         AND UNLESS AND UNTIL THERE IS A SHOWING SATISFACTORY

16  TO THIS COURT THAT THEY HAVE THEIR OWN INDEPENDENTLY DEVELOPED

17  TECHNOLOGY, THAT THEY CAN LEGITIMATELY CLAIM IS A TRADE SECRET,

18  THEN ANY DETERMINATION THE COURT MAKES SHOULD NOT ACCEPT THAT

19  FALSE PREMISE BECAUSE I WOULD SIMPLY BE WRONG.

20         THANK YOU VERY MUCH FOR GIVING US THE OPPORTUNITY.

21         **MR. FROELICH:**  YOUR HONOR, MAY I JUST SAY ONE THING?

22         **THE COURT:**  I'LL GIVE EVERYBODY A VERY BRIEF CHANCE

23  AT REBUTTAL.

24         **MR. FROELICH:**  IT'S NOT REBUTTAL, YOUR HONOR.  I JUST

25  FORGOT ONE THING.

1    **THE COURT:** ALL RIGHT.

2        **MR. FROELICH:** AS THE EXPERTS, YOUR HONOR, WHAT I

3   WANTED TO SAY AND FORGOT TO SAY IS THAT I TRY A LOT OF -- I TRY

4   ALMOST EXCLUSIVELY CRIMINAL.  I TRY CASES WHERE THERE ARE

5   EXPERTS.  AND I HIRE EXPERTS NOT ONLY AS WITNESSES, BUT TO TRAIN

6   ME TO CROSS-EXAMINE OTHER EXPERTS AND TO MAKE OPENING STATEMENTS

7   AND THINGS LIKE THAT.

8        I WOULD PREFER, AND I THINK IT'S MORE SUITABLE, AND I

9   THINK PARTICULARLY IN A CRIMINAL MATTER, THAT WE BRING -- RATHER

10  THAN GIVING, EVEN THOUGH YOU DON'T DISCLOSURE -- WE'RE TALKING

11  ABOUT NOT DISCLOSING THE NAME TO THE GOVERNMENT OR WHOEVER. IF

12  YOU GIVE DETAIL BACKGROUND THEY ARE GOING TO KNOW.

13       AND PEOPLE -- I'VE FOUND THAT EXPERTS WHO I WANT TO

14  KEEP IN THE BACKGROUND TO TRAIN ME OR TO TELL ME HOW TO ATTACK,

15  DON'T -- OR WANT TO BE IN THE BACKGROUND FOR A REASON. AND WHEN

16  YOU GIVE OUT THAT -- AND SO YOUR HONOR, I WOULD PREFER, AND I

17  THINK IT'S MORE IMPORTANT THAT WE NOTIFY, IF YOU WANT NOTICE,

18  NOTIFY THE COURT IN CAMERA AND GIVE THE DETAILED BACKGROUND.

19       AND THEN, IF THE COURT SEES ANYTHING SUCH AS:  DID HE

20  WORK FOR DUPONT?  OR, YOU KNOW, HE WORKED FOR A COMPETITOR FOUR

21  YEARS AGO, THEN THAT ISSUE IS JOINED.

22       BUT I'M AFRAID THAT, AS YOUR HONOR HAS SAW IN THE

23  PLEADINGS -- I THINK THERE'S AN AFFIDAVIT FROM DUPONT -- THAT

24  THERE'S NOT A LOT OF EXPERTS, AND I KNOW THAT, OUT THERE.

25       AND I DON'T WANT TO HAVE TO SCARE OFF ANYBODY THAT

1    I'M GOING TO -- YOU KNOW, PERSONS WHO ARE GOING TO TESTIFY ARE

2    GOING TO BE SCARED OFF.

3             BUT THERE ARE PEOPLE WHO ARE VERY HELPFUL TO A

4    DEFENSE LAWYER THAT DON'T WANT THE OTHER SIDE TO KNOW. BUT IN

5    ORDER TO PROTECT IT I THINK WE COULD COME TO THE COURT AND MAKE

6    THE DISCLOSURES.

7             **THE COURT:**  ALL RIGHT. THANK YOU.

