PAGES 1 - 62

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

```
UNITED STATES OF AMERICA,    )
                             )
            PLAINTIFF,       )
                             )
  VS.                        )          NO. CR 11-573 JSW
                             )
WALTER LIEW, ET AL.,         )
                             )
            DEFENDANT.       )
_____)
```

SAN FRANCISCO, CALIFORNIA
FRIDAY, JUNE 8, 2012

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

```
FOR PLAINTIFF:          UNITED STATES ATTORNEY'S OFFICE
                        450 GOLDEN GATE AVENUE
                        SAN FRANCISCO, CALIFORNIA  94102
                    BY: PETER BENJAMIN AXELROD
                        JOHN HENRY HEMANN
                        ASSISTANT UNITED STATES ATTORNEY

FOR DEFENDANT:          QUINN EMANUEL URQUHART & SULLIVAN
                        555 TWIN DOLPHIN DRIVE
                        5TH FLOOR
                        REDWOOD SHORES, CA  94065
                    BY: ROBERT P. FELDMAN
                        NICHOLE ALTMAN
                        ATTORNEYS AT LAW


REPORTED BY:            JAMES YEOMANS, CSR 4039, RPR
                        OFFICIAL REPORTER

            COMPUTERIZED TRANSCRIPTION BY ECLIPSE
```

| | |
|---|---|
| 1 | <u>FRIDAY, JUNE 8, 2012</u>                    <u>9:00 A.M.</u> |
| 2 | (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:) |
| 3 | **THE COURT:**  GOOD MORNING, EVERYBODY. |
| 4 | **THE CLERK:**  RECALLING CR-11-573, UNITED STATES VERSUS |
| 5 | PANGANG GROUP COMPANY, ET AL. |
| 6 | PLEASE STATE YOUR APPEARANCES. |
| 7 | **MR. AXELROD:**  PETE AXELROD, JOHN HEMANN AND RICHARD |
| 8 | SCOTT FOR THE UNITED STATES. |
| 9 | **MR. FELDMAN:**  GOOD MORNING, YOUR HONOR. |
| 10 | ROBERT FELDMAN, WITH ME TODAY IS SOLELY BUT |
| 11 | SUFFICIENTLY NICOLE ALTMAN. |
| 12 | **THE COURT:**  ALL RIGHT.  THANK YOU. |
| 13 | ALL RIGHT.  BEFORE WE GET STARTED I WANTED TO -- I |
| 14 | REFLECTED ON YESTERDAY'S PROCEEDINGS AND COUPLE THINGS I WANTED |
| 15 | TO COMMENT ON AND THEN FOCUS ON. |
| 16 | THE FIRST IS -- THIS IS SORT OF MORE OF A HOUSEKEEPING |
| 17 | ISSUE.  THAT IS, AS WE WERE LEAVING COUNSEL MENTIONED THEY |
| 18 | WANTED TO BEGIN TO ARGUE THE STANDARDS, THE LEGAL RULES |
| 19 | APPLICABLE TO AGENCY OR ALTER EGO.  AND I DON'T WANT TO HEAR IT |
| 20 | BECAUSE I REREAD EVERYTHING THIS MORNING AND IT'S WELL BRIEFED. |
| 21 | SO WHAT I WANT YOU TO DO IS, FOR THOSE OF YOU, THE |
| 22 | YOUNGER ATTORNEYS OUT THERE, LEARN TO WRITE AND READ AND IN THE |
| 23 | IRAQ ISSUE RULE ANALYSIS CONCLUSION MODE I DON'T WANT THE I AND |
| 24 | I DON'T WANT THE R.  I WANT THE A AND POSSIBLY THE C. |
| 25 | IT'S INEVITABLE, BUT SO I WANT TO FOCUS US BACK ON |

1    REALLY WHERE THE COURT IS ON THIS, AT LEAST, IN TERMS OF ITS

2    ANALYSIS, AND THAT GOES BACK TO RULE 4 OF THE FEDERAL RULES OF

3    CRIMINAL PROCEDURE IN SECTION (C)(3)(C) WHICH SAYS AND I'LL

4    QUOTE IT BECAUSE IT'S PRETTY SHORT AND SIMPLE.

5         "A SUMMONS IS SERVED ON AN ORGANIZATION BY DELIVERING

6    A COPY TO AN OFFICER, TO A MANAGING AGENT OR GENERAL AGENT" AND

7    I'LL LEAVE OUT THE REST BECAUSE IT'S REALLY NOT RELATED.

8         "A COPY MUST ALSO BE MAILED TO THE ORGANIZATION'S LAST

9    KNOWN ADDRESS," THE ORGANIZATION'S UNDERSCORE LAST KNOWN

10   ADDRESS, "WITHIN THE DISTRICT OR TO ITS PRINCIPLE PLACE OF

11   BUSINESS ELSEWHERE IN THE UNITED STATES."

12        AND HAVING LISTENED TO THE ARGUMENT THAT THE

13   GOVERNMENT WAS MAKING YESTERDAY, I WOULD LIKE TO HEAR HOW THE

14   GOVERNMENT'S EVIDENCE TRULY FULFILLS THE SECOND PRONG.  BECAUSE

15   THIS IS NOT A CONSTRUCT OR SORT OF A TOUCHY FELLY, YOU KNOW,

16   THRUST OF THE ARGUMENT, WELL, THEY MADE COMMENTS ABOUT THEY ARE

17   THE ORGANIZATION, THEY ARE OPERATING THROUGH THEIR SUBSIDIARY.

18        THERE ARE CASES THAT SAY WHEN A PARENT TALKS ABOUT WE

19   THAT'S NOT SUFFICIENT.  SO I WANT TO HEAR -- NOW I AM GOING TO

20   GIVE YOU A CHANCE TOO ARGUE, I WANT TO HEAR THE DEFENDANTS IN

21   RESPONSE, HOW THE EVIDENCE THAT YOU BROUGHT FORTH YESTERDAY AND

22   LISTED, ALTHOUGH, ALBEIT GIVING YOU CREDIT I DID SAY ONLY YOUR

23   BEST EVIDENCE, YOU SAID THERE'S MORE AND I'M GOING TO LOOK AT

24   ALL OF IT.

25        HOW DOES THAT MEET THE LAST PRONG, THAT THE

1    ORGANIZATION WHICH IS THE DEFENDANT THAT YOU'RE LOOKING TO IS

2    IN THE UNITED STATES?

3         MR. HEMANN:  SO THE WAY I WOULD ANSWER THAT QUESTION,

4    YOUR HONOR, IS THAT LOOKING AT THE SECOND PRONG WHERE AT THE

5    END OF THE SECOND PRONG, WE DIDN'T ATTEMPT TO MAIL IT TO AN

6    ADDRESS WITHIN THE DISTRICT, WE MAILED IT TO THE DEFENDANT'S

7    PRINCIPLE PLACE OF BUSINESS IN THE UNITED STATES.

8         WE BELIEVE THAT THE PRINCIPLE PLACE OF BUSINESS IN THE

9    UNITED STATES IS THE PAI OFFICE IN NEW JERSEY.  WE BELIEVE THAT

10   PRIMARILY, I THINK, THE BEST SINGLE PIECE OF EVIDENCE, IS THAT

11   THAT WAS THE INTENTION OF PANGANG GROUP IS TO ESTABLISH A

12   PRINCIPLE PLACE OF BUSINESS IN THE UNITED STATES.

13        THE COURT:  LET ME INTERRUPT YOU ONE SECOND BECAUSE I

14   SHOULD HAVE ADDED THIS AS WELL.

15        BECAUSE -- LET'S ASSUME JUST FOR THE MOMENT HERE THAT

16   THE INFORMATION OR THE EVIDENCE YOU ADDUCED SHOWS -- SATISFIES

17   THE GENERAL AGENT PRONG.

18        I ASSUME, THAT YOU'RE NOT ARGUING THAT THE GENERAL

19   AGENT PRONG IS COTERMINOUS WITH WHAT I CALL THE ORGANIZATION

20   PRONG, THE ORGANIZATION IS IN THE UNITED STATES?

21        MR. HEMANN:  I THINK, THAT IT COULD BE COTERMINOUS

22   WITH IT.  YOU CAN POSIT ALL SORTS OF SITUATIONS IN WHICH A, YOU

23   KNOW, AN OFFICER WAS SERVED AT AN AIRPORT AND THEN ALSO THAT

24   OFFICER USED AN OFFICE IN THE UNITED STATES, AND WE MAILED --

25   THE GOVERNMENT MAILED THE SUMMONS TO THAT OFFICE IN THE UNITED

1    STATES, WE WOULD SAY THAT, YOU KNOW, THAT THEY OVERLAP.

2         I DON'T BELIEVE THAT WE NEED TO GET TO THE QUESTION,

3    YOUR HONOR, SHOULD GET TO THE QUESTION OF WHETHER THEY HAVE TO

4    BE COTERMINOUS OR THEY NEEDN'T BE COTERMINOUS, THEY COULD NEVER

5    BE COTERMINOUS.

6         **THE COURT:**  LET ME HEAR YOUR ARGUMENT NOW WITH CASES

7    OR WITH AUTHORITIES AS TO WHY THE EVIDENCE YOU PUT FORTH AND

8    WHICH YOU HIGHLIGHTED YESTERDAY GETS YOU BEYOND THE GENERAL

9    AGENCY PRONG TO THE ORGANIZATION PRONG?

10        **MR. HEMANN:**  I THINK, THERE TWO ANSWERS TO YOUR

11   HONOR'S QUESTION.  AND I DON'T THINK THERE'S A CASE, I DON'T

12   BELIEVE THERE TO BE A CASE THAT'S SUFFICIENTLY CLOSE TO THIS,

13   TO THE COURT'S QUESTION THAT IT ACTUALLY ANSWERS IT.  IT'S A

14   FACTUAL ANALYSIS AS TO WHETHER OR NOT THE PAI OFFICE IN NEW

15   JERSEY WAS, IN FACT, PANGANG GROUP'S PRINCIPLE PLACE OF

16   BUSINESS IN THE UNITED STATES.

17        I THINK, THE MODIFIER IN THE UNITED STATES IS

18   SUFFICIENT.  UNDER THE CRIMINAL LAW WE CAN NEVER MAIL THE

19   SUMMONS TO A PRINCIPLE PLACE OF BUSINESS OVERSEAS.

20        SO IN WRITING THE RULE, THE RULE IS WRITTEN WITH AN

21   UNDERSTANDING THERE CLEARLY COULD BE MULTIPLE PRINCIPLE PLACES

22   OF BUSINESS, AND IN THIS CASE WE THINK THE PANGANG GROUP AS A

23   PRINCIPLE PLACE OF BUSINESS IN THE PRC AND A PRINCIPLE PLACE OF

24   BUSINESS IN THE UNITED STATES AND THE COURT SHOULD INTERPRET

25   RULE 4'S REQUIREMENT TO BE THAT WE SEND IT TO THE PRINCIPLE

1    PLACE OF BUSINESS IN THE UNITED STATES.

2          WHY DO WE SAY IT'S THE PRINCIPLE PLACE OF BUSINESS?

3    BECAUSE THE CHAIRMAN OF THE PANGANG GROUP SAID THIS WILL BE OUR

4    HEADQUARTERS IN THE NORTHERN HEMISPHERE AND THERE ARE ALL SORTS

5    OF PIECES OF EVIDENCE THAT CONNECT -- THAT WE WENT THROUGH

6    YESTERDAY, THAT CONNECT PAI TO THE PANGANG GROUP IN A CLOSE

7    ENOUGH WAY THE COURT CAN CONCLUDE THAT PAI WAS BEING TREATED AS

8    THE PRINCIPLE PLACE OF BUSINESS FOR THIS COMPANY IN THE UNITED

9    STATES.

10         **THE COURT:**  YOU'RE SAYING THAT, BUT THERE'S NO LAW,

11   I'M JUST A LOWLY DISTRICT JUDGE HERE ANSWERING TO THE ENTIRE

12   NINTH CIRCUIT AND THE SUPREME COURT.

13         IT ISN'T -- I MEAN, THE DEFENDANTS, OF COURSE, THEY

14   VIEW IT SUPPORTING YOUR POSITION, HAVE CITED THE COURT TO NEW

15   JERSEY LAW WITH RESPECT TO ALTER EGO, WHICH WAS SOMETHING THE

16   COURT CAN TETHER, AND THAT HAS TO DO WE ALL KNOW THE RULES NEW

17   JERSEY AREN'T THAT MUCH DIFFERENT THAN CALIFORNIA ON THIS

18   POINT.

19         YOU KNOW, NOT FOLLOWING THE CORPORATE NICETIES AND

20   BEING UNDER CAPITALIZED AND THE WAY THEY CONDUCT BUSINESS

21   CONSTITUTING A FRAUD ON THE PUBLIC OR CREDITORS, THERE'S LAW

22   THE COURT COULD TETHER ITSELF TO, BUT WHAT I HEAR YOU SAYING

23   YOU DON'T NEED TO GO THERE, THAT LAW IS NOT RELEVANT IN THIS

24   SITUATION.

25         **MR. HEMANN:**  ABSOLUTELY WE'RE SAYING THAT, YOUR HONOR.

1    NEW JERSEY LAW AS TO ALTER EGO IS NOT RELEVANT TO THE

2    SITUATION.

3           WE HAVE A LARGE BODY OF NINTH CIRCUIT LAW ON ALTER EGO

4    THAT IS PERFECTLY ACCEPTABLE AND SHOULD BE USED BY THE COURT IN

5    THIS CIRCUMSTANCE BECAUSE IT ARISES IN THE CONTEXT OF FEDERAL

6    COURT PROCEEDINGS WHERE THERE'S NATIONAL JURISDICTION.  WE

7    THINK THAT IS THE LAW THAT THE COURT SHOULD BE FOCUSED ON HERE.

8           **THE COURT:**  SO THERE IS LAW?

9           **MR. HEMANN:**  THERE IS LAW WITH REGARD TO WHAT GENERAL

10   AGENTS ARE, THERE IS LAW WITH REGARD TO WHAT THE PROPER ALTER

11   EGO STANDARD IS, THERE IS NOT A CASE, YOUR HONOR --

12          **THE COURT:**  RIGHT.

13          **MR. HEMANN:**  -- THAT WE ARE AWARE OF WHERE THE COURTS

14   HAVE INTERPRETED WHAT THE PRINCIPLE PLACE OF BUSINESS IN THE

15   UNITED STATES MEANS IN THE CONTEXT OF RULE 4.

16          **THE COURT:**  LET'S ASSUME HYPOTHETICALLY THAT THE NEW

17   JERSEY SUBSIDIARY WAS THE ALTER EGO WITHIN THE NINTH CIRCUIT

18   LAW IT'S GAME OVER.

19          **MR. HEMANN:**  GAME OVER.

20          **THE COURT:**  YOU AREN'T ARGUING THAT.

21          **MR. HEMANN:**  WE ARE ARGUING THAT IT IS.  IN OUR BRIEF

22   WE ARGUE THAT IT IS ALSO AN ALTER EGO IN THE NINTH CIRCUIT

23   STANDARD.  WE DON'T BELIEVE THE COURT NEEDS TO GET THERE.

24          AS WE SAID IN OUR BRIEF WE THINK THE COURT SHOULD MAKE

25   ALTERNATIVE CONCLUSIONS.  NUMBER ONE BEING WE SERVE THE GENERAL

1    AGENT AND WE MAILED THE SUMMONS TO THE PRINCIPLE PLACE OF

2    BUSINESS OF THE PANGANG GROUP IN THE UNITED STATES.

3          AND ALTERNATIVELY THAT PANGANG GROUP -- THAT PAI IS

4    THE ALTER EGO OF THE PANGANG GROUP SUCH THAT SERVICE UNDER THAT

5    THEORY AS ARTICULATED IN THE FOUR DISTRICT COURT CASES --

6    DISCUSSED IN THE FOUR DISTRICT COURT CASES ARE TALK ABOUT RULE

7    4 IS SATISFIED.

