PAGES 1 - 60

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

UNITED STATES OF AMERICA,     )
                              )
          PLAINTIFF,          )
                              )
  VS.                         )          NO. CR 11-573 JSW
                              )
WALTER LIEW, ET AL.,          )
                              )
          DEFENDANTS.         )
_____)

SAN FRANCISCO, CALIFORNIA
THURSDAY, JUNE 7, 2012

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:          UNITED STATES ATTORNEY'S OFFICE
                        450 GOLDEN GATE AVENUE
                        SAN FRANCISCO, CALIFORNIA  94102
                BY:     **PETER BENJAMIN AXELROD**
                        JOHN HENRY HEMANN
                        ASSISTANT UNITED STATES ATTORNEYS

FOR DEFENDANT           QUINN EMANUEL URQUHART & SULLIVAN
PANGANG GROUP:          555 TWIN DOLPHIN DRIVE
                        5TH FLOOR
                        REDWOOD SHORES, CA  94065
                BY:     **ROBERT P. FELDMAN**
                        **VALERIE RODDY**
                        **NICOLE ALTMAN**
                        ATTORNEYS AT LAW

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:            JAMES YEOMANS, CSR #4039, RPR
                        OFFICIAL REPORTER

COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1    **APPEARANCES:  (CONTINUED)**

2    FOR DEFENDANT              MC KENNEY & FROELICH
     MAEGERLE:                  1349 WEST PEACHTREE ST.
3                              TWO MIDTOWN PLAZA
                              SUITE 1250
4                              ATLANTA, GA  30309
                        BY:   **JEROME J. FROELICH,JR.**
5                              **ATTORNEY AT LAW**

6    FOR DEFENDANT              KEKER & VAN NEST
     WALTER LIEW:               633 BATTERY STREET
7                              SAN FRANCISCO, CA  94111
                        BY:   **STEVEN PAUL RAGLAND**
8                              **ATTORNEY AT LAW**

9                              DORON WEINBERG
                              ATTORNEY AT LAW
10                             523 OCTAVIA ST.
                              SAN FRANCISCO, CA  94102

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              THURSDAY, JUNE 7, 2012                    2:00 P.M.

2          (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)

3          THE CLERK:  CALLING CASE NUMBER CR-11-573, UNITED

4    STATES VERSUS WALTER LIEW, UNITED STATES VERSUS CHRISTINA LIEW,

5    UNITED STATES VERSUS ROBERT MAEGERIE, UNITED STATES VERSUS

6    PANGANG GROUP COMPANY LTD, UNITED STATES VERSUS PANGANG GROUP

7    STEEL VANADIUM AND TITANIUM COMPANY, UNITED STATES VERSUS

8    PANGANG GROUP TITANIUM INDUSTRY COMPANY AND THE UNITED STATES

9    VERSUS PANGANG GROUP INTERNATIONAL ECONOMIC AND TRADING

10   COMPANY.

11         COUNSEL, PLEASE STATE YOUR APPEARANCES.

12         THE COURT:  WAIT UNTIL ALL THE DEFENSE IS HERE.

13         MR. RAGLAND:  GOOD AFTERNOON, YOUR HONOR.

14         STEVEN RANGLAND KEKER & VAN NESS ON BEHALF OF WALTER

15   LIEW, WHOSE PRESENT.

16         THE COURT:  GOOD AFTERNOON.

17         MR. WEINBERG:  GOOD AFTERNOON.

18         DORON WEINBERG APPEARING FOR CHRISTINA LIEW.

19         MR. FROELICH:  GOOD AFTERNOON, YOUR HONOR.

20         JERRY FROELICH FOR MR. MAEGERLE, WHOSE RIGHT HERE.

21         MR. FELDMAN:  MAY IT PLEASE THE COURT, ROBERT FELDMAN

22   AND MY COLLEAGUES VALARIE RODDY AND NICOLE ALTMAN ON BEHALF OF

23   THE CORPORATE DEFENDANTS.

24         WITH THE COURT'S PERMISSION, MAY I ACKNOWLEDGE THE

25   PRESENCE OF FOUR PEOPLE WHO ARE NOT ADMITTED, BUT ARE WORKING
```

```
1    IN MY OFFICE THIS SUMMER?

2              THE COURT:  SURE, PLEASE DO.

3              MR. FELDMAN:  CHARLIE --

4              THE COURT:  STAND UP, SO WE KNOW WHO THEY ARE.  GIVE

5    THEM THEIR DAY IN THE SUN.

6              MR. FELDMAN:  THANK YOU.

7              CHARLIE STEINBERG FROM HARVARD LAW SCHOOL, WEI WANG

8    FROM CALIFORNIA BERKELEY LAW SCHOOL, PATIENCE RENN FROM

9    HASTINGS LAW SCHOOL, JENNIFER MADISTICK FROM CAL BERKELEY LAW

10   SCHOOL.

11             THANK YOU, YOUR HONOR.

12             THE COURT:  WELCOME.  I APPRECIATE YOU'RE GETTING THE

13   CORRECT NAME OF -- THE NEW NAME OF THE WHAT USE TO BE, WE ALL

14   KNOW AS BOLT.

15             ALL RIGHT.  DO WE HAVE ALL THE ATTORNEYS MAKE THEIR

16   APPEARANCES?

17             MR. AXELROD:  WE HAVE NOT.  PETE AXELROD AND JOHN

18   HEIMANN FROM U.S. ATTORNEY'S OFFICE.

19             WE'RE ALSO JOINED A COLLEAGUE FROM THE

20   COUNTERESPIONAGE SECTION RICHARD SCOTT.

21             THE COURT:  WHERE'S IS MR. SCOTT?

22             MR. AXELROD:  SITTING AT COUNSEL TABLE.

23             THE COURT:  SO A COUPLE OF PRELIMINARY QUESTIONS.

24   WE'RE OBVIOUSLY HERE ON MOTIONS THAT WERE FILED WITH RESPECT TO

25   SERVICE, BUT WE ALSO HAVE SCHEDULED A STATUS FOR NOT ALL THE
```

1  DEFENDANTS, BUT SINCE WE HAVE ALL THE DEFENDANTS HERE I DECIDED

2  TO CALL THE CASE TOGETHER AND SEE WHERE WE ARE.

3           I THINK, ONE QUESTION HAS BEEN ALREADY -- THE QUESTION

4  I HAD -- THE COURT HAD INITIALLY HAS ALREADY BEEN ANSWERED BY

5  THE APPEARANCES.

6           I WAS GOING TO ASK WHEN USAPTI WAS SCHEDULED TO APPEAR

7  BEFORE THIS COURT.  AND, COUNSEL, YOU'RE ABSOLUTELY -- YOU'RE

8  REPRESENTING?

9           **MR. RAGLAND:**  I REPRESENT MR. LIEU AS WELL USAPTI.

10          **THE COURT:**  GREAT.  SO, I THINK, IT'S APPROPRIATE AND

11 FAIR THAT -- AS TO THOSE DEFENDANTS WHO HAVE NOT FILED MOTION

12 AND WERE NOT HERE -- WHO ARE HERE FOR STATUS THAT WE SET THE

13 STATUS.

14          MY -- I APPRECIATE YOUR BEING HERE BECAUSE OBVIOUSLY

15 MAYBE JUMPS ONE STEP, BUT YOU NEED TO MAKE APPEARANCE ON BEHALF

16 OF YOUR CLIENT BEFORE THE MAGISTRATE JUDGE.  THE DUTY

17 MAGISTRATE JUDGE, HAVE YOU DONE THAT ALREADY?

18          **MR. FROELICH:**  WE HAVE ALREADY DONE THAT.  IN FACT,

19 WE'RE LITIGATING PROTECTIVE ISSUE ON THE 20TH OF JUNE IN FRONT

20 OF JUDGE COUSINS.

21          **THE COURT:**  SORRY ABOUT THAT.  SO I WANT TO HAVE A

22 STATUS REPORT AND CONFERENCE WITH RESPECT TO THE DEFENDANTS WHO

23 HAVE NOT APPEARED ESPECIALLY.

24          BECAUSE EVEN THOUGH THE OUTCOME OF THE MOTIONS MAY OR

25 MAY NOT EFFECT THE SCHEDULE IN THE CASE, THEY SHOULD HAVE THEIR

1    CASE MOVED ALONG.

2            SO I'LL START WITH GOVERNMENT COUNSEL.  WHAT THE

3    STATUS WITH RESPECT TO THOSE DEFENDANTS WHO ARE HERE FOR

4    STATUS?

5            **MR. AXELROD:**  THE STATUS IS THE PARTIES HAVE REALLY

6    BEEN WORKING ON RESOLVING DISCOVERY ISSUES AT THIS POINT.  WE

7    HAVE MET AND CONFERRED, THE GOVERNMENT HAS PROVIDED SOME

8    DISCOVERY, CERTAIN SEARCH WARRANT PLEADINGS, THINGS LIKE THAT,

9    CERTAIN REPORTS, BUT THE BULK OF THE DISCOVERY IS THE SUBJECT

10   OF A PROTECTIVE ORDER MOTION THAT IS IN THE MIDDLE OF THE

11   BRIEFING PROCESS RIGHT NOW.

12           IT'S SCHEDULE FOR ARGUMENT ON JUNE 20 IN FRONT OF

13   JUDGE COUSINS.  I WOULD EXPECT AT THAT POINT ONCE THAT'S

14   RESOLVED THERE'S GOING TO BE VERY LARGE PRODUCTION OF MATERIALS

15   TO THE DEFENDANTS.

16           **THE COURT:**  AND IN LIGHT OF THAT, OF COURSE, I'LL ASK

17   THE DEFENDANTS TO ADDRESS THIS ISSUE, WHEN WOULD THE GOVERNMENT

18   PROPOSE WOULD BE THE APPROPRIATE TIME TO COME BACK WITH RESPECT

19   TO THOSE DEFENDANTS WHOSE STATUS WE'VE CONSIDERING?

20           **MR. AXELROD:**  I THINK, IT WOULD BE APPROPRIATE TO COME

21   BACK PROBABLY THE END OF AUGUST, YOUR HONOR.  I THINK, THAT

22   WILL GIVE THE PARTIES SOME TIME TO START TO DIGEST ALL THE

23   MATERIALS AND WORK THROUGH ISSUES.  THAT'S A SUGGESTION.

24           **THE COURT:**  ALL RIGHT.  MR. WEINBERG, WHAT YOUR VIEW

25   ABOUT THAT?

1          **MR. WEINBERG:**  WE AGREE THE MATTER IS CURRENTLY

2     FOCUSED ON THE DISCOVERY ISSUES THAT ARE BEING LITIGATED BEFORE

3     MAGISTRATE COUSINS.

4          WE ASSUME WE'LL HAVE A RESOLUTION OF THAT SHORTLY

5     AFTER THE 20TH, AND THEN WE WERE THINKING ABOUT 60 DAYS FOR A

6     STATUS.

7          SO WE'VE IN AGREEMENT WITH THE GOVERNMENT'S PROPOSAL

8     AND WE WOULD SUGGEST STATUS DURING THE WEEK OF AUGUST 20TH.

9          **THE CLERK:**  YOUR UNAVAILABLE.  DISREGARD ME.

10          **THE COURT:**  AUGUST 20TH.  I NEVER DO THAT.

11          **THE CLERK:**  THE 23RD WOULD BE FINE.

12          **THE COURT:**  23RD?

13          **THE CLERK:**  YES.

14          **THE COURT:**  23RD.  THAT'S FINE.  MR. -- ARE THERE ANY

15     DEFENSE ATTORNEYS WHO HAVE A DIFFERENT VIEW ABOUT THAT DATE?

16          **MR. RAGLAND:**  THAT'S FINE WITH US.

17          **MR. FROELICH:**  THAT'S FINE.  THERE'S GOING TO BE A

18     TREMENDOUS AMOUNT OF DISCOVERY.  IT'S GOING TO TAKE AWHILE.

19     THAT WILL GIVE US SOME TIME TO GET INTO IT.  I THINK, IT'S IN

20     THE INTEREST OF JUSTICE.

21          **THE COURT:**  I HAVE A QUESTION, SINCE WE HAVE ALL

22     COUNSEL HERE, I DON'T KNOW, I TRULY HAVEN'T THOUGHT ABOUT

23     ASKING THIS QUESTION.

24          BUT AS THE DISCOVERY PROCESS GOES FORWARD AND, OF

25     COURSE, WITHOUT KNOWING THE OUTCOME OF THE MOTION THAT'S

1    PENDING, WHICH MAY OBVIOUSLY HAVE AN IMPACT, DOES THE

2    GOVERNMENT PLAN ON SUPPLYING THE MOVING DEFENDANTS WITH ANY

3    DISCOVERY UNTIL THAT MOTION -- THOSE MOTIONS ARE RESOLVED OR

4    THAT MOTION IS RESOLVED?

5         **MR. AXELROD:**  I THINK, IT'S THE GOVERNMENT'S POSITION

6    THAT WITH RESPECT TO THE MOVING DEFENDANTS, THE CHINESE

7    ENTITIES, THAT WE ARE NOT PROVIDING THEM ANY DISCOVERY PENDING

8    THE COURT'S RESOLUTION OF THIS MOTION, THE MOTION TO QUASH.

9         AND THAT IF -- DEPENDING ON THE RESOLUTION OF THAT

10   MOTION THEY'LL BE ADDITIONAL ISSUES VIS-A-VIS PROTECTIVE ORDER

11   TO WORK THROUGH WITH THOSE DEFENDANTS.

12        THEIR CIRCUMSTANCES ARE A LITTLE BIT DIFFERENT THAN

13   THE CO-DEFENDANTS THAT ARE HERE.

14        **THE COURT:**  ALL RIGHT.  WHERE'S MR. FELDMAN?

15        **MR. FELDMAN:**  SITTING DOWN, YOUR HONOR.

16        **THE COURT:**  DO YOU -- I KNOW YOU TO SOME EXTENT YOU

17   DON'T HAVE A DOG IN THE DISCOVERY RACE AT THIS POINT, BUT DO

18   YOU HAVE A DIFFERENT VIEW ABOUT YOUR CLIENT'S ENTITLEMENT TO

19   DISCOVERY WHILE THE MOTIONS ARE PENDING BUT NOT YET DECIDED?

20        **MR. FELDMAN:**  I HAVEN'T ACTUALLY THOUGHT ABOUT IT, BUT

21   MY INCLINATION WOULD BE TO SAY I DO NOT.

22        **THE COURT:**  ALL RIGHT.

23        **MR. FELDMAN:**  THE ONLY THING THAT I COULD IMAGINE, AND

24   I HAVEN'T THOUGHT ABOUT IT AS I WAS SITTING DOWN, IS THAT IT'S

25   POSSIBLE THAT WE MAY HAVE SOME VIEWS ABOUT THE SHARING OF OUR

1  INFORMATION THAT HAS BEEN SEIZED, BUT THAT WOULD NOT BE THE

2  SAME THING YOU ASKED ABOUT.

3          **THE COURT:**  GREAT.  WELL, I THINK, WHAT WILL HAPPEN IS

4  THAT ONCE THE COURT RESOLVES THE MOTION IN ITS ORDER IT WILL

5  SET A SCHEDULE, SET THE MATTER DOWN FOR SCHEDULING TO SEE

6  EITHER WAY WHERE WE GO FROM THERE, WHAT THE STATUS IS.

7          AS PART OF -- THAT'S TEED UP TO SOME EXTENT IN THE --

8  SOME OF THE COURT'S QUESTIONS TODAY.  AND I'VE GOTTEN SOME

9  AUTHORITY ON THAT POINT.

10         SO IS THERE ANYTHING FURTHER FROM THE NON-MOVING

11  PARTIES AT THIS POINT?

12         THERE IS, OF COURSE.  MR. WEINBERG, DO YOU THINK THIS

13  TIME IS PROPERLY, IF YOU COULD SPEAK ON BEHALF OF THE OTHERS,

14  PROPERLY EXCLUDED FROM SPEEDY TRIAL ACT CALCULATION?

15         **MR. WEINBERG:**  ABSOLUTELY, YOUR HONOR.  FOR THE

16  EFFECTIVE REPRESENTATION OF THE DEFENDANTS WE NEED TO GET THE

17  DISCOVERY, CONTINUITY OF COUNSEL AND EFFECTIVE REPRESENTATION.

18         **THE COURT:**  DO OTHER COUNSEL AGREE WITH THAT.

19         **MR. FROELICH:**  YES.

20         **MR. RAGLAND:**  YES.

21         **THE COURT:**  PREPARE THE ORDER?

22         **MR. AXELROD:**  I WILL.  YOUR HONOR, I'D ALSO JUST

23  REMIND THE PARTIES AND THE COURT THAT THE COURT HAS PREVIOUSLY

24  DECLARED THE MATTER COMPLEX AS WELL.

25         **THE COURT:**  DOES THAT OBVIATE THE NEED TO HAVE A

```
 1   FURTHER ORDER?

