Pages 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nathanael Cousins, Magistrate Judge

```
                                 )
                                 )
 United States of America,       )   No. CR11-05730 RS
                                 )
            Plaintiff,           )
       vs.                       )
                                 )
 Walter Liew and Christina       )
 Liew.                           )
                                 )
            Defendants.          )
                                 )
 _____  )
```

San Francisco, California
Wednesday, August 24, 2011

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES:**

For Plaintiff:

MELINDA HAAG
United States Attorney
450 Golden Gate Avenue, 11th Floor
San Francisco, California  94102
**BY:  JOHN HENRY HEMANN**
**PETER BENJAMIN AXELROD**
**ASSISTANT UNITED STATES ATTORNEYS**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Transcribed By:      Stacy Wegner
Transcriber
smwtyping@gmail.com
(859) 539-2802

**APPEARANCES:    (Continued)**
For Defendant Christina Liew:
                          Ramsey & Ehrlich LLP
                          803 Hearst Avenue
                          Berkeley, CA 94710
            **BY:  ISMAIL JOMO RAMSEY**
                          **ATTORNEY AT LAW**

For Defendant Walter Liew:
                          Manchester, Williams & Seibert
                          125 S. Market Street
                          Suite 1100
                          San Jose, CA 95113
            **BY:  JOHN LYLE WILLIAMS, JR.**
                          **ATTORNEY AT LAW**

| | |
|---|---|
| 1 | <u>Wednesday, August 24, 2011</u>                    <u>10:35 a.m.</u> |
| 2 | |
| 3 |      TRANSCRIBERS NOTE:  Audio transmission malfunctioned |
| 4 | periodically throughout the proceeding as indicated in the |
| 5 | record. |
| 6 |      **THE CLERK:**  Calling criminal 11-0573, United States |
| 7 | versus Walter Liew, United States versus Christina Liew. |
| 8 |      **THE COURT:**  Appearances, please. |
| 9 |     **MR. AXELROD:**  Good morning, Your Honor.  Pete |
| 10 | Axelrod and John Hemann for the United States. |
| 11 |      **THE COURT:**  Good morning, Mr. Axelrod and Mr. |
| 12 | Hemann. |
| 13 |      **MR. HEMANN:**  Good morning, Your Honor. |
| 14 |     **MR. WILLIAMS:**  Good morning, Your Honor.  John |
| 15 | Williams with Mr. Walter Liew who is in custody of the Marshal |
| 16 | service and in the courtroom. |
| 17 |      **THE COURT:**  Good morning, Mr. Williams. |
| 18 |     **MR. RAMSEY:**  Good morning, Your Honor.  Ismail |
| 19 | Ramsey on behalf of Christina Liew, who is present, out of |
| 20 | custody and being assisted by a Mandarin speaking interpreter. |
| 21 |      **THE COURT:**  Good morning, Mr. Ramsey.  Ms. Liew. |
| 22 | Good morning, Mr. Liew. |
| 23 |      **UNIDENTIFIED SPEAKER:**  Good morning. |
| 24 |      **UNIDENTIFIED SPEAKER:**  Good morning. |
| 25 |      **THE COURT:**  All right.  So I'll defer to the parties |

1  as to the order that you want to do things.  As I understand,

2  we need for Ms. Liew to arraign her on the indictment; is that

3  correct?

4          **MR. RAMSEY:**  Yes, Your Honor.

5          **THE COURT:**  And --

6          **MR. WILLIAMS:**  Your Honor, I wondered -- excuse me.

7          **THE COURT:**  Yes.

8          **MR. WILLIAMS:**  -- if I can interrupt the Court for

9  one -- one reason only?  One, I have a sureties here, one of

10  whom is a United Airlines pilot, George Wong, who is here with

11  his wife, and unfortunately he has a flight to check in for at

12  11:00 o'clock.

13

14          We can't -- I just sent the one -- George, can you

15  (inaudible) stand up, please?  They're here in the courtroom.

16  I just wanted to acknowledge that for the Court.  I can

17  discuss what it is they could or could not say.  They've been

18  interviewed by Pretrial Services already.

19          **THE COURT:**  All right.  I appreciate you being here,

20  as well as the other people who are in attendance, and I

21  understand you have somewhere else you need to be.  I'm not

22  sure that we're going to be able to accommodate that on a

23  scheduling end of things.  We've got --

24          **MR. WILLIAMS:**  I appreciate that.  I just wanted the

25  Court to understand that they were here.  That's all.

1    **THE COURT:**  Yeah.  I understand that you're here and

2    thank you for being here.  We've got important things we need

3    to make sure we get done.  If they need to leave, I

4    understand, and we'll -- we'll address the surety issues at

5    the right time.

6    **MR. WILLIAMS:**  Thank you.

7    **THE COURT:**  So I think -- does it make the most

8    sense -- so for -- for Mr. Liew we're going to have -- we've

9    got a detention hearing which is set today.

10    **MR. WILLIAMS:**  Yes.

11    **THE COURT:**  Do the parties -- are you in agreement

12    or disagreement as to what the proposed --

13    **MR. HEMANN:**  Well, we have to arraign both Mr. and

14    Mrs. Liew, Your Honor.

15    **THE COURT:**  All right.

16    **MR. HEMANN:**  We should probably do that first and

17    then move to the --

18    **THE COURT:**  Agreed, but just forecasting what we

19    need to do.  We've got detention issues that we -- that are in

20    dispute for Mr. Liew; is that correct?

21    **MR. AXELROD:**  That's correct, Your Honor.

22    **THE COURT:**  And Mrs. Liew, we've already addressed

23    those?

24    **MR. AXELROD:**  At this point, Your Honor, we've

25    addressed those.

1      **THE COURT:**  All right.

2      **MR. AXELROD:**  (Inaudible - - audio malfunction.)

3      **THE COURT:**  Okay.  So let's proceed with the

4  arraignment of Mrs. Liew first, and then we'll turn to Mr.

5  Liew.

6      Mr. Ramsey, you have a copy already of the

7  indictment?

8      **MR. RAMSEY:**  Yes, Your Honor.

9      **THE COURT:**  And she -- she's previously been alerted

10  to the -- to the charges, and do you waive a more detailed

11  reading of them?

12      **MR. RAMSEY:**  Yes, Your Honor.

13      **THE COURT:**  And do -- are you ready to enter a not

14  guilty plea?

15      **MR. RAMSEY:**  Yes, Your Honor.

16      **THE COURT:**  All right.  So a not guilty plea will be

17  entered.

18      **MR. AXELROD:**  And I just want to just -- I may have

19  missed this, but I know this is a new interpreter, and I want

20  to make sure that he's been sworn.

21      **THE CLERK:**  Yes, he has.

22      **MR. AXELROD:**  Okay.  Thank you.

23      **THE COURT:**  The record will reflect he has been

24  sworn in.  All right.

25      Anything else we need -- need to do for Mrs. Liew?

1    **MR. HEMANN:**  I think, Your Honor, on the indictment

2    we need to advise her of the charges and the maximum

3    penalties.

4         **THE COURT:**  Okay.  I thought we'd already advised

5    her of the --

6         **MR. HEMANN:**  We did that on the complaint.  We

7    probably need to do it on the indictment (Inaudible - - due to

8    simultaneous colloquy.)

9         **THE COURT:**  My mistake.  I -- I -- I confused the

10   two in my brain.

11        So I'll ask whichever of you would like to take the

12   role to -- to summarize the charges in the indictment and to

13   advise Mrs. Liew of the maximum penalties provided by law.

14        **MR. HEMANN:**  And -- and would you like me to do both

15   Mr. and Mrs. Liew at the same, Your Honor?

16        **THE COURT:**  If -- if that's efficient justice,

17   please do.

18        **MR. HEMANN:**  Your Honor, Mr. and Mrs. Liew are

19   charged in a four-count indictment alleging witness tampering

20   and making false statements.

21        Mr. Liew is charged in counts one and three -- one,

22   three and four.

23        Mrs. Liew is charged in counts two and four -- two,

24   three and four.

25        Counts one and two of the indictment charge witness

1  tampering, a violation of 18 U.S.C. Section 1512(b)(1).

2      The maximum penalty for those charges are 20 years

3  imprisonment, three years in supervised release, a $250,000

4  fine, and $100 special assessment.

5      Both Walter and Christina Liew are charged in count

6  three of the indictment for violation of 18 U.S.C. Section

7  1512(k), which is conspiracy to tamper with witnesses and

8  evidence.

9      The maximum penalty for that charge is 20 years

10  imprisonment, a three-year term of supervised release, a

11  $250,000 fine and a $100 special assessment.

12      And then in count four, both Walter and Christina

13  Liew are charged with violating 18 U.S.C. Section 1001(a)(2),

14  making false statements in a manner within the jurisdiction of

15  the executive branch.

16      The maximum penalty for that charge is five years

17  imprisonment, three years of supervised release, a $250,000

18  fine and $100 special assessment.

19      THE COURT:  All right.  Mr. Williams, do you have a

20  copy of the indictment?

21      MR. WILLIAMS:  I have received that, Your Honor.

22  Thank you.

23      THE COURT:  And do you waive a more detailed

24  reading?

25      MR. WILLIAMS:  I do.

1      **THE COURT:**  And are you ready enter a plea on behalf

2  of Mr. Liew?

3      **MR. WILLIAMS:**  (Inaudible) not guilty as well, Your

4  Honor.

5      **THE COURT:**  All right.  Thank you.  And Mr. Ramsey,

6  I think I got ahead of myself before, but have you received a

7  copy of the indictment?

8      **MR. RAMSEY:**  Yes, Your Honor.

9      **THE COURT:**  And Mrs. Liew, do you understand the

10  charges?

11      **THE DEFENDANT CHRISTINA LIEW (through interpreter):**

12  I understand.

13      **THE COURT:**  All right.  And I've entered a not

14  guilty plea to her on those charges.  All right.

15      As to Mrs. Liew, what's the Government's position of

16  her continued release or detention?

17      **MR. HEMANN:**  At this point in time, Your Honor,

18  we're comfortable with the terms that are -- that she was

19  released on the complaint.

20      **THE COURT:**  All right.  So we'll continue the

21  release conditions for Mrs. Liew.

22      Mrs. Liew, we previously had a hearing where we

23  determined the conditions of your release.  Those conditions

24  will continue for you.  All right.

25      Anything else we need to do as to -- to Mrs. Liew's

1  part of the case?  We need to set a date.

2      **UNIDENTIFIED SPEAKER:**  (Inaudible).

3      **MR. RAMSEY:**  Yeah.  If we could set the date for --

4  with her after we have the detention hearing, I think that

5  would be appropriate.

6      **THE COURT:**  All right.  Well --

7      **MR. RAMSEY:**  The are custom issues as to (Inaudible

8  - - audio malfunction.)

9      **THE COURT:**  All right.  Well, she -- she then can --

10  can sit down or can wait while we do the detention issues if -

11  - and you as well, Mr. Ramsey, unless there's anything you'd

12  like to address now?

13      **MR. RAMSEY:**  No, Your Honor.

14      **THE COURT:**  All right.  Then turning to the

15  detention issues for Mr. Liew, have the parties received a

16  copy of the prebail report, which has both an addendum and an

17  initial report?

18      **MR. AXELROD:**  Yes, Your Honor.

19      **THE COURT:**  Mr. Williams.

20      **MR. WILLIAMS:**  Yes.

21      **THE COURT:**  And turning to you, Mr. Axelrod, first,

22  what is your position on a release or detention of the

23  Defendant?

24      **MR. AXELROD:**  Well, the Government moves for

25  detention, Your Honor, and -- and I would say this.  Having

1    reviewed the two reports from Pretrial Services, I seemingly

2    agree with their reasoning and their basis for their

3    assessment with the issues of flight risk and he should be

4    detained.

5            What I'd like to do is spend a little bit of time

6    amplifying on some of the issues that were raised in the --

7    the bail studies.

8            First of all, this -- this case right now relates to

9    witness tampering and false statement in conjunction with

10   theft of trade secrets.

11           There's a civil case filed by the DuPont Company

12   against Mr. Liew and his company, and it's important for the

13   Court to understand -- and -- and that's where we are right

14   now.  We are, obviously, actively investigating the trade

15   secret aspect of this, and that's important for a number of

16   reasons.

17           First is the technology that we're talking about is

18   titanium dioxide manufacturing.  It's -- it's a very complex

19   technology.  It's a very expensive technology.  To get a plant

20   of the type that Mr. Liew and his company were working on

21   built is on the order of three, 400 million dollars.

22           **THE COURT:**  Now, I'll disclose I've been at a number

23   of titanium dioxide manufacturing plants, so I'm familiar with

24   the --

25           **MR. AXELROD:**  Okay.

1      **THE COURT:**  -- with the technology.

2      **MR. AXELROD:**  That -- that's a -- that's a

3  surprising disclosure.

4      **THE COURT:**  It's not going to make me -- you know,

5  it's not going to change how I feel on this issue but --

6      **MR. AXELROD:**  Right.

7      **THE COURT:**  -- I'm very familiar with the

8  technology.

9      **MR. AXELROD:**  Well, very well then.  Then let me

10  move on.  The point is this is -- this is a big dollar item

11  and it's a complicated item and -- and in consequence, there

12  would be a motive to flee because the charges -- I mean, these

13  charges are serious.  Additional charges, even where the

14  guidelines were would be very serious, but let me really focus

15  on the flight risk posed by his substantial ties abroad and

16  really the ties here in the community.

17      As you know, it's basically his business, whether

18  it's in his current iteration as USAPTI or its former

19  iterations, is working on projects to -- selling these DuPont

20  technologies to build titanium dioxide facilities in China.

21      And there's at least two large projects.  One is in

22  Junsu.  It's a 30,000-metric-ton facility.  And now there's a

23  100,000-ton facility for the Pangang Group.  The contract

24  alone for the Pangang Group is 17 million dollars,

25      So what you've got, and -- and this is reflected in

1   the -- the bail study -- this is somebody who's constantly

2   traveling overseas.  Understandable, considering he's got at

3   least two major projects in China, and as far as we're aware,

4   we're not aware of any domestic activity that -- that that

5   business engages in.

6         So what you've got is a situation where there's

7   substantial business ties to China, substantial travel to

8   China and -- and an asset picture that is extremely

9   complicated.  And -- and, you know, to be candid, it's an

10  asset picture that we're still working through,

11        But those -- the asset picture indicates, for

12  starters, that Mr. Liew, his wife, the codefendant, and their

13  various businesses have over 50 bank accounts.  And obviously,

14  all that is not reflected in this bail study, but there are

15  substantial foreign -- the nexus is to some of the activity.

16        I'll just give you one example.  On two of the

17  projects that the PTI is involved in, there are letters of

18  credit, so there's letters of credit from banks in China that

19  USAPTI and Mr. Liew have been able to draw on here.  One

20  letter, in fact, for over 50 million dollars.  I believe

21  there's over three million dollars remaining on that letter of

22  credit.  That's on one project.

23        On another project there's a over two-million-dollar

24  letter of credit, meaning that he has the ability to draw on

25  these funds that are in China and direct where they go to,

1   okay, and that is a real concern.

2           Beyond that, there's -- what I can say about the

3   banking activity, the financial activity, we've seen so far is

4   it involves, you know, millions of dollars that are -- are

5   moving around or have been in various accounts at various

6   points in time.

7           I haven't -- I'm not in a position to tell you where

8   it's all ended up, but that fact alone raises substantial

9   concerns, particularly when you think about the fact that

10  they've got all this business overseas.  They've -- they're,

11  obviously, originally from overseas, and they don't own any

12  property here.

13          Now, they acknowledge that they're buying property

14  in Singapore.  We believe they also have a property in Lou

15  Ming, China.  So it -- these kinds of things, given the sort

16  of the position of this case, raise enormous concerns about

17  flight risk.

18          And it's frankly surprising, giving -- given the --

19  the amount of money that's involved in these contracts and

20  their business activities that -- that there is no property

21  here in the United States.  There's all these ties -- and

22  other than, you know, the minor child, there's not family, so

23  these are some of the concerns that I wanted to share with the

24  Court.

25          **THE COURT:**  All right.  I -- I will give you, Mr.

1  Williams, a full chance to -- to -- to respond and address

2  these issues.

3       Mr. Axelrod, as you're listening to -- to him, two

4  kind of follow-up questions I have for you are, are there

5  conditions that could address those -- those risk of flight?

6       And the propose sureties from the defense, which

7  we'll hear more about what they're proposing, if you can

8  comment when -- on reply as to the appropriateness of those

9  sureties to address the risk of flight.

10      So Mr. Williams, what's your position?

11      **MR. WILLIAMS:**  Well, thank you, Your Honor.  Let me

12 start with the fact that my client is well aware of the nature

13 of the charges, not just these charges, but the ongoing

14 investigations before he was arrested.

15      There was a lawsuit filed that -- I think Mr.

16 Axelrod has eluded to that -- back in April, which laid out

17 the allegations relating to the theft of trade secret.

18      There was more than a month ago in July a search

19 warrant executed at Mr. Liew's residence and his business, as

20 well as search warrants executed that were directed at several

21 of his customers from Mainland China that were here at the

22 time.

23      Mr. Liew sought counsel.  Counsel had what I would

24 characterize as discussions with the Government.  The day

25 before he was arrested, Mr. Liew was physically in this

1    building with his wife, and at the time we offered self-

2    surrender him, and that was declined.

3            And at that moment, I think the Court can reasonably

4    infer, that Mr. Liew knew well what was about to happen and

5    what the general parameters of the allegations were going to

6    be on this case.  So to address the issue of flight, I think

7    you should start with that.  That's a fact.  That's a fact.

8            His wife has been released.  She's here.  She's been

9    here since she was released.  They have a ten year-old minor

10   son Michael, Michael who's here in the courtroom.

11           He does have significant ties to the community.  The

12   -- he's been a citizen for over 20 years.  He's lived in the

13   Bay Area almost all of that time.

14           True, he doesn't own a house now, but he and

15   Christina did own a house here in this -- in this area within

16   the last several years.

17           We have proposed a number of sureties to the Court,

18   and I'll talk about those in just a moment, but let me back to

19   some of the allegations that are suggested by Mr. Axelrod in

20   this matter.

21           This is a trade secret case, and I don't know how

22   much experience the Court has had with these.  I've had a fair

23   amount over the years, and it's been my conclusion in these

24   cases that it is really a black and white situation.

25           And to the extent that it is being suggested that

1  the reason -- that the ability of the Chinese corporations to

2  build these plants is because Mr. Liew has provided them with

3  technology that they otherwise could not have reached or that

4  would make it impossible for them to build these things is

5  simply incorrect.

6          For example, the 30,000-ton project that's been

7  referred to was up and running.  This is really an expansion

8  of an existing plant.  These plants exist in China.  They are

9  competitive, whether we like that or not.

10         And the issue of whether or not a trade secret has

11  been taken and utilized, those are always interesting issues,

12  but to suggest that the reason that this is ongoing is because

13  of that theft, I think, is incorrect.

14         It's true, he does a lot of business in China.  I

15  don't deny that.

16         It's true that he has property in Singapore and

17  property and bank accounts that have been disclosed to

18  Pretrial Services.

19         However, the issue of whether or not there's another

20  six million dollars that could be drawn on by Mr. Liew as a

21  result of these letters of credit, the Court should consider

22  two factors.

23         Number one, his customers were here, and they were

24  probably not terribly enthused to their searched -- their

25  hotels searched by the FBI and their passports seized.  The

1   viability of the business and the continuing business

2   environment may not be all that -- that official to Mr. Liew.

3            Secondarily, that's an easy issue to address.

4   That's an easy issue to address in terms of the Court making

5   orders, the Government making whatever reasonable orders they

6   want to make that we're obviously going to comply with.  He's

7   not going to draw on that six million dollars if the Court

8   tells him he can't do it.

9            In terms of the allegations about money moving, his

10  50 bank accounts -- I mean, I've -- I've been provided be no

11  information about that.  I don't know what to say about that.

12  I -- I don't know where the money moves or doesn't move.

13           He has a business entity.  He has had other business

14  entities in the past.  He's dealing with Chinese business

15  entities.  More than that, I cannot say.

16           Well, let me address, if I may, go to the issue of

17  the sureties.  Your Honor, I think for too many years we have

18  all, myself included, been so caught up in the real estate

19  market that we think that's there's only one way to do this,

20  and that's to put up property values up.  And that's because

21  until, what, 2008, everybody had $200,000 equity in the house,

22  right?  That's not the case anymore.  That's not the case

23  anymore.

24           And what we propose to the Court to -- to evidence

25  the fact that he has deep ties to this community are nine

1    separate sureties.

2            And I'm sorry, Your Honor, I'm going to provide --

3    this is the list we sent to these folks.  This is a list, Your

4    Honor, that I provided to the Government and to Pretrial

5    Services, and let me apologize publicly for not getting it to

6    them until 3:00 o'clock yesterday.  I -- I -- that was

7    unfortunate.  I wish I'd been -- give it to them earlier.

8            But what it represents, Your Honor, is a list of

9    sureties that we're proposing to the Court.  Now, some of

10   these folks have been spoken to by Pretrial Services.  Others

11   have not because of the lateness in the hour in which we

12   delivered it.

13           The dollar numbers may not look impressive to the

14   Court, in the sense that we're used to two or three hundred

15   thousand dollars in property bonds in the past, but I think

16   that it is something that the Court should take into

17   consideration because these nine people represent really nine

18   different kinds of people, if you will.

19           There's a family member, his stepdaughter Joanna,

20   who's present in the courtroom, that is here.  There are

21   neighbors, one of whom we to say good-bye to.  That's the

22   airline pilot, Mr. Wong, but there also are other neighbors

23   here.  There are friends, and there's a classmate from -- from

24   college, Mr. Hu Chang (phonetic).  Each of these people

25   represent a different phase, if you will, of Mr. Walter Liew's

1  life in connection with this country.

2        Now, when you look at the amounts of money that are

3  being pledged by Joanna, his stepdaughter, and by Ema Lee

4  (phonetic), two thousand dollars, I know that's not the sort

5  of numbers we normally throw around here in the district

6  Court, but let me tell you why it's significant.

7        Neither of those have very much money, and that

8  commitment of two thousand dollars from each of them

9  represents a significant commitment of -- of moneys that are

10  available to them.

11        Ema Lee, for example, is -- is a teacher at Lincoln

12  High School.  She's a single mom.  That's a lot of money to

13  her.  The two thousand dollars that Joanna is talking about

14  pledging represents a significant portion of the money that

15  she's accumulated over the years.

16        The -- the individuals -- some of the other

17  individuals that we're talking about here, Mr. Albert Son

18  (phonetic), who is not present, and Mr. Feng Shu (phonetic)

19  and his wife Dana Woo, they're not here today.  They could be

20  here next week.

21        Mr. Feng Shu actually works on the east coast.  He

22  lost a job here and had to go to the east coast and find a

23  job.  He's prepared to fly back here next week, if the Court

24  is willing to entertain his petition to -- to be a surety, fly

25  back here and post it.

1              Mr. Albert Son, a classmate of Walter's from

2     college, is presently in Taiwan.  He's prepared to get on an

3     airplane next week and fly over here, so that he can also post

4     a bond on behalf of his long-time friend.

5              And so while the numbers may not be overwhelming,

6     Your Honor, the kinds of people that we're offering are.  And

7     I think that the commitment that they're showing, that they

8     are showing by being here today, and that they are prepared to

9     show in the future by coming from distant places in order to

10    pledge property on his -- on his behalf is -- is a significant

11    factor.

12             He's prepared to sort of post a two million dollar

13    unsecured bond secured by 200 thousand dollars in cash.  And

14    perhaps most importantly, we're obviously willing to have him

15    supervised on electronic monitoring, as his wife is presently,

16    or if the Court is not comfortable with that because of the

17    arguments the Government has made here, we're happy to have

18    him in a halfway house.

19             This is going to be a case that's going to linger,

20    unfortunately, in the court.  It's a case that's going to

21    involve boxes and boxes and boxes of documents.  It is

22    extremely difficult for him to properly defend him in a

23    custodial situation.

24             And I recognize that isn't a reason to let him out,

25    but it's a factor that I think the Court can consider when you

1  look at what we're presenting as -- as guarantees to the

2  Government and to the Court.  And I'm prepared to answer any

3  other questions the Court might have about the sureties.

4         THE COURT:  Very well.  So to make sure I understand

5  what you're proposing, it's a release on a two million dollar

6  unsecured bond with 200 thousand dollars secured with the

7  sureties here estimated on this document --

8         MR. WILLIAMS:  That's correct.

9         THE COURT:  -- being the secured and unsecured and -

10  - and it sounds like some of them are not here --

11         MR. WILLIAMS:  Yes.  The ones that are here --

12         THE COURT:  -- today?

13         MR. WILLIAMS:  George and Janet Wong, number two,

14  had to leave.  Joanna Liew, Walter's stepdaughter, is here.

15  Number three, Mr. Shu and Dana Woo are not here.  As I

16  indicated, he's prepared to fly back from the east coast next

17  week.

18         Ema Lee is a teacher, and she, unfortunately because

19  she's teaching, ideally would like to come down sometime after

20  4:00 o'clock because she teaches until after three, but if

21  not, we can probably arrange something next week with her

22  also.

23         Mr. Feng, who's an attorney, could not be here

24  today, but he is available later this week or next week.

25         Jenny Dwong (phonetic) is present in the courtroom.

1   Jenny is right here?  Yeah, Jenny is here.

2           Steve Reese (phonetic) and Regina May (phonetic) are

3   here also.  They're here.

4           Albert Son is the gentleman that I indicated is in

5   Taiwan but prepared to fly back next week.  And lastly Mr. Hu

6   Chang is here.  Thank you, Mr. Chang.

7           **THE COURT:**  Thank you, Mr. Chang.  All right.  For

8   those of you who are here, I appreciate you being here.  It's

9   important for you to understand this is not a proceeding to

10  determine the guilt or innocence of Mr. Liew.

11          It's a hearing to determine whether there's --

12  whether he should be detained or released while the case is

13  pending.  And it's very important to have you here to --

14  whatever the Court decides in evaluating whether there are

15  conditions that would be sufficient to guarantee that Mr. Liew

16  will make future court appearances in this case.

17          Now, Mr. Williams, before I turn it back to Mr.

18  Axelrod to reply, you had mentioned that it was late yesterday

19  before you got all the surety information to Pretrial

20  Services.

21          **MR. WILLIAMS:**  Yeah, and I apologize to both

22  Pretrial Services and the Government.

23          **THE COURT:**  So one thing, while Mr. Axelrod is

24  speaking, I want you to think about is whether you would like

25  a chance for them to do further inquiry, even today with these

1   sureties.

2          **MR. WILLIAMS:**  Yes, I think Pretrial -- I'm sorry,

3   Your Honor.

4          **THE COURT:**  Yeah.

5          **MR. WILLIAMS:**  Pretrial Services has spoken to, I

6   think, three of the five that are present -- that were going

7   to be present today.

8          They spoke to Mr. Walter -- I'm sorry, to Mr. George

9   Wong who has had to leave.  They haven't spoken to the

10  stepdaughter, and they haven't spoken to Jenny Dwong, but

11  they're both here.

12         **THE COURT:**  All right.  So one thing I want you to

13  think about -- I don't know that that would change their

14  recommendation.  They have -- they have recommended that your

15  client be detained in this case.

16         One option for you is to continue this and -- and

17  submit further information to them and see if that changes

18  their recommendation.  I don't know that it would, but I

19  wanted to --

20         **MR. WILLIAMS:**  I appreciate that, Your Honor.  Now,

21  it --

22         **THE COURT:**  -- have -- have you consider that as an

23  -- as an option.

24         **MR. WILLIAMS:**  It had been my hope here to go on

25  vacation next week, but --

1       **THE COURT:**  Oh, I --

2       **MR. WILLIAMS:**  -- if the Court would be willing to

3  let this go over to Friday, that would give us the ample time,

4  I think --

5       **THE COURT:**  Yeah, and I know that they're all --

6  many of them are here today.  And -- and it -- and it's

7  inconvenient for them to have to return, but I just wanted to

8  have you consider that as one -- one possibility.

9       **MR. WILLIAMS:**  Will -- I will indeed, thank you.

10      **THE COURT:**  Mr. Axelrod, you've heard their -- the

11  position of the defense and the proffered sureties and release

12  conditions.  What's your response?

13      **MR. AXELROD:**  Thank you, Your Honor.  Well, I -- my

14  response is -- it is -- this is not a situation where we have

15  (inaudible) fashioned a set of conditions that will work.

16  There's a couple things I want to talk that address that.

17      And -- and I want to say at the outset, you know, I

18  raised the issue of the -- all of the bank accounts, and the

19  fact that the Pretrial Services report includes a portion of

20  the financial activity.  And the response was, you know, that

21  Mr. Williams doesn't know what to say about it.

22      Well, actually his client does and can, and I think

23  that the absence of that information, absence of a discussion

24  of that is disconcerting.

25      We also raised the issue of their ownership of

1   property in China.  That wasn't addressed.

2          And -- and I want to point out and I -- that the

3   connections to China and the Chinese Government is actually a

4   lot more involved than that.  Let me explain what I mean by

5   that.

6          In the first instance, we've obviously been talking

7   to a number of witnesses in this case.  One of them is a

8   gentleman named Tim Spitler, who was a former employee of

9   DuPont, who worked with Mr. and Mrs. Liew.  And what he

10  explained was that Mr. Liew told him that his wife, the

11  codefendant, Christina Liew, is the niece of the governor of a

12  large province in China, and they're essentially connected and

13  that's how he gets business over there.

14         That -- that is not the only person who's made some

15  statement to that effect because we've also spoken to the

16  Chinese customer that Mr. Williams alluded to who was here.

17  One of those individuals is gentleman named Juong Chi

18  (phonetic)

19         And according to Mr. Chi, Mr. Liew told him that his

20  wife -- excuse me -- not -- I believe it's -- what he was told

21  was that Mrs. Liew's father was a high ranking Chinese

22  official.

23         And so -- and -- and we -- in the course of going

24  through the materials that we've obtained in the search

25  warrant, we've also found, you know, documents that lend

1  credence to this, is phone lists with page after page of

2  contacts with -- of Chinese officials with home numbers and

3  office numbers, and so the connections to China are deep.  And

4  I don't think that those issues have been addressed by the

5  defense, and I think they're quite serious.

6           And I think that -- I certainly appreciate that

7  there are a number of people here in support of Mr. Liew and

8  that are willing to make the -- pledge certain assets, but you

9  know, the picture here is in the tens of millions of dollars.

10          And -- and one of the things that Mr. Spitler told

11  us was that back in about 2005 or 2006 Mr. Liew told him "Hey,

12  we've got 50 million dollars in the bank."  I don't -- I can't

13  verify that right now, but when I look at the rest of it, and

14  it raises questions.

15          And then the -- the -- that -- and frankly, I just -

16  - given his ties to China, given his travel to China, given

17  the fact that his businesses are in China, I don't see any way

18  that that can be addressed.

19          Even if it would -- even if it could be, the concern

20  that I've got with the surety proposal is -- this is a de

21  minimis amount, given the scope of that activities that we're

22  talking about.

23          And if the Court were ever -- if it were inclined to

24  go further, I would -- I think I would want to make inquires,

25  given the underlying witness tampering involved in it.  I

1 mean, you know, remember, on the civil case they've already --

2 they've out -- you know, according to the indictment, entered

3 a hearing with witnesses, so I would really want to make sure,

4 if the Court is inclined to go that way, what the arrangements

5 are in -- in -- between them. But in short, that's -- that's

6 my response.

7         THE COURT: But you don't have any -- you don't have

8 any evidence of -- of surety tampering at this time?

9         MR. AXELROD: No. No, Your Honor, and I'm not

10 making that allegation.

11         THE COURT: What -- what is your feelings about the

12 appropriateness of release on electronic monitoring? Why --

13 why couldn't electronic monitoring address the concerns raised

14 in the Pretrial Services report about risk of flight?

15         MR. AXELROD: Because what you have at that point --

16 and I think at that -- if the Court were inclined to go that

17 way, I think that would -- we would want to revisit Mrs.

18 Liew's release conditions, and -- and -- and let me explain

19 why.

20         THE COURT: Uh-huh.

21         MR. AXELROD: I think if both of them are out on

22 electronic monitoring gives them ample opportunity -- and I

23 can actually articulate now concerns about Mrs. Liew and her

24 ability to evade surveillance and her counter surveillance

25 techniques and what's been going on in the last, you know,

1   month or two as this has been playing out.

2           So my concern about his release at all is that once

3   you put him out, it doesn't take much to cut that thing off

4   and get out of dodge.

5           And she has demonstrated the ability over this past

6   period of time to engage in very erratic driving behavior,

7   take counter surveillance measures, to pull over on the side

8   of the road, to cut across lanes of traffic, to do the kinds

9   of things that one, you know, would allow her to -- to lose

10  people that, you know, may be pursuing her, but it also

11  creates a situation where there is a real danger that they

12  would be successful in leaving and leaving this country and

13  going back to the place where they have property, connections

14  and business relationships, and possibly a lot of assets.

15          So -- and they -- they -- you know, I don't think

16  that having them both out -- I think that creates an entirely

17  different picture that is a much more risky situation than

18  we're in right now.

19          THE COURT:  All right.  Mr. Williams, there are a

20  few things that Mr. Axelrod said that you had not addressed

21  whether volitional or not, and I want to give you a chance to

22  --

23          MR. WILLIAMS:  Thank you.

24          THE COURT:  -- to respond on those.

25          MR. WILLIAMS:  Mr. Liew doesn't own any property in

1    China.  I don't know anything about that.  Okay.  It's very

2    difficult when you come to these hearings and you're here for

3    the first time, "Oh, he owns a house in China."  Well, I know

4    he does.  Okay.

5            But he's got 50 bank accounts?  I haven't seen them.

6    Give me a list of them and we can talk about them.  I don't

7    know that he has -- I -- I still think -- don't know that

8    that's the case.  I don't want to cast dispersions on what Mr.

9    Axelrod has said, but I haven't seen anything like that.

10           He disclosed to the -- the Pretrial Services the

11   bank accounts that I'm aware of.  If there are 46 more, you

12   know, let me see them.  Let's talk about them.

13           What was the other issue?  The other issue had to do

14   with his wife's father is a high ranking official.  I don't

15   think that's correct either.

16           You know, people in trouble say all sorts of

17   interesting things.  They got 50 -- you know, he told me he

18   had 50 million dollars in the bank and so on and so forth.

19   Well, how are you going to respond?  We're not going to

20   respond.  He doesn't have 50 million dollars in the bank, as

21   far as I know, either than Mr. Axelrod thinks he has 50

22   million dollars in the bank.

23           If the -- if -- if -- what is valid about the

24   position the Government has taken is he's got property

25   overseas, he's got money overseas and he travels a lot.  I

1   accept all that.  That's all correct.  I don't contest any of

2   that, but the point is you can address those issues.

3        And if the Court is not comfortable -- if Mr.

4   Axelrod is saying, "Look, if you've got both of them out,"

5   despite the fact that neither of them have passports and they

6   got a ten year-old minor child that doesn't have a passport

7   either -- the FBI has got them all -- if that is not adequate

8   security for the Court and if my sureties aren't enough

9   either, put him in a halfway house.

10       If you don't want them both out on electronic

11  monitoring, put him in a halfway house.  That's fine.  That's

12  fine too.  I think that's a workable solution.

13       **MR. AXELROD:**  Can I address --

14       **THE COURT:**  Yes.

15       **MR. AXELROD:**  -- two points?  First of all, on the

16  issue of whether Mr. Liew owns property in China, that is an -

17  - that's an insufficient answer because he's married.  These

18  are two people who are working this business together.  It

19  appears that, you know, the financial activities she's heavily

20  involved in.

21       So it is -- to suggest, "Well, hey, he doesn't own

22  the property," I don't think that addresses the question at

23  all because if she does, or if they've got some other

24  arrangement, that -- and I'm not -- I'm not saying he's --

25  what he's stating is factually inaccurate.  I don't have --

1  have enough information to respond, but it's broader than

2  that.

3          And I think that the halfway house is also

4  unworkable because, as the Court knows, the controls on

5  somebody in a halfway house are quite different than with

6  custodial controls.  And somebody can walk out the door of the

7  halfway house, and they might never be seen again and it does

8  happen, and in this case where there's somewhere to go with

9  business and family ties, that's a real concern.

10          **MS. WALTON:**  Your Honor?

11          **THE COURT:**  Yeah.

12          **MS. WALTON:**  I might add -- LaDreena Walton for

13  Pretrial Services, for the record.  We actually don't have

14  availability for the halfway house.  Due to limited funding,

15  we're not able to house anyone there until after October 1st

16  is what we've been informed.

17          **THE COURT:**  And I -- I am aware of that.  You

18  undoubtedly were not aware of that.  That's something for --

19  for you to consider.  Obviously, your position is that you're

20  requesting release on electronic monitoring?

21          **MR. WILLIAMS:**  It is, and Mr. --

22          **THE COURT:**  No.  I -- I -- I understand the -- the

23  arguments on the -- having them both be released.  I don't

24  need any more information on that component at this time,

25  unless you think it's needed.

1          One issue that came up from both ends was the issue

2     of the financial assets in -- in China, and there are certain

3     -- there's certain information in the Pretrial Services

4     report.  I don't know if that was based -- my sense is it came

5     from information provided both by the defense and from the

6     Government.

7          If there is more information that either party

8     thinks that Pretrial Services should consider and the Court

9     should consider, and anyone thinks that would change the

10    Court's analysis, then, of course, you're welcome to submit

11    that to Pretrial Services and the Court, and of course, it

12    should be disclosed to the other side.

13          **UNIDENTIFIED SPEAKER:**  Understood.

14          **THE COURT:**  I -- I feel like I have sufficient

15    information to address the issues, but if either party, you

16    know, does come upon more evidence in the future that makes --

17    that you think would change the analysis, that can be

18    exchanged with each other and -- and provided to the Court and

19    Pretrial Services.

20          I am -- at this point, I have no information beyond

21    what's been presented in court, what has come from the

22    Pretrial Services report.  It sounds like both parties might

23    have potentially more information they discover as the

24    investigation continues, both the Government's investigation

25    and your own analysis of what's been provided by the

1   Government and what you might out internally that could change

2   the Court's analysis as the case goes on.

3        But as we stand here right now, is there any further

4   information that either party wants to present?

5        **MR. AXELROD:**  No, Your Honor.

6        **MR. WILLIAMS:**  I have none as well.

7        **MR. RAMSEY:**  Your Honor?

8        **THE COURT:**  Mr. Ramsey.

9        **MR. RAMSEY:**  I just wanted to address briefly one

10  issue of the question of whether there is a property that is

11  owned in China.  Just for the Court's information, Mrs. Liew

12  does own a hundred thousand dollar home in -- or house in --

13  in China.

14       **THE COURT:**  Very well.  Thank you.

15       **MR. RAMSEY:**  The only other thing -- one other issue

16  that I may just address briefly is the allegations of counter

17  surveillance methods, etcetera, employed supposedly by my

18  client.

19       When the DuPont civil case was filed, DuPont hired

20  several private investigators who were extremely aggressive in

21  terms of pursuing the Liews, in terms of -- in terms of they

22  talk to them, in terms of they talked to employees, former

23  employees, families of former employees, and having

24  (inaudible) who were following Mrs. Liew, along with when she

25  was with her ten year-old son.  You know, the aggressiveness

1    of the investigator obviously caused her concern.

2            She saw that people were following her.  She

3    believed that they were following her.  She had no idea who

4    they were.  Quite frankly, they were creating a dangerous

5    situation at a time when they were -- I believe were

6    represented by counsel, were -- were dealing with the case

7    directly.  And their -- they were represented parties.  They

8    could have been contacted through their lawyers.

9            And there were times where she did not know who was

10   following her, and she pulled over on the side of the road or

11   took some actions to just -- to determine whether someone

12   actually someone was following her, but that was far from

13   counter surveillance methods.  That was just a matter of her

14   trying to provide for the -- her own safety and the safety of

15   her child.

16           **THE COURT:**  All right.  Thank you, Mr. Ramsey.  I

17   don't -- I don't think I need to take any further action as to

18   that component of the presentation.

19           Anything else further from the parties?

20           **MR. WILLIAMS:**  No, Your Honor.  Thank you.

21   Submitted.

22           **THE COURT:**  All right.  I think this is a close

23   case.  It's one where there are serious charges, a Defendant

24   who does not have a prior criminal record.

25           And it's not a danger to the community question.

1  It's a question of whether there are conditions or a

2  combination of conditions that would assess -- would address

3  the risk of flight, and that's where the Court's focus is on.

4          On the -- on the record before me I'm going to adopt

5  the recommendation of Pretrial Services and order the

6  Defendant detained pending the charges in the case.

7          Now, I emphasize this on the record before me

8  because there has been some surety information that was

9  presented late yesterday, and some sureties that have been

10 proffered that are not here today.  And it's possible that the

11 -- with -- with additional investigation from the parties and

12 additional information that the Court would revisit that issue

13 with more information.

14         But on the record before me, it's the property and

15 ties to China, the assertions from the Government supported by

16 the charges in the case of risk of flight to China or

17 elsewhere in Asia.

18         The fact that the defendant's wife is released --

19 and I'm not taking a significant factor to the allegations

20 that she has tried to evade supervision in some way, but the

21 fact that she is released, I think, adds to the danger of risk

22 of flight.

23         Now, in mitigation, there are many sureties who are

24 here in the courtroom and who have been proffered to -- who

25 could be in the courtroom, and those are strong mitigating

1  factors, and in a different circumstance that would be a

2  sufficient security, I think, to assure the appearance of the

3  Defendant in Court.

4          But here, I think it's a very close question, but in

5  balance, I think that the concerns raised by the Government

6  and found by Pretrial Services for a risk of flight outweigh

7  the mitigating factors, and on that basis I will order him

8  detained.

9          Now, Mr. Liew, you have a right to appeal this

10  decision, and you can seek review by the District Court Judge.

11  That's Judge Breyer.

12          **MR. HEMANN:**  (Inaudible) Judge Seeborg.

13          **THE COURT:**  Judge Seeborg?

14          **MR. HEMANN:**  The case --

15          **THE COURT:**  Oh, because it's been assigned to Judge

16  Seeborg?

17          **MR. HEMANN:**  Yes.

18          **THE COURT:**  I -- I appreciate that.  Thank you.  All

19  right.  You still have a right to appeal, but it's to the

20  District Court Judge who's currently assigned, and that's

21  Judge Seeborg.

22          Thank you, Mr. Hemann, for -- for correcting me.

23          **MR. WILLIAMS:**  Your Honor, I wonder if the Court

24  would --

25          **THE COURT:**  Yes.

1    **MR. WILLIAMS:**  Does the Court have a calendar this

2  Friday?

3    **THE COURT:**  I do, and if you'd like to -- to return

4  then for further presentation, I -- I will entertain that.

5    **MR. WILLIAMS:**  I will do that, but I would just --

6  if the Court is willing to let me do that.  And what I would

7  do is have those remaining sureties contact Ms. Walton at the

8  Pretrial Services so that that might be incorporated into the

9  report.

10    And if there is further information about, for

11  example, bank accounts we can provide the Court, we would

12  attempt to do that also.

13    **THE COURT:**  Mr. Axelrod, is that scheduling

14  available to you?

15    **MR. AXELROD:**  This Friday --

16    **THE COURT:**  Yes.

17    **MR. AXELROD:**  -- is just fine, Your Honor.

18    **THE COURT:**  All right.  So that's what we will do.

19  We will -- the order of the Court will be that the Defendant

20  will be remanded to the custody of the U.S. Marshals.

21    And Mr. Axelrod, I'm going to ask you to prepare an

22  order setting forth the risk of flight and the factors

23  identified in the Pretrial Services report and by you today --

24    **MR. AXELROD:**  Understood.

25    **THE COURT:**  -- reflecting the Court's order.  And

1  then if the parties want to assess the appealability to the

2  District Court, you can consider that as well after Friday.

3      **MR. AXELROD:**  And I just want to add in -- we'll

4  have these further proceedings on Friday.  We may submit

5  additional information, and if we do, we'll probably be ask

6  that it sealed, so we'll submit all the appropriate paperwork

7  to give (inaudible) information that will (Inaudible - - audio

8  malfunction.)

9      **THE COURT:**  And when you say sealed, sealed and

10  produced to the defense or --

11      **MR. AXELROD:**  Of course.  Yes, absolutely.  Yes.

12      **THE COURT:**  All right.

13      **MR. AXELROD:**  Sealed from the public record.

14      **THE COURT:**  Very well.  That motion to seal is

15  conditionally granted, well, as long as it's been shared with

16  the defense.  And is that something Pretrial Services can

17  review as well?

18      **MR. AXELROD:**  Yes.

19      **THE COURT:**  All right.  The Court will entertain any

20  further submissions from either party that might issue on the

21  release or detention.

22      And it will be the order of the Court that the

23  Defendant is detained based on the -- and -- and I adopt the

24  findings of the Pretrial Services reports.

25      **MR. WILLIAMS:**  Thank you, Your Honor.  Appreciate

1    it.

2            **THE COURT:**  Do we need to set a date before Judge

3    Seeborg?

4            **MR. WILLIAMS:**  Well, there is one other issue that

5    we do need to discuss with the Court.

6            **THE COURT:**  Yeah.

7            **MR. WILLIAMS:**  Your Honor, both Mr. Ramsey and I

8    have made general appearances on the complaint.  Since that

9    time, we've been informed that there may be issues relating to

10   his forfeiture on the case, and those issues might affect our

11   ability to represent our clients in this matter.

12           I don't think that we're at a point yet where we can

13   make a representation to the Court what those issues really

14   are, but I'm not prepared to make a general appearance on this

15   indictment because of that reason.

16           **MR. RAMSEY:**  The same, Your Honor.

17           **THE COURT:**  Okay.  And how do you propose that we

18   address that procedurally beyond -- beyond noting it?  And are

19   you forecasting that something is going to occur in the

20   future?  Is there some remedy you're asking for now?

21           **MR. HEMANN:**  It's -- with all due respect to counsel

22   and the issue, which I -- is -- is a valid one, I -- the

23   Government will at least have a position on -- on this.

24           I think that the issue will be forced at the first

25   appearance in the District Court, and we will be -- the case

1    is assigned to Judge Seeborg.  The underlying civil case that

2    the Grand Jury found was instructive is Judge White's case.

3              So we will be filing in those related cases and

4    we'll leave up to Judge White whether he takes it or not, but

5    the issue will probably be raised appropriately as to the

6    general appearance or special appearance when -- when we get

7    to the district Court.  I don't know that we need to resolve

8    it before Your Honor until that -- until we get to District

9    Court.

10             **MR. WILLIAMS:**  Well, that's agreeable to me, Your

11   Honor, as long as it's clearly understood that if there are

12   any forfeitures, it might affect our ability to proceed in the

13   matter and I don't want (Inaudible - - audio malfunction.)

14             **THE COURT:**  All right.  Well, the Government has

15   heard -- has -- has heard your notice.  I take notice of it as

16   well.  I think it's appropriate to remind both Mr. and Mrs.

17   Liew that they do have a right to an attorney at all stages.

18             And so if it turned out that they could not afford

19   an attorney, one would be provided to them at no cost to them

20   and at taxpayer expense, so if the case gets to a point where

21   they could not afford counsel and need to seek appointment of

22   counsel, they need to alert the Court that they're seeking

23   that and, of course, we'll take action at that time.

24             **MR. WILLIAMS:**  Could we go over to the week of the

25   12th of September then for initial appearance.  Is that

1    agreeable?

2           THE COURT:  Is that agreeable to the Government?

3           MR. HEMANN:  That -- that -- that -- that's fine

4    with us, Your Honor.  We've, obviously, like to exclude time

5    between now and the date that is set before Judge Seeborg on

6    the basis of effective preparation of competent new counsel.

7           THE COURT:  All right.  And has there been discovery

8    produced to the defense to support that?

9           MR. HEMANN:  Our intention was to provide discovery

10   between now and the date of -- of the initial appearance

11   before the District Court.  We will be doing that.

12          THE COURT:  All right.  And is Judge Seeborg

13   available?

14          THE CLERK:  He is, Your Honor.  That's Tuesday,

15   September 13th, at 2:30.

16          THE COURT:  All right.  So we'll set the initial

17   appearance for both Defendants, Tuesday, September 13th, 2:30

18   p.m. before Judge Seeborg.

19          The Government has suggested that it will file a

20   notice of related cases, which could cause the matter to be

21   reassigned.  If it is, then that appearance will change.

22          Any objection from either Defendant to an exclusion

23   of time from today until September 13th for effective

24   preparation of counsel?

25          MR. WILLIAMS:  Not behalf of Mr. Walter Liew, Your

1  Honor.

2          **MR. RAMSEY:**  No objection, Your Honor, on behalf of

3  Christina Liew.

4          **THE COURT:**  All right.  So it will be the Court's

5  order that time will be excluded until September 13th for the

6  effective preparation of counsel, and I find that the

7  interests of justice support that.

8          **MR. HEMANN:**  Your Honor, would you like for us to

9  provide the Court with a written order on that or just --

10          **THE COURT:**  You don't -- I don't feel that you need

11  to.  I've said it on the record and the reasons, but if -- if

12  --

13          **MR. HEMANN:**  No, that's fine.

14          **THE COURT:**  -- in your interest, you'd like to, I

15  will sign such a proposed order.

16          **MR. HEMANN:**  Thank you.

17          **THE COURT:**  All right.  Anything else we need to do

18  today?

19          **MR. WILLIAMS:**  The appearance Friday would be at

20  9:30?

21          **THE COURT:**  9:30 this Friday, correct.

22          **MR. WILLIAMS:**  Thank you, Your Honor.

23          **THE COURT:**  And you know, is -- I don't know that

24  Mrs. Liew needs to be here on Friday, Mr. Ramsey, unless you

25  feel like it's --

1      **MR. RAMSEY:**  I think that she's going to want to be

2  as right now.

3      **THE COURT:**  She'll welcome to be here.  I just

4  wanted to -- to let her know.

5      **MR. HEMANN:**  Your Honor, do you need interpreter

6  because if she's -- if her presence is optional, then we need

7  you to make it clear if you need an interpreter.

8      **MR. WILLIAMS:**  And we would request there be an

9  interpreter.

10      **THE COURT:**  All right.  I will request then that

11  there be an interpreter on Friday.  All right.

12      So we're continued to Friday at 9:30.

13      **MR. WILLIAMS:**  Thank you.

14      **THE COURT:**  All right.  Thank you very much.

15      **MR. AXELROD:**  Thank you, Your Honor.

16      **MR. HEMANN:**  Thank you, Your Honor.

17      **THE CLERK:**  Court is in recess.

18           (Proceedings adjourned at 11:24 a.m.)

19

20

21

22

23

24

25

**CERTIFICATE OF TRANSCRIBER**


        I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by the
U. S. District Court, Northern District of California, of the
proceedings taken on the date and time previously stated in
the above matter.

        I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.

*Stacy Wegner*
_____     7/19/2012

        Signature of Transcriber     Date