KEKER & VAN NEST LLP
STUART L. GASNER - #164675
sgasner@kvn.com
SIMONA A. AGNOLUCCI - #246943
sagnolucci@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>        Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE OF WALTER LIEW**<br><br>Date:    December 19, 2012<br>Time:   11:00 a.m.<br>Place:   Courtroom A, 15th Floor<br>Dept.:   Hon. Magistrate Judge Nathanael Cousins |

**EXHIBITS A, B, C, D, I AND J SUBMITTED UNDER SEAL**

DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER
REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

I, Stuart L. Gasner, declare and state that:

1.  I am an attorney licensed to practice law in the State of California and am a member of the law firm of Keker & Van Nest LLP, located at 633 Battery Street, San Francisco, California 94111, counsel for defendants Walter Liew and USA Performance Technology, Inc. in the above-captioned action. I am duly admitted to practice law before this Court. Except where expressly stated, I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2.  My colleagues at Keker & Van Nest and I have reviewed the box of C-1 Materials produced to us by the Government. We are unaware of any document marked as C-1 by the Government that shows the direct transmission of any DuPont document to China. Preliminary examination of the C-1 materials has revealed only two technical documents (attached as Exhibit A) with the DuPont logo and confidentiality legends on them that were apparently found in the defendants' possession, and that the Government contends contain trade secrets.

3.  The C-1 box principally consists of several kinds of materials (1) internal DuPont technical materials obtained by the Government from DuPont in the investigation, such as a lengthy technical manual from 1985 relating to DuPont titanium dioxide plants (the "Basic Data document") ; (2) sketches and notes apparently prepared by Bob Maegerle, a consultant hired by Mr. Liew's company USAPTI and now a co-defendant, who had spent a long and successful career at DuPont before retiring in 1991 to work as a consultant; (3) design materials or specifications from Mr. Liew's companies (Performance Group and USAPTI); and (4) extensive commentary from DuPont engineers opining as to how the information in Mr. Maegerle's apparent notes and sketches "must have" come from the Basic Data document or other DuPont sources.

4.  As of the date of this filing, the Government has yet to identify any documents that it contends deserve C-1 treatment on the hard drive seized from a safety deposit box at Bank of East Asia allegedly belonging to Walter Liew.

5.  I am informed and believe the F.B.I. interviewed Jian Liu on June 16, June 21, and July 6 of 2011 at the U.S. Attorney's Office in San Francisco. From my review of the FBI 302's,

1
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER
REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

it is plain that the FBI was already focused on a potential trade secret case at the time of those interviews.

6. My colleague Cathleen Crane performed a search of the United States Patent and Trademark database for the term "titanium dioxide" on November 14, 2012. Her search results indicate that 71,680 individual United States patents contain the terms "titanium dioxide."

7. I understand from conversations with attorneys for the United States in this case that the Government intends to file another superseding indictment alleging various financial crimes against Walter Liew. The Government has informed us of its plans to file this superseding indictment since at least May 1, 2012. On or around July 10, 2012, Assistant U.S. Attorney John Hemann told me that the Government anticipated seeking this superseding indictment in September 2012. On or around November 8, 2012, Assistant U.S. Attorney Peter Axelrod informed me that the Government anticipates seeking this superseding indictment within a few months.

8. I am informed and believe that after Mr. Liew was sued civilly by DuPont in April 2011, he met voluntarily with DuPont's investigator, lawyers and engineers to explain how he developed his plant designs.

9. On May 1, 2012, Assistant U.S. Attorney John Hemann asked me, in an electronic message, to provide him with 18 terabytes of hard drive space to hold the Government's forthcoming production of documents.

10. On May 1, 2012, my colleagues and I met with Assistant United States Attorneys John Hemann and Peter Axelrod to discuss discovery in this matter. During that meeting, Hemann and Axelrod stated that they intended to produce at some unspecified time a number of categories of documents, including: (1) devices seized from Timothy Spitler and co-defendant Tze Chao, (2) hard copy documents seized from and/or voluntarily provided by John Liu, (3) a collection of the key documents relevant to the issues in this case pursuant to *United States v. Skilling*, and (4) additional FBI interview summaries.

2
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

11. In the August 10, 2012 letter attached hereto as Exhibit S, I again requested copies of all four of the categories of documents described in paragraph 10 above (among other things). The Government has not, to date, produced *any* documents from these four categories.

12. The August 10, 2012 letter also raised a variety of discovery issues and questions. For example, during the May 1, 2012 meeting described in paragraph 10 above, I informed the Government that I believe Mr. Liew is entitled to copies of the notes taken by DuPont investigators at the meeting between Mr. Liew and DuPont described in paragraph 8 above, and that the Government is obligated to obtain and produce those notes. I re-iterated this request in the August 10, 2012 letter attached hereto as Exhibit S. The Government has not indicated whether it agrees to obtain and produce the requested notes and has not otherwise responded to this request.

13. Another example is that a number of the email files produced by the Government in July 2012 are corrupt and unopenable, including all of the files from four email accounts subpoenaed by the Government. The Government has not responded to my firm's repeated requests—including in the August 10, 2012 letter attached hereto as Exhibit S and in a separate September 19 email communication—for a readable version of these files.

14. Many of the documents produced by the Government as C-1 materials contain notes by DuPont engineers that are illegible. Despite multiple requests—including requests in writing on August 10, 2012, September 19, 2012, and October 15, 2012—the Government still has not produced legible copies of many of those illegible notes. For example, Exhibit D at C1-001442 contains many illegible comments from DuPont engineers; after many requests for a legible copy, the Government produced the version attached hereto (with handwritten control numbers), which is still completely illegible. The Government acknowledged as much in forwarding the document, and promised to provide a legible copy, but as of this date has not done so.

15. I am informed and believe that there are numerous titanium dioxide plants around the world that have been owned by a multitude of companies, which means that there have been an extraordinary number of opportunities for titanium dioxide technology to have been

3
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

disseminated publicly. I am informed and believe that these companies include Dupont Corp. Ltd., with plants located in New Johnsonville, Delisle, and Edge Moor (USA), Altamira (Mexico), and Kuan Yin (Taiwan); Tronox Ltd., with plants located in Hamilton (USA), Savannah (USA) (now closed), Botlek (Netherlands), and Kwinana TiWest JV (Australia); Kronos Worldwide, Inc., with plants located in Leverkus (Germany), Lake Charles (USA), Langerbrugge (Belgium), Varennes (Canada), and Nordenham (Germany); Huntsman Pigments International LLC, with plants located in Greatham (UK), Lake Charles (USA), Calais (France), Scarlino (Italy), Huelva (Spain), Teluk Kalung (Malaysia), and Umbogintwini (South Africa); Cristal Global Co., with plants located in Ashtabula (USA), Stallingborough (UK), Kemerton (Australia), Yanby (Saudi Arabia), Thann (France), Bahia (Brazil), Baltimore (USA), and LeHavre (France). I am informed and believe that there are additional titanium dioxide plants in Funshun Jinming Titanium (China), Luoyang Sunrui Wanji Titanium (China), Zunyi Titanium Co. (China), Osaka Titanium (Japan), Toho Titanium Ltd. (Japan), Ust-Kamenogorsk Titanium and Magnesium Plant JSC (Kazakhstan), and VSMPO-AVISMA (Russia).

16. Attached hereto as **Exhibit A** are true and correct copies of two technical documents bearing the DuPont logo and confidentiality legends that apparently were found in the defendants' possession. These documents have been designated by the Government as C-1 materials.

17. Attached hereto as **Exhibit B** are true and correct copies of sketches and notes apparently prepared by Bob Maegerle. These documents have been designated by the Government as C-1 materials.

18. Attached hereto as **Exhibit C** are true and correct copies of design materials or specifications from Mr. Liew's companies (Performance Group and USAPTI). These documents have been designated by the Government as C-1 materials.

19. Attached hereto as **Exhibit D** are true and correct copies of extensive commentary from DuPont engineers on notes, specifications and sketches seized from the defendants. These documents have been designated by the Government as C-1 materials. These are but a sampling of the memos from the DuPont engineers, which in their totality claim wrongful similarities

4
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

between DuPont processes and USAPTI's in everything from plant layout to ore handling, chlorination, gas pre-cooling, condensation, oxidation, solids removal, finishing, and various aspects of budgeting for, equipping, staffing, and running a titanium dioxide plant.

20. Attached hereto as **Exhibit E** are true and correct copies of US Patent Nos. 2,488,439, dated Nov. 15, 1949; 2,856,264, dated October 14, 1958; and 5,201,949 dated April 13, 1993.

21. Attached hereto as **Exhibit F** are true and correct copies of pages 309-339 from TITANIUM: ITS OCCURRENCE, CHEMISTRY, AND TECHNOLOGY by Jelks Barskdale (The Ronald Press Company 1949).

22. Attached hereto as **Exhibit G** is a true and correct copy of a report from the European Commission entitled, *"Integrated Pollution Prevention and Control Reference Document on Best Available Techniques for the Manufacture of Large Volume Inorganic Chemicals – Solids and Others,"* dated August 2007.

*23.* Attached hereto as **Exhibit H** are true and correct copies of two pamphlets from the Chlorine Institute, one on "Bulk Storage of Liquid Chlorine" dated October 2005, and one on "Chlorine Vaporizing Systems" dated October 2002, as well as an excerpt from the website of Thermal Ceramics.

24. Attached hereto as **Exhibit I** are true and correct copies of the first 100 pages of a drive directory printed from the EnCase image of the safety deposit box hard drive seized by the Government, numbered SVE 034332, entitled "HDD from Safety Deposit Box." This directory shows the folder structure of this one hard drive; the full version is 633 pages long. This 100-page excerpt does not include the file names contained within each folder; many of the folders contain large number of individual files, some of them named in the Chinese language. The drive as a whole appears to be the kind of generic computer back-ups that any small business owner might keep, with a hodgepodge of company materials, research from public sources, family pictures and videos and back-ups of favorite music (including "oldies," "rock" and "songs of the 70's"). Navigating or searching a restored version of the drive is extremely difficult; the only practical way to find relevant documents is for Mr. Liew sit at a computer and to browse the drive

5
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER
REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

1   with the benefit of his unique knowledge as to the file structure, titanium dioxide technology, the
2   history of his company, and which folders do not contain relevant information.
3       25.    Attached hereto as **Exhibit J** is a true and correct copy of an example of the
4   detailed engineering work prepared by engineers employed by USA Performance Technology,
5   Inc., located on the safety deposit box hard drive seized by the Government numbered SVE
6   034332.
7       26.    Attached hereto as **Exhibit K** are true and correct copies of three documents
8   bearing the name "DuPont" found on the safety deposit box hard drive seized by the Government
9   numbered SVE 034332.  Each document's location on the hard drive is specified in the document
10  footer.  At first glance, the documents might appear to contain confidential technical information.
11      27.    Attached hereto as **Exhibit L** are true and correct copies of publicly available
12  DuPont documents found on the Internet that are exact copies of the three documents attached as
13  Exhibit K hereto.  Each document's location on the Internet is specified in the document footer.
14      28.    Attached hereto as **Exhibit M** are true and correct copies of documents relating to
15  the Dublin Federal Penitentiary's "Make the Right Choice" program, completed by Walter Liew
16  on June 27, 2012.
17      29.    Attached hereto as **Exhibit N** are true and correct copies of Liew family photos,
18  located on the hard drive seized by the Government numbered SVE 034332.
19      30.    Attached hereto as **Exhibit O** are true and correct copies of Michael Liew's school
20  report cards for the school year 2011-2012.
21      31.    Attached hereto as **Exhibit P** are true and correct copies of various pieces of
22  correspondence and other documentation regarding the proposed purchase of 18 Shelford Road
23  #08-02, Singapore.
24      32.    Attached hereto as **Exhibit Q** are true and correct copies of various news articles
25  relating to China's denials of its involvement in economic espionage.
26      33.    Attached hereto as **Exhibit R** is a true and correct copy of an article from
27  Bloomberg, dated February 8, 2012, entitled, "Ex-Motorola Worker Guilty of Trade Secret
28

6
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER
REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

Theft," available at http://www.bloomberg.com/news/2012-02-08/ex-motorola-worker-guilty-of-stealing-trade-secrets-for-china-judge-says.html.

34. Attached hereto as **Exhibit S** is a true and correct copy of a letter dated August 10, 2012 from me to John Hemann and Peter Axelrod.

35. What Mr. Liew needs to do to defend himself against the sweeping allegations of the current indictment is to review the C-1 materials in detail; decipher the aspects of the titanium dioxide process that the Government alleges to be trade secrets; find in the terabytes of discovery the work-product demonstrating how USAPTI developed the feature in question; find communications with Pangang and others (many in Chinese) relating to that aspect of the project; search the Internet, technical libraries and otherwise research relevant disclosures; communicate by telephone with experts, vendors and others in the field with relevant knowledge; and otherwise engage in a collaborative process with counsel that requires both breadth of research and depth of investigation to rebut the Government's technical allegations.

36. Since Keker & Van Nest entered its appearance in April 2012, counsel have expended massive effort to master the electronic materials produced to date, but their sheer volume makes the going inordinately slow. There is no feasible way to load all of the documents onto a litigation support platform. It is possible to "restore" drives from EnCase into native format at a cost of several hundred dollars per drive, but that yields a complex folder structure (many of the headings in Chinese) that must be viewed on a computer in native format and that cannot easily be searched. It is possible to print selected batches of documents to bring a restored drive to the prison, and then sit side by side with Mr. Liew while he assists in finding relevant documents. But that process is simply too slow and cumbersome to make substantial progress.

37. The Federal Detention Center in Dublin is approximately a 45-minute drive from the Keker & Van Nest offices in San Francisco. After extensive paperwork and other delays, counsel is escorted into a small interview room where a face-to-face meeting can be conducted, albeit under video surveillance. A laptop can be brought into the interview room, conditioned on executing additional paperwork (on each visit) requiring the disabling of all wireless equipment that would allow Internet access. Given the detention center's needs for "counts" and other

7
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER
REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02

administrative matters, it is difficult to conduct a meeting of more than three hours in duration without lengthy interruption or skipping meals. As a practical matter, each three hour session requires roughly six hours of attorney time (due to travel time and administrative delays), which, based on the realities of scheduling, makes it difficult to visit Mr. Liew more than once a week and effectively doubles the cost of consulting with counsel.

38. Mr. Liew is not permitted to possess a computer while in detention, nor is he permitted under the Protective Order to possess "highly confidential" or C-1 materials. Counsel is not permitted to leave documents directly with Mr. Liew, but instead must either send the documents through the United States mail or leave them for Mr. Liew in a prison drop box. Materials left for or mailed to the Detention Center often take inordinately lengthy periods of time to be delivered (sometimes weeks), and there are practical limits on the quantities of materials that can be printed out and mailed. As a result of these restrictions, the collaboration between counsel and client is exactly the opposite of what it should be. Rather than having Mr. Liew—who is highly motivated and uniquely qualified—wade through the terabytes of documents produced by the Government (substantial portions of them in Chinese) and select documents of significance to discuss with counsel, counsel must attempt to identify the important documents, print them, and bring them to Dublin to review with Mr. Liew…or sit idly by while Mr. Liew tries to find them on a restored drive under video surveillance. If, upon meeting with Mr. Liew, it turns out that the attorneys have missed the mark in what they chose, or other documents or Internet resources are necessary to make progress, counsel cannot simply pull up those documents on the spot. The entire conversation must be delayed until the next visit to Dublin. Mr. Liew can achieve little meaningful preparation unless counsel is physically present. Intensive document review and collaboration is, in practical effect, impossible.

39. Moreover, many of the critical documents in this case are computer-aided design ("CAD") or other types of files that must be analyzed on a computer in their native form, because printing them out loses significant data, including many of the numbers and calculations underlying the designs. Accordingly, it is difficult if not impossible for Mr. Liew to do meaningful work on his defense in between attorney visits. And some of the work that Mr. Liew

would ordinarily be expected to do so as to participate in his defense--such as helping to review the more than 100,000 emails produced by the Government in electronic form--he cannot do at all, because those emails can only be reviewed on Concordance on the Keker & Van Nest litigation support network, which cannot be accessed from the detention center

40. Simply put, the status quo does not provide counsel or Mr. Liew a manageable way to defend a case involving complex charges of trade secret theft, multiple terabytes of discovery (a substantial portion of it in Chinese) , and many documents that can only be meaningfully reviewed electronically.  What Mr. Liew needs to do to defend this case is to spend his every waking hour reviewing documents (including C-1 documents), doing research, and engaging in a daily back-and-forth with experts and counsel.  This is prohibitively burdensome, if not down-right impossible, in a prison setting.  The difference is fundamental and qualitative:  50 three-hour visits in the Dublin detention center interview room does not equal three 50-hour weeks in a conference room at counsel's office engaged in meaningful collaboration with full access to electronic evidence.  And it is the latter—full work weeks devoted to preparation without artificial constraints—that will be required to get this case to trial in any reasonable timeframe, given the vast quantity of electronic discovery.

41. Attached hereto as **Exhibit T** are true and correct copies of certain pages of the Transcript of Proceedings before this Court dated August 24, 2011.

42. Attached hereto as **Exhibit U** are true and correct copies of certain pages of the Transcript of Proceedings  before this Court dated February 1, 2012.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 20, 2012, at San Francisco, California.

*/s/ Stuart L. Gasner*
STUART L. GASNER

9
DECLARATION OF STUART L. GASNER IN SUPPORT OF RENEWED MOTION FOR AN ORDER REVOKING THE DETENTION ORDER AND GRANTING PRETRIAL RELEASE
Case No. CR 11-0573-JSW (NC)

691062.02