QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert P. Feldman (Bar No. 69602)
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

  John M. Potter (Bar No. 165843)
  johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Specially-Appearing Defendants
Pangang Group Company, Ltd., Pangang Group
Steel Vanadium & Titanium Company, Ltd.,
Pangang Group Titanium Industry Company,
Ltd., and Pangang Group International Economic
& Trading Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     vs.<br><br>PANGANG GROUP COMPANY, LTD., PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD., PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD., and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY,<br><br>            Defendants. | CASE NO. CR 11-0573 JSW<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE SPECIALLY-APPEARING DEFENDANTS' SECOND MOTION TO QUASH SERVICE OF SUMMONSES**<br><br>Hearing Date: March 21, 2013 at 2:00 p.m. |

04675.51961/5155274.7

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. BACKGROUND ...................................................................................................................... 1

    A. Procedural History ............................................................................................................. 1

    B. The Government's Renewed Efforts To Serve The Pangang Group Defendants .............................................................................................................. 2

        1. Attempted Delivery And Mailing To Pangang Group Titanium .................. 3

        2. Attempted Mailing To PIETC ....................................................................... 4

        3. Attempted Mailing To Pangang Group .......................................................... 5

III. ARGUMENT ........................................................................................................................... 6

    A. The Government Has Not Served Pangang Group Titanium. ................................... 7

    B. The Government Has Not Served PIETC. ................................................................ 8

    C. The Government Has Not Served Pangang Group. .................................................. 9

    D. The Government's Efforts At Serving The Pangang Group Defendants Additionally Fail Because The Government Delivered and Mailed Expired Summonses. ............................................................................................................... 11

IV. CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

### Cases

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ..........................................................................................................6

*U.S. v. Alpine Land & Reservoir Co.*,
    887 F.2d 207 (9th Cir. 1989) ............................................................................................10

*U.S. v. Pangang Group Co., Ltd.*,
    879 F. Supp. 2d 1052 (N.D. Cal. 2012) ..............................................................1, 5, 6, 7, 9, 10

*U.S. v. Porter*,
    2008 WL 5377946 (E.D.N.Y. Dec. 23, 2008) ....................................................................7

*U.S. v. Rainey*,
    605 F.3d 581 (8th Cir. 2010) ..............................................................................................8

*Veeck v. Commodity Enters., Inc.*,
    487 F.2d 423 (9th Cir. 1973) ..............................................................................................6

*Virginia Lime Co. v. Craigsville Distributing Co.*
    670 F.2d 1366 (4th Cir. 1982) ..........................................................................................13

### Statutes & Rules

Fed. R. Crim. Pro. 4 ................................................................................................................ passim

I.     **PRELIMINARY STATEMENT**

After having failed to serve the Pangang Group Defendants once, the government now seeks a ruling that it has served two of these four defendants pursuant to Federal Rule of Criminal Procedure 4, and an advisory ruling that it has partially served a third defendant.   Yet again, however, the government's attempts to comply with Rule 4 fall short.   Because the government's renewed service efforts have not satisfied Rule 4's requirements with respect to any of the Pangang Group Defendants, the Court should quash the attempted service of the summonses.

II.    **BACKGROUND**

A.     **Procedural History**

On February 7, 2012, the government obtained an indictment charging, among others, four companies located in the People's Republic of China—(1) Pangang Group Company, Ltd. ("Pangang Group"); (2) Pangang Group Steel Vanadium & Titanium Company, Ltd. ("PGSVT"); (3) Pangang Group Titanium Industry Company, Ltd. ("Pangang Group Titanium"); and (4) Pangang Group International Economic & Trading Company ("PIETC") (collectively, these four entities are referred to herein as the "Pangang Group Defendants")—with an alleged attempt and conspiracy to steal trade secrets related to the manufacture of titanium dioxide.   (Superseding Indictment, Dkt. No. 64.)   The Pangang Group Defendants are not charged with actually obtaining any trade secrets.   Shortly after the indictment was returned, the government attempted to serve each of the Pangang Group Defendants by delivering and subsequently mailing four summonses to Pan America, Inc. ("Pan America"), an uncharged U.S. corporation owned by Pangang Group and PIETC.

Finding that this attempted service failed to comply with Federal Rule of Criminal Procedure 4, on July 23, 2012, this Court granted the Pangang Group Defendants' motion to quash each of the summonses.   *U.S. v. Pangang Group Co.*, 879 F. Supp. 2d 1052 (N.D. Cal. 2012).   In particular, the Court noted that Rule 4 contains two distinct and independent requirements for service upon an organization: (1) delivery of the summons to a "managing or general agent" of the company "or to another agent appointed or legally authorized to receive service of process" (the "delivery requirement"); and (2) mailing the summons "to the organization's last known address

within the district or to its principal place of business elsewhere in the United States" (the "mailing requirement"). *Id*. at 1057 (quoting Fed. R. Crim. Pro. 4(c)(3)(C)). The Court first concluded that Pan America was an agent sufficient to satisfy the delivery requirement with respect to PIETC alone and that it was not an agent for the other three Pangang Group Defendants. *Id*. at 1059-64. The Court then found that mailing the summonses to Pan America did not satisfy the second requirement with respect to PIETC or any of the other Pangang Group Defendants. *Id*. at 1068-69. Accordingly, holding the delivery requirement satisfied as to PIETC alone and the mailing requirement satisfied as to none, the Court quashed all four summonses. *Id*. at 1069.

**B. The Government's Renewed Efforts To Serve The Pangang Group Defendants**

Thereafter, as detailed by the government in a December 6, 2012 filing, the government renewed its efforts to serve the Pangang Group Defendants. The government contends that between September and November 2012 it served Pangang Group Titanium and PIETC, and asserts that this case should now proceed against these two defendants. (Gov't Notice re. Service of Summonses on Pangang Group Defendants, Dkt. No. 210 ("Gov't Notice") ¶¶ 1, 3.) The government also argues that it satisfied the mailing (but not the delivery) requirement with respect to Pangang Group, and seeks an advisory ruling that the service requirements have been partially fulfilled for this defendant. (Gov't Notice ¶ 2.)[1]

In each instance the summonses that the government claims to have delivered or mailed during the fall of 2012 directed the respective defendant to go back in time and appear in court on March 1, 2012—over seven months before the first purported delivery or mailing. (Gov't Notice Exhs. 2-5, 9-10.)

The government concedes that it is not aware of anything further that it could do to accomplish service pursuant to Rule 4. (Gov't Notice at 4.)

---

[1] The government does not claim to have satisfied either requirement with respect to PGSVT.

### 1. Attempted Delivery And Mailing To Pangang Group Titanium

The government attempted to serve Pangang Group Titanium through a company called Tinox Chemical LLC ("Tinox Chemical"). However, as set forth below, Tinox Chemical, has no relation to this case or to any of the Pangang Group Defendants.

In October 2012, the government claims to have delivered a summons for Pangang Group Titanium to a Tinox Chemical representative named Xie Hao[2] and subsequently mailed the summons to Tinox Chemical's office in Chicago, Illinois. (Gov't Notice ¶ 3.) On the mistaken assumption that Tinox Chemical is the Chicago Sales Office of Pangang Titanium, the government contends that these actions effected service upon Pangang Group Titanium. (*Id.*)

In fact, however, Tinox Chemical is not a sales office of Pangang Group Titanium, and neither Tinox nor Mr. Xie is affiliated with Pangang Group Titanium. (Declaration of Lai Yizhong ("Lai Decl.") ¶¶ 5, 11; Declaration of Wang Gang ("Wang Decl.") ¶ 3; Declaration of Zhou Xia ("Zhou Decl.") ¶ 9.) Moreover, Pangang Group Titanium has never owned or operated a sales office anywhere in the United States. (Lai Decl. ¶ 14.)

As set forth in the accompanying declarations, during August and September 2012, a woman named Zhou Xia—who goes by the name Bella in English—emailed the organizer of a Society of Plastics Engineers Color and Appearance Conference to be held in Kentucky in October 2012 ("SPECA Conference"). (Gov't Notice Exhs. 6-8; Zhou Decl. ¶¶ 1, 4.) In that correspondence, Ms. Zhou sought to arrange for her and Mr. Xie's attendance at the conference. (Gov't Notice Exhs. 6-8; Zhou Decl. ¶ 4.) Ms. Zhou claimed to be an employee of "the Pangang Titanium Industry Company, Ltd. in China." (Gov't Notice Exhs. 6-8; Zhou Decl. ¶ 5.) Ms. Zhou further identified her colleague Mr. Xie as the General Manager of Tinox Chemical, which Ms. Zhou stated to be the "Chicago Branch Office of Pangang Titanium Co., Ltd." (Gov't Notice Exhs. 7-8; Zhou Decl. ¶ 9.)

Ms. Zhou actually works for the Chengdu West Union Chemical Corporation ("West Union"), not Pangang Group Titanium. (Lai Decl. ¶ 3; Zhou Decl. ¶ 2.) Moreover, West Union

---

[2] Consistent with Chinese practice, Chinese names of individuals are presented with the surname first.

1 is not owned or operated by Pangang Group Titanium.  (Lai Decl. ¶ 12; Wang Decl. ¶ 2.)
2 Instead, West Union is owned by a man named Wang Gang who similarly does not work for
3 Pangang Group Titanium.  (Lai Decl. ¶ 4; Wang Decl. ¶ 2.)

4     Mr. Wang is, however, affiliated with a company that he caused to be registered in Hong
5 Kong and that he named Pangang Titanium Industry Co., Ltd ("HK Titanium").  (Wang Decl. ¶ 4
6 & Ex. 1.)  HK Titanium is not owned or operated by the defendant in this case, Pangang Group
7 Titanium.  Indeed, Pangang Group Titanium was unaware of the existence of HK Titanium until
8 December 2012, when it began investigating the government's claims regarding service.  (Lai
9 Decl. ¶ 10; *see also* Wang Decl. ¶ 4.)

10     In addition to West Union and HK Titanium, Mr. Wang also controls Tinox Chemical,
11 which is an affiliate of West Union that was set up in the United States.  (Wang Decl. ¶ 3; Zhou
12 Decl. ¶ 9.)  Mr. Wang directed Ms. Zhou's and Mr. Xie's attendance at the SPECA Conference in
13 Kentucky and they attended in their respective capacities as West Union and Tinox Chemical
14 representatives.  (Wang Decl. ¶ 8; Zhou Decl. ¶¶ 5, 9.)  Pangang Group Titanium did not
15 authorize or have any knowledge of Ms. Zhou's or Mr. Xie's attendance at this conference.  (Lai
16 Decl. ¶ 13; Wang Decl. ¶ 8; Zhou Decl. ¶ 5.)  Nor did Pangang Group Titanium have any
17 knowledge of Tinox Chemical's or Mr. Xie's receipt of any alleged summons until December
18 2012, with receipt of the Government's Notice of Service of Summonses on Pangang Group
19 Defendants.  (Lai Decl. ¶ 15; *see also* Wang Decl. ¶ 9.)

20     **2.    Attempted Mailing To PIETC**

21     The government also claims to have mailed summonses for PIETC to a man named Hu
22 Shaocong to two separate addresses in Petaluma, California that the government argues are
23 PIETC's "last known addresses": (1) 906 Hogwarts Circle, Petaluma, California ("Hogwarts
24 Address"); and (2) 1310 Redwood Way, Suite 220, Petaluma, California ("Redwood Address").
25 (Gov't Notice ¶ 1.)  PIETC has no present connection to either address and never received either
26 summons allegedly sent to Mr. Hu.  (*See* Declaration of Song Chengbin ("Song Decl.") ¶¶ 6-7.)

27     From 2003 through 2008, PIETC maintained a single sales office in the United States in
28 Petaluma, California.  (*Id*. ¶¶ 2-3.)  That office was staffed by Mr. Hu, who PIETC employed

1  during those years. (*Id*. ¶ 5.) When PIETC opened that office, it registered the company as a
2  foreign entity with the California Secretary of State using the Redwood Address. (*Id*. ¶ 4.) In
3  2007, PIETC changed its address to 775 Baywood Drive, Suite 214A, Petaluma, California 94953
4  ("Baywood Address"), and updated its information with the California Secretary of State to reflect
5  this change of address. (*Id*.)

6  In December 2008, PIETC closed its Petaluma sales office and formally surrendered its
7  right to conduct business in California. (*Id*. ¶ 3.) That surrender was confirmed by the
8  California Secretary of State on December 18, 2008. (*Id*.) As reflected in PIETC's Certificate of
9  Surrender of Right to Transact Intrastate Business, with this surrender, PIETC updated its address
10 of record to an address in China. (*Id*. Ex. A.) The government thus had clear notice that
11 PIETC's address is Dadukou, Panzihua, Sichuan, China 617067. (*Id*.)

12 PIETC has never registered the Hogwarts Address. (*Id*. ¶ 4.) Nor has it ever conducted
13 business from there. (*See* Gov't Notice Ex. 1 ("Hu Decl.") ¶ 4.) Rather, the Hogwarts Address
14 appears to have been the address where Mr. Hu once resided.

15 As the government recognizes, after the closure of the Petaluma sales office, Mr. Hu
16 ceased working for PIETC and has not been affiliated with the company in any capacity since
17 January 2009. (Song Decl. ¶ 5; *see also* Gov't Notice ¶ 1 (asserting that Mr. Hu was PIETC's
18 agent only through 2007).) Moreover, since that time, PIETC has not employed any persons in
19 the United States or otherwise maintained any office or operations in the United States. (Song
20 Decl. ¶ 6.) The government does not dispute this, as it previously argued that PIETC operates in
21 the United States through its subsidiary, Pan America. *Pangang Group Co.*, 879 F. Supp. 2d at
22 1058; (*see also* U.S.' Opp. to Pangang Group Ds.' Mot. to Quash Service at 18 (arguing that Pan
23 America "is, in fact, the Pangang Group[ Defendants]'s only agent in the United States")). Based
24 on the government's arguments, the Court concluded that Pan America acted as PIETC's "agent"
25 in the United States. *Pangang Group Co.*, 879 F. Supp. 2d at 1061-63.

26         **3. Attempted Mailing To Pangang Group**

27 The government also claims to have mailed summonses for Pangang Group to Mr. Hu at
28 the same Hogwarts and Redwood Addresses that it contends are the "last known addresses" for

1  PIETC. (Gov't Notice ¶ 2.) Pangang Group has never done business from either of these
2  addresses, and Mr. Hu never sent or informed Pangang Group about any summons. (Declaration
3  of Liu Yanxiong ("Liu Decl.") ¶¶ 4-5; *see also* Hu Decl. ¶ 4.)
4      Pangang Group has never maintained any office or operations in the United States, from
5  these or any other address. (Liu Decl. ¶ 3.) Moreover, Pangang Group has never employed
6  anybody in the United States. (*Id*.) In particular, Pangang Group has never employed Mr. Hu to
7  work for it in the United States, and during the time that Mr. Hu worked for PIETC in Petaluma,
8  he was not simultaneously employed by Pangang Group. (*Id*. ¶ 2; *see also* Song Decl. ¶ 8.)
9  Consistent with this, during this time, Pangang Group did not pay Mr. Hu any salary or other
10 compensation. (Liu Decl. ¶ 2.)

11 **III.  ARGUMENT**

12     The government cannot establish that it has satisfied Rule 4's service requirements with
13 respect to any of the Pangang Group Defendants through its recent service efforts.
14     Service on an organizational defendant under Rule 4 requires two independent actions by
15 the government. First, the mailing requirement obliges the government to "deliver[] a copy [of
16 the summons] to an officer, to a managing or general agent, or to another agent appointed or
17 legally authorized to receive service of process." Fed. R. Crim. Pro. 4(c)(3)(C). Second, the
18 delivery requirement obliges the government to "mail[] [the summons] to the organization's last
19 known address within the district or to its principal place of business elsewhere in the United
20 States." *Id*. Both requirements must be satisfied for service to be effective. *Pangang Group*
21 *Co.*, 879 F. Supp. 2d at 1063.
22     Because service of process "is fundamental to any procedural imposition on a named
23 defendant," and necessary for the court's exercise of jurisdiction, *Murphy Bros., Inc. v. Michetti*
24 *Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999), the requirements of service must be strictly
25 complied with, *Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973) (holding that
26 the court lacked jurisdiction over defendants where they "were not served in strict conformance
27 with [civil] Rule 4"). The government bears the burden to establish that it has accomplished each
28

1  of the requirements for proper service.  *Pangang Group Co.*, 879 F. Supp. 2d at 1056-57; *see also*
2  *U.S. v. Porter*, 2008 WL 5377946, at *10 (E.D.N.Y. Dec. 23, 2008).
3       The government has not met its burden of proof with respect to any of its renewed efforts
4  to serve the Pangang Group Defendants.  In particular, the government has not established that it
5  has delivered a summons to a proper "agent" of Pangang Group Titanium, or that it mailed a
6  summons to the "last known address within the district or principal place of business elsewhere in
7  the United States" of any of Pangang Group Titanium, PIETC, or Pangang Group.
8       **A.**     **The Government Has Not Served Pangang Group Titanium.**
9       The government has, at most, served Tinox Chemical, not the defendant Pangang Group
10 Titanium.  To serve Pangang Group Titanium, the government is required to both deliver the
11 summons to an agent of the company and mail the summons to the company.  It has done neither.
12      Rather, the government first purportedly delivered a summons to Mr. Xie, an agent of
13 Tinox Chemical, who is unaffiliated with Pangang Group Titanium.  (Lai Decl. ¶ 5; *see also*
14 Wang Decl. ¶ 8; Zhou Decl. ¶ 9.)  The government then claims to have mailed a summons to
15 Tinox Chemical in Chicago, a company with no affiliation to Pangang Group Titanium.  (Lai
16 Decl. ¶ 11; Wang Decl. ¶ 3.)
17      In support of its mistaken belief that Tinox Chemical is the U.S.-based sales office of
18 Pangang Group Titanium run by Mr. Xie, the government points to statements made by Ms. Zhou
19 in her correspondence to a third party regarding her and Mr. Xie's attendance at a conference in
20 Kentucky.  To the extent that Ms. Zhou's correspondence to the conference host may have
21 implied that she worked for or represented the defendant Pangang Group Titanium, that has been
22 wholly repudiated by Ms. Zhou as well as her actual employer, Mr. Wang.  (Zhou Decl. ¶¶ 2, 5-6;
23 Wang Decl. ¶ 8.)
24      As Ms. Zhou and Mr. Wang make clear, Ms. Zhou does not work for Pangang Group
25 Titanium, but rather works for a separate company that is affiliated with a Hong Kong entity
26 called Pangang Titanium Industry Co., Ltd. that is not affiliated with the defendant.  (Zhou Decl.
27 ¶ 2; Wang Decl. ¶¶ 2, 6.)  Similarly, to the extent that Ms. Zhou's email correspondence implied
28 that the defendant Pangang Group Titanium operates in the United States through Mr. Xie and

1  Tinox Chemical, those statements have no basis in reality.  As Ms. Zhou as well as the man who
2  controls Tinox Chemical, Mr. Wang, explain, neither Mr. Xie or Tinox Chemical are affiliated
3  with Pangang Group Titanium.  (Zhou Decl. ¶ 9; Wang Decl. ¶¶ 3, 6.)  Pangang Group Titanium,
4  too, confirms that Ms. Zhou and Mr. Xie do not work for it and were not acting on its behalf in
5  attending the SPECA Conference, and that it does not own or operate Tinox Chemical or any other
6  sales office in the United States.  (Lai Decl. ¶¶ 3, 5, 11, 13-14.)

7  These facts demonstrate that the government has, if anything, mailed and delivered a
8  summons to Tinox Chemical, not the defendant Pangang Group Titanium.  As with the
9  government's previous efforts to serve Pangang Group Titanium by proxy through service upon a
10 distinct entity, this does not satisfy either prong of Rule 4's requirements.  Indeed, the attempted
11 service here is even further afield than the earlier attempted service through Pan America, as
12 Tinox Chemical has no affiliation with the Pangang Group Defendants.  It is respectfully
13 submitted that the Court should quash the purported service on Pangang Group Titanium.

14 **B.     The Government Has Not Served PIETC.**

15 The government's purported mailings of summonses to Mr. Hu at the Hogwarts and
16 Redwood Addresses do not constitute mailings to the "organization's last known address within
17 the district," as required by Rule 4.

18 Where there is an address on file, that address constitutes the "last known address," unless
19 the government has reason to believe that such address is no longer operative.  *See U.S. v. Rainey*,
20 605 F.3d 581, 583 (8th Cir. 2010) (finding that mailing to address on file as of the date of the
21 mailing satisfied the requirement to mail to "last known address" even though the defendant had
22 moved the day of the mailing because the Department of Justice was unaware of the change).
23 This is because, in the context of service of process, the phrase "last known addresses" must be an
24 address at which the organization may reasonably be expected to receive mail.  As the court in
25 *Virginia Lime Co. v. Craigsville Distributing Co.* explained, "the last known address requirement
26 is satisfied when process is sent to the address at which the parties regularly corresponded by mail,
27 and the party serving process reasonably could expect that process would reach the defendant at
28

1 that address." 670 F.2d 1366, 1368 (4th Cir. 1982) (construing phrase "last known address" in
2 Virginia long-arm statute).

3     That is not the case here. As the government was well aware at the time of its purported
4 mailings, PIETC no longer operates out of Petaluma, and has not for many years. (Song Decl. ¶¶
5 2-3, 6; *see also* Gov't Notice ¶ 1; Hu Decl. ¶¶ 6-7.) Rather, in 2008, PIETC closed its office in
6 Petaluma, surrendered its registration with the California Secretary of State, and provided an
7 address in China at which it would receive mail. (*Id*. ¶ 3 & Ex. A.) That same year, PIETC also
8 formed Pan America, a separate entity in New Jersey that the Court has found to be an agent of
9 PIETC—but not PIETC itself—based on the government's arguments that Pan America
10 functioned as PIETC in the United States. *Pangang Group Co.*, 879 F. Supp. 2d at 1061-63.
11 Since then, PIETC has not maintained any office or operations in the United States. (Song Decl.
12 ¶ 6.)

13     Under these circumstances, with the filing of the certificate of surrender, the Chinese
14 address became—and remains—PIETC's "last known address." That PIETC's "last known
15 address" is not "within the district" but in rather in China (and thus beyond the bounds of Rule 4),
16 does not alter the fact that PIETC's "last known address" is in China.

17     Moreover, the government had every expectation that any mailings to PIETC's abandoned
18 addresses in California would *not* reach PIETC—and indeed they did not. (Song Decl. ¶ 7.)
19 Such mailings should not be found to satisfy Rule 4. To read the Rule otherwise and to allow for
20 the mailing requirement to be satisfied by mailing to an address where the corporation is known to
21 have long-vacated would unduly elevate form over substance and irrationally insist on an act
22 known to be futile. This is even more so where, as here, the company has provided an updated
23 address at which it can be reached.

24     Because the mailing requirement remains unfulfilled, PIETC has not been properly served
25 and the Court should quash the purported service on PIETC.

26     **C.**    **The Government Has Not Served Pangang Group.**

27     The Court should reject the government's request to find that it has satisfied the mailing
28 requirement with respect to Pangang Group. As an initial matter, the government concedes that it

has not accomplished service on Pangang Group and thus in asking the Court to rule that the mailing requirement alone has been satisfied, the government seeks an impermissible advisory ruling. Under foundational constitutional principles, the Court should decline to entertain this request. *See, e.g.*, *U.S. v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 214 (9th Cir. 1989) ("[C]ourts should not render advisory opinion upon issues which are not presented before the court, precisely framed and necessary for decision.").

In any event, it is clear that the government has not properly mailed Pangang Group. The government asserts that it mailed summonses to Mr. Hu to the same two addresses to which it mailed the PIETC summonses. (Gov't Notice ¶ 2.) The government further contends that in doing so it satisfied the mailing requirement with respect to Pangang Group because Mr. Hu was an "agent" of Pangang Group in the United States from 2004 through 2007. (*Id*.) This contention is both factually and conceptually erroneous.

First, Mr. Hu was never an agent for Pangang Group in the United States. Contrary to Mr. Hu's unsupported assertions, Pangang Group records reflect that it did not employ Mr. Hu or pay him any compensation during the time that he worked for PIETC. (Liu Decl. ¶ 2; *see also* Song Decl. ¶ 8.) More fundamentally, even if Mr. Hu had been an "agent" of Pangang Group in the United States, as the government asserts, the government's attempted mailing would still be deficient. Critically, the mailing requirement cannot be satisfied by mailing to an agent of an organization. The plain language of the mailing requirement expressly requires that the organization—and not merely an agent—have a United States presence to which a summons is mailed: "Unlike the delivery requirement, the mailing requirement does not state that a summons may be mailed to an officer, director or general agent. It requires a summons to be mailed to the *organization's* principal place of business in the United States." *Pangang Group Co.*, 879 F. Supp. 2d at 1064; *see also* Fed. R. Crim. Pro 4(c)(3)(C) ("A copy must also be mailed to the *organization's* last known address within the district or to its principal place of business elsewhere in the United States." (emphasis added)).

As to this dispositive point there is no evidence that either the Hogwarts Address or the Redwood Address was ever the address of the Pangang Group.[3]  Notably, even accepting Mr. Hu's erroneous assertions regarding his employment by Pangang Group on their face, there is no indication that either address is Pangang Group's "last known address," as required by Rule 4.  Rather, Mr. Hu claims only that these addresses were previously affiliated with *PIETC* in some capacity.  (Hu Decl. ¶ 4.)   In fact, the only statement linking either of these addresses to Pangang Group has been expressly crossed out, with Mr. Hu apparently unwilling to assert that he conducted business on behalf of either company from the Hogwarts Address.  (*Id*.)   This is because Pangang Group has never operated from either address to which the government purportedly mailed a summons.  (Liu Decl. ¶ 4. )   In fact, Pangang Group has never maintained any office or operations anywhere in the United States.  (*Id*. ¶ 3.)   The government's claim to have satisfied the mailing requirement with respect to Pangang Group fails.

### D. The Government's Efforts At Serving The Pangang Group Defendants Additionally Fail Because The Government Delivered and Mailed Expired Summonses.

Beyond the fundamental defects in the government's efforts at serving the Pangang Group Defendants detailed above, the purported service on Tinox Chemical and mailings to Mr. Hu are invalid for the additional reason that the summonses the government used were all expired.

Rule 4 specifies that a summons "must require the defendant to appear before a magistrate judge at a stated time and place."   Fed. R. Crim. Pro. 4(b)(2).   For this requirement to have any meaning, a summons must specify a date and time in the future.

Here, the summonses directed the defendants to go back in time and appear on a date that had already past.   Although the government's efforts at service allegedly occurred between September and November 2012, each of the summonses directed the appearance of one of the defendant entities to retroactively appear before the Court on March 1, 2012.   (Gov't Notice ¶¶ 1-3 & Exhs. 2-5, 9-10.)   Because the summonses specified a time for the defendants to appear seven

---

[3]   Moreover, even if these addresses had previously been connected to Pangang Group, the government does not claim that any such connection persisted beyond 2008.   (Gov't Notice ¶ 2.)  As a result, the attempted mailing would still be deficient for reasons similar to those why the purported mailing to PIETC fails.  *See supra*.

1  to nine months prior to their alleged delivery or mailing, the summonses are invalid and the
2  delivery and mailings ineffectual.
3  **IV. CONCLUSION**
4    For the foregoing reasons, the Pangang Group Defendants' motion to quash service of
5  summons on Pangang Group Titanium and PIETC should be granted in its entirety, and the Court
6  should decline to find that the government has satisfied Rule 4's mailing requirement with respect
7  to Pangang Group.

9  DATED: February 7, 2013     QUINN EMANUEL URQUHART &
                 SULLIVAN, LLP

              By */s/ Robert P. Feldman*
               Robert P. Feldman
               John M. Potter
               Attorneys for Specially-Appearing Defendants
               Pangang Group Company, Ltd., Pangang Group
               Steel Vanadium & Titanium Company, Ltd.,
               Pangang Group Titanium Industry Company,
               Ltd., and Pangang Group International Economic
               & Trading Company