MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
PETER B. AXELROD (CABN 190843)
Assistant United States Attorneys

450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone: (415) 436-7200
Fax: (415) 436-7234
E-Mail: john.hemann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>WALTER LIEW,<br>Defendant. | No. CR-11-0573 JSW<br><br>GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO THE MOTION TO REVOKE THE MAGISTRATE JUDGE'S BAIL ORDER<br><br>Date: March 18, 2013<br>Time: 10:00 am<br>Hon. Jeffrey S. White |

The United States submits this reply to address briefly the key points argued by defendant in his opposition to the motion to revoke the Magistrate Judge's bail order.

1. Defendant resorts to a rhetorical device in an attempt to artificially raise the government's burden. Defendant repeatedly asserts that he has been accused of being a "spy," and then claim that the evidence proves no such thing. (Def. Mem. at 1-2) To be clear, defendant has not been charged with "spying" and the government has never – in any medium – labeled him as a "spy." Defendant is charged with economic espionage, in violation of 18 U.S.C. § 1831, because he conspired and attempted to sell trade secrets to a foreign instrumentality. In the context of the bail motion, the government has pointed to evidence – evidence which has not been questioned

– that defendant has extensive family, professional, and economic ties with the PRC. Whether defendant is a "spy" in the le Carré sense defense counsel's rhetoric is meant to suggest is irrelevant to the charges against defendant and the evidence of flight risk.

2. Defendant attempts to use the amount of discovery as both a sword and a shield – a sword to procure defendant's release from detention and a shield to avoid setting a trial date. (Def. Mem. at 6-7). It is undisputed that the government has produced a great deal of information to the defense in discovery; much of it comes from search warrants of places controlled by defendants and copies these materials are required to be returned to the defendants by Rule 16(a)(1)(E)(iii), regardless of materiality. The amount of discovery alone, however, does not compel the conclusion that all of the information produced is relevant to the charges that have been filed or is material to the defense. Beyond simply quantifying the amount of discovery that has been produced, defendant has not offered any explanation has to why it will take so long to prepare for trial on the specific charges that have been filed. The record is devoid of explanation as to why a trial cannot take place this year.

3. In his attempt to blame the government for the delay, defendant does not address, let alone rebut, a single fact contained in the government's opening brief. (Def. Mem. at 7-8) Defendant's failure to offer to post the Singapore property from the outset; defendant's lengthy delay in retaining counsel; and defendant's decision to contest the protective order all resulted in dragging out the litigation.

4. The form of discovery – Encase – that was produced by the government to the defendant was defense counsel's choice; they preferred Encase over native format documents. (Def. Mem. at 9-10).

5. Defendant's claim that the government somehow dragged its feet in investigation and charging ignores the real world. (Def. Mem. at 7-8). The FBI investigation *began* only two years ago. To get to where we are today in less than two years is light speed, as the experienced defense attorneys well know. Moreover, at any point since August 2012 when the original indictment was returned, defendant could have asked for a trial. That he did not is not the fault of the government.

6. Defendant claims that he must be out of custody in order to meaningfully participate in his defense. (Def. Mem. at 9-11). In making this claim, he focuses on what he says is the vagueness of Trade Secret 1 – the "DuPont chloride route process" – and his need to review all of his work product to prove that he did not steal this trade secret (he does not address the other four alleged trade secrets). Two realties undermine defendant's claim: (1) It was defendant himself who stated in writing to his Chinese customers that he possessed and would provide them with "the entire DuPont chloride route process." For defendant to say that, he must know what it means and should be able to explain it to his attorneys. (2) With regard to Trade Secret 1 (the DuPont chloride route process), defendant is charged only with conspiracy and attempt – not with actual misappropriation. With regard to conspiracy and attempt, it is not an element of the government's proof that the item in question is actually a trade secret. *United States v. Hsu*, 155 F.3d 189, 203 (3rd Cir. 1998). It is enough to prove only that defendant conspired or attempted to misappropriate something believed to be a trade secret. Here, that evidence is found not in the copious drawings and calculations defendant used to produce plans for the Pangang Group, it is found in defendant's own notes and communications that reveal his intent.

7. Defendant does not need to be out of custody to explain to his counsel how he developed the ability to design a TiO2 factory from scratch. Defendant, an electrical engineer, claims that in the 1990s he taught himself how to manufacture TiO2 and, within a decade, was so expert that he could design a chloride-route factory that produced DuPont quality product – when his customer, a company long in the TiO2 business, had been unable to do so on its own.

8. Defendant jives and obfuscates around the issue of his financial and personal ties with the PRC and Malaysia. (Def. Mem. at 15-18). But he does not deny the following facts, all of which are directly relevant to flight risk under the Bail Reform Act: (a) all of his extended family lives in Malaysia; (b) all of his wife's extended family lives in the PRC; (c) from 2006 to his arrest in 2011, he sent over $22 million to companies he and his wife controlled in Singapore, including over $5 million in 2011; (e) he did not pay taxes or report any of that income; and (f) he does not own property in the United States, but his wife owns property in Singapore and the PRC.

9. Liew's character is highly relevant to whether he should be granted bail. (See Def. Mem.

at 18, describing his honesty as "irrelevant.") "Character" is the first of the factors regarding the defendant's "history and characteristics" that the Bail Reform Act requires the Court to consider. 18 U.S.C. § 3142(g)(3)(A). In his opposition, defendant addresses some, but not all, of the instances of dishonesty identified by the government. He dismisses many of them by claiming that they are unproven charges. The others he attempts to explain away, unconvincingly. The reality is that defendant has slowly released limited information regarding his financial condition – and only after the government has raised questions about it.

10. There is no evidence of which the government is aware as to the financial resources available to defendant from the $22 million he transferred to Singapore from 2006 to 2011. Notably, defendant does not explain how the over $5 million he transferred to Singapore in the first half of 2011 – immediately before his arrest – simply disappeared.

11. Defendant's lack of honesty is on full display in connection with his account of his financial resources. On August 25, 2012, the government filed under seal (and provided to the defense) a spreadsheet of 64 bank accounts – 9 involving WL, 35 involving CL, 10 involving USAPTI, and 10 others. Those accounts include the Huadong account in Singapore at DBS controlled by defendant that received $5.8 million, the ESI account in Singapore that received $6.1 million, the Huan Qu account in Singapore that received $3.5 million, and an account in the name of Qiao Ning (Christina Liew's brother) at the Bank of China that received $1.5 million of transfers from the Singapore shell companies, as well as accounts of Qiao Mu (another brother of Christina Liew) who was the owner of ESI, one of the Singapore shell companies. Rometo Decl., Dkt. 214-2 and 214-3, Ex. 5, 6, 8, 11. When defendant filed his declaration on January 18, 2012, in support of his second bail motion, he never addressed any of these accounts, which are of obvious significance. Liew Decl., Dkt. 48-7. He claimed his only assets were in a few accounts with small balances.

12. In short, Liew has selectively disclosed his assets as the case has evolved. The United States has identified significant assets the defendant controlled – over $5 million in early 2011 alone – and defendant offers no explanation as to where those assets have gone. He suggests that they were for unidentified business expenses, but provides no additional explanation.

13. Defendant offers a confusing justification for the Magistrate Judge's decision to allow him to present evidence *in camera*. (Def. Mem. at 22-23). He claims a Fifth Amendment right, but there is no evidence that the information provided by defendant to the Magistrate Judge satisfied the test for application of the Fifth Amendment. The bank and financial records that defendant would have had to submit certainly are not entitled to Fifth Amendment protection. There is no authority for defendant's assertion that the Court should *not* "parse out protected and unprotected statements." (Def. Mem. at 23). Indeed, that is just what the law requires.

14. Contrary to defendant's contention, the United States has not submitted any materials to the Court *in camera* in support of its request for detention. (Def. Mem. at 23) The defense has received copies of everything the United States has filed with the Court in connection with the detention issue.

15. As this Court previously has recognized, electronic monitoring is not a particularly effective means of keeping a defendant from fleeing. *See United States v. Cardenas*, CR-11-831-JSW (Mar. 26, 2012) (Dkt. 25).

16. The distinction between the cases defendant claims are analogous to the instant case (Def. Mem. at 24) and the instant case, is that in those cases the courts were informed of defendant's financial resources and there is no evidence that accurate information regarding those resources was withheld from the government. Defendant Liew has attempted to conceal his resources from scrutiny, which, in combination with the other factors offered by the government establishes a significant risk of flight.

Respectfully submitted,

DATED: March 15, 2013

MELINDA HAAG
United States Attorney

/s/

JOHN H. HEMANN
PETER B. AXELROD
Assistant United States Attorneys