KEKER & VAN NEST LLP
STUART L. GASNER - #164675
sgasner@kvn.com
SIMONA A. AGNOLUCCI - #246943
sagnolucci@kvn.com
KATHERINE M. LOVETT - #276256
klovett@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>    Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**OPPOSITION TO GOVERNMENT'S APPEAL OF MAGISTRATE JUDGE COUSINS' RULE 16(A)(1)(E)(II) ORDER**<br><br>Date:      April 18, 2013<br>Time:     2:00 p.m.<br>Place:     Courtroom 11, 19th Floor<br>Dept.:     Hon. Jeffrey S. White |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................1

II.  FACTUAL BACKGROUND................................................................................................2

    A.    Current Status of the Government's Document Production. ...................................2

    B.    Defense Counsel's Attempts to Resolve the Key Documents Issue.........................3

    C.    Proceedings before Magistrate Judge Cousins. ........................................................4

III. ARGUMENT.........................................................................................................................5

    A.    Standard of Review...................................................................................................5

    B.    Magistrate Judge Cousins' order was within the scope of the discovery referral......................................................................................................................6

    C.    Magistrate Judge Cousins' order was well within the court's discretion in light of persuasive precedent and the special circumstances of this case.................7

IV. CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Abonce-Barrera*
    257 F.3d 959 (9th Cir. 2001) .................................................................................................. 6

*United States v. Anderson*
    416 F. Supp. 2d 110 (D.D.C. 2006) .............................................................................. 7, 9, 11

*United States v. Moalin*
    2012 WL 5463683 (S.D. Cal. Nov. 8, 2012) ............................................................................ 5

*United States v. Poindexter*
    727 F. Supp. 1470 (D.D.C. 1989) ............................................................................................ 7

*United States v. Salyer*
    2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) ........................................................................... 8

*United States v. Salyer*
    271 F.R.D. 148 (E.D. Cal. 2010) ..................................................................................... 6, 7, 9

*United States v. Turkish*
    458 F. Supp. 874 (S.D.N.Y. 1978) .......................................................................................... 7

*United States v. Upton*
    856 F. Supp. 727 (E.D.N.Y. 1994) .......................................................................................... 7

*United States v. W.R. Grace*
    526 F.3d 499 (9th Cir. 2008) (en banc) ............................................................................... 7, 9

**Federal Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................................ 5

**Federal Rules**

Fed. R. Crim. P. 2 ........................................................................................................................... 1

Fed. R. Crim. P. 16 ................................................................................................................ *passim*

Fed. R. Crim. P. 59 ................................................................................................................. 1, 5, 8

**Other Authorities**

*Megabytes, Gigabytes, Terabytes—What Are They?*, www.whatsabyte.com ................................. 2

## I. INTRODUCTION

This Court must affirm Magistrate Judge Cousins' Rule 16(a)(1)(E)(ii) order unless that order is "clearly erroneous" or "contrary to law." Fed. R. Crim. P. 59(a). Not surprisingly, the Government fails to acknowledge this highly deferential standard of review at any point in its appeal brief, because Magistrate Judge Cousins' order was entirely appropriate. In March of 2012, this Court referred all Rule 16 discovery disputes in this case to Magistrate Judge Cousins. The Court clarified the substance of that referral at a hearing on December 13, 2012, reiterating that "matters that are within Rule 16 are part of the referral, and they are within [Magistrate Judge Cousins'] authority to order production or deny production." *See* Dkt. 235 (Decl. of Simona Agnolucci in Supp. of Rule 16(a)(1)(E)(ii) Mot.), Exh. E at 9-10. To date, the Government has produced five terabytes of unprocessed electronic discovery, much of it in Chinese. Page-by-page review of the approximately 250 million pages making up this electronic discovery dump—merely to identify the documents that the Government intends to use against Defendants—represents an impossible task for defense counsel, especially given the highly technical and complex nature of this case and Walter Liew's continuing incarceration.

Recognizing the unique challenges that such a huge volume of discovery presents to Defendants, Magistrate Judge Cousins ordered the Government to identify for the defense the documents, among hundreds of millions produced, that the Government disclosed pursuant to Rule 16(a)(1)(E)(ii) and that it currently, in good faith, intends to use in its case-in-chief. At no point did Magistrate Judge Cousins characterize this specification as an "exhibit list." The universe of documents the Government has been ordered to identify—which Magistrate Judge Cousins contemplated might consist of 4,000 documents—need not be narrowed down to the Government's final exhibit list, which will be filed nearer to trial. Moreover, nothing in Judge Cousins' order prevents the Government from supplementing its specification as new documents are translated, discovered, or deemed relevant.

Judge Cousins' order was both within the scope of this Court's discovery referral and well within the magistrate judge's discretion to order discovery relief that serves the purposes of Fed. R. Crim. P. 2 and 16. It was also in line with many cases in which courts have granted similar

relief to defendants, all of which involved far fewer documents than those at issue here. Particularly in light of the volume and nature of the discovery in this case, Magistrate Judge Cousins' order was neither contrary to law nor clearly erroneous. Accordingly, this Court should affirm that order.

## II.     FACTUAL BACKGROUND

### A.     Current Status of the Government's Document Production.

This case has been pending since July of 2011, when the Government arrested Walter and Christina Liew and filed its criminal complaint against them. A small quantity of discovery related to the original obstruction of justice charges was produced shortly after the first indictment. Then, beginning in July of 2012, the Government provided approximately five terabytes of electronic materials ("ESI") seized from 171 computers and other devices.[1] Dkt. 272 (Decl. of Joshua Maremont) at ¶ 6. The Government also produced fourteen discs of material scanned from paper files retrieved from multiple locations. *Id.* at ¶ 8. The Government's discovery covered electronic information and hard copy documents seized from the Liew residence, the offices of USAPTI, co-defendant Maegerle's residence in Delaware, co-defendant Tze Chao, Jian Liu, and others in the course of the Government's investigation.

Reviewing the material already disclosed by the Government is a gargantuan task that has left defense counsel struggling to find affordable and efficient options for identifying relevant information among hundreds of millions of pages. The five terabytes of material produced by the Government is in the form of EnCase files, which cannot be easily viewed and printed without processing into a different file format, such as TIFF. Dkt. 272 at ¶¶ 4-5. Processing a single terabyte of EnCase images would cost $450,000 at the current rate of $450 per gigabyte; for five terabytes of information, processing costs would total over $2.2 million. *Id.* at ¶ 5. EnCase images can also be restored into native format for several hundred dollars per drive, but

---

[1] A terabyte is approximately one trillion bytes and could store 1,000 copies of the Encyclopedia Britannica. *See Megabytes, Gigabytes, Terabytes—What Are They?*, www.whatsabyte.com, last visited March 27, 2013. Ten terabytes could store the entire printed collection of the Library of Congress. *See id.* This provides a helpful visual approximation of the staggering amount of electronic data that the Government has disclosed to Mr. Liew to date—***the equivalent of half the printed collection of the Library of Congress.***

1  restoration yields a complex folder structure that cannot be easily or efficiently searched.  Five
2  terabytes of EnCase images, printed out, could easily yield 250 million printed pages, enough to
3  fill 90,909 banker's boxes.  *Id*. at ¶ 7.  Additionally, a great deal of the ESI consists of Mandarin
4  Chinese documents that defense counsel are not readily equipped to analyze.  Finally, some
5  quantity of further discovery is anticipated.[2]

### B. Defense Counsel's Attempts to Resolve the Key Documents Issue.

Keker & Van Nest entered its appearance for Walter Liew and USAPTI in April 2012 and promptly met with the Government to discuss discovery-related issues on May 1, 2012.  Due to the massive quantity of ESI involved in this case, the Government promised at that time to provide Defendants a collection of the key documents material to the case.  Dkt. 235 at ¶ 2.  The Government also indicated that it intended to seek a superseding indictment before the end of 2012.  *Id*.  While the Government began to release discovery to the defense in July of that year, it did not follow through on its promise to specify the key documents in the case.  *Id*. at ¶ 4.

On August 10, 2012, counsel for Walter Liew sent a comprehensive discovery letter to the Government that, in part, requested a timeline for the identification of the key documents.  *See* Dkt. 235, Exh. B.  The Government immediately replied that it did not intend to respond formally to each point made in the August 10 letter, but that it would "endeavor to address the salient requests either in person or in brief communications, as appropriate."  Dkt. 235 at ¶ 6.  Months passed, yet the Government failed to address Mr. Liew's request for clarification regarding the specification of key documents.

On November 28, 2012, defense counsel sent a follow-up letter to the Government, identifying the "top priority" issues for resolution at the parties' December 12, 2012 discovery

---

[2] Despite a request from defense counsel, the Government has yet to provide the additional FBI interview memos that it promised would come after the Second Superseding Indictment. Declaration of Simona A. Agnolucci in Support of Opposition to Government's Appeal of Magistrate Judge's Rule 16(a)(1)(E)(ii) Order ("Agnolucci Decl."), ¶ 3.  Moreover, in a letter to defense counsel dated February 25, 2013, Assistant U.S. Attorneys John Hemann and Peter Axelrod represented that they have not yet disclosed any electronic discovery for an encrypted drive (labeled SVE034362) because they have not yet analyzed that drive.  Agnolucci Decl., Exh. A.  Defense counsel has not yet received that electronic discovery.  *Id*. at ¶ 4.  In addition, the Government represented in its motion to revoke Mr. Liew's release order that additional discovery on the financial charges is to come.  *See* Dkt. 266 at 24.

3
OPPOSITION TO GOVERNMENT'S APPEAL OF MAGISTRATE'S RULE 16 ORDER
Case No. CR 11-0573-JSW (NC)

736292.02

hearing before Magistrate Judge Cousins, including an identification of "key documents." *See* Dkt. 235, Exh. C. Defense and Government counsel met and conferred on December 3, 2012, and the Government agreed to produce a set of key documents after the superseding indictment occurred sometime early in 2013. Dkt. 235 at ¶ 8. The Government refused to characterize the key documents in substantive terms, or as complete or binding. *Id.*

### C. Proceedings before Magistrate Judge Cousins.

On December 12, 2012, the parties appeared before Magistrate Judge Cousins to resolve a number of discovery issues. Judge Cousins decided to defer a decision on the key documents issue in order to await clarification from this Court as to Judge Cousins' jurisdiction over Rule 16-related orders. *See* Dkt. 235, Exh. D at 13 (December 12, 2012 hearing transcript). At the same hearing, the Government represented that it was ready to go to trial whenever the defense was ready to do so. *Id*. at 10-11. At a December 13, 2012 hearing before this Court, in response to a question from defense counsel about the key documents issue, this Court clarified that "the Court intends that matters that are within Rule 16 are part of the referral, and they are within [Magistrate Judge Cousins'] authority to order production or deny production." *See* Dkt. 235, Exh. E at 9-10 (December 13, 2012 hearing transcript).

On January 10, 2013, defense counsel wrote to the Government in an attempt to meet and confer on the key documents issue prior to bringing a Rule 16 motion. Dkt. 235 at ¶ 11. Counsel requested that the Government clarify its position as to the timing, content, and consequences of the key documents production. *Id*. Counsel also asked the Government to provide a timetable for the superseding indictment. *Id.* The Government did not reply to these requests. *Id.*

Nearly two weeks later, on January 22, 2013, counsel for Mr. Liew sent yet another email to Government counsel noting that the Government had not yet responded and informing it of defense counsel's intention to file a motion before Judge Cousins. Dkt. 235 at ¶ 12. Government counsel replied that day, reiterating that they intended to release key documents to defense counsel after the superseding indictment was returned. *Id*. The Government refused to answer defense counsel's requests for clarification in any detail. *See id.*

Defendants thereafter filed a motion requesting that Magistrate Judge Cousins order the Government to specify those documents that it had produced to the defense pursuant to Fed. R. Crim. P. 16(a)(1)(E)(ii), which requires the Government to disclose, upon a defendant's request, those items within the Government's possession, custody, or control that the Government intends to use "in its case-in-chief at trial." Dkt. 234. The parties appeared before Judge Cousins on February 27, 2013 for a hearing on the motion. *See* Agnolucci Decl., Exh. B. Judge Cousins granted Defendants' motion in an order issued the next day. Dkt. 257. The order required "the Government, by April 30, 2013, to comply with Federal Rule of Criminal Procedure 16(a)(1)(E)(ii) and identify for the defense 'literally all' of the items it intends to use in its case-in-chief at trial." *Id.* Moreover, the order required the Government to supplement that identification if it filed additional charges in the case after April 30, 2013. *Id.*

On March 13, 2013, the Government finally filed a superseding indictment in this case. Dkt. 269. However, despite its promise to do so for almost eleven months, the Government still has yet to identify any key documents or indicate when such an identification will occur or what categories of documents it will include. Instead, the Government elected to file an appeal of Magistrate Judge Cousins' Rule 16(a)(1)(E)(ii) order.

### III. ARGUMENT

#### A. Standard of Review

On March 23, 2012, this Court referred "any disputes that arise regarding Fed. R. Crim. P. 16 discovery" to Magistrate Judge Cousins, pursuant to the parties' stipulation. Dkt. 105. Magistrate Judge Cousins' Rule 16(a)(1)(E)(ii) order, currently before this Court on appeal, was entered pursuant to that referral. Dkt. 257.

This Court may only set aside a magistrate judge's nondispositive order issued in a criminal case if that order is "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); *United States v. Moalin*, 2012 WL 5463683, at *1 (S.D. Cal. Nov. 8, 2012). Accordingly, "the magistrate judge's decision in such nondispositive matters is

entitled to great deference by the district court." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).

Tellingly, the Government's brief fails entirely to acknowledge this highly deferential standard of review. This omission is hardly surprising, as the Government's argument against Judge Cousins' order is largely based on its own distaste for the extra work that will be required to comply with the order, Gov't Appeal at 4, rather than any legal argument that the order exceeded the scope of the magistrate judge's wide discretion to resolve Rule 16 discovery disputes.

### B. Magistrate Judge Cousins' order was within the scope of the discovery referral.

Magistrate Judge Cousins' order, which requires the specification of documents produced by the Government under a particular subsection of Rule 16(a), was clearly within the scope of the matters referred by this Court to the magistrate judge. The Government reads this Court's March 23, 2012 referral order far too narrowly, emphasizing that the order referred disputes regarding "whether particular documents are required to be *produced* under Rule 16." Gov't Appeal at 2 (Government's emphasis). But, in truth, the language of the order, entered with the Government's consent, covered a much broader swath of discovery issues: "*any* disputes that arise regarding Fed. R. Crim. P. 16 discovery, *including* whether particular documents are required to be produced under Rule 16 . . . and any other discovery matters arising under Rule 16." Dkt. 105 (emphasis added). Magistrate Judge Cousins' order resolved a dispute between the parties about whether the Government should be required to specify a particular subcategory *of Rule 16 documents*, which is plainly a "dispute[]. . . regarding Fed. R. Crim. P. 16 discovery."[3] *Id.* As a result, Magistrate Judge Cousins' order did not exceed the scope of the discovery referral in this case.

---

[3] Moreover, it is certainly not unheard of for a magistrate judge, rather than the trial judge, to order such relief in the context of resolving a discovery dispute. *See United States v. Salyer*, 271 F.R.D. 148, 153-55 (E.D. Cal. 2010) (requiring the Government to categorize millions of pages of documents according to the subcategories of Rule 16(a)(1)(E) within twenty-one days).

### C. Magistrate Judge Cousins' order was well within the court's discretion in light of persuasive precedent and the special circumstances of this case.

Judge Cousins' order required the Government to specify which documents, among the 250 million pages it has disclosed to date, were disclosed pursuant to Rule 16(a)(1)(E)(ii), or as intended to be used during the Government's case-in-chief at trial. As recognized by Magistrate Judge Cousins, it is well within the court's discretion to order "additional pretrial discovery or disclosures" not expressly required by the language of Rule 16 if such disclosures will further the objectives set forth in Rule 2, which include the just determination of every criminal proceeding, simplicity in procedure and fairness in administration, and the elimination of unjustifiable expense and delay. *United States v. W.R. Grace*, 526 F.3d 499, 511 (9th Cir. 2008) (en banc); Dkt. 257 at 1.

Many district courts have entered similar orders requiring the Government to specify which documents were disclosed to the defense under Rule 16(a)(1)(E)(ii), in order to allow the defendant to adequately prepare a defense; all of these cases involved a far lesser volume of material than is involved in this case. *See*, *e.g.*, *Salyer*, 271 F.R.D. at 153-55 (decision by magistrate judge, noting that "a duty to disclose may be unfulfilled by disclosing too much" and requiring the Government to categorize millions of pages of material, according to which subcategory of Rule 16(a)(1)(E) they had been disclosed under); *United States v. Anderson*, 416 F. Supp. 2d 110, 114-16 (D.D.C. 2006) (ordering the Government to identify those items that it intended to offer in its case-in-chief at trial from among the 500,000 pages of discovery disclosed to the defendant); *United States v. Upton*, 856 F. Supp. 727, 747-48, 754 (E.D.N.Y. 1994) (in a case involving "thousands of pieces of paper," requiring the Government to provide notice of the allegedly falsified documents upon which it intended to rely at trial, even though a trial date had not yet been set); *United States v. Poindexter*, 727 F. Supp. 1470, 1472, 1484 (D.D.C. 1989) (ordering the Government to identify within thirty days the documents that it intended to use at trial in a case involving roughly 400,000 pages of documents); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (directing the Government to identify, within fourteen days, which of 25,000 disclosed documents it intended to use during its case-in-chief). In light of the overwhelming weight of authority in Defendants' favor, Magistrate Judge Cousins' decision to

7

1  order the Government to identify its Rule 16(a)(1)(E)(ii) documents can hardly be characterized
2  as "contrary to law" or "clearly erroneous." Fed. R. Crim. P. 59(a).
3        The Government fails to explain why, in light of the enormous volume of discovery in this
4  case, this Court should ignore the persuasive force of the cases cited above. As already described,
5  the document disclosure in this case is truly massive, poses difficult and expensive technical
6  challenges, and is further complicated by the fact that many of the documents are in Chinese. The
7  Government does not contest the fact that it would be an enormous burden on Defendants to
8  analyze the 250 million pages of disclosed material from scratch. Additionally, Mr. Liew's
9  familiarity with his own business documents and communications is currently of limited
10 assistance to his defense, as Mr. Liew remains incarcerated and unable to meaningfully
11 participate in document review. *See United States v. Salyer* ("*Salyer II*"), 2010 WL 3036444, at
12 *7 (E.D. Cal. Aug. 2, 2010) (ordering advance identification of *Brady/Giglio* materials where
13 there was "a singular, individual defendant, who is detained in jail pending trial, and who is
14 represented by a relatively small defense team"). For instance, Mr. Liew is not permitted to keep
15 highly confidential "C-1" materials in prison or to use a computer without the assistance of
16 counsel. Defense counsel has been informed that a new computer policy has been put into effect
17 at the Federal Correctional Institution in Dublin that will make bringing a computer into the
18 prison for legal visits much more time-consuming and cumbersome. See Dkt. 249-1 (Decl. of
19 Katherine Lovett) at ¶ 4. This circumstance makes it even more difficult for Mr. Liew to review
20 electronic discovery in its native form. Moreover, over a terabyte of the Government's discovery
21 is material obtained from Pan America employees; Mr. Liew has no background familiarity with
22 that material that could aid in its review.
23       Specification of the Government's Rule 16(a)(1)(E)(ii) documents would therefore serve
24 the purposes of Fed. R. Crim. P. 2 by allowing Defendants to more effectively use their time in
25 reviewing discovery, and by avoiding the unnecessarily duplicative expense of restoring or
26 processing the many terabytes of discovery in the case. Magistrate Judge Cousins recognized
27 this, stating at the motion hearing that a Rule 16(a)(1)(E)(ii) specification would allow the
28 defense to "focus . . . more efficiently" on the documents that the Government actually intends to

use at trial. *See* Agnolucci Decl., Exh. B at 35:2-11. As the court in *Anderson* observed, "It is in both [the defendant's] and the government's interest that the defendant be able to mount an adequate defense . . . and it is the Court's view that the identification and production of the requested information will help ensure that he can." 416 F. Supp. 2d at 115.

By contrast, the burdens of a specification of Rule 16(a)(1)(E)(ii) documents on the Government are not nearly as overwhelming as the Government makes them out to be. The Government complains that it would rather use its resources on other tasks prior to compiling a Rule 16(a)(1)(E)(ii) specification, Gov't Appeal at 3-5, but the Government's preference as to how to spend its time preparing for trial does not render Judge Cousins' discretionary decision under *W.R. Grace* clearly erroneous or contrary to law. Presumably, the Government has already processed and reviewed the vast majority of the documents in this case; Government counsel represented to Magistrate Judge Cousins in mid-December of last year that they were ready to go to trial at any time. *See* Dkt. 235, Exh. D at 10-11. While the Government has attempted to characterize the disparity in discovery resources between the parties as minimal, in truth, the Government has access to a number of key tools that Defendants lack. For one, the Government has the benefit of DuPont's expertise free of charge, including the company's vast knowledge of the technologies involved in the alleged trade secrets. The Government also has access to forensic programs for processing EnCase image files that are not available to the defense except at prohibitive cost. *See* Dkt. 272 at ¶ 4. Requiring the Government to compile a list of its Rule 16(a)(1)(E)(ii) materials would thus greatly reduce duplicative and time-consuming efforts in this case.

Moreover, "performing an organizational task sooner rather than later is not the type of burden which concerns the [court] to a great degree when there is a real and practical reason for performing it." *See Salyer*, 271 F.R.D. at 153-54. Release of a Rule 16(a)(1)(E)(ii) specification would allow the parties to expedite trial, because the defense could prepare itself much more quickly. Identification of the key material will allow Defendants to focus and prepare their experts for trial; in a case as complex as this one, disclosure of an exhibit list six weeks in advance of trial will not provide enough lead time for defense experts to effectively familiarize

1   themselves with the alleged trade secrets at issue.  In addition, a Rule 16(a)(1)(E)(ii) specification

2   would allow the defense to expeditiously bring pretrial motions; the Government puts the cart

3   before the horse when it suggests that the defense should bring its motions *before* it learns of the

4   Government's case-in-chief evidence.  *See* Gov't Appeal at 4:13-15.

5         In order to play up the alleged burdens of complying with Magistrate Judge Cousins'

6   order, the Government repeatedly refers to the Rule 16(a)(1)(E)(ii) specification as an "exhibit

7   list."  *See, e.g.*, Gov't Appeal at 2:8, 3:3-6, 3:13-16, 4:1-4, 5:9-15.  This is a rhetorical flourish,

8   not an accurate description.  Magistrate Judge Cousins' order contemplates the Government

9   identifying those already-disclosed documents that it *currently*, in good faith, believes it *might*

10  use at trial.  This is not an exhibit list.  It may be considerably more inclusive, as Judge Cousins

11  noted.  *See* Agnolucci Decl., Exh. B at 35:1-2 ("If you got it down to 4,000, that's still a

12  substantial lessening.").  Nor does anything in Judge Cousins' order preclude the Government

13  from supplementing the specification on a rolling basis as new documents are translated,

14  discovered, or found to be significant; indeed, Magistrate Judge Cousins contemplated that very

15  scenario.  Agnolucci Decl. Exh. B at 30-31 (noting circumstances under which the Government

16  could supplement its specification).  At no point in the magistrate judge's order or during the

17  hearing did defense counsel or Judge Cousins refer to this specification as an "exhibit list" or

18  imply that the Government could not present a much narrower exhibit list closer to trial.  *See*

19  Dkt. 257; Agnolucci Decl., Exh. B.

20        As it did before Magistrate Judge Cousins, the Government attempts to fall back on its

21  long-delayed promise to voluntarily specify "a limited number of particularly notable

22  documents."  *See* Gov't Appeal at 5:10-11.  But even though the superseding indictment has

23  finally issued, the Government has yet to specify these key documents to the defense, or indicate

24  when such specification will occur.  On March 16, 2013, Defense counsel once again requested a

25  timeline for the identification of these documents; the Government has not yet responded.

26  Agnolucci Decl. ¶ 2.  The Government cannot rely on its promise to provide key documents

27  without ever actually providing them.  *See* Agnolucci Decl., Exh. B at 34-35 (Magistrate Judge

28  Cousins observing that, while the defense might be satisfied by a key documents production, the

1 Government has chosen not to make that production yet).

2 Of even greater concern is the fact that the Government has repeatedly refused to explain
3 what kinds of documents will be covered by its key documents production. For example, defense
4 counsel has, on many occasions, asked the Government if the key documents specification will
5 include all documents defining the alleged trade secrets in this case; the Government has
6 repeatedly refused to answer that question. Without knowing the standard by which the
7 Government will select "key" documents, such a specification does not provide defense counsel
8 with much comfort that they need not sort through a 250 million page haystack in order to find
9 the needles that make up the Government's case-in-chief. Consequently, the Government's
10 commitment to provide key documents, which to this date remains unfulfilled and vague, is not a
11 proper substitute for the Rule 16(a)(1)(E)(ii) relief ordered by Judge Cousins.

12 Defendants are eager to prepare for trial, but the Government's resistance to Defendants'
13 Rule 16(a)(1)(E)(ii) request is preventing Defendants from efficiently preparing at this very
14 moment. In light of the unprecedented volume of electronic discovery in this case, the burden on
15 the Government of immediate disclosure will be minimal, but such a disclosure would greatly
16 alleviate the immense burdens faced by Defendants. Those very same circumstances were
17 decisive for the court in *Anderson*:

> Given the enormous volume of material produced in this case and defendant's limited resources, it is apparent that requiring defendant's counsel to peruse each page of the materials at issue here—in effect, to duplicate the work of document review presumably already done by the government—would materially impede defendant's counsel's ability to prepare an adequate defense . . . . The government does not credibly contest this reality. This fact alone counsels the Court, in the exercise of its discretion under Rule 16, to grant defendant's discovery request.

22 416 F. Supp. 2d at 114. As the *Anderson* court recognized, requiring Defendants to undergo the
23 expense and effort of reviewing 250 million pages, many of which are in Chinese, while Mr.
24 Liew is incarcerated, is unreasonable given that the Government has already analyzed the
25 majority of the documents in question. The Court should therefore determine that Judge Cousins'
26 order requiring the Government to identify its case-in-chief documents previously produced under
27 Rule 16(a)(1)(E)(ii) was neither contrary to law nor clearly erroneous, and should require the
28 Government to comply with that order by April 30, 2013.

IV.   **CONCLUSION**

Because Magistrate Judge Cousins' order was within the scope of this Court's discovery referral and because it was not clearly erroneous or contrary to law given Judge Cousins' wide discretion in resolving Rule 16 issues, this Court should **affirm** Judge Cousins' order that the Government identify its case-in-chief documents by April 30, 2013.

Dated:  March 29, 2013                                KEKER & VAN NEST LLP

                                                By:   */s/ Stuart L. Gasner*
                                                      STUART L. GASNER
                                                      SIMONA A. AGNOLUCCI
                                                      KATHERINE M. LOVETT

                                                      Attorneys for Defendants WALTER LIEW and
                                                      USA PERFORMANCE TECHNOLOGY, INC.