KEKER & VAN NEST LLP
STUART L. GASNER - # 164675
sgasner@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
KATHERINE M. LOVETT - # 276256
klovett@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,

Defendants.

Case No. CR 11-0573-JSW (NC)

**JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION FOR BILL OF PARTICULARS**

Date: June 6, 2013
Time: 2:00 p.m.
Place: Courtroom 11, 19th Floor
Dept.: Hon. Jeffrey S. White

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The Court should require the government to narrow the vague, unbounded trade secret allegations via a bill of particulars. .......... 2

B. The Court should additionally require the government to specify necessary elements of the financial allegations in a bill of particulars. .......... 5

III. CONCLUSION .......... 6

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Duncan v. United States*
392 F.2d 539 (9th Cir. 1968) .... 2, 4

*United States v. Bin Laden*
92 F. Supp. 2d 225 (S.D.N.Y. 2000).... 2

*United States v. Hsu*
40 F. Supp. 2d 623 (E.D. Pa. 1999) .... 5

*United States v. Ramirez*
609 F.3d 495 (2d Cir. 2010).... 2, 4

*United States v. Smith*
16 F.R.D. 372 (W.D. Mo. 1954).... 2, 3, 4

*Yeargain v. United States*
314 F.2d 881 (9th Cir. 1963) .... 2, 3, 4

## I. INTRODUCTION

Whether or not to grant a bill of particulars is a matter directed to the Court's discretion. In their opening motion papers, Defendants presented several reasons why further detail is needed as to the government's trade secret theories, notably, the broad language of Trade Secrets 1 and 5, the complexity and breadth of the titanium dioxide technology at issue, the large number of "similarities" claimed by DuPont engineers assisting the government, and Mr. Liew's continued incarceration. All of these factors point in favor of granting a bill of particulars that will narrow and expedite the trial.

In its Opposition, the government sidesteps the good reasons for granting a bill of particulars, and instead argues, essentially, that is has done "enough" by virtue of the Indictment and discovery. For example, the government attempts to characterize the Second Superseding Indictment in this case as narrow, well-defined, and "extremely detailed." Dkt. 322 at 14. However, when the Indictment is properly read in concert with the government's own pretrial discovery, which is full of expansive interpretations of what qualifies as a DuPont "trade secret" and yet includes scant indication of the facts underlying the government's financial allegations, it becomes very difficult to determine the scope of the charges at issue in this case.

The government's Opposition mischaracterizes Defendants' Motion as an attempt to receive "all of the evidence the government will introduce to prove the charges alleged in the Indictment." Dkt. 322 at 14. The government misunderstands both Defendants' aim and the purpose of a bill of particulars. Defendants merely seek to understand the government's theories, especially as to its defined trade secrets, but also as to its tax and bankruptcy charges. These are basic, fundamental elements of the criminal charges at issue. Once the outer contours of the allegations are known, the government will be free at trial to use the evidence that it contends supports those allegations. But in order to avoid undue surprise at trial and to allow Defendants, and their experts, to prepare intelligently in this highly technical and complicated case, the Court should order a bill of particulars on the trade secret, tax, and bankruptcy charges.

## II. ARGUMENT

Whether to grant a bill of particulars is a decision entrusted to the sound discretion of the

trial court. *Duncan v. United States*, 392 F.2d 539, 541 (9th Cir. 1968); *United States v. Ramirez*, 609 F.3d 495, 502-03 (2d Cir. 2010). As described in Defendants' Motion, Dkt. 314, a bill of particulars serves "to furnish the defendant further information respecting the charge stated in the indictment when necessary to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Smith*, 16 F.R.D. 372, 375 (W.D. Mo. 1954); *see also Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) (the "purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense, and enable him to prepare an intelligent defense"). For the reasons laid out below and in light of the complicated circumstances of this case, a bill of particulars is necessary both to allow Defendants to intelligently and efficiently prepare for trial and to avoid unfair surprise at trial by prohibiting the government from widening or narrowing its arguments and proof in unforeseeable ways.

**A. The Court should require the government to narrow the vague, unbounded trade secret allegations via a bill of particulars.**

The government's Opposition dedicates a great deal of ink to the notion that the Second Superseding Indictment is a narrow document, with specifically-defined trade secrets supported by "numerous examples of how the alleged trade secrets were improperly used by defendants." Dkt. 322 at 14. Were it proper for the Court to consider the Indictment in a vacuum, independent of the context of this case, perhaps the government's argument would be more persuasive. However, in determining whether to order a bill of particulars, the Court must not only examine the Indictment, but the "totality of the information available to the defendant," including pretrial discovery. *See United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000).

The government's voluminous pretrial discovery belies its argument that the trade secret allegations are clear enough to allow Defendants to intelligently prepare for trial. As the government itself represents, it has produced approximately 7800 documents "considered to be DuPont proprietary information," which include "detailed analysis by DuPont TiO2 experts." *See* Dkt. 323 (Declaration of John Hemann in Support of Government's Opposition), ¶ 4. The DuPont analyses themselves contain over 315 individual assertions of "similarities" between USAPTI's designs and DuPont's; some, but not all, are identified as trade secrets. *See, e.g.*, Dkt. 315 (Declaration of Simona Agnolucci in Support of Motion for Bill of Particulars ("Agnolucci

Decl.")) at ¶¶ 19, 23, Exh. S. These materials strongly suggest that the charges in the Indictment may not be as narrow as the government insists they are.

The defense should not be put to the Herculean task of preparing to address at trial all of the "similarities" suggested by the discovery materials, nor can the defense rely on the vague allegations of the Indictment to impose any limits on the theories the government may raise at trial. In order to avoid unfair surprise at trial, the government should provide a bill of particulars that will allow Defendants to understand the outer bounds of the trade secrets at issue and prepare a case in response. *See Smith*, 16 F.R.D. at 375 (the purpose of a bill of particulars is to avoid unfair surprise); *Yeargain*, 314 F.2d at 882 (9th Cir. 1963) (same). This is particularly true in light of the complex, technical nature of this case; Mr. Liew's continued incarceration and inability to fully participate in his own defense; and the Court's stated preference to try this case in 2013. Dkt. 294 (Order Affirming Magistrate Judge's Order of Disclosure under Rule 16(a)(1)(E)(ii)) at 2.

For example, the government essentially argues that it has "done enough" because "the charges and the theories that relate to" Trade Secret 1 "are plainly alleged in the Indictment." Dkt. 322 at 16. The government then suggests that it need not prove that the entire DuPont chloride-route process "is an actual trade secret, only that defendants believed that it was." *Id.* Even if the government is correct that it need only prove Defendants' subjective belief,[1] it *still* must prove exactly *what* Defendants believed was a trade secret, and that remains very unclear. Perhaps the government intends to specifically prove that Defendants believed the entire DuPont chloride route process was a trade secret. If so, the government easily can and should so state in a bill of particulars. However, Defendants find it implausible that the government would attempt to prove that Defendants believed an *entire process* to be a trade secret when it is clear that a great deal, if not all, of that process was public knowledge and easily available. *See, e.g.*, Dkt. 314 at 4-5 (discussing the wide variety of sources in which details of the chloride route process have been publicly disclosed).

[1] As Defendants' concurrently-filed Reply in Support of Defendants' Motion to Dismiss observes, the Ninth Circuit has yet to resolve whether mere "belief" that something is a trade secret is sufficient to prove attempt to misappropriate a trade secret.

Defendants are thus left to speculate. Perhaps the government intends to isolate and highlight particular subparts of the so-called "DuPont process" and allege that those portions of the process represent things that Defendants believed constituted trade secrets. This approach is strongly suggested by the "detailed analysis" by DuPont employees included in the discovery, which cherry-picks certain details from USAPTI's work product and identifies them as derived from or similar to DuPont proprietary information. *See, e.g.*, Dkt. 315 (Agnolucci Decl.), Exh. S. If so, in the absence of a bill of particulars, the danger of prejudicial surprise to Defendants is great. *See Smith*, 16 F.R.D. at 375; *Yeargain*, 314 F.2d at 882. Given the wide variety of opinions expressed by the DuPont employees who reviewed USAPTI's work product, it will be very difficult to predict which portions of that work product will be singled out as derivative of the entire chloride route process, as defined in Trade Secret 1. The government should not be permitted to rely on any of the hundreds or thousands of subparts of the chloride route process at its own whim in order to convict Defendants. Given the Indictment's vagueness as to what constituted a trade secret within the "DuPont chloride-route process," or what Defendants allegedly believed constituted such a secret, the Court should exercise its discretion to require the government to be more specific. *See Duncan*, 392 F.2d at 541; *Ramirez*, 609 F.3d at 502-03.

The same problems apply to the government's treatment of Trade Secret 5, which encompasses the 407-page "Basic Data" manual. Count 8 of the Indictment alleges, *inter alia*, that Walter Liew, Robert Maegerle, and USAPTI "knowingly and without authorization copied, duplicated, sketched, drew, altered, photocopied, replicated, transmitted, delivered, sent, communicated, and conveyed a trade secret belonging to DuPont, specifically Trade Secret 5." Dkt. 269 at 18. It is true that the Indictment contains a few allegations regarding specifically enumerated instances on which Mr. Maegerle allegedly sent emails containing information from the Basic Data document to Mr. Liew, or allegedly drafted a document referencing data from the Basic Data document. *See* Dkt. 269 at ¶¶ 42-44. However, at no time has the government indicated, in the Indictment or otherwise, that the allegations in Count 8 *only* embrace those three instances. If the Count 8 allegations are so limited, Defendants move for the Court to exercise its broad discretion to order the government to make that limitation explicit in a bill of particulars so

as to ensure that no prejudicial surprise results at trial.

In the absence of a bill of particulars on Count 8 and Trade Secret 5, Defendants will have no way to prepare to answer the allegation that Messrs. Liew and Maegerle "copied," "duplicated," or "replicated" information in the Basic Data document. This is because the "detailed analysis" by DuPont employees included in the government's pretrial discovery includes *numerous* allegations that information in USAPTI work product was similar to information in the Basic Data document. *See, e.g.*, Dkt. 315 (Agnolucci Decl.), Exh. S. The government should not be permitted to rely on DuPont experts to determine the contours of the trade secret in this ad hoc manner. *Cf. United States v. Hsu*, 40 F. Supp. 2d 623, 628-29 (E.D. Pa. 1999). In order to allow Defendants to prepare for trial and to avoid undue prejudice, the Court should order the government to at least specify some ascertainable universe of information from the 407-page Basic Data document that is encompassed in Trade Secret 5, or in the alternative require the government to be limited to the specific allegations in paragraphs 42-44 of the Indictment. Such an order will ensure a manageable, timely trial for which Defendants can prepare free from risk of undue surprise.

**B. The Court should additionally require the government to specify necessary elements of the financial allegations in a bill of particulars.**

The government asserts that a bill of particulars as to the tax charges is not necessary because the defense has been provided discovery regarding Defendants' tax returns and other relevant documents. Dkt. 322 at 18-19. The government finally produced discovery related to the tax charges on May 16, the same day it filed its Opposition.[2] That document production consists of:

- Tax returns for USAPTI/Performance Group for the years 2005-2010;
- An IRS "transcript" of the filed tax returns;
- Records from the USAPTI and Performance Group accountant relating to the sums of money actually reported on the USAPTI and Performance Group tax returns;

[2] The government apparently has been in possession of these materials since May 2012, when it interviewed USAPTI's accountant and obtained copies of his files. However, it waited until the day its Opposition brief was due to make the relevant document production in this case.

- Notes from an IRS interview of the USAPTI and Performance Group accountant; and
- An index of documents.[3]

These documents relate to the amount of money USAPTI actually declared on its tax returns, not to the amounts the government claims USAPTI *should have* reported. Those amounts remain a mystery to Defendants. Accordingly, the existing discovery does not, as the government asserts, "obviates the need" for a bill of particulars. Dkt. 322 at 19.

Similarly, the government states that Defendants have all of the information they need to defend against the bankruptcy charges, pointing to the details in its bail briefing as a "roadmap" to the bankruptcy charges. *See* Dkt. 322 at 19-20. What the government fails to recognize is that bail pleadings are not a sufficient replacement for a well-defined indictment or a bill of particulars, and that bail briefing will not protect Defendants from undue surprise at trial if the government decides to rely on completely different allegedly false statements at that point. If the bankruptcy charges are as straightforward and clear to the government as it suggests in its opposition briefing, a bill of particulars specifying the allegedly undisclosed truths in the bankruptcy proceeding should be a simple endeavor.

## III. CONCLUSION

For the foregoing reasons, the Court should exercise its discretionary authority to GRANT Defendants' motion and order the government to provide a bill of particulars specifying the necessary details of the trade secret and financial allegations in the Second Superseding Indictment. Such an order is essential to the timely preparation of this case for trial within 2013.

Dated: May 23, 2013

KEKER & VAN NEST LLP

By: */s/ Stuart L. Gasner*
STUART L. GASNER
SIMONA A. AGNOLUCCI
KATHERINE M. LOVETT

Attorneys for Defendants WALTER LIEW and USA PERFORMANCE TECHNOLOGY, INC.

[3] *See* Declaration of Christina Blais in Support of Reply in Support of Motion for Bill of Particulars, ¶¶ 2-3, Exh. A.

Dated: May 23, 2013

By: */s/ Doron Weinberg*
DORON WEINBERG

Attorney for Defendant
CHRISTINA LIEW

Dated: May 23, 2013

By: */s/ Jerome J. Froelich, Jr.*
JEROME J. FROELICH, JR.

Attorney for Defendant
ROBERT J. MAEGERLE