United States District Court

For the Northern District of California

1

2

3

4

5 **NOT FOR PUBLICATION**

6 IN THE UNITED STATES DISTRICT COURT

7

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 UNITED STATES OF AMERICA,                         No. CR 11-00573-1 JSW
                                                   No. CR 11-00573-2 JSW
10          Plaintiff,                              No. CR 11-00573-3 JSW
                                                   No. CR 11-00573-4 JSW
11     v.
                                                   **ORDER DENYING JOINT**
12 WALTER LIEW, CHRISTINA LIEW, USA                **MOTION TO DISMISS SECOND**
   PERFORMANCE TECHNOLOGY, INC., and               **SUPERSEDING INDICTMENT**
13 ROBERT MAEGERLE,                                **AND/OR TO STRIKE TRADE**
                                                   **SECRETS NOS. 1 and 5 and**
14          Defendants.                            **COUNTS 3, 5, and 8 AND**
                                                   **GRANTING IN PART AND**
15                                                 **DENYING IN PART JOINT**
                                                   **MOTION FOR BILL OF**
16                                                 **PARTICULARS**

17                                                 **(Docket Nos. 312 and 314)**

18                                      /

19

20          This matter comes before the Court upon consideration of the Joint Motion to Dismiss

21 the Second Superseding Indictment and/or Strike Trade Secrets Nos. 1 and 5 and Counts 3, 5,

22 and 8 ("Joint MTD"), as well as the Joint Motion for a Bill of Particulars ("Joint MBOP") filed

23 by Defendants Walter Liew ("Mr. Liew"), Christina Liew ("Ms. Liew"), USA Performance

24 Technology, Inc. ("USAPTI"), and Robert Maegerle ("Mr. Maegerle") (collectively

25 "Defendants").

26          The Court has considered the parties' papers, relevant legal authority, and the record in

27 this case, and it finds the motion suitable for disposition without oral argument.  The Court

28 VACATES the hearing scheduled for June 20, 2013, and it HEREBY DENIES Defendants'

1    motion to dismiss or to strike and it HEREBY GRANTS IN PART AND DENIES IN PART the

2    motion for a bill of particulars.

3                                                    **BACKGROUND**

4            On March 12, 2013, the Grand Jury returned a twenty-two count Second Superseding

5    Indictment (the "SSI") against the Defendants, two other individuals, and four Chinese

6    corporations.[1]  At issue in the motion to dismiss are the charges that Defendants attempted to

7    violate provisions of the Economic Espionage Act of 1996 (the "EEA"), aided and abetted

8    attempted violations of the EEA, and charges that Mr. Liew filed false tax returns and made

9    false statements and a false oath during bankruptcy proceedings.

10           In brief, the United States contends that the Defendants conspired to, attempted to, or

11   obtained five alleged trade secrets that belonged to E.I. du Pont de Nemours & Company

12   ("DuPont") relating to chloride-route production of titanium dioxide ("TiO2").  (SSI ¶ 1.)  The

13   United States further alleges that the Defendants "conveyed information containing those trade

14   secrets to companies controlled by the" government of the People's Republic of China ("PRC"),

15   "without authorization from DuPont."  (*Id.* ¶ 2.)

16           **1.       The EEA.**

17           Congress passed the EEA in 1996 "against a backdrop of increasing threats to corporate

18   security and a rising tide of international and domestic and economic espionage," as well an

19   "absence of any comprehensive remedy targeting the theft of trade secrets[.]"  *United States v.*

20   *Hsu*, 155 F.3d 189, 194 (3rd Cir. 1998).  The EEA "criminalizes two principal categories of

21   corporate espionage," each of which is at issue in this case.  *Id.* at 195.

22           First, 18 U.S.C. Section 1831 prohibits economic espionage and provides, in pertinent

23   part:

24           Whoever, intending or knowing that the offense will benefit any foreign
             government, foreign instrumentality, or foreign agent knowingly – (2)
25           without authorization copies, duplicates, sketches, draws, photographs,
             downloads, uploads, alters, destroys, photocopies, replicates, transmits,

26

27   _____

     [1]      These corporations have been referred to in previous orders as the "Pangang
28   Defendants."  (*See, e.g.,* Docket Nos. 176 and 293.)  For ease of reference, the Court shall do
     the same here.

                                                          2

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> delivers, sends, mails, communicates, or conveys a trade secret; [or] (4) attempts to commit any offense described in paragraphs (1) through (3); ... shall, except as provided in subsection (b), be fined not more than $5,000,000 or imprisoned not more than 15 years, or both.

18 U.S.C. § 1831(a)(2) and (a)(4). By its terms, a violation of Section 1831 requires some evidence of foreign governmental involvement. *See* 18 U.S.C. § 1831(a); 18 U.S.C. § 1839(1)-(2) (defining "foreign instrumentality" and "foreign agent").[2]

In contrast, Section 1832 constitutes a "general criminal trade secrets provision." *Hsu*, 155 F.3d at 195. That section provides, in pertinent part:

> Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly – (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; [or] (4) attempts to commit any offense described in paragraphs (1) through (3); shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1832(a)(2) and (a)(4).

Under the EEA, a "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]

18 U.S.C. § 1839(3).

---

[2] This reading is further supported by the legislative history of the EEA. *See Hsu*, 155 F.3d at 195 (noting that Section "1831 is deigned to apply only when there is 'evidence of foreign government sponsored or coordinated intelligence activity'") (quoting 142 Cong. Rec. S12,212 (daily ed. Oct. 2, 1996) (Managers' Statement for H.R. 3723)).

3

**United States District Court**
For the Northern District of California

1   Finally, the EEA contains a provision that requires a court to "enter such orders and take

2   such other action as may be necessary and appropriate to preserve the confidentiality of trade

3   secrets..." 18 U.S.C. § 1835. "[T]he confidentiality provision aims to strike a balance between

4   the protection of proprietary information and the unique considerations inherent in criminal

5   prosecutions." *Hsu*, 155 F.3d at 197.

6        **2.      The Charges.**

7   According to the allegations in Count 3, "[b]eginning on date unknown, but no later than

8   2008, and continuing to on or about July 19, 2011," the Liews and USAPTI "knowingly and

9   without authorization attempted to copy, duplicate, sketch, draw, alter, photocopy, replicate,

10  transmit, deliver, send, communicate, and convey a trade secret belonging to DuPont,

11  specifically Trade Secret 1, intending and knowing that the offenses would benefit a foreign

12  government, namely the PRC, and foreign instrumentalities," *i.e.,* the Pangang Defendants.

13  (SSI ¶ 56.)

14  According to the allegations in Count 5, "[b]eginning on date unknown, but no later than

15  2008, and continuing to on or about July 19, 2011," Defendants "knowingly and without

16  authorization attempted to copy, duplicate, sketch, draw, alter, photocopy, replicate, transmit,

17  deliver, send, communicate, and convey a trade secret belonging to DuPont, specifically Trade

18  Secret 1, with the intent to convert the trade secret, which was related to and included in a

19  product, specifically TiO2, that was produced for and placed in interstate and foreign

20  commerce, to the economic benefit of someone other than DuPont, and intending and knowing

21  that he offense would injure DuPont[.]" (*Id.* ¶ 60.)

22  Trade Secret 1 is identified as "[t]he DuPont chloride-route process to manufacture

23  TiO2. Trade Secret 1 includes ways and means in which proprietary and non-proprietary

24  components were compiled and combined by DuPont to form substantial portions of the Ti02

25  manufacturing process, and Trade Secrets 2 through 5 set forth below." (*Id.* ¶ 14.a.)

26  According to the allegations in Count 8, "[b]etween in or about 1998 to July 2011," Mr.

27  Liew, Mr. Maegerle, and USAPTI "knowingly and without authorization copied, duplicated,

28  sketched, drew, altered, photocopied, replicated, transmitted, delivered, sent, communicated,

**United States District Court**
For the Northern District of California

1  and conveyed a trade secret belonging to DuPont, specifically Trade Secret 5, with the intent to

2  convert the trade secret, which was related to and included in a product, specifically TiO2, that

3  was produced for an placed in interstate and foreign commerce, to the economic benefit of

4  someone other than DuPont, and intending and knowing that the offense would injure DuPont,

5  and did aid and abet such conduct."  (*Id.* ¶ 66.)

6      Trade Secret 5 is identified as

7      DuPont Document EM-C-8510-01848, titled "60,000 Metric Tons Per Year
       Scope/Basic Data," dated October 31, 1985, addressed to R.J. Maegerle
8      (the "Basic Data Document").  This 407 page document, which was
       designated 'Confidential-Special Control,' and issued in numbered copies,
9      provided the scope and basic data for DuPont's then-planned chloride-route
       plant in Taiwan, which later opened in Kuan Yin, Taiwan.  It contained the
10     process and equipment information necessary to design a greenfield (*e.g.,* a
       plant built from scratch at an undeveloped site), world-class production
11     scale, integrated chloride-route TiO2 production line.  The Basic Data
       Document's security statement provided that the report is "highly
12     confidential" and "[m]uch of the report data are considered in the 'trade
       secret' category and should not be released to vendor representatives and
13     non-company personnel."  The Basic Data Document was itself a trade
       secret and it contained numerous discrete trade secrets within it.

14

15  (*Id.* ¶ 14.c.)

16      In Counts 15 through 19, the United States contends that Mr. Liew filed false tax returns

17  for calendar years 2006 through 2008 on behalf of a predecessor company to USAPTI, USA

18  Performance Group, Inc. ("Performance Group"), and filed a false tax return for calendar years

19  2009 and 2010 on behalf of USAPTI.  (*Id.* ¶¶ 90-99).  In Counts 20, 21, and 22, the United

20  States contends that Mr. Liew filed a voluntary petition for bankruptcy on behalf of

21  Performance Group and made false statements in the course of those bankruptcy proceedings,

22  both in writing and during a hearing.  (*Id.* ¶¶ 100-107.)

23      The Court shall address additional facts as necessary in the remainder of this Order.

24                              **ANALYSIS**

25      Defendants move to dismiss Counts 3, 5 and 8 of the SSI on the ground that the United

26  States fails to identify Trade Secrets 1 and 5 with specificity, which renders these counts

27  unconstitutionally vague.

28

**A.      The Court Denies the Motion to Dismiss or to Strike.**

     **1.      Applicable Legal Standard.**

An indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it contains 'the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy.'" *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (quoting *United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir. 1995)). "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *Id.* (quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)); *see also United States v. Musacchio,* 968 F.2d 782, 787 (9th Cir. 1991); *United States v. Morlan,* 756 F.2d 1442, 1444 (9th Cir. 1985).

"In ruling on a pre-trial motion to dismiss the indictment for failure to state an offense, the district court is bound by the four corners of the indictment . . . [and] must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002). "The indictment should be read as a whole and construed according to common sense." *Echavarria-Olarte v. Reno,* 35 F.3d 395, 397 (9th Cir. 1994); *accord Awad*, 551 F.3d at 936. The government need only allege the essential facts necessary to apprise the defendant of the crime charged. The government need not allege the theories or evidence upon which the it will rely to prove those facts. *United States v. Cochrane,* 985 F.2d 1027, 1031 (9th Cir. 1993); *accord United States v. ORS, Inc.,* 997 F.2d 628, 629 (9th Cir. 1993).

     **2.      The Allegations in Counts 3 and Counts 5 Are Sufficient.**

Defendants attack the sufficiency of Counts 3 and 5 solely on the basis that the description of Trade Secret 1 is so vague as to render it impossible for them to prepare a defense to the charges. It is evident that paragraphs 56 and 60 consist primarily of the text of the EEA. That fact does not necessarily render these counts unconstitutionally vague. *See, e.g., United States v. Mancuso*, – F.3d –, 2013 WL 1811276, at *4 (9th Cir. May 1, 2013) (noting that it is

6

1   generally sufficient to set forth offense using words of the statute if the words fully and

2   unambiguously set forth all elements of the offense) (citing *Hamling v. United States*, 418 U.S.

3   87, 117 (1974)). If, however, "guilt depends ... crucially upon ... a specific identification of

4   fact, our cases have uniformly held that an indictment must do more than simply repeat the

5   language of the criminal statute." *Russell v. United States*, 396 U.S. 749, 764 (1962).

6          Defendants argue that their guilt does depend "a specific identification of fact," namely

7   the trade secrets at issue, and they rely heavily on *United States v. Case*, which involved a

8   successful challenge to the sufficiency of an indictment for theft of trade secrets under Section

9   1832. 2007 WL 1746399 (S.D. Miss. June 15, 2007). In granting the defendants' motion to

10  dismiss, the *Case* court reasoned that the "allegation of the existence of a 'trade secret' goes to

11  the 'core criminality' of the statute." *Id.*, 2007 WL 1746399, at *3 (citing, *inter alia*, *Russell*,

12  369 U.S. at 764). Because the EEA defines the term "trade secret" in broad terms, the court

13  also reasoned that the mere allegation that the defendants stole a "trade secret" would be

14  insufficient. *Id.*, 2007 WL 1743699, at *4. The government argued that it had described the

15  trade secret in more detail, namely "technology related to the design, specifications,

16  manufacture and sale of military and commercial aviation hydraulic products..." *Case*, 2007

17  WL 1746399, at *1. The court found this description was insufficient to adequately apprise the

18  defendants of the charges:

19          [I]n a case where the government's stated position is that these defendants
            stole [the victim's] 'entire working product,' that is, an 'entire universe' of
20          information, some of which were trade secrets, some of which were
            'proprietary' and some of which are proposed to be presented to the jury as
21          'other materials,' this purported limitation of the generic word 'trade
            secret' is so broad as to be meaningless....

22

23  *Id.*, 2007 WL 1746399, at *4.

24         Defendants argue that the allegations regarding Trade Secret 1 cover an "entire

25  universe" of information that allegedly belongs to DuPont and, like the definition of the trade

26  secret in *Case*, are "so broad as to be meaningless." The United States counters that Defendants

27  here are charged with attempted economic espionage and attempted theft of trade secrets,

28  charges which it asserts do not require proof of an actual trade secret.

United States District Court
For the Northern District of California

1    In support of its argument, the United States relies on cases in which courts have stated

2    that charges of attempted violations of Sections 1831 and 1832 do not require the government to

3    prove an actual trade secret. *See United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002)

4    (affirming district court ruling that legal impossibility is not a defense to violations of Sections

5    1832(a)(4) and (a)(5)); *United States v. Hsu*, 155 F.3d 189, 199-202 (same and concluding that,

6    as a result, defendants had no right to view unredacted documents to establish defense); *cf.*

7    *United States v. Lange*, 312 F.3d 263, 268 (7th Cir. 2002) (agreeing with "general approach" of

8    *Yang* and *Hsu* but noting that although defense of impossibility is inapplicable to charge of

9    attempted theft trade secrets, "[t]his does not mean ... that the defendant's belief *alone* can

10   support a conviction") (emphasis in original); *United States v. Martin*, 228 F.3d 1, 13 (1st Cir.

11   2000) (rejecting defendant's argument that evidence was insufficient where he was charged

12   with conspiracy to violate Section 1832; "key question is whether [defendant] intended to steal

13   trade secrets").

14   The Court concludes the United States has the better argument. Although the definition

15   of Trade Secret 1 is similar to the definition of the trade secret in *Case*, the Court concludes the

16   proper focus is on the "core criminality" of the offenses charged in Counts 3 and 5. Those

17   counts charge Defendants with attempts to violate the EEA, which requires the United States to

18   prove the Defendants "had culpable intent" and "engaged in conduct constituting a substantial

19   step toward commission of the crime that represents the culmination of that intent." *United*

20   *States v. Pariseau*, 685 F.3d 1129, 1130 (9th Cir. 2012); *see also Lange*, 312 F.3d at 268-69;

21   *Hsu*, 155 F.3d at 202; Ninth Circuit Model Criminal Jury Instruction 5.3. Thus, it is the

22   Defendants' intent and their actions that form the "core criminality" of these charges, rather

23   than the existence of the asserted trade secret. That is, unlike the situation where a defendant is

24   charged with a substantive violation of the EEA, Defendants' guilt here depends upon their

25   intent and their actions, rather than on "a specific identification of fact." *Russell*, 369 U.S. at

26   764.

27   Defendants also argue that the definition of Trade Secret 1 does not comport with the

28   types of information Congress intended the EEA to protect, citing to a portion of the legislative

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

1  history, which states that "a prosecution under [the EEA] must establish *a particular piece of*

2  *information* that a person has stolen or misappropriated."  142 Cong. Reg. S12,201, 12,213

3  (daily ed. Oct. 2, 1996) (emphasis added).  That statement, however, is set forth in a section of

4  the legislative history that makes clear that: (1) the definition of trade secret was not intended to

5  encompass general knowledge and; (2) the EEA was not intended to cover a person who takes

6  "advantage of the general knowledge and skills or experience that he or she obtains or comes by

7  during his tenure with a company."  *Id.*; *see also Hsu*, 155 F.3d at 196-197 ("Congress did not

8  intend the definition of a trade secret to be so broad as to prohibit lawful competition such as

9  the use of general skills or parallel development of a similar project.").  Moreover, as set forth

10  above, the term "trade secret" is defined in Section 1839(3), and that definition encompasses,

11  *inter alia*, "compilations, ..., methods, techniques, [and] processes."

12         Accordingly, the Court DENIES Defendants' motion to dismiss Count 3 and Count 5.

13         **3.      The Allegations in Count 8 Are Sufficient.**

14         Mr. Liew, Mr. Maegerle and USAPTI also move to dismiss Count 8, which charges

15  these Defendants with a substantive violation of Section 1832(a)(2), and with aiding and

16  abetting a violation of that portion of the EEA.  This Count relates to Trade Secret 5, the Basic

17  Data Document.  Defendants rely on the same arguments raised in connection with Trade Secret

18  1 and they also note that the United States alleges that the Basic Data document "contained

19  numerous discrete trade secrets within it," but fails to identify those discrete trade secrets.  (SSI

20  ¶ 14.c)

21         The Court finds these arguments unpersuasive.  The United States has clearly identified

22  the trade secret at issue in Count 8, namely the Basic Data Document, which "contained the

23  process and equipment information necessary to design a greenfield ... world-class production

24  scale, integrated chloride-route TiO2 production line."  (*Id.*)  Those allegations provide Mr.

25  Liew, Mr. Maegerle, and USAPTI with the "essential facts necessary to apprise" them of the

26  crime charged.

27

28

United States District Court

For the Northern District of California

1    Accordingly, the Court DENIES the motion to dismiss Count 8.[3]

2    **C.    Motion for Bill of Particulars.**

3        **1.    Applicable Legal Standard.**

4    Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the filing

5    of a bill of particulars." "The bill of particular serves three functions: 'to inform the defendant

6    of the nature of the charges with sufficient precision to enable him to prepare for trial, to avoid

7    or minimize the danger of surprise at the time of trial, and to enable him to plead his conviction

8    or acquittal in bar of another prosecution for the same offense when the indictment is too vague,

9    and indefinite for such purposes.'" *United States v. Geise*, 597 F.2d 1170, 1180-81 (9th Cir.

10    1979 (quoting *United States v. Birmley*, 529 F.2d 103, 108 (9th Cir. 1976)); *see also United*

11    *States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) ("The purposes of a bill of particulars are

12    to minimize the danger of surprise at trial and to provide sufficient information on the nature of

13    the charges to allow preparation of a defense.").

14    However, a defendant may not use a motion for a bill of particulars to obtain full

15    discovery of the government's evidence. *Geise*, 597 F.2d at 1181 (concluding court did not

16    abuse its discretion in denying motion for bill of particulars seeking "when, where and how" of

17    every act in furtherance of a conspiracy, when indictment and discovery provided defendant

18    with information sufficient to meet purposes of a bill of particulars).

19    Finally, when a court is considering whether to order a bill of particulars, it "should

20    consider whether the defendant has been advised adequately of the charges through the

21    indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d

22    1044, 1054 (9th Cir. 1984).

23        **2.    A Bill of Particulars is Warranted, in part, As to the Violations of the EEA.**

24

25    _____

26    [3]    Defendants moved, in the alternative, to dismiss the SSI in its entirety.
Because Defendants have not challenged the sufficiency of the charges set forth in Counts 1-
2, 6-7 and 9-22, the Court DENIES Defendants' alternative request for relief.

27

28    In addition, although Defendants originally moved to dismiss Count 4, they are not
named in that Count, and they do not include a discussion of Count 4 in their reply brief.
Accordingly, the Court DENIES, AS MOOT, the motion to dismiss Count 4.

1    The Defendants ask that the Court require the United States "to define each Trade Secret

2    in Paragraph 14 of the [SSI] with reference to particular equipment specifications or process

3    parameters, and identify the portions of [D]efendants' work-product that it alleges was derived

4    from each alleged secret." (Joint MBOP at 10:13-16.)  Defendants posit six reasons why a bill

5    of particulars is necessary, including the fact that the definitions of Trade Secrets 1 and 5 are

6    overly broad, only two documents bearing DuPont confidentiality legends were found among

7    the documents seized from the Defendants, and discovery in this case has been voluminous.

8    Although the discovery in this case has been voluminous, the United States has provided

9    Defendants with a list of key documents.  In addition, at least one of the documents Defendants

10   submit in support of their motion identifies areas of Defendants' work product that are alleged

11   to be DuPont trade secrets.  (*See* Docket No. 315, Declaration of Simona Agnolucci, Ex. S.)

12   Finally, the Court ordered the United States to provide the Defendants with the documents it

13   intends to introduce in its case in chief by May 30, 2013, even though it has not yet set a trial

14   date.  (*See* Docket Nos. 257, 294.)  The Court finds that this information, combined with the

15   information in the SSI, is sufficient and a bill of particulars is not warranted as to the Counts

16   that incorporate Trade Secrets 2 through 5.

17   The Court has found that the SSI provides constitutionally adequate notice of the

18   charges with respect to Trade Secret 1, and it has required the Government to disclose the

19   evidence that will be used in its case in chief, which should help to narrow the scope of the

20   voluminous discovery that has been provided thus far.  Notwithstanding those facts, Mr. Liew

21   remains incarcerated.  In addition, the definition of Trade Secret 1 is broader than the

22   definitions of Trade Secrets 2 through 5.  Therefore, in order to minimize surprise at trial and to

23   assist in the expeditious and efficient resolution of this matter, the Court does find it appropriate

24   for the United States to provide a bill of particulars with respect to Counts 3 and 5.

25   Specifically, in light of the fact that these counts charge Defendants with attempt, the

26   United States shall provide a bill of particulars that sets forth its theory of what Defendants'

27   reasonably believed the trade secret to be, *e.g.,* whether the United States will argue that

28   Defendants reasonably believed the entire chloride-route process to manufacture TiO2 was a

11

1  trade secret or whether it will argue the Defendants reasonably believed a subset of the process

2  was a trade secret. If the latter, the United States, taking into account the EEA's definition of a

3  trade secret, shall identify with particularity: (1) the "ways and means," described in paragraph

4  14.a; and (2) the "proprietary and non-proprietary components," described in paragraph 14.a.;

5  (3) and the resulting compilations and combinations that formed substantial portions of the

6  TiO2 manufacturing process.

7  **3.      A Bill of Particulars is Not Warranted as to the Financial Charges**.

8  With respect to the charges regarding filing false tax returns, Counts 15 through 19, Mr.

9  Liew asks that the United States advise him of the actual amount that should have been

10  reported. Mr. Liew states that he cannot adequately prepare for trial without that information,

11  but he has not explained why this information is necessary to defend against the charges. In

12  these counts, the United States identifies the tax years in question, the amount listed on the

13  return, and alleges that Mr. Liew knew that the gross receipts for Performance Group or

14  USAPTI "substantially exceeded that amount." (SSI ¶¶ 91, 93, 95, 97, 99.) The United States

15  also incorporates allegations in paragraphs 20 and 31 of the SSI, which provide additional

16  factual details relating to these charges, including the value of contracts that Mr. Liew allegedly

17  executed during two of the tax years at issue.

18  With respect to the bankruptcy charges, the United States has identified the statements

19  that are allegedly false in the SSI and where and when they were made. In addition, the United

20  States has not only provided discovery on these charges, it has elaborated on its theory in a

21  motion to revoke the order of Mr. Liew's release.

22  The Court concludes that Mr. Liew has "been advised adequately of the charges through

23  the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054.

**CONCLUSION**

25  For the reasons set forth above, the Court DENIES Defendants' motion to dismiss or to

26  strike, and it GRANTS IN PART AND DENIES IN PART Defendants' motion for a bill of

27  particulars. The United States shall file the Bill of Particulars required by this Order by no later

28  than June 25, 2013.

*United States District Court*
For the Northern District of California

12

1    If the United States believes that it is appropriate or necessary to file the Bill of

2  Particulars under seal, it must submit an administrative motion to seal pursuant to Northern

3  District Criminal Local Rule 55-1 and Civil Local Rule 79-5.

4    **IT IS SO ORDERED.**

5  Dated: June 11, 2013



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28