United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>Defendants.<br>_____/ | No. CR 11-00573-1 JSW<br>No. CR 11-00573-2 JSW<br>No. CR 11-00573-3 JSW<br>No. CR 11-00573-4 JSW<br><br>**ORDER DENYING JOINT MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT AND/OR TO STRIKE TRADE SECRETS NOS. 1 and 5 and COUNTS 3, 5, and 8 AND GRANTING IN PART AND DENYING IN PART JOINT MOTION FOR BILL OF PARTICULARS**<br><br>**(Docket Nos. 312 and 314)** |

This matter comes before the Court upon consideration of the Joint Motion to Dismiss the Second Superseding Indictment and/or Strike Trade Secrets Nos. 1 and 5 and Counts 3, 5, and 8 ("Joint MTD"), as well as the Joint Motion for a Bill of Particulars ("Joint MBOP") filed by Defendants Walter Liew ("Mr. Liew"), Christina Liew ("Ms. Liew"), USA Performance Technology, Inc. ("USAPTI"), and Robert Maegerle ("Mr. Maegerle") (collectively "Defendants").

The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. The Court VACATES the hearing scheduled for June 20, 2013, and it HEREBY DENIES Defendants'

motion to dismiss or to strike and it HEREBY GRANTS IN PART AND DENIES IN PART the motion for a bill of particulars.

**BACKGROUND**

On March 12, 2013, the Grand Jury returned a twenty-two count Second Superseding Indictment (the "SSI") against the Defendants, two other individuals, and four Chinese corporations.[1] At issue in the motion to dismiss are the charges that Defendants attempted to violate provisions of the Economic Espionage Act of 1996 (the "EEA"), aided and abetted attempted violations of the EEA, and charges that Mr. Liew filed false tax returns and made false statements and a false oath during bankruptcy proceedings.

In brief, the United States contends that the Defendants conspired to, attempted to, or obtained five alleged trade secrets that belonged to E.I. du Pont de Nemours & Company ("DuPont") relating to chloride-route production of titanium dioxide ("TiO2"). (SSI ¶ 1.) The United States further alleges that the Defendants "conveyed information containing those trade secrets to companies controlled by the" government of the People's Republic of China ("PRC"), "without authorization from DuPont." (*Id.* ¶ 2.)

**1.    The EEA.**

Congress passed the EEA in 1996 "against a backdrop of increasing threats to corporate security and a rising tide of international and domestic and economic espionage," as well an "absence of any comprehensive remedy targeting the theft of trade secrets[.]" *United States v. Hsu*, 155 F.3d 189, 194 (3rd Cir. 1998). The EEA "criminalizes two principal categories of corporate espionage," each of which is at issue in this case. *Id.* at 195.

First, 18 U.S.C. Section 1831 prohibits economic espionage and provides, in pertinent part:

> Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent knowingly – (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits,

---

[1] These corporations have been referred to in previous orders as the "Pangang Defendants." (*See, e.g.,* Docket Nos. 176 and 293.) For ease of reference, the Court shall do the same here.

2

> delivers, sends, mails, communicates, or conveys a trade secret; [or] (4) attempts to commit any offense described in paragraphs (1) through (3); ... shall, except as provided in subsection (b), be fined not more than $5,000,000 or imprisoned not more than 15 years, or both.

18 U.S.C. § 1831(a)(2) and (a)(4). By its terms, a violation of Section 1831 requires some evidence of foreign governmental involvement. *See* 18 U.S.C. § 1831(a); 18 U.S.C. § 1839(1)-(2) (defining "foreign instrumentality" and "foreign agent").[2]

In contrast, Section 1832 constitutes a "general criminal trade secrets provision." *Hsu*, 155 F.3d at 195. That section provides, in pertinent part:

> Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly – (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; [or] (4) attempts to commit any offense described in paragraphs (1) through (3); shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1832(a)(2) and (a)(4).

Under the EEA, a "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]

18 U.S.C. § 1839(3).

---

[2] This reading is further supported by the legislative history of the EEA. *See Hsu*, 155 F.3d at 195 (noting that Section "1831 is deigned to apply only when there is 'evidence of foreign government sponsored or coordinated intelligence activity'") (quoting 142 Cong. Rec. S12,212 (daily ed. Oct. 2, 1996) (Managers' Statement for H.R. 3723)).

3

Finally, the EEA contains a provision that requires a court to "enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets..." 18 U.S.C. § 1835. "[T]he confidentiality provision aims to strike a balance between the protection of proprietary information and the unique considerations inherent in criminal prosecutions." *Hsu*, 155 F.3d at 197.

### 2. The Charges.

According to the allegations in Count 3, "[b]eginning on date unknown, but no later than 2008, and continuing to on or about July 19, 2011," the Liews and USAPTI "knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey a trade secret belonging to DuPont, specifically Trade Secret 1, intending and knowing that the offenses would benefit a foreign government, namely the PRC, and foreign instrumentalities," *i.e.,* the Pangang Defendants. (SSI ¶ 56.)

According to the allegations in Count 5, "[b]eginning on date unknown, but no later than 2008, and continuing to on or about July 19, 2011," Defendants "knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey a trade secret belonging to DuPont, specifically Trade Secret 1, with the intent to convert the trade secret, which was related to and included in a product, specifically TiO2, that was produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than DuPont, and intending and knowing that he offense would injure DuPont[.]" (*Id.* ¶ 60.)

Trade Secret 1 is identified as "[t]he DuPont chloride-route process to manufacture TiO2. Trade Secret 1 includes ways and means in which proprietary and non-proprietary components were compiled and combined by DuPont to form substantial portions of the Ti02 manufacturing process, and Trade Secrets 2 through 5 set forth below." (*Id.* ¶ 14.a.)

According to the allegations in Count 8, "[b]etween in or about 1998 to July 2011," Mr. Liew, Mr. Maegerle, and USAPTI "knowingly and without authorization copied, duplicated, sketched, drew, altered, photocopied, replicated, transmitted, delivered, sent, communicated,

and conveyed a trade secret belonging to DuPont, specifically Trade Secret 5, with the intent to convert the trade secret, which was related to and included in a product, specifically TiO2, that was produced for an placed in interstate and foreign commerce, to the economic benefit of someone other than DuPont, and intending and knowing that the offense would injure DuPont, and did aid and abet such conduct." (*Id.* ¶ 66.)

Trade Secret 5 is identified as

> DuPont Document EM-C-8510-01848, titled "60,000 Metric Tons Per Year Scope/Basic Data," dated October 31, 1985, addressed to R.J. Maegerle (the "Basic Data Document"). This 407 page document, which was designated 'Confidential-Special Control,' and issued in numbered copies, provided the scope and basic data for DuPont's then-planned chloride-route plant in Taiwan, which later opened in Kuan Yin, Taiwan. It contained the process and equipment information necessary to design a greenfield (*e.g.,* a plant built from scratch at an undeveloped site), world-class production scale, integrated chloride-route TiO2 production line. The Basic Data Document's security statement provided that the report is "highly confidential" and "[m]uch of the report data are considered in the 'trade secret' category and should not be released to vendor representatives and non-company personnel." The Basic Data Document was itself a trade secret and it contained numerous discrete trade secrets within it.

(*Id.* ¶ 14.c.)

In Counts 15 through 19, the United States contends that Mr. Liew filed false tax returns for calendar years 2006 through 2008 on behalf of a predecessor company to USAPTI, USA Performance Group, Inc. ("Performance Group"), and filed a false tax return for calendar years 2009 and 2010 on behalf of USAPTI. (*Id.* ¶¶ 90-99). In Counts 20, 21, and 22, the United States contends that Mr. Liew filed a voluntary petition for bankruptcy on behalf of Performance Group and made false statements in the course of those bankruptcy proceedings, both in writing and during a hearing. (*Id.* ¶¶ 100-107.)

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

Defendants move to dismiss Counts 3, 5 and 8 of the SSI on the ground that the United States fails to identify Trade Secrets 1 and 5 with specificity, which renders these counts unconstitutionally vague.

**A.     The Court Denies the Motion to Dismiss or to Strike.**

    **1.     Applicable Legal Standard.**

An indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it contains 'the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy.'" *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (quoting *United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir. 1995)). "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *Id.* (quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)); *see also United States v. Musacchio,* 968 F.2d 782, 787 (9th Cir. 1991); *United States v. Morlan,* 756 F.2d 1442, 1444 (9th Cir. 1985).

"In ruling on a pre-trial motion to dismiss the indictment for failure to state an offense, the district court is bound by the four corners of the indictment . . . [and] must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002). "The indictment should be read as a whole and construed according to common sense." *Echavarria-Olarte v. Reno,* 35 F.3d 395, 397 (9th Cir. 1994); *accord Awad*, 551 F.3d at 936. The government need only allege the essential facts necessary to apprise the defendant of the crime charged. The government need not allege the theories or evidence upon which the it will rely to prove those facts. *United States v. Cochrane,* 985 F.2d 1027, 1031 (9th Cir. 1993); *accord United States v. ORS, Inc.,* 997 F.2d 628, 629 (9th Cir. 1993).

    **2.     The Allegations in Counts 3 and Counts 5 Are Sufficient.**

Defendants attack the sufficiency of Counts 3 and 5 solely on the basis that the description of Trade Secret 1 is so vague as to render it impossible for them to prepare a defense to the charges. It is evident that paragraphs 56 and 60 consist primarily of the text of the EEA. That fact does not necessarily render these counts unconstitutionally vague. *See, e.g., United States v. Mancuso*, – F.3d –, 2013 WL 1811276, at *4 (9th Cir. May 1, 2013) (noting that it is

6

generally sufficient to set forth offense using words of the statute if the words fully and unambiguously set forth all elements of the offense) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). If, however, "guilt depends ... crucially upon ... a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell v. United States*, 396 U.S. 749, 764 (1962).

Defendants argue that their guilt does depend "a specific identification of fact," namely the trade secrets at issue, and they rely heavily on *United States v. Case*, which involved a successful challenge to the sufficiency of an indictment for theft of trade secrets under Section 1832. 2007 WL 1746399 (S.D. Miss. June 15, 2007). In granting the defendants' motion to dismiss, the *Case* court reasoned that the "allegation of the existence of a 'trade secret' goes to the 'core criminality' of the statute." *Id.*, 2007 WL 1746399, at *3 (citing, *inter alia*, *Russell*, 369 U.S. at 764). Because the EEA defines the term "trade secret" in broad terms, the court also reasoned that the mere allegation that the defendants stole a "trade secret" would be insufficient. *Id.*, 2007 WL 1743699, at *4. The government argued that it had described the trade secret in more detail, namely "technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products..." *Case*, 2007 WL 1746399, at *1. The court found this description was insufficient to adequately apprise the defendants of the charges:

> [I]n a case where the government's stated position is that these defendants stole [the victim's] 'entire working product,' that is, an 'entire universe' of information, some of which were trade secrets, some of which were 'proprietary' and some of which are proposed to be presented to the jury as 'other materials,' this purported limitation of the generic word 'trade secret' is so broad as to be meaningless....

*Id.*, 2007 WL 1746399, at *4.

Defendants argue that the allegations regarding Trade Secret 1 cover an "entire universe" of information that allegedly belongs to DuPont and, like the definition of the trade secret in *Case*, are "so broad as to be meaningless." The United States counters that Defendants here are charged with attempted economic espionage and attempted theft of trade secrets, charges which it asserts do not require proof of an actual trade secret.

7

In support of its argument, the United States relies on cases in which courts have stated that charges of attempted violations of Sections 1831 and 1832 do not require the government to prove an actual trade secret. *See United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (affirming district court ruling that legal impossibility is not a defense to violations of Sections 1832(a)(4) and (a)(5)); *United States v. Hsu,* 155 F.3d 189, 199-202 (same and concluding that, as a result, defendants had no right to view unredacted documents to establish defense); *cf. United States v. Lange*, 312 F.3d 263, 268 (7th Cir. 2002) (agreeing with "general approach" of *Yang* and *Hsu* but noting that although defense of impossibility is inapplicable to charge of attempted theft trade secrets, "[t]his does not mean ... that the defendant's belief *alone* can support a conviction") (emphasis in original); *United States v. Martin*, 228 F.3d 1, 13 (1st Cir. 2000) (rejecting defendant's argument that evidence was insufficient where he was charged with conspiracy to violate Section 1832; "key question is whether [defendant] intended to steal trade secrets").

The Court concludes the United States has the better argument. Although the definition of Trade Secret 1 is similar to the definition of the trade secret in *Case*, the Court concludes the proper focus is on the "core criminality" of the offenses charged in Counts 3 and 5. Those counts charge Defendants with attempts to violate the EEA, which requires the United States to prove the Defendants "had culpable intent" and "engaged in conduct constituting a substantial step toward commission of the crime that represents the culmination of that intent." *United States v. Pariseau*, 685 F.3d 1129, 1130 (9th Cir. 2012); *see also Lange*, 312 F.3d at 268-69; *Hsu*, 155 F.3d at 202; Ninth Circuit Model Criminal Jury Instruction 5.3. Thus, it is the Defendants' intent and their actions that form the "core criminality" of these charges, rather than the existence of the asserted trade secret. That is, unlike the situation where a defendant is charged with a substantive violation of the EEA, Defendants' guilt here depends upon their intent and their actions, rather than on "a specific identification of fact." *Russell*, 369 U.S. at 764.

Defendants also argue that the definition of Trade Secret 1 does not comport with the types of information Congress intended the EEA to protect, citing to a portion of the legislative

8

history, which states that "a prosecution under [the EEA] must establish *a particular piece of information* that a person has stolen or misappropriated." 142 Cong. Reg. S12,201, 12,213 (daily ed. Oct. 2, 1996) (emphasis added). That statement, however, is set forth in a section of the legislative history that makes clear that: (1) the definition of trade secret was not intended to encompass general knowledge and; (2) the EEA was not intended to cover a person who takes "advantage of the general knowledge and skills or experience that he or she obtains or comes by during his tenure with a company." *Id.*; *see also Hsu*, 155 F.3d at 196-197 ("Congress did not intend the definition of a trade secret to be so broad as to prohibit lawful competition such as the use of general skills or parallel development of a similar project."). Moreover, as set forth above, the term "trade secret" is defined in Section 1839(3), and that definition encompasses, *inter alia*, "compilations, ..., methods, techniques, [and] processes."

Accordingly, the Court DENIES Defendants' motion to dismiss Count 3 and Count 5.

### 3. The Allegations in Count 8 Are Sufficient.

Mr. Liew, Mr. Maegerle and USAPTI also move to dismiss Count 8, which charges these Defendants with a substantive violation of Section 1832(a)(2), and with aiding and abetting a violation of that portion of the EEA. This Count relates to Trade Secret 5, the Basic Data Document. Defendants rely on the same arguments raised in connection with Trade Secret 1 and they also note that the United States alleges that the Basic Data document "contained numerous discrete trade secrets within it," but fails to identify those discrete trade secrets. (SSI ¶ 14.c)

The Court finds these arguments unpersuasive. The United States has clearly identified the trade secret at issue in Count 8, namely the Basic Data Document, which "contained the process and equipment information necessary to design a greenfield ... world-class production scale, integrated chloride-route TiO2 production line." (*Id.*) Those allegations provide Mr. Liew, Mr. Maegerle, and USAPTI with the "essential facts necessary to apprise" them of the crime charged.

9

Accordingly, the Court DENIES the motion to dismiss Count 8.[3]

**C.  Motion for Bill of Particulars.**

    **1.  Applicable Legal Standard.**

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the filing of a bill of particulars." "The bill of particular serves three functions: 'to inform the defendant of the nature of the charges with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for such purposes.'" *United States v. Geise*, 597 F.2d 1170, 1180-81 (9th Cir. 1979 (quoting *United States v. Birmley*, 529 F.2d 103, 108 (9th Cir. 1976)); *see also United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) ("The purposes of a bill of particulars are to minimize the danger of surprise at trial and to provide sufficient information on the nature of the charges to allow preparation of a defense.").

However, a defendant may not use a motion for a bill of particulars to obtain full discovery of the government's evidence. *Geise*, 597 F.2d at 1181 (concluding court did not abuse its discretion in denying motion for bill of particulars seeking "when, where and how" of every act in furtherance of a conspiracy, when indictment and discovery provided defendant with information sufficient to meet purposes of a bill of particulars).

Finally, when a court is considering whether to order a bill of particulars, it "should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1984).

    **2.  A Bill of Particulars is Warranted, in part, As to the Violations of the EEA.**

---

[3] Defendants moved, in the alternative, to dismiss the SSI in its entirety. Because Defendants have not challenged the sufficiency of the charges set forth in Counts 1-2, 6-7 and 9-22, the Court DENIES Defendants' alternative request for relief.

In addition, although Defendants originally moved to dismiss Count 4, they are not named in that Count, and they do not include a discussion of Count 4 in their reply brief. Accordingly, the Court DENIES, AS MOOT, the motion to dismiss Count 4.

The Defendants ask that the Court require the United States "to define each Trade Secret in Paragraph 14 of the [SSI] with reference to particular equipment specifications or process parameters, and identify the portions of [D]efendants' work-product that it alleges was derived from each alleged secret." (Joint MBOP at 10:13-16.) Defendants posit six reasons why a bill of particulars is necessary, including the fact that the definitions of Trade Secrets 1 and 5 are overly broad, only two documents bearing DuPont confidentiality legends were found among the documents seized from the Defendants, and discovery in this case has been voluminous.

Although the discovery in this case has been voluminous, the United States has provided Defendants with a list of key documents. In addition, at least one of the documents Defendants submit in support of their motion identifies areas of Defendants' work product that are alleged to be DuPont trade secrets. (*See* Docket No. 315, Declaration of Simona Agnolucci, Ex. S.) Finally, the Court ordered the United States to provide the Defendants with the documents it intends to introduce in its case in chief by May 30, 2013, even though it has not yet set a trial date. (*See* Docket Nos. 257, 294.) The Court finds that this information, combined with the information in the SSI, is sufficient and a bill of particulars is not warranted as to the Counts that incorporate Trade Secrets 2 through 5.

The Court has found that the SSI provides constitutionally adequate notice of the charges with respect to Trade Secret 1, and it has required the Government to disclose the evidence that will be used in its case in chief, which should help to narrow the scope of the voluminous discovery that has been provided thus far. Notwithstanding those facts, Mr. Liew remains incarcerated. In addition, the definition of Trade Secret 1 is broader than the definitions of Trade Secrets 2 through 5. Therefore, in order to minimize surprise at trial and to assist in the expeditious and efficient resolution of this matter, the Court does find it appropriate for the United States to provide a bill of particulars with respect to Counts 3 and 5.

Specifically, in light of the fact that these counts charge Defendants with attempt, the United States shall provide a bill of particulars that sets forth its theory of what Defendants' reasonably believed the trade secret to be, *e.g.,* whether the United States will argue that Defendants reasonably believed the entire chloride-route process to manufacture TiO2 was a

11

trade secret or whether it will argue the Defendants reasonably believed a subset of the process was a trade secret. If the latter, the United States, taking into account the EEA's definition of a trade secret, shall identify with particularity: (1) the "ways and means," described in paragraph 14.a; and (2) the "proprietary and non-proprietary components," described in paragraph 14.a.; (3) and the resulting compilations and combinations that formed substantial portions of the TiO2 manufacturing process.

### 3. A Bill of Particulars is Not Warranted as to the Financial Charges.

With respect to the charges regarding filing false tax returns, Counts 15 through 19, Mr. Liew asks that the United States advise him of the actual amount that should have been reported. Mr. Liew states that he cannot adequately prepare for trial without that information, but he has not explained why this information is necessary to defend against the charges. In these counts, the United States identifies the tax years in question, the amount listed on the return, and alleges that Mr. Liew knew that the gross receipts for Performance Group or USAPTI "substantially exceeded that amount." (SSI ¶¶ 91, 93, 95, 97, 99.) The United States also incorporates allegations in paragraphs 20 and 31 of the SSI, which provide additional factual details relating to these charges, including the value of contracts that Mr. Liew allegedly executed during two of the tax years at issue.

With respect to the bankruptcy charges, the United States has identified the statements that are allegedly false in the SSI and where and when they were made. In addition, the United States has not only provided discovery on these charges, it has elaborated on its theory in a motion to revoke the order of Mr. Liew's release.

The Court concludes that Mr. Liew has "been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054.

### CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion to dismiss or to strike, and it GRANTS IN PART AND DENIES IN PART Defendants' motion for a bill of particulars. The United States shall file the Bill of Particulars required by this Order by no later than June 25, 2013.

12

1  If the United States believes that it is appropriate or necessary to file the Bill of
Particulars under seal, it must submit an administrative motion to seal pursuant to Northern District Criminal Local Rule 55-1 and Civil Local Rule 79-5.

**IT IS SO ORDERED.**

Dated: June 11, 2013


JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

13