1   DORON WEINBERG (SBN 46131)
    LAW OFFICES OF DORON WEINBERG
2   523 Octavia Street
    San Francisco, CA 94102
3   Telephone: (415) 431-3472
    Facsimile:  (415) 552-2703
4   Email: doronweinberg@aol.com

5   Attorney for Defendant
    CHRISTINA LIEW
6

7                   UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9
    UNITED STATES OF AMERICA,          )    **CASE NO. CR-11-0573 JSW**
10                                     )
                 Plaintiff,            )    **DEFENDANTS CHRISTINA LIEW**
11                                     )    **AND WALTER LIEW'S**
          vs.                          )    **MEMORANDUM OF POINTS AND**
12                                     )    **AUTHORITIES IN SUPPORT OF**
    WALTER LIEW,                       )    **MOTION TO SUPPRESS EVIDENCE**
13  CHRISTINA LIEW, et. al.,           )
                                       )
14               Defendants.           )
    _____)   **DATE:      July 25, 2013**
15                                          **TIME:      2:00 pm**
                                            **COURT:     11, 19th Floor**
16                                          **JUDGE:     Hon. Jeffrey S. White**

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  Defendants Christina Liew and Walter Liew's
    Memorandum of Points and Authorities in
27  Support of Motion to Suppress Evidence
    (CR-11-0573 JSW)
28

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION AND STATEMENT OF FACTS    1

ARGUMENT    4

I.    THE WARRANT AUTHORIZING THE SEARCH OF DEFENDANTS' RESIDENCE WAS INVALID BECAUSE IT WAS BASED ON AN AFFIDAVIT THAT FAILED TO PROVIDE PROBABLE CAUSE.    4

     A.    The Affidavit Fails to Establish Probable Cause.    5

     B.    The Good Faith Exception is Not Available On These Facts.    9

II    THE SEARCH WARRANT IS FATALLY OVERBROAD AND FAILS FOR LACK OF PARTICULARITY.    11

     A.    The Warrant Is Impermissibly Overbroad.    11

     B.    This Impermissibly Overbroad Warrant Cannot Be Made Valid By The Good Faith Exception.    15

CONCLUSION    17

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |

| **CASES** | **PAGE** |
|---|---|
| *Beck v. Ohio*, 375 U.S. 89 (1964) | 8 |
| *Center Art Galleries - Hawaii, Inc., v. United States*, 875 F.2d 747 (9th Cir. 1989) | 14, 15 |
| *Chimel v. California*, 395 U.S. 752 (1969) | 5 |
| *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968) | 6 |
| *In re Grand Jury Proceedings*, 716 F.2d 493 (8th Cir. 1983) | 15 |
| *In re Grand Jury Subpoenas*, 926 F.2d 847 (9th Cir. 1991) | 15 |
| *Henry v. United States*, 361 U.S. 98 (1959) | 8 |
| *Illinois v. Gates*, 462 U.S. 213 (1983) | 6 |
| *KRL v. Est*, 512 F.3d 1184 (9th Cir. 2008) | 9 |
| *Marron v. United States*, 275 U.S. 192 (1927) | 11 |
| *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) | 9 |
| *Ortiz v. Van Auken*, 887 F.2d 1366 (9th Cir. 1989) | 16 |
| *Payton v. New York*, 445 U.S. 573 (1980) | 4 |
| *Sgro v. United States*, 287 U.S. 206 (1932) | 6 |
| *United States v. Bridges*, 344 F.3d 1010 (9th Cir. 2003) | 11, 13, 14 |
| *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) | 11 |
| *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985) | 16 |
| *United States v. Grant*, 682 F.3d 827 (9th Cir. 2012) | 9 |
| *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) | 11 |
| *United States v. Hove*, 848 F.2d 137 (1988) | 9 |
| *United States v. Kow*, 58 F.3d 423 (1995) | 14, 16 |
| *United States v. Leon*, 462 U.S. 897 (1984) | 9, 16 |
| *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999) | 8 |
| *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970) | 5 |

| | | |
|---|---|---|
| 1 | *United States v. Michaelian*, 803 F.2d 1042 (9th Cir. 1986) | 16 |
| 2 | *United States v. Needham*, __F.3d__ (2013) WL2665889 (CA 9, 6/14/13) | 10 |
| 3 | *United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996) | 9 |
| 4 | *United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) | 14 |
| 5 | *United States v. Savoca*, 739 F.2d 220 (6th Cir. 1984) | 5 |
| 6 | *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) | 15, 16 |
| 7 | *United States v. United States District Court*, 407 U.S. 297 (1972) | 4 |
| 8 | *United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) | 6 |
| 9 | *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1991) | 8, 10, 11 |
| 10 | | |
| 11 | *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) | Passim |
| 12 | *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir. 1974) | 11 |
| 13 | *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir. 1985) | 15 |

14 **STATUTES AND OTHER AUTHORITIES**

| | | |
|---|---|---|
| 15 | Comment, 28 U. Chi. L. Rev. 664, 687 (1961) | 5 |
| 16 | LaFave, et. al.*, Criminal Procedure*, (3rd Ed. 2007) | 5 |
| 17 | Title 18 U.S.C. § 1831 | 1 |
| 18 | Title 18 U.S.C. § 1832 | 1 |
| 19 | United States Constitution Fourth Amendment | Passim |

20
21
22
23
24
25
26
27
28

**INTRODUCTION AND STATEMENT OF FACTS**

On July 19, 2011 search warrants were executed at two locations in the Northern District of California: 1000 Broadway, Suite 480, Oakland, CA, the office of U.S.A. Performance Technology, Inc. ("USAPTI"), a business owned and operated by Walter and Christina Liew, and 2 Crown Court, Orinda, CA, the residence of Walter and Christina Liew.

The instant motion challenges only the search pursuant to warrant of the Liews' residence, on the grounds that it lacked probable cause and was impermissibly overbroad.

The warrant authorizing the search of the Liews' residence, as well as the offices of USAPTI, was based on a single application, supported by the affidavit of FBI Special Agent Cynthia Ho. The affidavit is attached as Exhibit A to the Declaration of Doron Weinberg submitted herewith.

At the outset Agent Ho states that "[t]he facts of this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses." (Exhibit A, ¶ 3). Strikingly, and significantly, Agent Ho never describes her training and experience, let alone her expertise. The entirety of the "AGENT BACKGROUND" that is set forth in ¶ 2 of the Affidavit is as follows:

> "I am a Special Agent with the Federal Bureau of Investigation, and have been since September 2001. I am currently assigned to the San Francisco division, Palo Alto Resident Agency, located in Palo Alto, California. My duties include the investigation of various violations of federal criminal law, including matters related to the theft of trade secrets, including economic espionage."

Not included in this description is any indication of how long Agent Ho has been involved in the investigation of trade secrets and economic espionage cases or how many investigations she has been involved in, and in what roles, nor of any special training or experience she has that would be relevant to the subject matter of the affidavit.

The affidavit asserts that there is probable cause to believe that Walter Liew, Christina Liew, USAPTI and Robert Maegerle have committed violations of 18 U.S.C. §§ 1831 and 1832

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                    1

by unlawfully obtaining DuPont trade secrets and providing them to companies owned by the government of the Peoples Republic of China. In support of this assertion the affidavit sets out as background the uniqueness of DuPont's chloride route process for production of titanium dioxide (TiO2), the steps it has taken to safeguard its process, and the purported discovery that USAPTI misappropriated DuPont's trade secrets. The affidavit recounts information obtained from various sources, including John Liu, a former employee of both Chevron and USAPTI; Leonard Tilton, a former USAPTI employee; and Abel-Baker Automation, an engineering consulting service. This information is offered in support of the suggestion that USAPTI had improperly obtained DuPont's trade secrets. The affidavit then sets forth information provided by former USAPTI employee Peter Wong, as well as various business and government records suggesting that USAPTI has substantial business relations with representatives of certain Chinese companies, apparently involving the design of TiO2 manufacturing facilities. The affidavit concludes with allegations intended to suggest that the Liews attempted to conceal information that might prove their connection to former DuPont employees and to John Liu.

Nowhere in the affidavit is there any factual allegation that the activities under investigation are connected in any way to Walter and Christina Liew's residence. No meetings are alleged to have occurred there, and none of the relevant documents identified as evidence of the theft of trade secrets were known or alleged to be at the residence. All documents identified as suggesting the misappropriation of trade secrets by the defendants were observed at the offices of USAPTI, not the Liew residence. Indeed, John Liu is cited as reporting that two documents of substantial evidentiary significance were kept by Walter Liew in a locked drawer in his office. (Exhibit A, ¶ 28).

Nonetheless, the affiant asserts that there is probable cause to believe that evidence, fruits, and/or instrumentalities of theft of trade secrets and economic espionage will be found at the Liew residence. (Exhibit A, ¶ 105a). The basis for this assertion is as follows:

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                    2

"As set forth above, [PETER] WONG, an ex-USAPTI employee, noted that WALTER LIEW spent a lot of hours working on this project and that while WALTER LIEW predominately worked at the office, he would do related work from home after hours. Also, due to the skeleton crew at the office, WONG noted that USAPTI employees would work remotely. Additionally, CHRISTINA LIEW had paid LIU for services rendered for the USAPTI TiO2 project using her Citibank checking account opened with the home address of 2 Crown Court, Orinda, CA. Moreover, based on my training and experience, I know that individuals who are self-employed and involved in theft of trade secrets and economic espionage typically keep records related to these crimes, in this instance, including documents related to the TiO2 project, DuPont, travel records, and financial records in their personal computers or lap tops in their homes. I have participated as an FBI agent in numerous searches of residences in which these types of business and financial records are located." (*Ibid.*)

Based on this showing, the affiant requested and the magistrate[1] granted authorization to search Walter and Christina Liew's home for all the items described in ATTACHMENT B to the Warrant Application, without limitation. This authorization included not only documents related specifically to TiO2 (¶ 1), DuPont (¶ 2), the Chinese companies named in the affidavit (¶ 3) and Pinewater Designs, Inc., an entity affiliated with Robert Maegerle (¶ 10), but also:

• Any and all travel records, and documents, without limitation to time frame, person, purpose or destination (¶ 6);

• Any and all address books and directories, and telephone records, without limitation as to time, subscriber or subject (¶ 7);

• All financial documents and records related to Walter and Christina Liew, from January 2007 to the date of issuance, without other limitation (¶ 8);

• All tax records of Walter and Christina Liew, without any limitation including time frame (¶ 9);

• All items, documents and effects tending to show residency and/or dominion and control of the premises (¶ 11); and

• All computer equipment used to create the items, data or records referenced above (¶ 12).

• All passwords, password files, encryption codes and other information necessary to access the computer equipment and other devices (¶ 13).

---

[1] Visiting Magistrate Timothy Bommer.

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                    3

The affidavit provides no specific information supporting the belief that any of the thirteen numbered items identified in ATTACHMENT B would be located at the Liews' residence and no explanation why the four broad categories identified in ¶¶ 6, 7, 8 and 9, let alone the three open-ended categories in ¶¶ 11,12 and 13, are proper objects of the search of the residence.

Defendants submit that the evidence obtained from the search of their residence must be suppressed because (1) the warrant authorizing the search was based on an affidavit so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable; (2) the search warrant is fatally overbroad and fails for lack of particularity; and (3) the deficiencies of the warrant were such that no reasonable agent could have relied on it in good faith. Additionally, as will be seen, in conducting the search the agents exceeded the limits of the almost-limitless authorization given them.

**ARGUMENT**

**I. THE WARRANT AUTHORIZING THE SEARCH OF DEFENDANTS' RESIDENCE WAS INVALID BECAUSE IT WAS BASED ON AN AFFIDAVIT THAT FAILED TO PROVIDE PROBABLE CAUSE.**

The Fourth Amendment to the Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"One's home is sacrosanct, and unreasonable government intrusion into the home is the 'chief evil against which the wording of the Fourth Amendment is directed.'" *United States v. Zimmerman*, 277 F.3d 426, 431 (3d Cir. 2002), quoting *Payton v. New York*, 445 U.S. 573, 585 (1980) and *United States v. United States District Court*, 407 U.S. 297, 313 (1972).

In order to justify police intrusion into a personal residence, more must be shown than the

1  fact that the person is reasonably suspected of having committed a crime. "We must also bear in

2  mind . . . that search warrants are directed against evidence of crime and not persons. The fact

3  that there is probable cause to arrest a person for a crime does not automatically give police

4  probable cause to search his residence or other areas in which he has been observed for evidence

5  of that crime. [Citations omitted.] If the rule were otherwise 'there would be no reason to

6  distinguish search warrants from arrest warrants and cases like *Chimel v. California*, 395 U.S.

7  752 (1969) would make little sense.' *United States v. Savoca*, 739 F.2d 220, 224-25 (6th Cir.

8  1984), quoting *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970)."

9  Accordingly, two conclusions necessary for the issuance of a search warrant must be

10  supported by substantial evidence: that the items sought are in fact seizable by virtue of being

11  connected with criminal activity, and that the items will be found in the place to be searched.[2]

12  The affidavit for the search of the residence of defendants Walter and Christina Liew

13  plainly fails to meet this dual requirement.

14  **A.    The Affidavit Fails to Establish Probable Cause.**

15  The purported probable cause showing presented in the affidavit has three prongs: (1) the

16  statement by ex-employee Peter Wong that Walter Liew would do work related to USAPTI from

17  home after hours; (2) a single check written by Christina Liew to John Liu on a checking account

18  opened with the Liews' home address; and (3) the opinion of affiant Cynthia Ho that

19  "individuals who are self-employed and involved in theft of trade secrets and economic

20  espionage typically keep relevant records in their homes."  Although this may initially appear to

21  provide probable cause, given any serious scrutiny the appearance quickly fades.

22  The information provided by Peter Wong contributes nothing to probable cause; it is

23  stale, unreliable and hopelessly vague.  According to the affidavit, Peter Wong was employed at

24

25  [2]  Comment, 28 U.Chi.L.Rev. 664, 687 (1961); LaFave, et. al., *Criminal Procedure*, (3rd

26  Ed. 2007), p.107.

27  Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                          5

28

USAPTI from July 2009 until August 2010 (Exhibit A, ¶ 57). Not only was his employment brief, but it ended 11 months prior to the issuance of the instant warrant. Yet the affidavit provides no reason to believe that whatever Wong may have observed during his employment was still relevant 11 months later. The affidavit accordingly fails to provide "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at the time." *Sgro v. United States*, 287 U.S. 206, 210 (1932); *United States v. Zimmerman, supra*, 277 F.3d at 435, 436. The passage of 11 months since the time of Wong's purported observations is significantly greater than delays that have been found excessive in other cases. See, e.g., *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968) (four months); *United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) (six weeks); *United States v. Zimmerman, supra*, (six months).

In this regard, it is noteworthy that no other employee or associate who worked with Walter Liew in the 11 months preceding the issuance of the warrant, including John Liu whose information is heavily relied upon in the affidavit, provided any evidence suggesting that Walter Liew used his home to conduct any USAPTI business.

This raises the second, and greater concern about Wong's allegation: its reliability. The affidavit is entirely silent about the basis for Wong's assertion, and the magistrate therefor could not know whether Wong was passing on personal observations or mere hearsay, rumor or conjecture.

Although the "totality of the circumstances" test announced in *Illinois v. Gates*, 462 U.S. 213 (1983) is generally seen as a relaxation of the previous standards for testing the sufficiency of search warrant affidavits, the Supreme Court did not abandon the requirement that "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." (*Id.* at 239). Accordingly, the "basis of knowledge" is a "highly relevant" consideration under the *Gates* test (*Id*. at 230), yet, the affidavit is silent on this issue. And, here again, it is significant that no other witness, including any of those cited in the affidavit, provide

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                        6

support for the assertion that Walter Liew conducted his USAPTI work at his residence.

Moreover, even beyond its staleness and apparent lack of foundation Wong's information is irrelevant to probable cause because it is simply too vague.  It says nothing about how often Walter Liew reportedly worked at home, what kind of work he did, whether he brought home documents and records or merely used his computer, and whether any computer he worked on would normally be kept at home or at his office.  What the affidavit does tell us, however (Exhibit A, ¶ 28), is that apparently sensitive documents were kept by Walter Liew under lock and key at his office.

Thus, the assertion attributed to Peter Wong provides no element of probable cause to search defendants' home.

The significance of the second piece of information advanced by the affiant to justify the search of the  residence – the check written by Christina Liew to John Liu –  is at least equally opaque. Nowhere does the affidavit attempt to provide any context for the allegation that on a single occasion Christina Liew wrote a check to John Liu from an account opened with her home address.  Significantly, the affidavit reveals that other checks were written to John Liu, apparently from accounts not connected to the Liew residence (Exhibit A,  ¶ 66) and that the check in question, although bearing the Orinda residence address, was drawn on an account held at a bank in downtown Oakland, very close to the office of USAPTI (Affidavit, ¶ 67). Given these additional facts, it is difficult to draw any relevant meaning from the use of this check to pay John Liu, and certainly not that any substantial business involving USAPTI was conducted from the residence.

The third prong of the purported showing of probable cause is Cynthia Ho's opinion about what people involved in theft of trade secrets and economic espionage "typically" do.

Assertions such as this have become inevitable in search warrant affidavits, and are routinely used to fill whatever gaps in proof are left by the evidence.  Accordingly, they have

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)

7

1  been deservedly criticized for their facility and lack of persuasiveness.  In *United States v.*
2  *Weber*, 923 F.2d 1338, 1344 (9th Cir. 1991), the Court found the "expert" testimony in the
3  affidavit to be without foundation. "It consisted of rambling boilerplate recitations designed to
4  meet all law enforcement needs." In *United States v. Loy*, 191 F.3d 360, 366 (3d Cir. 1999) the
5  Court stated that "experience and expertise, without more, is insufficient to establish probable
6  cause."  The Court found the expert's conclusory statement that people who collect child
7  pornography commonly keep it in their homes insufficient to establish the necessary nexus
8  between the contraband and the defendant's residence. See also, *United States v. Zimmerman,*
9  *supra*, 277 F.3d at 433, n.4.

10     It should be noted that the expert opinions criticized in *Weber, Loy*, *Zimmerman* and
11  other cases were provided by persons who purported actually to be experts, with specifically
12  identified training and experience in matters relevant to the opinion they expressed.

13     In contrast, the affidavit in this case gives the magistrate no information whatever by
14  which he could measure whether Agent Ho had a substantial basis for her asserted opinions.
15  Although she claims to have "training and experience," (Exhibit A, ¶ 105a) she provides no
16  information about any relevant training and little if any about her experience. Unlike the usual
17  presentation, Agent Ho says nothing about how long she has been involved in this particular kind
18  of investigation, how many such cases she has been involved in and in what roles, or what the
19  objective facts are that she believes support her conclusions.

20     Given this lack of objective information, and the absence of any basis on which the
21  magistrate could conclude that Agent Ho is in fact an expert whose opinion is tailored to the
22  actual facts of this case, Ho's statement in ¶ 105a of the affidavit is in fact nothing more than her
23  subjective belief that evidence would be found at the Liew residence.  This is plainly
24  insufficient. *Henry v. United States*, 361 U.S. 98 (1959); *Beck v. Ohio*, 375 U.S. 89 (1964).
25  ///
26
27  Defendants Christina Liew and Walter Liew's
     Memorandum of Points and Authorities in
28  Support of Motion to Suppress Evidence
     (CR-11-0573 JSW)                    8

**B.     The Good Faith Exception is Not Available On These Facts.**

The absence of probable cause here is so clear that the affidavit cannot be rescued by the good faith exception adopted by the Supreme Court in *United States v. Leon*, 462 U.S. 897, 923 (1984).

As the Third Circuit observed in *United States v. Zimmerman, supra*, 277 F.3d at 437, 438, "when the Supreme Court announced the good faith exception in *Leon*, it weakened the exclusionary rule but it did not eviscerate it. 'Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.'" Quoting *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996). "[P]articularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with an inadequate showing, to suggest that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officers reliance on that error was objectively reasonable." *Zimmerman, supra*, 277 F.3d at 438.

As the *Leon* court itself stated: "an officer does not 'manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 462 U.S. at 923; *United States v. Weber, supra*, 923 F.2d at 1346. Similarly, the Ninth Circuit observed in *United States v. Hove*, 848 F.2d 137, 140 (1988) when a police officer has "not presented a colorable showing [of probable cause] and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of *Leon* does not apply." See also, *Millender v. County of Los Angeles*, 620 F.3d 1016, 1033 (9th Cir. 2010) (where the lack of probable cause was so obvious that any reasonable officer reading the warrant would conclude that the warrant was facially invalid "we have held that '[a]pproval by an attorney and a magistrate did not justify reasonable reliance.'"); *KRL v. Estate of Moore*, 512 F.3d 1184 at 1192 (9th Cir. 2008); *United States v. Grant*, 682 F.3d 827, 839 (9th Cir. 2012) ("A reasonable officer would know that probable cause is not supplied by stating everything one

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                                          9

knows about a particular item one would like to find to solve a murder case, if the mass of facts simply does not plausibly connect the place searched to the items sought.").

Here, Agent Ho had to be plainly aware of the inadequacy of the probable cause she was asserting. She plainly knew:

•that she was not providing the magistrate with any information about her own training and experience or the basis for her opinion;

•that she provided the magistrate with no information upon which to judge the basis and reliability of Peter Wong's information, and knew as well that she had not received similar information from any other witness including those who worked more closely and more recently with Walter Liew;

•that she had provided no context or explanation for the single check written on Christina Liew's account, or any way for the magistrate to determine the significance of that isolated fact, or why inconsistent facts should be disregarded; and

•that she conducted no meaningful investigation designed to confirm the existence of probable cause such, for example, as the trash search conducted at the residence of Robert Maegerle.

Accordingly, the good faith exception is not available to rescue the warrant.[3]

///
///
///

_____

[3]   This conclusion is not altered by the Ninth Circuit's decision in *United States v. Needham*, __F.3d __, (2013) WL2665889 (CA 9, June 14, 2013).  In that case, after finding that probable cause plainly did not exist, despite the substantially greater expertise of the affiant there, the Court based its decision on the ground that the good faith exception was available because of the unsettled state of the law regarding probable cause in child pornography cases and, in particular, the fact that the Court felt constrained to follow an earlier decision based on prior standards that the searching officers were entitled to rely on.  No such reasonable reliance on earlier formulations of the legal standard are relevant here.

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                    10

**II   THE SEARCH WARRANT IS FATALLY OVERBROAD AND FAILS FOR LACK OF PARTICULARITY.**

The Fourth Amendment specifically commands that no warrant shall issue except warrants "particularly describing the . . . things to be seized." With reference to that requirement, the United States Supreme Court has said "the requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192 (1927).  See also *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982).

The command of the Fourth Amendment has two aspects: particularity and breadth. "Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."  See *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006); *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir. 1974).  Particularity requires that the warrant should list the items to be seized with such specificity that "nothing is left to the discretion of the officer executing the warrant."  *United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (quoting *Cardwell* and *Marron, supra*).

The particularity and probable cause rules serve a common purpose: "to protect privacy by prohibiting a general, 'exploratory rummaging in a person's belongings.' (Citing *VonderAhe, supra*, at 369)."  *United States v. Weber, supra*, 923 F.2d at 1342.

**A.   The Warrant Is Impermissibly Overbroad.**

The instant warrant violates both rules: the breadth of the search greatly exceeds the limited probable cause (if any) provided in the affidavit, and the broad categories of items to be seized establish virtually no limit on what the executing agents can take.  As has been noted above, the items enumerated in ATTACHMENT B include five relatively narrowly defined categories of items:

1.   Documents and records related to Titanium Dioxide (TiO2), TiO2 manufacturing facilities, the components used in such facilities, or the process of manufacturing TiO2;

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                    11

1    2.    Documents and records related to E.I. du Pont de Nemours and Co. ("DuPont")

2  and any TiO2 manufacturing facilities owned by or associated with DuPont.

3    3.    Documents and records related to Jinzhou Titanium Industry Co., Ltd.; Pangang

4  Group Research Institute Co., Ltd.; Pangang Group Co., Ltd; Pangang Group Titanium Industry

5  Co.; Pangang Group International Economic and Trading Co., Ltd.; Liaoning Province

6  Petroleum Chemical Industry Planning Design Institute, and other customers of USAPTI.

7    5.    Documents and records related to the arrival of foreign nationals into the United

8  States to conduct business with USAPTI, WALTER LIEW, or CHRISTINA LIEW;

9    10.    Documents and records related to Pinewater Designs, Inc.

10    Except for the unexplained and baseless authorization in ¶ 3 to seize documents and

11  records relating to "other customers of USAPTI," these categories appear to be crafted to find

12  evidence related to the subject matter of the investigation.  The problem with respect to these

13  categories is that there is, as argued above, insufficient probable cause to justify the search of the

14  Liew residence for any of these specific items.

15    But the relatively focused and limited search that might have been authorized if only

16  those five categories had been identified is completely overwhelmed and made irrelevant by the

17  limitless general search authorized in the remaining categories:

18    6.    Employment and payment records for individuals (employees, contractors,

19  consultants) engaged in work on TiO2 technology and manufacturing;

20    7.    Travel records, including but not limited to passports, visas, airline tickets,

21  boarding passes and airline ticket receipts;

22    8.    Address books, telephone lists and directories, and telephone records;

23    9.    Financial documents, records related to USAPTI, ROBERT MAEGERLE,

24  WALTER LIEW, and CHRISTINA LIEW, for the time period of January 1, 2007, to the present,

25  including but not limited to tax records, investment account records, bank account records,

26

27

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                                    12

28

account applications, account statements, signature cards, withdrawal slips, debit and credit memos, checkbooks deposit slips, cancelled checks, client checks, cashier's checks, financial statements, wire transfer records, wiring instructions, loan records, and credit reports;

10.    Tax records for USAPTI, ROBERT MAEGERLE, WALTER LIEW, and CHRISTINA LIEW, including copies of federal or state tax returns and related tax preparation files, such as forms W-2 and 1099.

These categories are capped off by three additional catch-alls:

11.    Items, documents and effects which show residency and/or dominion and control of the place to be searched, including but not limited to keys, receipts, bills, cancelled checks, mail envelopes, rental agreements, telephone records and bills, utility bills, and internet/cable provider statements;

12.    Computer equipment, including thumb drives and/or storage devices used to create or store items, data, or records referenced in the paragraphs of this Attachment, pursuant to the protocol set forth in ATTACHMENT C.

13.    Passwords, password files, test keys, encryption codes, operating manuals, and other information necessary to access the computer equipment, storage devices or data, as limited by ATTACHMENT C.

Whatever may have been the intended limitation of categories 1, 2, 3, 5 and 10, the remaining categories render those limitations meaningless. Under ¶¶ 4, 6, 7, 8, 9, 11, 12 and 13 there is virtually no piece of paper or device that could not be seized.  Given these paragraphs the agents had two choices: either take everything in violation of the prohibition against general warrants, or exercise their discretion to determine what was seizable, in usurpation of the magistrate's role and in violation of the particularity requirement of the Fourth Amendment. Warrants that place the executing agents in this position do not pass constitutional muster.  In *United States v. Bridges*, the Ninth Circuit struck down a similar warrant containing terms

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                        13

expanded by the phrase "including but not limited to" specifically enumerated items, reasoning

that "[i]f, however, the scope of the warrant is 'not limited to' the specific records listed on the

warrant, it is unclear what is its precise scope or what exactly it is that the agents are expected to

be looking for during the search."  344 F.3d 1010, 1017-18 (9th Cir. 2003).  The warrant to

search the Liew residence contains the phrase "including but not limited to" in paragraphs 6, 8

and 11, impermissibly over-expanding the types of travel records (¶ 6), financial records (¶8),

and items and documents showing residency of the place to be searched (¶11).  The Ninth

Circuit has also determined that warrant terms authorizing the general seizure of "[r]olodexes,

address books and calendars" are overbroad and consist of "the laziest of gestures in the

direction of specificity."  *United States v. SDI Future Health, Inc.*, 568 .3d 684, 704-05 (9th Cir.

2009).  Paragraph 7 of the warrant to search the Liew residence contains precisely the same

language.

Even assuming some argument might be advanced to support probable cause to believe

that documents related to TiO2 production would be found at the Liew residence, there is simply

no argument to be made that the affidavit establishes probable cause to authorize the agents to

rummage through Walter and Christina Liew's personal, social and financial records. But that is

exactly what the warrant permits, with virtually no limitation.[4]

The affidavit provides no explanation why travel records and documents not directly

related to China travel (¶ 6) should be searched and seized, or why address books, telephone lists

and directories and telephone records in general should be seized, without limitation.  And,

nowhere in the affidavit is it suggested that there is a financial component of the investigation,

yet ¶¶ 8 and 9 allow wholesale intrusion into the Liews' financial records not limited in any way

to USAPTI, TiO2 production or any other subject matter of the investigation.

---

[4]  The only limitation is in ¶ 8, authorizing the search of financial records going back to
January 1, 2007.

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                    14

As the Ninth Circuit made clear in *United States v. Kow*, 58 F.3d 423, 427 (1995), warrants authorizing seizure of all business records, without establishing how those records relate to specific criminal activities, are not sufficiently particular to satisfy the requirements of the Fourth Amendment. See also, *In re Grand Jury Proceedings*, 716 F.2d 493 (8th Cir. 1983) (search warrant authorizing agents to seize all records pertaining to defendant's business was an invalid general warrant, where the warrant did not indicate that documents sought pertain to any specific transactions, did not identify offenses on which evidence was sought, and did not confine search to any particular files or categories of documents); *Center Art Galleries - Hawaii, Inc., v. United States*, 875 F.2d 747, 753-54 (9th Cir. 1989) (search warrant that provided almost unrestricted seizure from business establishment of items that were "evidence in violation of federal criminal law," without describing specific crimes suspected, was constitutionally invalid); *Voss v. Bergsgaard*, 774 F.2d 402, 406 (10th Cir. 1985) (in action by plaintiff seeking return of evidence seized by IRS in connection with tax fraud investigation, trial court properly ruled that warrants for search were invalid on particularity grounds since the bulk of the provisions simply allowed for seizure of evidence, whether or not related to tax fraud).

**B.** **This Impermissibly Overbroad Warrant Cannot Be Made Valid By The Good Faith Exception.**

Given its overbreadth in both respects – the authorization to search vastly exceeded the probable cause asserted and the warrant descriptions were so broad as to leave undue discretion to the officers – the warrant is so plainly improper that it cannot be rescued by the good faith exception.

Although, as noted, a few of the categories of items to be seized are specific and apparently limited, "severance is not available when the valid portion of the warrant is 'relatively insignificant part' of an otherwise invalid search." *In re Grand Jury Subpoenas*, 926 F.2d 847, 858 (9th Cir. 1991); *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986); *United States v. Kow*, *supra*, at 428.

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                                    15

Here, the remaining categories were so broad and vague as to permit the seizure of every record, document and device in the Liews' residence, and it can therefor not be determined what would or would not have been properly seized under an appropriately limited warrant.  It is therefor not possible to sever the arguably adequate categories from those that are impermissibly overbroad.[5]

Further, the overbreadth of these categories is so clear that the officers conducting the search could not have acted in good faith and reasonable reliance on the warrant.  Cf., *Leon, supra,* at 926.  Accordingly, the government cannot sustain its burden of proving that reliance upon the warrant was objectively reasonable.  *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir. 1986).

Here, as in *United States v. Kow* "the warrant . . . listed entire categories of documents to be seized, encompassing essentially all documents on the premises." 58 F.3d at 428.  In this circumstance, the Ninth Circuit has been "vigilant in scrutinizing officers' good faith reliance on such illegally overbroad warrants."  (*Ibid.*), quoting *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir. 1989).

Because it was facially invalid, no reasonable agent could have relied on it. *Kow,* at 428-29, *Center Art Galleries - Hawaii, supra*, 875 F.2d at 753. This is true notwithstanding the fact that the warrant may have been reviewed by government prosecutors and was signed by a magistrate. "[W]hen a warrant is facially overbroad, absent *specific assurances* from an impartial judge and magistrate that the defective warrant is valid despite its overbreadth, a reasonable reliance argument fails."  *Kow*, at 429; *United States v. Crozier*, 777 F.2d 1376, 1381-82 (9th Cir. 1985); *Spilotro, supra,* 800 F.2d at 968.

---

[5]   Should the Court determine that severability is available here, defendants respectfully suggest that the Court uphold the seizure of only those items specifically identified and described in categories 1, 2, 3, 5 and 10, and order suppression of all other items seized pursuant to this warrant.

Defendants Christina Liew and Walter Liew's
Memorandum of Points and Authorities in
Support of Motion to Suppress Evidence
(CR-11-0573 JSW)                    16

1    The absence of good faith and reasonable reliance by these searching officers is further

2    demonstrated by their conduct of the search, which exceeded the scope of even the broadest

3    categories of the warrant.  For example, although the warrant does not authorize the search for or

4    seizure of safe deposit box keys, and the underlying affidavit provides no information upon

5    which officers might reasonably rely in searching for such items, the searching officers seized

6    keys which they believed were for bank safe deposit boxes, and questioned defendants about

7    them. (See, Declaration of Doron Weinberg submitted herewith).

8

9                                              **CONCLUSION**

10            For all the foregoing reasons, it is respectfully submitted that the warrant for the search of

11    defendants Walter and Christina Liew's residence is invalid, and any evidence derived from the

12    execution of that warrant must be suppressed.

13

14    Dated: June 26, 2013                          Respectfully submitted,

15                                                  LAW OFFICES OF DORON WEINBERG

16

17

18                                                   /s/   Doron Weinberg
                                                    DORON WEINBERG
                                                    Attorney for Defendant
19                                                  CHRISTINA LIEW

20

21

22

23

24

25

26

27    Defendants Christina Liew and Walter Liew's
      Memorandum of Points and Authorities in
28    Support of Motion to Suppress Evidence
      (CR-11-0573 JSW)                          17