1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CSBN 165823)
   PETER B. AXELROD (CSBN 190843)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7234
8      john.hemann@usdoj.gov

9  Attorneys for Plaintiff

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,           )   CASE NO. CR-11-0573-JSW
                                         )
15          Plaintiff,                   )   OPPOSITION OF THE UNITED STATES TO
                                         )   DEFENDANTS CHRISTINA LIEW'S AND
16      v.                               )   WALTER LIEW'S MOTION TO SUPPRESS
                                         )   EVIDENCE
17  WALTER LIEW AND CHRISTINA LIEW,      )
                                         )   Date:  August 8, 2013
18          Defendants.                  )   Time:  2:00 pm
                                         )
19  _____)   Hon. Jeffrey S. White

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    ARGUMENT .........................................................................................................2

        A.      There Was Probable Cause To Search The Liews' Residence. ...............2

        B.      The Warrant Was Sufficiently Particularized And Was Not Overbroad ..........................10

                1.      Facts Regarding the Warrant ......................................................11

                2.      The Warrant Was Sufficiently Particularized .............................11

                3.      The Warrant Was Not Overbroad ...............................................15

                        (a)     The items listed in Attachment B were supported by probable cause....................................................16

                        (b)     The Affidavit establishes that the Liews' business was permeated by fraud. .......................................20

        C.      No Evidence Should Be Excluded Because The FBI Case Agent Acted In Good Faith ...........................21

        D.      If Any Categories Of The Warrant Were Defective and the Court Does not Find Good Faith, Those Portions of theWarrant Should Be Severed and Only Evidence Seized Pursuant to Those Portions Should be Suppressed ........................26

IV.     CONCLUSION.....................................................................................................27

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3   *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968) ........................................ 5

4   *Illinois v. Gates*, 462 U.S. 213 (1983) ...................................................... 2, 3

5   *Sgro v. United States*, 287 U.S. 206 (1932) ................................................ 5

6   *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006) .................................. 8

7   *United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006) ................................ 17

8   *United States v. Akpan*, 2009 WL 418599  (D. Nev. Feb. 17, 2009) .................... 18

9   *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986) ......................... 3

10   *United States v. Banks*, 556 F.3d 967 (9th Cir. 2009) ................................ 13

11   *United States v. Bowers*, 534 F.2d 186 (9th Cir. 1976) ................................ 3

12   *United States v. Bridges*, 344 F.3d 1010 (9th Cir. 2003) ........................... 11, 12

13   *United States v. Brobst*, 558 F.3d 982 (9th Cir. 2009) ................................ 11

14   *United States v. Chung*, 659 F.3d 815 (9th Cir. 2011) ................................. 8

15   *United States v. Clark*, 31 F.3d 831 (9th Cir. 1994) ............................... 26, 27

16   *United States v. Crews*, 502 F.3d 1130 (9th Cir. 2007) ............................ 21, 23

17   *United States v. Davis*, 458 F.2d 819 (D.C. Cir. 1972) ................................ 2

18   *United States v. Dozier*, 844 F.2d 701 (9th Cir. 1988) ............................ 4, 6, 7

19   *United States v. Fannin*, 817 F.2d 1379 (9th Cir. 1987) ........................ 15, 16, 17

20   *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ............................ 5

21   *United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) ............................ 21, 23

22   *United States v. George*, 975 F.2d 72 (2d Cir. 1992) ................................. 12

23   *United States v. Gomez-Soto*, 723 F.2d 649 (9th Cir. 1984) .......................... 26

24   *United States v. Gourde*, 440 F.3d 1065(9th Cir. 2006) ( ............................. 2

25   *United States v. Greany*, 929 F.2d 523 (9th Cir. 1991) .............................. 4, 5

26   *United States v. Hayes*, 794 F.2d 1348 (9th Cir. 1986) ............................... 15

27   *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) .............................. 10, 11

28

*United States v. Hove*, 848 F.2d 137 (9th Cir. 1988) ............................................................ 22

*United States v. Huggins*, 299 F.3d 1039 (9th Cir. 2002) ...................................................... 24

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995) ......................................................... *passim*

*United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) ............................................................. 6

*United States v. Leasure*, 319 F.3d 1092 (9th Cir. 2003) ...................................................... 6

*United States v. Leon*, 468 U.S. 897 (1968) ............................................................. 3, 21, 24

*United States v. Loy*, 191 F.3d 360 (3d Cir. 1999) ............................................................... 9

*United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970) ........................................................ 3

*United States v. Luk*, 859 F.2d 667 (9th Cir. 1988) ......................................... 15, 16, 25, 26

*United States v. Luong*, 470 F.3d 898 (9th Cir. 2006) .................................................... 21, 22

*United States v. Michaelian*, 803 F.2d 1042 (9th Cir. 1986) .............................................. 25

*United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371
    (9th Cir. 1983) ...................................................................................................... 20

*United States v. Peacock*, 761 F.2d 1313 (9th Cir. 1985) ..................................................... 3

*United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) ........................................................... 14

*United States v. Rude*, 88 F.3d 1538 (9th Cir. 1996) ..................................................... 11, 20

*United States v. Santarelli*, 778 F.2d 609 (11th Cir. 1985) ............................................... 13

*United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999) ................................................... 8

*United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) ......................... *passim*

*United States v. Sears*, 411 F.3d 1124 (9th Cir. 2003) ................................................... 26, 27

*United States v. Shomo*, 786 F.2d 981 (10th Cir. 1986) ....................................................... 5

*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004) ........................................................... 8

*United States v. Smith*, 424 F.3d 992 (9th Cir. 2005) ........................................................ 12

*United States v. Towne*, 997 F.2d 537 (9th Cir. 1993) ........................................................ 16

*United States v. Vesikuru*, 314 F.3d 1116 (9th Cir. 2002) ............................................. 14, 15

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) .......................................................... 5

*United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990) ....................................................... 9

*United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983) ................................................... 14

1    *United States v. Zimmerman*, 277 F.3d 426  (3d Cir. 2002) ................................................................. 9, 24

2    **FEDERAL STATUTES**

3    18 U.S.C. § 2 ................................................................................................................................ 13

4    18 U.S.C. § 1831 ................................................................................................................ 2, 13, 23

5    18 U.S.C. § 1832 ........................................................................................................................ 13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

The motion to suppress filed by Walter Liew and Christina Liew should be denied.  Defendants' brief is long on lofty rhetoric, but fatally short on both analysis of the facts related to the Affidavit and Warrant and legal authority relevant to facts.

The Affidavit in the case recounted facts that clearly demonstrated probable cause to believe that defendants were engaged in economic espionage and theft of trade secrets, in violation of 18 U.S.C. §§ 1831 and 1832.  Defendants do not contest that the Affidavit supported probable cause to believe that these crimes had taken place and that evidence would be found at defendants' office.

There was probable cause to search defendants' residence.  The totality of the circumstances recounted in the Affidavit and presented to the magistrate provided a reasonable basis for the magistrate to authorize a search of the Liews' residence.

The Warrant identified the items to be seized with sufficient particularity, given the nature of the items being sought and the circumstances of the investigation as presented in the Affidavit.  The items to be seized were based on the probable cause articulated in the Warrant and were not overbroad. Defendants fail entirely to examine the specific items they challenge in light of the evidence set forth in the Affidavit or the applicable caselaw, instead relying on generalizations and hyperbole.  As set forth in detail below, the items to be seized were described in the Warrant in a way that survives, easily, constitutional scrutiny.

The case agent, Special Agent Cynthia Ho of the Federal Bureau of Investigation ("FBI"), relied reasonably on the Warrant issued by Magistrate Judge Bommer.  Defendants urge the Court to suppress relevant evidence of economic espionage based on an analysis that is at once superficial and, ironically, overbroad.  Suppression is a remedy that should be utilized sparingly and only in the unusual case in which the law enforcement officer's conduct was objectively unreasonable.  In this case, Special Agent Ho's approach to the Affidavit and Warrant was not only reasonable and by-the-book, but a model for how agents should obtain and execute warrants.  She presented to the magistrate a "plausible theory" that evidence would be located at the residence, described the items to be seized with sufficient

1  particularity and in a way supported by the Affidavit, and the Affidavit was used by the FBI in the

2  execution of the search.  Special Agent Ho acted in good faith and no evidence should be suppressed.

3  **II.  BACKGROUND**

4  On July 19, 2011, the FBI executed a search warrant at the residence of Walter and Christina

5  Liew at 2 Crown Court in Orinda, California.  Declaration of Cynthia Ho ("Ho Decl.), ¶ 10.

6  The search was authorized by a Warrant issued by the Honorable Timothy Bommer, United

7  States Magistrate Judge, based on an Affidavit submitted to him by Special Agent Cynthia Ho of the

8  FBI.  Ho Decl. ¶¶ 3 & 5, and Ex. 1 & 2.  The Warrant authorized the search of 2 Crown Court, which

9  was described in Attachment A-1 to the Warrant, for Items described in Attachment B to the Warrant.

10  Ho Decl. Ex. 1.  The Warrant provided a protocol as Attachment C for handling computer evidence

11  located in the search.  *Id.*

12  Additional background facts are provided below and in the Declaration of Cynthia Ho.

13  **III.  ARGUMENT**

14  **A.  There Was Probable Cause To Search The Liews' Residence.**

15  Determinations of probable cause must be upheld if, under the "totality of the circumstances"

16  surrounding a request, the issuing magistrate had a substantial basis for finding probable cause.  *Illinois*

17  *v. Gates*, 462 U.S. 213, 238-39 (1983).  The "totality of circumstances" test requires only a "fair

18  probability" that the sought-after evidence is located in a particular place.  *United States v. Gourde,* 440

19  F.3d 1065, 1069 (9th Cir. 2006) (*en banc*) (citing *Gates,* 462 U.S. 213 at 246).  "Fair probability" does

20  not require "certainty or even a preponderance of the evidence."  *Id.*  "[A] magistrate judge is only

21  required to answer the commonsense, practical question whether there is probable cause to believe that

22  contraband or evidence is located in a particular place before issuing a search warrant."  *Id.* (internal

23  quotations omitted). [1]  On review, "the magistrate judge's determination should be paid great deference."

24

25  ───────────────

26  [1] "The contours and salient principles of probable cause have been faithfully catalogued in a surfeit of decisional law . . . . Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a 'pristine philosophic concept existing in a vacuum,' but rather

27  it requires a pragmatic analysis of 'everyday life on which reasonable and prudent men, not legal technicians, act.'"  United States v. Davis, 458 F.2d 819, 821 (D.C. Cir. 1972) (citations omitted).

28  OPPOSITION TO LIEW MOTION TO SUPPRESS
CASE NO. CR-11-0573-JSW

2

1   *Id.* (internal quotations omitted).  *United States v. Leon*, 468 U.S. 897, 914 (1968) ("Reasonable minds

2   frequently may differ on the question whether a particular affidavit establishes probable cause, and we

3   have thus concluded that the preference for warrants is most appropriately effectuated by according

4   'great deference' to a magistrate's determination.").

5          "Direct evidence that contraband or evidence is at a particular location is not essential to

6   establish probable cause to search the location."  *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399

7   (9th Cir. 1986).  A magistrate "is entitled to draw reasonable inferences about where evidence is likely to

8   be kept, based on the nature of the evidence and the type of offense."  *Id.*  The magistrate

9          need not determine that the evidence sought is in fact on the premises to be searched . . .
           or that the evidence is more likely than not to be found where the search takes place . . . .

10         The magistrate need only conclude that it would be reasonable to seek the evidence in the
           place indicated in the affidavit.

11

12  *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985).  The reviewing court must review the

13  affidavit on which the magistrate relied "in a common sense and realistic manner."  *United States v.*

14  *Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970).

15         Defendants' argument is contrary to the central principle that undergirds the warrant provision of

16  the Fourth Amendment – reasonableness under the totality of the circumstances.  Defendants' mode of

17  analysis would require that each item of evidence provide certainty; defendants' analysis is not of the

18  totality of the evidence for reasonableness.

19         The question for the court is whether the items sought are "materials that one would expect to be

20  hidden at the [defendants'] place of residence."  *Lurcarz*, 430 F.2d at 1055.  In evaluating probable

21  cause, courts examine the type of crime, the nature of the items, the extent of opportunity for

22  concealment, and "normal inferences as to where a criminal would be likely to hide" the evidence.  *Id.*;

23  *United States v. Bowers*, 534 F.2d 186, 190-91 (9th Cir. 1976) (upholding search where objects sought

24  by the warrant "were of a kind . . . likely to be found where the persons involved lived").

25         The place to start – which differentiates this Affidavit from affidavits in other cases cited by

26  defendants – is that the Affidavit establishes probable cause to believe that the defendants engaged in

27  economic espionage and theft of trade secrets.  Defendants do not contest this conclusion and do not

28  OPPOSITION TO LIEW MOTION TO SUPPRESS
    CASE NO. CR-11-0573-JSW

                                            3

challenge the Affidavit or Warrant with regard to the search of defendants' offices at USAPTI.  As to

the search of the residence, the Affidavit summarizes in paragraph 105 the evidence, described in more

detail elsewhere in the Affidavit, which supported the probable cause determination for a search of 2

Crown Court:

- Peter Wong, "an ex-USAPTI employee, noted that WALTER LIEW spent a lot of hours working on this project and that while WALTER LIEW predominantly worked at the office, he would do related work from home after hours.  Also, due to the skeleton crew at the office, WONG noted that USAPTI employees would work remotely."

- "Additionally, CHRISTINA LIEW had paid LIU for services rendered for the USAPTI TiO2 project using her Citibank checking account with the home address of 2 Crown Court, Orinda, California."

- Based on her 10 years training and experience as an FBI agent, Special Agent Ho stated that she knew "that individuals who are self-employed and involved in the theft of trade secrets and economic espionage typically keep records related to these crimes, in this instance, including documents related to the TiO2 project, DuPont, travel records, and financial records in their personal computers or laptops in their homes."

- Special Agent Ho stated that she had "participated as an FBI agent in numerous searches of residences in which these types of business and financial records are located."

Affidavit ¶ 105.

Defendants approach the probable cause analysis by parsing each item separately, rather than

considering the totality of the circumstances.  Defendants both summarize and argue this evidence too

narrowly, and the cases they cite do not bear the weight defendants place on them.  In fact, the evidence

is broader and more meaningful than defendants characterize, and the relevant cases demonstrate that

the evidence supports probable cause.

Defendants first argue that the information provided by Peter Wong does not support probable

cause.  Defendants contend that the evidence was stale, that Wong was not reliable, and the information

was too vague.  Def. Mem. at 5-6.  Defendants' staleness argument – the argument to which they devote

most of their attention – is incorrect.  The information provided by Wong was not stale.  "Staleness must

be evaluated in light of the particular facts of the case and the nature of the criminal activity and

property sought."  *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991).  "The mere lapse of

substantial amounts of time is not controlling in a question of staleness."  *United States v. Dozier*, 844

F.2d 701, 707 (9th Cir. 1988) (upholding search for documentary records of the sort "typically found to

1   be maintained over long periods of time").  "When the evidence sought is of an ongoing criminal

2   business of a necessarily long-term . . . rather than that of a completed act, greater lapses of time are

3   permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time."

4   *Greany*, 929 F.2d at 525*; United States v. Shomo,* 786 F.2d 981, 984 (10th Cir. 1986) (when the affidavit

5   "recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less

6   critical.").

7          The cases upon which defendants rely (Def. Mem. at 6) in support of their argument that the

8   information received from Wong was stale involve completed acts, rather than on-going business

9   practices.  *Sgro v. United States*, 287 U.S. 206 (1932), states the general rule, which is that while there is

10   no specific time within which an agent must seek a warrant, "it is manifest that the proof must be of

11   facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at

12   the time.  *Id.* at 210.  "Whether the proof meets this test," the Court continued, "*must be determined by*

13   *the circumstances in each case.*"  *Id.* at 210-11 (emphasis added).  *Sgro* involved the execution of a

14   warrant under a statute that required that it be executed within 10 days of issuance, 287 U.S. at 210, and

15   the facts are not similar to this instant case.  The other cases on which defendants rely do not involve

16   evidence of on-going criminal conduct or a search for business and financial records.  See *United States*

17   *v. Wagner*, 989 F.2d 69 (2d Cir. 1993) (sales of nickel bags of marijuana); *Durham v. United States*, 403

18   F.2d 190 (9th Cir. 1968) (counterfeiting activity).[2]

19          In the information provided by the Affidavit, Wong was not describing a one-time criminal

20   event.  The information provided by Wong concerned practices – the work habits of Walter Liew and

21   the culture of USAPTI.  Wong worked for Liew for long enough to become familiar with his work

22   habits, and those work habits were unlikely to have changed in the eleven months that elapsed after

23   Wong left his employment.  Moreover, the work habits that Wong described are nothing if not common

24

25

26          [2] *Durham* noted that the panel could find no case "which sustained a search warrant issued more
than 30 days after finding of the evidence which constituted the basis for the search."  403 F.2d at n.6.

27   This observation no longer holds true.  See, *e.g., United States v. Singh*, 390 F.3d 168, 181-82 (2d Cir.
2004); *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004) (collecting cases).

28

1   amongst the working population – working professionals typically bring work home – which supports

2   the reasonableness of relying on Wong's observation regarding Liew.

3   In circumstances when the evidence at issue involves on-going activities, courts have held that

4   the mere passage of time does not render information in an affidavit stale.  See, *e.g., United States v.*

5   *Leasure*, 319 F.3d 1092, 1099 (9th Cir. 2003) (staleness does not infect probable cause where activity is

6   ongoing and continuous); *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997); *United States v.*

7   *Dozier*, 844 F.2d 701, 707 (9th Cir. 1988) (same).  The staleness argument here is even weaker than it is

8   in the narcotics cases in which it has been rejected because the information concerns a business practice

9   and the documents sought were business records, circumstances more routine and widespread than

10  narcotics distribution.

11  Defendants also argue that the information provided by Wong should be discounted because it

12  was unreliable and vague.  Def. Mem. at 6-7.  Defendants do not cite any authority for these arguments.

13  The basis for Wong's observations was that he worked for Walter Liew as a senior engineer for 13

14  months from July 2009 to August 2010.  Affidavit ¶ 57.  Although defendants claim that it is

15  "significant" that the Affidavit does not include similar information from another witness, they cite no

16  case in which this circumstance was held to be significant.  Indeed, far from being unusual, search

17  warrant affidavits commonly rely on information from single witnesses.  The information from Wong,

18  while important to establish probable cause, was not so unusual or remarkable that it required

19  corroboration as it simply reflected a common practice of most American professionals.

20  Defendants also contend that the "significance of . . . the check written by Christina Liew to John

21  Liu" is too "opaque" to support probable cause.  Def. Mem. at 7:11-13.  Defendants minimize the

22  information Liu provided.  The Affidavit explains that Liu was hired by Walter Liew to perform certain

23  design work based on documents he believed to be confidential DuPont information.  Affidavit ¶¶ 26-

24  31.  He was paid hourly and gave his timesheets to Christina Liew, who suggested that she make the

25  checks payable to his mother to avoid taxes.  Affidavit ¶ 66.  Liu, through his attorney, provided one of

26  the checks to the FBI:

27          The check was from CHRISTINA LIEW, 2 Crown Ct., Orinda, CA 94563-4206, dated
          1/7/2011, for $25,000 payable to GU YA ZHEN.  LIU has previously told FBI agents

28  OPPOSITION TO LIEW MOTION TO SUPPRESS
    CASE NO. CR-11-0573-JSW

1    that CHRISTINA LIEW made payments to him via checks that were payable to his
     Mother [sic] who resided in Canada.  The memo line stated "9/26/10 – 12/31/2010."  The
2    check, number 148, was from Citibank N.A. BR#956, 801 – A Franklin St, Oakland, CA
     94607, and bore the following routing and account numbers respectively: 321171184 and
3    40054775370.

4    Affidavit ¶ 67.  Liu told the FBI that he "obtained two other similar paychecks from CHISTINA LIEW

5    that were addressed to his mother."  Affidavit ¶ 68.

6          Far from being "opaque," the significance of this information cannot be missed.  Christina Liew

7    was intermingling her personal finances with the business.  She was using a bank account registered to

8    her home – 2 Crown Court – to pay (illegally) an employee who was directly involved in the underlying

9    economic espionage.  She made three such payments to Liu, using "similar" checks – meaning checks

10   from the same address.[3]  Affidavit ¶68.  Records regarding these payments would be sent by the bank to

11   the residence.  It was reasonable for the magistrate to conclude that the fact that Christina Liew was

12   using a personal bank account registered to her home address to pay business expenses suggested that

13   business records would be located in the Liews' residence.  The fact that she was fraudulently making

14   these checks out to John Liu's mother only increases the quantum of probable cause because it suggests

15   that the Liews' were operating their business, and mixing it with their personal finances, dishonestly.

16         Finally, defendants contend that the magistrate could not rely on Special Agent Ho's

17   observations to support the probable cause determination because she did not provide sufficient detail

18   regarding her training and background.  Defendants' position is not only devoid of legal support but it is

19   based on an incomplete recitation of what Special Agent Ho said in her Affidavit.

20         Special Agent Ho said in her Affidavit that she had been an FBI special agent for nearly 10

21   years.  Affidavit ¶ 2.  She stated that her duties include the investigation of matters "related to the theft

22   of trade secrets, including economic espionage."  *Id.*  Defendants argue that she then expressed only an

23   opinion as to "what people involved in theft of trade secrets and economic espionage 'typically' do."

24

25   _____
         [3] Defendants claim that the two other checks were "apparently from accounts not connected to
26   the Liew residence."  Def. Mem. at 7:16.  This interpretation is contrary to the natural reading of the
     Affidavit, which says that Christina Liew gave Liu three "similar" checks.  Affidavit ¶ 68.  It would
27   have been more reasonable for the magistrate to interpret this language, in context, as three checks from
     the 2 Crown Court checking account.

28   OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW

                                          7

Def. Mem. at 7:23.  Special Agent Ho actually said more than this and provided additional information based on her personal experience as an agent:  "I have participated as an FBI agent in numerous searches of residences in which these types of business and financial records are located."  Affidavit ¶ 105(a).

The question for the Court is whether it was reasonable for the magistrate to rely in part on Special Agent Ho's experience.  Clearly it was.  Special Agent Ho's direct experience as an FBI agent is consistent with the experience of agents documented in many reported cases.  See*, e.g., United States v. Singh*, 390 F.3d 168, 181-82 (2d Cir. 2004) (magistrate properly relied on case agent with nine years' experience for conclusion that people commonly keep business records at their home for long periods of time); *United States v. Sayakhom*, 186 F.3d 928, 934 (9th Cir. 1999) (postal inspector "stated his experience and belief that operators of businesses that involve paperwork typically maintain and carry business records into and out of their offices, in their cars and to and from their residences.").  The magistrate could easily conclude that an experienced FBI agent such as Special Agent Ho would know that individuals engaged in the theft of trade secrets and economic espionage hide secrets in their homes.  See *United States v. Chung*, 659 F.3d 815, 819 (9th Cir. 2011) (over 300,000 pages of stolen Boeing and Rockwell documents located in defendants residence, leading to Economic Espionage Act conviction).  Although defendants deride this as "boilerplate," it should actually be viewed as the collected wisdom of many agents, vindicated, as in this case, by the discovery of precisely the business records that were sought.  Indeed, the proposition that business records are maintained by people in their homes is so obvious that it barely requires support, as the Sixth Circuit observed:

> One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home.  Likewise, personal financial records are also usually stored at a person's home or place of business.

*United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (upholding nexus between probable cause and residence based only on opinion of FBI agent).  See also *Sayakhom*, 186 F.3d at 934 (search of residence for business records upheld based only on opinion of postal inspector that business records are typically carried to and kept in residences).

1    Defendants rely for the proposition that Special Agent Ho's statements should be disregarded on

2    three child pornography cases, each of which is easily distinguishable.  In *United States v. Loy*, 191 F.3d

3    360 (3d Cir. 1999), the *only* evidence supporting an anticipatory warrant for child pornography was a

4    postal inspector's "conclusory statement that people who collect child pornography commonly keep it in

5    their homes, *in light of Loy's own assertion that he kept it in a storage facility*."  *Id.* at 366-67 (emphasis

6    added).  In *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), the court of appeals found that the

7    affidavit was supported only by one order for child pornography that had been solicited by the

8    government, material that was "apparently" child pornography addressed to the defendant two years

9    earlier, and "expert" testimony from a customs agent that consisted of "rambling boilerplate" that was

10   not tailored to the circumstances of the defendant.  *Id.* at 1344-45.  Finally, in *United States v.*

11   *Zimmerman*, 277 F.3d 426  (3d Cir. 2002), the Third Circuit commented in dictum that it did not find the

12   "rambling boilerplate" of the same inspector involved in the *Loy* case "most likely" would not support

13   probable cause "[w]ere we required to decide the issue."  *Id.* at 433 n.4.  *Zimmerman,* on which

14   defendants heavily rely, is easily distinguishable because there was no probable cause to believe that the

15   defendant possessed child pornography at all, let alone in his home, which was the basis for the Third

16   Circuit's decision.  *Id.* at 429 ("[t]he warrant application did not contain any information indicating that

17   Zimmerman ever possessed child pornography").

18        None of the cases cited by defendants are relevant to Special Agent Ho's statement in her

19   Affidavit.  Special Agent Ho does not offer an "expert opinion" and does not provide "rambling

20   boilerplate" regarding the habits of certain classes of criminals.  Instead, she provides a discrete

21   statement of her personal experience as an FBI agent, testifying that she had participated in numerous

22   searches of residences in which business and financial records of the type sought by the warrant were

23   located.  This evidence, coupled with Wong's observation that Walter Liew sometimes worked from

24   home and Liu's account of Christina Liew paying his work wages with a check bearing her home

25   address, allowed the magistrate to conclude that there was a reasonable possibility that the records

26   sought would be located in the home.

27

28   <small>OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW</small>

1    In addition to the facts summarized in the conclusion of the Affidavit, there are several additional

2    facts that support probable cause to search the Liew residence.  The business address of the company

3    was moved sometime in early 2009 when "WALTER LIEW closed PERFORMANCE GROUP, filed

4    for bankruptcy, and vacated his office space without paying his employees and contractors for their

5    services rendered."  Affidavit ¶ 14.  Sometime thereafter, the business was renamed and opened at

6    another location.  Affidavit ¶ 15.  It would be reasonable for the magistrate to conclude that the Liews

7    brought records of Performance Group home with them in 2009 when they closed the business and

8    declared bankruptcy.

9    Defendants' argument suggests that the law requires direct evidence that the records sought are

10   located in the place to be searched.  That is not the case.  The magistrate need only have concluded that

11   it would be *reasonable* to search based on the information, a conclusion that is entitled to great

12   deference.  Examining the totality of the circumstances recounted in the Affidavit, it was reasonable for

13   the magistrate to conclude that there was probable cause to search the Liews' residence.

14   **B.      The Warrant Was Sufficiently Particularized And Was Not Overbroad**

15   Defendants appear to challenge the Warrant based on both lack of particularity and overbreadth,

16   though their argument headings refer only to overbreadth and their arguments and case citations overlap.

17   See Def. Mem. at 11-15.  We will respond to both arguments.

18   The Fourth Amendment concepts of particularity and overbreadth are distinct.  "Particularity is

19   the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement

20   that the scope of the warrant be limited by the probable cause on which the warrant is based."  *United*

21   *States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006).

22   Defendants do not challenge the particularity or breadth of the Warrant that was served on the

23   USAPTI office, which was identical to that served on the Liews' residence.   The implicit concession

24   that the identical warrant served on the office was not constitutionally infirm suggests that defendants'

25   basic argument is that there was not probable cause to search the residence, and that the breadth and

26   particularity arguments are rather hollow attempts to broaden the Fourth Amendment challenge.

27

28   OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW

1    **1.    Facts Regarding the Warrant**

2        The Search Warrant listed 13 categories of items to be seized in Attachment B, which was

3    attached to and incorporated into the Warrant.  Ho Decl., Ex. 1.  The Warrant incorporated the Affidavit

4    by reference on the cover page.  *Id.*  Special Agent Ho, the case agent, brought the Warrant, with its

5    attachments, and the Affidavit to the search with her and relied on these documents in deciding what to

6    seize.  Ho Decl. ¶¶ 10-12.

7    **2.    The Warrant Was Sufficiently Particularized**

8        Defendants first contend that the warrant was not sufficiently particularized.  Def. Mem. at 13-

9    14.  They point to eight paragraphs of the "items to be seized" (Attachment B) and contend that under

10   these categories, "there is virtually no piece of paper or device that could not be seized."  Def. Mem. at

11   13:20.

12        "The description of the things to be seized must be specific enough to enable the officers

13   conducting the search reasonably to identify the things authorized to be seized."  *United States v. Brobst*,

14   558 F.3d 982, 993 (9th Cir. 2009).  A warrant "need only be reasonably specific, rather than elaborately

15   detailed."  *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996).  "The specificity required varies

16   depending on the circumstances of the case and the type of items involved."  *Id.* (citation omitted).

17        Defendants do not explain how any of the specific categories in Attachment B lack particularity

18   or cite any case in which a similar item was found to be unconstitutionally vague.  See Def. Mem. at 13-

19   14.  Defendants rely on *United States v. Bridges*, 344 F.3d 1010 (9th Cir. 2003), and argue that the Ninth

20   Circuit "struck down a similar warrant."  Def. Mem. at 13:25.  The warrant at issue in *Bridges*, however,

21   was far broader than the warrant in this case, as can be seen from the language of the warrant reproduced

22   by the court of appeals.  344 F.3d at 1017.  The *Bridges* warrant sought items such as "records and

23   documents, or electronically stored information," "documents, contracts, or correspondence," and

24   "[u]nopened mail."  *Id.*  The language used in the *Bridges* warrant was "so expansive that its language

25   authorizes the Government to seize almost all of [the company's] property, papers, and office equipment

26   . . . ."  *Id.*  This language is far broader than any of the more specific items listed in Attachment B to the

27

28   OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW
                                        11

1    instant Warrant, such as travel records, address books, and financial documents – all of which have

2    specific meanings that can be readily discerned by an agent executing a warrant.

3          The court in *Bridges* pointed to a failing in the Warrant that could have provided the necessary

4    particularity – a failing that did not occur in this case.  The *Bridges* warrant did "not state what criminal

5    activity [was] being investigated by the IRS."  *Id.* at 1018.  The attachment to the warrant describing the

6    items to be seized did "not make any specific allegation of criminal conduct."  *Id.*  The court explained

7    that warrants that do not identify the criminal conduct under investigation "are suspect because

8    '[n]othing on the face of the warrant tells the searching officers for what crime the search is being

9    undertaken.'"  *Id.*, quoting *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

10         Here, the Warrant clearly identifies the criminal activity being investigated.  The first sentence of

11   Attachment B identifies the items to be seized as "[a]ll items which constitute evidence, fruits, or

12   instrumentalities of violations of 18 U.S.C. § 1831 (economic espionage), 18 U.S.C. § 1832 (theft of

13   trade secrets), and 18 U.S.C. § 2 (aiding and abetting), including the items listed below."  Ho Decl., Ex.

14   1.  This specificity was sufficient to limit the agents' discretion in searching for the items listed in

15   Attachment B, as *Bridges* suggests it would.  *Cf. United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995)

16   (non-particular warrant could have been made sufficiently particular "[m]ost obviously" by

17   "specif[ying] the suspected criminal conduct").

18         The items set forth in the instant Warrant are no less specific than the items found by the court of

19   appeals in *United States v. SDI Future Health, Inc.,* 568 F.3d 684 (9th Cir. 2009), and *United States v.*

20   *Smith*, 424 F.3d 992 (9th Cir. 2005), to be sufficiently particular.  In *SDI* the court listed the 24 items

21   approved by the search warrant, 568 F.3d at 692, and in *Smith* the court listed 11 items, 424 F.3d at

22   1005-06.  The items listed in each case are similar to the items challenged by the defendants in this case,

23   including broadly worded items related to financial records, tax records, and personnel records.  The

24   court of appeals found in both cases that particularity was not a problem with the warrant because even

25   the items the court found to be "troubling" were "particular in that they 'enable the person conducting

26   the search reasonably to identify the things authorized to be seized.'"  *SDI*, 568 F.3d at 692, quoting

27   *Smith*, 424 F.3d at 1004.

28   OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW

1    Defendants' criticize the "including but not limited to" language contained in three of the

2    thirteen items.  Def. Mem. at 14.  This criticism is misplaced for two reasons.  First, given the nature of

3    the three items sought, the language was as specific as possible under the circumstances.  "There are

4    circumstances in which the law enforcement officer applying for a warrant cannot give an exact

5    description of the materials to be seized even though he has probable cause to believe that such materials

6    exist and that they are being used in the commission of a crime.  In these situations we have upheld

7    warrants when the description is as specific as the circumstances and the nature of the activity under

8    investigation permit."  *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985); "The proper

9    metric of sufficient specificity is whether it was reasonable to provide a more specific description of the

10   items at that juncture of the investigation."  *United States v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009).

11   Where there is no evidence that the affiant would have been able to provide more specificity, the courts

12   have upheld the warrant.  *Santarelli*, 778 F.2d at 614 (collecting cases).

13   The three Items that contained "including but not limited" language were as specific as possible

14   under the circumstances.   The financial records item (Item 8) was specific and included a date

15   limitation, January 1, 2007, to the present.  The Warrant also specified the offenses under investigation.

16   Special Agent Ho could not, before executing the Warrant, have reasonably contemplated every possible

17   financial record that would evidence the receipt or payment of money in violation of the Economic

18   Espionage Act.  Moreover, the term "financial documents [and] records" is sufficiently specific, even

19   with the "including but not limited" language – it means documents having to do with the payment or

20   receipt of money.  Including examples of types of financial records made the request more, rather than

21   less specific.  Lists of documents related to the receipt or payment of money were found in *SDI* and

22   other cases to be sufficiently particular, even though the list used the word "including" to emphasize that

23   the list provided examples.  See *SDI*, 568 F.3d at 692, 702 (finding sufficiently particular an item

24   authorizing a search for "[c]hecking, savings, and money market account records *including* check

25   registers, canceled checks, monthly statements, wire transfers, and cashier's checks") (emphasis added).

26   Similarly, the travel records item (Item 6) is inherently limited, even though it contains the

27   "including" language.  A record related to travel is, as a practical matter, self-evident.  The inclusion in

28   OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW
                                    13

1   the Warrant of examples of types of travel records should not defeat particularity when simply saying

2   "travel records" would have been sufficiently specific.  Indeed, providing examples in this instance

3   makes the Warrant more, not less, particular.

4          With regard to both the financial and travel records, the Second Circuit's opinion in *United*

5   *States v. Riley*, 906 F.2d 841 (2d Cir. 1990), is instructive.  The warrant in that case authorized a search

6   for records of investment of proceeds, "including but not limited to" a list of certain records by way of

7   example.  *Id.* at 843.  The court held that this language was sufficiently particularized.

> 8       In upholding broadly worded categories of items available for seizure, we have noted that
>         the language of a warrant is to be construed in light on an illustrative list of seizable
> 9       items.  In the pending case, the warrant supplied sufficient examples of the type of
>         records that could be seized – bank records, business records, and safety deposit box
> 10      records.  No doubt the description, even with illustrations, did not eliminate all discretion
>         of the officers executing the warrant . . . . But the particularity requirement is not so
> 11      exacting.  Once a category of seizable papers has been adequately described, with the
>         description delineated in part by an illustrative list of seizable items, the Fourth
> 12      Amendment is not violated because the officers executing the warrant must exercise
>         some minimal judgment as to whether a particular document falls within the described
> 13      category.

14  *Id.* at 844-45 (citations omitted).

15         The last item in which the "including" language was used was Item 11, which sought approval to

16  search for evidence to prove defendants' dominion and control over the residence.  In *United States v.*

17  *Whitten*, 706 F.2d 1000 (9th Cir. 1983), the Ninth Circuit upheld a warrant containing an even broader

18  version of Request 11 concerning control of the residence.  "We have upheld warrants authorizing the

19  seizure of items which establish the identity of persons in control of the premises."  *Id.* at 1008-09

20  (upholding warrant authorizing the seizure of "telephone books, diaries, photographs, utility bills,

21  telephone bills, *and any other papers indicating* the ownership or occupancy of said residence")

22  (emphasis added).

23         Second, to the extent that any of the three items that use "including but not limited" language are

24  not particular enough, the deficiency was cured by incorporation of the Affidavit into the Warrant and

25  the presence of Affidavit with the agents during the search.  The Ninth Circuit has held that when a

26  detailed affidavit is incorporated by reference into a warrant that lacks particularity (or is overbroad, as

27  discussed below), the requisite particularity may be supplied by the detailed affidavit.  See *United States*

28

1    *v. Vesikuru*, 314 F.3d 1116, 1120 (9th Cir. 2002); *United States v. Luk*, 859 F.2d 667, 676-77 (9th Cir.

2    1988); *United States v. Fannin*, 817 F.2d 1379, 1383-84 (9th Cir. 1987). "The Fourth Amendment's

3    particularity requirement is satisfied if (1) an affidavit setting forth the triggering event for the search

4    accompanies the warrant at the time of the search, and (2) the warrant sufficiently incorporates that

5    accompanying affidavit." *Vesikuru*, 314 F.3d at 1120.

6          In this case, the Affidavit was incorporated by reference into the Warrant by language on the

7    face of the Warrant. The magistrate specifically found that "the affidavit(s) . . . establish probable cause

8    to search and seize the person or property." Ho Decl., Ex. 1 (Search and Seizure Warrant). In *SDI*, the

9    Ninth Circuit found that very similar words – "'the supporting affidavit(s)' as the 'grounds for

10   application for issuance of the search warrant'" – were "suitable words of reference" such that the

11   affidavits were incorporated into the warrant. *SDI*, 568 F.3d at 700 (citing *Vesikuru*, 314 F.3d at 1121).

12   "[E]stablish probable cause," as used here, is no different than "grounds for application for issuance of

13   the search warrant," as used in *SDI* and *Vesikuru*, as they mean precisely the same thing. The Affidavit

14   was present with the case agent and the other agents while they were executing the search.

15          On July 19, 2011, we executed the search at 2 Crown Court at approximately 7 am. I was
16          the team leader of the search and my co-case agent was the assistant team leader.
               Throughout the search, I had a copy of the Warrant, the attachments, and the Affidavit
17          with me.

18   Ho Decl., ¶ 10.

19          The Warrant in this case was sufficiently particular. Any defects as to particularity were cured

20   by the incorporation of the detailed Affidavit into the Warrant and the presence of the Affidavit with the

21   agents during the search.

                      **3.      The Warrant Was Not Overbroad**

22          The Fourth Amendment requires that there be probable cause for the particular items named in

23   the warrant. That is, that the items to be seized are within "'the scope of the probable cause underlying

24   the warrant.'" *SDI*, 568 F.3d at 702-03, quoting *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir.

25   1986).

26

27

28

          (a)       **The items listed in Attachment B were supported by probable cause.**

Defendants argue that the entire Warrant was overbroad, but fail to conduct more than a superficial analysis of any of the specific items set forth in the Warrant. Of the thirteen items listed in the Warrant, defendants address only five, and then only in the most passing fashion. See Def. Mem. at 14. With regard to these five items, defendants argue that the Affidavit and Warrant do not establish probable cause that they relate to specific criminal activity. Defendants are incorrect. Each of the five items mentioned by defendants is discussed below in turn.

To the extent that any of the items standing alone in the Warrant are overbroad, the defect was cured decisively by the incorporation and presence of the Affidavit at the search, as discussed above with regard to particularity. As with particularity, an overbroad warrant can be cured by reference to a more specific Affidavit present with the agents during the search. An affidavit providing more guidance than an overbroad warrant may cure the warrant's overbreadth if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit is either attached physically to the warrant or at least accompanies the warrant while agents execute the search. *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993). See also *United States v. Kow*, 58 F.3d 423, 429 n.3 (9th Cir. 1995). "If [the affidavit] was incorporated, then we evaluate the affidavit and the warrant as a whole, allowing the affidavit to 'cure' any deficiencies in the naked warrant. *SDI*, 568 F.3d at 699.

Not only did the Warrant in this case sufficiently incorporate the Affidavit and the Affidavit was present in the possession of the search team during the execution of the Warrant, as described above and in Special Agent Ho's declaration, but Special Agent Ho, the affiant/case agent, was present and supervising the search of the residence. Ho Decl., ¶¶ 3-6. See generally *United States v. Luk*, 859 F.2d 667, 677 & n.10 (9th Cir. 1988). Accordingly, the Affidavit and Warrant must be evaluated as a whole in considering defendants' challenges.

It is true, as defendants argue, that "wide-sweeping warrants which d[o] not describe the nature of the suspected criminal offense, but merely recite[] United States Code titles and sections," are unconstitutionally overbroad. *United States v. Fannin*, 817 F.2d 1379, 1383 (9th Cir. 1987). However, a

1   warrant that alone would be overbroad is valid when one of three factors are satisfied:  (1) the warrant

2   describes in "detail the items one commonly expects to find on premises used for the criminal activities

3   in question," or (2) the warrant refers to specific criminal activities, or (3) a descriptive affidavit is

4   attached to and incorporated in the warrant.  *Id.* at 1384, citing *Spilotro*, 800 F.2d at 864, 867.   These

5   factors are present in this case.  The warrant, considered with the Affidavit, describes items – travel

6   records, address books, and financial records – that one commonly would expect to find as evidence of

7   economic espionage and theft of trade secrets.  The warrant refers to very specific criminal activities in

8   much detail, thus limiting the breadth of the warrant to readily identifiable activities.  The descriptive

9   Affidavit was attached to and incorporated in the warrant.

10          As noted above, defendants specifically challenge five of the thirteen items sought under the

11   Search Warrant.

12
13
- Item 6:  Travel records, including but not limited to passports, visas, airline
  tickets, boarding passes, and airline ticket receipts.

14          Defendants contend that this item is overbroad because "[t]he affidavit provides no explanation

15   why travel records and documents not directly related to China travel should be searched and seized."

16   Def. Mem. at 14:18-19.

17          Defendants cite no authority for the proposition that where an affidavit sets for ample probable

18   cause for the seizure of travel records to a particular country, that the warrant must specify that

19   particular country or it is overbroad.  Such a requirement is not reasonable or necessary to vindicate the

20   purposes of the Fourth Amendment.  Nor is it realistic given the way travel actually occurs – individuals

21   frequently make several stops before arriving at their ultimate destinations, so a restriction focusing on

22   one country would cause agents to miss other legs of a trip to or from the relevant country.  In *United

23   States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006), the court of appeals rejected an overbreadth challenge to

24   the seizure of travel records which described every bit as broadly as the records described in the instant

25   Warrant.  *Id.* at 1144.

26          Moreover, even if this item would be overbroad on its own, when read in connection with the

27   Affidavit, Item 6 obviously relates to travel by the Liews, Maegerle, and Chinese nationals employed by

28

1    Pangang and Jinzhou for the TiO2 business.  See *United States v. Akpan*, 2009 WL 418599 *8 (D. Nev.

2    Feb. 17, 2009) ("Although all of Akpan's travel documents would be overbroad when standing on its

3    own, when read in connection with SA Benedetti's Affidavit, paragraph (s) obviously referred to travel

4    documents related to the alleged Medicare/Medicaid scheme.")  The Affidavit contains myriad

5    references to work in China and travel related to the TiO2 business.  See, e.g., Affidavit ¶¶ 14, 18, 32,

6    36, 37, 51, 52, 56, 58, 60, 62.  According to one USAPTI employee, Walter Liew and Maegerle traveled

7    together to China "to meet clients and attend design reviews for the TiO2 plant."  Affidavit ¶ 55.

8         • <u>Item 7</u>:  Address books, telephone lists and directories, and telephone records.

9         Defendants argue that Item 7 is overbroad, citing *United States v. SDI Future Health*, 568 F.3d at

10   705, which found "rolodexes, address books, and calendars" to be overbroad.  Important throughout

11   *SDI*, however, was the role of the affidavit.  In *SDI* the affidavit did not provide probable cause for this

12   request and the agents did not rely on the affidavit in conducting the search.  *Id.* at 705-06.

13        In this case, the Affidavit speaks directly to defendants extensive contacts in connection with the

14   TiO2 business, both inside and outside the United States, including "experts" previously employed by

15   DuPont, Affidavit ¶ 16; Chevron employees hired by Walter Liew, Affidavit ¶¶ 18-21; former DuPont

16   employees hired by Walter Liew, Affidavit ¶ 24; dozens of Chinese nationals who traveled to the United

17   States to meet with the Liews, Maegerle, and other USAPTI employees, Affidavit ¶¶ 36, 51, 52, 59, 60,

18   and 62; other consultants hired by Walter Liew who possessed DuPont confidential information,

19   Affidavit ¶¶ 38-43; representatives of the Chinese government meeting with Walter Liew regarding

20   TiO2, Affidavit ¶¶ 58 & 63; and a co-owner of USAPTI, Allen Chang, Affidavit ¶ 65(f).  Educated by

21   and armed with the Affidavit, the agents executing the Warrant knew that the address books and

22   telephone records they were searching for related to the Liews' TiO2 business and not broadly to

23   irrelevant aspects of their social life.

24        • <u>Item 8</u>:  Financial documents records related to USAPTI, ROBERT MAEGERLE,
          WALTER LIEW, and CHRISTINA LIEW, for the time period of January 1,
25        2007, to the present, including but not limited to tax records, investment account
          records, bank account records, account applications, account statements, signature
26        cards, withdrawal slips, debit and credit memos, checkbooks, deposit slips,
          canceled checks, client checks, cashier's checks, financial statements, wire
27        transfer records, wiring instructions, loan records, and credit reports.

28

1    • <u>Item 9</u>:  Tax records for USAPTI, ROBERT MAEGERLE, WALTER LIEW, and
2    CHRISTINA LIEW, including copies of federal or state tax returns and related
     tax preparation files, such as Forms W-2, and Forms 1099.

3    Defendants argue that Items 8 and 9 are overbroad because "nowhere in the affidavit is it

4    suggested that there is a financial component of the investigation."  Def. Mem. at 14:21.

5    This argument is without merit.  The gravamen of the Affidavit is that defendants were *selling*

6    stolen TiO2 technology to Chinese state-owned customers, and both of the crimes being investigated

7    involved crucial financial components:  *economic* espionage and the *sale* of stolen trade secrets.  There

8    are myriad averments in the Affidavit regarding the financial aspects of the case.  The Affidavit,

9    moreover, provides support for the date limitation contained in Item 8.

10   The purpose of Items 8 and 9 of the Warrant were to allow the government to follow the money.

11   The Affidavit established probable cause that defendants profited from the sale of stolen technology to

12   the Chinese company and used that money to pay consultants such as Maegerle and Tim Spitler, as well

13   as contractors like Liu and employees such as Wong and Tilton.  The Affidavit established probable

14   cause that contractors were paid from private, not company, checking accounts, and that the key paid

15   consultants, Maegerle and Spitler, were family friends.  Affidavit ¶¶ 50-51.  Defendants' only clients

16   were the two Chinese companies to whom they were selling TiO2 technology.  Affidavit ¶ 34.

17   With this probable cause supporting them, Items 8 and 9 were not overbroad.  They related

18   directly to the financial allegations contained in the Affidavit and to elements of the offenses described

19   in the Warrant.

20
21   • <u>Item 11</u>.  Items, documents and effects which show residency and/or dominion
     and control of the place to be searched, including but not limited to keys, receipts,
22   bills, canceled checks, mail envelopes, rental agreements, telephone records and
     bills, utility bills, and internet/cable provider statements.

23   This language was endorsed by the Ninth Circuit in *Whitten*, 706 F.2d at 1099.  "We have upheld

24   warrants authorizing the seizure of items which establish the identity of persons in control of the

25   premises."  *Id.* (citing cases).  The language used in Item 6 – specifically, "which show residency and/or

26   dominion and control" – sufficiently limits the breadth of the warrant to those items used to show that

27   defendants controlled the premises.

28   <small>OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW</small>

19

1

2

   **(b)    The Affidavit establishes that the Liews' business was permeated by fraud.**

3    "[E]ven an 'extraordinarily broad' warrant authorizing the seizure of essentially all business

4 records may be justified when there is 'probable cause to believe that fraud permeated the entire

5 business operation.'"  *Smith*, 424 F.2d at 1006 (quoting *United States v. Offices Known as 50 State

6 *Distrib. Co.*, 708 F.2d 1371, 1374 (9th Cir. 1983)).  Where the "central purpose" of the business was the

7 criminal activity under investigation, an "extraordinarily broad seizure of documents" is permissible.

8 *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996).

9    The Affidavit of Special Agent Ho establishes that the entirety of defendants' business was

10 permeated with fraud, in that the entire business was devoted to designing TiO2 manufacturing facilities

11 based on stolen technology for two Chinese state-owned companies, Pangang Group and Jinzhou.   The

12 Affidavit explains that, under a prior corporate name, defendants were designing a TiO2 facility for

13 Jinzhou beginning in 2007.  Affidavit ¶ 14.  That company was closed and reformed as USAPTI.

14 Affidavit ¶ 15.  A former employee of USAPTI told the FBI that Walter Liew told him that the company

15 "was designing a chloride method TiO2 manufacturing plant for customers in China," and that the

16 process was based on a method used by DuPont.  Affidavit ¶ 32.  When the employee asked Liew about

17 the DuPont technology, he responded in part that "it did not matter because the clients were in China."

18 Affidavit ¶ 33.  The company, according to this employee, had approximately eight employees, all of

19 whom were "working on the chloride method TiO2 production plant design."  Affidavit ¶ 34.  The

20 company had only two customers, Pangang and Jinzhou, one of which was building a 30,000 ton per

21 year facility and the other of which was building a 100,000 ton facility.  Affidavit ¶¶ 34 & 57.  The FBI

22 obtained visa records for individuals sponsored by Walter Liew, and found that they have been

23 identified only as employees of Pangang and Jinzhou, along with representatives of Chinese government

24 agencies.  Affidavit ¶¶ 62-63.

25    Because the Affidavit establishes that defendants' business existed for the sole purpose of

26 engaging in fraudulent conduct, even an "extraordinarily broad" warrant would be justified.  Defendants

27 reliance on *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995), to support their overbreadth argument is

28 OPPOSITION TO LIEW MOTION TO SUPPRESS
CASE NO. CR-11-0573-JSW

20

1  therefore misplaced.  *Id.* at 427.   In *Kow,* overbreadth was conceded by the government and the court of

2  appeals found that the affidavit did not establish that the business was permeated by fraud, indeed to the

3  contrary the affidavit conceded that the business was "a legitimate business and serves a need in the

4  communities in which it is located."  *Id.* at 428.

5        **C.     No Evidence Should Be Excluded Because The FBI Case Agent Acted In Good Faith**

6        Defendants argue that Special Agent Ho did not act in good faith because her Affidavit was so

7  obviously lacking in probable cause that any reasonable law enforcement officer would conclude that it

8  was invalid on its face.  Def. Mem. at 9-10.  They further argue that the Warrant was so overbroad that

9  no reasonable officer would believe it to be valid.  Def. Mem. at 15-16.  The law and the facts are to the

10 contrary on both counts.

11       Special Agent Ho's actions in drafting, submitting and executing the Warrant and Affidavit were

12 a model of good faith and sound practice.  Her approach to each phase of the process should be

13 encouraged, not condemned.  Indeed, the good faith exhibited by the agent in this case is so manifest,

14 that the Court may proceed directly to the good faith issue and resolve this motion on that ground alone.

15 *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897,

16 923-25 (1984)).  "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a

17 case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the

18 exclusionary rule," which is to deter knowingly unlawful police conduct.  *Leon*, 468 U.S. at  918-19.

19 When the officer's conduct was objectively reasonable, "excluding the evidence will not further the ends

20 of the exclusionary rule in any appreciable way . . . ." *Id.* at 919-20 (internal quotation omitted).  "This is

21 particularly true . . . when an officer acting with objective good faith has obtained a search warrant from

22 a judge or magistrate and acted within its scope."  *Id.* at 920.

23       Relevant evidence may be suppressed when an officer "does not manifest good faith in relying

24 on a warrant that is so lacking in indicia of probable cause that official belief in its existence is *entirely*

25 *unreasonable.*"  *United States v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir. 1994) (emphasis added), citing

26 *Leon*, 468 U.S. at 923.  The affidavit "must establish at least a colorable argument for probable cause"

27 for the exception to apply. *United States v. Luong,* 470 F.3d 898, 903 (9th Cir. 2006).  The question for

28 OPPOSITION TO LIEW MOTION TO SUPPRESS
CASE NO. CR-11-0573-JSW

1    the court is "whether the affidavit was sufficient to create disagreement among thoughtful and

2    competent judges as to the existence of probable cause." *Id.*, quoting *United States v. Hove*, 848 F.2d

3    137, 139 (9th Cir. 1988).

4         The key facts demonstrating good faith are compelling:

5    •    Special Agent Ho drafted the Affidavit based on the investigation she conducted with her
          co-case agent.  She provided a draft of the Affidavit to AUSA Hemann, prior to
6         submitting it to Magistrate Judge Bommer.  She also provided my draft to the Assistant
          Division Counsel at the FBI in San Francisco.  AUSA Hemann and the Assistant
7         Division Counsel read, reviewed, and approved the Affidavit and warrant before she
          presented it to the magistrate.  Ho Decl. ¶ 4.

8
     •    AUSA Hemann provided an advanced copy of the Affidavit to Magistrate Judge Bommer
9         so that he would have time to review it.  Ho Decl. ¶ 5.

10   •    On July 18, 2011, Special Agent Ho and AUSA Hemann met with Magistrate Judge
          Bommer in chambers and presented the application supported by the affidavit and the
11        proposed warrant.  They had an approximately 20-30 minute discussion with Magistrate
          Judge Bommer regarding the investigation before the Affidavit and Warrant were signed.
12        Ho Decl. ¶ 6.

13   •    Special Agent Ho led the team assigned to search the residence.  The search team for the
          residence consisted of 14 FBI employees, including special agents and computer
14        specialists.  Ho Decl. ¶ 7.

15   •    Prior to the searches, they held a briefing for all of the agents who would participate in
          the two searches, including the agents who were to search 2 Crown Court.  Each agent
16        was provided with a copy of the Affidavit and Attachments, and given time to read them.
          AUSA Hemann, Special Agent Ho's supervisor, and Special Agent Ho briefed the agents
17        on the facts set forth in the Affidavit, the nature of the investigation, and the type of
          evidence, related to violations of 18 U.S.C. §§ 1831 and 1832, being sought in the
18        searches.  Ho Decl. ¶ 8.

19   •    Special Agent Ho was the team leader of the search and her co-case agent was the
          assistant team leader.  Throughout the search, Special Agent Ho had a copy of the
20        Warrant, the attachments, and the Affidavit with her. Ho Decl. ¶ 10.

21   •    During the search, Special Agent Ho consulted with AUSA Hemann by telephone
          regarding whether particular evidence was within the scope of the warrant.  Based on her
22        telephone conferences with AUSA Hemann and the agents' review of the Warrant and
          Affidavit, the FBI did not seize certain property located at the residence.  The FBI agents
23        conducting the search also discussed other specific property items amongst themselves
          and determined that certain items were not within the scope of the Warrant and Affidavit.
24        Ho Decl. ¶ 11.

25   •    During the search, Special Agent Ho relied on the contents of the Affidavit and the
          limitation on searching for evidence related to violations of 18 U.S.C. §§ 1831 and 1832.
26        She provides examples in her declaration. Ho Decl. ¶ 12-13.
     •    The FBI did not seize all of the documents in 2 Crown Court.  Special Agent Ho
27        estimates that they seized approximately 40% to 50% percent of the documents in the
          residence when the FBI arrived. Ho Decl. ¶ 14.

28   OPPOSITION TO LIEW MOTION TO SUPPRESS
     CASE NO. CR-11-0573-JSW

Special Agent Ho's belief that the Affidavit established probable cause was entirely reasonable. Even in cases in which there is no direct evidence – only circumstantial indicia – linking the evidence of a crime to a particular location, the Ninth Circuit has repeatedly held that the good faith exception applies and evidence from a search of the location should not be excluded.  See, e.g., *United States v. Crews,* 502 F.3d 1130, 1136-37 99th Cir. 2007); *Fowlie*, 24 F.3d at 1067.  In *Fowlie*, the government conceded that the search was not supported by probable cause.  The warrant had been based on an affidavit that provided the agent's reasons for wanting to search Fowlie's house for drugs, but little or nothing in the way of evidence that contraband or evidence would be found there.  The court of appeals found that the affidavit "was not so deficient as to fail the good faith standard." *Id.* at 1067.  Judge Reinhardt explained that the "affidavit contained the affiant's *plausible theory* that the property was used as a 'safe house' for drug distribution" and although that theory "consisted largely of conclusory opinion, we believe that it is sufficient, if just barely, to meet the minimal requirements of the good faith exception." *Id.* at 1067-68 (emphasis added).

Special Agent Ho not only had a "plausible theory" that evidence would be located at the Liew residence, she laid it out openly and clearly in a single concluding paragraph for the magistrate to consider in reviewing the warrant.  Affidavit ¶ 105(a).  The theory was supported, as discussed above, by (1) articulable facts connecting the residence to the business, (2) evidence that the Liews intermingled their business and personal finances, (3) Special Agent Ho's objectively reasonable opinion that evidence of Economic Espionage is found in the perpetrator's residence, and (4) her personal experience in conducting similar searches.   The evidence was not scattered about the Affidavit for the magistrate to find, it was summarized and presented to the magistrate so that he could make a probable cause determination with the available evidence neatly articulated.  A copy of the Affidavit was provided to the magistrate the day before it was sworn so he had time to review it and Special Agent Ho and the prosecutor met with the magistrate in his chambers before he signed the Warrant.  This careful approach is the essence of good faith and exemplifies the point of *Leon* that it is the "magistrate's responsibility to determine whether the officer's allegations establish probable cause," and

1   "[p]enalizing the officer for the magistrate's error [if any], rather than his own, cannot logically

2   contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921.

3          Defendants' claims regarding Special Agent Ho's bad faith are meritless.  They adhere to the

4   fiction that she provided an unsupported "opinion" and ignore that she provided information regarding

5   her personal experience in conducting searches.  Def. Mem. at 10:5-6.  Nor do they point to any case in

6   which an agent's objectively reasonable opinion that documents would be found in a certain place is not

7   in good faith.    Peter Wong's information was inherently reliable and defendants cite no case in which

8   similar information about business practices was held to be unreliable.  Def. Mem. at 10:7-10.  Special

9   Agent Ho provided sufficient context for the information regarding the personal check to employee John

10  Liu upon which the magistrate could conclude that the Liews were mixing personal and business

11  finances, and defendants provide no authority on which Special Agent Ho should have relied to the

12  contrary.  Def. Mem. at 11-13.  And the claimed failure by Special Agent Ho to conduct further

13  investigation that defendants contend would have bolstered probable cause is not required to show good

14  faith.  Def. Mem. at 10:14-16.  *United  States v. Huggins*, 299 F.3d 1039, 1045-46 (9th Cir. 2002)

15  (reliance on warrant reasonable because though additional information might have been useful, it was

16  unnecessary for probable cause).  Most importantly, defendants altogether ignore that the totality of the

17  circumstances is what matters, and Special Agent Ho was reasonable in believing that this totality

18  supported probable cause.

19         The cases on which defendants rely regarding probable cause are not on point.  Here, the

20  Affidavit clearly presents a "colorable showing" of probable cause.  *Zimmerman*, a Third Circuit case on

21  which defendants' principally rely, Def. Mem. at 9, is not on point.  In *Zimmerman*, the court considered

22  a warrant seeking child pornography in the defendant's house.  The court found that the "warrant

23  application did not contain any information indicated that Zimmerman ever possessed child

24  pornography."  277 F.3d at 429.  The affidavit was "crafted . . . to portray Zimmerman in the worst

25  possible light," contained "no evidence whatsoever to support a search for child pornography," and was

26  "loaded with lurid – and irrelevant – accusations."  *Id.* at 437.  Even so, the court was split over the issue

27

28  <small>OPPOSITION TO LIEW MOTION TO SUPPRESS</small>
    <small>CASE NO. CR-11-0573-JSW</small>

1    of good faith, with then-Judge Alito dissenting on the grounds that the affiant could reasonably have

2    believed that probable cause existed.

3           Special Agent Ho also acted in good faith in relying on the categories of documents and records

4    set forth in the Warrant, even if the Court finds that certain items were overbroad or lacked particularity.

5    The Warrant in this case was not even arguably so overbroad as to be facially invalid; it did not

6    "encompass[] essentially all documents on the premise." *Kow*, 58 F.3d 428. In *United States v.*

7    *Michaelian*, 803 F.2d 1042 (9th Cir. 1986), the court of appeals agreed with the district judge (Judge

8    Orrick) that, although the warrant was overbroad, it was not so deficient as to preclude good faith

9    reliance. The court found that the warrants at issue did not "approximate the degree of facial deficiency

10   which would preclude objective reasonable reliance by federal agents." *Id.* at 1047. The categories of

11   records sought by the Warrant in this case were similarly limited in a variety of ways, by type and by

12   time as appropriate under the circumstances, and the agents were entitled to rely in good faith on the

13   magistrate's approval and issuance of the Warrant.

14          Moreover, it is well-settled "that a warrant's overbreadth can be cured by an accompanying

15   affidavit that more particularly describes the items to be seized." *United States v. Luk*, 859 F.2d 667,

16   676 (9th Cir. 1988). Possession of the affidavit by the officers conducting the search is also evidence of

17   the officer's objective good faith. *Id.* at 677. See also *SDI*, 568 F.3d at 706 (recognizing that reliance

18   by officers on affidavit while executing search supports good faith even when warrant is overbroad);

19   *Kow*, 58 F.3d at 428 (same).

20          The circumstances described by the Ninth Circuit in *Luk* existed in connection with the execution

21   of the search warrant in this case. 859 F.2d at 677. Indeed, the good faith of the agents went even

22   further than in Luk. The Affidavit was in the possession of Special Agent Ho and other agents

23   conducting the search while the search was on-going. The agents who executed the search read the

24   Warrant and Affidavit before the search and were formally briefed on the investigation before the search

25   took place. The affiant was present at the search and made decisions as to what was within the scope of

26   the search, and the affiant and agents relied on the Affidavit in determining at the scene and in

27   consultation with the AUSA what items were properly within the scope of the search. See Ho Decl. ¶¶

28

6-14.  This level of reliance goes beyond *Luk*, in which it was unclear whether the affidavit was physically present during the search.  *Id.* at n.10.

### D. If Any Categories Of The Warrant Were Defective and the Court Does not Find Good Faith, Those Portions of the Warrant Should Be Severed and Only Evidence Seized Pursuant to Those Portions Should be Suppressed

Defendants do not make any effort to identify particular evidence seized pursuant to the portions of the Warrant they contend are overbroad or lack particularity.  Instead, they very briefly argue that the entire Warrant is defective because the "valid" portion of the Warrant was a "relatively insignificant part of an otherwise invalid search."  Def. Mem. at 15.  Defendants make this assertion without any factual analysis whatsoever.

Defendants' contention that everything seized in the search should be suppressed is without merit.  The search was conducted pursuant to a long and detailed Affidavit.  Defendants challenge fewer than half of the Items identified by the Warrant and, even as to those Items, evaluate them only superficially.  This is not a case in which one can credibly argue that the entire search is invalid.

"The remedy for an overbroad search warrant is suppression of the seized evidence."  *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994).  "The court need suppress, however, only those items seized pursuant to the invalid portion of a search warrant."  *Id.* (citing *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984)).  The Ninth Circuit allows severance of invalid portions of a warrant, unless the warrant is "'wholly lacking in particularity.'"  *SDI,* 568 F.3d at 707 (quoting *United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2003)).

Even defendants challenge only a subset of the Items authorized by the Warrant to be seized.  In *SDI*, the court of appeals found that where the "violative categories concerned only a specific subset of items . . . and the lion's share of the categories did not violate the Fourth Amendment," severance of those items and suppression only of specific evidence falling within the violative categories was appropriate.  568 F.3d at 707.  In doing so, *SDI* distinguished the cases on which defendants rely because those cases "held that all or nearly all of the categories of items to be seized were defective."  *Id.*

1    "This is not a case where 'the officers, in effect, conducted a warrantless search.'"  *Id.*, (quoting

2    *Sears*, 411 F.3d at 1130).  Therefore, if the Court holds that any part of the Warrant was invalid *and* that

3    the case agent did not act in good faith, conclusions we do not believe the Court should reach, the Court

4    should consider "what evidence was obtained under the overbroad portion of the warrant and direct the

5    suppression of that evidence."  *Clark*, 31 F.3d at 836.

6    **IV.    CONCLUSION**

7             Walter Liew's and Christina Liew's motion to suppress should be denied.

8                                                        Respectfully submitted,

9                                                        MELINDA HAAG
                                                         United States Attorney
10

11                                                       /s/ *John H. Hemann*

12    Dated: July 1, 2013                                _____

13                                                       JOHN H. HEMANN
                                                         PETER B. AXELROD
14                                                       Assistant United States Attorneys

15

16

17

18

19

20

21

22

23

24

25

26

27

28