KEKER & VAN NEST LLP
STUART L. GASNER - # 164675
sgasner@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
KATHERINE M. LOVETT - # 276256
klovett@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>　　　　　Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**<br><br>Date:　　　August 8, 2013<br>Time:　　　2:00 p.m.<br>Place:　　　Courtroom 11, 19th Floor<br>Dept.:　　　Hon. Jeffrey S. White |

**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01

I. INTRODUCTION

The Court should exercise its broad discretion to sever the financial charges involving only Mr. Liew from the trade secret and espionage charges against him and the other defendants in this case. In an effort to avoid severance, the government would like to characterize the tax and bankruptcy charges against Mr. Liew as "simple." Dkt. 375 at 5. In reality, the charges—which it took the government eighteen months to bring—involve thousands of documents, over 65 separate bank accounts, multiple experts and potentially more than 20 witnesses. This evidence, which is entirely unrelated to the titanium dioxide chloride route process and the defendants' alleged ties to Chinese government officials, and which has nothing to do with the charges against the other defendants in this case, will unduly delay and complicate the already complex trade secret and espionage case.

Severance not only will serve the interests of judicial efficiency, it also will guard Mr. Liew against undue prejudice. The government has attempted from the outset of this case to use innuendo about Mr. Liew's finances to prove his bad character or propensity for wrongdoing. Although a lengthy investigation failed to yield anything more than a handful of relatively minor tax and bankruptcy charges, it is plain that the government will attempt at trial to use evidence of Mr. Liew's finances – and more importantly, what the government doesn't know about Mr. Liew's finance – to taint the trade secret and espionage case. Severance will ensure a fair trial on all the charges against Mr. Liew.

The Court need not decide whether severance is proper under Rule 8 if it exercises its discretion under Rule 14; but if it reaches the issue, it should answer that question in the affirmative. Unlike in the cases cited by the government, here the evidence of the trade secret and espionage allegations is not "a substantial portion of the proof of the joined (tax evasion) charge." *United States v. Kenny*, 645 F.2d 1323, 1344 (9th Cir. 1981). The government's financial case turns on independent evidence of Mr. Liew's financial and tax history that does not substantially overlap with the scores of technical evidence underlying the trade secret and espionage charges. Accordingly, there is no basis for joinder under Rule 8.

1

DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22
OF THE SECOND SUPERSEDING INDICTMENT
Case No. CR 11-0573-JSW (NC)

769373.01

## II. ARGUMENT

### A. The government's Opposition seriously underestimates the complexity that the financial charges will add to a trial on the trade secret counts.

Of central importance to Mr. Liew's Motion to Sever is the fact that trial of the tax and bankruptcy charges alongside the trade secret claims will lead to unnecessary consumption of time and confusion of the issues without any concomitant benefits to the Court, the jury, the government, or the many defendants in this case. In its Opposition,[1] the government does not deny that trial in this case will be complex and time-consuming. Nor can it, given that the government has projected that trial will last over four weeks and has identified over 13,000 documents that it currently intends to use during its case-in-chief. *See* Dkt. 359 at 8-9. However, the government repeatedly insists that the tax and bankruptcy charges will not add significant complexity to this case because these charges are "simple" in nature, and that the government can prove up "a series of simple false statements" without additional days of testimony or distinct sets of complex jury instructions. *See* Dkt. 375 at 5. This argument is entirely without merit for two reasons.

*First*, the government's representation that its tax and bankruptcy case will be "simple" is belied by the government's own actions in this case. In its Fed. R. Crim. P. 16(a)(1)(E)(ii) case-in-chief production, the government identified over 65 bank accounts that it contends are relevant to the financial records that the government anticipates introducing at trial. Blais Decl.¶ 3. It has produced complex flow charts evidencing the alleged financial transactions underlying its charges. Dkt. 214 at Exs. 4-6, 8. It also has produced at least 5077 documents related to subpoenas to financial institutions, at least 1562 pages related to the tax charges, and 23 FBI interview memos relating primarily to the tax and bankruptcy issues. Blais Decl. ¶¶ 4-6. The government's insistence that the financial charges are "simple" is belied by its Rule 16 disclosure.

In addition, as recently as June 15, 2013, the government indicated in a letter brief submitted to Magistrate Judge Cousins that it intends to call expert witnesses specifically to testify as to "the bankruptcy process" and "the falsity of the charged tax returns" and represented

---

[1] Defendants note for the record that the government filed its Opposition one day late, on Tuesday, July 16, without seeking leave to do so either in advance or contemporaneously.

2
**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01

that it will submit separate tax and bankruptcy expert reports. *See* Dkt. 341 at ¶¶ 2, 6. These two expert witnesses presumably would *not* be necessary to prove up the alleged trade secret crimes or even the existence of specific contracts with Chinese companies; they would merely help the government make its case related to the financial charges. Decl. of Stuart L. Gasner in Supp. of Mtn. to Sever Counts 15-22 of the Second Superseding Indictment ("Gasner Decl." hereafter), ¶ 2. At the very least, the direct and cross-examination of these financial experts, and any defense experts necessary to refute their opinions, would add to length and complexity of trial in this case. *Id.*

*Second,* even if the government's financial case is as "simple" and straightforward as it claims, the government fails to recognize that presenting a full and adequate *defense* against the financial charges will require a great deal of proof unrelated to the trade secret charges and will necessitate extensive testimony from unrelated witnesses. For example, the government's tax charges under 26 U.S.C. Section 7206(1) focus on alleged discrepancies between the amount of "gross receipts" reported by Performance Group for calendar years 2006, 2007 and 2008, and the amount that should have been reported, which the Indictment alleges was "substantially" more. Indictment at Counts Fifteen-Seventeen. The same is alleged as to a different corporation, USAPTI, for calendar years 2009 and 2010. *Id*. at Counts Eighteen-Nineteen. To rebut the government's financial theories, the defense will need to delve into the complex financial affairs of two different corporations over at least a 5 year period, which will require the assistance of tax experts and exploration of a quantity of paperwork that exceeds even the thousands of pages on the government's "case-in-chief" listing. Gasner Decl., ¶ 3.

Similarly with the bankruptcy-related charges: the government may hope to prove with a small quantity of evidence that Mr. Liew was lying when he allegedly checked a box that said "debtor has no executory contracts" on a bankruptcy form (Count Twenty), but the *defense* to those charges will require delving into another morass of evidence and expert testimony relating to letters of credit, international business transactions, the role of written contracts in business dealings with Chinese counter-parties, and the details of bankruptcy proceedings. Gasner Decl., ¶ 4. Likewise with the alleged bankruptcy falsehoods as to "letters of guarantee" (Count Twenty

3
**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22
OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01

One), and the reasons why Performance Group failed (Count Twenty-One). *Id.*

Defending against these tax and bankruptcy charges will inject a slew of expert and lay witnesses and documents relating to the entire financial and legal histories of Performance Group and USAPTI, the as well as the companies' solvency and finances over a period lasting a decade. Gasner Decl., ¶ 5. As a result, a full legal defense against the financial charges will complicate and lengthen the case significantly. Moreover, injecting these issues into the case is likely to confuse the jury. Jurors are likely unfamiliar with these subject areas, and will already have their hands full getting familiar with the titanium dioxide technology that underlies the trade secret charges.

### B. In order to ensure a trial of reasonable length and complexity, the Court should exercise its substantial discretion to sever the financial charges from the trade secret charges.

It is clear under Ninth Circuit law that "the district court has wide discretion in ruling on a severance or bifurcation motion." *United States v. Matus-Leva*, 311 F.3d 1214, 1217 (9th Cir. 2002). Mr. Liew respectfully submits that severance of the financial charges under Fed. R. Crim. P. 14 would represent a judicious exercise of the Court's wide discretion. As explained above, inclusion of the financial charges at trial of the trade secret charges will unnecessarily increase the complexity and length of this case, leading to a number of undesirable consequences with no countervailing benefit in judicial efficiency.

If the financial charges are tried along with the trade secret charges, there is a substantial risk of prejudice to Mr. Liew. Mr. Liew's burden of preparing for trial will increase substantially if he must answer the financial charges at the same time as the trade secret charges. Mr. Liew and his counsel will have to prepare to defend against eight tax and bankruptcy charges, including retaining and preparing financial experts and culling the thousands of financial documents in the government's case-in-chief production.

More importantly, as explained in Mr. Liew's Motion, there is a serious risk that the government will use the financial charges to suggest that Mr. Liew has a bad character or a propensity for wrongdoing. During bail proceedings, the government repeatedly asserted that Mr. Liew was a serious flight risk by representing to Magistrate Judge Cousins and this Court that the

4

**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01

anticipated financial charges in the Second Superseding Indictment would demonstrate Mr. Liew's "laundering of profits from sales of trade secrets to the Pangang Group in Singapore shell companies and the subsequent repatriation of that money to bank accounts in China." *See* Dkt. 213 at 12 (Government's Opposition to Mr. Liew's Third Motion for Pretrial Release).  However, when the financial charges actually materialized, they related not to money laundering or repatriation of money to China or to any improper purposes, but to relatively benign accusations as to corporate tax returns filed in the United States.  A year and a half after the issuance of the original Indictment, seemingly unable to prove its wild, inflammatory, and oft-repeated theories about the money allegedly involved in this case, the government instead included lesser financial charges (the tax charges carry a three-year maximum sentence).  The financial charges, although tacked onto this case late in the game, will likely assume disproportionate importance during the triale and invite the jury to speculate improperly about the fate of the money that the government alleges was paid to Mr. Liew, allowing the government to attempt to prove its long-promised money laundering case through innuendo alone. *See, e.g.*, *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986) (noting that "[s]tudies have shown that joinder of counts tends to prejudice jurors' perceptions of the defendant and of the strength of the evidence on both sides of the case"); *United States v. Halper*, 590 F.2d 422, 430 (2d. Cir. 1978) (observing, in a case involving unrelated fraud and tax evasion charges, that there is a risk that "the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged").

      Furthermore, exclusion of the financial counts at trial on the trade secret charges will serve judicial efficiency in a number of ways.  For one, it will shorten the trial on the central charges in this case by removing the need to present financial documents unrelated to the trade secret charges and witnesses who will testify solely about the tax and bankruptcy issues.  This will in turn make selecting a jury an easier prospect, especially if trial abuts fall and winter holidays. It also will allow the cases against Mr. Liew's co-defendants, none of whom are charged in the financial counts, to be resolved more rapidly and will prevent any prejudice to those individuals as a result of the presentation of tangential financial evidence.  Despite this clear

5

**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01

efficiency benefit, the government's Opposition fails entirely to address the effect of severance on Mr. Liew's co-defendants.

Additionally, severance of the tax and bankruptcy charges imposes no burden on the government. The government asserts that proof of the tax and bankruptcy charges will consist of defendant's "contracts with, income from, and business with the Pangang and Jinzhou companies." Opp. at 4. In other words, the only overlap in proof between the trade secret charges and the financial charges is the alleged existence of contracts with Chinese companies and proof of money paid to Mr. Liew. A determination of Mr. Liew's guilt or innocence of the financial charges in no way depends on the outcome of trial on the trade secret charges. Accordingly, the tax charges can be dealt with separately regardless of the outcome of a trial on the trade secret charges without any prejudice to the government's ability to fully make either case.[2]

### C. In the alternative, the Court must sever the financial charges under Rule 8(a) because they do not satisfy that rule's joinder requirements.

The government argues that the holding of *United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981), controls this case and that joinder of the tax and bankruptcy charges is proper under the "common scheme" prong of Fed. R. Crim. P. 8(a). This argument is mistaken for two reasons.

*First*, the government entirely fails to explain why *Kenny*, a tax case, or any of the other Rule 8 tax-related cases it cites, demonstrates how the *bankruptcy* charges are in any way

---

[2] *United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987), cited by the government (Opp. at 6), is inapposite. The question there was whether multiple defendants charged with conspiracy to distribute heroin were properly joined with another defendant who also was charged with tax evasion. The court followed the *sui generis* rule—not applicable here—that evidence of unexplained wealth is relevant in a narcotics conspiracy case if it creates the inference that the unexplained wealth came from drug distribution. *Id*. The court held that the tax charges were properly joined because evidence of "handling of large sums of money up through the hierarchy … demonstrated the scheme of illegality." *Id*. This case does not involve a narcotics conspiracy, and the alleged misrepresentations in Defendant's tax returns or bankruptcy proceedings are not relevant to proving up the separate trade secret and espionage charges. In *United States v. Davis*, 663 F.2d 824 (9th Cir. 1981), also cited by the government, "proof of the narcotics conspiracy provided most of the proof of the tax charges." *Id*. at 832. Here, the complex and voluminous evidence relating to the trade secret and espionage allegations does not provide "most of the proof of the tax charges." It is entirely independent evidence that is not necessary for (or relevant to) to the trial on the financial issues.

6
**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01

connected with or part of a common scheme or plan with the trade secret or tax charges in the Second Superseding Indictment.³ In truth, there is no information at all in the Second Superseding Indictment to suggest that the bankruptcy-related false statement and oath charges have *any* relationship to the trade secret and tax charges, except for the fact that Mr. Liew is charged in all of the counts. *See United States v. Recker*, 2013 WL 785643, at *7 (N.D. Iowa, March 1, 2013) (grain elevator fraud and bankruptcy fraud counts were not part of a common scheme or plan because there was no connection between them except "a brief overlap in time and Defendant's common goal of financial profit"). In its Opposition, the government does not explain how Mr. Liew's alleged false statements in a bankruptcy proceeding furthered his alleged trade secret conspiracy or "flowed" from any other alleged criminal activity. Instead, the government seems to hope that the Court will find that the tax counts are not misjoined under Rule 8, and then simply lump the bankruptcy charges along with the tax counts without separate scrutiny. Even if the Court concludes that the tax counts are not misjoined, it should determine that the bankruptcy charges must be severed under Rule 8.

***Second*,** the government misrepresents the discussion of *United States v. Whitworth*, 856 F.2d 1268 (9th Cir. 1988), in Mr. Liew's Motion. That discussion was not an attempt to mischaracterize the holding of *Whitworth*, but was an effort to point out a significant factual distinction between that case and Mr. Liew's case. There is simply no allegation in the Second Superseding Indictment that Mr. Liew's alleged tax fraud was part of an attempt to hide his business activities related to titanium dioxide, while in *Whitworth*, the Court considered it significant that the tax evasion "result[ed] in large part from the necessity of concealing the illegal proceeds" of Mr. Whitworth's espionage. *See Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988); *see also United States v. Kopituk*, 690 F.2d 1289, 1314 (11th Cir. 1982) (noting that tax offenses were committed in furtherance of the overall conspiracy where, in part, the false tax returns "facilitated [defendants'] efforts to avoid detection of the criminal enterprise.").

---

³ While the government attempts to take the defense to task for cases it feels the defense should have cited, it is important to note that the government's Opposition fails to cite a single case dealing with Rule 8 joinder of fraud and *bankruptcy* charges, although Mr. Liew's Motion did do so.

7

**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

The government's argument that the defense Motion should have cited *Kenny* is misplaced; as a later-decided (and widely cited) Ninth Circuit decision, *Whitworth* can be read to impliedly limit the earlier-decided *Kenny* decision (which the *Whitworth* Court was fully aware of and cited in its decision). Moreover, *Kenny* is distinguishable. There, the question was the propriety of joinder under Rule 8(b), which allows joinder of multiple defendants. The court held that the district court was not required to sever the tax counts at issue because proof of the defendants' other illegal activities "constitute[d] a substantial portion of the proof of the joined (tax evasion) charge." 645 F.2d at 1344. That is not the case here. The voluminous evidence relating to the trade secret allegations is far from a "substantial portion" of the proof of the tax and bankruptcy charges. The trade secret and espionage allegations involve a large quantity of independent evidence regarding, among other things, the chloride route process for producing titanium dioxide production and the nature of the Pangang defendants' ties to the Chinese government. None of that evidence is relevant to, or necessary for, proof of the financial allegations.

### III. CONCLUSION

For the foregoing reasons, defendant Walter Liew respectfully asks that the Court sever the financial charges in Counts 15 through 22 of the Second Superseding Indictment from the remaining counts.

Respectfully submitted,

Dated: July 19, 2013                KEKER & VAN NEST LLP

By: */s/ Stuart L. Gasner*
STUART L. GASNER
SIMONA A. AGNOLUCCI
KATHERINE M. LOVETT

Attorneys for Defendants WALTER LIEW and USA PERFORMANCE TECHNOLOGY, INC.

8
**DEFENDANT WALTER LIEW'S REPLY IN SUPPORT OF MOTION TO SEVER COUNTS 15-22 OF THE SECOND SUPERSEDING INDICTMENT**
Case No. CR 11-0573-JSW (NC)

769373.01