1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CSBN 165823)
   PETER B. AXELROD (CSBN 190843)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        FAX: (415) 436-7234
8       john.hemann@usdoj.gov

9  Attorneys for Plaintiff

10
                     UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                      SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,           )  CASE NO. CR-11-0573-JSW
                                        )
15         Plaintiff,                   )  RESPONSE BY UNITED STATES TO
                                        )  SUPPLEMENTAL BRIEF OF DEFENDANTS
16     v.                               )  WALTER AND CHRISTINA LIEW ON
                                        )  MATERIALITY AND OTHER ISSUES RELATING
17  WALTER LIEW AND CHRISTINA LIEW,     )  TO REQUEST FOR EVIDENTIARY HEARING
                                        )  ON MOTION TO SUPRESS
18         Defendants.                  )
                                        )
19  _____    )

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................2

      A.    The Challenged Information ........................................................................2

      B.    The Omitted Information .............................................................................3

      C.    The Corroborating Information....................................................................4

      D.    The Anonymous Letter ................................................................................4

III.  ARGUMENT ..........................................................................................................5

      A.    Defendants Are Not Entitled To A Franks Hearing....................................5

            1.    Legal Standard ..................................................................................5

            2.    Defendants Have Not Made A Substantial Showing That Special
                  Agent Ho Purposefully Omitted Material Information............................5

            3.    If The Affidavit Were "Corrected" By Adding Missing Information
                  There Would Still Be Probable Cause ................................................11

      B.    No Hearing Is Necessary To Address Special Agent Ho's Declaration ............15

      C.    Defendants' Arguments Regarding The Safe Deposit Box Key Are Without
            Merit..........................................................................................................15

IV.   CONCLUSION .....................................................................................................17

1

**TABLE OF AUTHORITES**

2

**FEDERAL CASES**

3

*Franks v. Delaware*, 438 U.S. 154 (1978) ......................................................... 5, 11

4

*Hollinger v. Titan Capital Corp.*, 914 F.2d 1564(9th Cir. 1990) ( ........................... 9

5

*Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997)................................... 6

6

*Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033 (7th Cir. 1977)..................... 9

7

*United States v. Brooklier*, 685 F.2d 1208 (9th Cir. 1982)...................................... 6

8

*United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990) ......................................... 6

9

*United States v. Falso*, 544 F.3d 110 n.22 (2d Cir. 2008) ..................................... 7

10

*United States v. Garcia-Cruz*, 978 F.2d 537 (9th Cir. 1992)............................. 12, 14

11

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005) .............................. 8

12

*United States v. Johnson*, 580 F.3d 666 (7th Cir. 2009)....................................... 5, 9

13

*United States v. Lefkowitz*, 618 F.2d 1313 (9th Cir. 1980)...................................... 5

14

*United States v. McCain*, 271 F.Supp.2d 1187 (N.D. Cal. 2003)............................ 8, 9

15

*United States v. Medina-Castaneda*, 511 F.3d 1246 (9th Cir. 2008)....................... 11

16

*United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995)........................................... 5

17

*United States v. Ocampo*, 937 F.2d 485 (9th Cir. 1991)......................................... 14

18

*United States v. Souffront*, 338 F.3d 809 (7th Cir. 2003) ...................................... 8

19

*United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985)...................................... 5, 7, 12

20

*United States v. Swanson*, 210 F.3d 788 (7th Cir. 2000) ....................................... 9

21

*United States v. Willis*, 647 F.2d 54 (9th Cir. 1981).............................................. 9

22

23

24

25

26

27

28

RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
CASE NO. CR-11-0573-JSW

# I.       INTRODUCTION

Defendants' request for a *Franks* hearing relates to a single piece of information in Special Agent Ho's Affidavit:  Peter Wong, a former USAPTI employee stated that Walter Liew would "work from home after hours."  Affidavit, ¶ 69 (Dkt. 373-2 at 31).

Defendants contend that the credibility of this unremarkable statement was undermined by the fact that Wong had been fired by Walter Liew and, defendants claim, because Wong told the FBI that he did not like Christina Liew.  Accordingly, defendants argue, Special Agent Ho should have included these facts in her Affidavit.  Defendants also contend that Wong was biased because there is a possibility that he wrote an anonymous letter to DuPont in which he revealed that USAPTI, Walter Liew, and another employee (John Liu) were selling misappropriated technology to the Pangang Group defendants, and that Special Agent Ho should have drawn this possibility to the magistrate's attention.

Defendants not only are grasping at straws but, ironically, omitted one key piece of evidence from their brief and either intentionally or recklessly misstated another.  Although Special Agent Ho knew when she submitted the Affidavit that Wong had been fired by Walter Liew, there is no basis upon which to conclude that she doubted the veracity of Wong's statement that Walter Liew sometimes worked at home and, because of that doubt, concealed Wong's potential bias from the magistrate. Wong's vanilla statement is not of the kind that would be motivated by animus or bias – it was not incriminating in any way and there is no evidence that Wong knew or believed that it would be used to support a search warrant.  Defendants' bizarre contention that Wong made the statement in an effort to "guide" the FBI to conduct an intrusive search of the Liew residence is not supported by evidence or common sense.

Defendants omitted a critical fact from their argument.  Prior to the search another witness, John Liu, had informed Special Agent Ho that Walter Liew worked from home after hours.  Although this information squarely corroborated Wong's statement, Special Agent Ho did not include it in the Affidavit.  If Special Agent Ho's goal was to protect information provided by Wong that she doubted, she did not need to accomplish that goal by omitting information about Wong.  She could have accomplished the same goal more easily simply by adding the corroborating information regarding

Walter Liew's work habits that had been provided by John Liu. It is obvious from Special Agent Ho's decision not to add the corroborating information provided by John Liu that, far from being concerned about the veracity of Wong's information, she did not doubt and had no serious reason to doubt its truth.

Not only did defendants omit key evidence regarding John Liu, but they misstated the contents of Special Agent Ho's notes. The notes do not say, as defendants' claim, that "PW didn't like **the wife**." The notes say that "PW didn't like **the work**." Defendants' argument is, thus, even weaker than it appears on first reading. There is no evidence in the notes that Wong disliked the Liews, let alone felt animus towards them. There is only evidence that Wong and Walter Liew disagreed about business and that Liew, thereafter, fired him.

Defendants also fail on the second prong of the Franks test. If the Affidavit were corrected today to include the omitted information, there would still be probable cause. First, information about Walter Liew's work habits is not something a person would lie about in order to advance bias or animus. Second, the information provided by Wong about Walter Liew working at home was corroborated by Special Agent Ho's personal experience as an FBI agent, information about the Liews intermingling personal and business finances, common sense, numerous other FBI investigations, and the fact that John Liu had provided virtually the same information that Wong provided.

## II.     FACTUAL BACKGROUND

### A.     The Challenged Information

On July 18, 2013, Special Agent Cynthia Ho of the FBI submitted an Affidavit to Magistrate Judge Timothy Bommer in support of a warrant to search the offices of defendant USAPTI and the residence of defendants Walter and Christina Liew. (Dkt. 373-2)

The Affidavit includes information obtained from Peter Wong, a former USAPTI employee. Affidavit, ¶ 57 (Dkt. 373-2 at 24). The Affidavit reveals that Wong was interviewed by the FBI on July 30, 2011. *Id.* It states that Wong was employed from June 2009 to August 2010. *Id.*

Defendants challenge one specific piece of information provided by Wong to the FBI regarding Walter Liew's work habits. The information was included by Special Agent Ho in the section of the

Affidavit outlining the basis for finding probable cause to search the residence.  The information in question is:

> Former USAPTI employee WONG was interviewed by FBI agents on June 30, 2011. WONG stated that WALTER LIEW spent a lot of hours working on the TiO2 projects and that while WALTER LIEW predominantly worked at the office, he would perform related work from home after hours.  Due to the skeleton crew at USAPTI, WONG noted that a number of USAPTI employees would work remotely.

Affidavit, ¶ 69 (Dkt. 373-2 at 31).

There is no evidence in the Affidavit or elsewhere that Wong had any knowledge or reason to believe that the FBI was planning or even contemplating a search of the Liew residence.  Defendants' suggestion to the contrary, Def. Mem. at 5-23-25, is not supported by any factual showing.

## B.   The Omitted Information

The basis for defendants' motion is their contention that Special Agent Ho omitted from the Affidavit information that Wong was biased against the Liews – information that would undermine the credibility of his assertion that Walter Liew would sometimes work at home.

The information in question was written down by Special Agent Ho during the June 30, 2011, interview of Wong.  The information consists of two points in eight pages of handwritten notes:

- "PW left on a bad note" (Dkt. 409-2 at 5)

- "PW told WL how to run bus. – after that WL didn't like PW – WL terminated PW" (Dkt. 409-2 at 5)

The notes do *not* say, as defendants contend, Def. Mem. at 2:6-7, that "PW didn't like the **wife**," meaning Christina Liew.  The notes say that "PW didn't like the **work**." (Dkt. 409-2 at 5)  It is obvious from both the writing and the context of the comment.  (Attachment A is a clearer copy of the notes than the copy provided by defendants.)  The word "work" is written the same way three times on the same page, three lines above and six lines below the place identified by defendants.  In each case, the word is written the same way and in each case makes sense only if it is "work" – not "wife."  In addition, the note defendants incorrectly claim says "wife" is in a section that concerns Wong's work – it is not in an earlier section of the notes that address Christina Liew.  Finally, when Special Agent Ho refers in her

1    notes to Chistina Liew, she uses the name "Christina," she does not refer to her as "the wife."  In short,

2    defendants either recklessly misread or intentionally misstated the evidence.[1]

3         **C.     The Corroborating Information**

4         Peter Wong was not the only USAPTI employee from whom Special Agent Ho learned that

5    Walter Liew worked at home.  John Liu, who was employed by USAPTI through early 2011, provided

6    the FBI with detailed information regarding misappropriated DuPont trade secrets he had obtained from

7    Walter Liew and with information about the Liews obstructive conduct – information that is recounted

8    in the Affidavit.  John Liu, in an interview on July 6, 2011 (approximately two weeks before the search),

9    also provided the FBI with information regarding Walter Liew's work habits.

10        Liu told the FBI:

11
12        WALTER sometimes worked from home.  The building in which USAPTI was located
          locked out cardkeys after 7:00 p.m., so when WALTER stated that he worked late, he
          was working from home.  WALTER sometimes worked late in the night to early
13        morning, to 1:00 a.m.

14   Declaration of Cynthia Ho (filed August 14, 2013), Ex. A at 5.

15        Although Special Agent Ho did not include this information in the Affidavit, she possessed the

16   information at the time she submitted the Affidavit and would have known that it was consistent with

17   the information Wong provided.  Defendants omit this corroborating evidence from their argument.

18        **D.     The Anonymous Letter**

19        The Affidavit states that DuPont received an anonymous letter in August 2010 reporting that

20   Walter Liew, UAPTI, and John Liu were misappropriating DuPont technology.  Affidavit, ¶ 18.

21        The Affidavit states that Wong was employed by USAPTI from July 2009 to August 2010.

22   Affidavit, ¶ 57.  Leonard Tilton told the FBI in June 2010 that Wong had been fired in August 2010.

23   Agnolucci Decl., ¶ 2.

24

25        _____
          [1] Special Agent Ho executed her declaration before the government received defendants' brief
26   because she had a previously scheduled vacation this week.  She is on a hiking trip and is not reachable
     by telephone.  Accordingly, her declaration does not speak to this point.  If it proves to be material to the
27   Court's decision, the government will have Special Agent Ho execute a supplemental declaration, but
     we believe that the notes – and defendants' misreading of the notes – are sufficiently clear.

28   RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
     CASE NO. CR-11-0573-JSW
                                              4

1    There is no additional evidence that Wong wrote the anonymous letter.  There is no evidence that

2    any person has claimed ownership of the letter.

3    **III.    ARGUMENT**

4      **A.    Defendants Are Not Entitled To A Franks Hearing**

5        **1.    Legal Standard**

6      In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a defendant can

7    challenge a facially valid affidavit if he makes two substantial preliminary showings.  "A criminal

8    defendant is entitled to a hearing to test the veracity of an affidavit . . . if he can make a substantial

9    preliminary showing that 'the affidavit contain[ed] intentionally or recklessly false statements, and . . .

10   [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.'"

11   *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995), quoting *United States v. Lefkowitz*, 618 F.2d

12   1313, 1317 (9th Cir. 1980).  "*Franks* applies to omissions as well as false statements." *Id.*, quoting

13   *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).  "To mandate an evidentiary hearing, the

14   challenger's attack must be more than conclusory and must be supported by more than a mere desire to

15   cross-examine.  There must be allegations of deliberate falsehood or of a reckless disregard for the truth,

16   and those allegations must be supported by an offer of proof."  *Franks*, 438 U.S. at 171.

17       **2.    Defendants Have Not Made A Substantial Showing That Special Agent Ho Purposefully Omitted Material Information**

18

19     Special Agent Ho did not purposefully – either intentionally or recklessly – omit material

20   information from her Affidavit regarding Wong's termination from USAPTI.  She obviously did not

21   omit information that Wong did not like Christina Liew, because no such information existed.

22     The starting point for the Court's analysis is the information in the Affidavit that is challenged by

23   defendants:  Though Walter Liew predominantly worked from the office, he would sometimes perform

24   work related to his TiO2 projects "from home after hours."  Affidavit ¶ 69.  To obtain a *Franks* hearing,

25   defendants must make a substantial showing that Special Agent Ho either perjured herself or acted

26   recklessly because she "seriously doubted or had obvious reason to doubt the truth of the allegations"

27   made by Wong.  See *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) ("This burden is

28

1   substantial, and *Franks* hearings are rarely required.").   Defendants "must show that the omission was

2   deliberate or made in bad faith." *United States v. Brooklier*, 685 F.2d 1208, 1221 (9th Cir. 1982).

3       Defendants argue that in order to bolster the credibility of the information provided by Wong

4   regarding Walter Liew working from home, Special Agent Ho intentionally or, alternatively, recklessly

5   omitted information regarding Wong's possible biases against the Liews.  But defendants make only

6   half the necessary showing.  It is obvious that Special Agent Ho did not include in her Affidavit

7   information she received from Wong regarding his termination from USAPTI.  More, however, is

8   required for a *Franks* hearing.  "An affiant cannot be expected to include in an affidavit every piece of

9   information gathered in the course of an investigation." *United States v. Colkley*, 899 F.2d 297, 300 (4th

10  Cir. 1990), cited with approval in *Lombardi v. City of El Cajon*, 117 F.3d 1117, 124 (9th Cir. 1997).

11  Therefore, to satisfy the first prong of the test for a *Franks* hearing, omissions must be "designed to

12  mislead or [] made in reckless disregard of whether they would mislead, the magistrate."  *Id.* at 301.

13      Defendants have made no showing, let alone the requisite strong showing, that Special Agent Ho

14  intentionally omitted information in order to mislead the magistrate about the credibility of Wong's

15  statement regarding Walter Liew sometimes working at home.  Defendants' argument, Def. Mem. at 3-

16  4, does not meet the high *Franks* standard.   Their argument is that Special Agent Ho knew the

17  circumstances regarding Wong's firing, she did not put this evidence in her Affidavit, and *ipso facto* she

18  acted intentionally.  But this does not get them where they wish to go because they make no showing

19  that Special Agent Ho intentionally omitted material information for the purpose of misleading the

20  magistrate.

21      And why would she?  There was no reason for Special Agent Ho to question the information

22  provided by Wong regarding Walter Liew's work habits.  First, the information provided by Wong –

23  that Walter Liew sometimes worked from home – is not the type of information that someone burning

24  with animus would fabricate in order to exact revenge.  Instead, it is the blandest sort of detail, and there

25  is no reason to believe a layperson such as Wong would have any reason to appreciate the legal

26  significance of it to the establishment of probable cause.  Defendants' concoction that "someone like

27  Peter Wong" might have provided the information "to retaliate by guiding the FBI to the Liew residence

28  RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
CASE NO. CR-11-0573-JSW

      6

1  and subjecting the Liews to a traumatic search of their home," Def. Mem. at 5:23-24, lies somewhere

2  between rank speculation and pure fantasy.  There is no evidence that Wong had the slightest idea that

3  the FBI was considering a search of the Liew residence, let alone that he formulated and carried out a

4  scheme to "get" the Liews by suggesting probable cause to search their house.

5        Moreover, if Special Agent Ho had possessed some doubt about the information provided by

6  Wong and wished to protect it from scrutiny, she would not have omitted information regarding Wong's

7  possible bias, she simply would have included the corroborating information that had been provided by

8  John Liu.[2]  On July 6, just two weeks before the Affidavit was signed, Liu told Special Agent Ho that

9  Walter Liew sometimes worked from home.  Liu said that when Walter Liew would work late at night

10  and into the early morning, he was working from home because their office building was locked.  Ho

11  Decl., Ex. A. at 5.  Given the existence of this credible corroborating information, which defendants

12  received in discovery but failed to bring to the Court's attention,[3] it is obvious that Special Agent Ho

13  was not attempting to mislead the magistrate, but simply did not believe that this piece of

14  uncontroversial evidence was something that Wong had fabricated.   Indeed, if Special Agent Ho had

15  intended to mislead the magistrate, it would have been odd for her to include the statement that Walter

16  Liew "predominantly worked at the office."  Affidavit ¶ 69.  She just as easily could have said only that

17  Wong told her that Liew "worked from home."

18        A comparison of this case to *United States v. Stanert*, 762 F.2d 775, on which defendants rely

19  heavily, demonstrates the triviality of the claimed omission in this case.  The search warrant affidavit in

20  *Stanert* alleged that the defendant's residence was being used as an illegal drug laboratory.  The court of

21  

22  [2] Just as defendants rely on information outside the Affidavit in bringing the motion, it is appropriate for the government to adduce additional relevant information, in this instance provided by John Liu.  Although information outside the Affidavit would not be relevant to the probable cause analysis, it may be offered to support Special Agent Ho's good faith conduct in presenting the Affidavit.  See, *e.g., United States v. Falso*, 544 F.3d 110, 126 n.22 (2d Cir. 2008) (Sotomayor, J.) (relying on information outside affidavit raised in response to motion to suppress).

25  

26  [3] During the last court appearance, defense counsel argued that there is no evidence that questions regarding Walter Liew working at home were posed by the FBI to any witness other than Wong.  This obviously is not the case.

28  RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
CASE NO. CR-11-0573-JSW

7

appeals found that the defendant made a substantial preliminary showing of a material omission

regarding *each* of the key facts relied on by the government to support probable cause and that the

nature of the omissions suggested that they were made intentionally or at least recklessly. The most

glaring example was the affiant's statement that an illegal drug lab had previously exploded at the

residence; however, the affiant omitted the fact that the defendant did not purchase or move into the

residence until after the explosion. Given the materiality of this information the court held that the

defendant was entitled to a *Franks* hearing to determine whether the affiant had intentionally mislead the

magistrate or made statements with reckless disregard for the truth.

The circumstances surrounding the statements at issue here are not remotely in the *Stanert*

ballpark. Here, the information at issue is that Walter Liew sometimes worked at home. No reasonable

agent would be concerned that this type of information would be fabricated because of bias or animus.

*Cf. United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005) (evaluating the affiant's

impression of the "challenged statements" in determining whether the affidavit was intentionally or

recklessly misleading). An inculpatory statement – *e.g.*, "John Doe keeps stolen contraband in his

house" – could raise a red flag and cause a reasonable agent to question the source's motivation in

making the statement. Whereas the statement, "John Doe sometimes works at home," qualitatively, is

not the type of information that would raise a red flag for a reasonable agent. This is particularly so in

this case, where the general premise was corroborated by the agent's personal experience in conducting

searches and the specific information was corroborated by another witness who was in a position to

know the subject's work habits.

In order to justify a hearing, the defendant must offer some evidence "of the affiant's state of

mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove

deliberate falsehood or reckless disregard." *United States v. Souffront*, 338 F.3d 809, 822-23 (7th Cir.

2003). Defendants have presented no evidence that Special Agent Ho's intended to deceive or mislead.[4]

---

[4] Judge Patel's decision in *United States v. McCain*, 271 F.Supp.2d 1187 (N.D. Cal. 2003), provides an example of a case involving evidence of the affiant's state of mind. In *McCain*, the affidavit cited information obtained from a "Confidential Reliable Source," which in context suggested a human being. In reality, the source was a wiretap, not a person. The affiant intentionally used the term "Confidential Reliable Source" to suggest the source was a human, not a wiretap in order to conceal the

RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
CASE NO. CR-11-0573-JSW

1    Nor have defendants presented any evidence that Special Agent Ho had any reason to omit facts

2    regarding Wong's potential bias.  The information regarding Liew's work habits was not only

3    unremarkable in her experience, but it was corroborated by another witness, John Liu.  She simply had

4    no reason to question Wong's veracity on this point, and thus no reason to point out his potential bias.

5         Defendants advance the alternate theory that Special Agent Ho omitted the information regarding

6    Wong's possible bias in reckless disregard of the truth.  The *Franks* cases do not provide a clear

7    definition of what a reckless omission is, but an appropriate definition can be borrowed from the

8    securities law, and from Rule 10b-5 in particular.  See *United States v. Willis*, 647 F.2d 54, 58 (9th Cir.

9    1981) (citing Rule 10b-5 in support of the proposition that *Franks* "applies to affidavits which omit facts

10   required to prevent technically true statements from being misleading").  In the securities law,

11   "[R]eckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or

12   even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which

13   presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious

14   that the actor must have been aware of it."  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th

15   Cir. 1990) (en banc), quoting *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1044-45 (7th Cir.

16   1977).  Reworded to fit the context of a *Franks* proceeding, reckless conduct is a highly unreasonable

17   omission, involving not simple, or even inexcusable negligence, but an extreme departure from the

18   standards of ordinary care, and which presents of danger of misleading the magistrate that is either

19   known to the agent or is so obvious that the agent must have been aware of it.  Even if a failure to

20   corroborate the informant's claims was negligent, "a little negligence—actually even a lot of

21   negligence—does not the need for a *Franks* hearing make."  *Johnson*, 580 F.3d at 671, quoting *United*

22   *States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000).

23        Defendants contend that Special Agent Ho's omission was reckless because she should have

24   realized Wong's biases and "followed up" with him prior to submitting her Affidavit.  Def. Mem. at 4-5.

25

26   _____

27   existence of the wiretap. "Inspector Hanley deliberately drafted the affidavit so as to conceal the
     existence of the wiretap, and consequently should have known that a reviewing magistrate would likely
     conclude that the CRS was a person rather than a wiretap."  *Id.* at 1193.

28   RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
     CASE NO. CR-11-0573-JSW

                                         9

1   They argue that "[f]ailing to investigate the circumstances of Peter Wong's termination and its possible

2   connection to the anonymous letter suggest that Agent Ho turned a blind eye to facts about Peter

3   Wong's reliability until after she had successfully obtained and executed the search of the Liews' home

4   based on the favorable facts that Wong had to offer."  Def. Mem. at 4:18-21.

5          The flaws in this argument are the same as in their argument that Special Agent Ho intentionally

6   meant to deceive the magistrate.  Unlike the inculpatory information provided by the confidential

7   informants at issue in the *Franks* cases cited by defendants, the information provided by Wong (who

8   was not an informant) was not incriminating and thus not likely to have been motivated by bias, animus,

9   or an effort to "get" the Liews.  The information was consistent with Special Agent Ho's personal

10  experience discovering business records in residential searches.  Most importantly, the information was

11  directly and independently corroborated *before the search* by John Liu.

12         Defendants' contention that Special Agent Ho was reckless – that her conduct was an extreme

13  departure from the standards of ordinary care that created a risk of misleading the magistrate – fails

14  under these circumstances.  Defendants make no showing that she departed from the standards of

15  ordinary care or risked misleading the magistrate by reporting the information about Liew's work habits

16  obtained from Wong without adding allegations regarding his possible biases.  Indeed, it is clear that

17  Special Agent Ho more than satisfied any concern about Wong's information by obtaining corroboration

18  from another USAPTI employee.  That she did not include this information from John Liu in the

19  Affidavit (while including a significant amount of other information obtained from Liu) speaks directly

20  to the fact that there was no reason for her to be concerned that information that Walter Liew worked

21  after hours at home was not at all likely to be false.

22         Defendants arguments regarding the anonymous letter are curious and warrant brief separate

23  treatment.  First, defendants have not shown that Wong's authorship of this letter was a fact to which

24  Special Agent Ho could have sworn in an Affidavit.  It may well be that he drafted the anonymous letter,

25  but he did not admit it to the FBI before the search and has not since.  There were not "facts suggesting

26  he was the author of the anonymous letter," Def. Mem. at 6:8-9, there was a single piece of

27  circumstantial evidence – that he was terminated in the same month as the letter was sent to DuPont.

28  RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
    CASE NO. CR-11-0573-JSW
                                    10

Second, there is no evidence that Special Agent Ho, in the middle of a huge investigation that involved many issues of greater import, connected Leonard Tilton's recollection that Wong was fired in August 2010 to the anonymous letter being sent in August 2010, and decided to leave it out of the Affidavit for the purpose of misleading the magistrate.  Defendants, with the benefit of hindsight, highlight a single obscure fact from Tilton's FBI 302, the importance of which objectively is miniscule in comparison with the other information set forth in the Affidavit, and absurdly trumpet it as evidence of Special Agent Ho's lack of veracity.  Finally, defendants cite no authority for the proposition that accurately reporting criminal activity to the victim is evidence of bias.  Even if Special Agent Ho could have sworn that Wong had authored the letter – which she could not have done – the letter would not have undermined Wong's credibility, it would have enhanced it.  The allegation of misappropriation contained in the letter was corroborated by the other evidence set forth in the Affidavit showing probable cause (which defendants do not challenge).  If Wong had accurately reported the misappropriation to DuPont, that would have made him more, not less, credible as a witness.

The Supreme Court in *Franks* intended to address violations of the Fourth Amendment that are "substantial and deliberate." *Franks*, 438 U.S. at 171.[5]  Defendants' contention that Special Agent Ho was so concerned about the veracity of Wong's statement that Walter Liew sometimes worked from home that she deliberately or recklessly omitted information regarding his possible bias is specious.  Their argument trivializes the Supreme Court's reservation of the exclusionary rule to meaningful cases.

### 3.  If The Affidavit Were "Corrected" By Adding Missing Information There Would Still Be Probable Cause

Even if defendants were able to make a "substantial preliminary showing" that Special Agent Ho intentionally or recklessly omitted material information, the Affidavit cannot be invalidated if "a corrected or supplemented affidavit would still 'provide a magistrate with a substantial basis for concluding that probable cause existed.'" *United States v. Medina-Castaneda*, 511 F.3d 1246, 1250 (9th

---

[5] "Nor, if a sensible threshold showing is required and sensible substantive requirements for suppression are maintained, need there be any new large-scale commitment of judicial resources; many claims will wash out at an early stage . . . .  The requirement of a substantial preliminary showing would suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Franks*, 438 U.S. at 170.

Cir. 2008), quoting *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985); *United States v. Garcia-Cruz*, 978 F.2d 537, 541 (9th Cir. 1992) ("The pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause.").

Three pieces of information would be added to a "corrected" affidavit:  (1) that Wong had been terminated by USAPTI because of a business disagreement with Walter Liew; (2) that Leonard Tilton told the FBI that Wong had been terminated in August 2010, the same month that the anonymous letter was postmarked; and (3) that John Liu informed the FBI on July 6, 2010, that Walter Liew worked from home after hours when the office was closed.[6]  There would be no factual basis for including in a "corrected" Affidavit that Wong actually wrote the anonymous letter.  Any such averment would be speculative.

If non-speculative additional information were included in a corrected Affidavit, there still would be probable cause to search the Liews' residence.

1)  Wong's potential bias against Walter Liew for terminating him does not call into question the reliability of the statement that Walter Liew sometimes worked from home.  For the reasons discussed in detail above, there is no basis for assuming that a person would falsely assert that a former colleague – even one he disliked – worked at home.

2)  Wong was not an "informant," though defendants repeatedly suggest that he should be treated as one.  He was a witness who did not have informant status with the FBI; his identity has never been treated as confidential.  He has not been promised or offered anything by the government.  He was not offering information to exculpate or divert attention from himself; he has never been suspected or accused of wrongdoing.

3)  Wong's authorship of the anonymous letter is speculative.  Special Agent Ho could not assert as a fact that Wong wrote the letter.

---

[6] As discussed above, defendants' contention that Wong told Special Agent Ho that he "didn't like the wife," is utterly false.

4)   Even if Wong wrote the letter, that does not reveal dishonesty or bias.  The claim in the anonymous letter that USAPTI and Walter Liew had misappropriated DuPont trade secrets was well corroborated by independent evidence set forth in the Affidavit.  If anything Wong's corroborated accusations would enhance, not detract from his credibility.  There is no authority for the proposition that truthfully reporting a theft is evidence of bias or animus.

5)   Wong's statement would have been corroborated, with even more detail, by John Liu who told the FBI two weeks before the search that Walter Liew sometimes worked at home, particularly at night when the office was closed and locked.

6)   Wong's statement was consistent with the experience of Special Agent Ho, who had "participated as an FBI agent in numerous searches of residences in which these types of business and financial records are located."  Affidavit ¶ 69.

Even if a magistrate were to utterly disregard Wong's information and afford it no weight at all, probable cause would still exist, based on the following evidence:  (a) John Liu's statement that the Liew worked from home; (b) Special Agent Ho's training and experience regarding the types of records found in the homes of people engaged in trade secret theft; (c) Special Agent Ho's participation in searches in which business and financial records were located in residences; and (d) evidence that the Liews' intermingled their business and personal finances by paying USAPTI employee John Liu three times[7] from Christina Liew's personal checking account registered to the Liews' home address.[8]

Wong's potential bias against the Liews does not mean the abandonment of common sense. Courts reviewing warrants in the context of *Franks* challenges "indulge normal inferences about where criminals would be likely to hide property, taking into account the type of crime, the nature of the contraband, and the opportunity for concealment." *Garcia-Cruz*, 978 F.2d at 541.  "The magistrate need

---

[7] Defendants erroneously contend that there was only one check.  The Affidavit reflects information from John Liu that he was provided personal checks from Christina Liew on three occasions.

[8] The government incorporates here the arguments and authorities cited in its brief in opposition to defendants' motion to suppress regarding this evidence.

1    only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit."

2    *Id.,* quoting *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991).  A magistrate reviewing an

3    affidavit that included the omitted information known to Special Agent Ho would not have reached the

4    conclusion that Wong was lying about Walter Liew working at home or determined that it was

5    unreasonable to seek evidence in the Liews' residence.

6         Defendants' rhetorical license does not suffice to satisfy the substantial showing they are

7    required to make.  Defendants argue throughout their brief as if it were fact that Wong had "animus" and

8    "ill-will" towards the Liews and that he had "every reason to want to 'get back at' Mr. Liew."  Wong

9    told Special Agent Ho that he had disagreements with Walter Liew about work, that Liew terminated

10   him, and that the relationship ended badly.  Without defendants' incorrect assertion that the notes say

11   "PW didn't like the wife" – which as set forth above they do not say – there is no evidence whatsoever

12   that Wong had any animus or ill-will toward the Liews.  The fact that Wong and Walter Liew disagreed

13   over the business and that Walter Liew fired Wong certainly does not mean, as defendants work

14   themselves up into arguing, "that Peter Wong had every reason to 'get back at' Mr. Liew . . . ."  Def.

15   Mem. at 5:14-15.  There is no authority for the general proposition suggested by defendants that

16   terminated employees are categorically likely to lie about their former employers, let alone lie in an

17   effort to get them in trouble with the FBI – there are many thousands of terminated employees in the

18   United States and seemingly no epidemic of false reports to the FBI about executives taking work home.

19   Nor is there evidence that Peter Wong was out to get the Liews when he spoke to the FBI.  Indeed, if

20   Wong had wanted to "get" the Liews by orchestrating a search of their home, one would assume that he

21   would have gone a good deal further in providing incriminating information than saying that Walter

22   Liew occasionally worked at home.  Wong, if wanting the FBI to "get" the Liews, might have gone to

23   the FBI to report the crime.  The fact of the matter is that Wong only spoke to the FBI when the FBI

24   showed up at his house and asked questions.

25   //

26   //

27   //

28   RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
     CASE NO. CR-11-0573-JSW

                                      14

**B.      No Hearing Is Necessary To Address Special Agent Ho's Declaration**

Defendants contend that the Court should permit an evidentiary hearing regarding "several distinct factual issues raised by the Ho Declaration dated July 15, 2013 and submitted in opposition to defendants' motion to Suppress." Def. Mem. 9:3-4. Defendants cite a litany of facts they would like to examine Special Agent Ho about and numerous questions they claim are unanswered by her declaration. But defendants offer no contrary evidence other than a photograph of a messy room in the Liews' house[9] and no authority for conducting the broad-ranging evidentiary hearing they suggest, including calling other FBI agents.

It is obvious that defendants do not like the contents of Special Agent Ho's declaration. But, that said, they provide no evidentiary challenge to it. Their desire to cross-examine Special Agent Ho simply is not sufficient to warrant an evidentiary hearing.

**C.      Defendants' Arguments Regarding The Safe Deposit Box Key Are Without Merit**

Defendants again raise the issue of the safe deposit box key, though it has nothing to do with the *Franks* issue or the information provided by Peter Wong. They argue that the "seizure of the safety deposit box key . . . demonstrates that the agents did not stay scrupulously within the enumerated categories of the Warrant, let alone that they limited it further by reference to the Affidavit." Def. Mem. 11:1-3. The defendants offer no evidence regarding the circumstances surrounding the key, instead simply asserting that the key was seized by the agents.

Contrary to defendants' argument, the conduct surrounding the key illustrates that Special Agent Ho was carefully attempting to ascertain what evidence was relevant and where that evidence was located. In conducting the search, the FBI found a key and asked Christina Liew about it. In response to that question, Christina Liew and Walter Liew conferred in Mandarin, within earshot of an FBI agent who understood what they were saying, and agreed that Christina Liew would say that she did not know

---

[9] Defendants appear to contend that individuals who maintain "a confused mass of unsorted paperwork" – as the Liews apparently did – are entitled to gentler treatment in a search than those who keep well-labeled files that are easy to review, presumably because it is more difficult to sift through piles of random paper. Def. Mem. at 10:24. Just because the Liews were not neat housekeepers does not mean that the FBI was not authorized to sort through the piles to find evidence authorized by the warrant.

1   to what the key fit.  Before the FBI left the Liews' house with the key, Christina Liew left and drove to

2   the East-West Bank.  FBI agents had followed her to the bank.  A bank employee told an FBI agent that

3   Christina Liew had come into the bank.  Shortly thereafter, a bank executive told an FBI agent that a

4   customer had contacted the bank claiming to have lost her safe deposit box key, and requested access to

5   the box.  The customer was informed that it was bank policy to assist the customer by finding a

6   locksmith to the drill the lock.  An FBI agent stayed on premises to preserve the integrity of the box

7   until a warrant was obtained by a magistrate to search the box.

8          The FBI was present in the home under the authority of the warrant and had permission to search

9   places in the house that might contain evidence.  When they found a key – an item that was specifically

10  authorized to be seized under the warrant, see Attachment B, ¶ 9 (Dkt. 373-2 at 49) – the FBI made an

11  appropriate inquiry regarding the nature of the key, to which Christina Liew chose to respond with a lie.

12         To be clear, defendants have not asked to suppress the key as evidence or filed a motion to

13  suppress evidence seized from the safe deposit box.  Those would have been the proper motions to file

14  to address the issue of the key.

15         The key ultimately was seized because the seizure was authorized by the Warrant and because it

16  was evidence of a crime that was committed in the presence of the FBI agents, namely the making of

17  false statements and an attempt by the Liews to obstruct justice.  A law enforcement officer may seize

18  without a warrant evidence of a crime committed in their presence and evidence of a crime that that

19  found in plain view.  As noted above, these issues have not been squarely raised by the defendants

20  because they did not identify with specificity evidence they believe should be suppressed and because

21  they did not suppress the contents of the safe deposit box (the deadline for filing such motion having

22  passed).

23  //

24  //

25  //

26  //

27  //

28  RESPONSE BY UNITED STATES RE: EVIDENTIARY HEARING
    CASE NO. CR-11-0573-JSW
                                           16

IV.     CONCLUSION

Defendants' requests for a *Franks* hearing and a broader hearing on Special Agent Ho's July 15 declaration should be denied.


DATED:  August 14, 2013                    Respectfully submitted,

                                           MELINDA HAAG
                                           United States Attorney


                                           *John H. Hemann*
                                           _____
                                           PETER B. AXELROD
                                           JOHN H. HEMANN
                                           Assistant United States Attorneys