| | |
|---|---|
| 1 | KEKER & VAN NEST LLP |
| | STUART L. GASNER - # 164675 |
| 2 | sgasner@kvn.com |
| | SIMONA A. AGNOLUCCI - # 246943 |
| 3 | sagnolucci@kvn.com |
| | KATHERINE M. LOVETT - # 276256 |
| 4 | klovett@kvn.com |
| | 633 Battery Street |
| 5 | San Francisco, CA 94111-1809 |
| | Telephone:     415 391 5400 |
| 6 | Facsimile:      415 397 7188 |
| 7 | Attorneys for Defendant WALTER LIEW |
| 8 | LAW OFFICES OF DORON WEINBERG |
| | DORON WEINBERG - # 46131 |
| 9 | doronweinberg@aol.com |
| | 523 Octavia Street |
| 10 | San Francisco, CA  94102 |
| | Telephone:     (415) 431-3472 |
| 11 | Facsimile:      (415) 552-2703 |
| 12 | Attorney for Defendant |
| | CHRISTINA LIEW |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 11-0573-JSW (NC) |
| Plaintiff, | **REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME** |
| v. | |
| WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE, | |
| Defendants. | |
| | Date:      August 23, 2013 |
| | Time:      8:00 a.m. |
| | Place:     Courtroom 11, 19th Floor |
| | Dept.:     Hon. Jeffrey S. White |

REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

I. THE DEFENSE HAS MADE THE PRELIMINARY HEARING NECESSARY FOR A *FRANKS* HEARING ...................................................................................1

    A. The Government is Wrong that the Omitted Facts About the Circumstances Surrounding Peter Wong's Termination Were Insignificant ................................1

    B. Agent Ho was Aware of Evidence of Peter Wong's Ill Will Towards the Liews, Whether or Not He Said So Expressly ........................................................3

    C. Agent Ho was at Least Reckless in Failing to Disclose the Circumstances Surrounding Peter Wong's Termination and Turning a Blind Eye to Whether he was the Author of the Anonymous Letter ...........................................4

    D. The Government Incorrectly Argues that Jian Liu's Statement Can Be Filled into a "Re-Written" Affidavit ........................................................................6

    E. Defendants have met the Preliminary Threshold Showing for a *Franks* Hearing .....................................................................................................................7

    F. The Court Should Not Consider the Government's Extrinsic Evidence as Part of the *Franks* Preliminary Inquiry ..................................................................8

II. THE DEFENSE HAS CONTROVERTED THE GOVERNMENT'S EXTRINSIC EVIDENCE, WARRANTING A HEARING ......................................................................8

    A. The Response Conflates Several Issues and Misapprehends Where Evidence Extrinsic to the Search Warrant Affidavit May be Considered ..............8

    B. The Defense *Has* Controverted the Extrinsic Evidence in the Ho Declaration and the Supplemental Ho Declaration .................................................9

CONCLUSION .....................................................................................................................11

i

REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Franks v. Delaware*
    438 U.S. 154 (1978).................................................................................................. 1, 7

*Georgia v. Randolph*
    547 U.S. 103 (2006)...................................................................................................... 2

*United States v Chesher*
    678 F.2d 1353 (9th Cir.1982) ....................................................................................... 7

*United States v. Hove*
    848 F.2d 137 (9th Cir. 1988) ........................................................................................ 6

*United States v Kyllo*
    37 F.3d 526 (9th Cir. 1994) .......................................................................................... 7

*United States v. Luong*
    470 F.3d 898 (9th Cir. 2006) ........................................................................................ 6

*United States v. SDI Future Health, Inc.*
    568 F.3d 684 (9th Cir. 2009) ........................................................................................ 8

*United States v. Wong*
    334 F.3d 831 (9th Cir. 2003) ........................................................................................ 9

ii
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

# INTRODUCTION

The Government's Response brief (Dkt. No. 420, "Resp.") is filled with unsworn statements of fact meant to distract from the plain truth: Agent Ho omitted salient facts from the search warrant affidavit under circumstances strongly suggesting reckless or intentional behavior. And despite relying heavily on the Ho Declaration in their suppression briefing, the Government devotes a mere 11 lines in the Response to claiming (wrongly) that the defense has not controverted it.  Resp. at 15.

The defense has asserted two reasons for a hearing.  The first is because it is required under *Franks v. Delaware* and its progeny, based on evidence that Agent Ho omitted important facts from her search warrant affidavit submitted to Magistrate Bommer on July 18, 2011 (the "Affidavit").  The second reason (largely ignored in the Response) is to flesh out the one-sided and incomplete factual assertions that permeate the Government's briefing as to the good faith exception to the exclusionary rule, and as to their claims that the agents "cured" any overbreadth problems in the search warrant by relying on the Affidavit during the search, and by other post-warrant behavior.  For the reasons that follow, the Response confirms, rather than rebuts, the need for a hearing on both grounds.

# ARGUMENT

## I. THE DEFENSE HAS MADE THE PRELIMINARY HEARING NECESSARY FOR A *FRANKS* HEARING

In opposing the Liews' request for a *Franks* hearing, the Government relies on several fundamentally flawed propositions, none of which undercuts the showing the defense has already made.

### A. The Government is Wrong that the Omitted Facts About the Circumstances Surrounding Peter Wong's Termination Were Insignificant

Throughout the Response, the Government tries to minimize the significance of both Peter Wong's statements about Walter Liew working at home and the facts omitted about the circumstances surrounding his termination. *See*, *e.g.*, Resp. at 6, 10 (working from home is "the blandest sort of detail" and "not incriminating" in any way.)  This is not, however, what the

1

REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

Government said in its original opposition to the motion to suppress: then, his statements were "important" to probable cause. Dkt. No. 372 at 6.

The Government had it right the first time. Peter Wong's statement that Walter Liew worked from home was the *only* evidence in the Affidavit, other than a check address and Agent Ho's even blander and non-specific statement of her experience, that linked USAPTI to Walter and Christina Liew's home. *See* Dkt. No. 417 at 6. A skilled and experienced FBI agent, armed with the knowledge that the home receives special protection in Fourth Amendment jurisprudence,[1] would have known at the time of writing the Affidavit that Mr. Wong's statement would be of paramount importance in establishing probable cause to search the Liews' home for evidence related to financial crimes and trade secret offenses. Peter Wong's statement about Walter Liew working at home may have been short, but it was the central piece of evidence in a very short section of the Affidavit. Agent Ho must have known that.

So, too, does the Government unfairly downplay the significance of the omitted facts about Peter Wong and the ways in which the circumstances surrounding his termination would have been material to the Magistrate's determination of probable cause. The principal thrust of Wong's information, as reported elsewhere in the Affidavit, was that Walter Liew was using stolen DuPont data and would not have been capable of developing the engineering plans on his own. Affidavit (Dkt. 373-2) at ¶ 57. Other witnesses, in contrast, had provided Agent Ho with contradictory and exculpatory information about USAPTI's and Walter Liew's work, including statements that they had no reason to think that USAPTI's designs were misappropriated, that DuPont's patents in the field had expired, and that the USAPTI customers in China already had operable chloride route plants and a body of knowledge in the field. *See* Declaration of Katherine Lovett in Support of Reply re Supplemental Briefing ("Lovett Decl."), ¶¶ 3-4. Moreover, Agent Ho knew that Peter Wong was an early cooperator in the investigation, if not an informant as the Government narrowly defines that term. When Agent Ho interviewed DuPont investigator James

---

[1] *See, e.g.*, *Georgia v. Randolph*, 547 U.S. 103, 115 (2006) ("Since we hold to the centuries-old principle of respect for the privacy of the home, it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people.") (internal quotation marks and citations omitted).

2
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

Jubb, she learned that Wong was one of the few interviews he had done, strongly suggesting that he had come forward voluntarily. *Id*. at ¶ 2.

In short, while the Response attempts to portray Peter Wong as a run-of-the-mill former employee who had made a plain vanilla statement about Walter Liew working from home, the omitted facts paint a different picture. In fact, Peter Wong was an early and active cooperator in DuPont's investigation, who, in the context of providing damning (and contradicted) information on the principal aspect of the Affidavit, also served the Government by providing reason to search the Liew's home. This is material information that the Magistrate should have been told.

### B. Agent Ho was Aware of Evidence of Peter Wong's Ill Will Towards the Liews, Whether or Not He Said So Expressly

The Response makes much of Agent Ho's handwritten notes, claiming (without sworn testimony) that one entry says "PW didn't like the work" rather than "PW didn't like the wife." Resp. at 2-3. If anything, this is another reason to have a hearing, not a reason not to have one. There is no truth to the Government's inflammatory accusation that the defense "intentionally or recklessly misstated" the contents of Agent Ho's notes. Resp. at 1. As Defendants said in their original ex parte submission, the notes "are not entirely legible." Dkt. No. 409. They are not clearly organized by headings or topics and the version of the notes provided to Defendants by the Government is low resolution and difficult to read, as accurately reflected in the copy of the notes submitted to the Court at Dkt. 409-2.[2] To the extent that there is confusion about what the handwritten notes say and whether they reflect any animus by Peter Wong against Christina Liew, Agent Ho is the only person in a position to resolve that issue.

In any event, Agent Ho was aware of other evidence strongly suggesting that Peter Wong bore a grudge against Walter Liew.[3] Her handwritten notes indisputably reflect that "WL

---

[2] The Government's opposition indicates that the Government intended to attach "a clearer copy of the notes than the copy provided by defendants," but the Government appears to have failed to do so. *See* Dkt. 420 at 3. Defendants would welcome a clearer copy of the notes, since Defendants have no access to the originals and so far had no choice but to rely on the grainy copy provided to the defense by the Government on August 7, 2013.

[3] Since Walter and Christina Liew lived together as husband and wife in the home that was searched, it matters little whether Wong's animus was directed to one or both of them.

3
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

terminated PW," that Wong "left on a bad note," that Wong "tried to tell WL how to run his bus[iness]," and that "WL didn't like PW." Dkt. 409-2. And as noted below, Agent Ho interviewed investigator James Jubb of DuPont corporate security, and Jubb reported to Agent Ho that Peter Wong "had a falling out" with Walter Liew and "quit working for USAPTI." *See* Lovett Decl., ¶ 2.

None of this evidence made its way into Agent Benjamin Hojnacki's June 30, 2011 memorandum of the Wong interview. Agnolucci Decl. (Dkt. 409) at ¶ 3. Moreover, the marked contrast between (1) the pre-warrant Wong interview memoranda (June 30 and July 11), which make absolutely no mention that Wong "left on a bad note," and (2) the post-warrant July 30 Wong interview memorandum, which uncovers the details of Walter Liew's "constant shouting" and "disgracing" of Wong, strongly suggests that Agent Ho, assisted by Agent Hojnacki, purposefully avoided the topic of Liew and Wong's falling out until after her Affidavit was filed. *Compare* Dkt. 386 at ¶¶ 3-4 (declaration describing June 30 and July 11 302s) *with* Dkt. 408-1 (July 30 302).

### C. Agent Ho was at Least Reckless in Failing to Disclose the Circumstances Surrounding Peter Wong's Termination and Turning a Blind Eye to Whether he was the Author of the Anonymous Letter

There is also sufficient evidence to believe that Agent Ho had serious reasons to doubt the truth of Mr. Wong's statements and that it was, at the very least, reckless of her to not follow up on Wong's animus towards the Liews and potential authorship of the anonymous letter, yet to present to the Magistrate his statement about the alleged link to the Liew home as if it was the plain vanilla recollection of a run-of-the mill USAPTI employee. In her interview with Jubb on May 31, 2011, well before her first contact with Peter Wong, Agent Ho learned that Peter Wong had been terminated in August 2010 after a "falling out" with Walter Liew, and was an early cooperator in the DuPont investigation. When she interviewed Wong in late June,[4] she learned

---

[4] Defendants also note that it is unclear whether Agent Ho interviewed Peter Wong on occasions other than those documented in the FBI 302s provided to Defendants by the Government. In the search warrant affidavit, Agent Ho twice represents that she interviewed Peter Wong on June 28, 2011, but Defendants have not yet received a 302 for an interview taking place on that date. *See* Dkt. 373-2 (Ho affidavit) at ¶¶ 57, 69.

4
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

more about the bad blood between Wong and Liew. Yet she asked no questions about it in the July 11, 2011 interview. These facts, taken as a whole, strongly suggest that Agent Ho at least turned a blind eye to the shortcomings of the USAPTI witness she chose to rely upon for the link between the business and the Liew's home.

The Government argues that it would be outlandish for an FBI agent of Agent Ho's experience to suspect or investigate whether Peter Wong was the author of the August 2010 anonymous note to DuPont. Resp. at 10. But a whole host of facts indicated that Mr. Wong was *the* prime candidate for the note's authorship: the two obvious candidates would be Jian Liu (who was actively cooperating in the investigation) and Mr. Wong (fired and resentful in August 2010, the same month that DuPont received the note). Jian Liu can be eliminated because the anonymous note accuses him, too, of illegal activity, leaving Peter Wong as the prime suspect. Lovett Decl., ¶ 5. Oddly, the Government never says in the Response that Mr. Wong (or anyone else) was ever *asked* about their authorship of the anonymous note, merely that nobody "claimed" it. Resp. at 5. Again, the circumstantial evidence suggests that the FBI was assiduously *avoiding* the question of who wrote the anonymous note, more support for a willful blindness theory of recklessness.[5]

The Government suggests, counterintuitively, that Wong would have been a *more* credible witness had the affidavit reflected that he was the author of a vindictive anonymous note about the Liews sent to DuPont. Dkt. 420 at 11 ("If Wong had accurately reported the misappropriation to DuPont, that would have made him more, not less, credible as a witness"). Beyond the fact that the Government assumes Defendants' guilt of the charges in this case by stating that Wong "accurately reported the misappropriation to DuPont"—a representation Defendants fundamentally reject and that was contradicted by several witnesses Agent Ho interviewed before the Affidavit—Wong's credibility as the author of the anonymous letter was a question for the Magistrate Judge to determine. Because of Agent's Ho's omissions, the Magistrate Judge was

---

[5] If the Court is going to borrow from the securities law for a definition of a reckless omission in the *Franks* context, as the Government suggests, then the "willful blindness" concept would seem more appropriate.

5
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

unable to get the full picture of Peter Wong's bias and to determine probable cause accordingly.

### D. The Government Incorrectly Argues that Jian Liu's Statement Can Be Filled into a "Re-Written" Affidavit

At the time of the August 8, 2013 argument, both Government and defense counsel had apparently overlooked Jian Liu's peripheral statement in his July 6, 2011 interview that Walter Liew occasionally worked at home. The Government now seizes on that fact with a vengeance, but it is misleading and irrelevant. The circumstances strongly suggest that Agent Ho did not have the statement in mind when she wrote the Affidavit (and may not have recalled it until the briefing on this issue). There is no credible explanation for why she would rely only on Peter Wong for this point if she had Liu's corroboration in mind. And if she was not actually "aware" of it at the time, it has no relevance under any theory.

While Agent Ho presumably *could have* included John Liu's statement about Walter Liew's work from home in her affidavit, she didn't. Ninth Circuit law is clear that probable cause must be established based on the information within the four corners of the Affidavit, and that extrinsic evidence is inadmissible to show what an affiant *could* have included in a warrant, but did not.[6] The proper *Franks* analysis in an omission setting is to add back into the Affidavit ***the facts that the defense claims were improperly omitted***, and to evaluate whether probable cause is still present. It is <u>not</u> to "re-write" the Affidavit considering *extrinsic evidence* of all the facts that the agent "could have" added, an approach that would flout the Ninth Circuit's "four corners rule" on probable cause.

The Government argues that the availability of Jian Liu as a "second source" for a statement that Walter Liu worked at home undercuts the defense argument that Agent Ho acted intentionally. But that argument assumes evidence *not in the record* that at the time in July 2011 that Agent Ho was hurriedly preparing her Affidavit under "time of the essence" conditions, she remembered a single line from a 5-page single-spaced interview memorandum. It seems more

---

[6] *See, e.g.*, *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988); *United States v. Luong*, 470 F.3d 898, 904 (9th Cir. 2006) ("This Court has repeatedly held that all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.") (internal quotation marks and citation omitted).

6
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

likely that Agent Ho had overlooked or forgotten about Mr. Liu's statement, especially given the great deal of other information provided by John Liu that she did include in her affidavit. *See, e.g.*, Dkt. 373-2 (Ho affidavit) at ¶¶ 26-30, 50-54, 65-66 (detailing information provided on a number of topics by John Liu during June 21 and July 7, 2011 interviews). Ultimately, neither Defendants (nor the Court) has any evidence as to why Agent Ho did not include information concerning the circumstances surrounding John Liu in her affidavit, which further underscores the need for a hearing on Agent Ho's subjective intent.

As the Court suggested at the August 8, 2103 hearing, the probable cause supporting the search of the Liew's home was thin to begin with, and cannot withstand excision of the Peter Wong statement. Nor can that deficiency be cured, under Ninth Circuit law, by adding evidence that the agent "could have" put in the Affidavit.

### E. Defendants have met the Preliminary Threshold Showing for a *Franks* Hearing

The Supreme Court made clear in *Franks v. Delaware* that the Fourth Amendment requires an evidentiary hearing when a defendant has made "a substantial preliminary showing" or a "suitable preliminary proffer "of falsity or recklessness in an affidavit. 438 U.S. 154, 155, 169 (1978). As explained in *United States v Chesher*, 678 F.2d 1353, 1362 (9th Cir.1982): "Clear proof is not required - for it is at the evidentiary hearing itself that the defendant, aided by live testimony and cross-examination, must prove actual recklessness or deliberate falsity." *See also*, *United States v Kyllo*, 37 F.3d 526,530 (9th Cir. 1994). Plainly, defendants have met their burden here. The proper place for consideration of the government's contrary evidence, if any, is at the evidentiary hearing.

When and how information came to Agent Ho's attention, and what it did or should have told her about the reliability of Wong's information, depends on evidence that only a hearing can provide. While the Government suggests (without any evidentiary support) that the statement was made in isolation and is the type of statement that could not be influenced by bias, the context is paramount. If, for example, Wong's statement was made in a context of discussing a potential search of the Liew's home -- and it is hard to imagine how else the topic of Walter Liew working

7

REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON
MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON
MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

at home would come up – then the omission of information about Wong's bias is all the more significant.

For all of these reasons, none of the issues raised in the Response ultimately changes the fact that Defendants have shown that Agent Ho actually knew of Peter Wong's problems with the Liews and animus towards them, and yet omitted to mention that information in her Affidavit. This constitutes a sufficient preliminary showing of an intentional or reckless omission in the search warrant affidavit to require a *Franks* hearing.

### F. The Court Should Not Consider the Government's Extrinsic Evidence as Part of the *Franks* Preliminary Inquiry

The Response refers to a large amount of extrinsic evidence, much of it without evidentiary support. As noted above, *Franks* and its progeny make clear that the focus in evaluating the need for a *Franks* is on the defense showing, not on a comparison of it to the Government's proffer. The Court should ignore the Government's extrinsic evidence in the Response (whether supported by declaration or not), and await their presentation until the *Franks* hearing.

## II. THE DEFENSE HAS CONTROVERTED THE GOVERNMENT'S EXTRINSIC EVIDENCE, WARRANTING A HEARING

### A. The Response Conflates Several Issues and Misapprehends Where Evidence Extrinsic to the Search Warrant Affidavit May be Considered

In contrast to the *Franks* setting, extrinsic evidence *is* often admissible on the issue of the good faith exception to the exclusionary rule. *See generally* J. Taylor, "Using Suppression Hearing Testimony To Prove Good Faith Under United States V. Leon," 54 U. KAN. L. REV. 155 (2005). It is also admissible on the "curative affidavit" doctrine, in which courts look to evidence outside the four corners of the affidavit to cure overbreadth and particularity problems in search warrants. *See*, *e.g.*, *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009). It was permissible for the Government to offer extrinsic evidence, both in the original Ho Declaration and in the supplemental declaration by Agent Ho in support of the Response, on *those* points.

But there is no support cited by the Government for its "best of all worlds" approach, in

8

REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

which the Government gets to lard the record with one-sided or unsupported extrinsic evidence on good faith and other issues, but then can block inquiry into the factual record under a strict hearing standard.  While the standards for conducting a *Franks* hearing are relatively clear, the standards for conducting a hearing on extrinsic evidence offered by the Government to establish good faith (or to back up a curative affidavit claim) appear less so.  The Response's 11-line treatment of the issue cites no cases.  And although the defense has cited cases in which "testimony" was apparently presented by the Government at suppression hearings on good faith issues, those cases offer no standard for when a hearing should be conducted.

### B. The Defense *Has* Controverted the Extrinsic Evidence in the Ho Declaration and the Supplemental Ho Declaration

To the extent the standard is "controverting" facts asserted by the Government, the defense has done that.  For example, the Agnolucci Declaration and Lovett Declaration contradict the Government's claim that the agents used the Affidavit to limit the warrant's broad categories during the search of the Liew home.  While the agents removed a large amount of paperwork from the home, and a large quantity of electronic media, all that they returned were utterly extraneous items such as music and exercise videos.  Agnolucci Decl. ¶ 5; Lovett Decl. ¶ 6.  This calls into question the thrust of the Ho Declaration that the overbreadth of the warrant was "cured" by reliance on the Affidavit, especially since the Ho Declaration never even says that the searching agents read it or relied upon it.  Likewise with the seizure of the safety deposit key: photographs of the key as found during the search make plain that it was taken out of a purse and seized during the search, even though it falls under none of the enumerated categories of the

9
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

warrant. Lovett Decl. ¶ 7, Exhs. A, B.[7] Similarly, the defense has controverted the assertion that the Government's acted in good faith because it complied with a "computer protocol," when some evidence shows that it didn't. Agnolucci Decl. ¶ 6.

Ironically, the Supplemental Ho Declaration provides further controverting evidence, suggesting that the searches of the USAPTI office and Liew home were done under "time of the essence" circumstances. Supp. Ho Decl. ¶ 12. Thus while the original Ho Declaration attempts to portray a "good faith" scenario in which a great deal of thought and deliberation went into the planning and execution of the searches, her supplemental declaration confirms what the defense has been contending: the search of the Liew home was an afterthought, justified by a hastily-prepared (and inadequate) single paragraph in a 50-page Affidavit.

---

[7] The Government devotes an entire section of the Opposition to the red herring argument that suppression of the safety deposit box key should have been made in a different motion. As the Court properly noted at the argument, the key could also be suppressed as the fruit of the poisonous tree if the home search is found to be illegal (which is the defense theory). The Court should similarly ignore the unsworn narrative in the Opposition purporting to establish that the key was seized in plain view. Opposition at 15-16. First, the alleged facts are unsupported by sworn testimony. Second, the plain view doctrine requires that the seized item be contraband or otherwise obviously criminal on its face (which a safety deposit key is not). *See United States v. Wong*, 334 F.3d 831, 838 (9th Cir. 2003) (plain view doctrine requires that item's incriminating nature was "immediately apparent"). Third, the argument that the key could be seized as evidence of a crime committed in the agent's presence distorts the chronology; even under the Opposition's narrative, the agents took possession of the key *before* confronting the Liews about it.

10
REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03

# CONCLUSION

For the foregoing reasons, defendants Walter and Christina Liew respectfully request that the Court grant their request for a *Franks* hearing and for a hearing on the identified facts in the Ho declarations.

Respectfully submitted,

Dated:  August 16, 2013                    KEKER & VAN NEST LLP


By:  */s/ Stuart L. Gasner*
     STUART L. GASNER
     SIMONA A. AGNOLUCCI
     KATHERINE M. LOVETT

Attorneys for Defendant WALTER LIEW

Dated:  August 16, 2013                    LAW OFFICES OF DORON WEINBERG


By:  */s/ Doron Weinberg*
     DORON WEINBERG - # 46131

Attorney for Defendant
CHRISTINA LIEW

11

REPLY ISO SUPPLEMENTAL BRIEF OF DEFENDANTS WALTER AND CHRISTINA LIEW ON MATERIALITY AND OTHER ISSUES RELATING TO REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS EVIDENCE FROM THEIR HOME
Case No. CR 11-0573-JSW (NC)

775173.03