**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WALTER LIEW and CHRISTINA LIEW,<br><br>Defendants.<br>_____/ | No. CR 11-00573-1 JSW<br>No. CR 11-00573-2 JSW<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>**(Docket Nos. 356, 366, 409)** |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion to Suppress Evidence filed by Walter Liew ("Mr. Liew") and Christina Liew ("Mrs. Liew") (collectively, "the Liews"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit or oral argument.[1] For the reasons set forth in this Order, the Court HEREBY DENIES the motion to suppress without an evidentiary hearing.

## BACKGROUND

On July 19, 2011, law enforcement officers, including FBI Special Agent Cynthia Ho ("SA Ho"), executed a search warrant at the Liews' home. This search, and the subsequent seizure of evidence, was based upon an application and affidavit prepared by SA Ho (the "Affidavit"), which United States Magistrate Judge Timothy Bommer approved on July 18, 2011. (*See generally* Docket Nos. 356-2 and 356-3, Declaration of Doron Weinberg ("Weinberg Decl.") and Ex. A (Affidavit, with attachments); Docket No. 373, Declaration of

---

[1] On August 8, 2013, the Liews filed a motion to supplement the evidentiary record and for an evidentiary hearing. (Docket No. 409.) The Court GRANTS the request to supplement the evidentiary record, and it DENIES the request for an evidentiary hearing.

Special Agent Cynthia Ho ("Ho Decl."), Ex. 1 (Search and Seizure Warrant with attachments and return); Ex. 2 (Application for Search Warrant and Affidavit with attachments).) On that same day, based on the same affidavit, law enforcement officers also executed a warrant to search the offices of USA Performance Technology, Inc. ("USAPTI").[2]

In the Application and in her Affidavit, SA Ho stated that the search was related to violations of 18 U.S.C. Sections 1831 and 1832, economic espionage and theft of trade secrets. (Application; Affidavit, ¶ 4.) SA Ho attested that she had been a Special Agent with the FBI since September 2001 and that her duties included "investigation of various violations of federal criminal law, including matters related to the theft of trade secrets, including economic espionage." (Affidavit, ¶ 2.) SA Ho stated that the facts in the Affidavit were based, in part, on her "training and experience." (*Id.*, ¶¶ 3, 105.a.)

Thereafter, SA Ho set forth facts that supported her belief that the Liews engaged in economic espionage and misappropriated trade secrets relating to the process and equipment E.I. duPont de Nemours and Company ("DuPont") used to manufacture titanium dioxide ("TiO2"). She also set forth facts to support her belief that evidence of these crimes would be found at the Liews' home. (*Id.*, ¶¶ 7-81.) For example, SA Ho attested that John Liu ("Mr. Liu"), a former USAPTI employee, told her that he was paid hourly for his work with USAPTI. According to Mr. Liu, Mrs. Liew suggested that "to avoid paying taxes," Mr. Liu could be paid by check through his mother's account in Canada. Mr. Liu's attorney provided the FBI with one of Mr. Liu's paychecks, which "was from Christina H. Liew, 2 Crown Ct., Orinda," the Liew's residential address. (*Id.*, ¶¶ 66-67.) Mr. Liu's attorney also informed the FBI, that Liu "had obtained two other similar paychecks from [Mrs. Liew] that were addressed to his mother." (*Id.*, ¶ 68.)

SA Ho also attested that another former USAPTI employee, Peter Wong ("Mr. Wong") stated that Mr. Liew "spent a lot of hours working on the TiO2 projects and that while [Mr. Liew] predominately worked at the office, he would perform related work from home after

---

[2] Neither the Liews nor USAPTI challenge that search.

2

hours. Due to the skeleton crew at USAPTI, Mr. Wong noted that a number of USAPTI employees would work remotely." (*Id.*, ¶ 69.)

SA Ho summarized the facts that supported her request to search the Liews' home as follows:

> As set forth above, Wong, an ex-USAPTI employee, noted that Walter Liew spent a lot of hours working on this project and that while Walter Liew predominately worked at the office, he would do related work from home after hours. Also, due to the skeleton crew at the office, Wong noted that USAPTI employees would work remotely. Additionally, Christina Liew had paid Liu for services rendered for the USAPTI TiO2 project using her Citibank checking account opened with the home address of 2 Crown Court, Orinda, California. Moreover, based on my training and experience, I know that individuals who are self-employed and involved in theft of trade secrets and economic espionage typically keep records related to these crimes, in this instance, including documents related to the TiO2 project, DuPont, travel records, and financial records in their personal computers or laptops in their homes. I have participated as an FBI agent in numerous searches of residences in which these types of business records are located. Accordingly, there is probable cause to believe that the items set forth in Attachment B will be found in the residence of Walter Liew and Christina Liew located at 2 Crown Court, in Orinda, California.

(*Id.*, ¶ 105(a).)[3]

It is undisputed that Mr. Liew fired Mr. Wong in August 2010. It also is undisputed that Mr. Wong did not leave USAPTI on good terms. SA Ho documented those facts in an FBI 302 of an interview she conducted with Mr. Wong on July 30, 2011. (Docket Nos. 386, Declaration of Christina Blais, ¶ 2; Docket No. 408, Exhibit A to Blais Declaration (FBI 302).) On August 7, 2013, the Government produced notes of SA Ho's first interview with Mr. Wong, which she conducted on June 30, 2011. (Docket No. 409-1, Declaration of Simona Agnolucci, ¶ 6, Ex. A.) Those notes include information about the fact that Mr. Liew had fired Mr. Wong and that he "left on a bad note." (*Id.*, Ex. A at PTI-001289.) The notes also reflect that "PW [Mr. Wong] told WL [Mr. Liew] how to run bus. [*sic*] after that WL didn't like PW." (*Id.*) It is undisputed that SA Ho did not include those facts in the Affidavit.

The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

---

[3] The Court has reproduced the content of Attachment B as an appendix to this Order.

3

1  The Liews now seek to suppress evidence seized from their home and also request that
2  the Court conduct a hearing pursuant to *Franks v. Delaware*, 438 US. 154 (1978). Specifically,
3  the Liews argue that the search warrant is not supported by probable cause and is overbroad.
4  The United States contends otherwise and argues, in the alternative, that the good faith
5  exception should apply. *See United States v. Leon*, 468 U.S. 897 (1968). The Liews argue that
6  *Leon*'s good faith exception is not available in this case for two reasons. First, they contend the
7  warrant is so lacking in probable cause that no reasonable agent could have relied on it.
8  Second, they contend that SA Ho either intentionally or recklessly omitted the information
9  regarding the circumstances surrounding Mr. Wong's termination. The Court turns to the
10 *Franks* issue as a threshold matter.

**A.   The Liews Are Not Entitled to a *Franks* Hearing.**

12 The Liews argue they are entitled to a *Franks* hearing on the basis that SA Ho omitted
13 the information about Mr. Wong's termination from the Affidavit. A defendant is entitled to
14 challenge a facially valid search warrant to show a law enforcement officer "intentionally or
15 recklessly omitted facts required to prevent technically true statements in the affidavit from
16 being misleading." Any such misrepresentations and omissions also must be material to the
17 probable cause determination. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985); *see
18 also United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011). In order to make an initial
19 showing that a *Franks* hearing is required, a defendant need not submit "[c]lear proof of
20 deliberate or reckless omission. ... Such proof is reserved for the evidentiary hearing." *Stanert*,
21 762 F.2d at 781. At the initial stage, "all that is required is that the defendant make a substantial
22 showing" that the affiant intentionally or recklessly omitted information material to the finding
23 of probable cause. *Id.*

24 It is undisputed that SA Ho did not include the fact that Mr. Wong had been terminated
25 from USAPTI and that he left on a bad note. The Liews also argue that SA Ho knew Mr. Wong
26 had been terminated in August 2010, which was around the same time DuPont received an
27 anonymous letter that alleged Mr. Liew and Mr. Liu were stealing DuPont technology, and also
28 omitted that fact. (*See, e.g.,* Affidavit, ¶ 18.) Although SA Ho did not rely heavily on

4

1  information provided by Mr. Wong, Mr. Wong is the sole USAPTI employee referenced in the
2  Affidavit to state that Mr. Liew worked at home. (*See, e.g., id.*, ¶¶ 45, 57, 69.) It also is clear
3  that SA Ho knew Mr. Wong had been fired and knew when he had been fired, before she
4  submitted the Affidavit to Magistrate Judge Bommer. There also is no indication that SA Ho
5  followed up with Mr. Wong about his termination until after she had submitted the Affidavit to
6  Magistrate Judge Bommer. (Docket No. 417-1, Declaration of Simona Agnolucci, ¶¶ 2-3.)

7  In certain circumstances, evidence regarding the potential bias of a witness could be
8  material to the question of whether probable cause exists. *See, e.g., United States v. Meling*, 47
9  F.3d 1546, 1554-55 (9th Cir. 1995) (but finding omissions about allegedly impure motives not
10 material); *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980) (but finding that
11 omission of identity of witness, defendant's estranged ex-wife, not material). Even if the
12 information about Mr. Wong's allegedly impure motives had been included in the Affidavit, the
13 Court finds it would not have undermined his credibility so completely that the Court would
14 have to disregard the information he provided in its entirety.

15 First, SA Ho included facts from other sources, whose reliability has not been
16 questioned, that would have provided probable cause to believe the Liews had engaged in
17 criminal activity. *See, e.g., Meling*, 47 F.3d at 1555 (noting that information omitted
18 "substantially eliminate[d]" informant's credibility but finding that information was not
19 material, because "[t]he bulk of the evidence supporting probable cause came from other
20 sources"). Second, as will be discussed in more detail below, SA Ho also included other facts
21 that, given the totality of the circumstances, support a conclusion that there was probable cause
22 to believe evidence of that activity would be found in the Liews' home.[4]

23 The Court concludes that the information regarding Mr. Wong's alleged bias was not
24 material to a finding of probable cause. Therefore, even if the Court were to conclude the
25 Liews made a substantial preliminary showing on the first prong of a *Franks* inquiry, they have

---

[4] The Court notes that the United States presented evidence that, on July 6, 2011, Mr. Liu also told SA Ho that Mr. Liew sometimes worked from home. (Docket No. 421, Declaration of Cynthia Ho, ¶ 10, Ex. A at p. 5.)

5

1 not met their burden on the second prong. Accordingly, the Court DENIES the request for a
2 *Franks* hearing.

**B. The Warrant is Supported by Probable Cause.**

The Liews move to suppress, in part, on the basis that the warrant is not supported by probable cause. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. amend. IV. The warrant clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*; *see also Stanert*, 762 F.2d at 778 ("A search warrant, to be valid, must be supported by an affidavit establishing probable cause."). The Liews have not argued that the Affidavit fails to establish probable cause to believe they engaged in criminal activities. Rather, they argue that the Affidavit fails to establish probable cause to believe evidence of those activities would be found in their home.

A magistrate judge evaluates the totality of the circumstances to determine whether there is a "fair probability" that contraband or evidence of a specific crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983); *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). A reviewing court should pay "great deference" to a magistrate judge's determination by looking to whether the magistrate had a "substantial basis" to conclude that probable cause existed. *Gates*, 462 U.S. at 236, 238; *Stanert*, 762 F.2d at 779.

The Liews argue that the totality of the circumstances do not support a finding of probable cause because: the information provided by Mr. Wong was stale; the information regarding Mr. Liu's paycheck is insufficient to establish a connection between the alleged criminal activities and the Liew's home; and SA Ho's information regarding her training and experience and her belief that the Liews fell into a specific category of persons is vague and conclusory. The Court disagrees.

A court must evaluate whether information is stale "in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). In situations where the evidence pertains to an "ongoing

6

1 criminal business of a necessarily long term nature, ... rather than that of a completed act,
2 greater lapses of time are permitted if the evidence of the affidavit shows the probable existence
3 of the activity at an earlier time." *Id.* Although Mr. Wong left USAPTI in August 2010, there
4 is other information in the affidavit to suggest that the Liews still had possession of the alleged
5 trade secrets a year later. For example, Mr. Liu began to work with USAPTI in or about March
6 2011 and during his employment, "he and other USAPTI employees were instructed by [Mr.
7 Liew] to use ... DuPont information in connection with the design of the TiO2 manufacturing
8 facilities for Chinese customers." (Affidavit, ¶¶ 21, 26; *see also id.*, ¶ 28 (noting that in March
9 2011, a USAPTI employee was seen using DuPont source code pamphlet in USAPTI's
10 offices).) In light of those facts, whether the activity at issue can be seen as a completed act or
11 an ongoing business, the Court concludes that the passage of time in this case does not render
12 Mr. Wong's information stale.

13 The Court also concludes that the Liews' view of the information in the Affidavit
14 regarding payments to Mr. Liu is too narrow. Although SA Ho only obtained one check from
15 Mr. Liu, SA Ho also stated that Mr. Liu had obtained "two other similar paychecks from [Mrs.
16 Liew] that were addressed to his mother." (Affidavit, ¶ 68.) It would not have been
17 unreasonable for the magistrate judge to conclude that the checks were similar not only because
18 they were made payable to Mr. Liu's mother but also because they had been drawn from a
19 check bearing the Liews' home address. Further, Mrs. Liew was listed as USAPTI's owner.
20 Mr. Wong had advised SA Ho that Mr. Liew was not the only USAPTI employee to work
21 remotely. The Affidavit includes information that Mr. Liu's time sheets, and the time sheets of
22 two other employees, were given to Mrs. Liew, who then suggested means of payment to avoid
23 paying taxes. (*Id.*, ¶¶ 15, 66, 69.) It would not be unreasonable for the magistrate judge to
24 conclude from these facts that there was a "fair probability" that evidence relating to USAPTI's
25 business records would be found in the Liews' home.

26 Finally, the Court does not find persuasive the Liews' arguments about SA Ho's training
27 and experience. "[T]raining and experience are factors to be considered," as part of the
28 probable cause determination. *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012).

7

1  It also is incumbent upon the affiant to "explain the nature of [her] expertise or experience and how it bears upon the facts which prompted" her to search. *Id.* at 1139-40 (quoting 2 Wayne Lafave, Search and Seizure § 3.2(c), at 45 (4th ed. 2004) ("Lafave")). "Conclusory statements and a general claim of experience will not suffice." *Id.* (citing Lafave, § 3.2(c), at 45 and *United States v. Thomas*, 211 F.3d 1186, 1189-92 (9th Cir. 2000)).

If SA Ho had merely stated that in her "training and experience," individuals like the Liews kept financial and business records in their home, the Court would find the Liews' arguments more persuasive. However, although she did not include particular details about the nature of her training and experience with the FBI, she did attest to the fact that she had been a special agent since 2001. SA Ho included at least some facts about the nature of that experience, which appear to provide more detail than those included in an affidavit the Ninth Circuit found sufficient in *United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999). In that case, a postal agent stated only that in his "experience and belief ... operators of businesses that involve paperwork typically maintain and carry business records into and out of their offices, in their cars and to and from their residence." *Id.* at 934. The Ninth Circuit found that the affidavit "provided sufficient facts to allow the reasonable conclusion that evidence described in the warrant would be found in [defendant's] home and vehicle." *Id.* Here, by contrast, SA Ho explained that she had participated in searches of homes in other cases involving theft of trade secrets and economic espionage and, during those searches, had located the types of records and materials covered by the warrant. (*Id.* ¶ 105.a.)

Looking at the totality of the circumstances, and according great deference to the magistrate judge's determination, the Court concludes that the facts set forth in SA Ho's affidavit provide a substantial basis for the magistrate judge to conclude that there was a fair probability that evidence of the alleged theft of trade secrets and economic espionage would be found in the Liews' home.

Accordingly, the Court DENIES the motion to suppress on that basis.

//

//

8

**D.	The Warrant is Sufficiently Particular and Is Not Overbroad.**

The Liews move to suppress on the basis that the categories of documents set forth in Attachment B to the warrant are overbroad and not sufficiently particular. "In order for a search to be reasonable, the warrant must be specific." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991); *see also United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). The "specificity" requirement consists of "'two aspects': 'particularity and breadth.... Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" *Id.* (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991)). In the *SDI Future Health* case, the Ninth Circuit made clear that particularity and breadth are two distinct inquiries. *Id.* The Liews appeared to conflate the two issues, and, at the hearing, the Court asked them to clarify which categories in Attachment B they contended were overbroad and which categories they contended lacked particularity. The Liews responded that their focus was on overbreadth. Because the Liews raised both issues in their briefs, the Court shall address each issue in turn.

"Particularity means that 'the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize.'" *SDI Future Health*, 568 F.3d at 702 (quoting *In re Grand Jury Subpoenas*, 926 F.2d at 857). Having reviewed Attachment B, the Court finds that the descriptions of the items to be seized that are "specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). Thus, to the extent the Liews argue that evidence should be suppressed on the basis of insufficient particularity, the Court DENIES their motion.

A warrant is overbroad if it fails to establish "probable cause to seize the particular thing[s] named in the warrant," and courts will invalidate warrants "authorizing a search which exceeded the scope of the probable cause shown in the affidavit." *In re Grand Jury Subpoenas*, 926 F.2d at 857. For example, in the *SDI Future Health* case, the court found that certain categories of items to be seized were overly broad, because the warrant failed "to describe the

9

1   crimes and individuals under investigation" and, as a result, "provided the search team with
2   discretion to seize records wholly unrelated to the" defendants' finances. 568 F.3d at 705. The
3   Ninth Circuit also concluded a warrant was overbroad in *Center Art Galleries-Hawaii, Inc. v.*
4   *United States*, 875 F.2d 747, 750-51 (9th Cir. 1989). In that case, the affidavit provided
5   probable cause to search for evidence of mail and wire fraud involving the sale of forged
6   Salvador Dali artwork. However, the court found that the "government ... failed to limit the
7   warrants to items pertaining to the sale of Dali artwork despite the total absence of any evidence
8   of criminal activity unrelated to Dali." *Id.* at 750. Because approximately 80% of the plaintiff's
9   business concerned non-Dali art, the court also concluded that the "permeated-by-fraud" theory
10  would not justify such a broad seizure of documents. *Id.*; *see also United States v. Kow*, 58
11  F.3d 423, 427 (9th Cir. 1995) (generalized seizure of business records was not justified where
12  affidavit failed to establish that business was permeated by fraud and "none of the ... categories
13  of seizable documents was limited by reference to any alleged criminal activity").

14  Although a warrant may be overbroad on its face, an affidavit may serve to cure that
15  defect if: (1) it is attached to or accompanies the warrant at the time of the search; and, (2) the
16  warrant sufficiently incorporates the affidavit. *United States v. Vesikuru*, 314 F.3d 1116, 1120-
17  21 & n.4 (9th Cir. 2002); *see also Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1026
18  (9th Cir. 2002) ("According to the well settled law of this circuit, a warrant may be construed
19  with reference to the affidavit ... if (1) the affidavit accompanies the warrant, and (2) the
20  warrant uses suitable words of reference which incorporate the affidavit.") (internal quotations
21  and citations omitted).

22  The Ninth Circuit has not specifically addressed what language will qualify as "suitable
23  words of reference," but it has stated that there are "no required magic words." *Vesikuru*, 314
24  F.3d at 1121. In *Vesikuru*, the court found the affidavit was sufficiently incorporated into the
25  warrant where the warrant stated that "[u]pon the sworn complaint made before me there is
26  probable cause to believe that the [specified] crime(s) ... has been committed." *Id.* at 1120.
27  Here, the Warrant includes the following language: "[a]n application by a federal law
28  enforcement officer ... requests the search of the following person or property located in the

10

1 Northern District of California." The Warrant also includes the statement that "I find that the
2 affidavit(s) ... establish probable cause to search and seize the person or property." (Ho Decl.,
3 Ex. 1 (Warrant).) This language is similar to the language used in *Vesikuru*, and the Court
4 concludes that the Warrant usues suitable words of reference, such that it incorporated the
5 Affidavit by reference. Moreover, SA Ho attested to the fact that she had the Affidavit with her
6 during the search. (Ho Decl., ¶ 10.) Although the Liews were present at the time of the
7 execution of the Warrant, they have not controverted that fact. As such, the Court concludes
8 that the Affidavit also accompanied the warrant.

9 This case does not present not a situation where the officers had no information about
10 the nature of the crimes at issue. The Warrant, on its face, incorporated attachment B, which
11 expressly stated that law enforcement officers were authorized to search and seize "[a]ll items
12 and records which constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. §
13 1831 (economic espionage), 18 U.S.C. § 1832 (theft of trade secrets), and 18 U.S.C. § 2 (aiding
14 and abetting), including the items listed below." (Ho Decl., Ex. 1 (Warrant and attachments).)
15 In addition, the Court has concluded that the Warrant incorporated and was accompanied by the
16 Affidavit. The Affidavit, like Attachment B, specifically listed the nature of the criminal
17 activity at issue, and it set forth the elements of those crimes. (Affidavit ¶¶ 4, 105.a.)

18 SA Ho also not only described the individuals under investigation in the Affidavit, she
19 included information about the companies with whom the Liews and USAPTI allegedly had
20 done business, which distinguishes the facts of this case from the facts in *SDI Future Health*.
21 *See id.*, 568 F.3d at 705. Finally, as discussed in the preceding section, the Court has concluded
22 that there was probable cause to search the Liews' home for evidence of the alleged theft of
23 trade secrets and economic espionage. In light of the nature of the crimes at issue, the Court
24 cannot say that any of the categories of documents listed in Attachment B would have exceeded
25 the scope of the probable cause set forth in SA Ho's affidavit.

26 Accordingly, the Court concludes that the Warrant is not overbroad, and it DENIES the
27 Liews' motion to suppress on that basis as well.
28 //

11

**D.      Good Faith.**

Assuming *arguendo* that the warrant is not supported by probable cause, the Court still would deny the Liews' motion. A well established exception to the exclusionary rule "is the 'good faith' exception established by *Leon*, which is satisfied if an officer acts 'in objectively reasonable reliance' on the warrant." *United States v. Underwood*, – F.3d –, 2013 WL 3988675, at *8 (9th Cir. Aug. 6, 2013) (quoting *Leon*, 468 U.S. at 922). The Government bears the burden to show the good faith exception applies. *Id.*

However, the good faith exception is not available if an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon*, 468 U.S. at 923); *see also Messerschmidt v. Millender*, – U.S. –, 132 S.Ct. 1235, 1245 (2012) ("The 'shield of immunity' otherwise conferred by the warrant ... will be lost, for example, where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'") (quoting *Leon*, 468 U.S. at 923).[5] The "threshold for establishing this exception" to the application of *Leon's* good faith exception "is a high one[.]" *Messerschmidt*, 132 S.Ct. at 1245; *see also United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988) (quoting *Leon*, 468 U.S. at 926) ("The test for reasonable reliance is whether the affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause.'")).

The Court finds the Affidavit is not the type of "bare bones" affidavit for which the *Leon* good faith exception would not apply. *See, e.g., Underwood*, 2013 WL 3988675, at *9 (finding good faith exception did not apply where, *inter alia*, affidavit contained no facts to support a conclusion that defendant was a drug trafficker and, therefore, affiant's opinions about drug traffickers in general could not be used to support finding of probable cause); *United States v. Luong*, 470 F.3d 898, 903-04 (9th Cir. 2006) (affidavit lacked any indicia of probable cause where based, in part, on unverified and uncorroborated anonymous tip and no facts to

---

[5] The *Messerschmidt* Court addressed the issue of good faith in the context of qualified immunity, but it reiterated that "'the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer' who obtained or relied on an allegedly invalid warrant." *Messerschmidt*, 132 S.Ct. at 1245 n.1 (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)).

12

1 suggest connection between methamphetamine production and residence at issue); *Hove*, 848
2 F.2d at 139-40 (finding good faith exception did not apply where affidavit offered "no hint as to
3 why the police wanted to search ... residence," and affidavit did not "link this location to the
4 defendant and ... [did] not offer an explanation of why the police believed" evidence would be
5 found there").

6 Rather, for each of the reasons set forth Section B, the Court concludes that, at the least,
7 the Affidavit presents facts over which thoughtful and competent judges could disagree and,
8 therefore, presents a colorable basis that probable cause existed. The Court finds further
9 support in *Messerschmidt* for its conclusion that *Leon's* good faith exception should be applied
10 in this case. In *Messerschmidt*, the officers who obtained approval of the warrant had submitted
11 the application to superior officers and a deputy district attorney, "all of whom approved the
12 application without any apparent misgivings," before submitting it to a magistrate judge for
13 approval. *Messerschmidt*, 132 S.Ct. at 1249. The Supreme Court made clear that approval by
14 superior officers and approval by a magistrate judge may not be dispositive but are relevant to
15 the inquiry of whether an officer's determination that a warrant was valid is objectively
16 reasonable.[6] *Id.* at 1249-50; *see also Underwood*, 2013 WL 3988675, at *8 (noting that
17 *Messerschmidt* clarified that "courts can look beyond the four corners of the affidavit to
18 consider extrinsic factors in the good faith analysis").

19 Like the officers in the *Messerschmidt* case, here SA Ho submitted her Affidavit to the
20 AUSA assigned to this case and to the Assistant Division Counsel at the FBI in San Francisco,
21 each of whom reviewed and approved the Affidavit. (Ho Decl., ¶ 4.) She then submitted the
22 Affidavit to Magistrate Judge Bommer for his review, and he also approved it. (*Id.*, ¶ 5.) On
23 these facts, and based on the Supreme Court's reasoning in *Messerschmidt*, the Court finds that

---

26 [6] Although the Ninth Circuit has found that review and approval by an attorney
27 and a magistrate would not justify a finding of objectively reasonable reliance, it has done so in cases where the affidavit in support of the warrant did not present a colorable basis to find probable cause. *See, e.g., KRL v. Estate of Moore*, 512 F.3d 1184, 1192 (9th Cir. 2008);
28 *Kow*, 58 F.3d at 428-29. That is not the case here, and, thus, the Court finds the reasoning in these cases inapposite.

13

SA Ho "took every step that could reasonably be expected of" her. *Messerschmidt*, 132 S.Ct at 1249.

For these reasons, the Court concludes that if the warrant is not supported by probable cause, the good faith exception would apply. Accordingly, the Court DENIES the motion to suppress on that basis as well.

## CONCLUSION

For each of the foregoing reasons, the Court DENIES the Liews' motion to suppress.

**IT IS SO ORDERED.**

Dated: August 26, 2013



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

14

**APPENDIX**

ATTACHMENT B

ITEMS TO BE SEIZED

All items and records which constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 1831 (economic espionage), 18 U.S.C. § 1832 (theft of trade secrets), and 18 U.S.C. § 2 (aiding and abetting), including the items listed below. As used in this Attachment, the terms "record," "documents," and "materials" include all of the items described in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, paper, digital, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, e-mail, and/or data security devices. The items and records to be seized from the SUBJECT PREMISES (described in Attachment A-1 & A-2) are:

1. Documents and records related to titanium dioxide ($TiO_2$), $TiO_2$ manufacturing facilities, the components used in such facilities, or the process of manufacturing $TiO_2$;

2. Documents and records related to E.I. du Pont de Nemours and Company ("DuPont") and any $TiO_2$ manufacturing facilities owned by or associated with DuPont;

3. Documents and records related to Jinzhou Titanium Industry Co., Ltd; Pangang Group Research Institute Co., Ltd.; Pangang Group Company, Ltd.; Pangang Group Titanium Industry Co.; Pangang Group International Economic and Trading Company, Ltd.; Liaoning Province Petroleum Chemical Industry Planning Design Institute; and other customers of USAPTI;

4. Employment and payment records for individuals (employees, contractors, consultants, and similar) engaged in work on $TiO_2$ technology and manufacturing;

5. Documents and records related to the arrival of foreign nationals into the United States to conduct business with USAPTI, Walter Liew, or Christina Liew;

6. Travel records, including but not limited to passports, visas, airline tickets, boarding passes, and airline ticket receipts;

7. Address books, telephone lists and directories, and telephone records;

8. Financial documents records [*sic*] related to USAPTI, Robert Maegerle, Walter Liew, and Christina Liew, for the time period of January 1, 2007, to the present, including but not limited to tax records, investment account records, bank account records, account applications, account statements, signature cards, withdrawal slips, debit and credit memos, checkbooks, deposit slips, canceled checks, client checks, cashier's checks, financial statements, wire transfer records, wiring instructions, loan records; and credit reports;

9. Tax records for USAPTI, Robert Maegerle, Walter Liew, and Christina Liew, including copies of federal or state tax returns and related tax preparation files, such as Forms W-2, and Forms 1099.

10. Documents and records related to Pinewater Designs, Inc.

11. Items, documents, and effects which show residency and/or dominion and control of the place to be searched, including but not limited to keys, receipts, bills, canceled checks, mail envelopes, rental agreements, telephone records and bills, utility bills, and internet/cable provider statements;

12. Computer equipment, including thumbdrives and/or storage devices used to create or store the items, data, or records referenced in the paragraphs of this Attachment, pursuant to the protocols set forth in Attachment C; and

13. Passwords, password files, test keys, encryption codes, operating manuals, and other information necessary to access the computer equipment, storage devices or data, as limited by Attachment C.

16