MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

JOHN H. HEMANN (CSBN 165823)
PETER B. AXELROD (CSBN 190843)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    john.hemann@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., AND ROBERT MAEGERLE,<br><br>    Defendants. | CASE NO. CR-11-0573-JSW<br><br>UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AMENDED BILL OF PARTICULARS (DKT. 436)<br><br>Date: October 3, 2013<br>Time: 2:00 pm |

    Defendants' motion to compel an amended bill of particulars should be denied. The bill of particulars filed by the United States on July 3, 2013, complied with the Court's order of June 11, 2013, and fairly puts the defendants on notice of the government's theory as to the two attempt charges at issue (Counts 3 and 5). Defendants' motion should be denied because (1) the level of detail they seek is not the purpose of a bill of particulars; and (2) the attempt statutes charged in the Indictment do not require proof that particular items are trade secrets.

    The government's theory of the case is that the defendants attempted to misappropriate the entire DuPont chloride-route process and reasonably believed that the process, including certain components, was a trade secret – described in the Indictment as Trade Secret 1. The government, in its bill of

1  particulars, reaffirmed its theory regarding attempted misappropriation of the entire DuPont chloride-
2  route process and identified the components of that process that the evidence will show defendants
3  attempted convey to their Chinese customers. The government also identified "combinations and
4  compilations" that were part of the overall process.

5        In challenging the government's disclosure, defendants rely on a seriously flawed re-
6  interpretation of the Court's June 11 order. The Court ordered the government to identify the
7  components of the chloride-route process it will argue at trial defendants attempted to misappropriate.
8  Defendants contend that the Court ordered something vastly greater – something that is inconsistent with
9  the attempt allegations in the Indictment and with the government's theory of the case.

10        Defendants are never clear about what particulars they are looking for. They contend they want
11  more detail, but don't come right out and identify the detail they want. That is because they really are
12  seeking discovery and asking the Court to compel the government to explain the ways in which the
13  items listed in the bill of particulars are trade secrets. However, the Court already has ruled discovery is
14  not the purpose of a bill of particulars and held that the government is not required to allege or prove the
15  existence of actual trade secrets in order to prevail on the attempt charges.

16    A. <u>The Attempt Charges</u>

17        Defendants' motion concerns Counts 3 and 5 of the Second Superseding Indictment (the
18  "Indictment"). Counts 3 charges defendants Walter Liew, Christina Liew, and USAPTI with attempted
19  economic espionage, in violation of 18 U.S.C. § 1831(a)(2) & (4), and Count 5 charges defendants
20  Walter Liew, Christina Liew, Robert Maegerle and USAPTI with attempted trade secret theft, in
21  violation of 18 U.S.C. § 1832(a)(2) & (4). Specifically, the Indictment charges that defendants
22  "knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter, photocopy,
23  replicate, transmit, deliver, send communicate, and convey a trade secret belonging to DuPont,
24  specifically Trade Secret 1," knowingly and intentionally attempting to benefit a third party – the PRC
25  government and Pangang Group in the case of Count 3 and a party other than DuPont in the case of
26  Count 5.

27        Neither defendants' motion nor the bill of particulars concern the allegations of or proof related
28  to Trade Secrets 2-5 or the other EEA counts alleged in the Indictment.

B. <u>The Court's Order</u>

This Court denied defendants motion to dismiss and granted, in part, their prior motion for a bill of particulars. 6/11/13 Order ("Order") (Dkt. 338). The Court held, as to the two attempt charges, that the Second Superseding Indictment is sufficiently specific and that the grand jury was not required to allege the misappropriation of actual trade secrets. The attempt counts, the Court explained,

> charge Defendants with attempts to violate the EEA, which requires the United States to prove the Defendants "had culpable intent" and "engaged in conduct constituting a substantial step toward commission of the crime that represents the culmination of that intent." Thus it is the Defendants' intent and their actions that form the "core criminality" of these charges, rather than the existence of the asserted trade secret. That is, unlike the situation where a defendant is charged with a substantive violation of the EEA, Defendants' guilt here depends on their intent and their actions, rather than on "a specific identification of fact."

Order at 8:16-26 (citations omitted).

With regard to the two attempt charges (Counts 3 and 5), the Court ordered the government to file a bill of particulars because defendant Walter Liew remains incarcerated and the Trade Secret alleged in Counts 3 and 5 is broader than the other trade secrets alleged in the Indictment. Order at 11:20-22. Specifically, the Court directed the government to "provide a bill of particulars that sets forth its theory of what Defendants' reasonably believed the trade secret to be, e.g., whether the United States will argue that Defendants reasonably believed the entire chloride-route process to manufacture TiO2 was a trade secret or whether it will argue that Defendants reasonably believed a subset of the process was a trade secret." Order at 11:26 – 12: 2. If the latter – a subset – the Court ordered

> the United States, taking into account the EEA's definition of a trade secret, shall identify with particularity: (1) the "ways and means," described in paragraph 14.a [of the Indictment]; and (2) the "proprietary and non-proprietary components," described in paragraph 14.a; (3) and the resulting compilations and combinations that formed substantial portions of the TiO2 manufacturing process.

Order at 12:2-6.

C. <u>The Bill of Particulars</u>

The government filed a bill of particulars that comports with the Court's order and the evidence. The Court first ordered the government to identify whether it would contend that defendants attempted to misappropriate the entire DuPont chloride-route TiO2 process or subparts of that process. The government directly answered that instruction by asserting in the first paragraph of the bill of particulars

that it will argue at trial "that Defendants reasonably believed the entire, integrated DuPont chloride process to manufacture TiO2 was a DuPont trade secret." Bill of Particulars at 1:23-24 (Dkt. 363).

The Court further ordered that if the government's theory is that defendants' attempted to misappropriate a "subset of the process," the government was required to identify those subsets with particularity as being in one of the three categories of subsets listed by the Court: "ways and means," "components," and "compilations and combinations."

In the second and third paragraphs of the bill of the particulars, the government identified specific "components and subparts" of the DuPont process that defendants believed were DuPont trade secrets. This identification was in compliance with the Court's order to identify the "proprietary and non-proprietary components" of the process identified in paragraph 14.a of the Indictment. In paragraph two of the bill of particulars, the government identifies with particularity twenty-three components and subparts of the process that defendants reasonably believed were DuPont trade secrets. Bill of Particulars at 1:25-2:22. These twenty-three items are based on specific documents and communications between the defendants that have been produced to the defense in discovery and were identified in the government's May 30 disclosure.

The third paragraph of the bill of particulars lists eight specific components of the chloride-route process and asserts that defendants reasonably believed that DuPont trade secrets were integrated into these components. Bill of Particulars at 2:23-18. These eight items are quoted verbatim from an equipment list prepared by defendants for the 100,000 mtpy factory designed by defendants for the Pangang Group. The bill of particulars also identifies Trade Secret 3 as a trade secret that is included within Trade Secret 1. Bill of Particulars, ¶ 5.

The bill of particulars also identifies three "compilations and combinations" (Trade Secrets 2, 4, and 5) which show the ways and means of producing TiO2, and asserts that defendants reasonably believed that these were DuPont trade secrets. Bill of Particulars, ¶¶ 4, 6-7. These documents were described in detail in the Indictment and have been produced and identified to defendants in the discovery process.

///

///

D. The Bill of Particulars Complies with the Court's Order

Defendants purport to be seeking additional detail regarding the items listed in the bill of particulars, focusing on the lists of components in paragraphs 2 and 3 of the bill of particulars. Defendants do not address the compilations and combinations identified in paragraphs 4, 6, and 7 or the trade secret identified in paragraph 5.

Other than repeating the language of the Court's original order in the conclusion of their memorandum, defendants do not provide any detail regarding the sort of additional specificity they are seeking. The reason for this is obvious: They are either asking the government to identify specific evidence or seeking an explanation as to how and why the listed items are actual trade secrets. If the former, that is not the purpose of a bill of particulars, as the Court has already stated. If the latter, the government is not required to allege or prove that the items that are the subject of Counts 3 and 5 – the attempt charges – are actual trade secrets, as the Court has already held.

    1. Defendants Are Using The Bill Of Particulars As A Discovery Device.

The bill of particulars filed by the United States comports with the Court's order and reflects the theory of the government's case. Defendants declare themselves "disappointed" by the bill of particulars, primarily, it appears, because it is long and contains too many components. Def. Mem. at 2 Defendants complain that the bill of particulars "simply lists designs, systems, equipment, components, and processes that encompass the entire chloride-route process and most of its subparts." *Id.*

Defendants misapprehend the purpose of a bill of particulars. Defendants are looking for a shortcut around rolling up their sleeves and examining at the evidence. The components of the DuPont process that are listed in paragraphs 2 and 3 of the bill of particulars are based on specific documents and communications between the defendants that have been produced in discovery and identified as exhibits. They will be on the exhibit lists exchanged between the parties in October and on the filed exhibit list filed with the Court in November.

As the Court has held, "a defendant may not use a motion for a bill of particulars to obtain full discovery of the government's evidence." Order at 10:14-15, *citing United States v. Geis*, 597 F.2d 1170, 1181 (9th Cir. 1979). Defendants have come back to the Court for precisely this purpose. What

they are looking for is an exposition of the evidence; they are fishing for evidentiary detail under the cover of a request for a bill of particulars.

Defendants contend that the government has identified too many documents in discovery for their experts to review – some 13,000 according to their count.  Thirteen thousand, however, includes all of the potential exhibits in the case and not all are technical documents or communications between the parties.  The documents the government relied upon to formulate the lists in paragraphs 2 and 3 of the bill of particulars, moreover, are located in the original paper files to which defendants have a standing invitation to review and in the electronic communications that are contained in searchable electronic files.

Defendants are asking the Court to order the government to identify all of the evidence on which they will rely at trial and to explain how that evidence relates to the government's theory of the case.  Their motion, in substance, is a request for interrogatories, not a proper request for a bill of particulars.  The various questions they posit throughout their memorandum, *e.g.* Def. Mem. at 8:14-23, are answered by the discovery that has been provided (which in the case of the items listed in paragraph 3 consists of a document written by defendants).  A bill of particulars is not the proper vehicle with which to obtain answers – a review of the discovery is the appropriate vehicle.

2. <u>The Particulars Defendants Seek Are Not Required By The Attempt Statutes At Issue.</u>

If not discovery of the specific evidence on which the government intends to rely to prove its case, defendants are seeking detail surrounding whether the items listed in the bill of particulars are actual trade secrets.  Defendants adhere to the mistaken premise that the bill of particulars is about identifying actual trade secrets.  The bill of particulars filed by the government, defendants claim, "leaves open the possibility that the Government can argue that literally *any* minor feature of a large component of the chloride-route process, such as a single flow rate or temperature in the chlorinator, ***is the misappropriated trade secret***, without any warning to Defendants." Def. Mem. at 9 (bold italics added).

The Indictment does not allege that any of the items listed in sections 2 and 3 of the bill of particulars are, in fact, misappropriated trade secrets and the Court has held that this is not required.  The bill of particulars simply makes clear that these are components of the DuPont chloride-route process

that the evidence will show defendants believed to be trade secrets and attempted to convey to the Chinese companies. At issue are Counts 3 and 5, which allege that defendants *attempted* to copy, duplicate, sketch, draw, replicate, transmit, deliver, send, communicate, and convey the DuPont chloride-route manufacturing process, identified as Trade Secret 1, to Chinese state-owned companies. The Court has held that the government need not allege or prove the existence of actual trade secrets in order to support the attempt charges alleged in the Indictment.

The government's theory as to Counts 3 and 5 is that defendants obtained confidential trade secret information from DuPont and used that information to design chloride-route factories for Chinese state-owned companies. The DuPont information was not publicly available and the Chinese companies had been unable to obtain information necessary to design a chloride-route factory from other sources. As to Counts 3 and 5 specifically, the Indictment alleges and the government will prove that defendants attempted to copy, duplicate, sketch, draw, replicate, transmit, deliver, send, communicate, and convey DuPont trade secrets to Chinese state-owned companies by designing for them TiO2 plants that could not be designed based on publicly-available information. The bill of particulars is very clear in listing the components that were copied, duplicated, sketched, drawn, replicated, transmitted, delivered, sent, communicated and conveyed based on the DuPont trade secrets defendants obtained. The items in section 2 of the bill of particulars are based on documents and communications between the defendants -- they are not simply a random list of components of TiO2 factories. The items in section 3 are based on an equipment list created by defendants. The bill of particulars also identifies three specific compilations of DuPont trade secrets that are alleged to be part of Trade Secret 1 and a separate trade secret that is part of Trade Secret 1. These items have been provided to the defense in discovery and identified specifically as part of the governments Rule 16 disclosures.

Thus, the bill of particulars makes clear that the government intends to prove under subsections (a)(2) and (a)(4) of sections 1831 and 1832 that (1) defendants attempted to copy, duplicate, etc. without authorization the entire DuPont TiO2 process (paragraph 1); (2) defendants attempted to copy, duplicate, etc. a laundry list of specific components that were part of that process (paragraphs 2 and 3); and (3) defendants attempted to copy, duplicate, etc. several specific trade secrets, including three compilations and combinations of trade secrets (paragraphs 4-7). As the Court has held, under the EEA's attempt

statutes, there is no requirement that the government allege or prove that the items were trade secrets, though the government intends to prove that Trade Secrets 2-5 are actual trade secrets.

Defendants, using the fume disposal system as an example, argue that this is a complex process and neither the bill of particulars nor the government's experts "specify which part of the fume disposal system was allegedly thought by Defendants to be secret or unique." Def. Mem. at 7:18-20. Defendants point out that the government's experts do not even mention the fume disposal system. *Id.* But the Court did not order the government to "specify which part" of a particular component "was allegedly thought by Defendants to be secret or unique." The Court ordered the government to "identify with particularity" the "proprietary and non-proprietary components" that make up Trade Secret 1 as alleged in paragraph 14.a of the Indictment. The fume disposal system, for example, is one of those components – and the government's theory is that defendants understood that they had illegally stolen that system from DuPont. The Indictment does not allege and the Government is not required to prove that DuPont's the fume disposal system is a trade secret. The government's experts will not offer opinions that the DuPont fume disposal system is a trade secret – whether it is or is not. The proof will be that the DuPont TiO2 process, including its components, were not available publicly; that trade secrets showing the process and its components were obtained by the defendants; and that the defendant attempted to convey that secret process and its components to Chinese state-owned companies in exchange for millions of dollars.

The other example to which defendants point – the degassing screw conveyor – illustrates not lack of specificity by the government, but exemplifies either disenguousness or lack of preparation by the defense. This item is quoted directly from an equipment list prepared by USAPTI and reviewed by defendants in September 2009. Defendants feign ignorance as to what it is, but it is not only specific but it is recited in defendants' own words and taken from one of their own documents. The government's identification of this item, like the other items listed in section 3, alerts the defendants to precisely the components that will be the subject of the government's proof. As with the fume disposal system, the government's theory is that defendants understood that they had copied the screw conveyor from DuPont and conveyed it without authorization to their Chinese customers.

Inexplicably, defendants claim that "the Government may argue that Defendants believed a particular combination of multiple elements are a trade secret, *but the Bill of Particulars nowhere indicates what that combination might be.*" Def. Mem. at 9:25-26 (emphasis in original). Quite to the contrary, the bill of particulars specifically identifies the three compilations and combinations the government intends to prove. Bill of Particulars, ¶¶ 4, 6-7.

The truth is that defendants simply do not want to try the attempt charges as they are alleged in the Indictment. Defendants would prefer a trial in which they endeavor to mire the jury for weeks in patents and technical details regarding components like the fume disposal system. Defendants would prefer to put the victim, DuPont, in the uncomfortable position of having myriad details regarding their process exposed to scrutiny at trial. Defendants would prefer a trial in which the jury's attention is shifted from their own inculpatory statements to a battle between retained experts over technical minutiae. Defendants, as they have stated, view this case as a civil dispute and would like to treat it as such. But it is not.

There is substantial evidence that the defendants believed that the entire DuPont process is a trade secret, as well as particular components of that process that they attempted to convey to their Chinese customers. It would be wasteful of resources, detrimental to DuPont, and unnecessary for purposes of revealing defendants' "core criminality," to spend weeks and months of trial focused on the subparts of the components identified in the bill of particulars when the evidence of defendants' belief and intent regarding these items is so clear. That evidence defendants seek through the bill of particulars is irrelevant to the attempt charges alleged in the Indictment.

Defendants asked for and the Court ordered specifics regarding the components and compilations on which the government's proof will focus. The components and compilations are identified in the bill of particulars and the documents on which the listed items were based have been produced and then separately identified to the defendants. The particulars are consistent with the evidence and with what the government believes it will be able to prove regarding defendants' reasonable beliefs regarding DuPont trade secrets. No more is required.

///

///

E. Conclusion

Defendants' motion to compel an amended bill of particulars should be denied.

Respectfully submitted,

MELINDA HAAG
United States Attorney

*John H. Hemann*

Dated: September 12, 2013

JOHN H. HEMANN
PETER B. AXELROD
Assistant United States Attorneys