MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

JOHN H. HEMANN (CSBN 165823)
PETER B. AXELROD (CSBN 190843)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     FAX: (415) 436-7234
     john.hemann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR-11-0573-JSW |
| | ) |
| Plaintiff, | ) UNITED STATES' NOTICE OF MOTION AND |
| | ) MOTION TO EXCLUDE DEFENDANTS' EXPERT |
| v. | ) WITNESSES GERALD COX AND GORDON |
| | ) KLEIN |
| WALTER LIEW, CHRISTINA LIEW, | ) |
| ROBERT MAEGERLE, AND USA | ) Date:  November 14, 2013 |
| PERFORMANCE TECHNOLOGY, | ) Time:  2:00 pm |
| | ) |
| Defendants. | ) Hon. Jeffrey S. White |
| | ) |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................2

I.      BACKGROUND ...........................................................................................................3

     A.    Tax and Bankruptcy Charges........................................................................3

     B.    Evidence Regarding the Singapore Companies...................................................4

     C.    The Expert Reports .....................................................................................6

II.     LEGAL STANDARDS ................................................................................................9

III.    ARGUMENT ...........................................................................................................10

     A.    Proposed Expert Gerald Cox ......................................................................10

     B.    Proposed Expert Gordon Klein....................................................................13

          1.    The Testimony Related to the Tax Charges Should be Excluded ..........13

               a.    The testimony does not satisfy Rule 702(b) because it is not
supported...............................................................................13

               b.    Klein's methodology did not include a full investigation of the
relevant facts or application of key legal principles .................................14

               c.    Klein's testimony is likely to mislead and confuse the jury .....................17

          2.    Klein Cannot Testify About Bankruptcy Law .......................................18

IV.    CONCLUSION.........................................................................................................20

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Boulware v. United States*, 552 U.S. 421 (2008) ..................................................... 17

4

5

*Cheek v. United States*, 498 U.S. 192 (1991)......................................................... 21

6

*Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955) ................................... 15

7

*Commissioner v. Kowalski*, 434 U.S. 77 (1977) .................................................... 15

8

*Daubert v. Merrell Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................... 2, 10, 12, 13

9

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ..................... 20

10

*Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2009).................................. 18

11

12

*Mullins v. United States*, 334 F. Supp. 2d 1042 (E.D. Tenn. 2004) .......................... 19

13

*Reese v. United States*, 24 F.3d 228 (Fed. Cir. 1994)............................................ 15

14

*Rx.com, Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546 (S.D. Tex 2006)................... 12

15

*Sollberger v. Comm'r*, 691 F.3d 1119 (9th Circ. 2012) ......................................... 17

16

*Stelly v. Commissioner*, 761 F.2d 1113 (5th Cir. 1985)......................................... 16

17

*United States v. Bishop*, 264 F.3d 535 (5th Cir. 2001) ......................................... 12

18

*United States v. Curtis*, 782 F.2d 593 (6th Cir. 1986) ......................................... 20

19

*United States v. Hernandez-Meza*, 720 F.3d 760 (9th 2013)................................... 19

20

*United States v. Powell*, 955 F.2d 1206 (9th Cir. 1992) ........................................ 21

21

22

*United States v. Quinn*, 18 F.3d 1461 (9th Cir. 1994) .......................................... 10, 15

23

*United States v. Samara*, 643 F.2d 701 (10th Cir. 1981)........................................ 12

24

*United States v. Scholl*, 166 F.3d 964 (9th Cir. 1999) ......................................... 10, 11, 13

25

### FEDERAL STATUTES

26

18 U.S.C. § 152................................................................................... 2

27

26 U.S.C. § 61................................................................................... 13, 14

28

26 U.S.C. §§ 62 ................................................................................................................. 14

26 U.S.C. § 704 ................................................................................................................... 9

26 U.S.C. § 7206(1) ............................................................................................................ 2

## FEDERAL RULES

Fed. R. Evid. 401 ............................................................................................................... 11

Fed. R. Evid. 402 ............................................................................................................... 11

Fed. R. Evid. 403 ..................................................................................................... 3, 12, 13

Fed. R. Evid. 702 .............................................................................................. 2, 10, 11, 13

Fed. R. Evid. 702(a) ........................................................................................................... 11

1   PLEASE TAKE NOTICE that on November 14, 2013, at 2:00 p.m., before the Honorable Jeffrey S.

2   White, United States District Court Judge, United States District Court, 19th Floor, Courtroom 11, 450

3   Golden Gate Avenue, San Francisco, California, the United States of America ("United States"), will

4   and hereby does move the Court to exclude expert testimony from two witnesses that have been

5   proffered by defendants: Gerald Cox and Gordon Klein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

7   Defendant Walter Liew ("Liew") is charged in the Second Superseding Indictment with five

8   counts of making and subscribing to false federal income tax returns, in violation of 26 U.S.C. §

9   7206(1). He is also charged with three counts of bankruptcy fraud, in violation of 18 U.S.C. § 152. The

10  gravamen of the charges is that Liew's companies received income from contracts they had with

11  Chinese companies, and that Liew did not report the income and the contracts to the IRS or the

12  bankruptcy court.

13  Liew has disclosed two experts who will offer testimony related to the tax and bankruptcy

14  charges. The testimony of these experts should be excluded under Fed. R. Evid. 702 and *Daubert v.*

15  *Merrell Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), for the following reasons:

16  • The testimony of Gerald Cox will not assist the trier of fact to understand the evidence or

17      determine a fact in issue. The issue in this case is *unreported* income, and Cox has reviewed and

18      accounted for only *reported* income.

19  • The testimony of Cox and Gordon Klein is inadmissible under Rule 702(b) because it is not

20      based on sufficient facts or data. Both Cox and Klein rely on assumptions regarding the

21      Singapore companies to which Liew directed money, but have not examined a single piece of

22      evidence regarding the nature, ownership, or control of those Singapore companies. The central

23      relevant assumption for both Cox and Klein – that the Singapore companies were third-parties

24      distinct from Liew – is not based on sufficient facts or data and is, in fact, demonstrably false.

25  • The testimony of Cox and Klein is inadmissible under Rule 702(c) because it is not the product

26      of reliable principles and methods. Neither Cox nor Klein undertook a review of the available

27      evidence related to ownership or control of the Singapore companies, even though both assume

28

in their opinions that the Singapore companies are not owned and controlled by Liew and his wife, Christina Liew.

- The testimony of Cox and Klein is inadmissible under Fed. R. Evid. 403 because it is likely to confuse the issues and mislead the jury.  Through these witnesses, Liew is attempting to create the impression that the money he sent to the Singapore companies was sent to companies independent of his control that were providing something of value to the projects on which he was working.  There will be no evidence at trial that the Singapore companies were independent third parties.  The evidence will be that Liew and Christina Liew, both directly and through their relatives, owned and controlled the Singapore companies and that those companies did not provide any goods or services.

- Klein's testimony regarding tax law invades the province of the Court to instruct the jury on the law.  Klein purports to offer his opinion regarding the legal treatment of certain funds under the tax laws of the United States.  The Ninth Circuit has held this form of expert opinion to be inadmissible because it is for the Court to instruct the jury on the law.

- The testimony of Klein is inadmissible regarding bankruptcy matters because (1) Klein is not a bankruptcy expert, (2) his legal conclusions regarding bankruptcy invade the province of the Court to instruct the jury on the law, and (3) his testimony regarding Liew's state of mind is irrelevant and lacks foundation.

I.    **BACKGROUND**

   A.    **Tax and Bankruptcy Charges**

   Walter Liew was charged in the Second Superseding Indictment with five counts of filing false tax returns in violation of 26 U.S.C. § 7206(1) for 2006 through 2010 (Counts Fifteen through Nineteen) and three counts of bankruptcy fraud in violation of 18 U.S.C. § 152 (Counts Twenty through Twenty-Two) related to Performance Group's 2009 bankruptcy.  (Dkt. No. 269).

   The government expects that the evidence will show that Liew signed the corporate income tax returns of Performance Group and USAPTI as President and CEO for the years 2006 through 2010.

1   Those returns were false as to a material matter because the returns substantially understated the

2   company's gross receipts.

3       Walter Liew knew these returns were false because all of the unreported gross receipts were

4   payments from his Chinese customers on contracts they had with either Performance Group and later

5   USAPTI. (With a few exceptions, the wire transfer records reference specific contracts that Walter

6   Liew executed and that we have in evidence.) The funds came from China into domestic banks (*e.g.*,

7   Mega Bank or California Pacific Bank) and were subject to Walter Liew's control and direction, and

8   Liew redirected these funds out of the United States to shell companies in Singapore, typically within a

9   day or two of their transfer into the United States. The evidence will include documents and testimony

10  establishing that Liew directly controlled the assets and bank accounts of the Singapore companies. The

11  evidence also will prove that Singapore companies did not perform work under the contracts between

12  Performance Group and USAPTI and their PRC customers.

13      Liew knew the returns were false because of his role in preparing them and providing

14  information to the return preparer. According to the return preparer Phillip Guan, Liew did the

15  bookkeeping for Performance Group and USAPTI until 2009, at which point Guan started doing the

16  books. Guan described the process of preparing the returns as follows: Liew would come to Guan's

17  office with his Quickbooks and binder of information; Guan would review the records in Liew's

18  presence and make any necessary adjustments; when Guan made an adjustment he would explain it to

19  Liew and have Liew initial the change; Guan would then prepare the return in Liew's presence and

20  review it with him to make sure Liew understood it and answer any questions. Prior to preparing the

21  returns, Liew confirmed that all of his revenue was included in his business deposits. Guan's records do

22  not include the millions of dollars of wire transfers that Liew did not report to the IRS. Liew's under-

23  reporting caused a tax loss of $6,073,591 for the five-year period of 2006 through 2010.

24      **B.    Evidence Regarding the Singapore Companies**

25      The defense experts did not consider evidence that bears directly on their opinions – evidence

26  related to the true ownership and control of the Singapore companies. This evidence, summarized

27  below, was provided to the defense in discovery.

28

The government produced evidence in discovery that Walter Liew owns and controls the Singaporean entities described in the expert disclosures. The evidence provided to the defense also includes the contracts between Performance Group and USAPTI and the customers of those entities. As both of the expert disclosures by the defense acknowledge, the payments to Mega Bank and California Pacific Bank were for services rendered by Performance Group or USAPTI. The records obtained in the course of this investigation reveal that Walter Liew is directly connected to the Singaporean entities that received the unreported income and those entities engaged in no business activities. (Ho Decl. ¶¶ 9, 20, 22, 33-34, 40-41, 46-47, 53). The defense experts did not review any review of that information.

The evidence includes information regarding the six Singaporean entities that received the redirected funds from Mega Bank. (Ho Decl. ¶¶ 7-55). The Singaporean entities include Huadong, Lawrence, ESI, Dongbei, Huan Qu, and LHV. *Id.* Mega Bank received money that was subsequently paid to these entities, and also to accounts held in the name of Walter Liew, USAPTI or Performance Group. As noted by the expert reports, only the funds deposited in domestic accounts controlled by Walter Liew were reported as gross receipts on USAPTI's or Performance Group's tax returns.

At Walter Liew's direction, one of the first Singaporean entities that received funds, Huadong, received payments from Mega Bank during 2006-2009. (Ho. Decl. ¶¶ 9-17). Walter Liew was listed as an officer of Huadong and its sole owner. (Ho Decl. ¶ 7) Walter Liew also had signature authority over the Huadong bank account that received over five million dollars in wire transfers from Mega Bank. (Ho. Decl. ¶¶ 8-17). In 2008, Walter Liew authorized a transfer of $750,000 from Huadong's Singapore account to an HSBC account in Hong Kong. (Ho. Decl. ¶ 14). The HSBC account receiving the $750,000 was in the name of Qiao Hua, who is Christina Liew's father, but Walter Liew had signature authority over that HSBC account. (Ho. Decl. ¶ 14). Later in 2008, transfers in the amounts of $359,972 and $1,250,000 were transmitted from Mega Bank to the Huadong account controlled by Walter Liew, and thereafter to the Hong Kong HSBC account in Qiao Hua's name for which Walter Liew had signature authority. (Ho. Decl. ¶¶ 15-17). Huadong's corporate status was "struck off" on June 6, 2009. (Ho. Decl. ¶ 7).

The second entity, Lawrence Process Engineers (Lawrence), was solely owned by Christina Liew. (Ho. Decl. ¶ 51). In 2006, Performance Group transferred over $1,700,000 to Lawrence's bank account in Singapore.

The third entity, ESI, reported that Qiao Mu was a director and sole owner of that entity. Qiao Mu is Christina Liew's brother. (Ho. Decl. ¶ 19). No information was obtained showing that either Huadong or ESI conducted any business. (Ho. Decl. ¶¶ 9, 20). Evidence seized from the Liew's residence shows that ESI and Huadong have the same mailing address, which is also the address listed on Qiao Hua's (Christina Liew father's) HSBC account that was used to receive money. (Ho. Decl. ¶ 21). After money was sent from Mega Bank to ESI, the funds were sometimes transferred to accounts held by relatives of Christina Liew. (Ho. Decl. ¶ 26).

The fourth entity, Dongbei, identified Walter Liew's niece, Elaine Chin, as one of its directors. (Ho. Decl. ¶ 31). It also shared an address in China that was found on bank statements in the name of Walter Liew seized from the Liews's residence. (Ho. Decl. ¶¶ 31-32). That address is also listed on the accounts held by Qiao Hua (Christina Liew's father) – and Walter Liew had signature authority over that account. *Id*. In 2010, $702,000 was wired from Dongbei's account in Singapore to a Bank of China acoount in the name of one of Christina Liew's brothers, Qiao Ning. (Ho Decl. ¶ 35)

The fifth entity, Huan Qu, claims to have the same officers as Dongbei, including Walter Liew's niece, Elaine Chin, and the two entities were registered to do business on the same day. (Ho. Decl. ¶¶ 38-39).

The sixth entity, LHV, had the same address as Huadong and ESI, and the same officers as Dongbei and Huan Qu. (Ho. Decl. ¶¶ 44-46).

### C.   The Expert Reports

The defense experts are offered in an effort by the defense to establish that the cash sent by Liew to the Singapore companies was receipt of Performance Group or USAPTI. Both reports include the false assertion, an assertion that was untested by either expert, that Liew and his companies were merely nominees or escrow agents charged with the ministerial task of sending money to independent companies in Singapore who were owed the money under the contracts with the PRC companies.

1    The defense provided a report signed by Gerald Cox, a former IRS special agent.  Cox notes was

2    "retained to examine documentary evidence" and "opine whether the tax returns filed on behalf of

3    [USAPTI and Performance Group] are consistent with (1) the Quickbook accounting system kept by

4    USAPTI, Performance Group and/or their accountant(s); and (2) sums kept in and disbursed to the banks

5    accounts of USAPTI and Performance Group."  (Cox Report at 1, ¶ 5).

6    Cox's report recites facts consistent with the stated purpose of his report.  Cox states that he

7    examined USAPTI's and Performance Group's Quickbooks records.  Based on his review, Cox learned

8    that the gross receipts reported on the Quickbooks records matches the amount reported on the tax

9    returns.  (Cox Report at p. 2, ¶ 3).  Cox also examined USAPTI's and Performance Group's domestic

10   bank accounts.  (Cox Report at p. 2, ¶ 4).  Cox concludes that USAPTI and Performance Group

11   reported the gross receipts paid into domestic (U.S.) bank accounts.  (Cox Report at p. 2, ¶ 4).  Finally,

12   Cox notes that some money was paid related to work performed by USAPTI and Performance Group

13   that was paid to (1) domestic or (2) foreign destinations.  (Cox Report at p. 2, ¶ 5).

14   Cox also notes that he was retained to "rebut opinions and testimony offered by Internal Revenue

15   Service Agent Meiqin Jiang," and he makes observations regarding the transactions at issue in the case.

16   (Cox Report at p. 1 & 4).  As related to the latter point, Cox posits that the transactions (where

17   Defendant Walter Liew directs payments of unreported income to offshore entities) "*resemble*

18   transactions conducted by trustees, … such as escrow companies."  (Cox Report at p. 5, ¶ 3) (emphasis

19   added).  Cox goes on to observe that "Mega Bank" is acting as "trustee" in this circumstance because a

20   bank "ordinarily would not permit an individual or corporate entity to receive funds" without placing

21   those funds "in an account belonging to that individual or entity."  (Cox Report at p. 5, ¶ 3).

22   The second proffered expert witness, Gordon Klein, was a law school professor and is currently

23   a professor at a business school.  In his resume, Mr. Klein notes various financial and law classes that he

24   has taught related to accounting.  His background does not indicate any experience or expertise related

25   to bankruptcy.

26   Liews' disclosure proposes that Mr. Klein will testify regarding: (1) the proposition that

27   USAPTI's and Performance Group's gross receipts does not include "sums received on behalf of other

28

1   entities or individuals;" (2) USAPTI's and Performance Group's gross income does not include sums

2   that were the property of partnerships or joint ventures; (3) under accounting principles, USAPTI and

3   Performance Group did not own sums that were omitted from the bankruptcy schedules filed related to

4   Performance Group; and (4) "By initiating bankruptcy proceedings, Mr. Liew opened up his business

5   activities to investigation…" (Klein Report at pp. 2-5).

6          Klein acknowledges in his report that it is his "understanding … that sums were received at

7   Mega Bank and California Pacific Bank periodically from customers for whom Performance Group

8   and/or USAPTI had performed services." (Klein Report at p. 3, ¶ 3).  In all cases, Mega Bank and

9   California Pacific Bank held the funds temporarily until Walter Liew directed either bank to wire the

10  funds elsewhere.  Mr. Klein explains in the body of his report some of those funds were sent overseas,

11  while in a footnote he explains that Walter Liew also directed the banks to send some funds to domestic

12  accounts held by Liew, USAPTI, or Performance Group.  (Klein Report at p. 3, ¶ 3).  Klein concludes

13  that "*If* all of the … funds transferred to Singaporean entities were received by Mr. Liew, Performance

14  Group, and/or USAPTI as agents or authorized representatives of [those] entities, [he] is unaware of any

15  gross income that Performance Group or USAPTI failed to account for on their tax returns." (Klein

16  Report at p. 3) (emphasis added).

17         Klein asserts as an alternative that "*if* Performance Group and USAPTI were partners or joint

18  venturers with the Singaporean entities…, USAPTI and Performance Group did not need to report as

19  gross income proceeds that constituted partnership revenues or receipts." (Klein Report at p. 4, § V)

20  (emphasis added).  Klein's report vaguely describes partnership tax, and then posits that the payments to

21  various offshore entities are consistent with the parties having entered a partnership agreement that

22  entitled these offshore partners to a distributive share of partnership gross proceeds…" (Klein Report at

23  p. 5).[1]

24  _____

25     [1] The report fails to specify whether all of the funds delivered to Mega Bank and California Pacific Bank
    constitute "partnership gross proceeds" or if the partnership proceeds are limited to the sums paid to the

26  Singaporean entities.  In the latter case, USAPTI's and Performance Group's share of the proceeds is zero
    pursuant to 26 U.S.C. § 704, and USAPTI's and Performance Group's interest in the partnership is equal to that

27  distributive share, which is nothing according to the report.  Moreover, USAPTI and Performance Group reported
    the sums temporarily held by Mega Bank and California Pacific Bank and transmitted to domestic accounts as

28

Klein concludes that "[a] party cannot wrongfully fail to disclose a corporation's assets or transfers of property *if* the entity does not own such assets or property." (Klein Report at p. 5, § VI) (emphasis added). Mr. Klein based this assertion of the hypothesis that Performance Group and USAPTI did not own the money transmitted to various Singaporean entities. Finally, Mr. Klein discloses that he will testify that "when an individual or entity files for bankruptcy, the filer subjects itself to the potential scrutiny of the bankruptcy court, the bankruptcy trustee, and its creditors…" (Klein Report at p. 5, § VII). Consequently, Mr. Klein claims that by initiating bankruptcy proceedings Mr. Liew "opened up the business activities" of Performance Group and USAPTI to "investigation." (Klein Report at p. 6).

Both of the expert disclosures by the defense acknowledge that the payments to Mega Bank and California Pacific Bank were for services rendered by Performance Group or USAPTI. The records from Singapore and search warrant evidence reveals that Walter Liew owned and controlled the entities that received the unreported income. The defense experts' methodology did not include any review of the Singapore information.

## II.   LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:"

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

---

gross receipts of the corporation, not partnership income on a Form K-1. In fact, the Forms 1120 for 2008-2010, at Schedule K, for USAPTI required disclosure of an ownership interest in either domestic of foreign partnerships. None were disclosed.

Fed. R. Evid. 702.  In exercising its gatekeeping function under Rule 702, a district court must determine whether the proposed expert testimony is (1) relevant, and (2) reliable.  *United States v. Quinn*, 18 F.3d 1461, 1465 (9th Cir. 1994) (citing *Daubert v. Merrell Dow Phameceuticals, Inc.,* 509 U.S. 579, 589 (1993)).  Moreover, the first prong, also known as the "fit requirement," which "goes primarily to relevance," is not solely a relevance inquiry; it also involves an evaluation of the danger of unfair prejudice under Federal Rule of Evidence 403.  *See id.* at 595.

Even if testimony meets both of these criteria, a district court may nonetheless exclude it if its probative value is substantially outweighed by the concerns set forth in Federal Rule of Evidence 403, including "confusing the issues" and "misleading the jury."  *Daubert*, 509 U.S. at 595; *United States v. Scholl,* 166 F.3d 964, 971 (9th Cir. 1999).

Under this framework, the Ninth Circuit has held expert testimony regarding the "state of tax and accounting law" is an "inappropriate matter for expert testimony."  *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999).  The lesson of *Scholl* is that the "judge instructs the jury in the law," and experts do not.  *Id.*  Moreover, in *Scholl* the Ninth Circuit held that the trial court properly excluded proposed expert testimony related to the taxpayer/defendant's record-keeping practices.  *Id.*  In doing so, the Ninth Circuit noted that proposed testimony regarding the defendant's records "would not have assisted the trier of fact to understand the evidence" because the jury was capable of doing after receiving instructions from the court.  *Id.*

## III.   ARGUMENT

Applying these standards, Liew's proposed experts should be precluded from testifying.  First, the proposed testimony of Gerald Cox does not meet the "fit requirement" because the statements in his report have no genuine nexus to any factual dispute in the case.  Second, Mr. Klein's proposed testimony fails to meet the standard set forth in Fed. R. Evid. 702, is not relevant, and has the tendency to mislead the jury and usurp the Court's role of instructing the jury on the law.

### A.      Proposed Expert Gerald Cox

Only relevant evidence is admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact that is of consequence in the case "more or less probable than it would be

without the evidence." Fed. R. Evid. 401. In the case of expert testimony, the Court must determine whether the proposed testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Advisory Committee Notes to Rule 702 further explain the relevancy requirement as it relates to expert testimony:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Fed. R. Evid. 702, Advisory Committee Notes (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952)). Based on his report, Cox will testify that Performance Group and USAPTI reported gross income in an amount equal to the gross income recorded in the companies' books.

This "expert" testimony is inadmissible because it is unrelated to any issue in the case. Liew is charged with failing to report income that was *not* recorded in the companies' books because it had been diverted by Liew to companies he owned and controlled in Singapore for the purpose of hiding the income. Thus, no fact of consequence is "more or less probable than it would be without the evidence" stated in the report of Gerald Cox. Fed. R. Evid. 401. Cox expresses no opinion based on any "scientific, technical, or other specialized knowledge" that will assist the trier of fact in understanding the *unreported income*. Fed. R. Evid. 702. Cox does nothing more than observe that numbers were transposed from Quickbooks to the tax returns. The numbers matched – a fact to which the government would stipulate. The opinion, however, is unnecessary as no expertise is required[2] and the conclusion will not assist in understanding a fact at issue or logically advance a material aspect of the Defendant's case. *Daubert*, 509 U.S. at 591-92. The fact that Walter Liew's accountant correctly transposed the numbers from Quickbooks onto the tax returns is irrelevant. In fact, failing to provide one's accountant with complete and accurate information is evidence of willfulness. *United States v. Bishop*, 264 F.3d 535, 552 (5th Cir. 2001); *United States v. Samara*, 643 F.2d 701, 703 (10th Cir. 1981).

---

[2] *Rx.com, Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 554 (S.D. Tex 2006) (striking expert stating that contained only arithmetic computations that were not "helpful to the trier of fact.")

1    In that regard, Cox does not contend the tax return preparer made any errors, or that he was

2    provided with complete information.  Cox only confirms what the tax return preparer will say: that he

3    relied on the information Liew gave him.  The critical inquiry relates to the unreported gross receipts

4    that are the subject of foreign-directed wires on the part of Walter Liew. Cox's testimony is thus

5    irrelevant.  As described by the Supreme Court, the relevance prong is designed to weed out testimony

6    which, even if accurate, does not logically advance a material aspect of the proponent's case.  By way of

7    example, the Court explained,

8           The study of the phases of the moon, for example, may provide valid scientific 'knowledge'
            about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will
9           assist the trier of fact. However (absent creditable grounds supporting such a link), evidence
            that the moon was full on a certain night will not assist the trier of fact in determining
10          whether an individual was unusually likely to have behaved irrationally on that night. Rule
            702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as
11          a precondition to admissibility.

12   *Daubert*, 509 U.S. at 591-92.

13   Cox's testimony also would not satisfy Rule 702(b) or (c), and has the potential to confuse the

14   issues and mislead the jury.  Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595; *United States v. Scholl*, 166

15   F.3d 964, 971 (9th Cir. 1999).  Aside from proposing to testify that the tax returns at issue reported gross

16   receipts deposited in domestic accounts, and did not report foreign-deposited income, Cox opines that

17   Mega Bank "appears" to have been disbursing funds "to overseas entities participating in the projects"

18   and "appears" to have been acting as a "trustee" because the transactions "resemble transactions

19   conducted by trustees … such as escrow companies."  (Cox Report at p. 4).

20   This testimony should be barred for several reasons.  First, Cox did not base these statements on

21   any "facts or data, and the testimony therefore does not satisfy Rule 702(b).  Second, Cox's

22   methodology did not include reviewing the information provided to the defense regarding the Singapore

23   companies, and the testimony therefore does not satisfy Rule 703(c).  Third, because the testimony is

24   premised on the false assumptions about the Singapore companies, there is considerable danger that it

25   will confuse and mislead the jury, and the testimony therefore should be excluded under Fed. R. Evid.

26   403.

27

28

1    Moreover, whether Mega Bank does (or does not) "resemble" a trustee has no bearing on this

2    case at all.  But permitting this testimony would suggest that the concept of a "trust" has some

3    significance to the case.  The unreported income came to USAPTI and Performance Group as a result of

4    services provided to the PRC companies under contract.   That income is taxable.  26 U.S.C. §  61.

5    Whether the money was paid to a trust, an "escrow company," or "record keeper" does not alter that

6    legal reality.

7    Finally, Cox is not qualified to offer opinions about normal banking practices, trusts, and escrow

8    companies nor has he explained the basis for his analysis or conclusions in these areas.  He is a former

9    IRS special agent and appears to have no expertise as to the formation or conduct of trusts or escrow

10   accounts.  For that additional reason, his testimony should be excluded for failing to comply with Fed.

11   R. Evid. 702.

12

13        **B.       Proposed Expert Gordon Klein**

14   The defense seeks testimony from Gordon Klein related to both the tax and bankruptcy charges.

15   The testimony should be precluded as it fails to meet the standard set forth in Fed. R. Evid. 702, is not

16   relevant, and has the tendency to mislead the jury and usurp the Court's role of instructing the jury on

17   the law.

18             **1.      The Testimony Related to the Tax Charges Should be Excluded**

19                  **a.    The testimony does not satisfy Rule 702(b) because it is not supported by**

20                       **"sufficient facts and data."**

21   Klein relies on certain assumptions, the factual basis for which is unexplained.  After accepting

22   these assumptions as fact, Klein explains in detail a hypothetical scenario in which the gross receipts at

23   issue may be excluded from income "if" the preconditions are met.  Klein assumes that Mega Bank and

24   California Pacific received cash that was "subject to restrictions on disposition" – but does not explain

25   the factual basis for that assumption.  Klein suggests that the banks or Liew were acting as "nominees"

26   or "responsible parties" – but does not explain the factual basis for that assumption.  Klein contends that

27   Liew and his companies were acting in a "representative capacity" for the Singapore companies – but

28

does not explain the factual basis for that assumption.  In short, these crucial assumptions are not based on any (let alone sufficient) "facts or data" and, therefore, the testimony does not satisfy Rule 702(b). Liew proposes that Klein offer hypotheticals based on baseless factual assertions, rendering his testimony unreliable and irrelevant.  *See United States v. Quinn*, 18 F.3d 1461, 1465 (9th Cir. 1994).

### b.  Klein's methodology did not include a full investigation of the relevant facts or application of key legal principles.

Klein offers opinions which, to be valid, must be based on an investigation of certain underlying facts.  The problem regarding the reliability of Klein's opinion stems from acknowledging that the "sums were received at Mega Bank and California Pacific Bank periodically from customers for whom Performance Group and/or USAPTI had performed services."  (Klein Report at p. 3, ¶ 3).  The law is clear.  Gross income is defined in the Internal Revenue Code in 26 U.S.C. § 61, "means all income from whatever source derived, including (but not limited to) … (1) Compensation for services…"  *Id.* Pursuant to 26 U.S.C. § 61, USAPTI and Performance Group must report as income payments "received at Mega Bank and California Pacific Bank" from "customers for whom Performance Group and/or USAPTI had performed services."[3]

Klein's report ignores that the payments are for services and goes on to list different hypothetical scenario where the payments alone are excluded from income.  Contrary to his assertion, all income, from whatever source, is presumed to be income under § 61, unless the taxpayer can prove that it is specifically exempt or excluded.[4]  The proper approach is to realize the payments as gross income pursuant to § 61, and then compute adjusted gross income after applying any permissible deductions. See 26 U.S.C. §§ 62, 161, and 162.  A taxpayer may not, however, exclude from income money received in an amount equal to expenses merely because the exchange is equal, i.e. expenses are deducted, not excluded.  *Stelly v. Commissioner*, 761 F.2d 1113, 1115 (5th Cir. 1985) (the IRC does not

---

[3] Compensation for personal services, no matter what the form of payment, must be included in gross taxable income.  *Commissioner v. Kowalski*, 434 U.S. 77 (1977); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) (income not limited to gains or profits).

[4] *Reese v. United States*, 24 F.3d 228, 230 (Fed. Cir. 1994).

1  only tax "gains," and a taxpayer cannot exclude part of income that is exchanged for something else.)

2  But that is exactly what is proposed in Klein's report.

3         Klein's report tacitly acknowledges the flawed logic in excluding these payments (for services)

4  by skipping that analysis and focusing on hypothetical situations.  To reach this conclusion, Klein

5  reassigns ownership of the payments and recharacterizes the purpose of the payments.  In a hypothetical

6  fashion, Klein posits that "*If* all of the … funds transferred to Singaporean entities were received by Mr.

7  Liew, Performance Group, and/or USAPTI *as agents or authorized representatives* of [those] *entities*,

8  [he] is unaware of any gross income that Performance Group or USAPTI failed to account for on their

9  tax returns."  (Klein Report at p. 3) (emphasis added).  In simple terms, Klein concludes that a taxpayer

10  need not report income it does not own, and his report includes words like "nominees" and "true

11  earners" to suggest the existence of terminology used to describe parties who receive non-taxable

12  income.

13         The sole evidence to support that Performance Group or USAPTI could be an "agent" is that

14  money is deposited into an account, and then withdrawn from the account, to pay debts.  That situation

15  describes nearly every creditor-debtor interaction.  There are innumerable examples demonstrating the

16  flaws in the report, including, *inter alia*, when: an individual who has funds deposited into an account

17  (1) that pays their mortgage from the account; (2) has alimony payments withdrawn from the account,

18  including even a joint account, or (3) pays utility bills from the account.  Paying bills in this way is

19  common for nearly every taxpayer in this country.  However, there is no "sufficient data" within the

20  meaning of Rule 702 to conclude that these individuals are an "agent" for the (1) bank holding the

21  mortgage, (2) the ex-spouse, or (3) the utility companies, or "partners" with them as suggested in the

22  report.

23         As a related matter, the same problems are present with respect to the conclusion that the

24  existence of a "partnership" justifies exclusion of income.  Here again, the report explains "if" the

25  payments were to a partnership the unreported gross receipts are explained, and then explains

26  partnership law in detail.  The problem with that claim is that "while a taxpayer is free to organize his

27  affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences … and

28

may not enjoy the benefits of some other route he might have chosen…" *Boulware v. United States*, 552 U.S. 421, 430 (2008). There was no partnership, just a corporation. The tax returns affirmatively state that there was no partnership for 2008-2010, no partnership returns were ever filed, and for that very reason Walter Liew reported the income paid from the accounts at issue as gross receipts on a corporate tax return. The defendant cannot at this point engage in retroactive and hypothetical tax planning to avoid liability. The most significant problem is that the testimony suggests that taxpayers generally could have avoided tax through the use of a partnership, but this is not tied to Walter Liew's belief or actions. The testimony is meant to suggest one could have held such a belief, but it is improper for that very reason – it is not directed to Walter Liew. [5]

The report also omits the test for ownership of property for tax purposes, which includes (1) whether legal title passes; (2) how the parties treat the transaction; (3) whether an equity was acquired in the property; (4) whether the contract creates a present obligation to make payments; (5) whether the right of possession is vested; (6) which party pays the property taxes; (7) which party bears the risk of loss; and (8) which party receives the profits. *Sollberger v. Comm'r*, 691 F.3d 1119, 1124 (9th Circ. 2012). According to the evidence and Klein's report, the unreported payments were for services provided by Performance Group or USAPTI. Nothing in the report or evidence omitted from the report show how ownership can be reassigned to Singaporean entities controlled by Liew. In term of Rule 702, Klein's report lacks any data to support these hypothetical scenarios, which is based on unreliable principles.

Moreover, the appropriate remedy is to exclude the testimony because of the errors in Klein's method. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2009) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.") Klein method involved a limited review of the facts, and then he

---

[5] Because the jury must evaluate willfulness using a subjective standard, evidence that other taxpayers were unaware of a legal duty is not relevant to the question of whether the defendant was aware of that duty. *Cheek v. United States*, 498 U.S. 192, 202-03 (1991); *United States v. Powell*, 955 F.2d 1206, 1211-12 (9th Cir. 1992) ("The test does not focus on the knowledge of a reasonable person, but rather on the knowledge of the defendant.").

concluded USAPTI or Performance Group did not own certain funds.  As noted above, Klein fails to apply the test for ownership when the funds are held by Mega Bank, or when the money is transferred to accounts held by Walter or Christina Liew (or their nominees) in Singapore.  The method used by Klein can be summarized as: situations exist where a recipient does not have top report money in their account, and this could be one of those cases.  The test to reach that result is lacking.  Because his methodology did not take into account the evidence regarding true ownership and control of the Singapore companies and ignored key legal principles, it is irrelevant and unreliable and should be excluded under Rules 702(b) and (c).

c.  **Klein's testimony is likely to mislead and confuse the jury.**

In *Scholl*, 166, F.3d 964, 971, the Ninth Circuit concluded that testimony along these lines is inappropriate when a defendant sought to introduce testimony that "compulsive gambling disorder makes one believe that he has lost more money than he has won."  *Id*.  The "testimony had essentially no probative value but substantial risk of prejudicial effect, and [was] excluded under Rules 402 and 403" because it did not speak to the Defendant's beliefs.  *Id*.  The same is true here.  The report never explains how or why the Defendant could conclude he was acting as an "agent" or that he was pursuing a "partnership."   In sum, the report demonstrates that Klein does not intend address willfulness at all, and that he intends to testify about the law.

Finally, there is a significant probability the proposed testimony will confuse and mislead the jury because Klein falsely implies that Walter Liew did not have control or access to the foreign funds.  Stated simply, Klein is conclusion would mislead the jury because he offers faulty conclusions based on a review of some fact (or after ignoring some facts).  The conclusions are faulty because, as noted above, USAPTI and Performance Group must report the payments for services as gross receipts regardless of what the entities did with the money afterwards.

Klein's faulty conclusion is based on the assumption that Walter Liew "did not have the unrestricted right to retain the Mega Bank funds and California" (Klein Report at p. 3, ¶ 3).  That conclusion is belied by the fact that Walter Liew not only controlled the funds held at Mega Bank, he also had the money delivered to companies he controlled.  While Liew surreptitiously held some of the

accounts (and entities) in the name of nominees, records show Walter and Christine Liew has signature authority over the accounts in Singapore.  In terms of this motion, Klein's report cannot assist the jury because he is wrong about excluding payment for services when money was paid to Mega Bank and his conclusions regarding Walter Liew's control of the funds afterwards are erroneous.  Along those lines, testimony based on insufficient facts leading to faulty conclusions is properly excluded because that evidence is untrustworthy.  *Mullins v. United States*, 334 F. Supp. 2d 1042, 1049 (E.D. Tenn. 2004) (excluding expert testimony based on "faulty assumptions to arrive at erroneous conclusions.")

In that regard, the court should exercise its gatekeeping role in excluding the testimony, which relied on facts that are untrue.  Here, the defendant is keenly aware that in a serial fashion he and Christina Liew created and then "struck" the Singaporean entities at issue.  Moreover, Liew not only had control over the funds temporarily held at Mega Bank, he also had control and signature authority over the accounts where the money ended up.  (Ho. Decl. ¶¶ 9-54).  Regardless of whether all of the evidence is admissible, a criminal defendant cannot "perjure himself or present evidence he knows to be false" to support a defense.  *United States v. Hernandez-Meza*, 720 F.3d 760, 765 (9th 2013).  That is true here because Klein asserts that Liew did not exercise control over the funds at Mega Bank, and explicitly writes that "Mr. Liew [was] acting in representative capacities on behalf of the <u>rightful</u> <u>owners</u> of these Mega Bank funds."   (Klein Report at p. 4).  This testimony is misleading because Walter Liew controlled all of the funds, and had signature authority over the accounts, after the money left Mega Bank.  Because Walter Liew is the unnamed "rightful owner" in Klein's report, the testimony should be barred as unhelpful and misleading.

### 2.   Klein Cannot Testify About Bankruptcy Law

The proposed testimony related to bankruptcy fraud poses additional problems.  The testimony should be excluded for at least three reasons.  First, Klein has no expertise in bankruptcy.  This alone is sufficient reason to exclude his testimony.  If Klein can testify as a bankruptcy expert, anyone lawyer who reads the *Wall Street Journal* is qualified to do so.

Second, Klein proposes to testify that "A party cannot wrongfully fail to disclose a corporation's assets or transfers of property if the entity does not own such assets or property."  (Klein Report at p. 5,

§ VI).  In addition to being irrelevant, testimony about legal conclusions unrelated to Liew, but applying to all persons generally, would also invade the Court's exclusive province to instruct the jury on the law. *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusions, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court."); *United States v. Curtis*, 782 F.2d 593, 600 (6th Cir. 1986) (holding that permitting expert testimony about the law "would also force jurors to take their instructions on the law from expert witnesses as well as from the trial judge. Any differences in the legal rules given by the expert and the judge would be another potential source of confusion.").

Third, Klein's assertion that by initiating bankruptcy proceedings Liew "opened up the business activities" is irrelevant, unreliable, and does not meet the requirements of Rule 702.  Federal Rule of Evidence 702 requires that some method be employed that will assist the trier of fact in understanding an issue in the case.  Klein does not explain any method at all, and proposes to testify that individuals who avail themselves of the judicial system are subject to the rules of discovery.  Klein does not explain how it was that Liew "opened his books," but speculates that anyone who files for bankruptcy is inviting a potential investigation.  Once again, this testimony is improper because a legal conclusion is offered to infer a lack of willfulness for those who file for bankruptcy – and invite an investigation.  The legal instructions should be left to the court.

The jury must evaluate willfulness using a subjective standard.  *Cheek v. United States*, 498 U.S. 192, 202-03 (1991); *United States v. Powell*, 955 F.2d 1206, 1211-12 (9th Cir. 1992) ("The test does not focus on the knowledge of a reasonable person, but rather on the knowledge of the defendant.").  An "expert" like Klein cannot testify that people who file for bankruptcy do not act willfully, generally, because they know that their businesses will be subject to investigation.  Indeed, this opinion would seem to suggest that no one could commit bankruptcy fraud at all.

1    **IV.     CONCLUSION**

2           The Court should exclude the testimony of defense experts Gerald Cox and Gordon Klein.

3

4    DATED:  October 11, 2013                                    MELINDA HAAG

5                                                               United States Attorney

6                                                                    /s/

7                                                               _____
                                                                PETER B. AXELROD
8                                                               JOHN H. HEMANN
                                                                THOMAS NEWMAN
9                                                               Assistant United States Attorneys

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28