MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

PETER B. AXELROD (CABN 190843)
JOHN H. HEMANN (CABN 165823)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   Peter.Axelrod@usdoj.gov
   John.Hemann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR 11-0573 JSW |
|     Plaintiff, | ) |
| | ) UNITED STATES' NOTICE OF |
| v. | ) MOTION AND MOTION TO EXCLUDE |
| | ) EXPERT WITNESS TESTIMONY OF |
| WALTER LIEW; CHRISTINA LIEW; USA | ) PAUL A. COOPER |
| PERFORMANCE TECHNOLOGY, INC.; | ) |
| AND ROBERT MAEGERLE, | ) Hon. Jeffrey S. White |
| | ) |
|     Defendants. | ) Date: November 14, 2013 |
| | ) Time: 2:00 p.m. |
| | ) |

      PLEASE TAKE NOTICE that on November 14, 2013, at 2:00 p.m., before the Honorable Jeffrey S. White, United States District Court Judge, United States District Court, 19th Floor, Courtroom 11, 450 Golden Gate Avenue, San Francisco, California, the United States of America ("United States"), will and hereby does move the Court to exclude the testimony of Paul A. Cooper, an expert proffered by defendants.

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY (COOPER)
Case No. CR 11-0573 JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

The United States hereby moves for an order excluding certain expert evidence proffered by the defense from Paul A. Cooper on the grounds that the defendants' September 27, 2013 expert disclosure fails to comply with the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

**I.      BACKGROUND**

Defendants Walter Liew and Christina Liew were indicted on August 23, 2011, charged with false statements and witness tampering. Dkt. No. 16. Following the filing of a Superseding Indictment, a Second Superseding Indictment, the operative charging document, was filed on March 12, 2013. Dkt. No. 269. Both the Superseding Indictment and the Second Superseding Indictment named Walter Liew, Christina Liew, USA Performance Technology, Inc. (USAPTI), and Robert Maegerle as defendants. Relevant to this motion, the Second Superseding Indictment charges Walter Liew with conspiracy to commit economic espionage and attempted economic espionage, as well as conspiracy to commit theft of trade secrets, attempted theft of trade secrets, and theft of trade secrets in violation of 18 U.S.C. §§ 1831 and 1832, and Robert Maegerle with conspiracy to commit theft of trade secrets, attempted theft of trade secrets, and theft of trade secrets, in violation of 18 U.S.C. § 1832. At a hearing on August 8, 2013, the Court ordered the parties to file any *Daubert*-related motions by October 11, 2013. Dkt. No. 416.

The United States submitted reports from two experts covering titanium dioxide technology and manufacturing processes: Robert Gibney and Jim Fisher. The government also provided a report from an interview of former DuPont employee Dan Dayton related to titanium dioxide.

Defendants provided a report from their own proposed titanium dioxide expert, Paul Cooper, an independent consultant with experience in the industry. Cooper's report attempts to rebut the opinions put forth by the government's technical experts. A copy of Cooper's report was filed under seal by defendants. Docket No. 481.

## II. LEGAL BACKGROUND

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and Supreme Court case law interpreting that rule. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

To introduce expert testimony, the proponent must first demonstrate that the proffered expert is "qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions." Fed. R. Evid. 702. Next, the proponent must satisfy the court that the proffered testimony is both relevant and reliable. *Id.*; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *United States v. Quinn*, 18 F.3d 1461, 1465 (9th Cir. 1994).

The Supreme Court has interpreted Rule 702 as requiring that the district court act as a "gatekeeper," ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the Court held that the trial judge's role as gatekeeper applies not only to "scientific" testimony, but to all expert testimony. The *Kumho* court also held that a trial court can consider one or more of the *Daubert* factors in assessing the reliability and relevance of non-scientific expert testimony. *Id.* at 150. Indeed, testimony from a non-scientific expert should receive the same degree of scrutiny as the testimony from a scientific expert. *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005); *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.").

Even if the proposed expert testimony is admissible under Rule 702, it may be excluded under Fed. R. Evid. 403 "if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595; *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999). The decision whether to admit or exclude expert testimony is within the broad discretion of the district court. *See General Electric Co. v. Joiner*, 522 U.S. 136, 136-37 (1997); *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994). The Supreme Court has recognized, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," and therefore, "the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)). Therefore, "the very breadth of the discretion accorded trial judges in admitting [expert testimony] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny." *Nimely v. City of NewYork*, 14 F.3d 381, 397 (2d Cir. 2005) (quoting *United States v. Young*, 745 F.2d 733, 766 (2d Cir. 1984) (Newman, J., concurring)).

In addition to the *Daubert*/Rule 702 analysis, Rule 704 of the Federal Rules of Evidence prohibits expert testimony regarding a defendant's mental state when that mental state constitutes an element of the charged crime. Fed. R. Evid. 704. Rule 704(b) provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Under Rule 704, such "ultimate issues" are solely for the trier of fact. *See, e.g.*, *United States v. Hofus*, 598 F.3d 1171, 1179-1180 (9th Cir. 2010) (expert's proffered testimony, that defendant meant his sexual texting to a minor only as fantasy was simply another way of saying he did not really intend to entice or persuade the young girls, and therefore was inadmissible under Rule 704(b), as statement of opinion whether defendant had requisite mens rea for attempting to coerce or entice minor to engage in sexual activity); *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997) (en banc) ("A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.").

## III. ARGUMENT

For the reasons stated below, the government seeks to preclude testimony from Mr. Cooper on certain topics for which he is unqualified to opine and which lack sufficient reliability to be introduced as evidence. Moreover, Mr. Cooper should also be precluded from testifying as to defendants' mental state when that mental state constitutes an element of the charged crime.

Mr. Cooper was retained by defendants as an expert witness regarding titanium dioxide pigment production. His report, which runs to 80 single-spaced pages, includes extensive discussions of the various processes and components which make up the titanium dioxide manufacturing process. Cooper also provides responses to opinions put forth by the titanium dioxide experts retained by the United States.

### A. Testimony Related to Defendants' Reasonable Beliefs Should Be Excluded

In his report, Cooper spends considerable time explaining why the work accomplished by defendants Walter Liew and Robert Maegerle was based on their own experience as well as information that was publicly available. *See, e.g.*, Cooper Report at p. 2, § II (opining that defendants' work on the titanium dioxide plants was accomplished by the "application of engineering experience, skill, and hard work, coupled with information that was publicly available"). Cooper also opines that the various processes and technologies described in the Second Superseding Indictment and in Trade Secrets 1 through 5 were based on information that had already been publicly disclosed. *See, e.g.*, *id.* (stating that trade secrets 1 through 5 "contain well known aspects of titanium dioxide manufacturing that have . . . been . . . publicly disclosed"). While it is unsurprising that an expert retained by the defense would take issue with the government's characterization of the evidence, the report is replete with statements by Cooper as to the "reasonable beliefs" of defendants Walter Liew and Robert Maegerle. Cooper opines that neither Walter Liew nor Maegerle would have had any reason "to believe that the work they were doing involved trade secrets." Cooper Report at p. 2, and n.3, § II. A similar opinion is repeated throughout the report, as Cooper provides nearly identical conclusions while addressing many components and processes within the titanium dioxide manufacturing process.[1]

---

[1] Opinions regarding the "reasonable beliefs" of Walter Liew and Robert Maegerle are strewn throughout the Cooper report. Because all of these opinions are worded identically, or nearly

As the Court is well aware, both Maegerle and Liew are charged under the Economic Espionage Act, with Liew facing charges under both §§ 1831 and 1832 and Maegerle facing charges under § 1832. Both of these statutes require that the defendant act knowingly when, *inter alia*, stealing, copying, or receiving a trade secret, or, in the case of conspiracy and attempt, both statutes require that the defendant believe that the material was a trade secret.[2] Cooper's statements as to the "reasonable beliefs" of defendants Liew and Maegerle clearly "state an opinion about whether the defendant[s]" had "a mental state or condition that constitutes an element of the crime charged." Fed. R. Evid. 704. As established under Rule 704 of the Federal Rules of Evidence, this is a "matter for the trier of fact alone" and thus amounts to improper expert opinion.

Even putting the Rule 704 issues aside, Cooper's opinions as to the reasonable beliefs of defendants still run afoul of Rule 702. The party offering the expert testimony must first demonstrate that the proffered expert is "qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions," Fed. R. Evid. 702, and also must satisfy the court that the proffered testimony is both relevant and reliable. *Id.*; *Daubert*, 509 U.S. at 589. Opinions regarding a party's state of mind, including what a reasonable person might do in the circumstances of the case, have been

---

identically, this motion does not address each of them individually. Other instances of Cooper's opinions concerning the defendants' "reasonable beliefs" include the following: Cooper Report at p. 13, § V (regarding sources of publically available information about titanium dioxide); at 20, § VII.C (regarding "Raw Materials Handling"); at 21, § VII.D (regarding "TiCl4 Production"); at 35, § VII.E (regarding "Base Pigment Production"); at p. 44, § VII.E.10 (regarding "Reactor Product Cooling"); at p. 47, § VII.E.11 (regarding "Reactor Product Separation"); at p. 49, § VII.E.12 (regarding "Base Pigment Dechlorination and Slurrying"); at p. 50, § VII.F (regarding "Finishing"); at p. 57, § VII.G (regarding "Liquid Effluent Treatment"); at p. 59, § VII.H (regarding "Gaseous Effluent Scrubbing"), J (regarding "Treatment Chemicals Storage"); at p. 73, § IX.B.24 (regarding disagreements with government experts Gibney and Fisher and noting in response to a Gibney hypothetical that "it would be reasonable for engineers in the position of Mr. Liew and Mr. Maegerle to believe that they were free to use the technology they used in the 100K and 30K Projects").

[2] On June 11, 2013, the Court denied defendants' Joint Motion to Dismiss the Second Superseding Indictment. Dkt. No. 338. In its opinion, the Court held that attempted economic espionage and attempted theft of trade secrets do not require proof of an actual trade secret. *Id.* at 8. The Court wrote that "it is the Defendants' intent and their actions that form the 'core criminality' of these charges, rather than the existence of the asserted trade secret" and "unlike the situation where a defendant is charged with a substantive violation of the EEA, Defendants' guilt here depends upon their intent and their actions, rather than on "a specific identification of fact.'" *Id.* (quoting *Russell v. United States*, 396 U.S. 749, 764 (1962)).

held by courts to be committed exclusively to the finder of fact and not appropriate for expert testimony. *See United States v. Hanna*, 293 F.3d 1080, 1085-1086 (9th Cir. 2002) (when jury was called on to determine whether reasonable person in defendant's position would perceive defendant's communications as threats to person of the President, it needed no assistance from experts). Cooper's opinions as to the reasonable beliefs of defendants Liew and Maegerle are inadmissible under Rule 704.

Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. . . ." Fed. R. Evid. 702. "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Siring v. Oregon State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013). Any testimony as to what defendants believed amounts to speculation and should be considered impermissible expert testimony. *See Hill v. Novartis Pharms. Corp.*, No. 1:06–cv–00939–AWI–DLB, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) ("The Court finds this and other testimony regarding Defendant's intent, motives or state of mind to be impermissible and outside the scope of expert testimony."); *George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2d 928, 932-33 (N.D. Ill. 2011) (excluding expert's state of mind opinion as speculative and unhelpful). While Cooper's credentials are clearly relevant to his analysis of the titanium dioxide manufacturing process and his opinions as to whether certain components and processes had been publicly disclosed and/or had economic value, there is simply no basis for him to opine as to the reasonable beliefs of defendants Walter Liew and Robert Maegerle. The Court should therefore preclude any testimony by Cooper on this subject on the basis of Federal Rule of Evidence 702 and *Daubert*.

**B. Testimony Involving Legal Conclusions as to Trade Secrets Should Be Excluded**

Cooper also offers opinions throughout the report as to whether certain items constitute trade secrets. In Section VII of his report, Cooper specifically addresses trade secrets 2, 3, and 4 from the Second Superseding Indictment and opines that due to public disclosure and lack of economic value

1  derived from not being known to the public none of these documents meets the definition of trade secret

2  under the EEA.[3] *See* Cooper Report at p. 59, § VII.A ("It is my opinion that neither this document nor

3  the information it contains [trade secret 2] is a trade secret as defined by the Economic Espionage Act

4  because (a) it contains no information that has not been publicly disclosed or that was not readily

5  ascertainable by proper means, and (b) as a standalone document, it derives no economic value by virtue

6  of not being generally known by the public."); *id.* at p. 62, § VII.B (document representing trade secret 3

7  was "readily ascertainable by proper means," and "as a standalone document, it derives no economic

8  value by virtue of not being generally known by the public"); *id.* at p. 63, § VII.C (document

9  representing trade secret 4 "contains no information that has not been publicly disclosed or that was not

10  readily ascertainable by proper means, and . . . as a standalone document, it derives no economic value

11  by virtue of not being generally known by the public").

12       "Expert testimony is . . . not admissible to inform the finder of fact as to the law that it will be

13  instructed to apply to the facts in deciding the case." 1-13 Weinstein's Evidence Manual § 13.02.

14  Expert witnesses are prohibited from offering opinions that amount to legal conclusions. *See Scholl*,

15  166 F.3d at 973 ("it is well settled that the judge instructs the jury in the law. Experts 'interpret and

16  analyze factual evidence. They do not testify about the law because the judge's special legal knowledge

17  is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to

---

[3] While the text above references Cooper's opinions as to trade secrets 2, 3, and 4 from the Second Superseding Indictment, the report contains numerous opinions as to whether certain components and processes are "trade secrets." Other instances of such opinions include the following: Cooper Report at p. 2, § II (trade secrets 1 through 5 from the Second Superseding Indictment "do not reveal any trade secrets"); at 17, § VII.B (regarding the "Plant Area"); at 18, 20, § VII.C (regarding "Raw Materials Handling"); at 21, § VII.D (regarding "Titanium Tetrachloride Production"); at 22, § VII.D.1 (regarding "Chlorination"); at 29, § VII.D.2 (regarding "Condensation"); at 32, § VII.D.2.c (regarding the "Spray Machine with Spiral Nozzle"); at 35, § VII.E (regarding "Base Pigment Production"); at 39, § VII.E.6 (regarding the "Support Combustion System"), § VII.E.7 (regarding "Reactor (Oxidizer)/Gas Flow to O2 Rx"); at 42, § VII.E.7 (regarding "Reactor (Oxidizer)/Gas Flow to O2 Rx"); at 44, § VII.E.10 (regarding "Reactor Product Cooling"); at 47, § VII.E.11 (regarding "Oxidation Bag Filters"); at 49, § VII.E.12 (regarding "Base Pigment Dechlorination and Slurrying"); at 50, § VII.F (regarding "Finishing"); at 57, § VII.G (regarding "Liquid Effluent Treatment"); at 59, § VII.H (regarding "Gaseous Effluent Scrubbing"), § VII.J (regarding "Treatment Chemicals Storage").

their deliberations'" (quoting *United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988)); *see also Aguilar v. International Longshoremen's Union*, 966 F.2d 443, 447 (9th Cir. 1992) (noting matters of law are for the Court's determination, not that of an expert witness). "This proscription precludes an expert witness from testifying in the language of statutes, regulations, or other legal standards that are at the heart of the case if that language has a separate, distinct, and specialized meaning in the law different from its meaning in the vernacular." *Id.* (citing *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (improper to permit expert witness to testify plaintiff had been discriminated against in employment because of her national origin, because testimony tracked statutory language and "discrimination" has specialized legal meaning that is more precise than lay understanding of term)). Numerous courts have barred experts in civil trade secret cases from testifying about whether something constitutes a "trade secret," holding that such testimony amounts to a legal conclusion. *See, e.g.*, *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 419 (4th Cir.1999) (noting that whether or not a trade secret exists is a "fact-intensive question to be resolved upon trial"); *Raytheon Co. v. Indigo Systems Corp.*, 598 F. Supp. 2d 817, 822 (E.D. Tex. 2009) (expert testimony that certain information "cannot be considered a trade secret . . . would be inadmissible legal opinions"); *Patriarch, Inc. v. Dynomite Distribution, Inc.*, 2007 WL 4800400, at *3 (C.D. Cal. Feb. 14, 2007) (barring defendant's expert witnesses from testifying regarding "legal conclusions, such as whether plaintiff's customer and supplier lists were trade secrets" because "such testimony invades the province of the jury").

Here, Cooper's opinions as to whether certain documents and processes constitute "trade secrets" under the Economic Espionage Act clearly amount to a legal conclusion. "Trade Secret" is defined under § 1839 of the EEA and Cooper's statements that both particular documents and various components and processes do not constitute trade secrets clearly put forth opinions as to a term with a specialized meaning in the law. While an expert can opine on the characteristics of, and public access to, certain materials alleged to be trade secrets, an expert witness is prohibited from drawing a legal conclusion as to whether the items constitute trade secrets under the statute. Thus any opinions by Cooper as to whether, *inter alia*, documents, designs, components, or process constitute "trade secrets"

under the EEA are legal conclusions and should be excluded by the Court as improper under Rules 702 and 704.

### C. Testimony Lacking Sufficient Factual Basis Should Be Excluded

Cooper makes statements in his report that appear to lack any factual support. For example, Cooper makes sweeping statements regarding engineers' ability to differentiate between information that constitutes protected trade secrets and information derived from generic business knowledge and experience apparently based upon information provided by defense counsel. *See* Cooper Report at p. 9, § IV.B. Cooper concludes the paragraph by stating that engineers cannot rely on the "confidential" markings on documents that they may have reviewed during their previous employment, as "the overuse of confidential stamps is rampant in the industry." *Id.* There is no factual basis or data to back up this statement from Cooper. He provides no specific examples of such practices that he encountered in his time in industry, nor does he cite any reports or articles documenting such practices. Such unsupported statements clearly fail to satisfy the standard set forth in Rule 702(b) of the Federal Rules of Evidence and any testimony on this subject should therefore be excluded.

Similarly, the Cooper report also states that one of the sources of available information about the titanium dioxide manufacturing process comes from the shutdown of plants. *See* Cooper Report at 11, § V.D. He then makes the bald assertion that when DuPont's Antioch plant was closed in 1999, "[m]uch of the equipment was simply thrown away or scrapped, exposing equipment designs and the like to public view." *Id.* Cooper offers no factual basis for this statement. There is no suggestion that he personally viewed these supposed discarded items, nor does he cite any report or article indicating as much. Cooper also fails to explain the relevance of this supposed public access to DuPont equipment. He fails to specify what equipment was available for such public review nor does he suggest that any of the equipment scrapped and left for public view was in any way related to the materials and processes at issue on the instant case. This statement is unsupported by any facts or data, and with no specific information as to the equipment at issue, this statement does not even pass the relevance threshold. Because Cooper's opinion on this subject is neither relevant nor reliable, any testimony thereon should

be precluded, as it is not based on "sufficient facts and data." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589.

### D. Defendants Should Be Required To Provide An Amended Expert Report.

As set forth above, improper opinion testimony by Cooper is littered throughout his 80-page expert report. Prior to trial, defendants should be required to provide the government with an amended expert report stripped of the matters the Court holds to be improper under Rules 702, 703, 704, and 403.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to exclude certain expert testimony proffered by proposed defense expert Paul Cooper.

DATED: October 11, 2013

                                            Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney

                                            _____/s/_____
                                            PETER B. AXELROD
                                            JOHN H. HEMANN
                                            Assistant United States Attorneys