1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3  J. DOUGLAS WILSON (DCBN 412811)
   Chief, Criminal Division

4  JOHN H. HEMANN (CSBN 165823)
   PETER B. AXELROD (CSBN 190843)

5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495

7       Telephone: (415) 436-7200
        FAX: (415) 436-7234

8       john.hemann@usdoj.gov

9  Attorneys for Plaintiff

10

                    UNITED STATES DISTRICT COURT

11

                  NORTHERN DISTRICT OF CALIFORNIA

12

                     SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,            )   CASE NO. CR-11-0573-JSW
                                         )
15             Plaintiff,                )   OPPOSITION OF THE UNITED STATES TO
                                         )   DEFENDANTS' MOTION TO EXCLUDE EXPERT
16     v.                                )   TESTIMONY OF ROBERT GIBNEY
                                         )
17  WALTER LIEW, CHRISTINA LIEW,         )   Date:  November 14, 2013
    ROBERT MAEGERLE, AND USA             )   Time:  2:00 pm
18  PERFORMANCE TECHNOLOGY, INC.,        )
                                         )   Hon. Jeffrey S. White
19             Defendants.               )
    _____ )

20

21  I.     INTRODUCTION

22         Defendants' motion to exclude the testimony of Robert Gibney should be denied.  Mr. Gibney

23  has 30 years-experience in various aspects of the titanium dioxide business – from sales to marketing to

24  administration to plant management – employed for most of that time by one of DuPont's main

25  competitors.  He is eminently qualified to assist the jury in understanding the questions it must answer

26  regarding the value and secrecy of the DuPont information defendants are alleged to have

27  misappropriated.

28

His testimony is relevant and is not cumulative to the testimony of the government's other disclosed expert, Jim Fisher.  Although there are areas of overlap in the two disclosure statements, the government *will not* call both witnesses to testify as to the same items.  The appropriate time to determine whether there is a danger of cumulative testimony would be after one of the two experts testifies at the trial.

Mr. Gibney will testify regarding the measures taken by his former employer, Kerr-McGee, to maintain information security, which is relevant to establish his expertise and knowledge, and to provide context for the measures DuPont took to protect its trade secrets.  This testimony is directly relevant to the "reasonable measures" element of 18 U.S.C. § 1839(3)(A) that the government must prove at trial.

Mr. Gibney will testify that Kerr-McGee would have found the DuPont information misappropriated by defendants to have been valuable and explain why.  This evidence is directly relevant to the second prong of the trade secret test, concerning whether the information in question has value because it is not generally known to the public.  18 U.S.C. § 1839(3)(B).  Mr. Fisher's testimony is distinct and not cumulative because he worked for another competitor, Kronos, and as an independent consultant.

## II.    BACKGROUND

Robert Gibney has worked in the titanium dioxide industry for nearly 30 years.  He began his career as a salesman, selling among other products, DuPont TiO2.  But Mr. Gibney has been much more than a salesman.  He was the Vice President of Marketing for Kerr-McGee and the company's Vice President and General Manager of Paper and Specialties (including TiO2).[1]

When Tronox spun-off from Kerr-McGee, Mr. Gibney became the Vice President for Investor Relations, then the Vice President for Corporate Affairs and Government Relations. Eventually, he was promoted to the Senior Vice President of Global Supply Chain and Chief Administrative Officer.   In these positions, he was required to know and understand the global TiO2 market and how the market

---

[1] The Gibney Disclosure, attached to the Lovett Declaration as Attachment A, discloses all of these positions.  Attached as Exhibit 3 to the Declaration of AUSA Axelrod (filed Oct. 25, 2013), is a more formal copy of Mr. Gibney's CV.  Although it is common knowledge that these jobs come with certain duties, the government proffers that Mr. Gibney will testify that the duties include those recited in this section.

values the technology of the various market participants – including both Tronox and DuPont.  He will testify that he conducted capital expenditure reviews that required reports from the company's engineers on technology and its value.  He was deeply involved in making decisions with corporate management on strategic planning and acquisitions that required detailed information regarding the value of technology.  He conducted due diligence, a large part of which is valuation of technology and product markets.

From 2009 to 2011, Mr. Gibney was the acting Managing Director of Tronox's chloride- route TiO2 factory in Germany.  As managing director, he understood how the factory operated.  He received at least weekly reports from the engineers and employees who operated the plant on capital expenditures, maintenance, operations, technical problems, and other issues that arise in the management of a TiO2 plant.  Since 2012, he has been a consultant to the TiO2 industry.

## III.    ARGUMENT

### A.  Gibney is Qualified Under Fed. R. Evid. 702

#### 1.  Legal Standards

A witness may be qualified as an expert if he possesses specialized knowledge, skill, experience, training, or education.  Fed. R. Evid. 702.  "[A]ny one or more of these bases should be sufficient to qualify a witness as an expert."  Weinstein on Evidence, § 702.04[1][a] at 702-57; *United States v. Laurienti*, 611 F.3d 530, 548 (9th Cir. 2010).

"The standard for qualifying expert witnesses is liberal.  This generosity extends to substantive as well as formal qualifications."  Weinstein, § 702.04[1][a] at 702-51.  Rule 702, the Ninth Circuit holds, "contemplates a broad conception of expert qualifications."  *Thomas v. Newton Int'l Enterprises, Inc.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (Rule 702 "generally is construed liberally").

It is error to do as defendants propose and exclude testimony from an expert who has "educational and experiential qualifications in a general field related to the subject matter of the issue in question."  Weinstein, § 702.04[1][a] at 702-53; *Laurienti*, 611 F.3d at 548.

### 2. Mr. Gibney Is Qualified Under Rule 702 To Testify About Issues That Are To Be Decided By The Jury.

Defendants move to preclude Mr. Gibney from testifying about three areas:  "the technical aspects of the production of titanium dioxide, DuPont's internal policies and practices, or Chinese production of titanium dioxide."  Def. Mem. at 6:1-3 & 5:18-20.  They argue that these areas encompass his entire testimony and that he has no "specialized knowledge, skill, experience, training, or education relevant" to them.

Defendants assert their arguments without even an attempt at meaningful analysis of the specific items about which Mr. Gibney will testify.  They group their requests broadly, list paragraphs of Mr. Gibney's testimony summarily, and argue conclusorily for exclusion.  The entirety of their analysis of Mr. Gibney's actual testimony is contained in a single paragraph.  Def. Mem. at 6:12 – 7:5.  In this single paragraph they do no more than throw out lists of paragraph numbers from the expert disclosure and contend without analysis that these items go beyond Mr. Gibney's expertise.

Defendants' shotgun approach does not produce a dent in Mr. Gibney's credentials or qualifications.  He has 28 years-experience in the TiO2 industry and is eminently qualified to assist the jury in understanding the industry and the technology that is acquired and used by large companies to produce TiO2 by the chloride-route.  The very breadth of Mr. Gibney's experience makes him uniquely qualified to assist the jury in a case that involves both the business of TiO2 and the design of TiO2 factories.  We address each of defendants' indiscriminate blasts in turn.

1.  Defendants first argue that Mr. Gibney should be precluded from testifying about "technical aspects of titanium dioxide production."  Def. Mem. at 6:16-17.  They characterize 13 paragraphs of the Gibney disclosure statement as containing "technical" information.  Def. Mem. at 6:18.  Each of these paragraphs are well within Mr. Gibney's areas of experience in the TiO2 industry and are not, contrary to defendants' characterization, too technical for someone with Mr. Gibney's background.

- Paragraphs 2 and 2(i) concern the way in which TiO2 is manufactured by the chloride-route and the principle benefits of that method.

- Paragraphs 9-11 concern the practices among TiO2 companies to keep their processes secret, the reasons for keeping their respective processes secret, and the fact that DuPont's processes are not known to others in the industry.

- Paragraphs 13 and 13(a)-(g) concern specific aspects of DuPont's technology and how those aspects are unique and compared to what Tronox does.

Mr. Gibney's 28 years in the TiO2 industry make him well-qualified to address each of these areas. Not only has he held various positions in sales, marketing, investor relations, and administration – all of which require knowledge of TiO2 manufacturing and the competitive environment – but from 2009-2011 he acted as the General Manager of a chloride-route TiO2 factory! To the minor extent that any of the items about which Mr. Gibney will testify are "technical" *and* if Mr. Gibney's technical expertise turns out to be "shaky" in ways defendants have not been able to explain, the appropriate way to challenge him would be through effective cross-examination. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

2. Defendants next argue that Mr. Gibney should not be allowed to testify regarding "how to build a titanium dioxide plant, elements of plant design, or the qualifications necessary to build a plant," citing 17 paragraphs of the Gibney disclosure. Def. Mem. at 19-21. Defendants' characterization of the paragraphs they list is misleading. These paragraphs do not address "how to build a titanium dioxide plant" or the "elements of plant design." Mr. Gibney will address the "qualifications necessary to build a plant" only in reference to the fact that, generally, large factories such as the 100,000 mpty factory being built by Pangang are designed by large, reputable global engineering firms (paragraphs 23 and 27), something that is well-within the experience and knowledge of a high-level executive of a large TiO2 manufacturer such as Mr. Gibney.

- Paragraphs 3 and 3(a)-(d) concern the ways in which TiO2 manufacturers increase capacity, including by expansion and building new facilities. This testimony

concerns the business of TiO2 – something Mr. Gibney is eminently qualified to help the jury understand.

- Paragraphs 14-17 concern Trade Secrets 2 through 5, as alleged in the Indictment. Mr. Gibney will testify that this is the type of information that TiO2 companies keep secret and why they do so. He will testify that this information would be valuable to a company attempting to replicate the DuPont process and a company attempting to build a TiO2 plant from scratch – a "greenfield" facility. Mr. Gibney's experience – as a marketing executive and a TiO2 plant manager, and from his involvement in mergers and acquisitions – is directly related to the types of information that are available and would be valuable to a competitor. His more recent work as a consultant to the TiO2 industry provides him with additional perspective on the information available to competitors in the industry.

- Paragraphs 20-25 and 27 concern information around the construction of new TiO2 facilities. Mr. Gibney will testify, based on publicly available information, about the most recent construction of these types of facilities by large manufacturers and the costs of building a new factory; it is appropriate for an expert like Mr. Gibney to help the jury understand this information in a case that involves the design of a new TiO2 factory. Mr. Gibney will testify from personal experience regarding the considerations that would go into the construction of a new facility and the information that is available publicly to assist in that effort. This case is, in part, about building a TiO2 factory – indeed, the first greenfield TiO2 factory since DuPont finished Kuan Yin in 1994. Mr. Gibney's 28 years of experience in the TiO2 industry – particularly as a high-level executive in diverse areas of his company's operations – make him uniquely qualified to assist the jury in understanding the information available, and *unavailable*, to a company undertaking such a venture. This testimony is related directly to the *value* of the DuPont information misappropriated by defendants.

3.  Defendants argue that Mr. Gibney is not qualified to testify regarding "internal policies, technological advantages, or practices of DuPont" or "non-Kerr-McGee/Tronox companies." Def. Mem. at 6:23 – 7:2.  First, Mr. Gibney offers *no* testimony regarding DuPont internal policies, so this characterization is simply misleading.  Second, from his experience in sales and marketing at one of DuPont's direct competitors, Mr. Gibney is well-qualified to testify regarding the technological advantages and known practices of DuPont – a company that he has studied and whose products he has analyzed almost constantly for almost 30 years.

- Paragraphs 5 and 5(a) concern DuPont's position in the market and the quality of its products.  Salesmen and marketing executives are uniquely aware of their competitor's market share and products.

- Paragraphs 6-9, 13(a)-(g), and 19-20 concern competitive information regarding the TiO2 market and the practices of the major TiO2 manufacturers.  This is the sort of information that is the subject of common competitive intelligence in a particular market and a focus of marketing and investor relations professionals.  As a plant manager, Mr. Gibney was aware of the appropriate practices utilized by TiO2 manufacturers in operating their factories.  Moreover, as a consultant, Mr. Gibney works directly with the TiO2 market on a daily basis and has an industry-wide perspective.

4.  Finally, defendant's challenge Mr. Gibney's ability to testify regarding the Chinese TiO2 market.  Mr. Gibney worked for one of the five largest TiO2 manufacturers.  He is now a consultant to the TiO2 industry.   He is qualified to provide relevant information regarding the TiO2 market in China, one of the largest consumers of TiO2 in the world.

When an expert has broad knowledge of an industry, as Mr. Gibney does with regard to TiO2, it is improper to exclude his testimony because he does not have specialized experience with every item about which he will testify.  *Laurienti*, 611 F.3d at 548.  "[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."  *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991).  Stated simply, "[w]itnesses need not have complete knowledge about the relevant

field of specialized information to be a help to the trier of fact and thus qualified to testify as experts under Rule 702." Weinstein, § 702.04[1][a], at 702-72; *Carlson Equip. Co. v. Int'l Harvester Co.*, 710 F.2d 481, 484 (8th Cir. 1983).

In *United States v. Liu*, 716 F.3d 159, 166-69 (5th Cir. 2013), the court of appeals held that the district court erred by excluding the testimony of an expert under Rule 702. The expert was called to testify, among other things, about a comparison between two chlorinated polyethylene (CPE) factories. The district court excluded the expert because "'he's never been in a CPE plant, never been accepted as an expert in CPE, and can't talk about the significance of the operating conditions of a CPE plant, or the effect on the CPE process.'" *Id.* at 166-67. The court of appeals held that this exclusion was improper because direct experience and specialization are not required by Rule 702. *Id.* at 168-69.

Similarly, in *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993), the court of appeals held that it was proper to admit the testimony of a child mental health specialist regarding the trauma of in-court testimony. The expert had no experience or training regarding "the trauma a child would face from testifying in court or testifying on a two-way closed circuit TV." *Id.* at 889. The court of appeals held, however, that her general experience in working with sexually abused children was sufficient to qualify her under Rule 702 and her "lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert." *Id.* at 890. *See also Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (concluding that an expert's "significant knowledge of and experience within the insurance industry" provided "the minimal foundation" required to give "'expert' testimony on the practice and norms of insurance companies in the context of a bad faith claim") (emphasis and quotation marks omitted).

Although defendants dismissively describe Mr. Gibney as a salesman, his sales experience combined with marketing, investor relations, administration, factory management, mergers and acquisitions, and consulting over 30 years make him not only a qualified witness, but a particularly appropriate expert to assist the jury in understanding the wide swath of information regarding the TiO2 industry relevant in this case.

The cases on which defendants rely are easily distinguishable. Def. Mem. at 6:13-14. In *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002), the court of appeals addressed in dicta certain

1  expert testimony and found, not that the expert was unqualified, but that his opinion "did not rely on his

2  metallurgy expertise at all.  He just relied on simple logic."  *Id.* at 1008.  The court suggested that the

3  testimony was lay opinion testimony because it did not require or utlize expertise.  *Id.*  Ultimately, the

4  court of appeals did not resolve whether the lay opinion testimony was admissible, because it reversed

5  on other grounds.  *Id.* at 2009.  Similarly, in *United States v. Jones*, 24 F.3d 1177, 1179-80 (9th Cir.

6  1994), the court of appeals did find the expert unqualified under Rule 702.  Rather, the court found that

7  the defendant "failed to establish the scientific validity of his proffered expert's voice identification

8  technique."  *Id.* at 1180.

9      The key question is whether the "proposed witness's qualifying training and experience, and

10 resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact

11 that the witness's proposed testimony will help the trier of fact."  Weinstein at 702-55.  There is no

12 doubt that Mr. Gibney satisfied this liberal standard.

13               **B.  Mr. Gibney's Testimony Is Relevant And Not Cumulative.**

14     Defendants also contend that Mr. Gibney's testimony should be excluded because it will be

15 cumulative to Jim Fisher's another disclosed expert on TiO2 and that his testimony regarding Kerr-

16 McGee is not relevant.

17     First, while there is overlap between Mr. Gibney and Mr. Fisher, the government will not elicit

18 testimony from both witnesses on all of the disclosed subjects at trial.  There are numerous issues

19 regarding the TiO2 industry and TiO2 technology that might be presented more clearly to the jury if

20 divided between two witnesses.  Moreover, the decision on whether testimony is cumulative should be

21 made not now, over two months before trial, but rather after the first expert testifies at trial in light of

22 what topics remain to be covered.

23     Moreover, their testimony is not the same in a number of respects, one of which concerns

24 whether the technology at issue was available to the public.  Mr. Gibney will testify that, from his

25 experience at Kerr-McGee and Tronox, DuPont's technology was not available to the public, and Mr.

26 Fisher will testify that, from his experience at Kronos, DuPont's technology was not available to the

27 public.  Contrary to defendants' contention that this testimony is not relevant, it is directly relevant to an

28 element that the government is required to prove beyond a reasonable doubt.  The government will be

required to prove that the alleged trade secrets "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public . . . ." 18 U.S.C. § 1839(3)(B).  To sustain its high burden, it is fair and appropriate to permit the government to call former employees of two of DuPont's key competitors – Tronox/Kerr-McGee and Kronos – to testify that their former employers did not possess and would have found valuable the specific trade secrets that defendants took from DuPont (Gibney Disclosure, ¶ 18; Fisher Disclosure, ¶ 18).  This is relevant evidence that goes directly to an issue – the value and public availability of the trade secrets – the government must prove beyond a reasonable doubt.  It is not cumulative because it relates to two different competitors.

The other items defendants seek to exclude are relevant as well.  Def. Mem. at 8:4-8.  The history of TiO2 licensing, the handling of secret components after plant closure, and the conduct of former employees, will assist the jury in understanding another component of the definition of trade secrets:  reasonable measures.  The government will be required to prove that DuPont "has taken reasonable measures to keep such information secret."  18 U.S.C. § 1839(3)(A).  Mr. Gibney, a former plant manager and TiO2 executive, will testify as to what measures are taken to maintain secrecy in the industry – including avoiding licensing, destroying components after factory shut-downs, and handling employees who move between companies.  His background – his experience at Kerr-McGee – is directly relevant to the basis for his testimony and his credibility as a witness.  Indeed, if he had not had these experiences at Kerr-McGee, he would not be in a position to assist the jury understand some of the measures taken in the industry, which goes directly to the issue of reasonableness.

## IV.    CONCLUSION

Defendants' motion to exclude Mr. Gibney's testimony should be denied.

Respectfully submitted,

MELINDA HAAG
United States Attorney

*John H. Hemann*

Dated: October 25, 2013

_____
JOHN H. HEMANN
PETER B. AXELROD
Assistant United States Attorneys