MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

JOHN H. HEMANN (CSBN 165823)
PETER B. AXELROD (CSBN 190843)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    john.hemann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-11-0573-JSW |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL DAYTON |
| v. | |
| WALTER LIEW, CHRISTINA LIEW, ROBERT MAEGERLE, AND USA PERFORMANCE TECHNOLOGY, | Date: November 14, 2013<br>Time: 2:00 pm<br><br>Hon. Jeffrey S. White |
| Defendants. | |

## I. INTRODUCTION

At trial, the United States intends to call Daniel Dayton, a chemical engineer who spent 38 years working in the titanium dioxide (TiO2) business at DuPont. As set forth more fully below, during his career, Mr. Dayton served in a wide-range of roles (operations, research and development, business analyst, due diligence, project manager, and engineering design) that brought him into contact with each and every one of DuPont's TiO2 manufacturing facilities and afforded him visibility into virtually all aspects of the TiO2 business. Mr. Dayton's anticipated testimony, which was explicitly disclosed to the defense, will cover a range of topics including DuPont's chloride-route TiO2 technology (including its

1 historical development and what distinguishes it from its competitors), the nature of the trade secrets
2 alleged in the indictment, and the protections taken by DuPont to safeguard its trade secrets.

3     The defense objects to the scope of Mr. Dayton's testimony on the theory that it amounts to
4 improper expert opinion testimony under Federal Rule of Evidence 702 that was not properly disclosed
5 to the defense. The Court should reject defendants' argument for two reasons. First, Mr. Dayton's
6 testimony is not *opinion* testimony at all – rather it is testimony based on his personal knowledge
7 acquired through the performance of his duties at DuPont and admissible through Federal Rule of
8 Evidence 602. It is almost identical to the non-expert testimony offered by an engineer working for a
9 victim company in another trade secret case, *United States v. Wen Chyu Liu*, 716 F.3d 159, 164-165 (5th
10 Cir. 2013). Second, even if the Court determined that portions of Mr. Dayton's testimony qualified as
11 expert opinion under Federal Rule of Evidence 702, the testimony is admissible based on the disclosures
12 made by the United States in conformity with Federal Rule of Criminal Procedure 16(a)(1)(G).

13 **II. BACKGROUND**

14     **A. Trade Secret –Related Charges**

15     Walter Liew was charged in the Second Superseding Indictment with conspiracy to commit
16 economic espionage (Count One), attempted economic espionage (Count Three), conspiracy to commit
17 theft of trade secrets (Count Two), attempted theft of trade secrets (Count Five), and possession of trade
18 secrets (Counts Six through Nine). (Dkt. No. 269). The Second Superseding Indictment describes the
19 development by DuPont of the chloride-route process for manufacturing TiO2 and DuPont's position in
20 the global TiO2 market, identifies the specific DuPont TiO2 trade secrets that were the subject of the
21 misappropriation, and describes the measures DuPont takes to protect its trade secrets. *See* Second
22 Superseding Indictment at ¶¶ 1-2, 12-15.

23     The government intends to establish through the testimony of Mr. Dayton and others that DuPont
24 possessed the TiO2 trade secrets alleged in the indictment and took reasonable measures to safeguard its
25 secrets.

26     **B. Disclosures related to Dan Dayton**

27     On August 5, 2013, the expert disclosure deadline, the United States identified Mr. Dayton as a
28 TiO2 expert and provided a summary of his testimony pursuant to Rule 16(a)(1)(G) of the Federal Rule

of Criminal Procedure. *See* Disclosure Letter (Ex. B to Gasner Decl., Docket No. 480). The disclosure consisted of two documents – a fifteen-page report of an FBI interview of Mr. Dayton and a nine-page single spaced list of 331 documents reviewed by Mr. Dayton. *See* Gasner Decl., Ex. C (report of FBI interview); Axelrod Declaration, Exhibit 1 (list of information reviewed).

The FBI report identified Mr. Dayton's professional qualifications in the TiO2 industry, which encompass his entire career at DuPont (between 1973 and his retirement in 2011) and include the following:

- He received a Bachelor of Science in Chemical Engineering from Oregon State University in 1973.
- He started at DuPont in 1973 supervising operators at the DuPont TiO2 plant in the New Johnsonville, Tennessee.
- From 1974 through 1978, he worked at DuPont's Edgemoor TiO2 plant in Delaware. At Edgemoor, Mr. Dayton worked on redesigning a portion of the plant. During that time, he also worked on the design team for a DuPont TiO2 plant in Delisle, Mississippi.
- He moved to the Delisle plant, which was still under construction when he arrived, and worked on design issues. In 1980, he became a research and development supervisor at Delisle. During that time, he also worked on the technology transfer to DuPont's TiO2 plant at Altamira in Mexico.
- In 1984, he returned to Delaware to work as a business analyst at DuPont's Business Center. There, he focused on determining what DuPont's competitors were doing and provided economic analysis of DuPont plants, including Altamira and the plant at Kuan Yin in Taiwan.
- In 1990, he served as a project manager for a DuPont project in Korea. He also worked on issues related to the start-up of DuPont's Kuan Yin plant including engineering, costs, and supplies.
- From 1992 to 1996, he worked at the Edgemoor plant in charge of the project group where he supervised all of the engineers and ensured appropriate handling of engineering design performed by contractors.

- He then worked on a team to purchase a TiO2 plant from a competitor, TiOxide, a process that provided him with the opportunity to visit that plant and review its design. Subsequently, he worked on another potential DuPont acquisition.
- From 1997 to 2009, he worked as an engineering consultant at DuPont's Business Center.
- During the course of his work, he worked on engineering design for all of DuPont's sites, which included almost all pieces in DuPont's TiO2 process. He also worked on best practices manuals for putting together a Basic Data Document and ethical competitive collection.

*See* FBI Report (Gasner Decl., Ex. C) at 1-3. The report also provides information on the following topics: background on the development of chloride-route TiO2, including DuPont's role, the history and characteristics of DuPont's plants, identification of DuPont's competitors and differences in DuPont's TiO2 technology, DuPont's trade secret protection measures, review of the trade secrets identified in the second superseding indictment and evidence collected in the course of the investigation, and Robert Maegerle and his role at DuPont.

The Dayton disclosures included a list entitled, "Dayton Disclosure Statement, Exhibit A: Information Reviewed, August 5, 2013," that identified by file path name 331 documents reviewed by Mr. Dayton. Axelrod Decl., Ex. 1.

**III.  ARGUMENT**

    **A. Mr. Dayton's Proposed Testimony is not Expert Opinion Testimony Under Federal Rule of Evidence 702**

Defendants argue that portions of Mr. Dayton's proposed testimony should be excluded as improper expert opinion testimony. Def. Mot. at 4 (Docket No. 480). While the defendants identified certain areas of Mr. Dayton's proposed testimony as objectionable, such as the history of TiO2, practices of DuPont's competitors, and analysis of the evidence relative to DuPont's trade secrets, they overlook the fact that Mr. Dayton's testimony on those subjects is drawn from personal knowledge gained during his professional life and is proper under Federal Rule of Evidence 602, which permits testimony where there is a sufficient foundation "to support a finding that the witness has personal knowledge of the matter."

In *United States v. Wen Chyu Liu*, 716 F.3d 159, 164-65 (5th Cir. 2103), a prosecution involving a conspiracy to steal trade secrets from Dow Chemical Company, the United States called a Dow engineer, James Akers, to offer the same type of testimony that Mr. Dayton is expected to provide in this trial – Mr. Akers testified that: the Dow process was "absolutely not" publically available; Dow employees such as the defendants would have understood that the process was secret; certain flow sheets introduced into evidence contained Dow technologies and those technologies were kept secret by Dow; certain plans, drawings, equipment lists, and defendant's hand calculations were "very similar" to the Dow process; and it would "'surprise' him that others could duplicate Dow's results in their own work and/or mimic these same numeric temperatures and percentages on their own." *Id*. Mr. Akers was neither noticed nor qualified as an expert in conjunction with that testimony. Axelrod Decl. at ¶ 6. There is no reason to treat Mr. Dayton any differently. It is appropriate for witnesses to testify based on personal knowledge acquired through their positions and performance of their job duties. *See Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1155 (9th Cir. 2000) (finding Vice President of Corporate Services had sufficient personal knowledge of company procedures to testify that his employer contributed directly to its employee insurance plan); *United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977) (finding manager of a restaurant had ample personal knowledge to testify about normal company procedures on a date prior to his employment).

Here, the defense seeks to circumscribe Mr. Dayton's testimony on the grounds that his testimony amounts to improper lay opinion testimony under Federal Rule of Evidence 701. Def. Mot. at 4. Yet, through his 38 years at DuPont, he has gained the requisite direct knowledge of certain practices of DuPont's competitors, particularly where his work responsibilities at times included competitive analysis and due diligence for prospective acquisitions. To the extent the defense challenges his ability to provide background on the basic history of chloride-route TiO2, the defense seems to ignore the fact that Mr. Dayton directly participated in a good deal of that history and where he did not, it is akin to the restaurant manager who testified about procedures that pre-dated his time of employment at the restaurant in *Thompson*.[1]

---

[1] The defense cites *United States v. Skeet*, 665 F,3d 983, 985 (9th Cir. 1982) to address the contours of lay opinion testimony under Rule 701. However, *Skeet* addressed a problem of a different nature – whether an eye witness to a shooting could opine as to whether the shooting was accidental or

**B. Mr. Dayton's Testimony Was Properly and Prophylactically Disclosed as Expert Opinion Testimony Under the Federal Rules**

Even if the Court finds that portions of Mr. Dayton's testimony qualify as expert opinion under Federal Rule of Evidence 702, the United States has met its disclosure obligations under Federal Rule of Criminal Procedure 16(a)(1)(G) and thus the Court should deny the defendants' motion. The crux of the defendants' claim is that Mr. Dayton was not properly noticed as an expert. This contention is without merit. Rule 16 requires the government to provide a "written summary of any testimony that the government intends to use," which must "described the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Rule 16(a)(1)(G).

On August 5, 2013, the United States squarely met that obligation by providing the defense with written notice of its designation of Mr. Dayton as an expert and the disclosure of a written summary (in the form of a summary FBI report) that described Mr. Dayton's "opinions, the bases and reasons for those opinions, and the witness's qualifications." Gasner Decl. (Docket No. 480), Ex. B and C. Contrary to defendants' claim that "the government has failed to provide a specification of the documents reviewed by Mr. Dayton," the United States also provided a detailed identification of the materials Mr. Dayton reviewed as part of his expert disclosure on August 5, 2013. Axelrod Decl., Ex.1.

Instead of challenging Mr. Dayton on the merits of his expertise, which the defendants implicitly and understandably concede they cannot do, they focus instead on pre-disclosure communications related to Mr. Dayton's testimony. There is nothing in the communications between government counsel and the defense that would warrant exclusion of Mr. Dayton's testimony and the defense cites no authority to the contrary. In fact, the communications are consistent with the United States' position throughout. We believe that Mr. Dayton's testimony is admissible in its entirety as percipient witness testimony related directly to matters observed and experienced by Mr. Dayton. However, in an abundance of caution, the United States made the requisite expert disclosures. The defense cannot identify any prejudice associated with the government's disclosures and, in fact, the defense $TiO_2$

---

was limited to his/her percipient witness observations. It has no bearing on whether a long-term employee of a business can testify about what he learned in the course of the execution of his duties.

1 expert, Mr. Cooper, dedicates several pages of his report to confronting Mr. Dayton's anticipated testimony. *See* Lovett Decl. (Docket No. 482), Ex. C (Cooper Disclosure) at 75-79.

Moreover, neither of the two district court cases cited by the defense – *United States v. Lieng*, 2012 WL 1569810 (E.D. Cal. April 30, 2012) and *United States v. Reliant*, 2007 WL 640839 (N.D. Cal. February 27, 2007) – impose any greater obligation on the government than Rule 16. In fact, a brief discussion of *Lieng* underscores the timely and fulsome nature of the disclosures here. In *Lieng*, the government began identifying its expert witnesses to the defense less than three weeks before trial and continued to provide information about the expert qualifications of those witnesses until several days before the start of the trial. 2012 WL 1569810 at *1-2. Here, the United States made its expert disclosure on the date it was due, five months before the trial is set to begin. In *Lieng*, the government failed to provide a discrete Rule 16 summary but rather argued that it complied with Rule 16 because the information to satisfy Rule 16 was discernible by looking at various pieces of discovery. *Id*. In this case, the government made its disclosures in a single transmittal through a fifteen-page summary report and a nine-page identification of documents.

## IV. CONCLUSION

The Court should deny in its entirety defendants' motion to exclude or limit the testimony of Mr. Dayton.

DATED: October 25, 2013

MELINDA HAAG
United States Attorney

_____/S/_____
PETER B. AXELROD
JOHN H. HEMANN
Assistant United States Attorneys