MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

PETER B. AXELROD (CABN 190843)
JOHN H. HEMANN (CABN 165823)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California  94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   Peter.Axelrod@usdoj.gov
   John.Hemann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 11-0573 JSW |
| Plaintiff, | OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF JAMES V. FEINERMAN |
| v. | |
| WALTER LIEW; CHRISTINA LIEW; USA PERFORMANCE TECHNOLOGY, INC.; AND ROBERT MAEGERLE, | Date: November 14, 2013<br>Time: 2:00 p.m.<br>Courtroom: 19th Floor, Ctrm. 11 |
| Defendants. | |

     Defendants' motion to exclude the testimony of government expert James Feinerman completely fails to address the substantive opinions set forth in his report, and instead attempts to draw attention to the source of the information utilized by Professor Feinerman in outlining the issues on which he intends to offer testimony. Defendants take no issue with Professor Feinerman's qualifications and focus almost entirely on the reliability of Wikipedia as a source of information. Defendants also move to exclude certain of Professor Feinerman's opinions as lacking sufficient support. Both of these arguments fall flat, however, as the opinions at issue are supported by a range of primary and secondary sources and there is no basis to exclude Professor Feinerman's testimony.

OPP. TO MOT. TO EXCLUDE FEINERMAN
Case No. CR 11-0573 JSW

**A. The Expert Testimony Should Not Be Excluded Based Upon the Source**

Defendants make no effort in their motion to challenge the qualifications of Professor Feinerman. Not once do they argue that he lacks the training or experience to offer opinions as to various issues related to "the processes by which the Chinese government, through various officials and agencies, attempts to induce and persuade overseas Chinese to obtain technology from Western sources . . . ." Feinerman Report at 1. It is unsurprising that defendants opted against an attack upon Feinerman's credentials, as his education and experience make him extremely qualified to speak to the issues at hand. Feinerman received a B.A. in Chinese Studies from Yale, a J.D. from Harvard Law School, where he specialized in East Asian Legal Studies, and a Ph.D. in East Asian Languages and Literature from Yale. In addition, he has studied in Hong Kong and mainland China, including stints teaching at both the Peking University Law Department and the Law School of Tsinghua University. Professor Feinerman has been on the faculty at Georgetown University Law Center since 1985 and is currently the James M. Morita Professor of Asian Legal Studies and the Associate Dean for International and Transnational Programs. He speaks fluent Mandarin and Cantonese.

With no ability to challenge Professor Feinerman's qualifications, defendants instead attempt to discredit him through an attack on the sourcing for his expert disclosure, contending that his opinions were based completely upon content from Wikipedia and therefore lack sufficient reliability. Defendants' motion cites a number of cases to support the proposition that Wikipedia is an inherently unreliable source of information. Defs' Mot. to Exclude at 7. From this argument regarding the reliability of Wikipedia generally, defendants then ask the Court to somehow conclude that any expert report utilizing language from Wikipedia should result in that expert's testimony being stricken in its entirety, or in the alternative that any sections containing language from Wikipedia be stricken. Defs' Mot. to Exclude at 10. Nearly all of the cases cited by defendants as to the reliability of Wikipedia involved situations clearly distinguishable from the facts at issue in this matter. The scenarios addressed in these cases include instances in which: a lower court had improperly relied upon Wikipedia in reaching its decision, *see Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008); *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 781 (Fed. Cl. 2006), a juror improperly

utilized a Wikipedia page to define a term at issue in the case, *see United States v. Lawson*, 677 F.3d 629, 650-51 (4th Cir. 2012), a court refused to take judicial notice of information from Wikipedia, *see Gonzales v. Unum Life Ins. Co. of Amer.*, 861 F. Supp. 2d 1099, 1104 n.4 (S.D. Cal. 2012), and a court declined to accept a party's argument by Wikipedia content, see *Ferry v. Prudential Ins. Co. of Amer.*, 2011 WL 4828816, at *15 (D. Maine Oct. 10, 2011); *Kole v. Astrue*, 2010 WL 1338092, at *7 n.3 (D. Idaho Mar. 31, 2010). While some courts have expressed reservations as to the reliability of Wikipedia, whether such concerns should result in the exclusion of expert testimony that utilizes it as source is entirely another matter.

In *Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357 (S.D.N.Y. 2007), the court addressed a motion to exclude expert testimony in which defendants argued the opinions should be excluded because they relied upon "inherently unreliable internet sources," including Wikipedia. *Id.* at 361. The *Alfa* court first took issue with the notion that Wikipedia is inherently unreliable, noting that many judicial opinions have cited to internet sources, including Wikipedia. *Id.* (citing cases from six separate United States courts of appeals as well as two cases from the Southern District of New York relying on such sources).[1] Turning to the expert testimony at issue, the court then noted that the defendants failed to "point to any actual errors" in the Wikipedia entry cited by the expert. *Id.* Considering both the use of internet sources by courts and the lack of any specific objections to the Wikipedia entries at issue, the *Alfa* court found that the information provided on Wikipedia "is not so inherently unreliable as to render inadmissible any opinion that references it." *Id.* at 362.

In addition to its holding as to the reliability of Wikipedia as a source, the *Alfa* court also specifically distinguishes *Campbell*, the case cited multiple times by defendants in the motion to exclude the expert testimony of Professor Feinerman. *See* Defs' Mot. to Exclude at 3, 8. The *Alfa* court notes that the *Campbell* case concerned findings by a special master where conclusions of a medical expert were rejected based upon information garnered from Wikipedia. *Id.* The remedy set forth in *Campbell*, however, "was to give the experts in question 'an opportunity . . . to corroborate or refute the

---

[1] In fact, in *United States v. Lawson*, 677 F.3d 629 (4th Cir. 2012), one of the cases cited by defendants in support of the proposition that Wikipedia is an unreliable source of information, the court notes that the United States Court of Appeals for the Fourth Circuit had "cited Wikipedia as a resource in three cases." *Id.* at 651 n.28.

GOV'T OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW                3

information contained in the articles.'" *Id.* (quoting *Campbell*, 69 Fed. Cl. at 781). For this reason, the court in *Alfa* determined that the expert testimony in question should be allowed, writing, "even if the expert's opinion were largely or entirely based upon Wikipedia and other internet sites -- which it is not -- the analogous solution would be to permit [the expert] to testify and to allow the parties to apply the tools of the adversary system to his report." *Id.* (citing *Daubert*, 509 U.S. at 596).[2]

Although the language used to describe certain topics of proposed testimony by Professor Feinerman tracks various Wikipedia entries on those subjects, this is not a basis to exclude his expert testimony from the case, and the case law cited by defendants does not support such action by the Court. Professor Feinerman's expert disclosure merely summarized his intended testimony and utilized language from Wikipedia as a concise English-language summary of his opinions on certain topics. The expert disclosure was not intended to be original, scholarly work, and citations were not considered necessary to support each general conclusion. In addition to the summary language obtained from the Wikipedia entries, Professor Feinerman relied upon a host of sources, both in English and Chinese, both hard copy and internet-based, and these sources support the opinions and conclusions set forth in the expert disclosure. Attached as Exhibit 2 to the Declaration of AUSA Axelrod (filed October 25, 2013) is a list of documents reviewed by Professor Feinerman in drafting his original August 8, 2013 expert disclosure. In addition to the materials provided by the United States and listed in the addendum to his expert disclosure, a list that included various items obtained by the FBI during the course of the investigation, Feinerman also utilized various books, articles, websites, reports, and primary sources like the Chinese Constitution and the Eleventh and Twelfth Five-Year Plans in drafting the expert disclosure. *See* Axelrod Decl., Ex. 2.

A quick examination of this list reveals that the opinions set forth in the August 8, 2013 expert disclosure are amply supported by host of sources, and the fact that the summary language used by

---

[2] In addition to *Campbell*, defendants' motion to exclude also relies on *Hamilton v. Menard, Inc.*, 2011 WL 3652449 (N.D. Ohio Aug. 19, 2011), which observed that, "Wikipedia . . . lacks the reliability required by the federal rules to form the basis of an expert's opinion." *Id.* at *2. The only support for this broad statement in *Hamilton*, however, is the *Campbell* case. For all of the reasons set forth above in the *Alfa* decision from the Southern District of New York, defendants' reliance upon *Hamilton* is misplaced.

GOV'T OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW            4

Professor Feinerman was from Wikipedia does not mean that opinions consistent therewith are wrong or unreliable.[3] Indeed, just as defendants were silent in their motion as to Professor Feinerman's qualifications, they provide no comments as to the substance of the Feinerman expert disclosure or the content of the Wikipedia pages. Consistent with the holding in *Alfa*, the appropriate action by the court in circumstances where questions have been posed as to the reliability of a resource relied upon by an expert is to allow the adversary process to play out. The Court should therefore deny defendants' motion to exclude expert testimony based upon unreliable sources.

### B. The Expert Testimony Has Sufficient Basis and Should Not Be Excluded

Defendants also argue that certain of Professor Feinerman's opinions are "broad statements" that are unsupported "by any facts or citations" and should therefore be excluded. Of particular concern to defendants are the sections of Feinerman's disclosures entitled "The Role of the Chinese Communist Party," "Pangang Group," and "Opinion." Defendants argue that these opinions are completely unsupported and fail to meet the standards of admissibility under Rule 702.

The Federal Rules of Evidence encourage the admission of expert testimony. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 588 (1993) (noting "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony" (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988))). "Expert testimony is liberally admissible under the Federal Rules of Evidence. . . . The presumption under the Rules is that expert testimony is admissible." Weinstein's Federal Evidence § 702.02; *see also United States v. Rahm*, 993 F.2d 1405, 1409-10 (9th Cir. 1993) (expert testimony liberally admitted under Federal Rules of Evidence).

While it is true that a court's gatekeeping function also applies to non-scientific knowledge, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-50 (1999), "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed R. Evid. 702 Advisory Committee Note to the 2000 amendment ("*Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the

---

[3] Defendants' motion to exclude also notes that two of the Wikipedia pages at issue have been noted by Wikipedia to have "issues." Defs' Mot. to Exclude at 8-9. Consistent with the rest of the motion, however, defendants fail to identify any specific inaccuracies on the Wikipedia pages or in the related portions of Feinerman's report.

GOV'T OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW                 5

adversary system.'" (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996))); *see also DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) ("[A] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury."). In considering the admission of non-scientific expert testimony, the Ninth Circuit has held that "far from requiring trial judges to mechanically apply the *Daubert* factors--or something like them--to both scientific and non-scientific testimony, *Kumho Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

Here, Professor Feinerman has offered opinions concerning the role of the Chinese Communist Party, the makeup and organization of the Pangang Group companies, and policies and practices of the Chinese government concerning the acquisition of intellectual property through both legal and illegal means. Feinerman Report at 7-8, 10-12, 18-19. First, Professor Feinerman's training and experience make him amply qualified to offer opinions on each of these topics. Second, as evidenced in the list of items reviewed, his opinions were based upon a wide array of sources, including books, news articles, and primary source materials. In addition to the 2013 *IP Commission Report*, which was cited in the "Opinion" section, several articles support Feinerman's conclusion that Chinese entities are engaged in the theft of intellectual property. *See* Axelrod Decl., Ex. 2.[4] Similarly, several of the sources provided in the list of documents reviewed are directly related to the organization and function of the Chinese Communist Party. *Id.*[5] As for the Pangang companies, Professor Feinerman reviewed both the Pangang Group Chengdu Steel & Vanadium website (in Chinese and English) as well as various news sources which provided information on the business entities. *Id.*[6]

---

[4] Relevant entries concerning Chinese intellectual property theft include: David Leonhardt, "The Real Problem with China [Intellectual Property Theft]," *New York Times*, January 11, 2011; Richard Blackden, "US Treasury Secretary Tim Geithner Blasts China for 'Systematically Stealing' US Intellectual Property," *Daily Telegraph*, September 23, 2011.

[5] Relevant entries regarding the Chinese Communist Party include: David Shambaugh, *China's Communist Party: Atrophy and Adaptation* (2009); Lawrence Sullivan, *Historical Dictionary of the Chinese Communist Party* (2011); Zheng Yognian, *The Chinese Communist Party as Organizational Emperor: Culture, reproduction, and transformation* (2009).

[6] Relevant entries regarding the Pangang companies include: information from Bloomberg, available online at: http://www.bloomberg.com/quote/000629:CH; information from Reuters, available online at: http://www.reuters.com/finance/stocks/overview?symbol=000629.SZ.

Despite defendants' attempt to characterize the content of Professor Feinerman's expert disclosure as "prejudicial," "inflammatory," "pernicious," and "lauded with hyperbole," Defs' Mot. to Exclude at 11-12, he relied on a varied list of sources in forming his opinions. *Id*. The expert disclosure did not cite to or provide a list of the various sources utilized in reaching the conclusions contained therein, but the attached list of materials makes clear for the Court that these items assisted Professor Feinerman in forming the opinions on which he intends to testify. The references to these source materials, which Professor Feinerman lists as "Documents Reviewed in Connection" with his disclosure statement, indicate that his opinions are "grounded in an accepted body of learning or experience" in his field. Fed R. Evid. 702 Advisory Committee Note to the 2000 amendment. Professor Feinerman's opinions as set forth in the "Role of the Chinese Communist Party," "Pangang Group," and "Opinion" sections of his expert disclosure are properly supported and therefore constitute appropriate expert testimony. The Court should deny defendants' motion to exclude these areas of testimony.

**C. Conclusion**

For the foregoing reasons, the Court should deny defendants' motion to exclude the expert testimony of James V. Feinerman.

DATED: October 25, 2013

    Respectfully submitted,

    MELINDA HAAG
    United States Attorney

    /s/
    _____
    PETER B. AXELROD
    JOHN H. HEMANN
    Assistant United States Attorneys