KEKER & VAN NEST LLP
STUART L. GASNER - # 164675
sgasner@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
KATHERINE M. LOVETT - # 276256
klovett@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF ROBERT GIBNEY AND JAMES FEINERMAN**<br><br>Date:   November 14, 2013<br>Time:   2:00 p.m.<br>Place:  Courtroom 11, 19th Floor<br>Dept.:  Hon. Jeffrey S. White |

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

I.  INTRODUCTION

As the parties' briefing on their respective *Daubert* motions comes to a close, it is clear that the parties are in agreement on many fronts. For one, the parties agree that the jury will require expert testimony in order to understand a number of factual matters in this case; the parties have accordingly produced expert disclosures for experts on both sides who intend to testify concerning the titanium dioxide industry, financial records, and Chinese law and business. The parties also agree that many issues, such as the correctness of an expert's testimony and the weight that should be accorded to such testimony, are best reserved for the cross-examination of an expert witness and should not to be resolved by the Court on a pretrial *Daubert* motion.[1] The parties also both urge that it may be advisable to defer decision on the admissibility of certain types of expert testimony until it becomes clear at trial whether such testimony is relevant, reliable, and otherwise admissible under the Federal Rules of Evidence.[2] Most importantly, the parties agree that the Court, as gatekeeper, has substantial discretion in determining the admissibility of proffered expert testimony.[3]

However, now that the smoke has cleared, it is apparent that some of the government's proposed expert testimony is so far outside of the realm of reliability, relevance, or other provisions of the Federal Rule of Evidence governing admissibility that the Court should exercise its discretion to prohibit the jury from hearing that testimony at trial. As explained in defendants' opening papers, significant portions of the proposed testimony of James Feinerman and Robert

---

[1] *See, e.g.*, Government's Opposition to Defendants' Motion to Exclude Expert Testimony of Robert Gibney (Dkt. 513) ("Gibney Opp.") at 5 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993), for the proposition that vigorous cross-examination is one of the "traditional and appropriate means of attacking shaky but admissible evidence"); Defendants' Opposition to Government's Motion to Exclude Expert Witness Testimony of Donald J. Lewis (Dkt. 512) ("Lewis Opp.") at 4 (citing *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001), to explain that a challenge to the ultimate correctness of an expert's testimony is properly raised on cross-examination and through the testimony of contrary expert witnesses).

[2] *See, e.g.*, Gibney Opp. at 9 ("[T]he decision on whether testimony is cumulative should be made not now . . . but rather after the first expert testifies at trial in light of what topics remain to be covered."); Defendants' Opposition to Government's Motion to Exclude Defendants' Expert Witnesses Gerald Cox and Gordon Klein (Dkt. 517) at 8 ("It is simply too early for the Court to determine if the foundation for Mr. Klein's opinions will be laid at trial.").

[3] *See, e.g.*, Lewis Opp. at 3; Government's Motion to Exclude Expert Witness Testimony of Donald Lewis (Dkt. 488) ("Lewis Mot.") at 4.

1
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

Gibney fall within this category. The government bears the burden of demonstrating the admissibility of its expert witnesses' testimony, and it has failed to do so either in its expert disclosures or its opposition papers. *See Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996) (the proponent of expert testimony bears the burden of proving its admissibility). As explained below, it is essential that, at the very least, the Court order the exclusion of the most problematic proposed testimony from Mr. Gibney and Professor Feinerman.

## II. ARGUMENT

### A. Mr. Gibney should not be permitted to stray beyond the bounds of his expertise and testify about technical and design aspects of the titanium dioxide manufacturing process.

The government has conceded that there is "overlap" between the anticipated trial testimony of Robert Gibney and Jim Fisher, the government's proposed titanium dioxide experts. *See* Gibney Opp. at 9. While defendants believe that this significantly downplays the level of repetition in Messrs. Gibney and Fisher's reports,[4] defendants are willing to accept at face value the government's representation that "the government *will not* call both witnesses to testify as to the same items." *See* Gibney Opp. at 2 (emphasis in original). Although the expert disclosures themselves did not make this commitment apparent, given the government's stated intention not to present cumulative testimony, the Court need not strike Mr. Gibney's testimony as cumulative at this time, although defendants, of course, reserve the right to object to cumulative testimony from the government's titanium dioxide-related witnesses at trial subsequent to the presentation of the government's first expert witness on the subject.

However, defendants disagree that Mr. Gibney is qualified to testify about a great deal of the subjects in his expert disclosure. While both the expert disclosure statement, Dkt. 482-2 ("Gibney Disclosure"), and Mr. Gibney's newly disclosed resume, Dkt. 521-2 ("Gibney CV"), reveal that Mr. Gibney is an accomplished businessman and corporate executive, they do not show *any* experience whatsoever in the technical side of titanium dioxide production, *any*

---

[4] *See* Defendants' Motion to Exclude Expert Testimony of Robert Gibney (Dkt. 482) ("Gibney Mot.") at 7 (noting that "paragraphs 1-3, 3(a)-(d), 4-5, 5(a), 6, 7, 7(a), 9-13, 13(a)-(b), 13(d)-(g), 14-18, and 20-21 of Mr. Gibney's expert disclosure are identical or substantially the same as the subjects identified and described in Mr. Fisher's expert disclosure").

2
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

advanced engineering or scientific education, or *any* experience in the design or construction of a titanium dioxide plant, including on a purely managerial level.  The government further argues that Mr. Gibney is "a consultant to the TiO2 industry," Gibney Opp. at 3, as if becoming a "consultant" instantly lends one expertise in all areas of an industry, even technical matters for which one lacks education or hands-on experience.  But Mr. Gibney's listed "strengths" on his resume do not include any technical matters; they cover the expected topics that a corporate executive would have expertise in, including "team building and development," "mergers and acquisitions," and "corporate restructuring."  *See* Gibney CV at 1.  The government has simply failed to show that Mr. Gibney has any relevant experience on the technical side of the titanium dioxide world

As comprehensively outlined in defendants' moving papers, Gibney Mot. at 6, Mr. Gibney's proposed testimony is full of technical details regarding which he has no expertise.  For example, Mr. Gibney states that he intends to testify about "how he would go about the process of designing" a titanium dioxide factory.  Gibney Disclosure, ¶ 22.  Yet Mr. Gibney has never been involved in the design of a titanium dioxide plant, even on the managerial side, as far as his expert disclosure and belatedly-disclosed resume reveal.  Mr. Gibney also intends to testify in detail about a number of pieces of equipment involved in the titanium dioxide manufacturing process, despite no indication that he understands the technical aspects of those machines.  For example, Mr. Gibney's expert disclosure states that he intends to testify "that it is difficult to determine the correct size of the reactor slot" in an oxidation reactor in order "to maximize quality output." Gibney Disclosure, ¶ 15.  How a non-engineer would know this highly technical information is not explained.  Mr. Gibney also intends to describe for the jury what the diagrams designated Trade Secret 2 and 4 depict, even though he has no disclosed engineering or design expertise.  *Id.* at ¶¶ 14, 16.  These are but a few examples of the detailed engineering and design testimony that the government intends to try to offer through Mr. Gibney, a former corporate executive with no science background.

Mr. Gibney should not be permitted to testify about technical matters in which he has no expertise, especially given that the government has another, more qualified technical expert, Mr.

3
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

Fisher, standing at the ready to testify on exactly the same topics. Although an expert does not have to have specialized expertise in every area his testimony covers, he cannot be permitted to testify about areas in which he has no special knowledge, skill, experience, training, or education. *See* Fed. R. Evid. 702. "A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion." *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002).

The cases cited by the government do not hold to the contrary. The court in *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991), discussed the special *Daubert* standards applicable in products liability cases. In that context, the court determined that a mechanical engineer with special expertise in the safe design of farm equipment should be permitted to testify about consumer expectations because "[i]nherent in the safe design of mechanical equipment is some anticipation of how such equipment will be perceived and used by consumers." *Id.* By contrast, technical knowledge of, for example, slot reactor size and the meaning of detailed process flow diagrams is not an "inherent" part of managerial knowledge acquired as an executive at a titanium dioxide company.

In *United States v. Liu*, 716 F.3d 159, 166 (5th Cir. 2013), the defendant proffered the testimony of a chemical engineer knowledgeable about the equipment used in the manufacture of chlorinated polyethylene. Even though the expert had never worked in a chlorinated polyethylene plant, the defendant intended the expert to testify about the differences between engineering drawings from two different companies manufacturing the chemical. *Id.* at 166-67. The appellate court held that the expert's fifty years of experience in chemical engineering, which included time working in polymer plants and with the very equipment at issue in the defendant's case, rendered the expert qualified to testify about the chlorinated polyethylene manufacturing process. *Id.* at 169. The facts of *Liu* are not comparable to the situation at hand. That case dealt with a chemical engineer testifying about technical matters outside of, but closely related to, his direct expertise; this case concerns a businessman with no technical expertise whatsoever testifying about a distinct subject matter well outside of experience, education, or skillset. It is one thing to allow

4

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

an expert in a field to testify about specific applications in that field with which the expert is not intimately familiar. *See United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993) (holding that a mental health specialist with considerable experience working with sexually abused children as a children's mental health specialist had sufficient expertise to testify about whether a child would suffer emotional trauma from testifying in the courtroom in the presence of the defendant). It is another thing entirely to say that an executive at a company is qualified to testify about the technical details of what that company produces. Consequently, to the extent Mr. Gibney intends to testify about the scientific and technical aspects of designing a titanium dioxide plant or of equipment that makes up part of the manufacturing process, that testimony should be excluded at trial.

> **B.     Feinerman's proposed testimony should be excluded, especially his hyperbolic statements suggesting a Chinese propensity to steal trade secrets.**

As explained in defendants' opening papers, the proposed testimony of James Feinerman, the government's China expert, is unreliable because it is not based on sound methodology. *See* Defendants' Motion to Exclude Expert Testimony of James V. Feinerman (Dkt. 477) ("Feinerman Mot.") at 6-12. The Government frankly concedes that Professor Feinerman plagiarized the majority of his expert disclosure verbatim from Wikipedia without a single citation attributing his words to their true source. *See* Government's Opposition to Defendants' Motion to Exclude Expert Testimony of James V. Feinerman (Dkt. 515) ("Feinerman Opp.") at 2-4. What the government fails to explain is how pure reliance on statistics, facts, and other statements directly lifted from Wikipedia constitutes a methodology satisfying "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007) (quoting *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002)) (internal quotation marks omitted). One would expect that Professor Feinerman, an alumnus of Yale and Harvard and a professor at Georgetown Law Center, would eschew Wikipedia in his normal scholarship. Strikingly, the government at no point argues that plagiarism from Wikipedia is an acceptable practice in academia, Professor Feinerman's field.

5
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

The government's arguments that plagiarism from Wikipedia does not render an expert opinion unreliable are weak. The government relies upon a single case approving of the use of Wikipedia-derived expert testimony, *Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357, 362 (S.D.N.Y. 2007). But this out-of-circuit case is well outside of the mainstream of authority directly considering the reliability of Wikipedia; in fact, courts in this district and circuit have held repeatedly that Wikipedia is not a reliable source. *See, e.g., Vistan Corp. v. Fadei, USA, Inc.*, 2013 WL 139929, at *9 n.10 (N.D. Cal. Jan. 10, 2013); *Gonzales v. Unum Life Ins. Co. of Amer.*, 861 F. Supp. 2d 1099, 1104 n.4 (S.D. Cal. 2012); *In re Toys "R" Us—Delaware, Inc.—FACTA Litigation*, 2010 WL 5071073, at *13 n.30 (C.D. Cal. Aug. 17, 2010); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 976 n.19 (C.D. Cal. 2010); *Kole v. Astrue*, 2010 WL 1338092, at *7 n.3 (D. Idaho Mar. 31, 2010).

The government's argument that defendants have failed to show that any of the information relied on by Professor Feinerman from Wikipedia is actually wrong misses the point. The government bears the burden to establish, affirmatively, the reliability of its expert. *See Lust*, 89 F.3d at 598. Professor Feinerman has chosen to rely on an inherently untrustworthy source that can be edited at will by anyone in the world with an internet connection. It is widely known that Wikipedia articles are susceptible to inaccuracies or, even worse, tampering. *See, e.g.*, Geoffrey A. Fowler, "Wikipedia Probes Suspicious Promotional Articles," THE WALL STREET JOURNAL, Oct. 21, 2013, *available at* http://blogs.wsj.com/digits/2013/10/21/wikipedia-probes-suspicious-promotional-articles/?mod=djem_MediaJournal (reporting that several hundred Wikipedia editor accounts may have been used to deceptively manipulate the content of Wikipedia pages promoting businesses). Even in the unlikely event that all of the information cribbed from Wikipedia in Feinerman's disclosure is accurate, the ability to recite information copied from a public website does not render an expert reliable.

But of even greater concern to defendants is the offensive and culturally insensitive generalization that Professor Feinerman makes about Chinese people working in business and government entities. As noted in defendants' moving papers, Professor Feinerman states, "[n]ational industrial policy goals in China encourage intellectual property theft, and an

6
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

extraordinary number of Chinese in business and government entities are engaged in this practice." See Feinerman Mot. at 12.  The sweeping statement that "an extraordinary number of Chinese in business and government entities" are engaged in intellectual property theft is not based on reliable information or methodology and Feinerman and the government have failed to point to *any* support for that generalization.  In its opposition, the government points to two news articles it claims show that "Chinese entities are engaged in the theft of intellectual property," Feinerman Opp. at 6 & n.4, but these articles do not support the notion that an extraordinary number of Chinese *people* in business and government are intellectual property thieves, which is the proposition Feinerman makes.[5]  The government has failed to explain how Professor Feinerman's generalization about Chinese people is grounded in an accepted body of learning, and so it should be excluded.  See Fed. R. Evid. 702 Advisory Committee Note to the 2000 amendment ("The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.").

In addition, Mr. Feinerman's generalization should be excluded as an inflammatory statement that comes perilously close to a statement that Chinese people have a propensity to steal intellectual property, solely on the basis of their ethnicity.  This statement should be excluded under Fed. R. Evid. 403 as unduly prejudicial.  It is ironic that the government argued in its motion to exclude defendants' expert Donald Lewis that Professor Lewis made "offensive" generalizations about "the general character of Chinese people."  See Lewis Mot. at 6.  In fact, Professor Lewis was explaining common Chinese business norms; it is Professor Feinerman who makes a broad-brush generalization about Chinese people that is based on nothing more than ethnic stereotyping.  Professor Feinerman's testimony is meant to suggest that, because Chinese

---

[5] The government similarly fails to provide any support for Professor Feinerman's statement, without any citation to source material, that "as a state-owned enterprise, [Pangang's] parent company is controlled *of course* by SASAC." See Feinerman Mot. by 11 (emphasis added).  The government suggests in its opposition that Feinerman reviewed the websites of Pangang-related entities, as well as stock quotes online, but provides no support for the idea that every single state-owned enterprise is *of course* controlled by China's State-owned Assets Supervision and Administration Commission.  See Feinerman Opp. at 6-7 & n.6.

7
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02

people were involved in the contracts at issue in this case, it is *extraordinarily* likely that they were engaged in intellectual property theft, and that is simply not admissible testimony under either Rule 702 or Rule 403.  At the very least, this statement must be excluded at trial.

### III.     CONCLUSION

For the foregoing reasons, defendants Walter Liew, Robert Maegerle, and USAPTI respectfully request that the Court exclude the objectionable portions of the proposed testimony of Robert Gibney and James Feinerman.

Dated:  November 1, 2013                         KEKER & VAN NEST LLP

By:  */s/ Stuart L. Gasner*
STUART L. GASNER
SIMONA A. AGNOLUCCI
KATHERINE M. LOVETT

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

Dated:  November 1, 2013           By:  */s/ Jerome F. Froelich, Jr.*
JEROME J. FROELICH, JR.

Attorney for Defendant
ROBERT J. MAEGERLE

Dated:  November 1, 2013           By:  */s/ Doron Weinberg*
DORON WEINBERG

Attorney for Defendant
CHRISTINA LIEW

8
DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
ROBERT GIBNEY AND JAMES FEINERMAN
Case No. CR 11-0573-JSW (NC)

789031.02