KEKER & VAN NEST LLP
STUART L. GASNER - # 164675
sgasner@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
KATHERINE M. LOVETT - # 276256
klovett@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants WALTER LIEW and
USA PERFORMANCE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WALTER LIEW, CHRISTINA LIEW, USA PERFORMANCE TECHNOLOGY, INC., and ROBERT MAEGERLE,<br><br>　　　　　Defendants. | Case No. CR 11-0573-JSW (NC)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL DAYTON**<br><br>Date:　　November 14, 2013<br>Time:　　2:00 p.m.<br>Place:　　Courtroom 11, 19th Floor<br>Dept.:　　Hon. Jeffrey S. White |

**MEMORANDUM OF POINTS AND AUTHORITIES**

In an attempt to introduce testimony about DuPont's history in the titanium dioxide industry and speculation about the value of its alleged trade secrets, the government intends to present Daniel Dayton at trial, as either a lay or expert witness. Apparently, the government does not much care which kind of witness Mr. Dayton is, as long as he is permitted to testify about every topic covered in the wide-ranging FBI interview memorandum that the government produced to defendants in lieu of an expert disclosure statement. That document was not a sufficient disclosure under Federal Rule of Criminal Procedure 16(a)(1)(G) and Mr. Dayton should accordingly not be permitted to testify about facts and issues that extend beyond his rational perception and personal knowledge. Even if Mr. Dayton is permitted to testify as an expert witness, certain parts of his proposed testimony are not appropriate expert testimony because they are not based on a reliable methodology. Defendants' motion to exclude portions of the proposed testimony of Mr. Dayton should therefore be granted.

**A.  Dayton's testimony should be limited to those facts within his own observation and recollection and perceived from his own senses.**

Defendants are in agreement with the government that lay witnesses are permitted under Federal Rule of Evidence 602 to testify about personal knowledge acquired through the performance of job duties. *See* Government's Opposition to Defendants' Motion to Exclude Expert Testimony of Daniel Dayton (Dkt. 514) at 2. However, much of Mr. Dayton's proposed testimony goes beyond personal knowledge acquired as an employee of DuPont from 1973 to 2011 and improperly veers into the realm of expert testimony.

First, Mr. Dayton's FBI interview memorandum contains information about DuPont's history going back to 1928, including detailed statements about DuPont's intentions and actions taken in the 1940s. *See* Dayton FBI Interview Memorandum (Dkt. 523-1) ("Dayton 302") at 4, 11. Mr. Dayton could not have been personally involved in any of those events or decisions, given that he joined the company in the 1970s, and he has not suggested that his responsibilities at DuPont included any sort of historical research or recordkeeping.

In addition, Mr. Dayton wildly speculates about both DuPont's expenditures on research and development and about the value of the alleged trade secrets at issue in this case. Mr. Dayton's interview memorandum states in a free-standing paragraph that he "believed that DuPont had spent approximately $1 billion on research and development on TiO2" but provides no basis whatsoever for that belief. Dayton 302 at 11. Mr. Dayton "speculated" that a certain DuPont drawing defendants allegedly misappropriated represented "$20 million of research and development." Dayton 302 at 13. Mr. Dayton also "speculated" that another DuPont drawing allegedly misappropriated by the defendants "was not as valuable," but that its value "was not insignificant." *Id.* at 14. Mr. Dayton "estimated" that the value of the documents "that were provided for him to review was "probably . . . $100 million." *Id.* at 10. Finally, Mr. Dayton estimated that the monetary value of a DuPont Basic Data Manual allegedly misappropriated by the defendants "was a 'huge' number." *Id.* at 15. These statements, which are entirely without foundation and which Mr. Dayton admits are not based on personal observation, are not admissible lay testimony. *See* Fed. R. Evid. 701(a) (lay witness testimony must be rationally based on the witness' perception); *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) (noting that a lay witness' opinions must be based upon direct perception of the event and must not be speculative).

The cases cited by the government in support of Mr. Dayton's so-called percipient testimony are inapposite, because none of the individuals involved in those cases was testifying about historical information or information beyond the normal scope of their employment duties. *See Stuart v. UNUM Life Ins. Co. of Amer.*, 217 F.3d 1145, 1155 (9th Cir. 2000) (determining that it was permissible for a former director of human services to testify about his company's contributions to an insurance plan where he himself signed the company's application for that plan); *United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977) (determining that a lay witness custodian of records could testify about normal company procedures that were in place a few months before his employment where those practices had not changed since that time). In addition, the government's citation to *United States v. Liu*, 716 F.3d 159, 164-65 (5th Cir. 2013), accomplishes nothing; although a Dow chemical engineer gave lay testimony in that case, the

2

court did not opine on the propriety or impropriety of the subjects covered in the engineer's testimony because the defendant did not challenge that testimony on appeal.

In sum, Mr. Dayton should be limited to percipient testimony appropriate for a lay witness and should not be permitted to speculate or provide information about topics outside of his personal knowledge, including DuPont's history, the value of its research and development, and the value of the alleged trade secrets in this case.

### B. To the extent that the Court allows Mr. Dayton to testify as an expert, Mr. Dayton cannot provide opinions on matters on which he has no expertise and for which he applied no methodology whatsoever.

As a failsafe, the government now argues for the first time—despite its prior representations to the contrary[1]—that Mr. Dayton will serve as an expert witness at trial and has been properly disclosed as an expert witness under Rule 16(a)(1)(G). Mr. Dayton's FBI interview memorandum did not meet the requirements of a Rule 16 expert disclosure, particularly because the memorandum does not specifically identify the topics that Mr. Dayton intends to testify about at trial, but rather is a meandering record of an interview that appears to have stretched over two conversations and that resembles the FBI 302s disclosed for every other lay government witness in this case. *See* Dayton 302 at 1. The government has elected to provide an internal memorandum instead of a true summary of Mr. Dayton's intended testimony, and that is not sufficient to satisfy Rule 16(a)(1)(G). *See United States v. Lieng*, 2012 WL 1569810, at *2

---

[1] The government previously maintained that it does not believe Mr. Dayton is an expert witness. *See* Defendants' Motion to Exclude Expert Testimony of Daniel Dayton (Dkt. 480) at 1-2; *see also* Declaration of Stuart L. Gasner in Support of Motion to Exclude Expert Testimony of Daniel Dayton (Dkt. 480-1), Exhs. A-B.

3
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT TESTIMONY OF DANIEL DAYTON
Case No. CR 11-0573-JSW (NC)

788820.01

1  (E.D. Cal. Apr. 30, 2012).[2]  Mr. Dayton should therefore be limited to lay witness percipient testimony, as contemplated by Rule 602, at trial.

Moreover, even if Mr. Dayton had been properly disclosed as an expert witness, his casual mention of various subjects during the course of an interview is insufficient to meet the requirements of *Daubert* and many of his opinions should be excluded under Federal Rule of Evidence 702.  An expert's methodology must be reliable in order for his resulting conclusions to be admissible and, to make that reliability determination, "the court must assure that the methods are adequately explained."  *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002). Moreover, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702 Advisory Committee Note to the 2000 amendment.  But Mr. Dayton's FBI 302 reveals no methodology whatsoever behind his valuation of allegedly misappropriated drawings, of the materials provided to him for review, or of DuPont's expenditures on titanium dioxide research and development.  *See* Dayton 302 at 10-15.  In fact, Mr. Dayton frankly stated that the numbers he provided to the FBI were based on speculation, belief, estimation, and approximation. *Id.*  Mr. Dayton cannot be permitted to speculate about the value of the technology and trade secrets at issue under the mantle of an "expert witness" when he in fact has no knowledge, personal or specialized, of the facts to which he is purporting to testify.

---

[2] Moreover, even if the interview memorandum was a proper disclosure, it is unclear why the government feels that it needs three titanium dioxide experts at trial.  It appears that the government intends to offer Mr. Dayton to bolster the conclusions already provided by Mr. Fisher and Mr. Gibney.  If Mr. Dayton was properly disclosed as an expert, his testimony should be excluded as unnecessarily cumulative and a waste of time under Federal Rule of Evidence 403. *See, e.g.*, *McCabe v. Ramparts, Inc.*, 2012 WL 2873842, at *1 (D. Nev. July 13, 2012) (where proposed expert testimony from four witnesses overlapped significantly, court concluded testimony was impermissibly cumulative and allowed only one expert on that topic); *Engman v. City of Ontario*, 2011 WL 2463178, at *8 (C.D. Cal. June 20, 2011) (allowing two experts to testify on issues that substantially overlapped would be cumulative); *Direct Focus, Inc. v. Admiral Ins. Co.*, 2002 WL 34364134, at * 1 (W.D. Wash. Apr. 11, 2002) (requiring defendant to select one witness to testify in its case in chief where experts offered the same opinions on the same subject.).

# CONCLUSION

For the reasons set forth above, Mr. Dayton should be limited to the proper sphere of testimony for a lay witness and should not be permitted to speculate or offer specialized opinions beyond his own perceptions. Should the Court find that Mr. Dayton was properly disclosed as an expert witness, Mr. Dayton should still not be permitted to testify about matters for which he has not explained a reliable methodology.

Dated: November 1, 2013         KEKER & VAN NEST LLP

                                By:  */s/ Stuart L. Gasner*
                                     STUART L. GASNER
                                     SIMONA A. AGNOLUCCI
                                     KATHERINE M. LOVETT

                                     Attorneys for Defendants WALTER LIEW and
                                     USA PERFORMANCE TECHNOLOGY, INC.

Dated: November 1, 2013         By:  */s/ Jerome F. Froelich, Jr.*
                                     JEROME J. FROELICH, JR.

                                     Attorney for Defendant
                                     ROBERT J. MAEGERLE

Dated: November 1, 2013         By:  */s/ Doron Weinberg*
                                     DORON WEINBERG

                                     Attorney for Defendant
                                     CHRISTINA LIEW

788820.01