1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  JOHN H. HEMANN (CABN 165823)
   PETER B. AXELROD (CABN 190843)
5  Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         FAX: (415) 436-7234
8        E-Mail: john.hemann@usdoj.gov

9  Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 11-573-JSW |
| Plaintiff, | UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO EXCLUDE DEFENSE EXPERTS COX AND LEWIS |
| v. | |
| WALTER LIEW; CHRISTINA LIEW; USA PERFORMANCE TECHNOLOGY, INC.; AND ROBERT MAEGERLE, | Date: November 14, 2013<br>Time: 2:00 p.m. |
| Defendants. | |

The United States submits this reply to defendant Walter Liew's arguments regarding the admissibility of expert testimony from Gerald Cox and Gordon Klein.

**A.  Cox's Testimony Should Be Excluded In Part**

Although irrelevant and a waste of the Court's and jury's time, the first two topics of Cox's testimony – regarding defendant's QuickBook records and the connection of those records to the filed tax returns – do no harm to the truth, and the government's objection to this testimony is not strenuous.

GOV'T REPLY RE: TESTIMONY OF COX AND KLEIN                 1
CASE NO CR-11-0573-JSW

However, third area of testimony is unreliable and misleading. Cox proposes to testify that the funds that Walter Liew directed from Mega Bank to the six Singapore companies with which he was involved, were "consistent with an arrangement similar to a trust or escrow account, where the funds are held temporarily and disbursed to third parties." Def. Opp. at 3:4-5.

Cox does not anywhere state what this opinion is based upon and defendant does not rescue him in his opposition to the government's motion. Cox's report is devoid of supporting references and defendants do not identify any in their opposition memorandum. This is not surprising, for it would be surprising to be able to reach this conclusion *without being able to reference the documents that create these supposed trusts or escrow accounts.* Cox cannot explain what is unique about these transfers that gives them the appearance of trusts or escrow transfers. Indeed, Cox cannot say whether they are trust *or* escrow transfers – trusts and escrow accounts are different, as are trustees and escrow agents.

There is no evidence of trust or escrow agreements. If there were such agreements, Mega Bank presumably would have them. But Mega Bank does not have any such agreements and neither do defendants, as none exist.

Cox is not an expert on trusts or escrow accounts. He has not examined any trust or escrow agreements in this case. His "expert" testimony on this subject is based entirely on the existence of hypothetical agreements. It is, as such, neither reliable nor helpful to the jury and should be excluded to the extent that it concerns the transfers to the Singapore entities.

**B. Klein's Testimony Should Be Excluded Under Rules 702 And 403**

Klein's testimony is fundamentally misleading and designed to subvert the truth.

1. Defendant first says that the motion to exclude Klein is premature because we don't know whether there will actually be any evidence that there was a joint venture or a trust relationship. But the truth is that *there is no evidence of a joint venture or trust relationship* or defendants would have directed the court's attention to that evidence.

    a. Defendants suggest that some evidence might be produced in reciprocal discovery. The government requested reciprocal discovery on February 14, 2013. (See Attachment A). None has been provided. Defendant, incredibly, presents this as basis for denying the motion

GOV'T REPLY RE: TESTIMONY OF COX AND KLEIN    2
CASE NO CR-11-0573-JSW

       to exclude Klein. He argues that "[t]here is no way at this juncture to predict reliably what evidence will or will not be admitted by the time Mr. Klein testifies... The government has yet to receive reciprocal discovery from the defense, which will be provided at the time of exchange of exhibit and witness lists." Def. Opp. at 8:8-17. Far from providing a basis for denying the motion to exclude Klein, withholding relevant reciprocal discovery until after the *Daubert* motions are briefed should be deemed a violation of defendant's reciprocal discovery obligations under Rule 16.

  b. Nor did Klein cite as a basis for his opinion a single piece of evidence that a joint venture or trust relationship existed. If such evidence exists in some future reciprocal discovery, it was not identified as a basis for Klein's opinions, as required by Rule 16.

  c. Defendant's contention that he is struggling to collect such evidence is worth exploring. Defendant claims that the evidence he needs is all in Singapore and China and he cannot obtain any help from people there – including his wife's relatives – to obtain that evidence. But to believe this, one must believe that (a) that the Liews, Performance Group, and USAPTI were actually involved in partnerships, joint ventures, or trust relationships and (b) they did not maintain *any records* – financial statements, accounting records, disclosure statements, contracts, agreements, receipts, records, correspondence, etc. – of these vehicles in the United States; that all of the records that demonstrate the existence of joint ventures or trust relationships between two U.S. citizens and their two U.S. companies, on one hand, and six Singapore companies to whom they funneled over $22 million, on the other, exist entirely off-shore. This is not a reasonable assumption.

  d. The Court can and should hold that *as of now* there is no reliable basis for Klein's opinion testimony and that to allow him to testify would present a risk of misleading the jury that vastly outweighs his probative value.

  2. Klein wishes to testify about the tax treatment that would apply in circumstances that have been invented by the defense. It is possible to close one's eyes and imagine a flying pig, but it would be absurd to allow a professor of agriculture to opine hypothetically about how high a fence

would be needed to contain said pig.  And so it is here.  Defendant wishes the jury to imagine that he entered into partnerships, joint ventures, or trust relationships of some sort with six Singapore companies, but did not keep documentation of those relationships in the United States and cannot get his former business partners to send him any records.  He is free to do that.  What he cannot do is call a professor to lend credence to a fanciful theory for which there is not an iota of factual support.

3. Klein does not and cannot say that there was a joint venture or trust relationship.  He freely hypothesizes about what things might look like *if* such a thing existed, but *whether* such a thing exists is beyond his ability to say.

4. Klein also cannot say what these hypothetical partnerships and joint ventures did to earn the money in question.  He does not explain how Singapore companies that are not mentioned in the contracts with the Chinese customers or in the letters of credit or in the wire transfers were the legal recipients of the money.

5. Without knowing exactly what the hypothetical partnership agreements, joint venture agreements, and trust documents say, Klein cannot speculate as to what the tax treatment for these various vehicles should be.  The reality is that there were no such agreements or documents, so such knowledge is impossible.  But it is not appropriate under Rule 702 to allow an expert to hypothesize the terms of such agreements to reach a pre-ordained conclusion.

6. At least some of Klein's opinions are legal opinions.  Defendant argues that Klein will testify that *if* the jury finds that the money was earned by a joint venture or *if* the jury finds that Performance Group and USAPTI were simply acting as trustees for Singapore companies that actually earned the money, than these monies were not gross receipts to Performance Group or USAPTI.  For example, defendant asserts that Klein will testify that "mere physical possession or receipt of money does not make it reportable income or part of 'gross receipts,' nor does money transferred by an agent, nominee or other representative party; nor does money that a joint venturer merely distributes to his other partners according to their share." Def. Opp. at 10:7-10.  If this is accurate as a legal matter, and

there is evidence of a partnership or joint venture, the Court can give a jury instruction to this effect. There is no need to have a professor instruct the jury on the law.[1]

7. Defendant argues that the government's argument regarding the reliability of Klein's testimony is really just a disagreement over the way the evidence should be characterized. That is not the case at all. Defendant concedes that, as of today, there is *no* evidence of a joint venture or trust relationship, but says he is still trying to gather such evidence. Neither Klein in his disclosure statement nor defendants in their memorandum address the substantial evidence recited in Special Agent Ho's declaration regarding the Singapore companies. This is not "disagreement" over how evidence is characterized, it is an absolute failure to articulate a reliable evidentiary basis for the *raison d'etre* of Klein's testimony: the tax treatment of money for a joint venture or trust relationship. For example, defendant claims that, in his "view, there are other alternatives, such as transfers pursuant to a joint venture agreement – one that includes family members as joint venturers -- that certain proceeds of the relevant contracts be apportioned in a certain way." Def. Opp. at 9:14-16. While that may be defendant's "view" – there is no evidence of a joint venture agreement. Klein's testimony is not helpful to the jury under Rule 702 because his opinions are built on the supposition of something that there is no reason to believe exists.

8. Klein's primary bankruptcy-related opinions fail for the same reason as his tax opinions. The premise for the opinion is that the money paid by Performance Group did not actually belong to Performance Group. But Klein has no way of knowing that, and defendant points to no source on which Klein could rely for that conclusion. It is simply invented as a pedestal for speculation that if everything were different, defendant would not have been required to declare Performance Group's receipts as an asset.

9. Finally, Klein's opinion that filing for bankruptcy opens up one's books to a searching investigation is not the proper subject of expert testimony. Defendant wishes to be able to argue that he would not file for bankruptcy, if he had been committing fraud, because he would be afraid that his other

---

[1] The case defendant cites, *United States v. Stadtmauer*, 620 F.3d 238, 269 (3d Cir. 2010), is distinguishable. In that case, the tax expert was testifying regarding the "proper tax consequences" of the transactions that were the subject of the case. Here, Klein proposes to announce a general rule for the jury to apply *if* it finds the existence of other facts. This is the role of the Court, not a law professor.

GOV'T REPLY RE: TESTIMONY OF COX AND KLEIN  5
CASE NO CR-11-0573-JSW

1 conduct would be discovered. This is just a thinly-veiled attempt to present defendant's state of mind to
2 the jury through an expert. There is no evidence that defendant knew, before filing bankruptcy, what
3 Klein purports to know about bankruptcy proceedings in general. Whether Klein, as an expert, believes
4 that bankruptcy proceedings expose a person's books and records to scrutiny has no relevance
5 whatsoever to whether defendant had that belief in 2009 when he filed for bankruptcy. Indeed, the fact
6 is that the 2009 bankruptcy proceeding *did not* result in any scrutiny of defendant's books and records
7 and did not reveal his other crimes and frauds.

8 The motion to exclude the testimony of Klein should be granted. The motion to exclude the
9 testimony of Cox should be granted to the extent that he purports to testify regarding the nature of the
10 funds that were directed by Walter Liew to Singapore.

DATED: November 1, 2013

MELINDA HAAG
United States Attorney

*John H Hemann*

———————————————
PETER B. AXELROD
JOHN H. HEMANN
Assistant United States Attorneys