1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3  J. DOUGLAS WILSON (DCBN 412811)
   Chief, Criminal Division

4  PETER B. AXELROD (CABN 190843)
   JOHN H. HEMANN (CABN 165823)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California  94102-3495
7      Telephone: (415) 436-7200
       Fax: (415) 436-7234
8      Peter.Axelrod@usdoj.gov
       John.Hemann@usdoj.gov
9
   Attorneys for Plaintiff
10
                       UNITED STATES DISTRICT COURT
11
                      NORTHERN DISTRICT OF CALIFORNIA
12
                           SAN FRANCISCO DIVISION
13

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 11-0573 JSW |
| Plaintiff, | GOVERNMENT'S REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF DONALD J. LEWIS (DOCKET NO. 488) |
| v. | |
| WALTER LIEW; CHRISTINA LIEW; USA PERFORMANCE TECHNOLOGY, INC.; AND ROBERT MAEGERLE, | |
| Defendants. | Date: November 14, 2013<br>Time: 2:00 p.m.<br>Courtroom: 19th Floor, Ctrm. 11 |

**I.   ARGUMENT**

Donald J. Lewis is a law professor, not Carnac the Magnificent.[1] He is not a forensic document examiner tasked with authenticating the authorship of a document (much less teasing out the mindset of its author); he is not a replacement for the actual, statutory language of the Economic Espionage Act;

---

[1] "Carnac the Magnificent was a recurring comedic role played by Johnny Carson on The Tonight Show Starring Johnny Carson. One of Carson's most well-known characters, Carnac was a 'mystic from the east' who could psychically 'divine' unseen answers to unknown questions." *See* http://en.wikipedia.org/wiki/Carnac_the_Magnificent.

GOV'T REPLY RE: MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW

nor is he endowed with the authority to make sweeping generalizations about evidence collection in China without any factual connection relevant to the specific charges in the Indictment.  Yet, notwithstanding the Federal Rules of Evidence, the defense proffers him to accomplish these goals.  As set forth more fully below, the Court should exclude his testimony on the topics identified in the government's motion.

### A. Testimony Regarding the Luo Gan Letter Is Inadmissible

Defendants contend that Lewis's conclusions as to the authorship of the Luo Gan letter, and the intent behind the letter, are entirely appropriate testimony for an expert of Lewis's qualifications.  *See* Defs' Opp. at 8.  Defendants attempt to explain the vague and speculative nature of the Lewis report --- "The writer's *apparent* purpose is to set the table so he can ask for favors and benefits," Lewis Rep. at 26; "The author's purported contributions to China . . . *seems* again intended to impress his audience and to give the impression that the author was a trusted insider," *id.* at 27; "Such Chinese puffery . . . *seems* an almost desperate ploy on the part of the author to get the attention of Pangang," *id.*; "it *appears* that Mr. Liew . . . did what he thought was necessary to obtain the contracts at issue," *id.*(emphasis added) --- by acknowledging that the choice of words in the report was "inartful."  Defs' Opp. at 8.  The opposition suggests that testimony based on experiential knowledge is a proper basis for expert testimony and argues that Lewis's proposed testimony is admissible since draws on the expert's own experiences and qualifications.  *Id.* at 8-9 (citing *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)).

The proposed Lewis testimony regarding the Luo Gan letter is based not upon experience, but conjecture and assumption.  None of the proposed testimony regarding the letter is a result of Lewis's experience as researcher and lecturer in Chinese law.  Instead, it is a series of unsupported opinions as to Walter Liew's mindset at the time the letter was drafted.  Far from "inartful," the word choice by Lewis was intentional, since, aside from generic testimony regarding Chinese business practices, the defense is unable to offer any basis for Lewis's opinions on Walter Liew's 2004 missive.  Lewis is not an expert in authenticating the authorship of a document.  He has no forensic knowledge on which to base such an opinion.  His vague characterizations of Walter Liew's mindset in 2004 and his attribution of a

prospective ghost writer to the document are self-serving speculation and thus improper testimony under Rules 702 and 403. While Walter Liew is free to testify at trial about his thought process in writing that letter, the Rules do not permit him to empower a proxy "expert" to do that for him.

Similarly, defendants' opposition only reinforces the fact that Lewis's characterization of the Luo Gan letter as simple "puffery" is inadmissible under Rules 702 and 403. Rather than "testimony about acceptable and common business practices," Defs' Opp. at 9, the proposed testimony relies upon the fact that such behavior is "extremely commonplace . . . amongst the Chinese." *Id.* (citing Lewis Rep. at 27). Expert testimony relying upon ethnic stereotyping has been held to be inadmissible under Fed. R. Evid. 403. *See Jinro America v. Secure Investments, Inc.*, 266 F.3d, 993, 1006-09 (9th Cir. 2001). Although the defense attempts to obscure this stereotyping beneath very broad statements about Chinese business practices, the fact remains that Lewis's entire opinion regarding "puffery" is based upon his view of the predilections of ethnically Chinese people, an inappropriate and prejudicial area of testimony.[2]

**B. Testimony Offering Legal Conclusions Is Improper and Should Be Excluded**

In their opposition, defendants do not dispute that Lewis has no prior experience with the Economic Espionage Act. They contend that Lewis has familiarized himself with the statute and its enforcement through a review of background materials, and they argue that his proposed testimony makes no attempt to instruct the jury as to the meaning of the law. Defs' Opp. at 7. This is a misleading

---

[2] Defendants argue that the government is in no position to criticize Lewis's testimony on this subject, claiming that the proposed testimony of government expert James Feinerman engages in some sort of ethnic stereotyping based upon his opinion that "an extraordinary number of Chinese in business and government entities are engaged" in intellectual property theft. Defs' Opp. at 9 n.3. Defendants' attempt to turn this issue back upon the government is misplaced, however, as Feinerman's statements regarding intellectual property theft by Chinese entities, including the Chinese government, are opinions concerning actions and policies of the Chinese government. Feinerman does not state that these actions are to be explained by the ethnic heritage of the participants. He is merely setting forth, based upon ample evidence of trade secret theft by Chinese entities, opinions as to institutional policy and practice.

GOV'T REPLY TO DEFS' OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW               3

description of Lewis's opinion, however, as his report clearly attempts to alter the definition of "foreign instrumentality," a statutory term found in 18 U.S.C. § 1831 and thus at issue before the Court.

While experts can certainly "refer to the law in expressing an opinion" without making their testimony inadmissible, *see* Defs' Opp. at 7, "[e]xpert testimony is . . . not admissible to inform the finder of fact as to the law that it will be instructed to apply to the facts in deciding the case." 1-13 Weinstein's Evidence Manual § 13.02. Here, Lewis attempts to forge a new definition of "foreign instrumentality," relying upon carefully selected text from the legislative history. Nowhere does Lewis even mention that "foreign instrumentality" is a defined term within the Economic Espionage Act, *see* 18 U.S.C. § 1839, let alone provide that definition. The statutory definition provides that "the term, 'foreign instrumentality' means . . . any legal, commercial, or business organization, corporation, firm, or entity that is substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign government." 18 U.S.C. § 1839(1). Lewis's inaccurate characterization of the statutory language is a perfect example of expert testimony improperly overtaking the role of the Court in instructing the jury as to the law to be applied in the case. His testimony as to the Economic Espionage Act should be excluded, as it is prejudicial and will mislead the jury and result in confusion of the issues.

### C. Testimony Regarding the Difficulties of Information-Gathering in China Should Be Excluded

The defense fails to explain in its opposition why Lewis's proposed testimony regarding the difficulties of gathering information is relevant to the case to be presented to the jury. Nor does the opposition from defendants provide any additional insight as to what documents and information were sought in China and how those materials are in any way relevant to the criminal case. Given the opportunity to answer such questions, the defense offers only the generic assertion that "[t]his background information will be helpful to the jury in determining an issue in the case, because it will allow them to understand why *neither the government* nor defendants have been able to acquire documents that may seem common place in American business and legal settings, including overseas

GOV'T REPLY TO DEFS' OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW                 4

bank records and documents regarding the structure of corporate entities." Defs' Opp. at 6. There is no indication as to whether defendants specifically sought even these broad categories of records and if so, what responses they received, and it is thus unclear what specific testimony Lewis would offer on this subject. The generic reference to the types of documents prevents any sort of meaningful analysis of his opinions on the subject, including as to the relevance and reliability of the testimony. *See Daubert*, 509 U.S. at 589; *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005).

In addition to providing only a vague description of the materials that were supposedly difficult to obtain from China, defendants' opposition fails to address how such information would be helpful to the jury, as there is simply no response to the government's argument concerning Lewis's lack of qualifications to lay the relevant foundation for the Chinese documents that defendants attempted to obtain. With no testimonial foundation as to the materials sought by the defense, opinions concerning the challenges in gathering documents from China not only have the potential to confuse the issues and mislead the jury, *see* Fed. R. Evid. 403 and *Daubert*, 509 U.S. at 595, it is *likely* to do so.

Quite simply, Lewis's report provides no indication as to how this subject matter is at all relevant to this case – what documents were sought and if they were able to be obtained, what facts would be established? Moreover, what counts and what elements within those counts would be affected by the facts that would be established by such hard-to-find documents? That defendants have no answers to these questions only bolsters the government's original arguments as to the admissibility of Lewis's proposed testimony regarding the difficulties of information-gathering in China.

**D. Testimony Lacking Sufficient Basis Should Be Excluded**

Defendants also maintain that Lewis is sufficiently qualified to offer opinions on Chinese intellectual property theft, arguing that the government's motion to exclude improperly addresses the correctness of the opinions themselves. *See* Defs' Opp. at 4-5. The defense has misconstrued the government's position as to Lewis's proposed testimony on the subject. The motion to exclude this testimony does not turn on the accuracy of the opinions but instead notes the sourcing for the opinions in an effort to point to an insufficient and faulty methodology. That Lewis could provide pages of opinions regarding intellectual property theft without meaningfully addressing the various reports and findings

GOV'T REPLY TO DEFS' OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW            5

1  concerning the growing threat of Chinese intellectual property theft calls into question the basis for his

2  testimony on the subject. *See Daubert*, 509 U.S. at 595 (stating that "expert evidence can be both

3  powerful and quite misleading because of the difficulty in evaluating it," and therefore, "the judge in

4  weighing possible prejudice against probative force under Rule 403 of the present rules exercises more

5  control over experts than over lay witnesses" (quoting Jack B. Weinstein, Rule 702 of the Federal Rules

6  of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991))). The court should

7  therefore exercise its role as gatekeeper to exclude Lewis's proposed testimony regarding intellectual

8  property theft by the Chinese government and those acting at its direction.

9  **II.     CONCLUSION**

10      For the foregoing reasons, the Court should grant the United States' motion to exclude the expert

11  testimony of Donald J. Lewis.

12

13  DATED: November 1, 2013

14                                                                  Respectfully submitted,

15                                                                  MELINDA HAAG
                                                                    United States Attorney

16

17                                                                  _____/s/_____
                                                                    PETER B. AXELROD

18                                                                  JOHN H. HEMANN
                                                                    Assistant United States Attorneys

19

20

21

22

23

24

25

26

27

28

GOV'T REPLY TO DEFS' OPP. TO MOT. TO EXCLUDE EXPERT TESTIMONY
Case No. CR 11-0573 JSW                     6