United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WALTER LIEW, CHRISTINA LIEW,<br>ROBERT J. MAEGERLE, and USA<br>PERFORMANCE TECHNOLOGY, INC.,<br><br>Defendant. | No. CR 11-00573-1 JSW<br>No. CR 11-00573-2 JSW<br>No. CR 11-00573-3 JSW<br>No. CR 11-00573-4 JSW<br><br>**ORDER RESOLVING MOTIONS TO EXCLUDE EXPERT TESTIMONY**<br><br>**(Docket Nos. 477, 480, 482, 484, 488)** |

This matters comes before the Court upon consideration of the following motions: (1) - (5). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motions suitable for disposition without oral argument. The Court's rulings on the motions are set forth in the remainder of this Order.

## BACKGROUND

The Court has set forth the facts underlying the charges in this case in several prior orders, and it shall not repeat them in detail here. In brief, the Government alleges that the Defendants conspired to, attempted to, or obtained five alleged trade secrets which allegedly belong to E.I. du Pont de Nemours & Company ("DuPont") and which relate to chloride-route production of titanium dioxide ("TiO2"). (Second Superseding Indictment ¶ 1.) The United States further alleges that the Defendants "conveyed information containing those trade secrets to companies controlled by the" government of the People's Republic of China ("PRC"), "without authorization from DuPont." (*Id.* ¶ 2.)

1  Mr. Liew also is charged with five counts of making and subscribing to false federal
2  income tax returns, in violation of 26 U.S.C. section 7206(1) and three counts of bankruptcy
3  fraud, in violation of 18 U.S.C. section 152. The Government's theory of the case is that Mr.
4  Liew failed to report income received from contracts with Chinese companies and failed to
5  disclose that income and the contracts to the bankruptcy court or the Internal Revenue Service.

6  The parties now seek to exclude expert testimony on a variety of topics. The Court shall
7  set forth additional facts as necessary in the remainder of this Order.

## ANALYSIS

### A. Applicable Legal Standards.

> A witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; ©) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

It is well established that a court has a "gatekeeping function" to determine that proposed expert testimony, whether it is based on scientific, technical or other "specialized knowledge," is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In order to make that determination, the Court may consider such factors as whether the specialized knowledge or scientific or technical theory or technique: (1) can be or has been tested; (2) has been subjected to peer review or publication; (3) is subject to generally applicable standards or known error rates; and (4) is "generally accepted" in the field of expertise. *Kumho*, 526 U.S. at 151; *Daubert*, 509 U.S. at 592-94; *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000.)

Although the Court may exclude expert testimony, that is not always the appropriate remedy. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky

2

1 but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas,* 483 U.S. 44, 61
2 (1987)). Furthermore, even if a court concludes that expert testimony is relevant and reliable, it
3 may still exclude the testimony if the probative value of such testimony is substantially
4 outweighed by the risk of unfair prejudice, confusion of the issues, or undue consumption of
5 time. *Hankey*, 203 F.3d at 1168; Fed. R. Evid. 403.

6 Federal Rule of Evidence 704 also places limits on expert testimony. That rule provides
7 that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R.
8 Evid. 704(a). However, in criminal cases, experts are not permitted to opine "about whether the
9 defendant did or did not have a mental state or condition that constitutes an element of the crime
10 charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

**B.    Defendants' Motions.**

    **1.    James V. Feinerman (Docket No 477).**

The Government intends to introduce testimony from James V. Feinerman ("Professor Feinerman")

> to provide an overview of the processes by which the Chinese
> government, through various officials and agencies, attempts to induce
> and persuade overseas Chinese to obtain technology from Western sources
> unavailable or in embryonic development domestically within China; ...
> the transfer of technology to Chinese companies attempting to claim that
> their technological "breakthroughs" are the result of indigenous
> innovation rather than intellectual property theft," [and] ... some of the
> Chinese entities, individuals, and programs related to [the] prosecution
> and provides context for their respective roles in the economic and
> governmental structures of China.

(Docket No. 478, Declaration of Simona Agnolucci in Support of Motion to Exclude Expert Testimony of James V. Feinerman ("Docket No. 478, Agnolucci Decl."), ¶ 2, Ex. A ("Feinerman Report") at 1.)

Defendants do not challenge Professor Feinerman's qualifications to testify on these issues. Defendants move to exclude a portion of Professor Feinerman's opinion that "[n]ational industrial policy goals in China encourage intellectual property theft, and an extraordinary number of Chinese in business and government are engaged in this practice." (*See* Feinerman Report at 12.) The Court agrees with Defendants that this portion of Professor Feinerman's

3

opinion should be excluded on the basis that any probative value is substantially outweighed by the potential for prejudice and to confuse the issues. The Court grants the motion, in part, on that basis.

Defendants also argue that the Court should exclude Professor Feinerman's testimony, because the Feinerman Report contains text that was copied from various Wikipedia pages, a source Defendants contend is inherently unreliable. (*See* Docket No. 478, Agnolucci Decl., ¶ 3, Ex. B (showing portions or report drawn from Wikipedia), Exs. D-M (Wikipedia pages).) The Government does not dispute the fact that the Feinerman Report "utilized language from Wikipedia as a concise English-language summary of his opinions on certain topics." (Docket No. 515, Opp. Br. at 4:9-10.) The Court is extremely troubled by the fact that Professor Feinerman appears to have copied much of his report from Wikipedia. That fact may seriously undermine his credibility as a witness in the eyes of the jury. However, the issue for this Court to resolve is not whether Professor Feinerman copied Wikipedia, but whether his reliance on that source renders his opinions so unreliable that he should not be permitted to testify.

Courts within the Ninth Circuit and around the country have criticized and questioned the use of Wikipedia as a source of information, because of its open source nature. *See, e.g., United States v. Lawson*, 677 F.3d 629, 650 (4th Cir. 2012) (citing cases); *Vistan Corp. v. Fadei, USA, Inc.*, 2013 WL 139929, at *9 n.10 (N.D. Cal. Jan. 10, 2013); *In re Toys "R" Us - Delaware, Inc. - FACTA Litig.*, 2010 WL 5071073, at *13 n.30 (C.D. Cal. Aug. 17, 2010). However, it also is clear from the record that Professor Feinerman drew on sources other than Wikipedia to form his opinions. (*See* Docket No. 516, Declaration of Peter B. Axelrod in Support of United States' Opposition to Defendants' Motion to Exclude Expert Testimony of Daniel Dayton, James Feinerman, and Robert Gibney ("Docket No. 516, Axelrod Opp. Decl."), ¶ 4, Ex. 2.) The Defendants do not question the reliability of those sources. Further, although Defendants point out that some of the Wikipedia pages at issue contain warnings, they have not pointed the Court to any actual factual errors on those pages.

On this record, the cannot say that Professor Feinerman's opinions are so inherently unreliable that his testimony must be excluded in its entirety, and the Court denies the motion on

4

that basis. *See, e.g., Hamilton v. Menard, Inc.*, 2011 WL 3652449, at *2-*3 (N.D. Ohio Aug. 19, 2011) (noting that reliance on Wikipedia was troubling, but denying motion to strike expert and referring to magistrate judge to fully develop the record on admissibility of opinion); *In Re Toys "R" Us*, 2010 WL 5071073, at *13 n. 30 (denying motion to strike expert declaration submitted in support of motion for class certification and noting that reliance on Wikipedia and lack of familiarity with facts of case went to weight of opinion, not admissibility); *Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp 2d 357, 363 (S.D.N.Y. 2007) (denying motion to exclude proposed expert who relied on Wikipedia as one of several sources in forming opinion).

Defendants also move to exclude portions of Professor Feinerman's testimony regarding the role of the Chinese Communist Party, the makeup and organization of the Pangang Defendants, and the policies and practices of the Chinese Government concerning the acquisition of intellectual property, because his opinions are not supported by reference to sources. As noted, Professor Feinerman appears to have relied on a number of sources other than Wikipedia to form the opinions set forth in his report. Therefore, the Court denies Defendants' motion on this basis as well.

However, although the Court denies, in part, Defendants' motion to exclude Professor Feinerman from testifying at this stage, the Court will conduct a hearing outside the presence of the jury to further develop the record on the issue of which opinions in Professor Feinerman's report are based on a source other than Wikipedia. Because the Court has not made a final determination about whether Professor Feinerman will be permitted to testify, the Government shall not be permitted to mention Professor Feinerman's testimony in its opening statement.

Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion to exclude Professor Feinerman.

### 2. Daniel Dayton (Docket No. 480).

The Government has identified Daniel Dayton, a former DuPont employee as a witness and, out of an abundance of caution, disclosed him as an expert on the nature of DuPont's TiO2 chloride-route process and the protections DuPont used to safeguard its alleged trade secrets. (Docket No. 480-1, Declaration of Stuart L. Gasner in Support of Motion to Exclude Testimony

5

of Daniel Dayton ("Docket No. 480-1, Gasner Decl."), ¶¶ 2-4, Exs. A-B.)  In order to provide a disclosure pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the Government produced an FBI Form 302, which details an interview of Mr. Dayton, and it provided the Defendants with a list of documents that Mr. Dayton reviewed.  (*Id.*, ¶ 5, Ex. C; Docket No. 516, Axelrod Decl, ¶ 3 Ex. 1.)  In that interview, Mr. Dayton also opined on the value of the alleged trade secrets at issue.  (*See, e.g.,* Docket No. 480-1, Gasner Decl., ¶ 5, Ex. C at PTI-001240, PTI-001242-43.)

Defendants argue that Mr. Dayton should only be permitted to testify as a lay witness, because the Government has repeatedly represented that he would only testify as a lay witness and because the Form 302 is an inadequate disclosure under Rule 16.  In its opposition, the Government maintains that it does not intend to offer Mr. Dayton as an expert witness, and that it disclosed him as an expert only as a precaution.  (Docket No. 514, Opp. Br. at 6:22-23.)  Based on the existing record, it does not appear to the Court that any of the matters about which Mr. Dayton intends to testify would qualify as "expert" testimony under Federal Rule of Evidence 702.

The Court does, not, however, agree with the Government that the Form 302 would be a sufficient disclosure under Rule 16, especially as to the value of the alleged trade secrets because it does not provide the Court with any basis by which to evaluate his methodology.  In addition, although the FBI 302 does contain a great deal of information about Mr. Dayton's expected testimony, it does not clearly set forth the nature of the purportedly "expert" opinions about which Mr. Dayton would testify at trial or the bases or reasons for those opinions.  *See, e.g., United States v. Poulsen*, 2007 WL 4248206, at 3 (S.D. Ohio Nov. 30, 2007) (finding that providing FBI forms 302 and grand jury testimony did not comply with Criminal Rule 16(a)(1)(G) for witnesses whose testimony included both lay and expert testimony).  Therefore, the Court shall not permit Mr. Dayton to testify as an expert.

Defendants also argue that certain of Mr. Dayton's opinions are inappropriate lay opinions, because they go beyond the scope of his personal knowledge.  For example, Defendants argue Mr. Dayton should not be permitted to testify about DuPont's history.  The

6

Court shall not exclude the testimony at this time. However, the Government will be required to lay a proper foundation for such testimony at trial. The same is true for Mr. Dayton's opinions on the value of the alleged trade secrets.

Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion to exclude Mr. Dayton.

### 3. Robert Gibney (Docket No. 482).

The Government has disclosed Robert Gibney as an expert on TiO2 technology. (Docket No. 482-1, Declaration of Katherine M. Lovett in Support of Motion to Exclude Expert Testimony of Robert Gibney ("Docket No 482-1, Lovett Decl."), ¶ 2, Ex. A (Gibney Report).)

Defendants move to exclude Mr. Gibney's testimony on the basis that it will be cumulative of testimony offered by Jim Fisher, another of the Government's proposed expert witnesses. (*Compare* Docket No. 482-1, Lovett Decl., ¶ 2, Ex. A (Gibney Report) *with id.*, ¶ 3, Ex. B (Fisher Report).) In its opposition brief, the Government responds that it does not intend to call Mr. Fisher and Mr. Gibney to testify on the same topics. Accordingly, the Court DENIES AS MOOT, Defendants' motion to exclude Mr. Gibney's testimony as cumulative. This ruling shall not preclude Defendants from raising objections to any testimony adduced during trial that they believe is cumulative.

Defendants also move to exclude Mr. Gibney's testimony on the basis that he is not qualified to opine on TiO2 technology, DuPont's internal practices, or the production of TiO2 in China, because his background is in sales and marketing and does not include any engineering or manufacturing experience. In its opposition, the Government states that it intends to call Mr. Gibney to testify about the measures Kerr-McGee took to "maintain information security" and to testify that Kerr-McGee would have found the alleged trade secrets at issue in this case valuable and about the reasons why they would have had value to Kerr-McGee. The Government contends this testimony is relevant to elements of the alleged offenses, namely the "reasonable measures" element of 18 U.S.C. section 1839(3)(A) and the element that the information has value because it is not generally known to the public, 18 U.S.C. section 1839(3)(B).

7

As Defendants acknowledge, a witness offered as an expert need not have personal experience in every area on which he or she will testify. *See, e.g., Exum v. General Electric Co.*, 819 F.2d 1158, 1163 (D.C. Cir. 1987). According to the Gibney Report, Mr. Gibney has "over 28 years experience" in the TiO2 industry, and he started his career with one of DuPont's chemical distributors selling "DuPont's TiPUre brand of TiO2." (Gibney Report at PTI-001269.) Mr. Gibney then joined Kerr-McGee as a sale representative for its TiO2 product, and was eventually promoted to Vice President Global Pigment Marketing, "responsible for negotiating long-term contracts with the major TiO2 customers around the world," including some of DuPont's customers. (*Id.*) Mr. Gibney also disclosed that he was Kerr-McGee's Vice President and General Manager of Paper and Specialities, which focused on Kerr-McGee's manufacturing operations in Germany, where a majority of its specialty TiO2 products were produced. Between 2009 and 2011, Mr. Gibney acted as Managing Director of a chloride route TiO2 plant. (*Id.*) Although the Government did not include Mr. Gibney's resume as an attachment to the Gibney Report, it has included his resume as an exhibit to its opposition, which includes the information contained in his disclosure and outlines the duties of the positions he has held. (Docket No. 516, Axelrod Decl., ¶ 5, Ex. 3.)

The Court concludes that, on this record, the Government has made a sufficient showing that Mr. Gibney is qualified to testify on the areas disclosed in the Gibney Report, and that the proper remedy to challenge his opinions is vigorous cross-examination rather than exclusion.

Accordingly, the Court DENIES, IN PART, AND DENIES AS MOOT, IN PART the motion to exclude Mr. Gibney.

**C. Government's Motions.[1]**

    **1. Gerald Cox and Gordon Klein (Docket No. 484).**

Mr. Liew has identified Gerald Cox and Gordon Klein as a proposed expert witness to testify about the tax returns filed by USA Performance Technology, Inc. ("USAPTI") and Performance Group (USA), Inc. ("Performance Group"). (*See* Docket No. 486-1, Declaration of

---

[1] The Government also moved to exclude the testimony of Paul Cooper. The parties resolved their disputes about Mr. Cooper's testimony, and the Court previously denied that motion as moot. (*See* Docket No. 543.)

8

Peter B. Axelrod in Support of Motion to Exclude Defense Experts Gordon L. Klein and Gerald L. Klein ("Docket No. 486-1, Axelrod Decl."), ¶ 3, Ex. 1 (Cox Report).) Mr. Liew has identified Mr. Klein as a proposed expert witness to rebut the opinions of IRS Agent Meiqin Jiang and Antonia Darling, who are Government witnesses on the tax and bankruptcy charges. (*Id.*, ¶ 4, Ex. 2 (Klein Report).)

The Government moves to exclude Mr. Cox and Professor Klein from testifying on the basis that their testimony will not assist the trier of fact, is not based on sufficient facts or data, is not the product of reliable principles and methods, and is likely to confuse the issues and mislead the jury. The Government also argues that Mr. Klein's testimony invades the province of the jury and that he is not qualified to testify as an expert on bankruptcy matters.

### a. Gerald Cox.

Mr. Cox is a former IRS special agent, who worked at the IRS from 1974 to 1998. (Cox Report at 1.) According to the Cox Report, he will testify that the tax returns filed by USAPTI and Performance Group were consistent with those entities' entries in the Quick Books system and bank deposits. (*Id.* at 3.) The Government argues that Mr. Cox's opinions are irrelevant because he has: (1) not considered unreported income; and (2) ignored information relating to funds that were distributed to a number of Singaporean entities, which the Government alleges were controlled by Mr. Liew and which it contends was income that should have been reported. (*See generally,* Docket No. 485, Declaration of Cynthia Ho in Support of Motions to Exclude Defense Experts Gordon L. Klein and Gerald L. Cox.) In its reply brief, the Government states that its "objection to this testimony is not strenuous." (Docket No. 533, Reply Br. at 1:27.) Mr. Cox's background and experience demonstrate that he is qualified to testify on these issues, and his testimony is relevant to issues in the case. The Court concludes that the proper remedy for the issues raised by the Government is vigorous cross-examination and presentation of contrary evidence.

The Government also objects to Mr. Cox's opinion regarding the treatment of certain funds that were disbursed through Mega International Commercial Bank ("the Mega Bank Transactions"). (Cox Report at 3-4.) According to Mr. Cox "it appears from the pattern and

9

1  nature of the Mega Bank transactions performed here that the funds received by Mega Bank
2  were being held temporarily by the bank in trust pending instructions from Mr. Liew but were
3  always intended to be disbursed to third parties." (*Id.* at 4.) Mr. Cox states that he has
4  "conducted criminal and civil investigations involving ... large corporations, complex financial
5  transactions, and both legal and illegal income sources. All of these investigations required
6  detailed forensic analysis of documents." (*Id.* at 1.) Mr. Cox also provided a list of documents
7  on which he relied in preparing his report. (Docket No. 517-2, Declaration of Christina M. Blais
8  in Support of Opposition to Government's Motion to Exclude Defendants' Expert Witnesses
9  Gerald Cox and Gordon Klein ("Docket No. 517-2, Blais Decl."), ¶ 2, Ex. A.) The Court
10 concludes that the Government's objections to Mr. Cox's testimony on the Mega Bank
11 Transactions go to the weight to be given his testimony, rather than its admissibility. The
12 Government may address its belief that Mr. Cox's opinions are flawed by way of "vigorous
13 cross-examination" and presentation of contrary evidence.
14     For these reasons, the Court DENIES the motion to exclude Mr. Cox.
15     **b.     Gordon Klein.**
16     Professor Klein is on the faculty of UCLA's Anderson School of Management, is an
17 inactive member of the California Bar, and is registered as a Certified Public Accountant in
18 Illinois. The Government argues, in part, that the Court should exclude his testimony because he
19 is not qualified to testify about bankruptcy issues. The Court disagrees. Professor Klein's
20 courses at the Anderson School include courses on taxation, financial and management
21 accounting, and general business law topics including bankruptcy. (Docket No. 486-2, Axelrod
22 Decl., ¶ 4, Ex. 2 (Klein Report, ¶ 1); *see also* Docket No. 517-2, Blais Decl., ¶ 12, Ex. G.) In
23 addition, Professor Klein has served as a testifying expert in four litigation matters involving
24 corporate bankruptcy. (Klein Report, § I, ¶ 5.)
25     The Government also argues that much of Professor Klein's proposed testimony is not
26 based on sufficient facts or data and fails to consider documents relating to the Singaporean
27 entities. Mr. Klein's principal opinions are that sums remitted to Mega Bank and to California
28 Pacific Bank, which were then remitted to various Singaporean entities, "do not appear to be

10

1  gross income earned by Performance Group or USAPTI," and that "[u]nder generally accepted
2  accounting principles," those sums "do not appear to have been the property or assets of
3  Performance Group."  (*Id.*, § III; *see also id.* § IV at p. 4 ("*If* all of the Mega Bank or California
4  Pacific Bank funds transferred to Singaporean entities were received by Mr. Liew, Performance
5  Group and/or USAPTI as agents or authorized representatives of the Singaporean entities, I am
6  unaware of any gross income that Performance Group or USAPTI failed to account for on their
7  tax returns.").)

8  To the extent this proposed testimony parallels that of Mr. Cox, the Court denies the motion for the reasons set forth above. To the extent the Government challenges Professor Klein's opinions because his assumptions about the Singaporean entities are false, the record shows that Professor Klein did review documents relevant to the ownership and control of the Singaporean entities. (Docket No. 517-2, Blais Decl., ¶¶ 4-8, Exs. B-E.) However, Professor Klein reached conclusions about those documents that are different from conclusions reached by Government witnesses. The appropriate method to challenge Professor Klein's conclusions is vigorous cross-examination and presentation of contrary evidence.

16  Mr. Klein also opines, however, that, for tax purposes, USAPTI's and Performance Group's gross income would not include sums that were the property of partnerships or joint ventures. The Government also objects to this testimony on the basis that it is unsupported by facts. The Defendants concede this point and argue it is too early to determine whether Mr. Klein will be able to lay a foundation for this opinion. In light of this concession, the Court shall not exclude Mr. Klein's testimony. However, because Defendants concede that Mr. Klein does not have a sufficient foundation to opine on this point, it shall not be mentioned in opening statements and they shall not introduce this opinion unless they can, in good faith, lay a foundation for it.

25  Finally, with respect to Mr. Klein's opinions on the scrutiny that would be involved in filing for bankruptcy, the Court concludes that so long as Mr. Klein limits his testimony on the nature of bankruptcy proceedings in general, his testimony would not run afoul of Federal Rule of Evidence 704(b).

11

Accordingly, the Court RESERVES RULING ON, IN PART, AND DENIES IN PART the motion to exclude Professor Klein.

### 2. Donald J. Lewis (Docket No. 488).

The Defendants have identified Donald J. Lewis ("Professor Lewis") as a proposed expert who was retained to "to review and rebut opinions offered by Professor James Feinerman, analyze the corporate structures of, and relationships between and among, the Pangang-related defendants, as well as the allegations that these defendants are 'foreign instrumentalities,'" and "to opine on standard Chinese business practices." (*See* Docket No. 488-1, Declaration of Peter B. Axelrod in Support of Motion to Exclude Defense Expert Donald J. Lewis ("Docket No. 488-1, Axelrod Decl."), ¶ 3, Ex. 1 (Lewis Report, § II).) The Government argues that the Court should exclude Professor Lewis' testimony on: (1) Chinese cultural norms; (2) a letter that the Government intends to introduce at trial from Mr. Liew to Mr. Hon Jibi and Mr. Luo Zezhong (the "Luo Gan Letter"); (3) theft of intellectual property by or with the approval of the Chinese government; (4) the difficulties of obtaining information in China; (5) the Economic Espionage Act; and (6) the TiO2 industry in China. The Court addresses each issue in turn.

The Government first argues that Professor Lewis lacks the requisite expertise to testify about Chinese cultural norms and terms such as "guanxi," "mianzi" and "li," which refer, respectively, to connections/relationships, face, and proper conduct or etiquette. (Lewis Report, § III at p. 3.) Specifically, Mr. Lewis opines that "Chinese cultural traditions are intrinsic to doing business in China," and notes that these concepts "are all actively present in Chinese business relationships." (*Id.*) The record shows that Professor Lewis has an extensive background teaching in the United States, China, and elsewhere on matters relating to Chinese law and Chinese trade issues. Professor Lewis also has authored such books as *The China Investment Manual* and *PRC Joint Ventures: Drafting and Negotiating Contracts*. (*Id.*, § I; *see also* Docket No. 512-2, Declaration of Katherine Lovett in Support of Opposition to Government's Motion to Exclude Expert Witness Testimony of Donald J. Lewis ("Docket No. 512-2, Lovett Decl."), ¶ 2, Ex. A (Lewis Resume).) He also has served as "an expert Advisor and Consultant to the United Nations for Asia Pacific governments on a range of international

12

1 trade and investment issues." (Lewis Report, § I.) The Court concludes that, based on this
2 record, Professor Lewis is qualified to testify on these topics.

3 The Government also seeks to preclude Professor Lewis from offering opinions on the
4 Luo Gan letter, including his opinions on how the author of the letter used some of the principles
5 discussed in the preceding section and that other individuals may have helped draft the letter.
6 (Lewis Report, § VIII.A.) The Government argues that this testimony is purely speculative. The
7 Court agrees, in part. Although the Court would permit Professor Lewis to testify that the letter
8 contains language that reflects the Chinese cultural norms described above, it will not permit him
9 to testify about the author's apparent motives or intent in drafting the letter.

10 The Government also moves to exclude Mr. Lewis' opinions on whether or not the
11 Chinese government is involved in or encourages the theft of intellectual property, on the basis
12 that Professor Lewis fails to address significant evidence that contradicts his opinions. "'Failing
13 to review all relevant evidence is not a ground for excluding [an expert's] testimony; rather, it
14 provides subject matter for cross-examination.'" *S.E.C. v. Leslie*, 2010 WL 2991038, at *9
15 (N.D. Cal. July 29, 2010) (quoting *SEC v. Johnson,* 525 F. Supp. 2d 70, 75-76 (D.D.C. 2007));
16 *see also Daubert*, 509 U.S. at 596.

17 The Government also moves to exclude Professor Lewis' testimony on the fact that it is
18 difficult to gather and obtain information from and in China on the basis that it is not relevant.
19 (Lewis Report, § VIII.C.) Defendants argue that this evidence is relevant to help the jury
20 understand why neither side has presented the type of documents that one might expect to see in
21 a case such as this. (Docket No. 512, Opp. Br. at 6:7-21; *see also* Lewis Report, § VIII.C at p.
22 29.) The Court agrees with the Government that this testimony is irrelevant, especially in a
23 criminal case where Defendants do not bear the burden of proof.

24 The Government also argues that the Court should exclude Professor Lewis' opinions on
25 the Economic Espionage Act, because it is the Court's role to instruct the jury on the applicable
26 law and his opinions usurp that role. In his Report, Professor Lewis cites to a portion of the
27 legislative history of the EEA to support his opinion that certain of the Pangang Defendants
28 could not have been subject to the control of the Chinese Government. (*See, e.g.,* Lewis Report,

§ IV.B.3 at p. 19.) The Government does not dispute that experts may refer to their understanding of the law without usurping the Court's role. *See, e.g., Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). The Court concludes that the portions of the Lewis Report to which the Government objects do not usurp that role. The Government is free to test Professor Lewis' understanding of the law on cross-examination. In addition, the Court will give the jury a preliminary instruction about the role of an expert witness and would consider giving a cautionary instruction prior to Professor Lewis' testimony that reminds the jury that the Court will instruct them on the applicable law at the conclusion of all the testimony.

Finally, the Government moves to exclude Professor Lewis' opinions on the TiO2 industry. In his report, Professor Lewis opines about the Angang-Pangang merger. (Lewis Report § IV.B.4.) Defendants note that Professor Lewis does not purport to be an expert on the TiO2 industry, and his opinion on this topic is based on his review of documents regarding the Pangang defendants and his knowledge of Chinese law and business relationships. The Court finds that Professor Lewis is qualified to provide testimony on this subject.

For these reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the motion to exclude Donald Lewis.

**CONCLUSION**

This Order constitutes the Court's ruling on the parties' motions to exclude the expert witnesses. Nothing in this Order should be construed to preclude any party from seeking to voir dire an opposing party's expert witness prior to his or her testimony and from raising any challenges to that expert witness based on the testimony adduced during the voir dire.

The Court also admonishes that the parties that they are not to engage in self-help if they believe a witness has opened a door that was closed by this Order. The Court will elaborate on this point in more detail at the pre-trial conference, in connection with its rulings on the parties' motions in limine.

//

//

The Court shall not entertain any argument on these motions at the pretrial conference.

**IT IS SO ORDERED.**

Dated: December 9, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE