**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11-00573-1, 4 JSW |
| Plaintiff, | **ORDER DENYING MOTION FOR JUDGMENTS OF ACQUITTAL, RENEWED MOTION FOR JUDGMENTS OF ACQUITTAL AND MOTION FOR NEW TRIALS** |
| v. | |
| WALTER LIEW AND USA PERFORMANCE TECHNOLOGY, INC., | |
| Defendants. | **(Docket Nos. 743, 823)** |

This matter comes before the Court upon consideration of the motion for judgments of acquittal and the renewed motion for judgments of acquittal and for new trials, filed by Defendants Walter Liew ("Mr. Liew") and USA Performance Technology, Inc. ("USAPTI") (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY DENIES the motions.

**BACKGROUND**

On March 12, 2013, the United States of America (the "Government") filed a Second Superseding Indictment ("SSI"), in which it alleged that Mr. Liew and USAPTI, among others, conspired to, attempted to, or obtained five alleged trade secrets that belonged to E.I. du Pont de Nemours & Company ("DuPont") relating to chloride-route production of titanium dioxide ("TiO2"). (Docket No. 269, SSI ¶ 1.) The Government also alleged that Mr. Liew and USAPTI "conveyed information containing those trade secrets to companies controlled by the"

/

government of the People's Republic of China ("PRC"), "without authorization from DuPont." (*Id.* ¶ 2.)

Based on those allegations, the Government charged Defendants with, *inter alia*:

- one count of conspiracy to commit economic espionage, in violation of 18 U.S.C. section 1831(a)(5) (Count One);
- one count of conspiracy to commit theft of trade secrets, in violation of 18 U.S.C. section 1832(a)(5) (Count Two);
- one count of attempted economic espionage, in violation of 18 U.S.C. sections 1831(a)(2) and 1831(a)(4) (Count Three);
- one count of attempted theft of trade secrets, in violation of 18 U.S.C. sections 1832(a)(2) and 1832(a)(4) (Count Five);
- three counts of possession of trade secrets, in violation of 18 U.S.C. section 1832(a)(3) (Counts Six, Seven and Nine); and
- one count of conveying and aiding and abetting the conveyance of trade secrets, in violation of 18 U.S.C. sections 1832(a)(2) and 2 (Count Eight).

In addition, the Government charged Mr. Liew with:

- one count of conspiracy to tamper with witnesses and evidence, in violation of 18 U.S.C. section 1512(k) (Count Ten);
- one count of witness tampering, in violation of 18 U.S.C. section 1512(b)(1) (Count Eleven);
- one count of conspiracy to tamper with evidence, in violation of 18 U.S.C. section 1512(k) (Count Thirteen);
- false statements in a matter within the jurisdiction of the executive branch and aiding and abetting, in violation of 18 U.S.C. sections 1001(a)(2) and 2 (Count Fourteen);
- five counts of filing a false tax return, in violation of 26 U.S.C. section 7206(1) (Counts Fifteen through Nineteen);

2

- two counts of making false statements in a bankruptcy proceeding, in violation of 18 U.S.C. sections 152(3) (Counts Twenty and Twenty-One); and
- one count of making a false oath in a bankruptcy proceeding, in violation of 18 U.S.C. 152(2) (Count Twenty-Two).

On January 6, 2014, the parties proceeded to trial before a jury. At the close of the Government's case, Mr. Liew and USAPTI moved for judgments of acquittal (Docket No. 743), and the Court reserved ruling on the motion. On March 5, 2014, the jury returned guilty verdicts against Mr. Liew and USAPTI. (Docket No. 804.) Mr. Liew and USAPTI now renew their motions for judgments of acquittal and also move for new trials.[1] (Docket No. 823.)

**ANALYSIS**

**A.  Applicable Legal Standards.**

**1.  Federal Rule of Criminal Procedure 29 ("Rule 29").**

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "It is well settled that a district court does not have unlimited discretion in resolving a Rule 29(c) motion for judgment of acquittal." *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009). It is the "exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *Dreitzler*, 577 F.2d at 545 (internal quotations and citations omitted).

//

//

---

[1] Mr. Liew has not renewed his motion for judgment of acquittal with respect to Count 20. Based on the evidence presented at the close of the Government's case, the Court concludes there was sufficient evidence for a rational trier of fact to find Mr. Liew guilty of that charge.

3

### 2. Federal Rule of Criminal Procedure 33 ("Rule 33").

A "court may vacate any judgment and grant a new trial if the interests of justice so requires." Fed. R. Crim. P. 33(a). A defendant may move for a new trial on the basis that the verdict is contrary to the weight of the evidence. *See United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). In such a case, "[i]f the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* (quoting *United States v. Alston,* 974 F.2d 1206, 1211-12 (9th Cir. 1992)). Although "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for a judgment of acquittal," the ultimate question for the Court to decide is whether a serious miscarriage of justice would result if it denied the motion. *United States v. Inzunza*, 638 F.3d 1006, 1026 (9th Cir. 2011) (quoting *Alston*, 974 F.2d at 1211).

### B. The Court Denies the Motions.

Mr. Liew and USAPTI raise nine arguments in support of their motion and renewed motion for judgments of acquittal and for new trials, eight of which focus on the sufficiency of the evidence. The Court addresses each argument in turn and evaluates the arguments regarding sufficiency of the evidence under the standards applicable to both Rule 29 and Rule 33.

### 1. Reasonable Belief that Trade Secret 1 Was a Trade Secret.

Mr. Liew and USAPTI argue that, because portions of the DuPont TiO2 chloride route process had been publicly disclosed, no reasonable juror could have found they reasonably believed it was a trade secret, an essential element of Counts One, Two and Five. Defendants did present evidence at trial that certain aspects of the TiO2 process were common or were disclosed in patents. (*See, e.g.,* Trial Transcript ("Tr."), Vol. 19 at 3702:22-3705:10.) Defendants also put forth evidence that DuPont entered into an agreement with Sherwin Williams to build a TiO2 processing plant (the "Ashtabula Plant") using the "DuPont Chloride Process." (Ex. 900; Tr. Vol. 9 at 1751:10-1753:20.)

4

However, Government witnesses testified that although they may have had some general ideas about DuPont's processes, they did not know of or have access to details, that DuPont took steps to limit access to its trade secrets, that co-defendant Robert Maegerle knew of those measures, that Mr. Liew did not volunteer the fact that he had hired DuPont employees when interviewed by a DuPont investigator, and that he directed an employee to remove documents that referenced DuPont from USAPTI's server. (Tr. Vol. 8 at 1571:13-1572:19, 1574:5-1575:2, 1582:3-11, 1586:21-1587:2; Tr. Vol. 11 at 2198:8-2199:23, 2235:25-2238:19; Tr. Vol. 12 at 2488:4-17; Tr. Vol. 13 at 2703:22-2704:1.) The Government also presented testimony that the technology in the Ashtabula Plant was not public. (Tr. Vol. 9 at 1740:11-23; Tr. Vol. 11 at 2212:18-21, Tr. Vol. 21 at 4190:20-4191:9.) The Government also produced a letter that was purported to have been written by Mr. Liew, which acknowledged that TiO2 technology cannot be mastered from blueprints or by relying on one or two persons. (Exs. 350-T at p. 7, 393-T at p. 43, 201 (discussing fact that DuPont had employees work in restricted areas so that they could not learn entire process).)

Viewing this evidence and other evidence presented at trial in the light most favorable to the Government, and recognizing that it was the jury's province to evaluate credibility and to decide what inferences to accept from the evidence, the Court concludes that a rational juror could have found that Mr. Liew and USAPTI reasonably believed Trade Secret 1 was a trade secret. In addition, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received. It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

Mr. Liew and USAPTI also argue that the Government made no effort to prove Trade Secret 1 was a trade secret, and they rely on *United States v. Lange*, 312 F.3d 263 (7th Cir. 2002), to suggest that their subjective belief is irrelevant. (*See* Docket No. 823, Mot. at 5:11-22, 7:15-20.) However, the Court concluded that proof of an actual trade secret was not an essential element of the charges for conspiracy, and the jury was instructed of that fact. (Docket No. 792, Final Jury Instructions at 27:12-18, 29:14-21.) The Court made the same

5

determination with regard to the attempt charges. *United States v. Liew*, 2013 WL 2605126, at *6 (N.D. Cal. June 11, 2013) (addressing issue in context of Counts Three and Five); *see also United States v. Hsu,* 155 F.3d 189, 203-204 (3rd Cir. 1998) (holding that proof that the defendants sought to steal actual trade secrets is not an element of the crimes of attempt or conspiracy under the EEA).

The Court does not find the Defendants' reliance on the cited portion of *Lange* persuasive. In that case, the court found that a defendant's belief *alone* could not support a conviction for attempt under the EEA, because a conviction for attempt also requires that the defendant take a substantial step toward completion of the offense. *Lange*, 312 F.3d at 269. Defendants, however, do not argue that there was insufficient evidence to establish the remaining elements of Count One, and, as set forth below, there was sufficient evidence to establish the other elements Defendants do challenge on Counts Two and Five.

### 2. Intent to Injure DuPont.

Mr. Liew and USAPTI argue that there was insufficient evidence to conclude they intended to injure DuPont, which is an essential element of Count Two and Counts Five through Nine. Defendants cite to evidence regarding what information, if any, DuPont former employees could use in subsequent employment. (*See, e.g.,* Exs. 694, 1008.) However, the Government also produced evidence that Defendants were aware that DuPont kept close guard over its technology and that it had not yet licensed it or sold it to any companies in China. The Government also elicited testimony that DuPont was considering building a TiO2 plant in China and that DuPonted wanted the project to be a wholly owned venture, because it did not want to share its technology or trade secrets. (*See, e.g.,* Ex. 374 at pps. 1, 8, 14; Tr. Vol. 5 at 1018:14-1019:16; Tr. Vol. 6 at 1033:19-1034:8.)

Viewing this and other evidence presented at trial in the light most favorable to the Government, and recognizing that it was the jury's province to evaluate credibility and to decide what inferences to accept from the evidence, the Court concludes that a rational juror could have found that Mr. Liew and USAPTI intended to injure DuPont. In addition, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and

6

to consider the exhibits received. It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

### 3. Intent to Benefit Foreign Government or Foreign Instrumentality.

Mr. Liew and USAPTI argue that there was insufficient evidence that they intended to benefit a foreign government or foreign instrumentality, which is an essential element of Counts One and Three. *See, e.g., Hsu*, 155 F.3d at 195 ("The legislative history indicates that § 1831 is designed to apply only when there is 'evidence of foreign government sponsored or coordinated intelligence activity.'") (quoting 142 Cong. Rec. S12,212 (daily ed. Oct. 2, 1996) (Managers' Statement for H.R. 3723).

The evidence put forth at trial was that Pangang Group Company, Ltd. ("Pangang Group") was state owned and that it entered into a joint venture with Jinzhou Iron Alloy Steel Co. ("Jinzhou"), which also was state owned. According to Defendants' expert, that joint venture would have been considered a state-owned enterprise. (Tr. Vol. 4 at 787:7-788:9; Vol. 18 at 3451:18-19, 3452:3-8, 3459:16-3460:15, 3468:7-3469:9) There also was evidence that, during the relevant time period, Defendants entered into contracts with the Pangang Group-Jinzhou joint venture. (Exs. 310-T, 315; *see also* Ex. 342-T (letter to Pangang Group.) Defendants do point out that Mr. Liew sent an email to Mr. Maegerle in which he referred to the parent company as a "public company." (Ex. 367.) However, the Government also presented evidence that Mr. Liew stated that he got involved in the projects at issue "because of the request from State Council," and that he had been given a "list of key task projects by the appropriate Chinese agency," which included TiO2 as "one of the more important projects." (Exs. 374 at p. 1, 350-T at p. 3.) In addition, the Government presented evidence that Mr. Liew was in contact with Chinese Government officials during the relevant time period. (*See, e.g.,* Exs. 291-T, 396-T, 398-T.)

Viewing this and other evidence presented at trial in the light most favorable to the Government, and recognizing that it was the jury's province to evaluate credibility and to decide what inferences to accept from the evidence, the Court concludes that a rational juror

7

could have found that Mr. Liew and USAPTI intended to benefit either a foreign instrumentality or a foreign government.  In addition, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received.  It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

### 4. Possession of Stolen Trade Secrets.

Mr. Liew and USAPTI argue that there was insufficient evidence that they knew Trade Secrets 2, 3 and 4 were trade secrets or that they "knowingly received or possessed the[se] trade secrets, knowing the same to have been stolen or appropriated, obtained, or converted without authorization," which are essential elements of Counts Six, Seven, and Nine.  (*See* Final Jury Instructions at 34:13-14.)  The Government presented testimony that Trade Secrets 2 and 4 were found in Mr. Liew's safety deposit box, and it presented evidence that DuPont worked to keep its process secret.  (Tr. Vol. 7 at 1379:6-14, 1380:24-1382:20; Ex. 201.)  In addition, the documents had confidentiality markings.  For example, Trade Secret 3 included a statement that it was to be destroyed or disposed of when it was no longer needed.  (*See* Exs. 1, 7, 162.)  Finally, there also was evidence from which a rational juror could infer that DuPont had not authorized release of the documents.  (*See, e.g.,* Exs. 70, 199 at p. 1, 208 at p. 5.)

Viewing this and other evidence presented at trial in the light most favorable to the Government, and recognizing that it was the jury's province to evaluate credibility and to decide what inferences to accept from the evidence, the Court concludes that a rational juror could have found that Mr. Liew and USAPTI knew that Trade Secrets 2, 3 and 4 were trade secrets and that they possessed them knowing the Trade Secrets to have been stolen or appropriated, obtained, or converted without authorization.  In addition, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received.  It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

//

8

### 5. Copying Stolen Trade Secrets.

Mr. Liew and USAPTI argue that the evidence is insufficient to establish that Mr. Liew knew Trade Secret 5, the "Basic Data Document," was a trade secret, an essential element of Count Eight.[2] Although the Government did not find a copy of Trade Secret 5 in Mr. Liew's possession, there was other evidence presented at trial, including some of the evidence set forth above, from which a rational juror could have found that Mr. Liew and USAPTI knew that Trade Secret 5 was a trade secret. In addition, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received. It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

Defendants also argue that the evidence was insufficient to establish they aided and abetted the copying of stolen trade secrets. However, by way of example only, the Government presented a number of emails between Mr. Maegerle and Mr. Liew, which referred to checking data from the Basic Data Document. (*See, e.g.,* Exs. 67, 78, 100, 108; *see also* Ex. 918 (summary of references from Basic Data Document).) Based on this and other evidence presented at trial, the Court concludes that a rational juror could have concluded that Defendants aided and abetted the copying of Trade Secret 5. Moreover, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received. It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

### 6. Conspiracy to Obstruct Justice - Filing False Answer.

Mr. Liew and USAPTI argue that the evidence was insufficient to prove Count Ten, conspiracy to obstruct justice based on the filing of an allegedly false answer in a related civil case brought by DuPont, because there was insufficient of their intent or state of mind. The Government introduced evidence that Mr. Liew and Mr. Maegerle exchanged emails after DuPont filed the civil suit, to which Mr. Maegerle was not a party, and discussed how to

---

[2] The Basic Data Document is Exhibit 161.

9

respond. (Exs. 678, 679, 682.) Although Defendants take the position that their responses were truthful and were not designed to impede justice, a rational trier of fact could have inferred from all of the evidence presented at trial that they were attempting to conceal the fact that they had misappropriated DuPont trade secrets. Moreover, the Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received. It cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

**7.     Witness Tampering - Jian Liu.**

Mr. Liew argues that there was insufficient evidence to convict him on Count Eleven, which charged him with intimidating, threatening or corruptly persuading Jian Liu with the intent to influence Mr. Liu's testimony in an official proceeding. The Court instructed the jury that they could convict Mr. Liew on this charge if they concluded he "corruptly persuaded," *i.e.* knowingly and with a wrongful, immoral or evil purpose, convinced or induced Mr. Liu to engage in certain conduct. (Final Jury Instructions at 38:8-10.) Mr. Liu testified that in late March 2011, an investigator from DuPont came to his home and asked him questions about whether he possessed DuPont materials. Mr. Liu also testified that Mr. and Mrs. Liew were at his home that night, because his wife had called them. According to Mr. Liu, when the investigator from DuPont arrived, Mr. Liew hid in a different room, and that after the investigator left, Mr. and Mrs. Liew suggested that Mr. Liu "should not really tell other people's name to ... DuPont investigator." (Tr. Vol. 13 at 2588:15-2595:4.) Mr. Liu also stated that he did not think Mr. and Mrs. Liew were happy. (*Id.* at 2595:5-8.)

Defendants did elicit testimony from Mr. Liu that he did not know of anything to implicate Mr. Liew in any wrongdoing and that he continued to consider working for USAPTI even after the DuPont investigation began and the lawsuit filed. (*Id.* at 2678:5-17.) However, Mr. Liu also testified that, after DuPont filed suit, Mr. Liew told him he should not reveal Mr. Maegerle's name or that of Mr. Spitler, because it would not be good for his family. (*Id.* at 2603:18-2605:7.) He also admitted that during a subsequent interview with DuPont investigators that he lied about having DuPont materials and lied about the fact that Mr.

10

1  Maegerle and Mr. Spitler did work for USAPTI, because of promises he made to Mr. Liew.  (*Id.*
2  at 2619:3-2620:1.)

3  The Court concludes that a rational trier of fact could have inferred from all of the
4  evidence presented at trial that Mr. Liew corruptly persuaded Mr. Liu to conceal information
5  and that the purpose for doing so was to influence his testimony in the civil suit.  Moreover, the
6  Court listened to the testimony at trial, had the opportunity to evaluate the demeanor of
7  witnesses, and to consider the exhibits received.  It cannot say that the evidence preponderates
8  sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and
9  that a new trial is warranted.

10 **8.      The Charges Regarding the Safety Deposit Box.**

11 Mr. Liew also argues that there was insufficient evidence to convict him on Counts 13
12 and 14, which charged with Mr. Liew with conspiracy to obstruct justice and making false
13 statements to the FBI.  Specifically, the Government charged that Mr. Liew and Mrs. Liew
14 conspired to conceal evidence contained in a safety deposit box and that Mr. Liew lied to FBI
15 agents about the existence of that safety deposit box.  In support of these charges, the
16 Government elicited testimony that FBI agents asked Mr. Liew if he had a safety deposit box,
17 that he denied it, and that when Mrs. Liew said "we have had" a safety deposit box, Mr. Liew
18 "hushed her."  The Government also presented testimony that when agents asked the Liews
19 about safety deposit box keys, Mr. Liew said to Mrs. Liew, in Mandarin, "you don't know, you
20 don't know."  (Tr. Vol. 1 at 121:8-14, 121:22-122:5, 122:10-12, 122:22-124:18.)  The
21 Government also presented testimony that Mrs. Liew told the agents she was leaving to go get
22 breakfast.  Instead, she went to the bank at which the safety deposit box was located and, when
23 she tried to access it, suggested that she had lost the keys.  (Tr. Vol. 1 at 124:19-126:8; Vol. 2 at
24 225:16-226:12.)

25 Based on this and other evidence presented at trial, a rational juror could have found Mr.
26 Liew guilty of these two charges.  Moreover, the Court listened to the testimony at trial, had the
27 opportunity to evaluate the demeanor of witnesses, and to consider the exhibits received.  It
28

cannot say that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice occurred and that a new trial is warranted.

**9. Failure to Sever the Financial Charges.**

Finally, Mr. Liew argues that the Court should have severed Counts Fifteen through Twenty-Two from the other charges. According to Mr. Liew, "it is manifestly clear that the jury's verdict of guilty as to all charges was based on the 'spillover' effect of the financial accusations." (Docket No. 823, Mot. at 24:9-10.) To the extent Mr. Liew continues to argue that the charges were improperly joined, the Court rejects that argument for the reasons set forth in the Court's Order denying his motion to sever. (Docket No. 398.) In addition, the Court instructed the jury that it was to consider each charge separately and that its verdict on one count should not control its verdict on any other count. (Final Jury Instructions at 7:1-7.) Jurors are presumed to follow the instructions they are given throughout a trial. *See, e.g., United States v. Padilla*, 639 F.3d 892, 897 (9th Cir. 2011). The Court also concludes that Mr. Liew has not demonstrated he was prejudiced by a joint trial based on the alleged spillover effect of the evidence.

**CONCLUSION**

For each of these reasons, the Court DENIES the motion for judgments of acquittal, renewed motion for judgments of acquittal, and the motion for new trials. The parties shall appear as scheduled on June 24, 2014 for judgment and sentencing.

**IT IS SO ORDERED.**

Dated: June 9, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE