PETER L. ARIAN (Bar No. 238029)
(E-Mail: Peterarianlaw@gmail.com)
407 San Anselmo Avenue, Suite 201
San Anselmo, California 94960
Telephone: (415) 785-4060
Facsimile: (415) 329-1408

Attorney for Defendant
WALTER LIEW

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No. 11-cr-0573-JST |
|---|---|
| Plaintiff, | |
| v. | **MOTION TO MODIFY SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) FOR IMMEDIATE RELEASE TO HOME CONFINEMENT OR IN THE ALTERNATIVE: REQUEST FOR RECCOMENDATION FOR HOME CONFINEMENT** |
| WALTER LIEW, | |
| Defendant. | |

Defendant, Walter Liew, by and through counsel Peter L. Arian, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for an order modifying his sentence to allow him to serve the balance of his sentence in home confinement.

Respectfully submitted,

DATED: May 29, 2020          By  */s/ Peter L. Arian*
                                 PETER L. ARIAN
                                 Attorney for WALTER LIEW

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582

TABLE OF AUTHORITIES

I. INTRODUCTION ..................................................................................................................1

II. FACTS ..................................................................................................................................2

    A.    FCI Lompoc's Failure to Slow the Spread of COVID-19 Outbreak has Allowed the Virus to Spread like Wildfire ......................................................2

    B.    Mr. Liew is Currently Hospitalized and on a Ventilator ............................4

    C.    Mr. Liew's Age and Health Conditions Make Him Especially Susceptible to COVID-19 Complications.........................................................5

III. REQUEST FOR RELIEF UNDER 18 U.S.C. § 3582 ................................................7

    A.    This Court has Discretion to Modify Mr. Liew's Sentence Under § 3582(c)(1)(A)(i) Based on His Medical Condition, the Risks He Faces from COVID-19, and the § 3553(a) Factors ...................................................7

    B.    The Exhaustion Requirement ................................................................... 11

        1.    Exceptions to the Exhaustion Requirement.................................... 11

        2.    In the Alternative, the Court can Order Briefing and Hold Ruling on the Motion in Abeyance Until the 30 Day Exhaustion Period has Run ..................................................................................... 13

IV. RECOMMENDATION FOR HOME CONFINEMENT ........................................ 13

V. CONCLUSION................................................................................................................ 14

DECLARATION OF PETER L. ARIAN   ………………………………………………15

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
i

# TABLE OF AUTHORITIES

**CASES**

**Supreme Court**

*Helling v. McKinney*, 509 U.S. 25, 28 ...................................................................................... 9
*Matthews v. Eldridge,* 424 U.S. 319, 330 (1976) ..................................................................... 12
*Pepper v. United States*, 562 U.S. 476, 490-93 (2011) ......................................................... 9, 10

**Circuit Court**

*United States v. Liew,* 856 F.3d 585 (9th Cir. 2017) .................................................................. 1
*Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) .............................................................. 9
*Washington v. Barr,* 925 F.3d 109, 118 (2d Cir. 2019) ………………………………….11

**District Court**

*Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) ....................... 10
*United States v. Perez,* No. 17-cr-513-AT (SDNY April 1, 2020) ................................ 12
*United States v. Scparta*, No. 18-cr-578-AJN (SDNY April 19, 2020) ........................ 12

**STATUTE**

**United States Code**

18 U.S.C. § 3142 ........................................................................................................................ 8
18 U.S.C. § 3582 .................................................................................................................passim
18 U.S.C. § 3621 ...................................................................................................................... 14
18 U.S.C. § 3553(a) ........................................................................................................... 7, 9, 10
28 U.S.C. § 994 ......................................................................................................................... 7

**United States Sentencing Guidelines**

U.S.S.G. § 1B1.13 .................................................................................................................. 7, 8

## I. INTRODUCTION

On July 7, 2014, this Court sentenced Mr. Liew to a term of imprisonment of 180 months for his conviction after trial to multiple counts of crimes against the United States involving a conspiracy to commit economic espionage and steal trade secrets. Dkt. Items 893, 897, 898 (Judgment, Amended Judgment, and Second Amended Judgment). Subsequent to his conviction and sentence, the Ninth Circuit reversed one of Mr. Liew's convictions for witness tampering, and remanded the case for re-sentencing. *United States v. Liew,* 856 F.3d 585 (9th Cir. 2017). On November 2, 2018, the Court re-sentenced Mr. Liew to a total of 144 months imprisonment in the Bureau of Prisons.

Mr. Liew is currently serving that sentence at FCI Lompoc, has served all but six months of his sentence, and is scheduled for release on November 26, 2020, according the Bureau of Prisons website. Mr. Liew was scheduled for release on June 2, 2020, into a half-way house for the last six months of his sentence, but has since been hospitalized due to the COVID-19 virus. He is currently serving his sentence in a hospital, on a ventilator, albeit in stable condition.

Mr. Liew has a heightened risk of COVID-19 complications due to his age (62) and his history of underlying medical conditions, including high cholesterol and a fatty liver, a pre-cursor to cirrhosis.

This motion seeks to have Mr. Liew, once released from the hospital, go through a 14 day quarantine and then go home to convalesce with his wife and adult child at their home in Dublin, California, where he can be provided a better standard of care that that offered by the Bureau of Prisons.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
1

## II.  FACTS

### A.  FCI Lompoc's Failure to Slow the Spread of COVID-19 Outbreak has Allowed the Virus to Spread like Wildfire

The Federal Bureau of Prisons ("BOP") is mismanaging one of the worst public health catastrophes related to COVID-19 anywhere in the country and at the epicenter of the outbreak are FCI Lompoc and USP Lompoc (collectively "Lompoc"), where more than 1,000 incarcerated persons have tested positive for COVID-19.  Lompoc is the site of by far the largest COVID-19 outbreak at a BOP facility. As of the morning of May 15, 2020, BOP reports that 1,023 of the 2,680 individuals collectively incarcerated at Lompoc have tested positive for COVID-19.[1]  The cases at Lompoc account for more than 65 percent of cases in Santa Barbara County and are so staggering that local officials are asking the State of California to allow them to exclude the numbers from Lompoc in their reopening criteria.[2]

Shockingly, these numbers, high as they seem, are still underreported. Only the 963 prisoners at FCI Lompoc have undergone a round of mass testing (which was completed several weeks later than would have been necessary to prevent the virus from spreading as it has within the walls of Lompoc), with 882 reporting positive; meaning nearly 100 percent of inmates in FCI Lompoc now have the virus.[3] There is no clearer indication of how ineffective BOP's COVID-19 prevention policies have been than their own statistics.  Compounding the problem at Lompoc is the fact that the BOP

---

[1] Bureau of Prisons, COVID-19 Update, https://www.bop.gov/coronavirus/.

[2] Delaney Smith, *Santa Barbara County Urges State to Exclude Lompoc Prison Cases from Reopening Criteria*, SANTA BARBARA INDEPENDENT, May 11, 2020, https://www.independent.com/2020/05/11/santa-barbara-county-urges-state-toexclude-lompoc-prison-cases-from-reopening-criteria/.

[3] Tyler Haden, *Santa Barbara County Urges State to Exclude Lompoc Prison Cases from Reopening Criteria*, SANTA BARBARA INDEPENDENT (May 13, 2020) https://www.independent.com/2020/05/13/lompoc-prison-explodes-with-activecovid-19-cases/.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
2

closed Taft Correctional Institution on April 30, 2020,[4] and a number of those prisoners have been transferred to Lompoc, increasing the inmate population and decreasing any hope of necessary social distancing.

Inexplicably, today, May 29, 2020, the BOP is reporting that FCI Lompoc USP has only 19 COVID-19 cases among inmates and 8 among staff.[5] The reason for the discrepancy is unclear. At least one news article indicates that the Santa Barbara County Public Health Department is reporting 80 confirmed cases among inmates and 30 among staff at Lompoc.[6] The high number of infected individuals in Lompoc is creating community concerns that local hospitals will be overrun with patients from Lompoc, both inmates and staff.

Mr. Liew's situation is emblematic of the ineffective COVID-19 response at Lompoc. On April 28, 2020, Mr. Liew was transferred to a warehouse converted into a makeshift quarantine unit. He was given a mattress on top of a cot which is exactly six feet from the mattresses next to his own. Mr. Liew has had limited access to a toilet or a shower since he was moved to the warehouse. On May 4, 2020, he was given a COVID-19 test and as of his last correspondence with counsel on May 6, 2020 he was still waiting on the test results.

---

[4] LA Times Staff, *Kern County City Gets Hit with Triple Whammy: Lockdowns, Oil Slump and Prison Closing*. L.A. Times (May 6. 2020) https://www.latimes.com/california/story/2020-05-06/kern-county-taft-coronavirus-oil-slump-prison-closing/.

[5] Bureau of Prisons, COVID-19 Update, https://www.bop.gov/coronavirus/.

[6] Tyler Haden, *Lompoc Prison, Crawling with COVID-19, Reports First Inmate Death*, SANTA BARBARA INDEPENDENT (April 18, 2020) https://www.independent.com/2020/04/18/lompoc-prison-crawling-with-covid-19-reports-first-inmate-death/https://www.independent.com/2020/04/18/lompoc-prison-crawling-with-covid-19-reports-first-inmate-death/.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
3

**B.     Mr. Liew is Currently Hospitalized and on a Ventilator**

On May 27, 2020, counsel was informed that Mr. Liew had fallen ill and was on a ventilator to assist him with breathing. It is unknown, but given the circumstances, likely, that he is infected with the COVID-19 virus. If Mr. Liew is, in fact, positive for COVID-19, he would join the 929 inmates at FCI Lompoc (out of a population of 963 inmates) who also tested positive for COVID-19. He, unlike many others, is showing symptoms. Because the BOP and/or FCI Lompoc catastrophically mishandled their responsibility to the inmates at Lompoc, Mr. Liew's life is currently in critical danger.

Assuming Mr. Liew is currently positive for COVID-19, there are still more questions than answers about what his recovery will look like and whether Mr. Liew will remain vulnerable to COVID-19 should he be forced to remain at Lompoc with other infected people. The World Health Organization has concluded that there is "currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection."[7] The Centers for Disease Control and Prevention ("CDC") says the same: "The immune response to COVID-19 is not yet understood. Patients with MERS-COV infection are unlikely to be re-infected shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with COVID-19."[8]

In short, because we have only five months of experience with COVID-19, "little is known yet about the body's immune response to an infection. . . . 'That's something that's going to take a while to figure out.'" said George Rutherford, the head of infectious disease and global epidemiology at the University of California San

---

[7] World Health Organization, *"Immunity Passports" in the context of COVID-19* (Apr. 24, 2020), https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19.

[8] Centers for Disease Control, Coronavirus Disease 2019, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
4

Francisco.[9]  What can be said with some certainty is that Mr. Liew's current infection and corresponding symptoms does not mean that his fears about COVID-19 are moot if, and when, he recovers.  His age and his underlying health issues make Mr. Liew particularly vulnerable, not only now, but also going forward.

### C. Mr. Liew's Age and Health Conditions Make Him Especially Susceptible to COVID-19 Complications

Mr. Liew has several preexisting health conditions that put him at heightened risk of contracting COVID-19 and suffering potentially fatal consequences.  Among Mr. Liew's health conditions, he suffers from hepatic steatosis, also commonly known as fatty liver.[10]  Hepatic steatosis is a form of liver disease.[11]  The CDC notes that those suffering from liver disease are among the groups that require "extra precautions" to prevent contraction of COVID-19.[12]

Mr. Liew also suffers from high cholesterol, one of the greatest risk factors for heart disease.[13] [14]  The CDC has stated that those suffering from heart disease are at a much higher risk from the consequences of COVID-19.[15] While high cholesterol is

---

[9] Kristen V. Brown, *Coronavirus Survivors Hope for Immunity—The Reality is More Complicated*, Bloomberg (Apr. 14, 2020) https://www.bloomberg.com/news/articles/2020-04-14/do-coronavirus-survivors-have-immunity-from-reinfection-maybe.

[10] Ex. A, Walter Liew's Application for Compassionate Release dated May 5, 2020.

[11] WebMD, Fatty Liver Disease (Hepatic Steatosis), https://www.webmd.com/hepatitis/fatty-liver-disease.

[12] Centers for Disease Control and Prevention, What to Know About Liver Disease and COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html.

[13] Ex. A, Walter Liew's Application for Compassionate Release dated May 5, 2020.

[14] Centers for Disease Control and Prevention, High Cholesterol Facts, https://www.cdc.gov/cholesterol/facts.htm.

[15] Centers for Disease Control and Prevention, Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions; *see also* Cleveland Clinic, What Heart Patients Need to Know About COVID-19 https://health.clevelandclinic.org/what-heart-patients-need-to-know-about-covid-19/ (May 6, 2020).

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582

typically manageable with medication, one of the most common medications prescribed by doctors to prevent worsening heart conditions[16], angiotensin converting enzyme inhibitors (ACE inhibitors), have negative impact on patients' respiratory functions.[17] The CDC has also noted that pulmonary and respiratory conditions are among the greatest risk factors for older individuals contracting COVID-19 and increase the likelihood of fatal consequences.[18]

As described herein, Mr. Liew is faced with in a dire situation in which he must manage his health conditions in way that heightens his risk of contracting COVID-19. Much of the harm Mr. Liew faces would be greatly reduced if he were allowed to serve the balance of his sentence in home confinement where he will not be exposed to the almost inconceivable amount of people currently infected with COVID-19 inside the walls of Lompoc.

Additionally, Mr. Liew is currently 62 years old. The CDC and nearly every other media outlet and research institution has noted that age is one of the primary risk factors for heightened symptoms brought on by COVID-19.[19] The death rate is much higher for those over 60 who contract COVID-19.[20] Even though Mr. Liew is 62, he shares many of the risk factors with the population over 65.

---

[16] WebMD, ACE Inhibitors and Heart Disease, https://www.webmd.com/heart-disease/guide/medicine-ace-inhibitors#1.

[17] National Library of Medicine, ACE Inhibitor-Induced Bronchial Reactivity in Patients With Respiratory Dysfunction, https://pubmed.ncbi.nlm.nih.gov/12022909/.

[18] Centers for Disease Control and Prevention, Assessing Risk Factors for Severe COVID-19 Illness (Updated April 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/assessing-risk-factors.html.

[19] Centers for Disease Control and Prevention, Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[20] Centers for Disease Control and Prevention, Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html; *see also* Worldometer, Age, Sex, Existing Conditions of COVID-19 Cases and Deaths Chart (May 13, 2020), https://cutt.ly/ytEimUQ (data analysis based on WHO China Joint Mission Report).

On May 6, 2020, Mr. Liew sent a letter to the Warden at Lompoc requesting that the BOP make a motion on his behalf to request compassionate release under 18 U.S.C. § 3582(c)(1)(A). In the letter, he highlighted his advanced age and underlying health conditions.[21] However, Mr. Liew's counsel is not aware of whether any progress has been made by the BOP on Mr. Liew's behalf.

### III.  REQUEST FOR RELIEF UNDER 18 U.S.C. § 3582

Mr. Liew respectfully requests that the Court grant compassionate release relief under 18 U.S.C. § 3582. Mr. Liew's advanced age (62) and underlying health conditions, combined with the fast spread of COVID-19 within Lompoc satisfies the "extraordinary and compelling reasons" standard under Section 3582(c)(1)(A)(i), as elaborated by the Sentencing Commission in U.S.S.G. § 1B1.13.

**A.  This Court has Discretion to Modify Mr. Liew's Sentence Under § 3582(c)(1)(A)(i) Based on His Medical Condition, the Risks He Faces from COVID-19, and the § 3553(a) Factors**

This Court has discretion to modify Mr. Liew's sentence in this case under §3582(c)(1)(A)(i), which states that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." The Federal Sentencing Guidelines provide that extraordinary and compelling reasons for a reduction in the

---

[21] Ex. A, Walter Liew's Application for Compassionate Release dated May 5, 2020.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
7

term of imprisonment exist where the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g) (See generally U.S.S.G. § 1B1.13, comment. n.1), and the defendant is suffering from a serious medical or physical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover (See U.S.S.G. § 1B1.13, comment. n.1(A)(ii.)  The policy statement also provides that, while rehabilitation of the defendant by itself (emphasis added) is not an extraordinary or compelling reason to reduce a defendant's sentence, it may be considered along with other factors (See generally U.S.S.G. § 1B1.13, comment. n.3.)  Additionally, the Director of the Bureau of Prisons may determine whether there exists in the defendant's case extraordinary and compelling reasons other than, or in combination with, the reasons described in the policy statement that support a reduction in the term of imprisonment (See generally U.S.S.G. § 1B1.13, comment. n.1)

The U.S.S.G. § 1B1.13 policy considerations relevant in Mr. Liew's case include:

- Mr. Liew suffers from fatty liver and high cholesterol, which conditions are early indicators of liver disease and heart disease, putting him at increased risk of serious complications from COVID-19.
- Lompoc has the largest number of COVID-19 infections in all of BOP and at FCI Lompoc, where Mr. Liew is incarcerated, nearly 100% of tested inmates have tested positive;
- Mr. Liew is currently hooked up to a ventilator due to complications from the virus;
- Social distancing that is aiding in "flatting the curve" amongst the general population, is not possible within the walls of Lompoc;
- Mr. Liew is 62 years old.  While the Federal Sentencing Guidelines direct the Director of the BOP to consider defendant's age as an extraordinary and compelling

reason for early release only after his 70th birthday, this policy was written prior to the onset of one of the worst global pandemics in the last century. Given the high mortality rate from COVID-19 in the population of 60 years old, Mr. Liew's age is an extraordinary and compelling reason for his early release;

- Mr. Liew is not a danger to the community. The non-violent nature of Mr. Liew's offenses suggest that he does not pose a threat to public safety (*See Scparta, infra*); and

- Mr Liew's post-sentencing rehabilitation is impressive. He has no write-ups or incidents and has been working regularly as an orderly at Lompoc and even serves as a clerk for the other orderlies. Mr. Liew also practices meditation and leads meditation sessions in the chapel at Lompoc.

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in Section 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Mr. Liew has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a).

Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents. Although the circumstances of the present offense qualified Mr. Liew for the serious sentence this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. *Helling v. McKinney*, 509 U.S. 25, 28 (1993); *see also Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
9

Va. July 28, 2004) (applying *Helling* to contagious diseases caused by overcrowding conditions). The Section 3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release.

Additionally, Mr. Liew's conduct while incarcerated, establishes that the purposes of punishment have been met. Under *Pepper*, the Court must also consider "the most up-to-date picture" of the defendant's history and characteristics, which "sheds light on the likelihood that the defendant will engage in future criminal conduct." 562 U.S. at 492. Mr. Liew has exhibited model conduct during his years of incarceration in Lompoc without any reported incidents. He has been working as an orderly, assisting the correctional officers at Lompoc with various duties and serving as a clerk for the unit orderlies.  Mr. Liew is also an active member of the meditation group and has been leading meditation workshops at the chapel at Lompoc. Mr. Liew has shown by his conduct that he no longer threatens public safety, and that granting him/her compassionate release would not endanger the community.

The totality of the circumstances, including Mr. Liew's post-sentencing rehabilitation demonstrate that reducing Mr. Liew's sentence to time served after 71 months in custody is "sufficient, but not greater than necessary," to serve the purposes of sentencing under § 3553(a).

As Mr. Liew has previously indicated to this Court, there are a number of factors under Section 3553(a), in addition to those above, that warrant the relief sought here. Mr. Liew is a first-time offender with no criminal history. His offenses are all non-violent. He has a devoted wife and is the father of a son who lives at home. Finally, his age places him in the class of prisoners least likely to recidivate.  If released, Mr. Liew can reside with his wife Christina and son Michael at their home in Dubin, California. He can self-quarantine there and he can quarantine himself from his wife. The Court can further impose any other appropriate condition. For all of these reasons, combined with the risks Mr. Liew faces of serious complications from COVID-19 at

Lompoc, release to home confinement at the home he shares with his wife and son in Dublin is warranted.

## B. The Exhaustion Requirement

On December 21, 2018, the President signed the First Step Act into law. Among a number of criminal justice reforms, Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

Mr. Liew anticipates that the government will argue that he is not entitled to relief under Section 3582 because he has failed to exhaust his administrative remedies. However, Mr. Liew submitted a request for relief to FCI Lompoc's Warden on May 6, 2020. He was thereafter hospitalized and placed on a ventilator.

### 1. Exceptions to the Exhaustion Requirement

Even where exhaustion is required by statute, the requirement is not absolute. *Washington v. Barr,* 925 F.3d 109, 118 (2d Cir. 2019). Failure to exhaust is excusable where 1) it would be futile, because the agency is biased or has already determined the issue, or 2) the administrative process is incapable of granting adequate relief; or 3) where pursing agency relief would subject Mr. Liew to undue prejudice. *Id.* at 118-19.

Here, Mr. Liew has attempted to exhaust his administrative remedies within the Bureau of Prisons but has been stymied by the administration at Lompoc. As discussed above, Mr. Liew wrote to the Warden on May 6, 2020 to request that the BOP file a motion for compassionate release on his behalf, but received no response. Today, May 29, 2020, Mr. Liew is now in a hospital due to complications from COVID-19 and is on

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
11

a ventilator.  At this time, he cannot make any of the additionally necessary steps to exhaust his administrative remedies.

The 30-plus-day exhaustion requirement would deprive Mr. Liew of adequate relief because when that time expires his symptoms could worsen and he could suffer life threatening complications from COVID and could even die. That consequence is surely undue prejudice. *See United States v. Perez,* No. 17-cr-513-AT (SDNY April 1, 2020), Dkt. Item 98  (Order granting compassionate release and waiving the exhaustion requirement in light of the extraordinary threat posed by the COVID-19 pandemic, together with consideration of Mr. Perez's individual health issues) Mr. Liew has a significant interest – indeed a life or death interest – in this Court's consideration of his request for immediate release to home confinement given the spread of COVID-19 at Lompoc. *See Matthews v. Eldridge,* 424 U.S. 319, 330 (1976) ("where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate" the claim may be considered so long as the claimant presented the claim to the agency).  Given the speed at which COVID-19 is spreading throughout BOP, especially at Lompoc, the steps Mr. Liew has already taken and Lompoc's responses, and the worsening condition of Mr. Liew's health, he submits that the 30-day exhaustion requirements of Section 3582(c)(1)(A) should not apply.

The exhaustion requirement was adopted at a time when the COVID-19 pandemic did not exist and was not rapidly spreading throughout the country and in the federal prison system in particular. To apply the exhaustion requirement now, in the middle of a global pandemic, would be "both futile and cause [Mr. Liew] irreparable harm." *See  United States v. Scparta*, No. 18-cr-578-AJN (SDNY April 19, 2020) (Opinion & Order) (application of the  equitable exceptions to the exhaustion requirement to order an inmate released from FCI Butner based the acknowledgement that the inmate suffered from high blood pressure, high cholesterol and hypertension and therefore had increased risks from COVID-19 while incarcerated.  Additionally,

District Judge Nathan was persuaded that the non-violent nature of the defendant's offenses suggested that he "pose[d] any risk to the public.") *See Scparta, supra* at 9. Similarly, Mr. Liew suffers from health conditions that affect his heart and his liver. Also like the defendant in *Scpara*, the non-violent nature of Mr. Liew's offenses suggests that he does not pose any risk to the public should his sentence be reduced or permitted to finish his sentence in home confinement.

### 2. In the Alternative, the Court can Order Briefing and Hold Ruling on the Motion in Abeyance Until the 30 Day Exhaustion Period has Run

Failing a finding that the exhaustion requirement of Section 3582 is not applicable in the instant case, the Court could also order a response from the government and hold this motion in abeyance until June 5, 2020, when the 30 day requirement of Section 3582(c)(1)(A) will have run.

## IV. IN THE ALTERNATIVE: REQUEST FOR RECOMMENDATION FOR HOME CONFINEMENT

If the Court is unwilling to grant the relief requested above, Mr. Liew requests a recommendation for home confinement for the remaining 6 months of his sentence rather than having to convalesce in a half-way house where medical care and treatment would be inferior to what he would receive at home.

In response to the COVID-19 pandemic, the BOP was granted the authority to lengthen the maximum amount of time for which it is authorized to place a prisoner in home confinement under 18 U.S.C. § 3624(c).[22] The Attorney General further directed

---

[22] Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020).

the BOP to prioritize home confinement for eligible inmates for whom home confinement might be more effective in minimizing the risks of COVID-19.[23]

The Court in this instance has the ability under 18 U.S.C. § 3621, subd. (b) to recommend to the Bureau of Prisons that Mr. Liew serve the remainder of his sentence in home confinement.

## V.  CONCLUSION

For the foregoing reasons, Mr. Liew respectfully requests that the Court modify his sentence to allow for his release six months early or in the alternative to make an immediate recommendation for Mr. Liew's home confinement.

Respectfully submitted,

DATED: May 29, 2020            By  */s/ Peter L. Arian*
                                   PETER L. ARIAN
                                   Attorney for WALTER LIEW

---

[23] Off. of the Att'y Gen. Mem. For Dir. of Bureau of Prisons, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020) https://www.justice.gov/coronavirus.

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
14

### DECLARATION OF PETER L. ARIAN

I, PETER L. ARIAN, declare:

1. I am an attorney licensed to practice law in the State of California, a member of the Criminal Justice Act Panel for the Northern District of California, and am admitted to practice in this Court. I represent defendant WALTER LIEW in the above entitled action.

2. Once assigned the instant case by the CJA panel, I was able to contact Mr. Liew by mail, and received a response from him on May 6, 2020, indicating his current situation, including his housing within FCI Lompoc, and the conditions of confinement therein. Mr. Liew also informed me that due to the COVID-19 pandemic, BOP was not allowing phone calls or CORRLINKS emails by inmates.

3. I was also informed by the same letter that Mr. Liew had submitted a copy of the document attached hereto as Defendant's Exhibit A, entitled Application for Compassionate Release, on May 6, 2020, to the Warden of FCI Lompoc.

4. I have tried on multiple occasions to arrange for a legal phone call with Mr. Liew. On May 26, 2020, after multiple calls, faxed requests, and emails to BOP regional counsel, I was to have a scheduled legal phone call with Mr. Liew. On that date, I was informed by Mr. Liew's BOP case manager that he was unavailable for the call because of medical reasons.

5. On May 27, 2020, I conferred by phone and email with BOP Regional Counsel Dennis M. Wong, who informed that Mr. Liew was hospitalized, on a ventilator, but in stable condition.

6. On the same day, I spoke with Christina and Michael Liew, Mr. Wong's wife and son, respectively. They informed me that they had received the same information regarding Mr. Liew's health on May 26th.

7. I have spoken with the Liew family regarding where Mr. Liew would stay if released from custody. They informed me that he is more than welcome at their

MOTION FOR RELEASE TO HOME CONFINEMENT PURSUANT TO 18 USC § 3582
15

1  home in Dublin, California, and that they are able to provide him with care during the
2  pandemic.  I inquired as to inquired generally if this would be an appropriate living
3  situation for Mr. Liew should he be granted early release.  The Liews assured me that
4  there was nothing that would prevent Mr. Liew from finishing his sentencing at his
5  home.

6        8.     I prepared this motion and declare that the factual statement made therein
7  are true and correct to the best of my knowledge.  As to those statements made upon
8  information and belief, I believe them to be true.

9        I declare under penalty of perjury under the laws of the United States of America
10 that the foregoing is true and correct.

11       Executed on May 29, 2020, at San Anselmo, California.

                                  */s/ Peter L. Arian*         .
                                  PETER L. ARIAN