8             MR. AXELROD, ANYTHING FURTHER?

9             **MR. AXELROD:**  NO, YOUR HONOR.  I BELIEVE THE -- JUST

10   WITH THIS FINAL POINT THAT IT IS, YOU KNOW -- WALTER LIEW IS NOT

11   A TIO2 EXPERT.  HE'S NOT A CHEMICAL ENGINEER.  HE'S NOT A

12   PROCESS ENGINEER.

13            HE'S AN ELECTRICAL ENGINEER WHO, YOU KNOW, TOLD

14   PEOPLE HE WENT TO STANFORD WHEN HE DIDN'T. I HAVE CONCERN THAT

15   THERE'S A LOT OF SOUND ABOUT PROTECTING HIS TRADE SECRETS. THAT

16   IS -- I THINK IT'S IMPORTANT TO POINT OUT THAT THE TRADE SECRETS

17   THAT ARE AT ISSUE ARE THE ONES THAT WERE STOLEN FROM DUPONT.

18            AND IF THEY HAVE SOMETHING THAT THEY WANT TO

19   PARTICULARIZE WITH EVIDENCE TO THE CONTRARY, YOU KNOW, THEY CAN

20   GO AHEAD.  BUT, OTHERWISE, IT'S NOT -- IT'S ABSURD.

21            **THE COURT:**  ALL RIGHT.

22            **MS. AGNOLUCCI:**  YOUR HONOR, JUST A FEW FINAL POINTS.

23            THE ARROGANCE THAT WE REFERRED TO IN OUR BRIEFS IS

24   THE SAME ARROGANCE THAT WE HEARD HERE IN COURT TODAY. IT'S THE

25   ASSUMPTION THAT NOTHING THAT THIS MAN DID OVER THE PAST TEN

1   YEARS IS WORTHWHILE.

2           AND THERE'S A PRESUMPTION OF INNOCENCE IN THIS CASE.

3   THE EVIDENCE WILL SHOW THAT THEY ARE WRONG.  AND THAT, IN FACT,

4   DUPONT IS THE DRIVING FORCE BEHIND THIS CRIMINAL PROSECUTION.

5           NOW, ON THE SORT OF INDIVIDUAL POINTS THAT WE'VE BEEN

6   DISCUSSING, IF YOUR HONOR IS INCLINED TO STICK WITH HIS

7   TENTATIVE I DON'T THINK WE NEED TO SAY ANYTHING FURTHER.

8           BUT IF THERE ARE ANY POINTS THAT REQUIRE ADDITIONAL

9   CLARIFICATION, I'M HAPPY TO PROVIDE IT. AND WE DO HAVE ONE

10  REQUEST.

11          IF YOUR HONOR RULES THAT DEFENDANTS MUST GIVE -- THAT

12  THE GOVERNMENT MUST GIVE NOTICE BEFORE SHOWING THE DEFENDANTS'

13  DOCUMENTS TO DUPONT, THEN WE WOULD RESPECTFULLY REQUEST THAT THE

14  COURT ORDER THE GOVERNMENT TO TELL US WHICH DOCUMENTS IT ALREADY

15  HAS SHOWN TO DUPONT, BECAUSE IT'S APPARENT FROM THE BRIEFS OF

16  BOTH THE GOVERNMENT AND DUPONT THAT THAT ALREADY HAS HAPPENED.

17          **THE COURT:**  ALL RIGHT. I'M GOING TAKE THIS ALL UNDER

18  SUBMISSION.  BUT I WILL BE ISSUING A MELDED PROTECTIVE ORDER

19  VERY SHORTLY.

20          ON THAT NOTE, MR. AXELROD, I DON'T THINK THAT I GOT

21  AN ELECTRONIC VERSION OF PROPOSED ORDER BOX EITHER IN WORD OR

22  WORD PERFECT.  IF YOU COULD SEND IT AS QUICKLY AS POSSIBLE I

23  WOULD APPRECIATE IT.

24          **MR. AXELROD:**  I WILL.

25          **THE COURT:**  IT WILL BE IMMEDIATELY IN EFFECT WHEN I

1    ISSUE IT.  AND I EXPECT THE GOVERNMENT WILL START PROVIDING

2    MATERIALS VERY QUICKLY.

3                WHAT I WANT TO DO IS RETURN HERE ONCE THE GOVERNMENT

4    HAS HAD A CHANCE TO START TO PRODUCE THOSE MATERIALS FOR THE

5    PARTIES TO CONFER FURTHER ABOUT THE TIMELY PRODUCTION OF

6    MATERIALS ONCE THAT PROTECTIVE ORDER HAS BEEN ENTERED, AND TO

7    GET A MORE DETAILED GAME PLAN FROM THERE.

8                I HEAR THE DEFENSE BASED ON THEIR STATUS REPORT THAT

9    THEY ARE -- FEEL LIKE SOME THINGS OVERDUE.  THE GOVERNMENT SAYS

10   WELL, ONCE A PROTECTIVE ORDER IS IN PLACE THAT WILL BE PRODUCED.

11               AND THERE'S REALLY A DIFFERENCE OF FACT AS TO WHERE

12   YOU ARE IN THE NEGOTIATIONS.  I THINK THAT WILL ALL BE UNDER THE

13   BRIDGE ONCE THE GOVERNMENT PRODUCES THE MATERIALS.

14               AND I DON'T MEAN TO KIND OF GO INTO MORE DETAIL ABOUT

15   WHERE YOU ARE TODAY, BECAUSE YOU'LL BE IN A DIFFERENT PLACE IN A

16   FEW WEEKS, I THINK.

17               IF YOU ARE NOT, THEN I'LL HEAR FURTHER.  SHOULD WHAT

18   I WANT TO NEGOTIATE HERE IS WHEN WE SHOULD RETURN WITH A FURTHER

19   PLAN.

20          **MR. RAGLAND:**  WELL, YOUR HONOR, STEVEN RAGLAND ON

21   BEHALF OF MR. LIEW AND USAPTI.

22               I RESPECT THE COURT'S DESIRE NOT TO GET INTO THE MUD

23   OF THE DISCOVERY ISSUES.

24          **THE COURT:**  I WAS GOING TO SAY "WEEDS."

25          **MR. RAGLAND:**  RIGHT.  I WOULD JUST ASK -- I MEAN, I

1  JUST WANT TO MAKE THE POINT VERY CLEAR FOR THE RECORD THAT ALL

2  THAT WE TALKED ABOUT IN OUR STATUS REPORT WAS INFORMATION THAT

3  IS NOT IMPACTED BY THE PROTECTIVE ORDER.

4          AND SO WE'D LIKE A VERY EARLY TIME TO BE BACK IN

5  FRONT OF YOUR HONOR TO SEE IF ANY -- WE'VE GOTTEN ANY PROGRESS.

6          AND THEN, THE OTHER POINT, TOO, IS I JUST WANTED TO,

7  BECAUSE I HAVEN'T GOTTEN A RESPONSE YET FROM THE GOVERNMENT.

8  WE'VE ASKED FOR FILE NAMES OF THE ALLEGED TRADE SECRET DOCUMENTS

9  THAT EXIST IN ELECTRONIC FORM.

10         AND I HAVEN'T YET GOTTEN ANY CONFIRMATION WHAT WE'RE

11 TALKING ABOUT.  I THINK IT'S OBVIOUS, BUT I WANT TO MAKE SURE IF

12 THERE'S ANY CONFUSION WE CLEAR THAT UP AND HOPEFULLY WE CAN GET

13 THAT BEFORE WE'RE IN FRONT OF YOUR HONOR AGAIN.

14         BECAUSE, OTHERWISE, WE HAVE TERABYTES AND WE CAN'T

15 EVEN SEARCH WHAT THEY CLAIM ARE THE IMPORTANT DOCUMENTS.

16         **THE COURT:**  ALL RIGHT.

17         AND MR. AXELROD, THOSE FILE NAMES ARE SUBJECT TO THE

18 PROTECTIVE ORDER, AND THAT'S AN ISSUE THAT WILL BE CLEAR UP?

19         **MR. AXELROD:**  WELL, I THINK THERE -- I GUESS HERE'S

20 WHAT I'D SAY ABOUT THE FILE NAMES.  NUMBER ONE, WE PRODUCED ALL

21 THE FILE NAMES, WHICH IS WHAT THEY HAD ASKED FOR YESTERDAY.

22 THAT'S THE STACK THAT COUNSEL WAS REFERRING TO.

23         WITH RESPECT TO THE SPECIFIC FILE NAMES OF TRADE

24 SECRETS, I GUESS HERE'S THE WAY I WOULD LOOK AT IT. THOSE ARE

25 GOING TO BE -- EXCEPT FOR CATEGORY-1 THEY ARE GOING TO BE THE

1    HARD COPY DOCUMENTS THAT THEY ARE GOING TO GET.

2            I BELIEVE THAT, YOU KNOW, IF THERE'S A PRINTOUT OF

3    THOSE THEY WILL PROBABLY HAVE THE ASSOCIATED COMPUTER FILE NAME

4    IF THAT'S WHERE THEY CAME FROM.

5            YOU KNOW, SO THAT'S SORT OF WHERE WE ARE ON THAT. I,

6    YOU KNOW, AM HAPPY TO TALK FURTHER WITH COUNSEL ABOUT IT, BUT

7    THAT'S -- YOU KNOW, TO THE EXTENT THEY WANT THE SORT OF

8    CONFIDENTIAL-1 FILE NAMES TO LOOK FOR IT IN ELECTRONIC VERSION

9    IT'S ACTUALLY NOT GOING TO BE THERE.  IT'S GOING TO BE PRINTED

10   OUT IN THE HARD COPY.

11           **THE COURT:**  ALL RIGHT.

12           **MR. RAGLAND:**  THEN MAYBE WE CAN GET A DATE PRETTY

13   QUICKLY.

14           **THE COURT:**  LET'S GET A DATE.  YOU CAN CONFER

15   FURTHER, AND WE CAN DISCUSS THAT FURTHER IF THERE'S SOMETHING TO

16   DISCUSS.

17           WHAT DATE SHALL WE RETURN?

18           **MR. AXELROD:**  I WOULD SUGGEST IN, YOU KNOW, MAYBE A

19   MONTH OR SIX WEEKS.

20           **MR. RAGLAND:**  I THINK THAT IS WAY TOO FAR OUT, YOUR

21   HONOR.  I WOULD SUGGEST TWO OR THREE WEEKS IS MORE APPROPRIATE.

22           **MR. FROELICH:**  YOUR HONOR, I HAVE ONE PROBLEM.  I

23   FILED AND I GOT APPROVAL OF A LEAVE OF ABSENCE FROM THE DISTRICT

24   COURT.  AND I AM LOOKING AT A CALENDAR.

25           I BELIEVE I LEAVE THE NIGHT OF THE 11TH.  I HAVE TO

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

```
1    BE IN A MEETING IN ZURICH.  AND THEN, I'M IN ITALY AND SPAIN.

2    AND I'LL BE BACK THE NIGHT OF THE 25TH, JULY.

3              MR. RAGLAND:  COULD WE DO JULY 10 BEFORE MR. FROELICH

4    HAS TO LEAVE?

5              THE COURT:  LET ME REFRESH MYSELF.

6              MR. RAGLAND:  OR THE NINTH, THAT MONDAY OR TUESDAY.

7              MR. FROELICH:  I HAVE TO LOOK AT MY CALENDAR.  I

8    THINK I HAVE A SENTENCING ON THAT JULY 9TH.

9              THE COURT:  I THINK THE TENTH IS PROBABLY SOMETHING

10   THAT WILL WORK OUT.

11             AND MR. AXELROD, I KNOW THAT THAT'S SOONER THAN YOU

12   WOULD LIKE, BUT I THINK WE WILL BE ABLE TO GET A REPORT ON WHAT

13   YOU'VE PRODUCED.

14             MR. AXELROD:  THAT'S FINE.  NOT A PROBLEM.

15             MR. FROELICH:  BUT, YOUR HONOR, THERE ARE SOME THINGS

16   I HAVE BEEN ASKING FOR A LONG TIME.  I HAVEN'T EVEN GOTTEN

17   EVERYTHING THAT SEIZED FROM MY CLIENT, HIS FINANCIAL RECORDS,

18   PASSPORTS, THINGS LIKE THAT.

19             AND THERE'S A LOT OF THINGS THAT YOU NEED BEFORE YOU

20   CAN FILE A MOTION.  AND SO THOSE THINGS I THOUGHT SHOULD BE

21   SPEEDED UP.

22             THE COURT:  RIGHT.  AND I THINK THAT --

23             MR. AXELROD:  JUST SO EVERYONE IS CLEAR I REPRESENTED

24   IN THE PLEADINGS AND I'LL REPRESENT HERE AGAIN THERE'S A WHOLE

25   BUNCH OF STUFF THAT WE HAVE READY TO PRODUCE.  AND WE ARE ALSO
```

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    CONTINUING TO WORK TOWARDS, YOU KNOW, GEARING UP ALL THE OTHER

2    MATERIAL TO PRODUCE.  SO WE UNDERSTAND THE PROTECTIVE ORDER IS

3    COMING.  AND WE UNDERSTAND THAT WE'RE GOING TO BE PRODUCING A

4    WHOLE BUNCH OF MATERIAL, INCLUDING, I BELIEVE, THE ITEMS FROM

5    MR. MAEGERLE'S RESIDENCE.

6                  THERE'S JUST A LOT.  IT'S SORT OF THAT WE'RE JUST

7    WAITING.  AND WE'LL GET IT OUT.  AND IF THERE IS A PROBLEM THEY

8    CAN RAISE IT.  BUT THIS ISN'T -- I MEAN WHAT I'M SAYING.  SO

9    WHEN I SAY THAT WE'RE GOING TO PRODUCE THESE THINGS, WE'RE GOING

10   TO PRODUCE IT.

11                  I'VE GOT A TWO TERABYTE HARD DRIVE SITTING IN MY

12   OFFICE THAT, AS I UNDERSTAND IT, WHEN YOU EXPAND IT IT'S TEN

13   TERABYTES OF INFORMATION.  THEY ARE GOING TO GET THAT ONCE

14   THERE'S A PROTECTIVE ORDER.

15                  SO, YOU KNOW, WE'LL COME BACK.  WE'LL ADDRESS THESE

16   ISSUES WHENEVER IT'S CONVENIENT FOR THE COURT.

17                  **THE COURT:**  VERY WELL.  LET'S SET THIS ON JULY 10TH

18   AT 1:00 P.M.

19                  **MR. FROELICH:**  YOUR HONOR, CAN I MAKE ONE -- ALSO ONE

20   SUGGESTION?

21                  **THE COURT:**  YES.

22                  **MR. FROELICH:**  ON THE 10TH, CAN WE DO IT IN THE

23   MORNING?  I'LL TELL YOU WHY, YOUR HONOR.

24                  **THE COURT:**  I'LL TELL YOU WHY NOT:  BECAUSE I HAVE

25   ANOTHER PROCEEDING AT THAT TIME.

1          **MR. FROELICH:**  OH, OKAY.

2          **THE COURT:**  SO WE'RE GOING TO SET IT AT ONE P.M. ON

3    JULY 10TH.  AND I WILL ASK THE GOVERNMENT TO ON THE NINTH JUST

4    TO GIVE US A SUPPLEMENT AS TO WHAT HAS BEEN PRODUCED BEFORE THE

5    HEARING SO THAT THE COURT WILL BE ADVISED OF THAT.

6          **MR. RAGLAND:**  AND, YOUR HONOR, IF THE DEFENSE HAS

7    CONCERNS ABOUT WHAT HASN'T BEEN PRODUCED?

8          **THE COURT:**  ANY OTHER ISSUES YOU WANT TO BRING UP ON

9    THE DAY BEFORE GIVE ME A SHORT SUMMARY AS TO WHAT THE ISSUES ARE

10   THAT YOU WOULD LIKE TO DISCUSS AND TO CONFER WITH EACH OTHER TO

11   SEE IF YOU CAN WORK THEM OUT.

12         **MR. RAGLAND:**  YES.  AND WE HAVE DO A JOINT REPORT

13   EVEN IF WE HAVE SEPARATE SESSIONS.  IT MIGHT BE EASIER FOR THE

14   COURT.

15         **THE COURT:**  AGREED.

16         **MR. FROELICH:**  AND, YOUR HONOR, IF I HAVE A PROBLEM

17   RATHER THAN DELAYING OR MOVING IT, COULD I FORMALLY WAIVE AND

18   SIGN, BECAUSE IT'S JUST A DISCOVERY.  I MEAN, IT'S --

19         **THE COURT:**  YES.  AND IF YOU WOULD LIKE TO

20   PARTICIPATE BY PHONE GIVEN YOUR TRAVEL SCHEDULE, THAT'S

21   PERMISSIBLE, AS WELL.

22         **MR. FROELICH:**  THANK YOU, YOUR HONOR.

23         **THE COURT:**  ALL RIGHT.  ANYTHING ELSE TODAY?

24         **MR. AXELROD:**  NO, YOUR HONOR.

25         **THE COURT:**  ALL RIGHT.  THANKS VERY MUCH.

1          **MR. AXELROD:**  THANK YOU, YOUR HONOR.

2          **MR. GLYNN:**  THANK YOU, YOUR HONOR.

3          **MR. RAGLAND:**  THANK YOU, YOUR HONOR.

4          **MR. GASNER:**  THANK YOU, YOUR HONOR.

5          (THEREUPON, THIS HEARING WAS CONCLUDED.)

6

7   STENOGRAPHY CERTIFICATION

8          "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
9          /S/ KATHERINE WYATT
           DATE 7-7-12
10         KATHERINE WYATT
           TYPED OR PRINTED NAME

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224