8          **THE COURT:**  WHAT'S THE BEST EVIDENCE THAT YOU HAVE OR

9    THE BEST ARGUMENT THAT YOU HAVE ON ALTER EGO?

10          WHAT FEATURES OR WHAT OPERATING MODALITIES OF THE

11    SUBSIDIARY MAKE IT THE ALTER EGO OF THE PARENT?

12          **MR. HEMANN:**  I THINK THERE'S A COUPLE OF ITEMS, YOUR

13    HONOR.  NUMBER ONE, AND I THINK WE'LL PROBABLY TALK ABOUT THIS

14    A LITTLE BIT WITH REGARD TO THE L1A VISA ISSUE.

15          I THINK, THE STRONGEST EVIDENCE IS, NUMBER ONE,

16    CHAIRMAN FAN SIGNING DOCUMENTS, SIGNING COMMUNICATIONS WITH THE

17    UNITED STATES GOVERNMENT AS PURPORTING TO BE AN OFFICER OF PAI.

18    THAT IS PRIMA FACIE DISREGARDING PAI'S SEPARATE CORPORATE

19    ENTITY.

20          **THE COURT:**  YOU'RE SAYING -- I DON'T KNOW IT'S COMMON

21    IN THE CASE, BUT I'M SURE IT'S FREQUENTLY THE CASE, THAT YOU

22    HAVE INTERLOCKING DIRECTORSHIPS, YOU HAVE COMMON OFFICERS WITH

23    THE PARENT, THAT IS OFFICERS WORKING AT THE SUBSIDIARY AS WELL

24    AND MIGHT HAVE DUAL TITLES.

25          YOU'RE SAYING DUAL TITLES OR DUAL STATUS AN OFFICER

1  FOR THE PARENT AND THE SUBSIDIARY IS EVIDENCE OF ALTER EGO?

2       **MR. HEMANN:**  NO, WE'RE NOT SAYING THAT.  CHAIRMAN FAN

3  WAS NOT AN OFFICER, OR DIRECTOR, OR EMPLOYEE OF PAI.

4       SO, YES, THERE ARE CIRCUMSTANCES UNDER WHICH YOU CAN

5  HAVE PRESIDENT OF SUBSIDIARY -- OR PARENT ALSO BEING PRESIDENT

6  OR CHAIRMAN OF THE BOARD OF DIRECTORS OF SUBSIDIARY.  THAT IS

7  SOMETHING THAT HAPPENS.

8       THAT IS NOT WHAT HAPPENED IN THIS CASE.  CHAIRMAN FAN

9  IS NOT OFFICER, DIRECTOR, OR EMPLOYEE OF PAI.  NEVERTHELESS

10  WHEN HE IS COMMUNICATING WITH THE UNITED STATES GOVERNMENT BOTH

11  IN THE L1A APPLICATION AND IN THE COURSE OF THE SUPPORTING

12  CORRESPONDENCE HE REPRESENTS HIMSELF TO BE THE PRESIDENT OF OR

13  THE CHAIRMAN OF PAI WHICH HE IS NOT.  THAT'S NUMBER ONE.

14       **THE COURT:**  ALL RIGHT.

15       **MR. HEMANN:**  NUMBER TWO, IS THAT THE NATURE OF THE L1A

16  VISA ITSELF WHICH IS AN INTRA COMPANY TRANSFER.

17       **THE COURT:**  LET'S GET TO THAT NEXT.

18       **MR. HEMANN:**  SURE.

19       **THE COURT:**  NOT NEXT, I WANT -- IS THERE ANYTHING

20  FURTHER ON POINT THAT I RAISED AT THE BEGINNING OF -- WITH

21  RESPECT TO THE BEST ARGUMENT?

22       YOU'VE GIVEN ME A COUPLE OF PRONGS AND YOU'RE GOING TO

23  GET INTO THE 1A WHEN WE GET TO QUESTION 5A -- 5B, BUT IS THERE

24  ANYTHING MORE YOU WANT TO ARGUE BASE UPON THE EVIDENCE THAT YOU

25  LISTED FOR THE COURT YESTERDAY?  TO SHOW SPECIFICALLY THE

1   SECOND PRONG.

2           **MR. HEMANN:** THE ALTER EGO PRONG? THE PRINCIPLE PLACE

3   OF BUSINESS PRONG?

4           **THE COURT:** YES.

5           **MR. HEMANN:** I THINK, THERE'S NOTHING ELSE. THERE'S

6   NO SPECIFIC CASE. THE CASES THAT THE COURT HAS IN FRONT OF IT

7   THAT DEAL WITH SERVICE UNDER RULE 4 DON'T TALK ABOUT PRINCIPLE

8   PLACE OF BUSINESS. WE INTERPRET THAT TO MEAN THERE WAS NOT THE

9   SAME KIND OF EVIDENCE IN THOSE CASES.

10          **THE COURT:** SO WE'RE MAKING NEW LAW HERE.

11          **MR. HEMANN:** I BELIEVE, THAT WE ARE POTENTIALLY MAKING

12  NEW LAW HERE, YES, YOUR HONOR.

13          **MR. FELDMAN:** MAY I BE HEARD ON THAT?

14          **THE COURT:** I KNOW YOUR PROBABLY BURSTING AT THE

15  SEAMS, YOU'LL GET EVERY OPPORTUNITY TO ANSWER. I WANT TO GET

16  THE GOVERNMENT'S FULL POSITION HERE, I THINK, THIS IS A CRUCIAL

17  POINT.

18          **MR. HEMANN:** I THINK THAT WITH REGARD TO THE PRINCIPLE

19  PLACE OF BUSINESS PRONG OF RULE 4, WE BELIEVE THAT A NUMBER OF

20  THE ITEMS THAT WE DISCUSSED, EVIDENTIARY ITEMS WE DISCUSSED

21  WITH THE COURT YESTERDAY ARE APPLICABLE, ARE TELLING WITH

22  REGARD TO THE COMPANY TREATING THE PAI OFFICE AS A PRINCIPLE

23  PLACE OF BUSINESS. SO I DON'T THINK I NEED TO GO FURTHER.

24          I WOULD LIKE TO MAKE ONE QUICK CORRECTION. I REALIZED

25  I MISSPOKE YESTERDAY. I THINK, I GAVE THE COURT THE WRONG CITE

1  WITH REGARD TO THE OFFICE MOVE BEING DIRECT BY PIATC.  THE

2  PATTILLO DECLARATION EXHIBIT R.  I THINK I MIGHT HAVE SAID O.

3         **THE COURT:**  OKAY.

4         **MR. HEMANN:**  BUT IT'S EXHIBIT R.

5         **THE COURT:**  MR. FELDMAN, I'LL GIVE YOU A CHANCE.

6         **MR. FELDMAN:**  THANK YOU, YOUR HONOR.

7         THE MOST EFFECTIVE THING I PERHAPS CAN DO WITH RESPECT

8  TO THE COURT'S QUESTION ABOUT THE ORGANIZATION'S PRINCIPLE

9  PLACE OF BUSINESS IS TO CONTINUE TO IMPOSE UPON THE COURT WITH

10  RESPECT TO THE GOVERNMENT'S PLEADINGS.

11         I'M GOING TO READ TO YOU THE HEADING THE GOVERNMENT

12  USED ON PAGE 14 OF ITS OPPOSITION MEMORANDUM.

13         **THE COURT:**  ALL RIGHT.

14         **MR. FELDMAN:**  I'M GOING TO READ IT SLOWLY FOR THE

15  COURT REPORTER'S BENEFIT.

16         **THE COURT:**  THANK YOU.

17         **MR. FELDMAN:**  THE UNITED STATES SERVED PAI PANGANG

18  GROUPS GENERAL AGENT.  MAY I INTERJECT?  I AGREE.  AND MAILED

19  THE SUMMONS, SUMMONSES TO THE AGENT'S PRINCIPLE PLACE OF

20  BUSINESS IN THE UNITED STATES.

21         I DIDN'T SAY THAT, THEY DID.  THAT'S EXACTLY THE

22  OPPOSITE OF WHAT THEY HAD TO DO.  THAT'S NOT MY WORDS, THAT'S

23  THEIR WORDS.

24         **THE COURT:**  YOU SAY THE OPPOSITE, WHAT I HEAR THE

25  GOVERNMENT ARGUING THERE ARE CIRCUMSTANCES WHERE THE GENERAL

1   AGENT COULD ALSO HAPPEN TO BE THE ORGANIZATION AS THAT TERM IS

2   USED IN RULE 4, CORRECT?

3            **MR. FELDMAN:** BUT IT'S NOT.  THE RULE DOESN'T SAY

4   THAT.  THE RULE SAYS THE OPPOSITE.

5            IT SAYS YOU CAN SERVE THE AGENT WHICH IS AN ENTITY OR

6   PERSON AND YOU HAVE TO MAIL TO THE ORGANIZATION WHICH IS THE

7   PARTY THAT IS BEING BROUGHT TO COURT.

8            YOU CAN'T SAY AGENT MEANS AGENT AND ORGANIZATION MEANS

9   AGENT.  IT SAYS ORGANIZATION'S PRINCIPLE PLACE OF BUSINESS AND

10  IT IS INCORRECT TO SAY THAT THERE'S NO CASE ON THAT.

11           YOU HAVE BEFORE YOU THE JOHNSON CASE WHICH EXPRESSLY

12  RECOGNIZED THIS ISSUE.  THERE WAS SERVICE ON THE -- ACTUALLY

13  SERVICE ON THE DEFENDANT IN A CRIMINAL CASE, BUT THERE COULDN'T

14  BE A MAILING.  AND THE COURT RECOGNIZED THERE MIGHT NEVER BE

15  ABLE TO BE SERVICE, BUT WORDS ARE WORDS.

16           I MEAN IT DOESN'T SAY ORGANIZATION SLASH AGENT IT SAYS

17  ORGANIZATION.  AND I WOULD ASK YOU TO CONTRAST THAT WITH CIVIL

18  RULE 4 WHICH EXPRESSLY RECOGNIZES THE POSSIBILITY OF MAILING

19  ABROAD.

20           SO THIS IS AS CLEAR A STATEMENT AS IT COULD BE.  AND

21  THEN TO MAKE IT CLEARER ON PAGE 15 OF THE GOVERNMENT'S BRIEF,

22  PAGE 15 LINES TWO THROUGH 10 TO -- AND THIS IS NOW IN THE

23  SECTION ON GENERAL AGENCY, THEY EXPRESSLY AND ONLY RELY UPON

24  CASES WITH RESPECT TO ALTER EGO.

25           SO WHAT THEY'RE SAYING IS THAT TO SATISFY THE GENERAL

1   AGENCY MAILING REQUIREMENT THEY'RE RELYING ON CASES WITH

2   RESPECT TO ALTER EGO.

3        THE CASES THAT ARE CITED ON PAGE 15 LINES TWO THROUGH

4   10 ARE ONLY ALTER EGO CASES, AND WE CAN ASSUME FOR PURPOSE OF

5   THIS PORTION OF OUR ARGUMENT THAT IF, IN FACT, THE SUBSIDIARY

6   WERE AN ALTER EGO THAN MAILING MIGHT MAKE MORE SENSE.

7        BUT IT DOES NOT MAKE SENSE AND CANNOT MAKE SENSE BY

8   THE CLEAR LANGUAGE OF RULE 4 WHICH CAN'T BE REWRITTEN TO SUIT

9   THE GOVERNMENT, THAT SERVICE ON THE AGENT MEANS -- EXCUSE ME,

10  THAT SERVICE ON THE AGENT AND MAILING TO THE AGENT IS

11  SUFFICIENT.  THE RULE SAYS EXACTLY THE OPPOSITE.

12       **THE COURT:**  I'M A LITTLE CONFUSED BECAUSE -- MAYBE YOU

13  COVERED THIS, ACCEPTING WHAT YOU SAY, DOES THAT MEAN IT WOULD

14  BE -- IF THE COURT WENT ONTO MAKE THE DETERMINATION THAT THE

15  SUBSIDIARY WAS ALSO THE ALTER EGO, AND THERE WAS A MAILING TO

16  THAT ALTER EGO, THAT WOULD BE SUFFICIENT TO BE A MAILING ON THE

17  ORGANIZATION WITHIN THE UNITED STATES?

18       **MR. FELDMAN:**  IT MIGHT WELL BE.

19       **THE COURT:**  ALL RIGHT.  SO YOU'RE SAYING ESSENTIALLY

20  THEN, AND I DON'T -- THE GOVERNMENT DOESN'T AGREE WITH THAT

21  CONSTRUCT, BUT IT'S YOUR POSITION THE COURT MUST FIND TO FIND

22  THAT THE SERVICE WAS ADEQUATE THAT THE PARENT'S ALTER EGO IN

23  THE UNITED STATES WAS SERVED?

24       **MR. FELDMAN:**  I'M SORRY, I WANT TO HEAR THE QUESTION

25  AGAIN?

1      **THE COURT:** THE QUESTION IS, YOU'RE SAYING THAT IF BUT

2  ONLY IF THE PARENT'S ALTER EGO IN THE UNITED STATES WAS SERVED

3  --

4      **MR. FELDMAN:** WAS MAILED TO.

5      **THE COURT:** -- WAS MAILED TO, THEN THE SERVICE WAS

6  INADEQUATE.

7      **MR. FELDMAN:** LET ME SAY WHAT I --

8      **THE COURT:** THEREFORE, THE COURT MUST MAKE A

9  DETERMINATION UNDER WHATEVER APPLICABLE, THE NINTH CIRCUIT LAW

10  AS THE GOVERNMENT ARGUES, THE NEW JERSEY LAW AS THE DEFENDANT

11  ARGUES IT IS, I MUST MAKE THE DETERMINATION AS TO WHETHER OR

12  NOT THE SUBSIDIARY, THE JUNIOR SUBSIDIARY IS THE ALTER EGO OF

13  THE PARENT?

14      **MR. FELDMAN:** I WOULD SAY UNLESS YOU FIND ALTER EGO

15  PLAINLY THE MAILING REQUIREMENT HAS NOT BEEN SATISFIED. HAVE I

16  ANSWERED YOUR QUESTION?

17      **THE COURT:** YES, YOU HAVE.

18      **MR. FELDMAN:** WITH RESPECT TO WHETHER ALTER EGO CAN

19  EVEN BE USED IN THE CONTEXT OF RULE 4 THAT'S A DIFFERENT ISSUE.

20      **THE COURT:** HOW IS THAT A DIFFERENT ISSUE?

21      **MR. FELDMAN:** WELL, ENTIRELY DIFFERENT ISSUE.

22      **THE COURT:** IT'S A DIFFERENT ISSUE, BUT IT'S A

23  IMPORTANT ISSUE AND ONE THAT YOU'RE SAYING THE COURT MUST

24  NECESSARILY REACH AND DECIDE.

25      **MR. FELDMAN:** I'M SAYING THAT I BELIEVE -- I WANT TO

1   BE VERY CAREFUL TO ANSWER YOUR QUESTION SPECIFICALLY.  I THINK,

2   IF I UNDERSTAND YOUR QUESTION THE ANSWER IS YES.  LET ME -- MAY

3   I SAY IT THE WAY I WOULD SAY IT?

4           **THE COURT:**  YOU MAY.

5           **MR. FELDMAN:**  PLEASE.  UNDER THE GENERAL AGENCY PRONG

6   YOU MUST FIND GENERAL AGENCY AND YOU MUST FIND A MAILING TO THE

7   ORGANIZATION IN THE UNITED STATES.

8           **THE COURT:**  AGREED.

9           **MR. FELDMAN:**  UNDER THE ALTER EGO APPROACH I WOULD SAY

10  FIRST YOU SHOULDN'T USE IT, ALTHOUGH I RECOGNIZE CASES HAVE, IF

11  YOU DO THE ARGUMENT THE GOVERNMENT HAS IS CONSIDERABLY STRONGER

12  THAT SERVICE AND MAILING TO THE ALTER EGO IS THE SAME AS

13  SERVICE AND MAILING TO THE ORGANIZATION.

14          **THE COURT:**  YOU RESTATED IT CORRECTLY, BUT THAN THE

15  LAST POINT I MADE WAS, THEREFORE, THE COURT MUST -- UNDER THAT

16  LINE OF REASONING THE COURT MUST THAN DECIDE WHETHER THE

17  SUBSIDIARY IS THE ALTER EGO OF THE PARENT?

18          **MR. FELDMAN:**  MUST DECIDE WHETHER ALTER EGO IS

19  APPROPRIATE UNDER RULE 4 AND IF IT IS YOU MUST DECIDE WHETHER

20  IT'S THE ALTER EGO.

21          **THE COURT:**  NOW, I'D LIKE, IF YOU CAN, IF YOU'RE READY

22  TO DO IT, JOIN ISSUE WITH THE GOVERNMENT ON THE EVIDENCE

23  THEY'VE NOW -- AND MAYBE THE ELEPHANT IN THE ROOM, MAYBE WE

24  SHOULD MOVE TO THE NEXT SERIES OF QUESTIONS HAVING TO DO WITH

25  THE L1 VISAS.

1    **MR. FELDMAN:**  I THINK, YOUR HONOR, IF I MAY, WHAT I

2    DID YESTERDAY YOU ASKED ME TO JOIN ISSUE WITH THE GOVERNMENT, I

3    WILL DO THAT.

4        **THE COURT:**  ALL RIGHT.

5        **MR. FELDMAN:**  WHAT I'VE DONE SINCE I HAD THE EVENING

6    TO DO IT I CREATED A NOTEBOOK OF THE DOCUMENTS THAT THE

7    GOVERNMENT CALLED OUT TO YOU, WHICH I WOULD HAND TO YOUR HONOR.

8        **THE COURT:**  I DON'T THINK IT'S NECESSARY, BUT I

9    APPRECIATE THE OFFER.  I NOTED CAREFULLY WHAT THOSE WERE.

10       **MR. FELDMAN:**  I NEED TO LOOK AT THEM, SO I'LL DO THAT.

11       **THE COURT:**  ALL RIGHT.

12       **MR. FELDMAN:**  WHAT I HAVE, I THINK, I NOTED THEM ALL

13   CORRECTLY, IT'S POSSIBLE I MISSED SOME, AND MY PLAN SINCE IT'S

14   LENGTHY, MY PLAN IS TO GO THROUGH THE DOCUMENTS WITH RESPECT TO

15   THE PANGANG GROUP.

16       I THINK -- I DON'T MEAN TO PREJUDGE THIS, BUT THE --

17   IT WON'T TAKE ME VERY LONG ACTUALLY, BUT IT'S LENGTHY.  SO I

18   THINK THERE'S SO FEW WITH RESPECT TO THE OTHER ENTITIES, AND

19   SOME OF THEM ARE THE SAME, SO I'LL GO THROUGH THE PANGANG

20   GROUP.  IF YOUR HONOR HAS ANY QUESTIONS ABOUT THE OTHER

21   ENTITIES I'LL BE HAPPY TO DO IT.

22       **THE COURT:**  OKAY.

23       **MR. FELDMAN:**  MAY I SAY, AS I DO THIS I DON'T KNOW IF

24   I CAN RESIST THE TEMPTATION TO DO WITH RESPECT TO EACH

25   DOCUMENT, BUT WHAT I WOULD ASK THE COURT TO DO, IS TO DO WHAT

1   YOU PRE-SAID THIS MORNING, ASK THE RIGHT QUESTIONS ABOUT EACH

2   OF THESE DOCUMENTS.

3         AND THOSE QUESTIONS ARE UNDER THE AGENCY PRONG WHETHER

4   THE DOCUMENTS SHOW THAT THE SUBSIDIARY WAS OF SUFFICIENT

5   IMPORTANCE UNDER THE BOWMAN CASE THAT THE GOVERNMENT RELIES

6   UPON, THAT PAI WAS THE GENERAL AGENT.

7         IN THAT CONNECTION YOU HAVE BOWMAN AND YOU KNOW IN

8   BOWMAN THE SUBSIDIARY REPRESENTED 20 PERCENT OF THE PARENT'S

9   GLOBAL REVENUE, AND IN THIS CASE THE EVIDENCE IS UNCONTROVERTED

10  THAT THE SUBSIDIARY REPRESENTED NO MORE THAN 1 PERCENT OF ONE

11  ENTITIES REVENUE FOR ONE YEAR.

12        SO THAT'S IN THE DECLARATION WE SUBMITTED IN

13  CONNECTION WITH OUR REPLY PAPERS.  THAT'S UNCONTROVERTED.  SO

14  WHEN WE GO THROUGH THESE DOCUMENTS WITH RESPECT TO THE QUESTION

15  OF GENERAL AGENCY, THE QUESTION IS UNDER BOWMAN ASSUMING IT

16  APPLIES, IS WAS THE SUBSIDIARY OF SUFFICIENT IMPORTANCE.

17        **THE COURT:**  COULD I ASK YOU, YOU MENTIONED SOMETHING

18  IN PASSING AND I WANTED TO -- MAYBE WE CAN MAKE THIS EVEN MORE

19  EFFICIENT, I THOUGHT YOU SAID, MAYBE IT WAS -- CORRECT ME IF

20  I'M WRONG, WITH RESPECT TO THE NEW JERSEY SUBSIDIARY, THAT YOU

21  AGREED THEY WERE THE GENERAL AGENT?

22        **MR. FELDMAN:**  I DID NOT.

23        **THE COURT:**  YOU SAID AGREED, WERE YOU TALKING ABOUT A

24  DIFFERENT -- DID I MISS THAT?

25        **MR. FELDMAN:**  YOU MUST HAVE.

1      **THE COURT:** YOU HEARD IT IN CONNECTION AS THE

2  GOVERNMENT WAS ARGUING ABOUT THE GENERAL AGENT, DID I MISS THAT

3  OR WERE YOU TALKING ABOUT A DIFFERENT SUBSIDIARY?

4      **MR. FELDMAN:** WAS THAT THIS MORNING?

5      **THE COURT:** YES.

6      **MR. FELDMAN:** I ABSOLUTELY DID NOT SAY THAT. I

7  COMPLETELY DID NOT SAY THAT.

8      **THE COURT:** YOU DID USE THE WORD AGREE.

9      **MR. FELDMAN:** I'M SURE I DID. BUT THAT'S WHY I WAS

10  TRYING TO RESTATE THE QUESTIONS. I ABSOLUTELY DO NOT BELIEVE

11  UNDER ANY APPLICABLE STANDARD THE NEW JERSEY SUBSIDIARY IS

12  EITHER THE GENERAL AGENT OR THE ALTER EGO.

13      **THE COURT:** ALL RIGHT. I UNDERSTAND, I STAND

14  CORRECTED. WHY DON'T YOU GO THROUGH YOUR ANALYSIS.

15      **MR. FELDMAN:** I WILL. BUT THE MOST IMPORTANT POINT IS

16  TO SAY TO YOU TODAY, THAT THE TEST FOR GENERAL AGENCY UNDER

17  BOWMAN, ASSUMING IT APPLIES, WHICH IS A CIVIL CASE ABOUT

18  PERSONAL JURISDICTION, IS WHETHER THE SUBSIDIARY WAS OF

19  SUFFICIENT IMPORTANCE.

20      AND IN THAT CASE THE PRINCIPLE EVIDENCE UPON WHICH THE

21  9TH CIRCUIT RELIED WAS A SHOWING THAT THE SUBSIDIARY WAS 20

22  PERCENT OF THE GLOBAL REVENUE.

23      HERE THE EVIDENCE IS UNREBUTTED, UNREBUTTED, NOT EVEN

24  ADDRESSED IN THE GOVERNMENT'S PAPERS AT ALL, AT ALL, THAT THE

25  SUBSIDIARY WAS APPROXIMATELY 1 PERCENT IN ONE YEAR.

1      **THE COURT:**  YOU MADE THAT POINT.  I KNOW YOU REALLY

2   MEAN IT, IT'S IMPORTANT.

3      **MR. HEMANN:**  WE WOULD AGREE WITH MR. FELDMAN'S POINT.

4      **MR. FELDMAN:**  THEN WE HAVE JUDGE CONTI'S VERY CLEAR

5   DECISION CITED BY BOTH PARTIES IN HICKORY WHICH HE SAID

6   PLAINTIFF, ON THIS VERY POINT, PLAINTIFF MUST SHOW THAT THE

7   DEFENDANT COULD NOT CARRY ON ITS OWN BUSINESS.  NOT JUST THAT

8   IT WOULD LOSE THE BUSINESS OF THE PARTIES SERVED IN THOSE

9   PARTIES ABSENCE.  IT OVERLOOKS THE POSSIBILITY THAT THE TO BE

10  SERVED PARTY MIGHT SIMPLY IGNORE THE MARKETS SERVED.

11      SO THIS IS CRITICAL AND AS I GO THROUGH THESE PAPERS,

12  THESE DOCUMENTS THAT'S ONE OF THE QUESTIONS THAT WILL BE ASKED.

13  WHICH IS, DOES IT SHOW ANYTHING ABOUT THE IMPORTANCE?

14      I MAY SAY THE BOWMAN FACTOR WITH RESPECT TO THE

15  SUBSIDIARY.

16      **MR. HEMANN:**  IF I COULD JUST INTERJECT FOR JUST A

17  MOMENT.  WE'VE NOW HAD A BIT OF A DISCUSSION ABOUT THE

18  APPLICABLE LEGAL STANDARDS, MAYBE MORE THAN A BIT OF A

19  DISCUSSION.  I BELIEVE THAT I CAN ESTABLISH MR. FELDMAN IS

20  INCORRECT.  SO I WANT -- I WANT TO MAKE SURE --

21      **THE COURT:**  LET'S GIVE HIM ENOUGH ROPE FOR A BIGGER

22  SHOVEL THAN CAN YOU GO AHEAD.

23      **MR. HEMANN:**  I WANT TO KNOW WHEN THE COURT WANTED ME

24  TO --

25      **THE COURT:**  LET'S GO THROUGH THE DOCUMENTS, AND I

1   DON'T WANT A GENERAL -- BECAUSE I CAN READ THE CASES JUST LIKE

2   YOU FOLKS CAN, SO TO TELL ME, WELL, IT MEANS THIS OR THAT, I'M

3   REALLY INTERESTED NOW AND I WANT TO EMPHASIZE IN THE A OF IRAQ,

4   I DON'T MEAN THE COUNTRY OF IRAQ, EVEN THOUGH YOU'VE GIVEN ME A

5   LOT OF SHOCK AND AWE HERE.

6            **MR. FELDMAN:**  IF I MIGHT WITH RESPECT TO ALTER EGO,

7   THE QUESTION WILL BE, TWO QUESTIONS.  ONE, IS THERE SOMETHING

8   THAT SHOWS SUCH A DISREGARD OF ENTITIES, NUMBER ONE, THAT

9   THEY'RE THE SAME ENTITY, THAT IS THE SUB IS SOMEHOW THE SAME

10  ENTITY AS ALL OF THESE DIFFERENT COMPANIES.

11           AND, TWO, SOMETHING THAT IS ABSOLUTELY NOT ADDRESSED,

12  WHICH IS WHETHER THE SUB WAS USED, INFORMED OR USED IN SOME WAY

13  TO PERPETRATE A FRAUD OR A CRIME.

14           IF YOU LOOK AT THE OTHER CASES THAT ARE BEFORE YOU

15  UNDER ALTER EGO, IN THREE OF THE FOUR THE SUBSIDIARY SERVED

16  WERE ACTUALLY DEFENDANTS AND INVOLVED HEAVILY IN THE CRIMES

17  CHARGED.

18           PAI IS NOT EVEN MENTIONED IN THE INDICTMENT AND

19  THERE'S NO DISPUTE IT HAD NOTHING DO WITH THE CRIMES CHARGED

20  HERE.

21           **THE COURT:**  ALL RIGHT.

22           **MR. FELDMAN:**  NOW I'LL GO THROUGH THE DOCUMENTS.

23           **THE COURT:**  I'LL GIVE YOU A CHANCE, MR. HEMANN, TO

24  RESPOND.

25           **MR. HEMANN:**  THANK YOU, YOUR HONOR.

1    **MR. FELDMAN:** THE FIRST DOCUMENT, AS I UNDERSTAND IT,

2    IS AXELROD D, WHICH IS THE LETTER DATED JULY 10TH 2009. IT

3    WOULD BE EASIER I DO HAVE A BOOK OF JUST THESE EXHIBITS.

4    **THE COURT:** ALL RIGHT. WHY DON'T DO YOU THAT. I CAN

5    FIND THEM AGAIN.

6    **MR. FELDMAN:** WOULD YOUR HONOR LIKE A SECOND COPY?

7    **THE COURT:** YES, PLEASE.

8    **MR. FELDMAN:** SHOULD I HAND IT TO YOU, YOUR HONOR?

9    **THE COURT:** MY CLERK.

10   **MR. FELDMAN:** EXHIBIT D, NUMBER ONE IN THE BOOK I

11   REFERENCE TO BATES NUMBER 005. BATES NUMBER 005 IS IN THE

12   BOTTOM RIGHT HAND CORNER.

13   WE'RE TOLD BY THE GOVERNMENT THE CHINESE CHARACTERS

14   REFER TO PISCO. AND THAT I DIRECT THE COURT'S ATTENTION TO

15   PAGE 006.

16   THIS IS A DOCUMENT THAT WAS SUBMITTED TO THE INS, AND

17   UNDER THE DESCRIPTION OF U.S. SUBSIDIARY AND CORPORATE

18   RELATIONSHIP IT IS PLAINLY STATED AND CORRECTLY STATED AND THE

19   GOVERNMENT AGREES THAT THE CORPORATE RELATIONSHIPS ARE

20   CORRECTLY DESCRIBED THERE.

21   NAMELY, THAT PAN AMERICA SUBSIDIARY OF PISCO AND

22   PIETC. AND THE STOCK CERTIFICATES WERE ENCLOSED. THERE'S

23   NOTHING FRAUDULENT ABOUT THAT. ACCORDING TO THE GOVERNMENT

24   THOSE ARE TRUE STATEMENTS.

25   SO WHAT THIS SHOWS AT MOST IS A CORPORATE RELATIONSHIP

1    PARENT SUB, EVERY CASE THAT HAS CONSIDERED THE ISSUE IS CLEAR

2    THAT BEING A SUBSIDIARY DOESN'T MEAN ANYTHING FOR EITHER

3    GENERAL AGENT OR ALTER EGO.  THAT IS ALL THAT EXHIBIT D SHOWS.

4            EXHIBIT F WHICH IS BATES TWO.  I'M SORRY, TAB TWO, I

5    BEG YOUR PARDON.  IS A LETTER, IN FACT, SIGNED, APPARENTLY

6    SIGNED BY THE CHAIRMAN OF PANGANG GROUP WHICH ITSELF CORRECTLY

7    STATES THE CORPORATE RELATIONSHIP.

8            I HAVE REFERENCE TO THE THIRD FULL PARAGRAPH IN THIS

9    LETTER AND IT SAYS PAN AMERICA PRESENTLY LOCATED IN OUR

10   NORTHERN AMERICAN HEAD OFFICE.

11           **THE COURT:**  YOU READ THAT WRONG.  NORTHERN HEMISPHERE.

12           **MR. FELDMAN:**  BEG YOUR PARDON, THANK YOU.  PAI IS A

13   SUBSIDIARY OF PANGANG GROUP FORMALLY KNOWN AS SOMETHING WITH

14   THE INITIALS THAT ADD UP TO PISCO AND RENAMED ON DECEMBER 18TH

15   2009.

16           SO YOU HEARD YESTERDAY THERE WAS SOME MYSTERY ABOUT

17   PISCO, IN THIS LETTER TO THE GOVERNMENT THE DEFENDANTS EXPLAIN

18   EXACTLY CORRECTLY ACCORDING TO THE GOVERNMENT THAT PAI IS A

19   SUBSIDIARY AND WHY THE NAME WAS CHANGED.

20           THERE'S NOTHING MYSTERIOUS ABOUT THIS.  THE GOVERNMENT

21   RELIES UPON THIS AS BEING CORRECT.  THERE'S NO FRAUD, THERE'S

22   NOTHING IMPROPER, IT IS ABSOLUTELY THE CASE THAT IT IS ON PAN

23   AMERICA STATIONARY.  SO WHAT?

24           THE CORPORATE RELATIONSHIPS ARE CORRECTLY DESCRIBED IN

25   EVERY OTHER DOCUMENT THAT IS SUBMITTED TO THE GOVERNMENT.  I

1    REFERENCE NOW TO NUMBER THREE, WHICH IS THE -- THIS IS THE

2    THIRD DOCUMENT, I THINK, THAT THE GOVERNMENT RELIED UPON WITH

3    RESPECT TO PANGANG.

4            THIS IS THE DECLARATION OF SOMEONE NAMED AARON YORK,

5    AND I BELIEVE THAT THE PARAGRAPH THAT THE GOVERNMENT RELIED

6    UPON HERE WAS PARAGRAPH SEVEN.

7            AND IN IT MR. YORK SAYS THAT CONTROL MAYBE DE JURE AS

8    A MATTER OF LAW BY REASON OF 51 PERCENT OR CONTROL OF VOTING

9    SHARES.  WHAT THIS IS SAYING FOR PURPOSE OF THESE VISAS YOU

10   MUST HAVE CONTROL BY A PARENT OF THE SUB.  WHAT DOES THAT SAY

11   ABOUT ALTER EGO OR AGENT?

12           ALL IT'S SAYING IS THAT THE UNITED STATES GOVERNMENT

13   REQUESTS FOR THIS PURPOSE THAT THERE BE A PARENT SUB

14   RELATIONSHIP.  THAT DOESN'T SAY ANYTHING IMPROPER.

15           IT DOESN'T SAY ANYTHING ABOUT UNDER BOWMAN THE

16   IMPORTANCE OF THE SUBSIDIARY, AND IT CERTAINLY IS -- AND THIS

17   IS KEY, IT CERTAINLY DOESN'T SAY CAN'T STAND FOR THE

18   PROPOSITION THAT THE UNITED STATES OF AMERICA REQUIRES THAT THE

19   SUBSIDIARY BE THE ALTER EGO.  I MEAN, I REALIZE THAT SOUNDS

20   PREPOSTEROUS, BUT THAT'S WHAT YOU'RE BEING TOLD.

21           LOOKING AT NUMBER FOUR, WHICH IS ON THE DECLARATION.

22   I BELIEVE THE PARAGRAPH THAT'S AT ISSUE IS PARAGRAPH FOUR.

23           WITH RESPECT TO PARAGRAPH FOUR THIS DECLARATION AND

24   THE EXPERT'S DECLARATION AND SOME OF THE GOVERNMENT'S OTHER

25   PROOF, IT APPEARS THE GOVERNMENT IS ATTEMPTING TO PROVE TODAY,

1   FOR WHAT REASONS I DON'T KNOW, THAT SOME ROLE OF THE PARTIES TO

2   BE SERVED ARE GOVERNMENT INSTRUMENTALITIES.  THAT'S NOT AT

3   ISSUE TODAY, I DON'T BELIEVE.

4           AND WHAT THIS PARAGRAPH SHOWS IF IT SHOWS ANYTHING, IS

5   THAT THIS PERSON NAMED MR. MC GOVERN BELIEVES THAT PASSPORTS

6   THAT WERE ISSUED TO CERTAIN PEOPLE MAY OR MAY NOT REFLECT THAT

7   THEY ONCE WORKED OR DO WORK FOR WHAT THE CHINESE GOVERNMENT MAY

8   OR MAY NOT REGARD AS A PERSON THAT'S A PUBLIC OFFICIAL OR

9   GOVERNMENT AGENCY.

10          IT HAS NOTHING WHATSOEVER TO DO WITH WHETHER -- WITH

11  THE BOWMAN TEST OF IMPORTANCE, CONTROL OR DISREGARD OF

12  CORPORATE ENTITIES.  DOESN'T SAY ANYTHING ABOUT THAT.  AND

13  CAN'T EVEN APPLY ANYTHING ABOUT THAT.

14          TAB FIVE IS AN EXHIBIT D, I THINK, IT'S TO AGENT

15  PATTILLO'S DECLARATION.  I HAVE A NUMBER OF THINGS TO SAY ABOUT

16  THIS.

17          NUMBER ONE, ON THE VERY FIRST PAGE IT REFERS TO A NEW

18  YORK COMPANY.  WE KNOW THAT PAN AMERICA IS A NEW JERSEY

19  COMPANY.  I WOULD OBJECT TO CONSIDERATION, NOT THAT IT'S

20  HARMFUL, BUT I WOULD OBJECT TO CONSIDERATION OF THIS EXHIBIT

21  BECAUSE WE DON'T KNOW IF IT WAS IMPLEMENTED, WE DON'T KNOW IF

22  IT WAS OBSERVED, WE DON'T KNOW IF IT WAS PUT INTO PLACE, WE

23  DON'T KNOW WHY IT SAYS NEW YORK, WE DON'T KNOW ANYTHING ABOUT

24  IT.

25          BUT EVEN IF YOUR HONOR WERE TO CONSIDER IT, AND I

CERTAINLY WOULD HAVE NO OBJECTION TO YOU LOOKING AT IT, IT SETS

FORTH PROCEDURES, IT SETS FORTH WAYS TO BEHAVE.  SOMETHING THAT

I WOULD SUBMIT IS -- LET'S PUT IT THIS WAY.

THERE'S NO EVIDENCE TO SUGGEST THAT THE FACT THAT A

PARENT MAY ASK A SUB TO BEHAVE IN A CERTAIN WAY, THERE'S

NOTHING THAT WOULD SUGGEST THAT THAT'S IMPROPER.  THAT IT SHOWS

UNDUE CONTROL OR SHOWS DISREGARD OF CORPORATE ENTITIES.  IN

FACT, IF ANYTHING, IT SHOWS THE OPPOSITE.

AND YOUR HONOR BETTER FAMILIAR THAN I WITH THE

RELATIONSHIPS BETWEEN PARENTS AND SUBS AND HOW MUCH OR HOW

LITTLE CONTROL CERTAIN PARENTS HAVE OVER CERTAIN SUBS.

WE CAN LOOK AT NEWSPAPER AND SEE WHAT'S GOING ON WITH

MANY COMPANIES THAT ARE BEING TASKED WITH THEIR CONTROL OR LACK

OF THEIR SUBSIDIARIES.  THERE'S NOTHING UNUSUAL ABOUT THIS, AND

I'LL GET TO THAT WHEN WE TALK ABOUT, I THINK, YES, EXHIBIT --

TAB SIX, WHICH IS THE AUDIT, THE REFERENCE TO THE AUDIT.

THIS ACTUALLY I KNOW SOMETHING ABOUT.  THERE'S NOTHING

UNUSUAL, THERE'S NO EVIDENCE, BY THE WAY, THE GOVERNMENT HAS

SUBMITTED NO EVIDENCE TO YOU TO TELL YOU THAT THERE'S ANYTHING

IMPROPER, ANYTHING ABOUT THE BOWMAN FACTORS, ANYTHING ABOUT

DISREGARD OF CORPORATE ENTITIES, FOR A PARENT TO ASK A SUB TO

PROVIDE INFORMATION OR TO SUBMIT TO AN AUDIT.

AND I KNOW, ALTHOUGH, I'M NOT A WITNESS, THAT THERE'S

ABSOLUTELY NOTHING UNUSUAL ABOUT A PARENT AUDITING THE BOOKS

AND RECORDS OF A SUBSIDIARY.  DEPENDING UPON THE SIZE OF THE

1    SUBSIDIARY IT'S ACTUALLY REQUIRED.

2            AND WHETHER -- AND IF A PARENT WANTS TO DO IT THE

3    PARENTS ALMOST ALWAYS HAS THE RIGHT.  SO THERE'S -- WHILE THIS

4    IS A FACT OR MAYBE A FACT, THAT HAS HAPPENED, WE DON'T KNOW,

5    THERE'S NOTHING ABOUT IT THAT PROVES EITHER DISREGARD OF

6    CORPORATE ENTITY, FRAUD OR INJUSTICE OR BOWMAN CONTROL.

7            AGENT PATTILLO'S DECLARATION THE PARAGRAPHS THAT WERE

8    REFERENCED I BELIEVE WERE PARAGRAPHS SEVEN AND EIGHT.  I MAYBE

9    MISTAKEN ABOUT THAT, BUT THOSE ARE THE ONES I GOT.

10           THOSE PARAGRAPHS BY AND LARGE ARE BASED ON AN

11   INTERVIEW THAT THIS AGENT CONDUCTED WITH MR. WANG AND LARGELY

12   ADDRESSED FACTS THAT SUGGEST THAT PAN AMERICA -- TWO THINGS,

13   PAN AMERICA IN FACT IS A SUBSIDIARY WHOLLY OWNED, WHICH ALL THE

14   CASES SAY IS NOT IN ANY WAY -- NOT IN ANY WAY DISPOSITIVE.

15           NUMBER TWO, IT DOES BUSINESS HERE SELLING AMONG OTHER

16   THINGS GOODS FOR CHINESE COMPANIES.

17           AND, THREE, THAT ONCES THE GOVERNMENT SEIZED MATERIALS

18   OF SOME OF THE DEFENDANTS THAT PEOPLE FROM PAN AMERICA ASSISTED

19   THEM IN VARIOUS WAYS.

20           NONE OF THAT SHOWS, IN MY VIEW, THAT THERE'S BEEN A

21   DISREGARD OF CORPORATE ENTITIES, OR THAT THERE'S UNDUE CONTROL,

22   OR THAT THE BOWMAN FACTORS HAVE BEEN SATISFIED.  NOTHING IN

23   HERE SAYS ANYTHING ABOUT THAT.

24           AND THEN WITH RESPECT TO PARAGRAPH 13 WHICH WAS NOT

25   CITED YESTERDAY BUT I READ YESTERDAY AND AGAIN THIS MORNING, I

1    WOULD MOVE TO STRIKE PARAGRAPH 13 ON THE GROUNDS IT APPEARS

2    IT'S HEARSAY, IF NOT DOUBLE HEARSAY.

3          IT APPEARS THAT AGENT PATTILLO READ A REPORT THAT

4    SOMEONE ELSE WROTE.  I REFERENCE TO THE FIRST SENTENCE.  I HAVE

5    REVIEWED AN FBI REPORT, I ASSUME SHE'S REFERRING TO A 302 THAT

6    SOMEONE ELSE CONDUCTED, AND IT'S ALSO -- IT APPEARS IT'S OF

7    SOMEONE NAMED ZHUANG KAI, Z-H-U-A-N-G, K-A-I.

8          **THE COURT:**  I'LL TAKE YOUR OBJECTION UNDER ADVISEMENT.

9    BECAUSE THERE'S A LOT OF MATERIAL TO CONSIDER AND WHAT I WILL

10   DECIDE WHETHER I NEED TO RULE ON THAT DEPENDING UPON THE FINAL

11   DECISION THAT I MAKE.

12         **MR. FELDMAN:**  THAT'S FINE.  WITH RESPECT TO THE

13   EXPERT'S DECLARATION WHICH IS TAB 8.  I READ THIS EXPERT'S

14   DECLARATION CAREFULLY.

15         I BELIEVE WHAT THE EXPERT HAS DONE, I MAY HAVE MISSED

16   SOMETHING HERE, BUT I BELIEVE THAT WHAT THE EXPERT HAS DONE IS

17   TO TELL YOU WHAT THE STRUCTURE OF A NUMBER OF DIFFERENT

18   COMPANIES IS.

19         THE ONLY REAL REFERENCE I THINK -- I THINK, TO PAN

20   AMERICA IS ON PAGE SIX, AND I DO NOT BELIEVE THAT IT SAYS --

21   THAT THIS DECLARATION SAYS ANYTHING OTHER THAN PAN AMERICA --

22   WHAT I STIPULATED TO YESTERDAY PAN AMERICA OWNED AS IT IS

23   OWNED, AND THAT IT HAS IMPORTED CERTAIN GOODS.

24         OTHER THAN THAT I THINK IT'S IRRELEVANT.  OTHER THAN

25   THAT IT RELIES ON DOCUMENTS THAT ARE NOT TRANSLATED, BUT MOST

1    ESPECIALLY -- AND I WOULD OBJECT THEREFORE TO ITS

2    CONSIDERATION, BUT MOST ESPECIALLY WHAT IT DOESN'T DO IS

3    ADDRESSED THE BOWMAN FACTORS OF HOW IMPORTANT PAN AMERICA IS TO

4    THE ONE ENTITY THAT HAS ANY BUSINESS WITH IT.

5            IT DOESN'T ADDRESS AND MIGHT HAVE IF IT HAD BEEN

6    AVAILABLE, IT DOES NOT ADDRESS ANYTHING ABOUT DISREGARD OF

7    ENTITIES AS WOULD BE REQUIRED BY ALTER EGO AND IT DOESN'T

8    ADDRESS ANYTHING ABOUT ANYWAY WHATEVER IN WHICH PAN AMERICA HAS

9    IN ANY WAY BEEN PART OF A FRAUD OR INJUSTICE.

10           **THE COURT:**  ALL RIGHT.

11          **MR. FELDMAN:**  THEN I BELIEVE THAT THERE'S ONLY ONE

12    OTHER EXHIBIT THAT I WOULD BRING TO YOUR ATTENTION, AND IT

13    RELATES ONLY TO ONE OF THE OTHER COMPANIES.  I BELIEVE IT'S

14    TAB -- YES, YOUR HONOR, ACTUALLY THE LAST TAB WHICH IS TAB 19

15    EXHIBIT H.

16           THIS WAS BROUGHT TO YOUR ATTENTION YESTERDAY IN THE

17    CONTEXT WHETHER SOMEBODY SET SOMEONE ELSE'S SALARY.  AND WHAT I

18    WOULD BRING TO YOUR ATTENTION, FIRST OF ALL, I DON'T KNOW IF

19    ANY OF THIS IS ACCURATE, UNAUTHENTICATED, SO ON THAT BASIS I

20    WOULD OBJECT TO ITS INCLUSION.

21          **THE COURT:**  WHEN YOU SAY ACCURACY, THIS APPEARS TO BE

22    A TRANSLATION.

23          **MR. FELDMAN:**  I DON'T KNOW IF THIS ACTUALLY HAPPENED.

24    WE HAVE NO BASIS TO KNOW WHETHER THIS HAPPENED.  THERE'S NO

25    AUTHENTICATION, NO ONE KNOWS IF THIS ACTUALLY HAPPENED.

1          IF YOUR HONOR WERE TO CONSIDER IT, AND I WOULD OBJECT

2     TO ITS CONSIDERATION, I WOULD ALSO BRING TO YOUR ATTENTION THE

3     PAGE -- IT'S NOT BATES NUMBERED, BUT LOOKS LIKE A FAX, AT THE

4     TOP SAYS FAX PAGE 35 OF 71 WHERE THE FIRST WORDS ARE SALARY OF

5     OTHER INTERNALLY DISPATCHED STAFF.

6          HAVE I BROUGHT YOUR HONOR TO THAT PAGE?

7          **THE COURT:**  I BELIEVE THAT DESIGNATION AS TO ECF

8     DOCUMENT.

9          **MR. FELDMAN:**  I JUST DID THAT FOR IDENTIFICATION.

10          **THE COURT:**  I HAVE THAT.

11          **MR. FELDMAN:**  YESTERDAY YOU HEARD -- YOU HEARD AS IF

12     THERE WAS SOMETHING WRONG WITH IT, THAT PAN AMERICA HAD ONLY

13     IMPORTED PRODUCTS IN THE TWO OR SO YEARS OF EXISTENCE, THREE

14     YEARS OF EXISTENCE, FOR OTHER PANGANG COMPANIES, AS IF SOMEHOW

15     THAT SHOWED A FACTOR THAT'S RELEVANT HERE, AS OPPOSED TO A FACT

16     THE GOVERNMENT CLAIMS TO KNOW.

17          IN FACT, THAT'S NOT -- AND WE HEARD THIS MORNING ABOUT

18     INTENT THAT'S SOMEHOW RELEVANT, IF YOUR HONOR WOULD JOIN ME ON

19     THIS DOCUMENT YOU WOULD SEE UNDER ROMAN TWO THE TEXT READS AS

20     FOLLOWS.

21          TO CONTINUE STRENGTHENING THE FOREIGN SUBSIDIARIES AND

22     TO ENCOURAGE THEM IN DOING A BETTER JOB ON NON-PANGANG RELATED

23     TRADES, I FINISHED QUOTING, CERTAIN INCENTIVES WOULD BE SET

24     FORTH.

25          SO FAR FROM WHAT THE GOVERNMENT WOULD TELL YOU THIS

1    LAST DOCUMENT WHICH THEY RELIED REFLECTS THAT IT WAS THE

2    INTENTION OF THE PARENTS, IF IT'S THE PARENT, ASSUMING THIS

3    REFLECTS ANYBODY'S INTENTION, TO CONTINUE STRENGTHENING THE

4    FOREIGN SUBSIDIARIES, THE EXACT OPPOSITE OF ALTER EGO, TO

5    ENCOURAGE THEM DO A BETTER JOB ON NON-PANGANG RELATED TRADES.

6          SOMETHING WHICH IS DIFFERENT FROM WHAT THE GOVERNMENT

7    SAID, I DON'T ACTUALLY BELIEVE ONE WAY OR THE OTHER EITHER ONE

8    OF THOSE, WHETHER IT WAS NON-PANGANG OR PANGANG RELATED

9    BUSINESS MATTERS THAT MUCH, BUT CLEARLY INTENTIONED AND THE

10   EFFORT IF THIS DOCUMENT TO BE RELIED UPON IS TO STRENGTHEN THE

11   FOREIGN SUBSIDIARIES AND HAVE THEM DO A BETTER JOB ON

12   NON-PANGANG BUSINESS.

13          I COULD GO THROUGH ALL THE DOCUMENTS, I DON'T THINK

14   IT'S NECESSARY THEY ALL ARE THE SAME.  THEY SET FORTH

15   STRUCTURE, NOTHING ABOUT BOWMAN IMPORTANCE AND NOTHING ABOUT

16   DISREGARD OF CORPORATE ENTITIES, AND IN PARTICULAR UNDER ALTER

17   EGO NOTHING ABOUT WHAT EVERY JURISDICTION, WHETHER IT'S NEW

18   JERSEY, OR DELAWARE, OR CALIFORNIA, OR THE U.S. SUPREME COURT,

19   EVERY SINGLE JURISDICTION REQUIRES NAME THAT THE STRUCTURE BE

20   USED TO COMMIT A FRAUD OR INJUSTICE.

21          **THE COURT:**  ALL RIGHT.  PLEASE FOCUS, I KNOW YOU

22   WANT -- MR. FELDMAN GOT THERE TO A BIT OF LAW AS IT APPLIES TO

23   THE DOCUMENTS, SO I DON'T NEED A 4TH OF A JULY SPEECH.

24          **MR. HEMANN:**  ABSOLUTELY.

25          FIRST OF ALL, I WANT TO -- I CAN START WITH THE

1   DOCUMENT THAT MR. FELDMAN ENDED WITH JUST BECAUSE PROBABLY

2   STILL RIGHT IN FRONT OF THE COURT.

3        I THINK, A KEY POINT WITH REGARD TO THE SECTION THAT

4   CONTINUES BELOW WHERE MR. FELDMAN WAS READING IS A MANDATE FROM

5   THE CHINESE PARENT THAT IT WILL TAKE 70 PERCENT OF THE PROFITS

6   FROM THE NON-PANGANG BUSINESS.  AND, AGAIN, THIS ISN'T PAI

7   BEING ALLOWED TO CHOOSE.

8        **THE COURT:**  I THINK THAT'S ABOVE -- I SEE 15 PERCENT.

9        **MR. HEMANN:**  15 PERCENT IS FOR THE HONG KONG ENTITY

10  AND THEN BELOW YOU'LL SEE PANGANG U.S.A. WILL TAKE 30 PERCENT

11  OF THE NET PROFIT FOR THE ONE TIME INSENSITIVE AWARD.

12       AND I THINK THAT THAT ILLUSTRATES OUR POINT.  THIS IS

13  A DECISION NOT MADE BY PAI, WE'LL KEEP OUR PROFITS FROM

14  NON-PANGANG BUSINESS, IT'S PANGANG SAYING YOU WILL TRY TO GO

15  OUT AND GET SOME NON-PANGANG BUSINESS AND THEN WE'LL TAKE 70

16  PERCENT OF IT.

17       **THE COURT:**  SO WHAT LEGAL PRINCIPLE DOES THAT RELATE

18  TO, DOES IT RELATE TO FRAUD?

19       **MR. HEMANN:**  RELATES TO CONTROL.

20       **THE COURT:**  YOU'RE A LITTLE BIT LIKE TWO SHIPS PASSING

21  IN THE NIGHT HERE, THEY'RE ARGUING FRAUD --

22       **MR. HEMANN:**  WE'RE NOT ARGUING FRAUD, YOUR HONOR,

23  PERIOD END OF --

24       **THE COURT:**  YOU'RE NOT ARGUING, YOU'RE CONCEDING THAT

25  ON THE CLASSIC -- ON SOME OF THE FACTORS IN THE LAW, THE

1    TEACHING OF THE LAW ON ALTER EGO, THAT IT'S FRAUDULENT

2    PRESENTATION, IF YOU WILL, OF THE ALLEGED SUBSIDIARY, FRAUD ON

3    CREDITORS, FRAUD ON THE PUBLIC, FAILURE TO KEEP UP WITH

4    CORPORATE FORMALITIES, THOSE THIN CAPITALIZATION, THE

5    GOVERNMENT CONCEDES THOSE FACTORS ARE NOT PRESENT WITH RESPECT

6    TO THE WAY THE PARENT PANGANG GROUP TREATED THE SUBSIDIARY.

7          **MR. HEMANN:**  YOUR HONOR HAD A LIST IN THERE, I BELIEVE

8    THAT WE AGREE WITH EVERYTHING IN THE LIST.  I THINK, THAT OUR

9    POSITION IS THAT THESE COMPANIES WERE -- AS TO THE CORPORATE

10   FORMALITIES PART OF THE ALTER EGO ANALYSIS ONE IN THE SAME.

11         WE DON'T BELIEVE, AND MR. FELDMAN MADE NUMEROUS

12   REFERENCES TO AS IF WE THOUGHT SOMETHING WAS WRONG, QUITE TO

13   THE CONTRARY.  WE THINK THIS IS THE WAY THEY DID BUSINESS OUT

14   IN THE OPEN FOR ALL TO SEE AND WE THINK THEY WERE TREATING PAI

15   AS THEIR DIVISION, PART OF THEIR COMPANY.  I DON'T THINK

16   THEY'RE HIDING IT.

17         **THE COURT:**  WAIT A MINUTE.  STOP.  I'M NOT GOING TO

18   LET YOU GETAWAY WITH THAT.  WHEN YOU SAY THAT NOW YOU'RE SAYING

19   NOT AS -- DIVISION IS A TERM OF ART IN THE CORPORATE WORLD AND

20   THAT MEANS THAT I SHOULD DISREGARD AS A MATTER OF LAW THE

21   CORPORATE STATUS OF THE SUBSIDIARY.

22         **MR. HEMANN:**  BECAUSE -- YES.

23         **THE COURT:**  THE ANSWER IS YES.

24         **MR. HEMANN:**  THE ANSWER IS YES.  AND IT'S BECAUSE THEY

25   SIMPLY DISREGARDED THE CORPORATE FORMALITIES BY DOING THINGS

1    LIKE SAYING, WHEN YOU'RE MAKING DECISIONS ABOUT HOW MUCH YOU'RE

2    GOING TO TAKE IN PROFITS, WE'LL TAKE 70 YOU CAN KEEP 30, AND

3    EXAMPLES LIKE THIS.

4            I'LL GET TO WHAT I THINK IS, AGAIN, THE SINGLE BEST

5    EXAMPLE OF IT, AND IT'S THE DOCUMENT WITH WHICH MR. FELDMAN

6    STARTED.  AND I'LL GO BACK TO, IT'S MR. AXELROD'S DECLARATION,

7    AND IT'S IN THAT BINDER PROBABLY RIGHT IN FONT OF YOUR HONOR

8    EXHIBIT D.

9            AND IT IS THE LETTER FROM CHAIRMAN FAN ON PISCO

10   LETTERHEAD.  AND I THINK THIS IS IMPORTANT BECAUSE HE WRITES

11   THREE LETTERS TO THE CUSTOMS AND IMMIGRATION SERVICE.

12           ONE HE WRITES ON PISCO LETTERHEAD, TWO HE WRITES ON

13   PAI LETTERHEAD, AND I THINK THE CONCLUSION THAT THE COURT CAN

14   INFER FROM THAT IS IT DIDN'T REALLY MATTER.  THEY'RE BASICALLY

15   THE SAME LETTERS.

16           WHEN HE WANTS TO USE PISCO LETTERHEAD, HE WANTS TO USE

17   PAI LETTERHEAD, IRRELEVANT.  THE WAY THESE COMPANIES -- THIS

18   COMPANY DID BUSINESS AGAIN.  NOT ILLEGAL, BUT THE FORMALITY WAS

19   IRRELEVANT.

20           WHEN YOU LOOK AT THIS LETTER FROM PISCO ON PISCO

21   LETTERHEAD, SIGNED BY THE CHAIRMAN OF THE PANGANG GROUP, THE

22   IMPORTANT PART OF THIS LETTER IS IN THE FIRST -- IN THE SECOND

23   PARAGRAPH.

24           WE, PISCO, WISH TO CONTINUE TO EMPLOY MR. WONG AT OUR

25   PISCO'S NORTHERN HEMISPHERE HEAD OFFICE IN INGLEWOOD CLIFFS,

1    NEW JERSEY.

2              NOW, THAT IS PISCO'S PANGANG GROUP'S POSITION WITH

3    REGARD TO THE CUSTOMS -- THE UNITED STATES GOVERNMENT.  THAT IS

4    WHERE WE GO BACK TO, AND THIS GOES DIRECTLY TO THE POINT THAT

5    MR. FELDMAN STARTED WITH WHEN WE'RE TALKING ABOUT PRINCIPLE

6    PLACE OF BUSINESS.

7              UNLIKE THE JOHNSON CASE THERE IS A FACT HERE.  THE

8    JOHNSON CASE DIDN'T HAVE APPARENTLY THIS KIND OF LETTER.  AND

9    THE JOHNSON CASE THERE WAS NO EVIDENCE THAT THE FOREIGN PARENTS

10   HAD A PRESENCE IN THE UNITED STATES.

11             HERE THERE IS, I WOULD SUBMIT, YOUR HONOR, THE BEST

12   EVIDENCE OF FOREIGN PRESENCE IN THE UNITED STATES.

13             NOW, THE JOHNSON CASE DOESN'T INTERPRET OR PURPORT TO

14   INTERPRET THE TERM PRINCIPLE PLACE OF BUSINESS, BUT

15   INTERPRETING, FOCUSING ON THAT TERM THIS IS, I WOULD SAY, A

16   DISPOSITIVE PIECE OF EVIDENCE.

17             BECAUSE IT REVEALS THE INTENTION OF THE PANGANG GROUP

18   AND ITS CHAIRMAN.  IT IS WRITTEN ON PISCO LETTERHEAD TO THE

19   UNITED STATES GOVERNMENT AND SAYS WE'RE PUTTING OUR NORTHERN

20   HEMISPHERE OFFICE IN YOUR STATE OF NEW JERSEY.

21             **THE COURT:**  AREN'T THERE CASES, HOWEVER, WHERE THE

22   TERM WE IS USED BY A PARENT AND THE COURT HELD THAT'S NOT

23   DETERMINATIVE USING THAT PRONOUN?

24             **MR. HEMANN:**  I'M NOT AWARE OF -- I DON'T DOUBT, YOUR

25   HONOR, THAT THAT CASE THOSE COULD BE USED.  I THINK, THAT I

1  WANT TO LOOK THE CASES AND KNOW THE CONTEXT IN WHICH THAT'S

2  BEING USED.

3          IT WOULDN'T SURPRISE ME THAT IN CERTAIN CONTEXTS

4  THAT'S APPROPRIATE, HOWEVER, THE CONTEXTS IN WHICH I SUSPECT

5  THOSE CASES AROSE IS IN ATTACHING ULTIMATE LIABILITY TO A

6  CORPORATE PARENT BASED ON THE ACTS OF THE SUBSIDIARY OR VICE

7  VERSA.

8          THIS IS AN ENTIRELY DIFFERENT PURPOSE AND THIS IS A

9  PURPOSE THAT THE COURT NEEDS TO AGAIN GO BACK TO THE INTENTION

10 OF THE CRIMINAL RULES.  AND WE DON'T SEE IN THE WAY RULE 4

11 ADDRESSES THIS THE NEED TO DO THE SORT OF REALLY

12 APPROPRIATENESS OF THE FINE SORT OF HAIR SPLITTING THAT THE

13 DEFENDANTS ARE SUGGESTING THAT THE COURT ENGAGE IN.

14         IT'S A MUCH MORE COMMON SENSE, MUCH MORE PRACTICAL

15 APPROACH THAT NEEDS TO BE ANIMATED BY THE PURPOSE OF RULE 4

16 WHICH IS NOTICE.

17         SO THERE CERTAINLY I'M SURE ARE OTHER CASES THAT TALK

18 ABOUT WE AND OUR, BUT IN OUR CASE WITH THIS PIECE OF EVIDENCE

19 --

20         **THE COURT:**  WELL --

21         **MR. HEMANN:**  THE WE AND THE OUR IS CRITICAL.

22         **THE COURT:**  WE'RE DEALING WITH CRIMINAL RULES HERE AND

23 THE RULE OF LENITY APPLIES WITH RESPECT TO THE SUPREME COURT

24 HAS SAID NUMEROUS TIMES AND I DON'T KNOW THAT YOU COULD SAY,

25 WELL, YOU KNOW, SORT OF A CATCHALL ARGUMENT THEY HAVE NOTICE.

1          YOU COULD THEORETICALLY SEND SOMEBODY, SOME UNDERCOVER

2     PERSON INTO THE PARENT IN CHINA, SOME CIA OPERATIVE OR SOMEBODY

3     LIKE THAT, A BLACK BAG OPERATION, WITH A COPY OF THE SUMMONS

4     AND PUT IT ON THE DESK OF THE CHAIRMAN, THEY GOT NOTICE YOU

5     WOULD SAY THEN?

6          **MR. HEMANN:**  WE COULDN'T TELL YOUR HONOR ABOUT IT,

7     PROBABLY WOULDN'T GET US WHERE WE NEED TO GO.

8          **THE COURT:**  IT'S TRUE, I'M BEING SOMEWHAT FACETIOUS,

9     BUT IF CONGRESS WANTED TO AND THEY FELT CONSISTENT WITH THE

10    CONSTITUTION THAT THEY COULD SAY AS LONG AS THERE'S ACTUAL

11    NOTICE BY HOWEVER GIVEN TO THE TARGET COMPANY THAT'S ALL THAT'S

12    NECESSARY.

13         **MR. HEMANN:**  ABSOLUTELY.  SO THERE ARE REQUIREMENTS

14    AND THE REQUIREMENTS, WE BELIEVE THAT THE REQUIREMENTS WERE

15    FOLLOWED IN THE CASE.

16         **THE COURT:**  I UNDERSTAND THAT.

17         **MR. HEMANN:**  BUT, AGAIN, THERE'S AN APPROACH TO THE

18    INTERPRETATION THAT THE COURT SHOULD BEAR IN MIND.

19         AND SO I THINK THAT GOING BACK TO THIS ISSUE OF THE

20    JOHNSON CASE AND THE INTERPRETATION OF PRINCIPLE PLACE OF

21    BUSINESS, OUR POSITION IS THAT THE COURT CAN RELY ON IN

22    PARTICULAR THE PISCO CORRESPONDENCE FROM CHAIRMAN FAN, BUT ALSO

23    THE OTHER CORRESPONDENCE.

24         **THE COURT:**  ALL RIGHT.

25         **MR. HEMANN:**  BUT I ALSO WANT TO TALK ABOUT THIS BOWMAN

1    FACTOR.

2              **THE COURT:**  GO AHEAD.  BRIEFLY.

3            **MR. FELDMAN:**  I THINK, IF I MAY, JUST ONE QUICK

4    SENTENCE.  I DO THINK THAT WE SHOULD TALK ABOUT THE BOWMAN

5    FACTOR.

6              **THE COURT:**  GREAT.  SEE, HE AGREES YOU SHOULD BE.

7            **MR. HEMANN:**  I'M SO TAKEN ABACK WHEN MR. FELDMAN

8    AGREES WITH ME I DON'T KNOW THAT I'LL BE ABLE TO PERFORM HERE.

9            **MR. FELDMAN:**  PERFORM IT IS.

10           **MR. HEMANN:**  THE BOWMAN FACTOR, THE WAY IT WAS

11   ARTICULATED BY MR. FELDMAN TO YOUR HONOR, IS THAT THERE'S A

12   BOWMAN FACTOR.  THERE'S A BOWMAN TEST.

13           WHAT THE BOWMAN -- I WOULD REFER YOUR HONOR TO

14   FOOTNOTE 12 OF BOWMAN WHICH SPECIFICALLY SAYS, THIS IS A COMMON

15   LAW, WE HAVE TO TAKE A COMMON LAW APPROACH TO THIS, AND

16   DIFFERENT FACTORS ARE GOING TO BE IMPORTANT IN DIFFERENT TESTS.

17           WHAT BOWMAN AND THE FACTOR IN BOWMAN THAT WAS ONE OF

18   THE FACTORS IN BOWMAN THAT WAS IMPORTANT TO THE COURT, WAS THIS

19   PERCENTAGE OF REVENUE ANALYSIS THAT THE COURT WENT THROUGH

20   BECAUSE THAT WAS THE EVIDENCE IN THE BOWMAN CASE.

21           THE COURT IN BOWMAN DID NOT SAY THIS IS THE TEST.  IN

22   FACT, IT SPECIFICALLY SAID THERE IS NOT A TEST.  THOSE WERE THE

23   FACTS IN BOWMAN.  THERE ARE DIFFERENT FACTS WITH REGARD TO

24   DIFFERENT CASES.

25           THE CASE IN BOWMAN THAT THE -- FROM WHICH THE COURT,

1    ONE OF THE CASES FROM WHICH THE NINTH CIRCUIT DERIVES THE TEST,

2    IS THE -- I'M PROBABLY GOING TO SAY THIS WRONG, THE WIWA,

3    W-I-W-A, CASE FROM THE SECOND CIRCUIT.

4         AND BOWMAN SPECIFICALLY SAYS AS THE SECOND CIRCUIT

5    EXPLAINED IN WIWA THIS IS THE TEST AND THE TEST IS IF IN THE

6    ABSENCE OF THE EMPLOYEES OF THE SUBSIDIARY WOULD THE FOREIGN

7    PARENT PERFORM THESE FUNCTIONS.  OKAY.  DOESN'T SAY AND THE

8    SUBSIDIARY HAS TO ACCOUNT FOR X AMOUNT OF THE PARENT'S INCOME.

9         IF YOU LOOK AT THE WIWA CASE WHICH I WOULD ASK THE

10   COURT TO LOOK CAREFULLY, IT'S 226 F 3D 88.  AND THE PIN CITE IS

11   PAGES 95 THROUGH -- 95, 96.

12        THAT CASE REPEATS -- THAT'S WHERE THE NINTH CIRCUIT

13   CITATION COMES FROM, AND IT SAYS -- IT ARTICULATES FACTS THAT

14   ARE REMARKABLY SIMILAR TO THE FACTS IN THIS CASE.

15        AND THAT CASE THE U.S. SUBSIDIARY WAS AN INVESTOR

16   RELATIONS FUNCTION TO TALK TO AS I UNDERSTAND IT U.S.

17   INVESTORS.  IT DIDN'T GENERATE ANY INCOME FOR THE PARENT.

18        BUT THE SECOND CIRCUIT SAID IT HAD AN IMPORTANT

19   FUNCTION.  AND IT GOES THROUGH THE INVESTOR RELATIONS OFFICE

20   DEVOTE 100 PERCENT OF THEIR TIME TO THE DEFENDANT'S BUSINESS,

21   JUST LIKE THIS CASE.

22        THE SOLE BUSINESS FUNCTION WAS TO PERFORM INVESTORS

23   SERVICES ON THE DEFENDANT'S BEHALF.  AS THE DECLARATIONS THAT

24   WE'VE SUBMITTED ESTABLISHED, THE SOLE FUNCTION OF PAI WAS TO

25   WORK CONTRACTS ON BEHALF OF THE CHINESE PARENTS.

1          THE DEFENDANTS FULLY FUNDED THE EXPENSES OF THE

2     INVESTORS RELATIONS OFFICE.  OUR ARGUMENT IS, A, THEY INITIALLY

3     CAPITALIZED WITH THE $2 MILLION, BUT THAN ALL OF THE MONEY

4     COMES FROM CONTRACTS BETWEEN -- ALL OF THE FUNDING FOR THIS

5     OFFICE COMES FROM THE CONTRACTS BETWEEN THE CHINESE COMPANY AND

6     THE AMERICAN CUSTOMERS.

7          IT SAYS NOTHING ABOUT THE PERCENTAGE INCOME THAT THE

8     PARENT DERIVES FROM THE SUBSIDIARY'S COMMERCIAL ACTIVITIES.

9          SO I SUBMIT, YOUR HONOR, THAT THIS BOWMAN FACTOR,

10    WHICH WE OPENLY CONCEDE, WHICH IS WHY WE DIDN'T HIGHLIGHT IT IN

11    OUR BRIEF, BUT THERE'S NO FACTS TO SUGGEST THAT THEY CONTRIBUTE

12    MATERIALLY MONETARILY TO THE OVERALL FINANCIAL SUCCESS OF THE

13    PANGANG GROUP OR THE PANGANG GROUP WOULD GO BANKRUPT IF IT

14    WEREN'T FOR THE COMMERCIAL ACTIVITIES OF PAI.

15         BUT WE HAVE DIRECT EVIDENCE IN THIS CASE THAT IF THE

16    PAI EMPLOYEES WERE NOT PRESENT THE PANGANG GROUP EMPLOYEE WOULD

17    BE DOING THE JOBS THAT THEY ARE NOW DOING.  BECAUSE THEY ALWAYS

18    WERE.

19              THE COURT:  ALL RIGHT.

20              MR. HEMANN:  I THINK, THAT'S THE RESPONSE TO THE

21    BOWMAN FACTOR ARGUMENT THAT MR. FELDMAN MADE.

22              THE COURT:  ALL RIGHT.  WE'LL GIVE YOU ONE LAST CHANCE

23    ON THIS ONE THEN WE'LL MOVE ON.

24              MR. FELDMAN:  I'M MINDFUL OF THE FACT YOU CAN READ THE

25    CASES AS WELL AS WE CAN.  SO WOULD URGE YOUR HONOR TO READ THE

1    BOWMAN CASE, AND NOTE IN THE BOWMAN CASE THE PRINCIPLE FOCUS OF

2    OUR AGENCY TEST FOR PURPOSES OF PERSONAL JURISDICTION, WHICH IS

3    ALL THAT IT ADDRESSES, IS THE IMPORTANCE OF THE SERVICES

4    PROVIDED TO THE PARENT CORPORATION.

5          AND IT SAYS IN THE SAME PARAGRAPH THAT PROOF OF

6    CONTROL ALONE WOULD BE INSUFFICIENT TO OVERCOME A LACK OF

7    IMPORTANCE.

8          WITH RESPECT TO THE OTHER CASE THAT COUNSEL CITED, THE

9    SECOND CIRCUIT CASE, IS THAT THE NIGERIAN CASE?

10          **MR. HEMANN:**  NO.

11          **MR. FELDMAN:**  IS THAT THE CASE ABOUT CORPORATE

12   REPRESENTATIVES IN NEW YORK?  IF IT'S THE CASE THAT I THINK IT

13   IS -- THANK YOU.

14          **MR. HEMANN:**  I THINK IT IS.

15          **MR. FELDMAN:**  THAT'S THE CASE ABOUT NEW YORK, SOMEBODY

16   NEEDED SOMEBODY TO BE IN NEW YORK TO GET ACCESS TO THE CAPITAL

17   MARKETS.  THE ONLY PLACE YOU CAN DO THAT IS IN NEW YORK, OF

18   COURSE, IT WAS IMPORTANT.

19          SO I WOULDN'T SUGGEST TO YOU THAT THE ONLY TEST FOR

20   IMPORTANCE IS PERCENTAGE OF REVENUE, IN THIS CASE IT HAPPENS TO

21   BE --

22          **THE COURT:**  MISTAKE NEW JERSEY FOR NEW YORK, IS WHAT

23   YOU'RE SAYING.

24          **MR. FELDMAN:**  THEY HAD TO HAVE SOMEBODY IN NEW YORK.

25   THAT'S WHAT THE SECOND CIRCUIT HELD.  THEY HAD TO HAVE SOMEONE

1    IN NEW YORK AND THEREFORE THE SUBSIDIARY'S ACTIONS WERE

2    IMPORTANT.

3          IF YOU LOOK AT THE HICKORY CASE DECIDED BY JUDGE CONTI

4    YOU CAN SEE WHAT IMPORTANCE MEANS.  I WOULD URGE THAT OPINION

5    TO YOU.

6          **THE COURT:**  I THINK WE'RE KIND OF DONE NOW.  I THINK,

7    WE'VE FOCUSED ON THE EVIDENCE, WHICH I APPRECIATE, WE FOCUSED

8    ON CASES THAT THE PARTIES THINK ARE, IF NOT DISPOSITIVE, THEN

9    AT LEAST INSTRUCTIVE.  I'D LIKE TO MOVE ON NOW.

10          I MAY HAVE COVERED THIS YESTERDAY, MAYBE I DIDN'T, BUT

11    5A IS JUST A YES OR NO QUESTION.  DO YOU DISPUTE THE DEFENDANTS

12    ENTERED THAT CHUN ZHANG, C-H-U-N, Z-H-A-N-G, AND QUIZHI WANG,

13    Q-U-I-Z-H-I, W-A-N-G, ENTERED THE UNITED STATES ON L1A VISAS?

14          **MR. FELDMAN:**  I KNOW ONE DID, I DON'T KNOW ABOUT THE

15    OTHER.  WE HAVEN'T DISPUTED IT.

16          **THE COURT:**  YOU ARGUED BOTH HAVE, BOTH DID?

17          **MR. HEMANN:**  BOTH DID AND THAN ONE OF THEIR STATUSES

18    WAS SUBSEQUENTLY ADJUSTED.

19          **THE COURT:**  TO WHAT?

20          **MR. HEMANN:**  TO PERMANENT RESIDENT ALIEN.  BASED ON

21    THE LETTER, ONE OF THE LETTERS FROM CHAIRMAN FAN.

22          **THE COURT:**  NOW, LET'S GO TO 5B.  DO THE DEFENDANTS

23    DISPUTE THE REQUIREMENTS TO OBTAIN AN L1A VISA THAT ARE SET

24    FORTH IN THE DECLARATION OF MR. YORK?

25          **MR. FELDMAN:**  I THINK, THE BEST THING TO DO WOULD BE

1  FOR YOUR HONOR TO REVIEW THE REGULATION, BUT -- WHICH IS, I

2  THINK, CITED IN THE MATERIALS.  I DON'T THINK THAT WE

3  NECESSARILY DO DISPUTE WHAT HE SAYS, NOR DO WE NEED TO DISPUTE

4  WHAT HE SAYS.

5       **THE COURT:**  BUT THE POINT IS, YOU'RE SAYING THE

6  REGULATIONS ARE WHAT THE REGULATIONS ARE.  THE COURT NEEDS TO

7  INTERPRET THEM.  THERE'S NO EVIDENCE IN THE RECORD THAT THE

8  DEFENDANTS ARE AWARE OF THAT THEY PUT IN OR THE GOVERNMENT PUT

9  IN TO CONTRADICT THE DECLARATION?

10      **MR. FELDMAN:**  THAT'S CORRECT.

11      **THE COURT:**  I ASSUME, THE GOVERNMENT AGREES WITH THAT?

12      **MR. AXELROD:**  YES.

13      **THE COURT:**  NOW, C ASKS IF ANY PARTY -- I'LL START

14  WITH THE GOVERNMENT BECAUSE THEY HAVE THE BURDEN, DOES ANY

15  PARTY HAVE ANY AUTHORITY THAT THE CONTROL REQUIRED TO ESTABLISH

16  AS A MATTER LAW THE SUBSIDIARY, NEW JERSEY SUBSIDIARY IS THE

17  AGENT OR ALTER EGO OF THE FOREIGN PARENT?

18      **MR. HEMANN:**  UNDERSTANDING THAT THE COURT'S QUESTION

19  IS, DO WE HAVE CASES THAT BOTH INTERPRET THE REGULATION AND

20  DEAL WITH EITHER SERVICE OF PROCESS OR GENERAL AGENCY OR

21  PERSONAL JURISDICTION, THE ANSWER IS, NO, WE DON'T HAVE ANY

22  AUTHORITY ON THAT.

23      **THE COURT:**  I'M ASSUME YOU DON'T EITHER?

24      **MR. FELDMAN:**  WELL, I HAVE ARGUMENT, BUT NOT

25  AUTHORITY.

1          **THE COURT:**  ASKING NOW ABOUT AUTHORITY.  BUT I'LL HEAR

2     BRIEFLY FROM YOU FIRST, MR. HEMANN OR MR. AXELROD.

3          WHAT IS THE ARGUMENT, OTHER THAN WHAT YOU'VE ALREADY

4     SAID, YOU CITED THE SECOND CIRCUIT CASE AND BOWMAN AS THE

5     DEFENDANTS HAVE, WHAT'S YOUR BEST ARGUMENT THAT THOSE

6     REQUIREMENTS ARE ESSENTIALLY COTERMINOUS AGENCY OR ALTER EGO --

7     AND ALTER EGO?

8          **MR. HEMANN:**  I THINK, THE BEST ARGUMENT IS THAT

9     CONTROL AS SET FORTH IN THE REGULATION MEANS CONTROL, AND THE

10    REPRESENTATIONS THAT WERE MADE BY PANGANG GROUP IN ORDER TO

11    OBTAIN THE L1A VISAS FOR MR. WONG AND MR. ZHENG SET ABOUT TO

12    ESTABLISH CONTROL, APPARENTLY TO THE SATISFACTION OF CIS

13    ESTABLISHED CONTROL.

14         **THE COURT:**  BUT THE LETTER THAT YOU CITED AND THE

15    DEFENDANT -- DEFENSE COUNSEL ALLUDED TO OR WAS ARGUING, TALKED

16    ABOUT CORPORATE CONTROL 51 PERCENT A PARENT CONTROLLING, AND

17    THAT'S A FAIRLY COMMON PARENT, IN FACT, THAT'S WHAT MAKES THEM

18    THE PARENT OF THE SUBSIDIARY.

19         AND I ASSUME THE GOVERNMENT IS NOT ARGUING WHATEVER

20    THERE IS SUCH CONTROL, PARENT CONTROLLING SUBSIDIARY, THAT THAT

21    DOESN'T NECESSARILY SHOW AGENCY, MUCH LESS DOES IT SHOW ALTER

22    EGO?

23         SO THAT'S WHY I DON'T UNDERSTAND WHEN YOU SAY, WELL,

24    IT'S BOTH REQUIRED CONTROL.

25         **MR. HEMANN:**  SO LET ME BACK UP THEN A LITTLE BIT.  THE

1   REGULATION REQUIRES -- MR. FELDMAN CITED TO REQUIRES THAT THE

2   APPLICANTS, THE PETITIONERS ESTABLISH BOTH OWNERSHIP AND

3   COLONEL.  AS YOU READ THROUGH THE REGULATION IT TALKS ABOUT

4   OWNERSHIP AND CONTROL.  SO BOTH REQUIREMENTS ARE PRESENT.

5           IT IS ALSO ARTICULATED BOTH IN THE LAW AND IN THE

6   FACTS SUBMITTED TO CIS IN THIS CASE, AS AN INTRA COMPANY

7   TRANSFER AND, YOU KNOW, I SOMETIMES HESITATE TO INVOKE COMMON

8   SENSE, BUT COMMON SENSE IS COMMON SENSE, AND THIS IS -- IT WAS

9   ARTICULATED AS A TRANSFER FROM, YOU KNOW, PEOPLE WITHIN THE

10  SAME COMPANY.  WE BELIEVE THAT'S THE QUESTION.

11          **THE COURT:**  THAT'S A DIFFERENT ISSUE THAN CONTROL.  IF

12  THE COMPANY -- BOTH COMPANIES TREAT EACH OTHER OR MORE

13  IMPORTANTLY THE PARENT TREATS THE SUBSIDIARY AS IF IT IS THE

14  PARENT, THERE IS NO DIFFERENCE, THAN THAT, TRUE, NOT SO MUCH

15  COMMON SENSE IT IS COMMON SENSE, BUT IT'S ALSO ARGUABLY AN

16  ADMISSION?

17          **MR. HEMANN:**  CORRECT.

18          **THE COURT:**  BUT THAT'S YOUR ARGUMENT?

19          **MR. HEMANN:**  THAT'S OUR ARGUMENT.

20          **THE COURT:**  NOT THE CONTROL PER SE BECAUSE CONTROL IS

21  ALWAYS AN ELEMENT OF PARENT'S SUBSIDIARY RELATIONSHIPS.

22          **MR. HEMANN:**  CORRECT.

23          **THE COURT:**  ALL RIGHT.

24          **MR. HEMANN:**  CAN I JUST SAY ONE THING, YOUR HONOR?

25  THIS WAS THE CITATION TO THE FEDERAL REGISTER THAT WE FILED, I

1   GUESS, NOT TWO DAYS AGO.

2         **THE COURT:** JUST REMIND ME OF THE CITATION. YOU DON'T

3   NEED TO READ IT INTO THE RECORD.

4         **MR. HEMANN:** THE CITATION IS 52 FEDERAL REGISTER 5738.

5         **THE COURT:** WHAT IS THE SUBJECT MATTER OF THAT?

6         **MR. HEMANN:** AND THE SUBJECT MATTER WAS THE INF, THEN

7   INS'S RESPONSE TO COMMENTS DURING THE RULE MAKING PROCEDURE

8   SUGGESTING THAT THE CONTROL RELATIONSHIP BE RELAXED.

9         AND WHAT THE INS SAID IN REJECTING THE ARGUMENT THAT

10  THE CONTROL RELATIONSHIP BE RELAXED, IS THAT IT WAS CONGRESS'

11  INTENT THAT THERE BE CONTROL AND THAT ADOPTION OF THE

12  SUGGESTIONS WHICH THE COURT SHOULD READ WOULD BE CONTRARY TO

13  CONGRESS' VIEW TRANSFERS WOULD BE MADE WITHIN THE SAME

14  INTERNATIONAL ORGANIZATION.

15        **THE COURT:** WELL, WHAT THAT ARGUES TO ME IF TAKEN TO

16  ITS LOGICAL CONCLUSION, AND I THINK THIS WAS ALLUDED TO BY

17  MR. FELDMAN, BUT IT JUST SEEMS TO BE COMMON SENSE THAT IN ORDER

18  TO MEET THIS REQUIREMENT THE COMPANY WHOSE EMPLOYEES ARE

19  SEEKING THESE VISAS, THESE L1A VISAS WOULD NEED TO CONCEDE THEY

20  ARE IN EFFECT ALTER EGO AND SUBJECT TO -- SUBJECT TO THE

21  PARENT, WHO MIGHT BE APPLYING ON THEIR BEHALF, TO BOTH POSSIBLY

22  JURISDICTION OR CRIMINAL ACTIONS OR BEING A REPOSITORY,

23  APPROPRIATE REPOSITORY FOR SERVICE, IS THAT WHAT YOU'RE SAYING?

24        **MR. HEMANN:** WERE NOT TAKING IT TO THAT LOGICAL

25  CONCLUSION, BECAUSE I WANT TO GO BACK TO THE PURPOSE OF RULE 4

1    BECAUSE WE'RE NOT AT THAT LOGICAL CONCLUSION.

2          WE'RE AT THE VERY NARROW PURPOSE OF RULE 4 AND IN THE

3    CONTEXT IN A FACTUALLY INTENSIVE DETERMINATION OF WHETHER RULE

4    4 HAS BEEN SATISFIED.

5          SO THE QUESTION FOR THE COURT GIVEN THIS EVIDENCE IS

6    NOT SOME ABSTRACT POSSIBILITY DOWN THE ROAD, IT'S THAT WHEN A

7    FOREIGN PARENT TRANSFERS ITS OWN EMPLOYEES INTO THE UNITED

8    STATES UNDER THE L1A VISA CONSTRUCT, DOES THAT CREATE A

9    SITUATION UNDER CRIMINAL RULE OF PROCEDURE 4 WHERE YOU HAVE AN

10   AGENT IN THE UNITED STATES AND A PRINCIPLE PLACE OF BUSINESS IN

11   THE UNITED STATES?

12         OUR ANSWER WOULD BE RATHER THAN FOCUSING ON THE

13   POSSIBILITIES THAT MR. FELDMAN RAISES ABOUT, YOU KNOW, THE

14   FUTURE OF INTERNATIONAL RELATIONS, IT IS IN THAT NARROW

15   SCENARIO IS SERVICE APPROPRIATE.  AND UNDER THE FACTS THAT WE

16   HAVE IN THIS CASE IS SERVICE APPROPRIATE.

17         AND IN THIS CASE WE HAVE FACTS WHERE THESE COMPANY'S

18   USED THE INTRA COMPANY TRANSFER MECHANISM --

19         **THE COURT:**  I GET ALL THAT.  ALL RIGHT.

20         **MR. HEMANN:**  SO I WOULD -- OUR ARGUMENT IS

21   INTERPRETING GENERAL AGENT AND PRINCIPLE PLACE OF BUSINESS IN

22   THE CONTEXT OF THIS CASE AND THESE FACTS, IS THE INTRA COMPANY

23   TRANSFER CONSIDERATION A RELEVANT FACTOR?

24         **THE COURT:**  I UNDERSTAND THAT.

25         **MR. HEMANN:**  THE COURT TAKEN INTO ACCOUNT.

1              **THE COURT:**  MR. FELDMAN.

2              **MR. FELDMAN:**  YES.  TAKING MR. YORK AT HIS WORD THAT

3      51 PERCENT IS REQUIRED, I WOULD POINT THE COURT TO THE CASES

4      ALL OF WHICH SAY, EVERY CASE BEFORE YOU SAYS THAT EVEN A WHOLLY

5      OWNED SUBSIDIARY THE PARENT SUB RELATIONSHIP IS NOT SUFFICIENT

6      TO ESTABLISH EITHER AGENCY OR ALTER EGO, SO PROVES NOTHING,

7      NUMBER ONE.

8              NUMBER TWO, THE SAME, CONTROL DOESN'T SHOW AGENCY.

9              NUMBER THREE, EVERY CASE THAT I'VE READ, INCLUDING THE

10     UNITED STATES SUPREME COURT CASE THAT IS NOT ACTUALLY CITED TO

11     YOU, BUT IS CITED IN CASES THAT ARE CITED TO YOU, BEST FOODS

12     RECOGNIZE THAT PEOPLE GO FROM COMPANY TO COMPANY AND DIRECTORS

13     GO FROM PARENT TO SUB.

14             SO THE FACT THAT THERE ARE TRANSFERS THAT ARE REGARDED

15     AS INTER OR INTRA COMPANY PROVES NOTHING AND REGULATIONS, I

16     FEEL LIKE I'M HERE ON AN INS CASE, THE INS REGULATIONS

17     CONTEMPLATE PEOPLE GOING FROM COMPANY TO COMPANY AND, IN FACT,

18     THAT'S WHAT THEY REQUIRE SOMEONE TO SAY.

19             YOU HEARD ALL DAY TODAY AND ALL DAY YESTERDAY ABOUT

20     THE PURPOSE OF RULE 4, THERE'S NOTHING IN THE RECORDS ABOUT THE

21     PURPOSE OF RULE 4 BEING TO ACCOMMODATE THE GOVERNMENT.

22             THE RULES ARE WHAT THEY ARE.  AND YESTERDAY YOU ASKED

23     ABOUT -- THIS IS IN RESPONSE TO ONE OF YOUR QUESTIONS YOU CITED

24     A CASE CALLED KRAMER, AND I WOULD ALSO BRING TO YOUR ATTENTION,

25     WHICH I DIDN'T YESTERDAY, THE BOWMAN CASE, WHICH I WON'T READ

1    THIS TO YOU, HAS AN ENTIRE SECTION ENTITLED THE EXTENT OF

2    CONFLICT ABOUT SOVEREIGNTY OF THE DEFENDANT'S STATE.

3         THAT WAS OBVIOUSLY A CIVIL CASE.  WE'RE ONLY TALKING

4    ABOUT SUING A CORPORATION, WASN'T EVEN TALKING ABOUT WHAT THE

5    GOVERNMENT CLAIMS TO BE THE GOVERNMENT INSTRUMENTALITY.

6         AND WHILE BOWMAN CAME OUT ONE WAY IT CITES A NUMBER OF

7    CASES THAT BRING TO YOUR HONOR'S ATTENTION THAT YOU WERE RIGHT

8    IN RECOGNIZING THAT AS SOMETHING THAT SHOULD BE CONSIDERED.

9         BUT I WOULD SAY THAT YOU SHOULD NOT ASSUME THAT

10   BECAUSE BEEN SAID SO MANY TIMES QUOTE "THE PURPOSE OF RULE 4"

11   QUOTE THAT ANYBODY KNOWS WHAT THE PURPOSE OF RULE 4 IS OTHER

12   THEN WHAT IT SAYS ITS REQUIREMENTS ARE, EXCEPT INSOFAR AS ONE

13   CAN CONTRAST IT WITH THE VERY, VERY DIFFERENT RULES THAT ARE

14   SET FORTH IN CIVIL RULE 4 WITH RESPECT TO MAILING.

15        **THE COURT:**  ALL RIGHT.  LET'S GO ON.  I THINK, THE

16   OTHER QUESTIONS ARE PRETTY EASY.  QUESTION 6A, WHAT'S YOUR

17   RESPONSE?

18        **MR. FELDMAN:**  COULD I ASK YOU WHAT 6A IS?

19        **THE COURT:**  THE COURT CORRECT IN ITS UNDERSTANDING

20   PANGANG DEFENDANTS ONLY SEEK TO QUASH SERVICE OF THE

21   INDICTMENT?

22        **MR. FELDMAN:**  CORRECT.

23        **THE COURT:**  OR QUASH SERVICE OF THE INDICTMENT, NOT

24   DISMISS THE INDICTMENT?

25        **MR. FELDMAN:**  THAT'S OUR MOTION.

1          **THE COURT:**  WHAT'S THE REASON FOR THAT BECAUSE

2    THEORETICALLY IF THE COURT WERE TO GRANT YOUR MOTION THE

3    GOVERNMENT COULD GO AND DO OTHER SERVICES?

4          I'M NOT TELLING YOU HOW TO RUN YOUR BUSINESS HERE, BUT

5    I'M TRYING TO MANAGE THE CASE AS WELL.

6          **MR. FELDMAN:**  YES.  I BELIEVE THAT HAVING YOUR HONOR

7    POSE THE QUESTION TO US, I BELIEVE THAT WE COULD HAVE POSSIBLY

8    MADE THAT MOTION, BUT IT WOULD HAVE -- LET ME ANSWER YOUR

9    QUESTION SPECIFICALLY.

10          YOU ASKED ME WHAT OUR MOTION IS, I TOLD YOU, YOU ASKED

11   ME WHAT THE REASON IS.  THE REASON IS THAT -- THE REASON I

12   DIDN'T THINK ABOUT IT AS MUCH AS I SHOULD HAVE.

13          BUT I THINK THE REASON I DID IT IS FOR THE REASON YOU

14   IDENTIFIED.  I CAN'T ELIMINATE FROM POSSIBILITY THE POSSIBILITY

15   THAT THE GOVERNMENT MAY SOME DAY BE ABLE TO SERVE.

16          **THE COURT:**  REMEMBER I WAS ONLY ASKING WHAT THEY DID,

17   YOU HAVE A VERY NARROW WINDOW WHAT YOU CAN RESPOND TO.  IT'S

18   PRETTY CLEAR WHAT THE MOTION IS, BUT I WANTED TO VERIFY THAT.

19          THEN I ADDED A POP QUESTIONS QUESTION ABOUT WHAT THE

20   THINKING HERE ABOUT THAT AND WHERE ARE WE GOING TO GO FROM HERE

21   AND POSSIBLY --

22          **MR. AXELROD:**  RIGHT.  I THINK, THAT'S WHAT I'D LIKE TO

23   RESPOND TO.

24          **THE COURT:**  ALL RIGHT.

25          **MR. AXELROD:**  BECAUSE, NUMBER ONE, IF THE COURT WERE

1    TO GRANT THE DEFENDANT'S MOTION TO QUASH SERVICE, IT IS

2    TANTAMOUNT TO A DISMISSAL OF THE INDICTMENT WITH RESPECT TO

3    THOSE DEFENDANTS FROM THE GOVERNMENT'S PERSPECTIVE.

4           AND SO ONE OF THE THINGS THAT'S IMPORTANT ABOUT WHAT

5    MR. FELDMAN JUST SAID IS, WELL, THERE'S A THEORETICAL

6    POSSIBILITY THAT THE GOVERNMENT, IF THE COURT WERE TO GRANT

7    THIS MOTION, THE GOVERNMENT WOULD NONETHELESS HAVE THE

8    OPPORTUNITY TO GO ATTEMPT TO EFFECT SERVICE.

9           AND I THINK THAT POINT IS VERY IMPORTANT ONE FOR THE

10   COURT TO CONSIDER IN GOING AHEAD WITH THIS AND HOW IT EVALUATES

11   THE ARGUMENT AND THE EVIDENCE THAT WE PRESENTED FOR THESE

12   REASONS.

13          NUMBER ONE, AS I ARTICULATED YESTERDAY, IT'S THE

14   JUDGMENT OF THE DEPARTMENT THAT IT WOULD BE FUTILE TO ATTEMPT

15   TO EFFECT SERVICE.

16          AND I WOULD LIKE TO POINT THE COURT TO SOME AUTHORITY,

17   THE COURT ASKED ANOTHER POP QUIZ QUESTION YESTERDAY, WHICH IS

18   SHOULD I PROVIDE -- IS THERE SUBSTANTIAL DEFERENCE OR ANY

19   DEFERENCE THAT SHOULD BE AFFORDED TO THE GOVERNMENT'S

20   INTERPRETATION?  I DO HAVE --

21          **THE COURT:**  THAT WAS ON THE ISSUE OF THE OFFER OF

22   PROOF YOU MADE YESTERDAY.

23          **MR. AXELROD:**  CORRECT.  I -- SO I HAVE AN AUTHORITY

24   THAT I WOULD LIKE TO PROVIDE THE COURT WITH IF IT'S WILLING TO

25   ACCEPT IT.

1    **THE COURT:**  SURE.

2    **MR. AXELROD:**  WHICH IS FIFTH CIRCUIT CASE CALLED MOORE

3    VERSUS INTEL COM SUPPORT SERVICES 960 F 2ND 466 AND THE PIN

4    SPITE TO THAT IS 471, 471.

5    AND BASICALLY WHAT THAT TALKS ABOUT IS THAT THERE'S

6    BEEN SUBSTANTIAL -- COURTS GIVE SUBSTANTIAL WEIGHT DEFERENCE TO

7    THE INTERPRETATION BY THE EXECUTIVE BRANCH OF A TREATY.

8    IN THIS CASE IN THE TREATY CIRCUMSTANCE YOU HAVE THE

9    CONGRESS SENATE HAS BEEN APPRIZED AND AGREED, WE'RE ACTUALLY IN

10   AN EVEN MORE SENSITIVE SITUATION HERE, WHERE MORE DEFERENCE IS

11   DUE.

12   BECAUSE THIS IS JUST A PURELY -- THIS IS AN EXECUTIVE

13   BRANCH AGREEMENT.  THERE'S NO TREATY WITH THE CHINESE

14   AUTHORITIES, THERE'S AN AGREEMENT.

15   SO YOU HAVE THE UNITED STATES GOVERNMENT, THE

16   DEPARTMENT OF JUSTICE ON ONE SIDE AND THE CHINESE AUTHORITIES

17   ON THE OTHER.  AND WHAT'S SIGNIFICANT THERE IS THAT THE ONLY

18   PARTIES, AND THE AGREEMENT SPECIFICALLY SAYS THIS DOESN'T GIVE

19   RISE TO ANY RIGHTS TO ANY PRIVATE PARTIES, THIS IS A MEANS FOR

20   THE DEPARTMENT OF JUSTICE AND THE CHINESE AUTHORITIES, THE

21   JUDICIAL AUTHORITIES IN CHINA TO COMMUNICATE.

22   THEY'RE THE ONLY PARTIES INVOLVED AND THE ONLY PARTIES

23   HAVE THE PRACTICE OF INTERACTING AND INTERPRETING AND EXECUTING

24   UNDER THAT AGREEMENT.  THE DEPARTMENT'S POSITION, THEREFORE,

25   SHOULD BE MORE PARTICULARLY GIVEN DEFERENCE IN LIGHT OF THAT

1    CIRCUMSTANCE.

2              **THE COURT:**  YOU STARTED WITH, I APPRECIATE YOU GIVING

3    ME MORE AUTHORITY IN RESPONSE TO THE COURT'S QUESTION, BUT WHAT

4    I HEAR YOU SAYING IS BASICALLY IF THE COURT GRANTS THE MOTION

5    THEN IT'S GAME OVER WITH RESPECT TO THESE DEFENDANTS?

6              **MR. AXELROD:**  RIGHT, THIS BLEEDS INTO THE QUESTION, I

7    THINK, WHERE WE'RE GOING WITH THIS WHICH IS ABOUT THE APPELLATE

8    ISSUE.

9              **THE COURT:**  LET'S -- I DON'T MIND, THESE QUESTIONS ARE

10   JUST SORT OF A TRACKING OF THE COURT'S THINKING.  THERE'S

11   NOTHING MAGIC ABOUT THE WAY THEY'RE SET FORTH OR SEPARATED.

12             SO, OF COURSE, I'LL GIVE MR. FELDMAN AN OPPORTUNITY TO

13   RESPOND, AND THE PARTIES HAVE GIVEN ME SOME ADDITIONAL

14   AUTHORITY.  I, FRANKLY, DIDN'T KNOW THE ANSWER TO THIS

15   QUESTION.

16             IT'S NOT SOMETHING I NORMALLY ASK BECAUSE WE'RE

17   SUPPOSED TO SAY WE FOLLOW THE LAW, WE DON'T CARE ABOUT THE

18   PEOPLE WHO GRADE OUR PAPERS, THE NINTH CIRCUIT, WE JUST DO WHAT

19   WE THINK IS RIGHT, THEY TELL US WHETHER WE'RE RIGHT OR WRONG.

20             I DON'T SAY I KNOW, IT'S POSSIBLE I BE CONFRONTED

21   LATER ON WITH MOTION TO STAY OR REQUEST TO DISMISS, AND I'M

22   JUST REALLY TRYING TO TELESCOPE IT A LITTLE BIT WITHOUT BINDING

23   YOU BECAUSE YOU HAVE TO GET PERMISSION FROM THE SOLICITOR

24   GENERAL.

25             I'M NOT SAYING THAT TELEGRAPHS THE WAY I'M GOING TO

1   RULE, JUST ASKING HYPOTHETICALLY.

2          **MR. AXELROD:**  THE POINT I WANT TO BRING TO THE COURT'S

3   ATTENTION IS, IF THE COURT WERE INCLINED TO SAY, WELL, OKAY,

4   THERE'S THIS THEORETICAL POSSIBILITY I'M GOING TO DISREGARD THE

5   DEPARTMENT'S POSITION, AND I'M GOING TO SAY I'M INCLINED TO

6   GRANT THE MOTION AND THEN IF THE GOVERNMENT CAN EFFECT SERVICE

7   DOWN THE ROAD THEY CAN DO THAT.

8          WE WOULD TAKE THE POSITION THAT THAT'S NOT THE BEST

9   WAY OR THE APPROPRIATE WAY TO HANDLE IT.  WHAT THE COURT SHOULD

10  DO IS HOLD OFF, WE'LL FIND OUT WHAT IN THE COURT'S OPINION

11  WOULD BE A REASONABLE PERIOD OF TIME FOR US TO ATTEMPT TO

12  EFFECT SERVICE, NOTWITHSTANDING OUR BELIEF IT'S FUTILE, AND

13  THEN WE WILL DEVELOP A FACTUAL RECORD MORE COMPLETELY THAT

14  WOULD BE APPROPRIATE FOR A COURT OF APPEALS TO REVIEW, IF THE

15  COURTS INCLINED TO RELY ON THAT AS A BASIS TO MAKE A DECISION.

16         **THE COURT:**  I'M A LITTLE BIT CONFUSED NOW.  ARE YOU

17  SAYING, I THINK, I'M NOT CONFUSED, BUT I WANT TO STATE THIS TO

18  MAKE SURE I'M NOT CONFUSED.

19         I THINK, WHAT I HEARD YOU SAYING IS, YOU'RE SAYING TO

20  THE COURT, DON'T GRANT THE MOTION OUTRIGHT.  IF YOU'RE INCLINED

21  TO GRANT IT INDICATE YOU THINK THE DEFENDANTS HAVE A BETTER

22  ARGUMENT, BUT THE GOVERNMENT IS GIVEN LEAVE OF A PERIOD OF TIME

23  TO ATTEMPT TO EFFECT SERVICE THROUGH A DIFFERENT MODALITY.

24  THAT'S ONE POSSIBILITY.

25         THE OTHER POSSIBILITIES, WHICH I DON'T THINK YOU'RE

1    SAYING IS, NO, NO, NO, HOLD OFF, GIVE US A CHANCE TO DO

2    EFFECTIVELY A JURISDICTIONAL, IF YOU WILL, DISCOVERY TO SEE IF

3    WE CAN GET MORE EVIDENCE TO MAYBE CONVINCE YOU THAT OUR THEORY

4    HERE IS CORRECT.  WHICH OF THOSE TWO?

5           **MR. AXELROD:**  IT'S THE FORMER, YOUR HONOR.  AND JUST

6    SO THAT I CAN ARTICULATE IT CLEARLY.  IF IN MAKING A DECISION

7    THE COURT INCLINED TO OVERRIDE THE DEPARTMENT'S OPINION AND ON

8    THE THEORY THAT, YES, THERE'S A POSSIBILITY.

9           **THE COURT:**  I THINK OVERRIDE IS TOO STRONG, LET'S SAY

10   GIVEN A SEPARATION OF POWERS, DISAGREE.

11          **MR. AXELROD:**  DISAGREE, FAIR ENOUGH.  IF THE COURT'S

12   INCLINED TO DISAGREE AND BELIEVES THERE IS STILL A MEANINGFUL

13   OPPORTUNITY TO EFFECT SERVICE, AND WOULD RELY ON THAT AS A

14   BASIS FOR THE DENIAL OF THE MOTION, AT THAT POINT THE BEST

15   COURSE OF ACTION IS TO NOT MAKE A DECISION, BUT THEN TO GIVE

16   THE PARTY, GIVE THE UNITED STATES SOME OPPORTUNITY TO EFFECT

17   THE SERVICE AND COMPLETE THE RECORD.

18          **THE COURT:**  THEN WE WOULD NEED ANOTHER MOTION,

19   ASSUMING -- UNLESS MR. FELDMAN AGREED THAT WAS THE APPROPRIATE

20   WAY TO SERVE.

21          **MR. AXELROD:**  I'M NOT SURE.

22          **THE COURT:**  WE NEED BRIEFING CERTAINLY.

23          **MR. AXELROD:**  I THINK AT THE END OF THE DAY WE COME

24   BACK AFTER WHATEVER PERIOD OF TIME THE COURT DETERMINES

25   APPROPRIATE AND WOULD SAY, YES OR NO.  WE WERE ABLE TO EFFECT

1   SERVICE OR NOT.

2           THEN WE GET TO THE ISSUE OF EVEN WITH THAT, EVEN

3   ASSUMING SERVICE WAS MADE, WOULD THAT BE EFFECTIVE UNDER RULE

4   4?

5           I BELIEVE THAT, YOU KNOW, THE DEFENSE WOULD STILL SAY

6   NO, BECAUSE OF THE PRINCIPLE PLACE OF BUSINESS ISSUE.

7           **THE COURT:**  OKAY.  BUT ANSWERING THE QUESTION DIRECTLY

8   THAT'S ASKED ABOUT, LET'S ASSUME -- WHAT -- IS THE GOVERNMENT'S

9   POSITION THAT THE COURT WERE, LET'S SAY I DISAGREED, OBVIOUSLY

10  IF THE COURT GAVE YOU MORE TIME THERE WOULD BE ENOUGH FOR

11  APPEAL, COULD THEORETICALLY ASK THE QUESTION TO BE CERTIFIED.

12          BUT PUT THAT ASIDE, THE COURT DISAGREED AND SAID

13  MOTION GRANTED.  I TAKE THE MOTION AS I FIND IT, I GRANT IT,

14  DOES THE GOVERNMENT TAKE THE POSITION THAT IS NOT AN APPEAL

15  IMMEDIATELY APPEALABLE OR WITHOUT A CERTIFICATION?  THE

16  GRANTING OF THE MOTION TO QUASH.

17          **MR. AXELROD:**  WE WOULD CERTAINLY SAY IT'S AN

18  APPEALABLE ORDER BECAUSE AS I SAID EARLIER, GRANTING THE MOTION

19  TO QUASH WITH RESPECT TO ANY PARTICULAR DEFENDANT IS TANTAMOUNT

20  TO DISMISSAL OF THE INDICTMENT.

21          **THE COURT:**  LET ME STOP YOU.  WOULDN'T THAT REQUIRE

22  ADDITIONAL STEP?  WOULDN'T THE GOVERNMENT THAN HAVE TO SAY IN

23  LIGHT OF, AS HAPPENS FREQUENTLY WHERE A COURT GRANTS A 12(B)(6)

24  MOTION IN A CIVIL CASE WITH LEAVE, AND THE DEFENDANTS SAID --

25  THE PLAINTIFF SAYS NO, NO, WE HAVE NOTHING MORE, APPARENTLY WE

1    WANT TO GO OFF ON THAT ONE, SO WE'LL AGREE WITH THE DISMISSAL.

2          WOULD IT REQUIRE AN INTERIM STEP, AGAIN, THIS WILL ALL

3    BE IN THE PAPERS, AND WE'RE JUST KIND OF US TALKING HERE, IS IT

4    YOUR VIEW THAT THE GOVERNMENT, AND AGAIN I'M NOT PREJUDGING

5    WHAT POSITION YOU MIGHT TAKE OR THE DEFENDANT MIGHT TAKE WITH

6    THE NINTH CIRCUIT, BUT I THINK IT'S AN IMPORTANT ISSUE.

7          THE GOVERNMENT SAYS, WELL, IT'S TANTAMOUNT, THEREFORE,

8    WE CAN IMMEDIATELY TAKE A DIRECT APPEAL WITHOUT ACTUALLY

9    DISMISSING THE INDICTMENT BASED UPON THE COURT'S RULING.

10         **MR. AXELROD:**  THAT'S CORRECT, YOUR HONOR.  THAT'S THE

11   POSITION WE WOULD TAKE.

12         **THE COURT:**  ALL RIGHT.  ON THAT NARROW ISSUE WHAT'S

13   YOUR POSITION?

14         **MR. FELDMAN:**  HERE'S --

15         **THE COURT:**  WITHOUT BINDING BECAUSE IT'S NOT, IT'S

16   REALLY SORT OF AN ADVISORY DISCUSSION HERE BECAUSE NOTHING HAS

17   HAPPENED, I HAVEN'T DECIDED WHAT I'M GOING TO DO, AND WHATEVER

18   YOU ALL DO VIS-A-VIS A HIGHER COURT IS OF NO LEGAL CONCERN TO

19   THIS COURT, IT'S UP TO THAT, WHATEVER COURT YOU GO TO, SO

20   WHAT'S YOUR VIEW ON THAT?

21         **MR. FELDMAN:**  I UNDERSTAND OR I HAD ANTICIPATED IN

22   VIEW OF 6(B) THAT YOUR HONOR, IN PARTICULAR THE SECOND QUESTION

23   IN 6(B), WHICH WAS HAVE ALL THE PARTIES DISCUSSED HOW THE COURT

24   SHOULD PROCEED ON THE MATTER PENDING APPEAL, I THOUGHT THAT'S

25   WHAT YOU HAD IN MIND.

1          **THE COURT:** DISCUSS OR CONSIDER.

2          **MR. FELDMAN:** RIGHT.  AND I ACTUALLY ASSUMED, PERHAPS,

3     INCORRECTLY, THAT ALL THE PARTIES DID NOT INCLUDE ME.  BECAUSE

4     I ASSUME THAT I WASN'T A PARTY TO THIS DISCUSSION.

5          **THE COURT:** IT'S REALLY AN INVITATION.  MAYBE IT'S

6     SORT OF QUICK DECIDED, THE PARTIES GET TOGETHER AND SAY, HEY,

7     OKAY, WERE OPPONENTS, BUT WERE OFFICERS THE COURT, WHAT ARE WE

8     GOING TO PROPOSE TO THE COURT AS THIS THING GOES FORWARD?

9          **MR. FELDMAN:** I ACTUALLY DID TALK TO MR. HEMANN, AS I

10    ALSO DO, ALWAYS ENJOY, WHAT I THINK WOULD HAPPEN IS THIS.  I'M

11    ACTUALLY DELIGHTED TO TELL YOU THAT I SPOKE TO THE LAWYER WHO

12    ARGUED FOR THE GOVERNMENT IN THE LAYTON CASE ABOUT THIS, IT WAS

13    A PLEASURE, I THINK YOU KNOW WHO I MEAN.

14         **THE COURT:** YES.

15         **MR. FELDMAN:** HERE'S WHAT I THINK WOULD HAPPEN.

16    ASSUMING, FOR EXAMPLE, THAT YOU RULED AGAINST THE GOVERNMENT ON

17    THIS MOTION.

18         I THINK, THAT WHAT WOULD HAPPEN IS THAT THE GOVERNMENT

19    WOULD APPEAL, AND A MOTIONS PANEL OR PANEL OF TWO JUDGES WOULD

20    DETERMINE WHETHER OR NOT THE APPEAL WAS PROPERLY TAKEN AND THAT

21    WOULD HAPPEN RATHER QUICKLY, I BELIEVE.

22         IF THAT, I THINK, TWO JUDGE PANEL, I THINK, RULED THE

23    APPEAL WAS NOT PROPERLY TAKEN, THEN THE GOVERNMENT WOULD BE

24    BACK HERE WITH THE CASE THAT IT HAS WITHOUT MY CLIENTS.  AND I

25    THINK THAT WOULD BE DECIDED FAIRLY QUICKLY.

1          IF THE -- IF WHAT I THINK WOULD BE TWO JUDGE PANEL

2     DECIDES THE APPEAL IS PROPERLY TAKEN, THEN I THINK THAT WE

3     WOULD BE OFF TO THE RAISES IN THE NINTH CIRCUIT ON A SCHEDULE

4     THAT'S DIFFICULT TO PREDICT.

5          AND IN MY VIEW THE CASE THAT YOUR HONOR HAS BEFORE YOU

6     SHOULD PROCEED AS IF WE'RE NOT IN IT AND DEPENDING UPON THE

7     RESULTS WHAT THE NINTH CIRCUIT DOES, WE, MY CLIENTS, WERE THEY

8     TO BE BROUGHT BACK INTO CASE, WHICH I DON'T THINK WOULD HAPPEN,

9     WOULD HAVE TO SAY SOMETHING ABOUT WHAT HAD HAPPENED WHILE THEY

10    WERE ABSENT, NAMELY, DISCOVERY MATTERS AND MOTIONS AND SO

11    FORTH.  BUT THAT'S ALL I CAN SAY.

12         **THE COURT:**  WHAT ABOUT THE OTHER SCENARIO?  WOULD YOU

13    AGREE DENYING YOU YOUR MOTION IS NOT IMMEDIATELY APPEALABLE BY

14    THE DEFENDANTS OTHER THAN ON A CERTIFICATION BASIS?

15         **MR. FELDMAN:**  WELL, I ACTUALLY DON'T AGREE.  HAVING

16    LOOKED AT THE LAYTON CASE I DO THINK THAT, WHILE I REALLY WON'T

17    TELL YOU IT'S A SLAM-DUNK, I WOULD CERTAINLY WILL TAKE THAT

18    APPEAL, WHICH I HOPE I DON'T HAVE TO.  I WOULD ARGUE

19    STRENUOUSLY ALL THE REASONS, I THINK, YOUR QUESTIONS REFLECTS

20    WE OUGHT TO BE HEARD.

21         **THE COURT:**  AGAIN, THIS IS ALL -- I WANT THE RECORD TO

22    REFLECT IF IT NEEDS TO THIS IS NOT IN ANYWAY BINDING ON ANYBODY

23    BECAUSE IN THE GOVERNMENT'S CASE IN FAIRNESS TO THEM THIS ALL

24    WOULD HAVE TO BE RUN THROUGH THE SOLICITOR GENERAL.

25         AND THE DEFENDANT'S SIDE THE STRATEGY DECISION AND

1    THEN CERTAINLY ONCES AN APPEAL FILED BY EITHER SIDE IT WOULD,

2    WITH RESPECT TO THESE DEFENDANTS, BUT NOT THE REST OF THE CASE,

3    I DON'T THINK, IT WOULD REST JURISDICTION FROM THE COURT.

4         AND IT SOUNDS LIKE THEN, AND I'M JUST THINKING OUT

5    LOUD, THAT IN EITHER EVENT THERE'S GOING TO BE A DELAY,

6    UNLESS -- WITH RESPECT TO THESE DEFENDANTS BECAUSE EITHER THE

7    COURT WILL GRANT THE MOTION -- WELL, NO, I SHOULDN'T SAY THAT.

8    THERE'S THREE POSSIBILITIES.

9         ONE, IS GRANT THE MOTION OUTRIGHT, WHICH CASE THE

10   GOVERNMENT IF THE SOLICITOR GENERAL AGREES WITH MR. AXELROD

11   WILL APPEAL IMMEDIATELY, WHICH WILL WREST JURISDICTION IN THIS

12   CASE FROM THIS COURT WHILE THE APPEAL IS PENDING.

13        IF THE COURT WERE TO DO THE PROVISIONAL INTENDED

14   RULING ROUTE ANYBODY COULD APPEAL ANYTHING, JUST LIKE ANYBODY

15   CAN SUE ANYBODY, BUT I COULDN'T IMAGINE THAT WOULD BE A

16   DIRECTLY APPEALABLE ORDER BY, CERTAINLY NOT BY THE GOVERNMENT,

17   WELL, THE GOVERNMENT MIGHT APPEAL ANYWAY.

18        THE GOVERNMENT MIGHT DECIDE, YOU KNOW, WE RAISED THIS

19   IN COURT THIS IS ALL HYPOTHETICAL AND UPON REFLECTION AND

20   ANALYSIS THERE REALLY ISN'T ANY, JUST A FUTILE ACT JUST A WASTE

21   WAYS OF RESOURCES, WE'RE GOING TO CUT AND GO TO NINTH CIRCUIT.

22        I'M THINKING OUT LOUD AND, AGAIN, I COULD BE DOING

23   THIS IN MY CHAMBERS, BUT WE'RE ALL HERE AND VERY GOOD LAWYERS,

24   BUT SOUNDS TO ME LIKE EXCEPT FOR THIS PROVISIONAL RULING WE MAY

25   WELL BE FACING A DELAY IN THE CASE, DEPENDING UPON THE OUTCOME.

1          WHERE YOU WILL NOT HAVE DELAYS IN THIS COURT'S RULING.

2     I WON'T BE THE WEAK LINK, ALTHOUGH, I NEED TO CONSIDER ALL

3     THESE MATTERS YOU BROUGHT BEFORE THE COURT.

4          **MR. FELDMAN:**  MAY I MAKE ONE COMMENT?

5          **THE COURT:**  YES.

6          **MR. FELDMAN:**  WE WOULD OBJECT TO WHAT I THINK YOU JUST

7     LABELED THE PROVISIONAL RULING ROUTE.  DOESN'T MAKE ANY SENSE

8     HERE.

9          I DON'T SEE THE PURPOSE OF IT, I DON'T SEE HOW -- IF

10    THEY WANT TO DO THAT THEY CAN GO AND DO THAT.  THEY'RE SAYING

11    THEY DON'T THINK IT MAKES SENSE.  BUT IF THEY WANT TO DO IT,

12    WHETHER YOU RULED OR -- WHEN AND WHETHER AND IRRESPECTIVE WHAT

13    YOU DO THEY CAN DO THAT.

14         THE ONE COURT, I THINK, IT WAS THE JOHNSON COURT, YES,

15    THE JOHNSON DISTRICT JUDGE IN REVIEWING AN OBJECTION TO THE

16    MAGISTRATE'S OPINION DISMISSED, EXCUSE ME, QUASHED AND TOLD THE

17    GOVERNMENT TO GO TRY AND DO WHATEVER ELSE IT WANTED TO DO.

18         YOU CAN CERTAINLY GIVE THEM LEAVE TO DO THAT.  I DON'T

19    THINK THEY PARTICULARLY WANT THAT, BUT THE MOST EFFECTIVE,

20    MEANINGFUL THING, THE THING I THINK WE'RE ENTITLED TO, IS THAT

21    YOU RULE ON WHAT'S BEFORE YOU AND THE CASE, I GUESS, IS STILL

22    THERE, AND IF THEY WANT TO GO AND TRY AND DO WHATEVER THEY'RE

23    GOING TO DO THEY CAN DO IT.

24         **THE COURT:**  I DON'T KNOW MAKES ALL THAT MUCH

25    DIFFERENCE, I DON'T REALLY NEED TO HERE ANYMORE.  THIS GETTING

1   OUT SO FAR INTO THE WHAT IF AND HYPOTHETICAL, I GOT A LOT TO

2   REALLY NOODLE OVER.

3           IT'S INTERESTING BECAUSE EXTREMELY BAD LAWYERING IT

4   REALLY MAKES THE JOB DIFFICULT, THE COURT'S JOB DIFFICULT.

5   WITH EXTREMELY GOOD LAWYERS AS I HAD IN THIS CASE IT MAKES IT

6   DIFFICULT IN THE OTHER SENSE.

7           IT'S LIKE BOTH ARGUMENTS ARE MADE IN GOOD FAITH, NOT

8   FRIVOLOUS.  THERE'S NOT A LOT OF LAW OUT THERE ON THIS DIRECT

9   POINT AND IT MADE THE COURT'S JOB EASIER IN THE SENSE OF

10  ARTICULATING THE ISSUES VERY SPECIFICALLY WITH RESPECT TO THE

11  EVIDENCE AND THE LAW, CITING THE COURT TO THE LAW THAT IT NEEDS

12  TO DECIDE THE CASE, AND THE COURT REALLY CAN'T ASK FOR ANYMORE,

13  SO I APPRECIATE AND THANK COUNSEL.

14          I APPRECIATE YESTERDAY HAVING YOUR ASSOCIATE, I

15  SHOULDN'T ASSUME SHE'S YOUR ASSOCIATE, MORE JUNIOR LAWYER

16  ARGUING, I THINK, WE SHOULD GIVE THE NEXT GENERATION

17  OPPORTUNITIES.

18          **MR. FELDMAN:**  WE HAVE THE BEST OF THE NEXT GENERATION

19  HERE.

20          **THE COURT:**  SITTING AT COUNSEL TALL?

21          **MR. HEMANN:**  THAT'S WHY PETE LET ME DO THAT WHOLE

22  MIDDLE PART.  NEXT GENERATION.

23          **THE COURT:**  YOUR NEVER GOING TO CONVINCE ME,

24  MR. HEMANN, YOU ARE NOT THIS GENERATION, NOT THE NEXT

25  GENERATION.  I MEAN THAT BY YOUR SKILL.

1          **MR. HEMANN:**  THANK YOU, YOUR HONOR.

2          **MR. AXELROD:**  I'LL GIVE HIM THE OTHER PART OF THE

3   INTERPRETATION.

4          **THE COURT:**  THANK YOU.

5          **MR. AXELROD:**  THANK YOU.

6          **MR. FELDMAN:**  THANK YOU.

7

8                    (PROCEEDINGS ADJOURNED.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 17TH DAY OF JULY, 2012.


/S/  JAMES YEOMANS


_____

JAMES YEOMANS, CSR, RPR