 2           MR. AXELROD:  NO, I THINK, IT'S HELPFUL TO HAVE THE

 3   ORDER FOR RECORD KEEPING PURPOSES.

 4           THE COURT:  WE CAN CITE THAT GROUND AS WELL.

 5           MR. AXELROD:  YES.

 6           THE COURT:  SO THE LAST QUESTION I HAVE WITH RESPECT

 7   TO THE NON-MOVING PARTIES.  I HAVEN'T THOUGHT ABOUT -- I

 8   HAVEN'T CONCLUDED WHETHER THE OTHER DEFENDANTS HAVE A RIGHT TO

 9   BE PRESENT, BUT BECAUSE THEY'RE PHYSICALLY HERE I WOULD ALLOW

10   THEM TO BE PRESENT.

11           MR. WEINBERG, DOES YOUR CLIENT WISH TO REMAIN DURING

12   THE MOTIONS HEARING?

13           MR. WEINBERG:  SHE DOES NOT WISH TO REMAIN.

14           THE COURT:  ALL RIGHT.  ANY OF THE OTHER --

15           MR. FROELICH:  WE MAY SIT HERE, DOESN'T WISH TO, WE

16   MAY SIT THROUGH PART OF IT.  MY CLIENT NOR I NEED TO REMAIN.

17           THE COURT:  OKAY.  YOU'RE OBVIOUSLY FREE TO REMAIN AND

18   THE ISSUE RELATES TO THE IN CUSTODY.

19           MR. RAGLAND:  MR. LIEW WILL STAY AND HEAR THE

20   ARGUMENT.

21           THE COURT:  VERY WELL.  I'LL ALLOW THAT TO HAPPEN.

22           AS TO THE OTHERS YOU'RE FREE TO STAY OR GO AS YOU

23   CHOSE.  BECAUSE, OBVIOUSLY, I DON'T KNOW THE EXTENT TO WHICH IT

24   EFFECTS YOUR CLIENTS, BUT YOU OBVIOUSLY HAVE A RIGHT TO BE

25   HERE.  WE'LL GO FORWARD.
```

1          ANYTHING FURTHER WITH RESPECT TO THE NON-MOVING

2     DEFENDANTS?

3               **MR. AXELROD:**  NO, YOUR HONOR.

4               **MR. HEMANN:**  NO, YOUR HONOR.

5               **THE COURT:**  THANK YOU VERY MUCH, COUNSEL.

6          I'M SORRY, MR. WEINBERG, I APOLOGIZE.  I MEANT TO DO

7     THIS.  AND I'VE BEEN DOING THIS IN MOST OF MY COMPLEX CASES.

8          I'D LIKE TO GET A STATUS REPORT ONE CALENDAR WEEK

9     BEFORE THE 23RD, SIGNED BY WHOEVER IS RELEVANT TO, IF YOU WILL,

10    AS TO WHAT'S GOING ON.  JUST SO I CAN BETTER PREPARE FOR THE

11    HEARING, AS TO WHAT'S COMING DOWN THE PIKE.

12         SO ON THE 16TH PLEASE SUBMIT A JOINT STATUS REPORT

13    TELLING THE COURT THE STATUS OF THE CASE.  ALL RIGHT.

14              **MR. RAGLAND:**  I THINK IT'S FINE WITH THE MARSHALS CAN

15    I ASK THE COURT PERMISSION FOR MR. LIEW TO SIT IN THESE CHAIRS

16    HERE -- I DON'T WANT TO GET IN THEIR WAY.  MAYBE SIT RIGHT HERE

17    BY THE WATER COOLER.

18              **THE COURT:**  IS THAT ACCEPTABLE, MR. MARSHAL?

19              **THE MARSHAL:**  YES, YOUR HONOR.

20              **THE COURT:**  GRANTED.

21              **MR. FROELICH:**  DID YOU SET A TIME FOR THE 23RD?

22              **MR. FELDMAN:**  IT'S ALSO 2:00 O'CLOCK.

23              **MR. FROELICH:**  THANK YOU VERY MUCH.

24              **MR. HEMANN:**  CAN THE INTERPRETER CAN BE EXCUSED GIVEN

25    MS. LIEU IS NOT STAYING FOR THE HEARING?

1          **THE COURT:**  DOES MR. LIEW NEED --

2          **MR. HEMANN:**  NO, YOUR HONOR.

3          **THE COURT:**  YES, SHE'S EXCUSED.  THANK YOU VERY MUCH.

4          ALL RIGHT.  SO ON TO THE MOTIONS.  I WANT TO MAKE SURE

5   BOTH SIDES RECEIVED THE COPY OF THE COURT'S NOTICE OF THE

6   QUESTIONS.

7          **MR. RAGLAND:**  YES, YOUR HONOR.

8          **MR. AXELROD:**  WE HAVE.

9          **THE COURT:**  AND IN THE INTERIM THE COURT DID RECEIVE

10  SOME ADDITIONAL AUTHORITY FROM THE DEFENDANTS WHICH I HAVE

11  CONSIDERED, BUT I WOULD APPRECIATE AS THE ARGUMENT PROCEEDS FOR

12  COUNSEL TO PLEASE INCORPORATE THE NEWER AUTHORITY WITH THE PIN

13  CITES BECAUSE I CAN READ IT THESE CASES.

14          I HAVE READ THEM, BUT FIGURING OUT EXACTLY THE PRECISE

15  PURPOSE FOR WHICH THEY'RE BEING URGED ON THE COURT WOULD BE --

16  IS NOT ALWAYS FULLY APPARENT TO THE COURT.

17          SO AND THE WAY FOR THOSE OF YOU WHO MAY NOT HAVE BEEN

18  ARGUING IN THIS COURT IF YOU'RE NOT -- DON'T DO CIVIL WORK YOU

19  DON'T SEE QUESTIONS IN ADVANCE, BUT I TEND TO DO IT IN ALL MY

20  PROCEEDINGS.

21          I CONTROL THE AGENDA HERE, SO YOU ANSWER THE QUESTIONS

22  AND THEN YOU MOVE ONTO THE NEXT ONE.

23          IT'S NOT -- IN OTHER WORDS, I'M NOT SAYING THAT

24  LIGHTLY OR FACETIOUSLY, I READ YOUR PAPERS, VERY INTERESTING

25  ISSUES, I READ THE PAPERS AND THE AUTHORITIES, SO THESE ARE THE

1  QUESTIONS RIGHT OR WRONG THAT I NEED TO MAKE UP MY MIND.  MAYBE

2  THE WRONG QUESTIONS, BUT YOU CAN'T TELL ME THAT.

3          BUT YOU CAN'T REFRAME THE QUESTION OR REFRAME PREMISE,

4  BUT THEN I'LL GIVE YOU AN OPPORTUNITY IF YOU WANT TO ARGUE AT

5  THE END OF THE QUESTION, YOU KNOW, THE COURT'S PREMISE MAYBE

6  NOT WANT TO AGREE WITH THAT'S PERFECTLY OKAY, BUT I WANT TO

7  STICK WITHIN SPECIFIC CONTOUR TO THESE QUESTIONS.

8          AND THEN AT THE END IF ANYBODY IS JUST BURSTING TO SAY

9  SOMETHING THAT WE MISSED THAT YOU THINK WASN'T IN YOUR PAPERS

10  OR WASN'T EMPHASIZED, THEN I'LL GIVE YOU A CHANCE TO DO SO,

11  IT'S AN IMPORTANT MATTER.

12          IT'S PRETTY CLEAR THE WAY I CONDUCT THESE PROCEEDINGS,

13  OBVIOUSLY, I HAVE TO START SOMEPLACE, IT'S PRETTY CLEAR FROM

14  THE QUESTIONS, AND I'LL MAKE IT EVEN CLEARER, WHO GOES FIRST,

15  AND THEN I'LL GIVE BOTH SIDES A CHANCE TO GO BACK AND FORTH

16  UNTIL I FEEL I HAVE ENOUGH, THEN WE'LL MOVE ONTO THE NEXT

17  QUESTION.

18          THESE AREN'T TRICK QUESTIONS.  SOME OF THEM ARE YES OR

19  NO QUESTION.  LIKE THE FIRST ONE, FOR EXAMPLE.  LET'S START

20  WITH THE FIRST QUESTION.

21          **MR. AXELROD:**  YES.

22          **THE COURT:**  DO YOU AGREE WITH THAT?

23          **MR. RAGLAND:**  I DO.

24          **THE COURT:**  SEE WE'VE MOVING ALONG HERE.  IF THE REST

25  GOES THIS EASILY WE WILL ALL GET ALONG VERY WELL.

```
 1          SO QUESTION NUMBER TWO.  AND, OF COURSE, THE MLAA THAT

 2    I'M REFERRING IS MUTUAL LEGAL ASSISTANCE AGREEMENT, AND SO THE

 3    FIRST QUESTION FOR THE GOVERNMENT IS:

 4          DID YOU ATTEMPT TO SERVE THE PANGANG DEFENDANTS UNDER

 5    THE MLAA WITH THE PRC?

 6          MR. AXELROD:  NO.

 7          THE COURT:  DO YOU AGREE WITH THAT?

 8          MS. RODDY:  YES.

 9          THE COURT:  COULD YOU RESTATE YOUR APPEARANCE?

10          MS. RODDY:  VALARIE RONNEY.

11          THE COURT:  THANK YOU VERY MUCH.

12          SO THEN THE NEXT QUESTION 2B IS NOT A YES OR NO

13    QUESTION.  LET ME ASK YOU -- I HAVE A POP QUIZ QUESTION, THAT

14    IS:  WHY DIDN'T YOU ATTEMPT TO SERVE UNDER THE MLAA?

15          MR. AXELROD:  THANK YOU, YOUR HONOR.

16          I THINK, THAT'S GOING TO ADDRESS SOME OF THESE OTHER

17    QUESTIONS IN 2B.  ESSENTIALLY THE SHORT ANSWER IS, BECAUSE IT

18    WOULD BE FUTILE.  I'D LIKE TO EXPLAIN THAT NOW.

19          THE COURT:  LET'S WAIT UNTIL WE GET TO 2B NOW.  IT'S

20    INCORPORATED.  I WAS BURNING TO ASK IT, COULDN'T WAIT.

21          SO QUESTION B:  WHAT -- DO YOU HAVE ANY AUTHORITY WITH

22    RESPECT TO THOSE TERMS NOT TO BE OBLIGATED OR AS BEING

23    CONSTRUED TO BE PRECLUDED?

24          MR. AXELROD:  WHAT I HAVE IS THE GUIDANCE OF THE

25    OFFICE OF INTERNATIONAL AFFAIRS WHICH, OF COURSE, IS THE
```

1    COMPONENT OF THE DEPARTMENT OF JUSTICE THAT HAS THE

2    RESPONSIBILITY FOR THE EXPERTISE IN ALL MATTERS OF

3    INTERNATIONAL COOPERATION, SO I'M HAPPY TO --

4            **THE COURT:**  WHY DON'T YOU TELL ME WHAT YOU THINK THAT

5    AUTHORITY STANDS FOR?

6            **MR. AXELROD:**  SO THE AGREEMENT SAYS WHAT IT SAYS, AND

7    IN THAT REGARD THE LANGUAGE THAT THE COURT IS INTERESTED IN,

8    NOT BE OBLIGATED TO EFFECT SERVICE DOES NOT MEAN PRECLUDED.  IT

9    DOES NOT MEAN THAT THE UNITED STATES IS PRECLUDED FROM ASKING

10   THE CHINESE AUTHORITIES TO EFFECT SERVICE.

11           BUT THAT'S -- THAT ONLY GOES SO FAR BECAUSE THE

12   QUESTION IS WHAT WOULD HAPPEN IF WE DID.  AND IT'S THE -- AND

13   WHAT I'M GOING TO SAY NOW I ALSO MAKE AS AN OFFER OF PROOF FOR

14   THE COURT'S CONSIDERATION, AND THAT IS THAT BASED ON THE

15   LANGUAGE OF THAT AGREEMENT, AND THE -- THIS NOT OBLIGATE TO

16   EFFECT SERVICE, COUPLED WITH THE EXPERIENCE IN THE RELATIONSHIP

17   WITH THE CHINESE AUTHORITIES, IT'S THE JUDGMENT OF OIA THAT IF

18   WE ASK THE CHINESE AUTHORITIES TO EFFECT SERVICE IN THE CASE

19   THEY WOULD NOT DO SO.

20           THEY HAVE THE DISCRETION NOT TO DO SO.  THAT'S WHAT

21   THE LANGUAGE THAT THE COURT INTERESTED IN MEANS AND IT'S THE

22   JUDGMENT OF THE DEPARTMENT THAT THEY WOULD NOT EFFECT SERVICE.

23           **THE COURT:**  IS THAT JUDGMENT BINDING ON THIS COURT OR

24   IS -- WHY SHOULD IT BE AUTHORITATIVE?  WE'RE IN COURT THIS IS

25   NOT ADMINISTRATIVE PROCEEDING, WHY IS THEIR JUDGMENT IN ANY

1    WAY -- MAYBE PERSUASIVE, BUT IS IT BINDING ON THE COURT?

2            **MR. AXELROD:**  I'M NOT SUGGESTING IT'S BINDING ON THE

3    COURT.  WHAT I AM SAYING IS, THAT IS THE -- THAT SORT OF THE

4    SUM TOTAL OF THE DEPARTMENT'S PERSPECTIVE, AND THEY'RE THE

5    ONES -- WE, THE DEPARTMENT, ARE THE ONES WHO ARE IN THIS

6    AGREEMENT WITH THE CHINESE AUTHORITIES, WE HAVE THE EXPERTISE

7    AND EXPERIENCE IN WORKING THROUGH IT.

8            SO THAT IS THE DEPARTMENT'S PERSPECTIVE ON THIS AND,

9    YOU KNOW, I THINK THAT'S WHERE THE MATTER STANDS.

10           **THE COURT:**  IF YOU SAY, YOU STARTED BY SAYING THIS IS

11   IN THE NATURE OF AN OFFER OF PROOF --

12           **MR. AXELROD:**  THAT'S CORRECT.

13           **THE COURT:**  -- THAT SIGNALS ME IT'S NOT IN THE CURRENT

14   RECORD, CORRECT?

15           **MR. AXELROD:**  THAT'S CORRECT.

16           **THE COURT:**  WHAT IS -- IS THERE A SPECIFIC DOCUMENT

17   THAT YOU HAVE REFERENCE TO?

18           **MR. AXELROD:**  WELL, WE HAVE THE AGREEMENT IN THE --

19   THE AGREEMENT IN THE RECORD BECAUSE WE MADE AN EXHIBIT.  THERE

20   IS NO DECLARATION FROM THE OFFICE OF INTERNATIONAL AFFAIRS,

21   ALTHOUGH IF THAT IS IMPORTANT TO THE COURT THAT'S SOMETHING

22   THAT WE COULD OBTAIN.

23           **THE COURT:**  BUT YOU'RE NOT SAYING THERE SOME SORT OF

24   ADMINISTRATIVE RULING OR REGULATION?

25           **MR. AXELROD:**  NO, I'M NOT SAYING THAT.

1          **THE COURT:**  THIS IS AN OPINION OF SOME REPRESENTATIVE

2    OF THAT AGENCY?

3          **MR. AXELROD:**  CORRECT.

4          **THE COURT:**  AND YOU'VE SPOKEN TO THEM AND THAT'S WHAT

5    YOU'RE REPRESENTING TO THE COURT?

6          **MR. AXELROD:**  THAT IS CORRECT.

7          **THE COURT:**  ALL RIGHT.  MS. RODDY, WOULD YOU LIKE TO

8    RESPOND?

9          **MS. RODDY:**  YES, YOUR HONOR.  I WOULD POINT OUT THAT

10   AND IN ADDITION TO THE LANGUAGE IN ARTICLE 8, AND WE AGREE

11   COMPLETELY WITH THE GOVERNMENT THAT THERE IS NO AUTHORITY THAT

12   NOT BEING OBLIGATED TO DO SOMETHING MEANS YOU'RE PRECLUDED.

13         BUT ARTICLE 21 IN THAT SAME AGREEMENT ALSO SAYS THAT

14   THE PARTIES MAY ALSO PROVIDE ASSISTANCE PURSUANT TO ANY OTHER

15   ARRANGEMENT, AGREEMENT OR PRACTICE.

16         AND THE PANGANG DEFENDANTS HAVE SUBMITTED A COUPLE OF

17   LARGE VIEW NOTES THAT DEAL WITH THE ISSUE OF EXTRADITION

18   RELATIONS BETWEEN THE UNITED STATES AND CHINA WHICH WAS THE

19   CLOSEST WE COULD GET IN TERMS OF AUTHORITY IS EXTRADITION OF

20   INDIVIDUALS.

21         **THE COURT:**  THERE IS AN EXTRADITION TREATY?

22         **MS. RODDY:**  THERE IS NO EXTRADITION.

23         **THE COURT:**  THAT'S WHAT I UNDERSTOOD THE ARTICLES TO

24   SAY.

25         **MS. RODDY:**  CORRECT.  THERE SO NO EXTRADITION TREATY

1    BETWEEN THE UNITED STATES AND CHINA, MORE BECAUSE OF THE UNITED

2    STATE'S POSITIONS THEN BECAUSE OF CHINA'S.

3         CHINA IS MORE ENTHUSIASTIC ABOUT PARTICIPATING IN

4    INTERNATIONAL CRIMINAL JUSTICE COOPERATION THAN THE U.S. WHEN

5    IT COMES TO CHINA.

6         BUT WHAT THOSE ARTICLES -- OR THOSE NOTES DO SHOW

7    THROUGH ANTIDOTAL EVIDENCE IS THAT BEFORE AND AFTER THE MLAA

8    WAS EXECUTED THE U.S. AND CHINA HAD BOTH PARTICIPATED

9    INFORMALLY ON AN AD HOC BASIS IN WORKING TOGETHER WITH

10   EXTRADITION, AND BOTH HAVE RETURNED SUSPECTS TO THE OTHER

11   COUNTRY.

12        SO I'M NOT SURE THAT IT'S CONCLUSIVE THAT JUST BECAUSE

13   THE CHINESE GOVERNMENT HAS DISCRETION UNDER THE MLAA THAT IT

14   NECESSARILY MEANS THAT IT WOULD BE FUTILE TO ASK THE CHINESE

15   GOVERNMENT.

16        **THE COURT:**  YOU'RE ARGUING BY ANALOGY THIS TREATY?

17        **MS. RODDY:**  IT'S NOT -- THERE'S NO TREATY.

18        **THE COURT:**  THE AGREEMENT?

19        **MS. RODDY:**  YES.

20        **THE COURT:**  THE MLAA?

21        **MS. RODDY:**  RIGHT.  ATTEMPTING TO ASK THE CHINESE

22   GOVERNMENT, THE LANGUAGE IN THE AGREEMENT IN NO WAY MEANS THAT

23   IT'S A FORGONE CONCLUSION THAT THE CHINESE GOVERNMENT WOULD SAY

24   NO OR THAT EFFORTS TO APPROACH THE CHINESE GOVERNMENT WOULD BE

25   FUTILE.

1          **THE COURT:**  WANT TO REPLY TO THAT?

2          **MR. AXELROD:**  I DO.  A COUPLE POINTS.

3          FIRST OF ALL, THE -- I THINK, THAT THE DEPARTMENT'S

4    POSITION IS ENTITLED TO SOME DEFERENCE BECAUSE THIS AGREEMENT

5    SPECIFICALLY SAYS IT DOESN'T CREATE ANY RIGHTS ANY PRIVATE

6    PARTIES, IT'S AN AGREEMENT BETWEEN THE GOVERNMENT OF THE UNITED

7    STATES AND THE GOVERNMENT OF CHINA.

8          AND SO, YOU KNOW, THE UNITED STATES IS ENGAGED AND IN

9    THE PRACTICE OF THIS RELATIONSHIP AND THE USE OF THIS

10   AGREEMENT, AND SO THE FACT THERE'S A THEORETICAL POSSIBILITY

11   THAT WE COULD MAKE THE REQUEST EXIST, BUT IT'S GOT TO BE

12   BALANCED AGAINST THE CONSIDERED JUDGMENT OF THE DEPARTMENT WHO

13   ROUTINELY IS ENGAGED IN THESE BACK AND FORTH WITH THE CHINESE

14   AUTHORITIES.

15         I ALSO THINK THAT, YOU KNOW, IN LOOKING AT THE LAW

16   REVIEW ARTICLES, SURE IT'S ONE THING TO FIND, YOU KNOW, ONE

17   EXAMPLE OF AN EXTRADITION WHERE THERE'S A MUTUALLY BENEFICIAL

18   INTEREST, IT'S QUITE ANOTHER TO IMAGINE IT IN THE CONTEXT OF

19   THIS PARTICULAR CASE WHERE THE ALLEGATIONS IN THE INDICTMENT

20   ARE THE VERY ENTITIES THAT ARE HERE BEFORE THE COURT ARE

21   CONTROLLED BY THE CHINESE GOVERNMENT.

22         **THE COURT:**  MS. RODDY, LET ME ASK YOU A QUESTION.

23   GOVERNMENT COUNSEL HAS MADE AN OFFER OF PROOF -- PROFFER WITH

24   RESPECT TO THE OFFICIAL GOVERNMENT POSITION FROM THE AGENCY WHO

25   HAS JURISDICTION, WHAT IS THE DEFENDANT'S POSITION WITH RESPECT

1  TO THE WEIGHT TO BE GIVEN OR WHETHER I SHOULD BE EVEN ALLOW THE

2  GOVERNMENT TO FILE SOMETHING OF THAT ILK?

3  **MS. RODDY:**  YOUR HONOR, IT'S CERTAINLY SOMETHING TO BE

4  CONSIDERED.  I AGREE THAT IT IS.  I AGREE WITH MR. AXELROD IT'S

5  NOT BINDING ON THIS COURT IN ANY WAY, AND IT DOES SOUND IT, AS

6  HE MENTIONED, IT'S THEIR OPINION OF WHAT WOULD HAPPEN IF THEY

7  TRIED TO USE THESE EXISTING CHANNELS.

8  **THE COURT:**  ALL RIGHT.  I UNDERSTAND.

9  YES.

10  **MR. AXELROD:**  JUST ON THIS ISSUE OF SERVICE I JUST

11  WANT TO POINT OUT TO THE COURT THAT EVEN IF, AS I UNDERSTAND, I

12  DON'T WANT TO RUN AFOUL OF THE COURT'S RULING, SO PLEASE STOP

13  ME IF I'M GOING TOO FAR, BUT IT SEEMS TO ME THAT UNDER THE

14  DEFENDANT'S ARGUMENT EVEN IF WE WERE TO EFFECT SERVICE, EVEN IF

15  THE CHINESE SERVE THESE PEOPLE IN CHINA, THE DEFENSE WOULD

16  STILL SAY THAT'S INSUFFICIENT UNDER RULE 4.

17  IN OTHER WORDS, EVEN IF YOU GO TO THAT TROUBLE AND

18  EVEN IF THE CHINESE WERE TO DO IT WOULDN'T MAKE A DIFFERENCE

19  BECAUSE YOU STILL WOULDN'T SATISFY RULE 4.

20  SO THERE'S A, I THINK, THAT'S PART OF THIS AND THAT'S

21  PROBLEMATIC.

22  **THE COURT:**  ALL RIGHT.  I'LL CHANGE WHAT I SAID

23  BEFORE, WHAT'S YOUR RESPONSE TO THAT?

24  **MS. RODDY:**  WELL, I THINK, WHAT HE'S GETTING AT IS,

25  REGARDLESS, I THINK WHAT THE GOVERNMENT IS SAYING, REGARDLESS

```
1    IT WOULD BE FUTILE.  THAT THEY'RE NEVER GOING TO BE ABLE TO

2    MEET THE REQUIREMENTS OF RULE 4.

3            THE COURT:  I THINK, THEY'RE SAYING THAT YOU'RE SAYING

4    IT --

5            MS. RODDY:  FAIR ENOUGH.

6            THE COURT:  DO YOU AGREE THAT, LET'S ASSUME THE

7    GOVERNMENT IS WRONG AND THE GOVERNMENT WERE TO EFFECT SERVICE

8    ON THE MLAA, THAT -- BECAUSE I DON'T -- I THINK THE DEFENDANTS

9    SORT OF HAS TO TAKE A POSITION HERE, WOULD YOUR POSITION -- AND

10   I DON'T WANT TO GO THROUGH ANOTHER ROUND OF MOTIONS FOR

11   NOTHING, SO LET'S SEE WHAT WERE REALLY DEALING WITH.

12           MR. FELDMAN.

13           MR. FELDMAN:  YOUR HONOR, TO BE AS CANDID I HAVE TO BE

14   WITH YOUR HONOR, I DON'T KNOW THE ANSWER TO THAT QUESTION.  I

15   REALLY DO NOT.  I ABSOLUTELY DO NOT.

16           SO I SEE NO AUTHORITY ABOUT IT.  DON'T KNOW ANYTHING

17   ABOUT IT.  NOT BEFORE YOU TODAY.

18           THE COURT:  ALL RIGHT.

19           MR. AXELROD:  I JUST WANT TO MAKE IT CLEAR BECAUSE THE

20   ARGUMENT, AS I UNDERSTAND IT FROM THE DEFENSE, IS LOOK RULE 4

21   HAS TWO COMPONENTS, RIGHT?

22           ONE IS YOU GOT TO SERVE THE MANAGING AGENT, GENERAL

23   AGENT, ET CETERA, AND THE OTHER IS THIS MAILING REQUIREMENT.

24   YOU GOT TO MAIL TO THE PRINCIPLE PLACE OF BUSINESS IN THE

25   UNITED STATES OR IN THE DISTRICT.
```

1          AND IT SEEMS TO ME BY THE ARGUMENT THAT THEY'VE MADE

2     AND THE LOGICAL EXTENSION OF THAT ARGUMENT IS, WELL, MAYBE,

3     MAYBE, AND THE CASE THAT THEY CITED, YOU KNOW, AND THIS DOESN'T

4     SAY MAKING SERVICE THROUGH THE TREATY WOULD ACTUALLY BE

5     SUFFICIENT, BUT MAYBE YOU MAKE -- YOU EFFECT SERVICE THROUGH

6     THE TREATY, THEY'RE SERVED, BUT YOU DON'T GET THERE ANYWAY

7     BECAUSE THEY DON'T HAVE PRINCIPLE PLACE OF BUSINESS IN THE

8     UNITED STATES.

9          NOW, WE ENTIRELY DISAGREE WITH THE EXISTENCE OF

10    PRINCIPLE PLACE OF BUSINESS IN THE UNITED STATES, BUT THAT'S

11    THEIR POSITION.

12         SO IT SEEMS TO ME THE LOGICAL NEXT STEP FROM THAT

13    POSITION IS, WELL, YEAH, YOU CAN GO THROUGH THIS TROUBLE TO

14    EFFECT SERVICE IN CHINA AND IT WOULDN'T MAKE A DIFFERENCE WE'D

15    STILL BE RIGHT BACK HERE BEFORE THE COURT ARGUING ABOUT THE

16    SAME ISSUES.

17         **THE COURT:**  LET'S ARGUE ABOUT WHAT WE HAVE NOW AND

18    WE'LL WORRY ABOUT THAT IF WE EVER HAVE TO DO IT AGAIN.

19         QUESTION 1C, THE COURT ASKED ABOUT ALTERNATIVE MEANS

20    BY WHICH THE GOVERNMENT COULD ATTEMPT TO EFFECT SERVICE ON

21    PANGANG DEFENDANTS?

22         **MR. AXELROD:**  RIGHT.  THE ANSWER THERE IS THERE ARE NO

23    ALTERNATIVE MEANS.  THE COURT INDICATED ONE IS ROGATORY AND THE

24    WAY I'VE EXPLAINED IT IS THIS.

25         YOU HAVE -- THERE'S THE MUTUAL LEGAL ASSISTANCE

1    AGREEMENT, RIGHT, THERE'S THE EXECUTIVE BRANCH TREATY WITH THE

2    CHINESE AUTHORITIES, AND THAT'S A LEGALLY BINDING AGREEMENT

3    WHICH REQUIRES THE PARTIES TO DO CERTAIN THINGS.

4            AND WITH RESPECT TO THE PROVISION THAT WE'VE

5    INTERESTED IN, IT INVESTS IN THE PARTIES THE DISCRETION WHETHER

6    TO EFFECT SERVICE OR NOT.

7            STEP DOWN.  THEN YOU'RE AT THE LETTERS ROGATORY

8    PROCESS.  THE LETTERS ROGATORY IS AN ENTIRELY DISCRETIONARY

9    PROCESS.  IT IS A JUDICIAL CREATURE THAT'S BASED ON PRINCIPLES

10   OF COMEDY, AND SO THERE'S NO -- THERE'S MUCH LESS GUARANTEE OR

11   ASSURE THAT ANYTHING IS GOING TO BE DONE IN THE LETTER ROGATORY

12   CONTEXT BECAUSE YOU'RE IN AN ENTIRELY DISCRETIONARY REALM.

13           PUT DIFFERENTLY IF THEY'RE NOT GOING TO DO IT UNDER

14   TREATY THEY'RE NOT GOING TO DO IT UNDER LETTER ROGATORY.  THAT,

15   AGAIN, THAT IS THE EXPERIENCE OF THE DEPARTMENT, NOT JUST IN

16   THE CONTEXT OF CHINA, BUT IN THE CONTEXT OF ITS RELATIONS

17   GENERALLY.

18           **THE COURT:**  THE QUESTION IS, LET ME SEE IF I CAN

19   RECHARACTERIZE YOUR ANSWER AND I'LL LET YOU CORRECT THE COURT

20   IF I'M WRONG.

21           THERE ARE ALTERNATE MEANS BY WHICH THE GOVERNMENT

22   COULD HAVE ATTEMPTED TO EFFECT LEGAL PROCESS, BUT YOU'RE

23   SAYING, EG THE LETTERS ROGATORY, BUT THAT AS WELL WOULD BE

24   YOU'RE SAYING EVEN MORE FUTILE ACT THEN TRYING TO GO UNDER THE

25   MLAA?

1          **MR. AXELROD:**  THAT'S CORRECT.

2          **THE COURT:**  MS. RODDY.

3          **MS. RODDY:**  YOUR HONOR --

4          **THE COURT:**  HERE YOU'RE BACK IS AGAINST THE WALL A

5     LITTLE BIT BECAUSE IF YOU SAY TO ME, SURE, THEY COULD HAVE DONE

6     IT THIS WAY, THEN THEY GO AND DO IT THAT WAY AND THEY'RE

7     SUCCESSFUL, YOUR MAKE AN ADMISSION -- A JUDICIAL ESTOPPEL ON

8     THE PART OF YOUR CLIENT, POSSIBLY, I DON'T KNOW, BUT THAT'S WHY

9     I NEED A VERY DIRECT ANSWER FROM YOU.

10         **MS. RODDY:**  YOUR HONOR, WE WOULD AGREE WITH

11    MR. AXELROD'S STATEMENT REGARDING HOW LETTERS ROGATORY WORK,

12    AND WE ARE -- LIKE THE GOVERNMENT WE ARE NOT AWARE OF ANY

13    MECHANISM THAT EXISTS THAT WOULD REQUIRE CHINA TO SERVE OUR

14    CLIENTS.

15         **THE COURT:**  SO YOU DON'T THINK IT'S DISPOSITIVE THAT

16    THERE MAYBE THIS OTHER METHOD OUT THERE, DISPOSITIVE OF THIS

17    MOTION, THAT THERE MAYBE THIS OTHER WAY OUT THERE THAT MAY --

18    WHERE THE GOVERNMENT MIGHT IN ITS WISDOM THE CHINESE GOVERNMENT

19    MIGHT AGREE TO ACCEPT SERVICE.  THAT DOESN'T REALLY -- CONTROL

20    THE OUTCOME OF THIS MOTION.

21         **MS. RODDY:**  EXACTLY.  I THINK, BOTH SIDES OF THAT

22    POINT ARE TRUE.  WHEN WE'RE TALKING ABOUT FUTILITY, FROM OUR

23    PERSPECTIVE FUTILITY, THE EXISTENCE OF IT DOES NOT GET US TO A

24    POINT WHERE THE REQUIREMENTS OF RULE 4 DON'T HAVE TO BE

25    COMPLIED WITH.

1       **THE COURT:**  SO WHEN YOUR STRIP IT ALL DOWN THE

2   DEFENDANTS THEY'RE ESSENTIALLY SAYING THE GOVERNMENT'S OUT OF

3   LUCK, THERE REALLY ISN'T ANYWAY GIVEN THE FACTS OF THIS CASE BY

4   WHICH THEY COULD BRING THE PANGANG DEFENDANTS BEFORE THIS

5   COURT?

6       **MS. RODDY:**  I THINK, THAT OVERSTATES THE POSITIONS

7   SLIGHTLY, IN THAT THEIR METHOD, THERE'S AVENUES THAT THE

8   GOVERNMENT COULD HAVE PURSUED UNDER THE MLAA.

9       WE HAVE THE PROFFERED OPINION OF THEIR OFFICE OF

10  INTERNATIONAL AFFAIRS.  THAT IS AN OPINION, BUT WE DON'T KNOW

11  IF THEY TRIED THIS EXISTING AVENUE.

12      AND IT'S ALSO UNCLEAR THE OFFICE OF INTERNATIONAL

13  AFFAIRS WORKS VERY CLOSELY WITH THE SECRETARY OF STATE, I

14  THINK, THESE ARE ISSUES THAT WE ADDRESSED IN OUR PAPERS, BUT

15  THE -- THIS IS REALLY A MUCH LARGER ISSUE.

16      AND I'M NOT SURE IF THEY CONSULTED WITH THE DEPARTMENT

17  OF STATE OR OTHER ENTITIES ABOUT HOW TO MAKE THIS HAPPEN WITH

18  THE CHINESE GOVERNMENT.  BUT WE DO AGREE THAT THERE IS NOTHING

19  THAT WOULD COMPEL CHINA TO COMPLY.

20      **THE COURT:**  WANT TO SAY SOMETHING?

21      **MR. AXELROD:**  I DON'T UNDERSTAND THAT LAST POINT

22  BECAUSE THERE IS A LEGALLY BINDING AGREEMENT BETWEEN THE TWO

23  GOVERNMENTS.  THE OFFICE OF INTERNATIONAL AFFAIRS IS THE

24  COMPETENT AUTHORITY FROM THE UNITED STATES, THEY DEAL WITH THIS

25  ALL THE TIME, THEY HAVE THE EXPERTISE.

1    THERE'S NO OTHER AVENUE TO GO DOWN.  I DON'T

2  UNDERSTAND THE STATE DEPARTMENT ISSUES.  I MEAN, THERE'S AN

3  AGREEMENT, IT HAS CERTAIN PROVISIONS, THAT'S THE LANDSCAPE.

4    **THE COURT:**  THE LANDSCAPE IS ALSO THAT THE DEPARTMENT

5  OF INTERNATIONAL AFFAIRS BELIEVES THAT THE CHINESE ARE NOT

6  REQUIRED TO COMPLY WITH THE MLAA.

7    **MR. AXELROD:**  WITH RESPECT TO THAT PROVISION, THAT'S

8  CORRECT.  THEY HAVE THE DISCRETION.

9    **THE COURT:**  LET'S MOVE ONTO QUESTION NUMBER THREE AND

10  START WITH THE GOVERNMENT HERE.  THIS HAS TO DO WITH THE

11  ARGUMENT MADE OR THE HOLDING OF THE KRAMER MOTORS CASE WITH

12  RESPECT TO THE FACT THERE -- ALLEGEDLY A GOVERNMENT ENTITY

13  INVOLVED IN THIS CASE AND HOW THAT MIGHT IMPACT THE COURT'S

14  RULING.

15    **MR. HEMANN:**  SO, YOUR HONOR, WE THINK THE ANSWER TO

16  THE COURT'S QUESTION IS NO.

17    AND THE REASON FOR THAT, IS THAT THE KRAMER -- THE

18  SECTION OF THE KRAMER DECISION THE COURT REFERS TO RAISES A

19  JURISDICTIONAL ISSUE UNDER CIRCUMSTANCES THAT ARE NOT PRESENT

20  IN THIS CASE.

21    AS I UNDERSTAND THE KRAMER OPINION IT HAD TO DO WITH A

22  STATEMENT MADE BY A COURT IN THE SECOND CIRCUIT WITH REGARD TO

23  A -- I'M SORRY, THE NINTH CIRCUIT, WITH REGARD TO A

24  CIRCUMSTANCE THAT ARISES UNDER THE FOREIGN ACTS WITH FORUM

25  AFFECTS JURISDICTIONAL PRINCIPLE.

1          AND THAT IS NOT WHAT IS AT ISSUE IN THIS CASE.  WE

2   DON'T HAVE A SITUATION IN WHICH OUR CASE RESTS IN ANY WAY ON

3   FOREIGN ACTIONS THAT HAVE AN EFFECT IN THE UNITED STATES.

4          SO WE THINK WE'RE OUT OF THE REALM THAT THE COURTS ARE

5   TALKING ABOUT CONSIDERING THE IMPACT OF THE OWNERSHIP OF THE

6   DEFENDANTS BY THE CHINESE GOVERNMENT AS IT'S RAISED IN THE

7   KRAMER CASE.  OKAY.

8          NOW, OBVIOUSLY, WE ARE ALLEGING IN THE COMPLAINT OR IN

9   THE INDICTMENT, IT'S IN THE VERY NATURE OF THE ECONOMIC

10  ESPIONAGE ACT CHARGES, THAT A FOREIGN GOVERNMENT WAS THE

11  BENEFICIARY OF THE THEFT OF TRADE SECRETS.  IT'S PART AND

12  PARCEL OF THE CHARGES.

13         AND SO CONGRESS CLEARLY GAVE SOME THOUGHT TO THE IDEA

14  THAT SOME FOREIGN DECISION MAKING WAS AT ISSUE AND THAT THAT --

15  THOSE ISSUES WOULD BE LITIGATED IN U.S. COURTS.  PART OF THE

16  ISSUE.

17         NOW, WHETHER WE CAN BRING THESE DEFENDANTS INTO THIS

18  COURT WE THINK IS NOT A MATTER FOR RULE 4 IN TERMS OF SERVICE.

19  PARTICULARLY THE WAY THAT WE HAVE ATTEMPTED TO EFFECT SERVICE

20  THROUGH A COMMERCIAL SUBSIDIARY IN THE UNITED STATES.

21         **THE COURT:**  LATER TIME.  GOD FORBID WE HAVE MORE

22  MOTIONS.

23         **MR. HEMANN:**  GOD FORBID WE HAVE MORE MOTIONS.

24         **THE COURT:**  THAT ISSUE IS RAISED, LET'S SAY, THE COURT

25  FIND SERVICE WAS PROPER, COULD BE PROPER, THEY'RE NOT, AT

1    LEAST, THE COURT WILL HAVE RULED THERE'S VALID SERVICE.

2            I'M ASSUMING THAT STANDS AND THE DEFENDANTS THEN MOVE

3    TO DISMISS THE INDICTMENT FOR LACK OF PERSONAL JURISDICTION,

4    THEN YOU'RE SAYING THE KRAMER DECISION MIGHT COME INTO PLAY?

5            **MR. HEMANN:** IT MIGHT.  IF THE PREMISE FOR EXERCISING

6    JURISDICTION IS FOREIGN ACTS WITH A DOMESTIC EFFECT, WHICH IS

7    WHAT I UNDERSTAND THE KRAMER DECISION TO BE FOCUSED ON.

8            OUR CASE OUR JURISDICTIONAL ARGUMENT WOULD BE THAT

9    IT'S BASED ON CONTACTS WITH -- DIRECT CONTACTS WITH THE UNITED

10   STATES NOT, YOU KNOW, YOU CAN IMAGINE MOST OF THE PERSONAL

11   JURISDICTION CASES INVOLVING OVERSEAS DEFENDANTS ARE A PRODUCT

12   DESIGN IN SOME OTHER COUNTRY THAT 10 YEARS LATER HAS A CAR

13   ACCIDENT HAPPENING IN INDIANA AND WHETHER THAT FOREIGN DECISION

14   CAN BRING THE DEFENDANT INTO THE STATE OF INDIANA.

15           THIS IS A CASE IN WHICH WE HAVE EMPLOYEES OF THE

16   DEFENDANT COMPANIES COMING INTO THE UNITED STATES.  WE HAVE

17   CONTRACTS BETWEEN PARTIES IN THE UNITED STATES AND FOREIGN

18   COMPANIES OWNED BY THE CHINESE GOVERNMENT, AND WE HAVE

19   SIGNIFICANT SUMS OF MONEY BEING PAID FROM CHINA INTO THE UNITED

20   STATES.

21           SO OUR CASE IS BASED ON ACTUAL CONTACTS WITH THE

22   FORUM, NOT A FOREIGN DECISION THAT HAS AN INDIRECT EFFECT IN

23   THE UNITED STATES, WHICH IS WHAT I UNDERSTAND THIS TO BE.

24           IT COULD ALSO BE RAISED IF THERE'S A FOREIGN SOVEREIGN

25   IMMUNITY TYPE ARGUMENTS, I TELL THE COURT THERE'S A FAIRLY

1    SIGNIFICANT BODY OF CASES, BOTH UNDER INTERNATIONAL LAW AND THE

2    FOREIGN SOVEREIGN IMMUNITIES ACT, IN WHICH COMMERCIAL

3    ACTIVITIES ARE ACCEPTED FROM FOREIGN SOVEREIGN IMMUNITY.

4         SO IF A FOREIGN GOVERNMENT IS ACTING IN A COMMERCIAL

5    MANNER AS WE ALLEGED THE PANGANG GROUP COMPANIES WERE IN THIS

6    CASE, YOU CAN BRING A CASE AGAINST THE ENTITY AND PRESUMABLY,

7    ALTHOUGH, WE HAVEN'T, AGAINST THE FOREIGN GOVERNMENT ENTITY

8    THAT WAS DRIVING THE COMMERCIAL BEHAVIOR.

9         BUT, AGAIN, THAT'S NOT BEFORE THE COURT RIGHT NOW, AND

10   I WOULD SUGGEST THAT MAYBE SOMETIME DOWN THE ROAD THAT WOULD

11   BE, GOD FORBID AS YOU SAID, ANOTHER MOTION, BUT NOT FOR RULE 4

12   PURPOSES.

13        **THE COURT:** MR. FELDMAN.

14        **MR. FELDMAN:** YOUR HONOR, AS MR. MR. HEMANN CORRECTLY

15   SAID THE ISSUE OF FOREIGN GOVERNMENT INVOLVEMENT IS AN ELEMENT

16   OF THE GOVERNMENT'S CASE.

17        SO I AM NOT GOING TO, IF YOU WILL, WITH RESPECT ACCEPT

18   -- ACCEPT -- EXCEPT FOR PURPOSES OF ARGUMENT THE PREMISE OF

19   QUESTION THREE.  BUT ACCEPTING IT FOR THE PURPOSE OF ARGUMENT

20   --

21        **THE COURT:** WHICH PART OF THE PREMISE DO YOU --

22   WHETHER THE PANGANG DEFENDANTS ARE STATE OWNED?

23        **MR. FELDMAN:** OF COURSE.  I DO NOT ACCEPT.

24        **THE COURT:** IT'S AN ALLEGATION, I UNDERSTAND THAT.

25        **MR. FELDMAN:** BUT IF YOUR HONOR WERE TO ASK ME TO

1    ACCEPT THAT FOR PURPOSE OF THIS ARGUMENT -- I HAVE SOME

2    ANSWERS.

3         **THE COURT:** I DO.

4         **MR. FELDMAN:** I THINK, ACTUALLY THE FIRST THING I

5    WOULD SAY, IS THAT MR. MR. HEMANN REFERRED TO -- AND THE FIRST

6    THING I WOULD SAY, I HADN'T REALLY THOUGHT ABOUT IT UNTIL YOU

7    ASKED THE QUESTION.

8         WE DID IN OUR PAPERS URGE UPON YOU CAUTION FOR A

9    RELATED REASON, WHICH IS THAT IT WOULD BE A DANGEROUS PRECEDENT

10   WERE THE UNITED STATES TO, IF YOU WILL, WILLIE NILLIE SAY THAT

11   SUBSIDIARIES GIVE JURISDICTION OVER FOREIGN PARENTS BECAUSE

12   TURNAROUND WOULD BE FAIR PLAY.

13        AND WHILE WE HAVE NO SPECIFIC EXAMPLES, THE DEPARTMENT

14   HAS NO SPECIFIC EXAMPLES WITH RESPECT TO THE FIRST QUESTION

15   THAT YOU ASKED AND YOU DIDN'T HEAR ANY, WE HAVE NO SPECIFIC

16   EXAMPLES.

17        IT'S NOT FAR FETCHED TO IMAGINE THAT IF WE START DOING

18   THAT WITH NO BASIS, THAT IS TO SAY, HOLDING PARENT CORPORATIONS

19   RESPONSIBLE FOR THE ACTS OF SUBSIDIARIES, THE SAME WOULD HAPPEN

20   TO THE UNITED STATES CORPORATIONS.

21        THAT WE DID URGE UPON YOUR HONOR IN OUR PAPERS, WITH

22   NO AUTHORITY BECAUSE IT'S JUST COMMON SENSE.  WE HAVE NO BASIS

23   FOR THAT.

24        **THE COURT:** YOU'RE NOT ARGUING IF IT'S TRUE AS THE

25   GRAND JURY ALLEGES THAT THE CHINESE GOVERNMENT CAUSED CRIMINAL

```
 1   ACTIONS TO OCCUR IN THE UNITED STATES, THAT IF THEY'RE CHINESE

 2   STATE OWNED ENTITIES HAVE DONE SO, THAT THEY SHOULDN'T BE HELD

 3   ACCOUNTABLE IN THE UNITED STATES?

 4        MR. FELDMAN:  I'M NOT ARGUING THAT.  THAT'S NOT THE

 5   POINT THAT WE'RE MAKING.

 6        WHAT MY POINT WAS THAT IF CORPORATIONS WHICH ARE

 7   PROPERLY FORMED ARE HELD RESPONSIBLE FOR ACTIONS OF

 8   SUBSIDIARIES WHICH ARE PROPERLY FORMED, UNDER THE CIRCUMSTANCES

 9   PRESENT BEFORE YOUR HONOR, IN THIS CONTEXT THE SAME CAN BE DONE

10   TO UNITED STATES CORPORATIONS AND WE DON'T THINK THAT WOULD BE

11   A GOOD PRECEDENT.

12        BUT THAT'S A DIFFERENT QUESTION THAN THE ONE THAT YOU

13   ASKED.

14        THE COURT:  ALL RIGHT.

15        MR. FELDMAN:  THE QUESTION THAT YOU ASKED I MUST

16   CONFESS I HADN'T THOUGHT ABOUT VERY MUCH UNTIL YOUR HONOR POSED

17   IT TO US.

18        AND IT DID OCCUR TO ME -- US UPON LOOKING AT IT THAT

19   IT IS A TREMENDOUS CONCERN AND A TREMENDOUS COMPLEXITY.

20        THE SIMPLE ANSWERS, IN MY VIEW TO THE QUESTION THAT

21   YOU POSED, LIE IN A COMPARISON OF CRIMINAL RULE 4 AND CIVIL

22   RULE 4.

23        BECAUSE IN CIVIL RULE 4 THERE ARE SPECIFIC -- I WANT

24   TO BE VERY CLEAR ABOUT THIS, THERE ARE SPECIFIC PROVISIONS FOR

25   SERVING FOREIGN CORPORATIONS THAT ARE ABROAD.
```

1          AND EVEN MORE IMPORTANTLY IN ANSWER TO YOUR HONOR'S

2     QUESTION, THERE'S AN ENTIRE PROVISION OF CIVIL RULE 4 FOR

3     SERVING FOREIGN INSTRUMENTALITIES, WHICH IS WHAT THE INDICTMENT

4     ALLEGES THE PANGANG DEFENDANTS ARE.

5          TO ANSWER YOUR SPECIFIC QUESTION, THERE IS NO

6     COMPARABLE PROVISION IN CRIMINAL RULE 4.  SO CIVIL RULE 4 HAS

7     SPECIFIC RULES FOR SERVING FOREIGN CORPORATIONS AND FOREIGN --

8     AND MORE IMPORTANTLY FOREIGN INSTRUMENTALITIES.

9          THE DRAFTERS OF THE RULES CONTEMPLATED THAT.  THERE IS

10    NOTHING COMPARABLE IN CRIMINAL RULE 4.  THAT'S A GLARING

11    DIFFERENCE.  THAT'S NUMBER ONE.

12          NUMBER TWO, WITH RESPECT TO THE STATUTE THAT WE ARE

13    HERE ABOUT, THAT IS TO SAY, THE ECONOMIC ESPIONAGE STATUTE

14    WHICH WAS RAISED BY COUNSEL, THERE IS NOTHING IN THAT STATUTE

15    THAT WOULD REQUIRE THAT FOREIGN INSTRUMENTALITIES BE

16    PROSECUTED.

17          SO LET THE COURT NOT BE CONFUSED OR LEAD INTO THINKING

18    THAT THE EXISTENCE OF THAT STATUTE REQUIRES THAT AN ALLEGED TO

19    BE FOREIGN INSTRUMENTALITY NEEDS TO BE PROSECUTED FOR THERE TO

20    BE ENFORCEMENT AND STRENGTH TO THAT STATUTE.  THAT IS NOT

21    CORRECT.

22          ONE COULD ARGUE THAT THE STATUTE DOESN'T EVEN

23    CONTEMPLATE THOSE KINDS OF PROSECUTIONS, THAT IS TO SAY,

24    PROSECUTIONS OF FOREIGN INSTRUMENTALITIES, BUT YOU DON'T NEED

25    TO REACH THAT.

1      **THE COURT:**  THAT WOULD BE THE PROPER SUBJECT OF A

2  MOTION TO DISMISS THE INDICTMENT.

3      **MR. FELDMAN:**  CORRECT.  CERTAINLY NOT REQUIRED, THAT

4  IS TO SAY, CERTAINLY NOT REQUIRED FOR THAT STATUTE TO HAVE

5  FORCE AND EFFECT AND POWER.

6      SO THE ANSWER TO YOUR QUESTION 3B, IN MY VIEW, IS A

7  COMPLICATED ONE.  IT RELATES TO THE FACT THERE'S AN ENTIRE BODY

8  OF LAW THAT MR. MR. HEMANN REFERRED TO WITH RESPECT TO FOREIGN

9  SOVEREIGN IMMUNITY, WHICH IS NOT BEFORE YOU.

10     IT SHOULD BE RESOLVED, IN MY VIEW, BY COMPARING THE

11 VERY SIMPLE CRIMINAL RULE TO THE VERY COMPLICATED AND SPECIFIC

12 CIVIL RULE, AND BY RECOGNITION OF THE FACT THAT THE STATUTE

13 THAT WE'RE HERE ABOUT CAN BE WELL ENFORCED WITHOUT AFFECTING

14 FOREIGN INSTRUMENTALITIES.

15     **MR. HEMANN:**  AND, I THINK, THAT MR. FELDMAN'S

16 PRESENTATION UNDERSCORES THE DEFENDANT'S BASIC POINT THAT

17 MR. AXELROD ALLUDED TO EARLIER.

18     THE DEFENDANT'S POSITION IS THAT IT IS IMPOSSIBLE TO

19 SERVE THESE COMPANIES IN THIS CASE AT ALL.  WE CAN NEVER MAIL

20 THE SUMMONS TO THE COMPANIES.

21     AND WHAT THEY WANT THE COURT TO DO IS TO INTERPRET

22 RULE 4 TO PRECLUDE THE UNITED STATES FROM TAKING ACTION AGAINST

23 CHINESE COMPANIES THAT STOLE TRADE SECRETS IN THE UNITED

24 STATES.

25     **THE COURT:**  ISN'T WHAT MR. FELDMAN SAID TRUE IN A

1    SENSE THAT, LET'S SAY, JUST MAKING THIS SORT OF EXTREME

2    EXAMPLE, JUST LIKE I GRANTED MR. FELDMAN WASN'T MAKE ANY

3    ADMISSIONS, THE GOVERNMENT ISN'T, THERE'S NO GENERAL AGENT HERE

4    AND THE PARENT, THE INDICTED DEFENDANT PANGANG GROUP, THAT

5    ORGANIZATION IS NOT IN THE UNITED STATES, THAT THEN THEY CANNOT

6    BE PROSECUTED BECAUSE THEY COULD NEVER BE SERVED?

7          **MR. HEMANN:**  CORRECT.

8          **THE COURT:**  SO, I THINK, YOU ALL AGREE THAT WHAT --

9    YOU DON'T AGREE, IT MAY VERY WELL BE THE WAY THIS CASE IS

10   POSTURED, THE WAY THIS MOTION IS POSTURED, THAT IF THE MOTION

11   IS GRANTED, IT MAY WELL BE THAT THE PANGANG GROUP CANNOT BE

12   PROSECUTED IN THE UNITED STATES.

13         **MR. HEMANN:**  BUT THERE'S AN ADDITION TO MR. FELDMAN'S

14   ARGUMENT THAT THE COURT DIDN'T MENTION.  WHICH IS, EVEN WHEN

15   THERE IS A GENERAL AGENT IN THE UNITED STATES, WHICH IS

16   OBVIOUSLY THE SUBJECT OF OUR DISAGREEMENT, THE DEFENDANT'S

17   POSITION IS WE STILL CAN NEVER SERVE.

18         BECAUSE YOU HAVE A CIRCUMSTANCE, AND THIS LEADS A

19   LITTLE BIT INTO WHAT THE EVIDENCE IS IN RESPONSE TO THE COURT'S

20   QUESTION NUMBER FOUR, BUT WE HAVE A CIRCUMSTANCE IN THIS CASE

21   WHERE A CONSCIOUS DECISION WAS MADE BY THE CHAIRMAN OF THE

22   PANGANG GROUP TO PLACE AN AGENT IN THE UNITED STATES, TO ENJOY

23   THE BENEFITS AND PROTECTIONS OF AMERICAN LAW.

24         AND THE POSITION IS NOTWITHSTANDING THAT AND A

25   DECISION, YOUR HONOR, TO PUT A NORTH AMERICAN HEADQUARTERS,

1    THAT'S THE -- I'LL POINT THE COURT TO THAT LANGUAGE IN THE

2    LETTER FROM CHAIRMAN FAN, CHAIRMAN FAN WRITES A LETTER TO THE

3    CUSTOMS AND IMMIGRATION SERVICE SAYING OUR NORTH AMERICAN

4    HEADQUARTERS IS GOING TO BE WITH PAN AMERICA IN NEW JERSEY.

5              SO WE NEED TO BE VERY SPECIFIC ABOUT WHERE WE ARE

6    IN -- WITH REGARD TO THIS BEING A CHINESE GOVERNMENT ENTITY AND

7    THE ROLE OF THAT.

8              THEY'RE ENGAGED IN A COMMERCIAL PURPOSE AND CHINA FOR

9    BETTER OR WORSE, ALL JUDGMENT ASIDE, ORGANIZES ITS ECONOMY

10   AROUND STATE OWNED ENTERPRISES.

11             SO CHINA HAS MADE A CHOICE TO ENGAGE IN COMMERCIAL

12   ACTIVITIES THAT INCLUDE COMMERCIAL ACTIVITIES THAT DIRECTLY

13   IMPACT THE UNITED STATES AND COMMERCIAL ENTITIES THAT ARE

14   TAKING ADVANTAGE OF THE BENEFITS AND PROTECTIONS OF U.S. LAW.

15             THEY PUT A NORTH AMERICAN HEADQUARTERS HERE AND NOW

16   THEY'RE SAYING HAVING DONE THAT YOU CAN'T SERVE US, YOU CAN

17   NEVER SERVE US, BECAUSE WE DON'T HAVE A GENERAL AGENT.

18             BUT MORE IMPORTANTLY, AND THIS IS THE CRUX OF THE

19   DEFENDANT'S ARGUMENT IN THEIR OPPOSITION BRIEF, WE DON'T HAVE A

20   HEADQUARTERS HERE.  OUR HEADQUARTERS IS IN CHENGDU, YOU CAN'T

21   MAIL IT TO CHENGDU BECAUSE YOU'RE PRECLUDED BY LAW FROM MAILING

22   IT TO CHENGDU, SO YOU'RE OUT.

23             SO, I MEAN, IT IS A CURIOUS ARGUMENT TO SAY THAT YOU

24   REACH INTO THE UNITED STATES TO DO BUSINESS IN THE UNITED

25   STATES.  THERE ARE REAMES OF PAPER IN FRONT OF YOUR HONOR

1   REFLECTING THEIR BUSINESS ACTIVITIES IN THE UNITED STATES, BUT

2   YOU SIMPLY CAN'T NOW AND CAN NEVER SERVE THESE ENTITIES BECAUSE

3   THEY DON'T HAVE AN ADDRESS SOMEWHERE IN THE UNITED STATES.

4           **THE COURT:**  ALL RIGHT.  DO YOU NEED TO ADDRESS THAT?

5           **MS. RODDY:**  NO.

6           **THE COURT:**  LET'S MOVE ON.  I HAVE THE INFORMATION I

7   NEED ON THAT ONE.  LET'S MOVE ON TO QUESTION FOUR.

8           I GAVE THE PREMISE THAT I DID WITH THE INSTRUCTION TO

9   THE GOVERNMENT THIS IS NOT AN OPPORTUNITY TO REALLY

10  CHARACTERIZE IT, YOU CAN CHARACTERIZE IT I NEED CITATIONS TO

11  THE RECORD FIRST WITH RESPECT TO PGSVTC AND WHETHER IT'S A

12  WHOLLY OWNED SUBSIDIARY OR ANY OF THE OTHER PANGANG DEFENDANTS

13  SET FORTH IN THE CITATION.

14      **MR. HEMANN:**  I WILL ANSWER THAT QUESTION VERY

15  DIRECTLY.  WE DO CONCEDE THAT PGSVTC IS NOT A WHOLLY OWNED

16  SUBSIDIARY OF ANY OF THE OTHER DEFENDANTS.

17          **THE COURT:**  IS THERE SOMETHING YOU MORE YOU WANTED TO

18  SAY?

19          **MR. HEMANN:**  WELL, I WAS GOING TO ANSWER --

20          **THE COURT:**  ALL RIGHT.  LET'S GO --

21          **MR. HEMANN:**  THERE'S MORE TO THE QUESTION I WAS GOING

22  TO ANSWER.

23          **THE COURT:**  WELL, I ASSUME YOU AGREE WITH THAT,

24  MR. FELDMAN?

25          **MR. FELDMAN:**  YES.

1          **THE COURT:**  GOOD.  SO NOW LET'S GO ONTO QUESTION 5A.

2          **MR. HEMANN:**  SO QUESTION 4, QUESTION 4A THE ONLY

3     QUESTION?  WAS THERE MORE TO THE QUESTION?

4          **THE COURT:**  NO.  I WANT YOU TO -- I WANTED TO GET THE

5     SPECIFIC ANSWER, NOW I WANT YOU TO ANSWER THE FIRST QUESTION IN

6     THE PREMISE TO THE QUESTION.

7          WHAT IS YOUR BEST ARGUMENT THAT HAS MET YOUR BURDEN TO

8     CLEARLY ESTABLISH THE CHAIN NECESSARY TO ESTABLISH THE

9     REQUISITE AGENCY OR ALTER EGO RELATIONSHIPS BETWEEN THESE FOUR

10    DEFENDANTS?

11         AND THIS IS NOT AN OPPORTUNITY TO ARGUE THAT THE COURT

12    HAS ASKED THE WRONG QUESTION, WHY IS IT EVEN RELEVANT, WHY ARE

13    WE TALKING ABOUT ALTER EGO, I KNOW THAT'S YOUR POSITION, BUT I

14    WANT TO GET AN ANSWER TO MY QUESTION.

15         **MR. HEMANN:**  ON THAT POINT WE DO THINK IT'S RELEVANT

16    TO TALK ABOUT ALTER EGO, BOTH AGENCY AND ALTER EGO.

17         I WANT TO MAKE SURE I UNDERSTAND THE QUESTION, YOUR

18    HONOR, I'M NOT CHALLENGING THE PREMISE OF THE QUESTION.  I READ

19    THIS TO BE ASKING, PERHAPS, TWO QUESTIONS.

20         BECAUSE THE FIRST LINE OF THE COURT'S QUESTION TALKS

21    ABOUT CHAIN OF OWNERSHIP THAT RENDERS PAN AMERICA THE AGENT OR

22    ALTER EGO.

23         AND AS WE ANALYZED THE QUESTION THERE'S TWO ISSUES.

24    ONE IS, CHAIN OF OWNERSHIP THAT SHOWS WHAT COMPANIES OWN WHAT

25    COMPANIES.

1          THERE'S ALSO THE EVIDENTIARY CHAIN THAT ESTABLISHES

2     AGENCY OR ALTER EGO THAT DOESN'T NECESSARILY -- AND THE NINTH

3     CIRCUIT HAS SAID, DOESN'T REQUIRE OWNERSHIP.

4          **THE COURT:**  I'D LIKE THE ANSWER TO BOTH.

5          **MR. HEMANN:**  I'LL GIVE YOU THE ANSWER TO BOTH, YOUR

6     HONOR.

7          NUMBER ONE, WE PREPARED A LITTLE DEMONSTRATIVE TODAY,

8     WE'VE GIVEN A COPY TO THE DEFENSE AND THIS IS OUR BEST

9     UNDERSTANDING.

10          **THE COURT:**  NOW, IS THIS SUPPORTED BY WHAT YOU

11     SUBMITTED?

12          **MR. HEMANN:**  THIS IS SUPPORTED BY WHAT WE HAD

13     SUBMITTED IN EVIDENCE, YOUR HONOR.

14          **THE COURT:**  LET ME SORT OF POINT HERE, DO YOU AGREE

15     WITH THIS CHART?

16          **MR. FELDMAN:**  NO.

17          **THE COURT:**  I NEED CITATIONS.

18          **MR. FELDMAN:**  EXCUSE ME, YOUR HONOR, WHEN I SAID I

19     DON'T AGREE WITH IT, I DO NOT BELIEVE THAT THIS CHART WITH A

20     FEW EXCEPTIONS IS SUPPORTED BY THE RECORD.

21          **THE COURT:**  THAT'S ALL I'M ASKING.  IT'S NOT SUPPORTED

22     BY THE RECORD, THIS IS NOT ABOUT EMASCULATE CONCEPTION.

23          **MS. RODDY:**  I DO AGREE, IF I MAY, I DO AGREE WITH YOUR

24     HONOR, THIS NEEDS TO BE SUPPORTED BY CITATIONS TO THE RECORD.

25          **THE COURT:**  THAT'S WHY I ASKED.

1    **MR. HEMANN:** SO I'M GOING TO GIVE THE COURT CITATIONS

2    TO THE RECORD. THE CITATIONS TO THE RECORD, THIS CHART IS

3    DERIVED FROM PRIMARILY TWO PLACES.

4          PLACE NUMBER ONE, IS THE DECLARATION OF OUR EXPERT

5    MR. SZAMOSSZEGI. AND THERE ARE A SERIES OF PARAGRAPHS IN HIS

6    DECLARATION, WHICH I BELIEVE PARAGRAPHS 18 THROUGH 20 AND 23,

7    THAT LAYOUT WITH EXHIBITS ATTACHED TO THEM, IT'S 18 THROUGH 20

8    AND 23, WHAT THE OWNERSHIP STRUCTURE OF THE PANGANG GROUP

9    COMPANIES ARE AS RELEVANT TO THE ALLEGATIONS IN THE INDICTMENT.

10   **THE COURT:** ALL RIGHT.

11   **MR. HEMANN:** IT IS ALSO SUPPORTED BY INFORMATION

12   OBTAINED BY THE FBI AND RECITED IN SPECIAL AGENT PATTILLO'S

13   DECLARATION AT PARAGRAPH SEVEN AND EIGHT WHICH DESCRIBE THE

14   OWNERSHIP OF THE COMPANIES FROM THE PERSPECTIVE OF THE TWO

15   EXECUTIVE EMPLOYEES OF PAN AMERICA.

16   **THE COURT:** RIGHT.

17   **MR. HEMANN:** AND IT IS ALSO SUPPORTED BY THE

18   ATTACHMENT TO MR. AXELROD'S DECLARATION, AND I APOLOGIZE, YOUR

19   HONOR, I MISPLACED THE EXACT CITATION TO IT. IT'S ONE OF THE

20   ATTACHMENTS TO MR. AXELROD'S DECLARATION THAT LAYS OUT THE --

21   THERE WE GO, IT'S EXHIBIT D AT PAGE EIGHT.

22         AND ALSO THERE IS AN ORGANIZATIONAL CHART THAT WAS

23   PROVIDED BY PANGANG GROUP TO THE CUSTOMS AND IMMIGRATION

24   SERVICE THAT'S ATTACHED TO MR. AXELROD'S DECLARATION AS AN

25   EXHIBIT, AND THOSE ARE THE SOURCES FOR THIS DOCUMENT.

1          NOW, I WOULD NOTE, YOUR HONOR, THAT IN THEIR

2     OPPOSITION TO THEIR REPLY TO THE GOVERNMENT'S OPPOSITION THE

3     DEFENDANTS POINT OUT, WELL, WE'RE WRONG ABOUT OUR OWNERSHIP

4     HYPOTHESIS, BUT DON'T EXPLAIN TO THE COURT WHAT THE ACCURATE

5     OWNERSHIP STRUCTURE --

6          **THE COURT:**  THEY'RE NOT OBLIGED TO DO THAT, ARE THEY?

7          **MR. HEMANN:**  THEY'RE CERTAINLY NOT OBLIGED TO DO THAT,

8     BUT IT'S --

9          **THE COURT:**  IF IT'S A CIVIL CASE THEY MIGHT DO IT.

10         **MR. HEMANN:**  BUT IN THIS CASE WE'RE GIVING YOU THROUGH

11    THIS DOCUMENT WHAT WE UNDERSTAND THROUGH OUR EXPERT IN HIS

12    EXAMINATION OF THE DOCUMENTS AS SET FORTH IN HIS DECLARATION,

13    AND THE EXPLANATION OF THE CORPORATE STRUCTURE BY THE PAN

14    AMERICAN EMPLOYEES WHAT THE CORPORATE STRUCTURE LOOKS LIKE.

15         I CAN TELL THE COURT, OBVIOUSLY, BECAUSE WE HAVE NOT

16    BEEN THROUGH DISCOVERY BECAUSE WE WERE NOT ABLE TO SERVE

17    PROCESS ON THE PANGANG COMPANIES OUTSIDE OF THE UNITED STATES

18    THAT THIS IS BASED ON THE EVIDENCE THAT WE HAVE.

19         I CAN'T BE A HUNDRED PERCENT SURE THAT IT'S ACCURATE,

20    BUT THE DOCUMENTS THAT ARE PUBLICLY AVAILABLE AS ANALYZED BY

21    OUR EXPERT SUGGESTS THAT THIS IS THE STRUCTURE.

22         I WOULD TELL THE COURT THAT WE DON'T BELIEVE THAT THE

23    CASES SAY, THE NINTH CIRCUIT CASES SAY THAT OWNERSHIP IS

24    RELEVANT TO THE QUESTION OF EITHER AGENCY OR ALTER EGO.

25         AND, I THINK, BOTH THE BOWMAN DECISION TALKING ABOUT

1    GENERAL AGENCY AND ALTER EGO AND THE WELLS FARGO DECISION

2    SPECIFICALLY SAY THAT OWNERSHIP IS NOT RELEVANT.

3         WHAT'S RELEVANT IS THE RELATIONSHIP BETWEEN THE

4    ENTITIES AND THE SERVED -- THE PARENT ENTITIES AND THE SERVED

5    ENTITIES, AND I'M PREPARED, YOUR HONOR, TO GO THROUGH WHAT WE

6    BELIEVE THE EVIDENCE IS THAT ATTACHES EACH ONE OF THE CHARGED

7    ENTITIES TO PAN AMERICA, INC. AND I'M ASSUMING THAT'S WHAT THE

8    COURT --

9         **THE COURT:**  THAT'S THE ULTIMATE QUESTION.  FIRST, I

10   WANT JUST VERY ELEMENTAL LEVEL I WANT TO UNDERSTAND THE

11   GOVERNMENT'S POSITION, WHETHER IT'S DISPUTE OR NOT, WHAT IS --

12   WE WERE TRYING TO ON OUR PART, THE COURT WAS TRYING TO SKETCH

13   THIS OUT, AND FRANKLY WAS VERY DIFFICULT.

14        I WANTED TO GET THE GOVERNMENT'S POSITION, OF COURSE,

15   I'LL HEAR FROM THE DEFENDANTS, THEN THE QUID ESSENTIAL QUESTION

16   WHAT DOES THIS MEAN VIS-A-VIS THE QUESTION OF GENERAL AGENCY

17   AND ALTER EGO?

18        **MR. HEMANN:**  SO THE ANSWER YOUR HONOR'S QUESTION, OUR

19   POSITION IS THAT ALTHOUGH THE FORMAL OWNERSHIP RELATIONSHIPS

20   ARE INSTRUCTIVE AND HELPFUL IN FIGURING OUT, WHAT YOU CAN SEE

21   HERE IS THAT AS WE ALL KNOW, AND I DON'T THINK IS IN DISPUTE,

22   PAN AMERICA, INC. IS OWNED BY TWO COMPANIES.

23        IT'S OWNED BY PANGANG GROUP AND PIETC, WHICH IS THE

24   INTERNATIONAL TRADING COMPANY FOR PANGANG GROUP IN THE

25   PROPORTIONS OF 75 AND 25 PERCENT.

1          MR. FELDMAN:  SO STIPULATED.

2          THE COURT:  ALL RIGHT.

3          MR. HEMANN:  THAT IS THE OTHER ANOTHER DEFENDANT WHICH

4    IS IT'S THE PUBLICLY LISTED COMPANY ON THE CHEN JEN EXCHANGE,

5    WHICH IS PGSVTC IS THE OWNER OF PIATC IN -- IT'S THE 100

6    PERCENT OWNER OF PIATC.

7          THE COURT:  DO YOU AGREE WITH THAT?

8          MR. FELDMAN:  THERE'S NO PROOF OF THAT.

9          THE COURT:  GO AHEAD.

10          MR. HEMANN:  WE WOULD AGAIN SUBMIT.

11          THE COURT:  I'LL READ THE EVIDENCE YOU CITE THE COURT

12    TO.

13          MR. HEMANN:  AND THAT IT IS ALSO THE OWNER OF THE

14    TITANIUM INDUSTRY COMPANY DEFENDANT.

15          MR. FELDMAN:  SAME.

16          THE COURT:  ALL RIGHT.

17          MR. HEMANN:  THAT IS INSTRUCTIVE TO SOME DEGREE

18    BECAUSE IT DRAWS SOME OWNERSHIP RELATIONSHIP BETWEEN PAI AND

19    TWO OF THE DEFENDANT COMPANIES.  BUT IT DOESN'T GET EITHER THE

20    COURT OR US ALL THE WAY TO WHERE WE'RE COMFORTABLE WITH THIS.

21          THE COURT ASKED WHAT OUR POSITION WAS AS A GENERAL

22    MATTER.  OUR POSITION AS A GENERAL MATTER IS THAT PAI IS THE

23    GENERAL AGENT IN THE UNITED STATES OF THE PANGANG GROUP OF

24    COMPANIES.

25          WE BELIEVE THAT IS WAS THE INTENTION OF THE PANGANG

1    GROUP OF COMPANIES WHEN PAI WAS CREATED AS REFLECTED IN

2    CHAIRMAN FAN'S TWO LETTERS TO THE CUSTOMS AND IMMIGRATION

3    SERVICE.

4            AND WE BELIEVE THAT IS THE EVIDENCE SHOWS THAT PAI HAS

5    ACTED CONSISTENTLY WITH THAT SINCE 2008 WHEN THE COMPANY WAS

6    FORMED.  I'M GOING TO TALK A LITTLE BIT ABOUT BOTH THE

7    FORMATION AND THE ACTIONS OF THE COMPANY, BUT TO BE VERY CLEAR

8    THE PURPOSE WAS TO CREATE A PANGANG GROUP OF COMPANIES PRESENCE

9    IN THE UNITED STATES.

10           NOT TO MAKE FINE DISTINCTIONS BETWEEN WHICH ONE OF THE

11   PANGANG GROUP OF COMPANIES PAI WAS GOING TO BE THE AGENT FOR.

12           AND IF YOU LOOK THROUGH THE ENTIRE RECORD AND

13   SPECIFICALLY TO THE DOCUMENTS THAT WERE CREATED BY THE PANGANG

14   DEFENDANTS THEMSELVES, WHAT YOU WILL SEE IS THE NAMES OF THE

15   COMPANIES BEING USED INTERCHANGEABLY, WHICH I WOULD SUBMIT IS

16   PART OF THE CONFUSION THAT THE COURT IS SUFFERING FROM WITH

17   REGARD TO THIS BECAUSE IT'S NOT CLEAR.

18           THE BEST EXAMPLE OF THAT IS IN CHAIRMAN FAN'S LETTER

19   WHERE HE INTERCHANGEABLY USES THE TERMS PANGANG GROUP AND

20   PISCO, PISCO BEING A WHOLLY OWNED SUBSIDIARY OF THE PANGANG

21   GROUP.  SO IT'S NOT CLEAR FROM THE DOCUMENTS THEMSELVES THAT

22   WERE PREPARED BY THE CHINESE COMPANIES THEMSELVES.

23           WE BELIEVE THAT IT WASN'T MEANT TO BE CLEAR NOR DOES

24   IT NEED TO BE CLEAR.  BECAUSE UNDER RULE 4 THE COURT CAN LOOK,

25   AND THIS GOES TO MR. FELDMAN'S POINT ABOUT THE DIFFERENCE

```
 1   BETWEEN THE CRIMINAL RULES AND THE CIVIL RULES, WHICH ARE
 2   OBVIOUS.  THE CRIMINAL RULE IS THIS LONG AND ASKS THE COURT TO
 3   MAKE --
 4            THE COURT:  FOR THE RECORD YOUR HOLDING YOUR HANDS
 5   ABOUT THREE INCHES.
 6            MR. HEMANN:  ABOUT TWO INCHES I GUESS I MEANT, YOUR
 7   HONOR.  IT'S ABOUT TWO INCHES OF TEXT AND IT'S MEANT FOR THE
 8   COURT TO MAKE A SIMPLE DECISION, A SIMPLE JUDGMENT IN THE
 9   INTEREST OF JUSTICE FOR THE PURPOSES OUTLINED IN THE
10   CRIMINAL -- IN THE CRIMINAL RULES.
11            AND IT IS DIFFERENT, IT'S MEANT TO BE A SIMPLER
12   ANALYSIS.  IF YOU LOOK AT THE BODY OF EVIDENCE HERE YOU'LL SEE
13   THAT PAI IS ACTING AS THE AGENT OF THE PANGANG GROUP OF
14   COMPANIES IN THE UNITED STATES.  AND THAT'S OUR POSITION.
15            NOW, WHAT I'D LIKE TO DO IS GO THROUGH WITH YOU -- I'M
16   SORRY, I MENTIONED EARLIER IT'S EXHIBIT F IN MR. AXELROD'S
17   DECLARATION THAT WE WERE RELYING ON FOR THIS DOCUMENT.
18            THE COURT:  ALL RIGHT.
19            MR. HEMANN:  SO --
20            MR. FELDMAN:  MAY I INTERRUPT YOU FOR JUST ONE MOMENT,
21   WOULD THAT BE OKAY?
22            MR. HEMANN:  SURE.
23            MR. FELDMAN:  I WOULD ASK THE COURT TO NOTE THUS FAR,
24   THE LAST FIVE MINUTES ANYWAY, MR. MR. HEMANN HAS MADE A LOT
25   STATEMENTS WITH NO CITATIONS TO THE RECORD AS YOU REQUESTED.
```

1          **THE COURT:**  THERE WERE SOME CITATIONS.  WE CITED TO

2     EXHIBITS TO THE -- I CAN'T PRONOUNCE HIS NAME

3     S-Z-A-M-O-S-S-Z-E-G-I.

4          **MR. HEMANN:**  SZAMOSSZEGI.

5          **THE COURT:**  DECLARATION, MR. AXELROD'S DECLARATION AND

6     DOCUMENTS CITED THEREIN.

7          **MR. FELDMAN:**  I MEANT IN THE LAST FIVE MINUTES.

8          **THE COURT:**  I HAVEN'T BEEN KEEPING TIME, SO ALL RIGHT.

9          **MR. HEMANN:**  SO I'D LIKE TO GO THROUGH THE EVIDENCE

10    THAT TIES PAI TO EACH ONE OF THE ENTITIES TO THE BEST THAT

11    WE'RE ABLE TO DO SO BASED ON THE RECORD.

12          AND THE COURT ASKED FOR OUR BEST ARGUMENTS, AND SO I

13    WOULDN'T SUGGEST THIS IS ALL OF THE EVIDENCE, BUT I THINK THIS

14    IS THE BEST EVIDENCE.

15          NUMBER ONE, ARE THE LETTERS FROM CHAIRMAN FAN THIS IS

16    FOCUSING ON THE CONNECTION BETWEEN PAI AND THE PANGANG GROUP

17    ITSELF.  NUMBER ONE, ARE THE LETTERS FROM CHAIRMAN FAN TO CIS,

18    CUSTOMS AND IMMIGRATION SERVICE.  THOSE ARE ATTACHED TO

19    MR. AXELROD'S DECLARATION AT EXHIBIT D AND F.

20          AND THE KEY PROVISIONS OF THAT ARE SET FORTH IN OUR

21    OPPOSITION BRIEF AT PAGE EIGHT.  AND THE MOST COMPELLING

22    STATEMENT MADE BY CHAIRMAN FAN IS HIS DESCRIPTION OF PAI AS

23    BEING FOR THE PURPOSE OF QUOTE "DEVELOPING OUR BUSINESS

24    RELATIONSHIPS AND OPPORTUNITIES IN THE UNITED STATES."  THAT

25    WAS, WE SUBMIT, PAI'S CHARGE IN THE UNITED STATES.

1          THE OTHER HIGHLY RELEVANT, AND THIS IS RELEVANT MORE

2     TO THE ALTER EGO ANALYSIS THAN THE GENERAL AGENCY ANALYSIS, IS

3     THE FACT THAT CHAIRMAN FAN ACTUALLY SIGNED THE LETTERS ON PAI

4     LETTERHEAD, PURPORTING TO BE, WHICH HE IS NOT, AN OFFICER OF

5     PAI.

6          NUMBER TWO, IN TERMS OF EVIDENCE CONNECTING PAI TO

7     PANGANG GROUP, THE APPLICATIONS FOR --

8          **MR. FELDMAN:**  EXCUSE ME, DID YOU SAY WHICH COMPANY

9     AGAIN?  SORRY.

10         **MR. HEMANN:**  PANGANG GROUP.

11         **MR. FELDMAN:**  THANK YOU.

12         **MR. HEMANN:**  THE APPLICATION FOR L1A INTERCOMPANY

13    TRANSFERS THAT ARE ATTACHED TO MR. AXELROD'S DECLARATIONS AND

14    THE LEGAL PREDICATE FOR THOSE APPLICATIONS WHICH IS THE CONTROL

15    REQUIREMENT THAT WE'LL BE GETTING INTO IN THE COURT'S NEXT

16    QUESTION.

17         THE THIRD PIECE OF EVIDENCE WITH REGARD TO PANGANG

18    GROUP ARE THE P PASSPORTS THAT ARE ISSUED TO THE TWO EXECUTIVE

19    EMPLOYEES OF PAI IN THE UNITED STATES.

20         THOSE ARE DISCUSSED IN, AMONG OTHER PLACES BUT MOST

21    POINTEDLY, IN THE MC GOVERN DECLARATION WHERE MR. MC GOVERN

22    WHO'S A STATE DEPARTMENT EMPLOYEE EXPLAINS THAT KEY PASSPORTS

23    ARE ISSUED TO EMPLOYEES OF CHINESE STATE OWNED ENTERPRISES FOR

24    THE PURPOSE OF DOING THE BUSINESS OF THOSE ENTERPRISES

25    OVERSEAS.

1    **MR. FELDMAN:**  MAY I MAKE INQUIRY, YOUR HONOR?  THAT GO

2  TO AGENCY OR ALTER EGO, THE P PASSPORT?

3    **MR. HEMANN:**  IT GOES TO BOTH.

4    **MR. FELDMAN:**  ALL RIGHT.  THANK YOU.

5    **MR. HEMANN:**  WITH REGARD TO THESE ALL WOULD GO TO

6  BOTH, YOUR HONOR, AS I UNDERSTOOD THE QUESTION.

7    THE NEXT PIECE OF EVIDENCE WITH REGARD TO THE PANGANG

8  GROUP ARE -- IS THE POLICIES AND PROCEDURES MANUAL WHICH IS

9  ATTACHED TO SPECIAL AGENT PATTILLO'S DECLARATION AT EXHIBIT O,

10 AND IS IDENTIFIED -- THE KEY PROVISIONS WHICH ARE IDENTIFIED IN

11 OUR OPPOSITION BRIEF AT PAGE SIX.

12   AND THAT'S THE DOCUMENT, YOUR HONOR, THAT DISCUSSES

13 APPROVAL REQUIREMENTS BY THE HEAD OFFICE WHICH FROM THE CONTEXT

14 OF THE DOCUMENT DENOTES AN OFFICE AT THE PANGANG GROUP.

15   THE NEXT PIECE OF EVIDENCE THAT WE WOULD POINT THE

16 COURT TO WITH REGARD TO THE PANGANG GROUP IS THE FACT THAT THE

17 BOOKS AND RECORDS OF PAI ARE AUDITED BY AUDITORS SENT TO THE

18 UNITED STATES BY THE PANGANG GROUP.  AND THAT IS ATTACHED TO

19 SPECIAL AGENT PATTILLO'S DECLARATION AT EXHIBIT T.

20   I'M AVOIDING ARGUMENT WITH REGARD TO THE SIGNIFICANCE

21 OF THESE AND I'M SIMPLY GOING THROUGH THE LIST.  I JUST WANTED

22 TO MAKE SURE I'M DOING THAT.

23   **THE COURT:**  ABSOLUTELY.

24   **MR. HEMANN:**  THE NEXT PIECE OF EVIDENCE IS EVIDENCE

25 THAT PAI IS FUNDED ENTIRELY BY PANGANG GROUP AND PIATC AND I'M

1    COMBINING THEM HERE BECAUSE IT APPLIES TO BOTH.

2         THE COMPANY WAS CAPITALIZED BY A COMBINATION OF MONEY

3    FROM PANGANG GROUP AND PAITC AND ALL OF ITS INCOME --

4         **THE COURT:**  THAT WAS AN INITIAL CAPITALIZATION,

5    CORRECT?

6              **MR. HEMANN:**  WITH ITS INITIAL CAPITALIZATION.

7         THE SECOND PART OF THIS IS THAT ALL OF ITS INCOME IS

8    DERIVED FROM DEALS ENTERED INTO BY PANGANG GROUP AND PIATC.  IT

9    HAS NO SOURCE OF INCOME OTHER THAN COMMISSION INCOME OFF OF

10   PANGANG PIATC DEALS.

11        THE EVIDENCE OF THAT IS IN SPECIAL AGENT PATTILLO'S

12   DECLARATION IN PARAGRAPHS SEVEN AND EIGHT AND MR. SZAMOSSZEGI'S

13   DECLARATION AT PARAGRAPH 24 AND EXHIBIT 17 AND 24 WHICH ARE AN

14   ANALYSIS OF THE IMPORT BUSINESS ASSOCIATED WITH PAN AMERICA,

15   INC. AND EVIDENCE THAT ALL OF IT COMES FROM PANGANG SOURCES.

16        THE 7TH PIECE OF EVIDENCE WITH REGARD TO PANGANG GROUP

17   IS THE LETTER TO EP PETROL ECUADOR, THERE ARE TWO VERSIONS OF

18   THAT LETTER THAT WERE SEIZED FROM PAN AMERICA, INC. AND THEY'RE

19   ATTACHED TO SPECIAL AGENT PATTILLO'S LOST DECLARATION AT

20   EXHIBITS F AND G.

21        AND IN THAT LETTER THAT PAI REPRESENTS THAT IT IS THE

22   REPRESENTATIVE OF THE PANGANG GROUP IN THE AMERICAS.

23        **THE COURT:**  BY THE WAY, AS AN ASIDE THERE WERE SIX

24   EXHIBITS THAT WERE ATTACHED TO MR. SZAMOSSZEGI'S DECLARATION

25   WHICH ARE IN CHINESE WITHOUT TRANSLATION, I NEED TO GET -- I

1    DON'T SPEAK CHINESE.  A LITTLE BIT.

2              MR. HEMANN:  WE WILL ENDEAVOR TO GET THOSE, AND IF THE

3    COURT WOULD PERMIT IT I CAN TALK TO THE FBI TRANSLATORS ABOUT

4    THE TRANSLATIONS.  WE COULD PROVIDE SUMMARIES RELATIVELY

5    QUICKLY.  I HAVE TO LOOK AT THEM AND TALK TO THEM ABOUT HOW

6    LONG IT WILL TAKE TO DO TRANSLATIONS.

7              MR. FELDMAN:  PUNT PASS.

8              THE COURT:  LET'S PUT THAT ON HOLD FOR NOW.

9              MR. HEMANN:  THANK YOU, YOUR HONOR.

10             I GUESS, A COROLLARY TO THE FUNDING ARGUMENT THAT I

11   JUST IDENTIFIED AND WITH THE SOURCES BEING IN THE SAME PLACES,

12   THE FACT THAT PAI DOES WORK FOR NO OTHER ENTITY THAN PANGANG

13   GROUP AND PANGANG AFFILIATES.  THE SOURCES ARE THE SAME WITH

14   REGARD TO FUNDING.

15             SO THOSE WE THINK ARE THE BEST PIECES OF EVIDENCE THAT

16   GO SOLELY OR PRIMARILY TO THE PANGANG GROUP.  AND IT GETS A

17   LITTLE SHORTER FROM HERE, YOUR HONOR, BUT WITH REGARD TO --

18   THERE'S LOTS OF EVIDENCE, YOU KNOW -- WITH REGARD TO PAITC,

19   YOUR HONOR, NUMBER ONE, THE FACT THAT CHUN ZENG WHO IS THE

20   SECOND IN CHARGE FELLOW AT PAI IS ACTUALLY A PAITC EMPLOYEE.

21   AND THAT IS REFLECTED IN MR. AXELROD'S DECLARATION EXHIBIT E AT

22   PAGE 13.

23             THE REPRESENTATION TO THE COUNCILOR AUTHORITIES IN

24   CHENGDU WAS THAT MR. ZHENG WOULD -- WAS A PIATC EMPLOYEE WHO

25   WAS GOING TO THE UNITED STATES AND LEADING A DELEGATION FOR

1     THAT PURPOSE.  WE BELIEVE THAT'S CONSISTENT WITH THE

2     INTER-COMPANY TRANSFER ISSUE.

3          NUMBER TWO, IS A DOCUMENT IN WHICH PAI DESCRIBES

4     ITSELF IN COMMUNICATIONS WITH THE CUSTOM AND IMMIGRATION

5     SERVICE AS AN AGENCY FOR THE TRADE BUSINESS OF PAITC, THAT IS

6     MR. AXELROD'S DECLARATION EXHIBIT D, PAGES FIVE AND NINE.

7          WE THINK THAT THE CUSTOMER, THE VARIOUS CUSTOMER

8     DECLARATIONS, PERHAPS, PROVIDE THE BEST EVIDENCE THAT PAI

9     ACTING AS THE AGENT IN THE ALTER EGO OF PIATC, I WON'T GO

10    THROUGH ALL OF THEM EXCEPT TO MAKE THE POINT THAT, FOR EXAMPLE,

11    IN THE DECKER DECLARATION AT PARAGRAPH THREE, MR. DECKER

12    PROVIDES WHAT IS CONSISTENTLY SHOWN THROUGH THE CUSTOMER

13    DECLARATIONS AS EVIDENCE THAT SERVICES THAT ARE NOW BEING

14    PERFORMED BY PAI ARE THE SERVICES THAT PRIOR TO THAT -- THE

15    CREATION OF PAI WERE PERFORMED BY PIATC AND PANGANG GROUP

16    EMPLOYEES.

17         AND THE RELATED MATTER THAT YOU SEE IN ALL FIVE OF THE

18    CUSTOMER DECLARATIONS IS THAT AS TO LEGAL MATTERS PAI ACTS AS A

19    CONDUIT BETWEEN THE COMPANIES IN THE UNITED STATES, THE

20    CUSTOMERS IN THE UNITED STATES AND PAITC AND THE PANGANG GROUP

21    IN CHINA.

22         SO A CLAIM COMES UP WITH REGARD TO A DEFECTIVE

23    PRODUCT, AND THE INSTRUCTION TO THE COMPANY IS THE CUSTOMER IS

24    TO REACH OUT TO PAI, PAI ACTS AS A CONDUIT IN RESOLVING THAT

25    CLAIM BETWEEN PANGANG GROUP, PIATC AND THE CUSTOMER IN THE

1    UNITED STATES.

2            WE WOULD POSIT THAT THAT IS PRECISELY THE ROLE THE

3    THAT WE SUGGESTED THE COURT SHOULD HOLD PAI TO IN THIS CASE.

4            TWO MORE MATTERS WITH REGARD TO PIATC.  NUMBER ONE IS,

5    A MEMO POSITIONS DIRECTING PAI AND OUTLINING PAI'S

6    RESPONSIBILITIES, A MEMO CREATED -- ISSUED BY PIATC THAT

7    DESCRIBES PAI'S SUBORDINATE AND SUPPORTIVE RESPONSIBILITIES IN

8    THE UNITED STATES, VIS-A-VIS THE BUSINESS OF PIATC AND PANGANG

9    GROUP.  AND THAT IS MS. PATTILLO'S DECLARATION AT EXHIBIT O.

10           AND FINALLY THE OFFICE MOVE THAT WAS DIRECTED BY PIATC

11   WHICH, I BELIEVE, IS ALSO -- THERE'S A MEMORANDUM ATTACHED TO

12   SPECIAL AGENT PATTILLO'S DECLARATION, I BELIEVE, IT'S EXHIBIT

13   W.

14           THAT PIATC ONCE THE PANGANG MERGER TOOK PLACE IN 2011

15   NOTIFIED PAI THAT IT WOULD BE MOVING ITS OFFICE INTO AN OFFICE

16   SHARED BY -- SHARED WITH THE NEW MERGER PARTNER ONGONG GROUP.

17           THAT'S THE BEST EVIDENCE WE BELIEVE CONNECTING PIA

18   WITH PIATC IN AN AGENCY AND ALTER EGO RELATIONSHIP.

19           THE TITANIUM COMPANY RELATIONSHIP AND THE PGSVTC

20   RELATIONSHIPS ARE SIGNIFICANTLY LESS CONSTANT, IF YOU WILL,

21   THAN THE PIATC AND PANGANG GROUP RELATIONSHIPS.

22           AND OUR THEORY WITH REGARD TO THESE TWO COMPANIES, AND

23   I GUESS I'LL START WITH THE TITANIUM COMPANY, IS THAT THE

24   RELATIONSHIP BETWEEN PAI AND THE TITANIUM COMPANY IS A FUNCTION

25   OF THE DECISION OF THE PANGANG GROUP TO PLACE AN AGENT IN THE

1    UNITED STATES TO DEAL WITH PROBLEMS THAT ARISE WITH REGARD TO

2    PANGANG GROUP COMPANIES.

3              BECAUSE THE RELATIONSHIP BETWEEN THE PANGANG --

4    BETWEEN PAI AND THE TITANIUM GROUP COMPANY CAME UP FOR THE

5    FIRST TIME, THE DIRECT RELATIONSHIP WHEN THIS INVESTIGATION

6    BEGAN.

7              WHEN THIS INVESTIGATION BEGAN AND TITANIUM GROUP

8    EMPLOYEES WERE DETAINED UNDER A MATERIAL WITNESS WARRANT IN SAN

9    FRANCISCO, THE EVIDENCE IN SPECIAL AGENT PATTILLO'S DECLARATION

10   IS THAT PANGANG GROUP DIRECTED PAI TO ASSIST THE TITANIUM

11   COMPANY EMPLOYEES IN THE UNITED STATES OR IN SAN FRANCISCO.

12             AND THAT THEY WERE DIRECTED TO ADVANCE THE LEGAL FEES,

13   AND THEY ENTERED INTO AN AGREEMENT WITH PIATC TO ADVANCE THE

14   LEGAL FEES ON BEHALF OF THE TITANIUM GROUP EMPLOYEES.

15             THIS EVIDENCE GOES TO WHAT WE BELIEVE THE TEST FOR

16   GENERAL AGENCY IS, WHICH IS THAT IF IT WERE NOT FOR THESE

17   EMPLOYEES IN THE UNITED STATES, EMPLOYEES OF THE OTHER COMPANY

18   WOULD BE REQUIRED TO UNDERTAKE THESE RESPONSIBILITIES.

19             SOMEBODY HAD TO DO THIS.  THEIR AGENTS IN THE UNITED

20   STATES WAS THE ONE THAT WAS BOTH LOGICALLY AND CONVENIENTLY

21   ABLE TO UNDERTAKE THESE TASKS.

22             YOU CAN'T SEPARATE THIS EVIDENCE FROM THE OVERALL

23   CONTEXT OF THE CHAIRMAN FAN LETTERS AND THE DESCRIPTION OF

24   CHAIRMAN FAN'S DECISION THAT HE WRITES IN HIS LETTERS IN '08

25   AND 2010 WITH, YOU KNOW, TO CREATE PAI.

1        SO I WOULD SAY THAT THE EVIDENCE WITH REGARD TO THE

2   TITANIUM COMPANY ARE BOTH THE CHAIRMAN FAN LETTERS REGARDING

3   THE CREATION OF PAI AND THAN SEVERAL YEARS LATER THE ACTIONS OF

4   PAI WITH REGARD TO THE TITANIUM COMPANY EMPLOYEES WHEN AN ISSUE

5   ACTUALLY AROSE IN THE UNITED STATES THAT REQUIRED AN AGENT IN

6   THE UNITED STATES.

7        FINALLY, YOUR HONOR, WITH REGARD TO PGSVCT, VGC,

8   SORRY, THE LISTING COMPANY, NUMBER ONE, I WOULD REFER THE COURT

9   TO MR. SZAMOSSZEGI'S DECLARATION WHERE HE DESCRIBES THE ROLE OF

10  LISTED COMPANIES IN CHINESE STATE OWNED ENTERPRISES.

11       AND THE FACT THAT THESE ARE LARGELY CREATED TO BE

12  FUNDING MECHANISM, FINANCING MECHANISMS AND THEY ARE USED BY

13  STATE OWNED ENTERPRISES FOR THAT PURPOSE.

14       THE REASON THAT PGSVCT IS NAMED AS A DEFENDANT HERE IS

15  BECAUSE ITS AGENTS, INCLUDING THE PEOPLE NAMED AND REFERRED TO

16  IN THE INDICTMENT AND WE BELIEVE THE EVIDENCE WILL SHOW, WERE

17  ACTUALLY ENGAGED IN THE CONDUCT.

18       AS TO WHETHER IT CAN BE SERVED THROUGH PAI WE,

19  FRANKLY, YOUR HONOR, HAVE ONE PIECE OF EVIDENCE, AND WE BELIEVE

20  IT'S AN IMPORTANT PIECE OF EVIDENCE, IT IS PGSVCT THAT SETS THE

21  SALARIES FOR THE TWO EXECUTIVE EMPLOYEES, THE INTERCOMPANY

22  TRANSFER EMPLOYEES IN THE UNITED STATES, MR. WONG AND

23  MR. ZHENG.

24       THAT IS SPECIAL AGENT PATTILLO'S DECLARATION AT

25  EXHIBIT H AND REQUIRES JUST A SMALL AMOUNT OF EXPLANATION, YOUR

1    HONOR.

2              IT IS A MEMORANDUM THAT IS WRITTEN BY PANGANG GROUP

3    STEEL TITANIUM COMPANIES HUMAN RESOURCES DEPARTMENT.  IT

4    DIRECTS THE INTERNATIONAL, THE PIATC COMPANY TO SET THE

5    SALARIES OF PAI AND THE OTHER FOREIGN SUBSIDIARIES PER CERTAIN

6    FORMULAS THAT ARE DESCRIBED IN THE LETTERS.

7              AND I WOULD SAY THAT IT'S HARD TO POSIT MORE GREATER

8    CONTROL THAN THE CONTROL TO SET THE SALARIES OF THE TWO

9    MANAGERIAL EMPLOYEES OF PAI.

10             SO IT'S NOT A LOT.  I WOULD CONCEDE TO YOU WITH REGARD

11   TO PGSVCT, BUT IT ALSO ILLUSTRATES THE RELATIONSHIP BETWEEN

12   THESE COMPANIES THAT GOES BACK TO THE FIRST POINT THAT I MADE.

13             IT'S VERY DIFFICULT TO ARGUE THAT THEY'RE RESPECTING

14   SOME SORT OF VERY LOCK STEP U.S. STYLE CORPORATE FORMALITY WHEN

15   YOU HAVE ONE COMPANY INSTRUCTING ANOTHER COMPANY TO SET THE

16   SALARIES FOR A THIRD COMPANY, TO EMPLOYEES AT THE THIRD COMPANY

17   IN A CERTAIN WAY.

18             SO WE THINK THAT FOR THAT REASON THAT'S ACTUALLY VERY

19   COMPELLING EVIDENCE THAT SUPPORTS BOTH THE DIRECT TIE BETWEEN

20   PAI AND THE LISTING COMPANY, BUT ALSO THE GOVERNMENT'S THEORY

21   THAT SERVICE ON PAI AS THE REPRESENTATIVE OF THE GROUP COMPANY

22   AND ITS ENTITIES IS A VALID INTERPRETATION IN THIS CASE OF RULE

23   4 IN THE GENERAL AGENCY REQUIREMENTS.

24             **THE COURT:**  ALL RIGHT.

25             **MR. FELDMAN:**  YES, YOUR HONOR.  I'M MINDFUL OF THE

1    FACT THAT YOU SET THE AGENDA.  I COULDN'T KEEP TRACK OF

2    EVERYTHING MR. MR. HEMANN SAID, SO I'M NOT GOING TO BE ABLE TO

3    RESPOND TO EACH AND EVERY DOCUMENT THAT HE REFERRED TO.

4         I THINK, I COULD BE OF MOST ASSISTANCE TO THE COURT BY

5    SPOTLIGHTING A FEW THINGS THAT WOULD RESPOND GENERICALLY AND A

6    FEW THINGS SPECIFICALLY.  IT WILL NOT TAKE ME ANYTHING LIKE THE

7    AMOUNT OF TIME MR. HEMANN WAS FORCED TO USE.

8         **THE COURT:**  LET ME JUST -- I WANT TO MENTION ONE THING

9    TO ALL OF YOU BECAUSE IT'S GOING ON 3:30.

10        AS YOU PROBABLY KNOW THERE'S AN INVESTITURE OF A NEW

11   JUDGE DOWN IN OAKLAND THIS AFTERNOON AT 4:30, I HAVE TO LEAVE

12   HERE AT A QUARTER TO 4:00.  WE'RE NOT GOING TO FINISH, I TELL

13   YOU RIGHT NOW.

14        SO WE'LL HAVE TO TALK ABOUT WHEN WE CAN CONTINUE THIS,

15   WHETHER IT'S -- I DON'T KNOW WHAT YOUR SCHEDULES ARE TOMORROW,

16   THAT WOULD BE MY INCLINATION.

17        **MR. FELDMAN:**  FINE WITH ME.

18        **THE COURT:**  TOMORROW MORNING IF YOU'RE AVAILABLE?

19        **MR. FELDMAN:**  FINE WITH ME.

20        **MR. HEMANN:**  FINE WITH US.

21        **THE COURT:**  I DON'T WANT TO UNFAIRLY CUT YOU OFF.  I

22   DON'T WANT TO SAY OKAY STOP.  YOU DON'T HAVE TO SPEAK QUICKLY

23   BECAUSE THERE'S NOT GOING TO BE ANY BENEFIT TO PRIVACY OR

24   RECENCY, SO MUCH INFORMATION THAT I'LL BE DRIVING TO OAKLAND IN

25   ABOUT 15 MINUTES YOU WON'T BE PREJUDICE BY THAT.

1          **MR. FELDMAN:**  HOW ABOUT IF I DO WHAT ONE DOES WITH THE

2    JURY, ALTHOUGH, JUDGE LEGGE ONCE SAID TO ME, MR. FELDMAN, IT'S

3    JUST ME HERE.  HOW ABOUT IF I JUST POINT YOU TO ONE THING,

4    WOULD THAT BE OKAY?

5          **THE COURT:**  FINE.

6          **MR. FELDMAN:**  I WOULD ASK YOU TO LOOK AT AGENT -- DO

7    YOU HAPPEN TO HAVE ALL THAT MASS OF MATERIALS?

8          **THE COURT:**  I DO.

9          **MR. FELDMAN:**  CAN I IMPOSE UPON YOU TO JOIN ME AT

10   AGENT PATTILLO'S DECLARATION?

11         **THE COURT:**  YES.

12         **MR. FELDMAN:**  EXHIBIT W, I BELIEVE.

13         **THE COURT:**  I HAVE THAT IN FRONT OF ME.

14         **MR. FELDMAN:**  THEIR ARE TWO DOCUMENTS THAT'S ATTACHED

15   TO HER DECLARATION, BOTH ARE ENTITLED IN EFFECT AGREEMENT ON

16   ADVANCED DISBURSEMENT.

17         **THE COURT:**  YES.

18         **MR. FELDMAN:**  AND THEY REFER TO PARTY A AND PARTY B.

19         **THE COURT:**  CORRECT.

20         **MR. FELDMAN:**  YOU HEARD ABOUT THIS JUST NOW IN MR.

21   HEMANN'S EXCELLENT PRESENTATION.

22         **THE COURT:**  RIGHT.

23         **MR. FELDMAN:**  AND YOU'VE SEEN REFERENCE TO THIS IN

24   THEIR EXCELLENT MEMORANDUM.  THEY JUST GOT IT BACKWARDS,

25   THOUGH.  COMPLETELY STONE COLD BACKWARDS.

1       IT WOULDN'T MATTER IF THEY WERE RIGHT, BUT THEY HAPPEN

2   TO BE WRONG.  WHAT HAPPENED WAS THAT PANGANG GROUP

3   INTERNATIONAL ECONOMIC AND TRADING CORPORATION SENT MONEY TO

4   PAN AMERICA WHICH PAN AMERICA THAN DISBURSED.

5       PAN AMERICA DID NOT ADVANCE MONEY AND THEN GET

6   REIMBURSED.  THE CHINESE ENTITY THAT IS PARTY B SENT MONEY IN

7   ADVANCE TO PAI AND THAT'S EXACTLY WHAT HAPPENED IN JULY AND

8   THAT'S EXACTLY WHAT HAPPENED IN NOVEMBER.

9       SO NOT THAT IT WOULD MATTER IF IT WERE THE OPPOSITE,

10  BUT THEY JUST GOT THIS WRONG.  THERE'S A CLAIM IN THE PAPERS

11  THAT SOMEHOW PAN AMERICA WAS DONE OUT OF INTEREST, SO THIS

12  ENTIRE EDIFICE APPEARS ON ONE OF THE DEFENDANTS TO RELATE TO

13  WHO GOT INTEREST OR WHO DIDN'T.

14      THE FACT OF THE MATTER IS THAT MONEY WAS SENT

15  BEFOREHAND AND THEN DISBURSED.  IT DOESN'T REALLY MATTER THAT

16  MUCH, BUT THEY JUST GOT THAT WRONG.

17      AND I WOULD -- SO THAT'S ALL I HAVE TO SAY.

18      **MR. HEMANN:**  MAY I RESPOND VERY BRIEFLY, YOUR HONOR?

19      **THE COURT:**  YES.

20      **MR. HEMANN:**  WE DON'T THINK WE'RE WRONG.  WE DON'T

21  THINK IT'S IN THE RECORD AND WE THINK THAT MR. WONG BOTH WROTE

22  DOWN IN HIS OWN HAND --

23      **THE COURT:**  WHEN YOU SAY DON'T THINK IT'S IN THE

24  RECORD, WHAT?

25      **MR. HEMANN:**  THE STATEMENT THAT MR. FELDMAN JUST MADE.

1     **MS. RODDY:** I READ A DOCUMENT.

2     **THE COURT:** HE REFERRED -- WAIT A SECOND, MR. FELDMAN

3  REFERRED ME TO A DOCUMENT, WHICH WE'LL DO WITH ALL THE

4  DOCUMENTS YOU CITED, I WILL READ THAT AND I WILL MAKE MY

5  DETERMINATION.

6     **MR. HEMANN:** FINE.

7     **MR. FELDMAN:** FINALLY, WHEN I RESUME TOMORROW, I WILL

8  ADDRESS THE LEGAL STANDARDS, SO THAT WE'RE CLEAR ABOUT WHAT

9  WE'RE TALKING.

10     **THE COURT:** FAIR ENOUGH. SO WE'RE GOING TO START --

11  WE ARE COMPLETED THROUGH QUESTIONS CONTAINED IN THE PREMISE IN

12  4 AND 4A AND WE'LL START WITH 4B AND WE'LL CONTINUE THROUGH THE

13  END.

14     **MR. HEMANN:** YOUR HONOR, CAN I ASK --

15     **THE COURT:** BEFORE I DO THAT, THOUGH, I SHOULD DO

16  SOMETHING. I'M NOT GOING TO CLOSE YET, WE SHOULD HAVE ASKED

17  YOU FIRST. WE ARE OKAY FOR TOMORROW MORNING?

18     **THE CLERK:** 10:00. IS IT OKAY 9:00 A.M. TO BRING.

19     **MR. FELDMAN:** COULD I ASK MR. LIEW'S PRESENCE BE

20  EXCUSED?

21     **THE COURT:** ALL RIGHT.

22     **MR. FELDMAN:** JUST CLEAR TO THE MARSHALS HE DOESN'T

23  GET HAULED BACK HERE TOMORROW.

24     **THE COURT:** FAIR ENOUGH.

25     **MR. HEMANN:** CAN I ASK FOR CLARIFICATION YOU?

1          **THE COURT:**  YES.

2          **MR. HEMANN:**  YOU SAID WE'RE GOING TO START WITH 4B

3     TOMORROW, I DON'T THINK THERE'S A 4B.

4          **THE COURT:**  THAT'S CORRECT.

5          **MR. HEMANN:**  SORT OF IN THE MIDST OF MAYBE 4 RIGHT

6     NOW.

7          **THE COURT:**  I'M TAKING NOTES ON MY OWN DOCUMENT.  SO

8     WE'RE IN THE MIDST OF 4.  YES, WE ARE.  ALL RIGHT.  I KNOW

9     WHERE WE ARE.

10          **MR. HEMANN:**  SO WRAP UP 4 AND GO TO 5?

11          **THE COURT:**  JUST A MOMENT.  IN LIGHT OF -- I'VE BEEN

12     TOLD THERE ARE OTHER APPOINTMENTS THE COURT HAS TO DEAL WITH,

13     IF YOU CAN GAUGE PAST THIS PROLOGUE HOW MUCH TIME YOU THINK

14     ADDITIONAL YOU'LL NEED?

15          YOU'RE ALL VERY WELL PREPARED AND THE BRIEF IS VERY

16     WELL DONE.  I'D LIKE A REALISTIC, I'M NOT GOING TO PUT A

17     DEADLINE ON YOU, BUT I DO NEED TO RESCHEDULE SOME THINGS.

18          **MR. HEMANN:**  FROM OUR PART, YOUR HONOR, I WOULD ASSUME

19     THAT MR. FELDMAN IS GOING TO ADDRESS THE LEGAL STANDARDS, WE

20     HAVE SOMETHING TO SAY ABOUT THE LEGAL STANDARDS, I WOULD MAYBE

21     POSIT WE GOT FIVE MINUTES TO SAY ABOUT THE LEGAL STANDARD.

22          I THINK OUR PART WITH REGARD TO 5, NUMBER 5 IS VERY

23     SHORT.  AND THEN WITH REGARD TO THE QUESTIONS IN NUMBER 6 I

24     WOULD SAY THAT OUR PART IS VERY SHORT AS WELL.

25          SO OUR I WOULD SAY CERTAINLY FROM OUR PERSPECTIVE

1   SOUTH OF A HALF AN HOUR, 20 MINUTES.

2          **THE COURT:**  ALL RIGHT.

3          **MR. FELDMAN:**  SAME.

4          **THE COURT:**  SO IF WE SAID AN HOUR WE CAN BE PRETTY

5   COMFORTABLE?

6          **MR. FELDMAN:**  I WOULD HOPE IT WOULD BE LESS, BUT I

7   WOULD ASK YOUR HONOR TO SET IT FOR AN HOUR AND A HALF.

8          **THE COURT:**  WE'LL DO.  SO ORDERED.  THANK YOU VERY

9   MUCH, COUNSEL.  SEE YOU TOMORROW MORNING.

10          **MR. AXELROD:**  THANK YOU.

11          **MR. FELDMAN:**  THANK YOU.

12

13                    (PROCEEDINGS ADJOURNED.)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 17TH DAY OF JULY, 2012.

/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR